John Maloney
Christopher K. Kim
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360
Attorneys for Defendants
Hartford Accident and Indemnity Company,
Hartford Fire Insurance Company and
First State Insurance Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC.,<br><br>                    Plaintiff,<br><br>                    v.<br><br>FEDERAL INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD FIRE INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY (successor to AETNA CASUALTY AND SURETY COMPANY), WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY), CONTINENTAL INSURANCE COMPANY, and XYZ INSURANCE COMPANIES,<br><br>                    Defendants. | Civil Action No. 2-20-cv-09741-BRM-ESK<br><br><br><br>DECLARATION OF JOHN MALONEY |

John Maloney, of full age, hereby declares as follows:

      1.     I am an attorney at law of the State of New Jersey and a shareholder of the law

firm of Gimigliano Mauriello & Maloney, P.A., attorneys for defendants Hartford Accident and

Indemnity Company, Hartford Fire Insurance Company and First State Insurance Company (collectively, "Hartford") in the above-captioned matter.

2.     This declaration is submitted in support of Hartford's and defendants The Continental Insurance Company ("Continental") and Wellfleet New York Insurance Company as successor to Atlanta International Insurance Company ("AIIC" and, together with Hartford and Continental, "Defendants") joint appeal of the October 8, 2020 order entered by the Honorable Edward S. Kiel, U.S.M.J.

3.     Attached hereto as Exhibit A is a true and correct copy of the second amended complaint in the action captioned as <u>GEA Mechanical Equipment US, Inc. v. Federal Insurance Company, et al.</u>, originally filed on January 17, 2020 in the Superior Court of New Jersey, Law Division, Bergen County, docket no. BER-L-4481-18, and was removed to the United States District Court for the District of New Jersey on July 31, 2020 (ECF 1).

4.     Attached hereto as Exhibit B are true and correct copies of the tender letters issued by GEA to Hartford and AIIC, both dated August 5, 2019, and which were produced by Hartford and AIIC, respectively, in this action.

5.     Attached hereto as Exhibit C is a true and correct copy of Hartford's Initial Interrogatories to GEA, which were served by Hartford in this action on November 22, 2019.

6.     Attached hereto as Exhibit D is a true and correct copy of Hartford's Initial Requests for Production of Documents to GEA, which were served by Hartford in this action on November 22, 2019.

7.     Attached hereto as Exhibit E is a true and correct copy of GEA's Responses to Hartford's Initial Interrogatories, which were served by GEA in this action on January 28, 2020.

8.      Attached hereto as Exhibit F is a true and correct copy of AIIC's Initial Requests for Production of Documents to GEA, which were served by AIIC in this action on November 22, 2019.

9.      Attached hereto as Exhibit G is a true and correct copy of Continental's Initial Requests for Production of Documents to GEA, which were served by Continental in this action on March 27, 2020.

10.     Attached hereto as Exhibit H is a true and correct copy of the Transcript of Hearing, dated October 8, 2020, with respect to Defendants' application to compel GEA to produce certain information and documents containing attorney-client communications and/or attorney work product.

11.     Attached hereto as Exhibit I is a true and correct copy of an email chain, dated August 8, 2011, between Casey Rigby of Hartford and Joseph W. Hovermill of Miles & Stockbridge, which was produced by Hartford in this action.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: /s/  *John Maloney*
        John Maloney
        Christopher K. Kim
        GIMIGLIANO MAURIELLO & MALONEY
        A Professional Association
        163 Madison Avenue, Suite 500
        P.O. Box 1449
        Morristown, New Jersey 07962-1449
        (973) 946-8360
        Attorneys for Defendants
        Hartford Accident and Indemnity Company,
        Hartford Fire Insurance Company and
        First State Insurance Company

Dated: October 22, 2020

# EXHIBIT A

Donald W. Kiel (NJ Bar No. 014371982)
Donald.Kiel@klgates.com
K&L GATES LLP
One Newark Center
Tenth Floor
Newark, New Jersey  07102-5252
973-848-4000

K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613
412-355-6500

Attorneys for Plaintiff
GEA Mechanical Equipment US, Inc.

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC.,<br><br>             Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY;<br><br>FIRST STATE INSURANCE COMPANY;<br><br>HARTFORD ACCIDENT AND INDEMNITY COMPANY;<br><br>HARTFORD FIRE INSURANCE COMPANY;<br><br>TRAVELERS CASUALTY AND SURETY COMPANY (successor to AETNA CASUALTY AND SURETY COMPANY);<br><br>WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY);<br><br>CONTINENTAL INSURANCE COMPANY;<br><br>and XYZ INSURANCE COMPANIES.<br><br>             Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br>DOCKET NO. BER-L-005721-19<br><br>**CIVIL ACTION**<br><br>**SECOND AMENDED COMPLAINT, JURY DEMAND, AND DESIGNATION OF <u>TRIAL COUNSEL</u>** |

Plaintiff, GEA Mechanical Equipment US, Inc. ("Plaintiff" or "GEA Mechanical"), with its principal place of business at 100 Fairway Court, Northvale, New Jersey 07647, by its attorneys K&L Gates LLP, for its Second Amended Complaint against Defendants alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment brought pursuant to the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50, et seq., and for supplemental relief related thereto.

2.      GEA Mechanical seeks a declaration that it is entitled to insurance coverage under certain standard form comprehensive general liability insurance policies purchased from the Defendants.  GEA Mechanical seeks such a declaration with respect to a claim for asbestos-related bodily injury that has been made against GEA Mechanical, and any such claims that may be made against it in the future.  GEA Mechanical further seeks money damages from the Defendants for the liabilities, losses, and expenses it has incurred and will incur in the future.

## THE PARTIES

3.      GEA Mechanical is a corporation organized and existing under the laws of the State of Delaware, with its corporate headquarters and principal place of business located in Northvale, New Jersey.  As described below, GEA Mechanical is the successor by merger to GEA Westfalia Separator, Inc. (f/k/a Centrico Inc.).

4.      Centrico Inc. ("Centrico") was a corporation organized and existing under the laws of the State of New York, with its corporate headquarters and principal place of business located in Northvale, New Jersey since March 17, 1950.  On April 30, 1996, Centrico changed its name to Westfalia Separator, Inc.  On June 30, 2008, Westfalia Separator, Inc. changed its name to GEA Westfalia Separator, Inc.  On December 30, 2010, GEA Westfalia Separator, Inc.

merged into GEA Westfalia Separator Reorganization, LLC.  On or about December 31, 2010, GEA Westfalia Separator Reorganization, LLC merged into GEA Mechanical.  GEA Mechanical was formed as a Delaware corporation on December 1, 2010.

5.      Upon information and belief, Continental Insurance Company is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Chicago, Illinois.  At all relevant times, Continental Insurance Company was either licensed in New Jersey, pursuant to N.J.S.A. 17:32-1, et seq., or authorized to transact the business of insurance in New Jersey pursuant to N.J.S.A. 17:50-1, et seq.

6.      Upon information and belief, Federal Insurance Company is a corporation incorporated under the laws of the State of Indiana with its principal place of business in Whitehouse Station, New Jersey.  Prior to March 23, 1990, Federal Insurance Company was incorporated under the laws of the State of New Jersey.  At all relevant times, Federal Insurance Company was either licensed in New Jersey, pursuant to N.J.S.A. 17:32-1, et seq., or authorized to transact the business of insurance in New Jersey pursuant to N.J.S.A. 17:50-1, et seq.

7.      Upon information and belief, First State Insurance Company is a corporation incorporated under the laws of the State of Connecticut with its principal place of business in Boston, Massachusetts.  At all relevant times, First State Insurance Company was either licensed in New Jersey, pursuant to N.J.S.A. 17:32-1, et seq., or authorized to transact the business of insurance in New Jersey pursuant to N.J.S.A. 17:50-1, et seq.

8.      Upon information and belief, Hartford Accident and Indemnity Company is a corporation incorporated under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  At all relevant times, Hartford Accident and Indemnity Company was either licensed in New Jersey, pursuant to N.J.S.A. 17:32-1, et seq., or authorized to transact the business of insurance in New Jersey pursuant to N.J.S.A. 17:50-1, et seq.

9.      Upon information and belief, Hartford Fire Insurance Company is a corporation incorporated under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  At all relevant times, Hartford Fire Insurance Company was either licensed in New Jersey, pursuant to N.J.S.A. 17:32-1, et seq., or authorized to transact the business of insurance in New Jersey pursuant to N.J.S.A. 17:50-1, et seq.

10.     Upon information and belief, Travelers Casualty and Surety Company, successor to Aetna Casualty and Surety Company, is a corporation incorporated under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  At all relevant times, Aetna Casualty and Surety Company was either licensed in New Jersey, pursuant to N.J.S.A. 17:32-1, et seq., or authorized to transact the business of insurance in New Jersey pursuant to N.J.S.A. 17:50-1, et seq.

11.     Upon information and belief, Wellfleet New York Insurance Company, successor to Atlanta International Insurance Company, is a corporation incorporated under the laws of the State of New York with its principal place of business in Fort Wayne, Indiana.  At all relevant times, Atlanta International Insurance Company was either licensed in New Jersey, pursuant to N.J.S.A. 17:32-1, et seq., or authorized to transact the business of insurance in New Jersey pursuant to N.J.S.A. 17:50-1, et seq.

12.     Defendants XYZ Insurance Companies are presently unknown insurance companies that issued certain liability insurance policies to Centrico or its successors (the "XYZ Insurance Policies") that provide insurance coverage for the Underlying Action (as defined below) and any similar claims that may be filed in the future.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction because, among other things, each Defendant:

(a)      is licensed or authorized to do business in the State of New Jersey; or

-4-

(b)     transacts or has transacted the business of selling insurance in the State of New Jersey during relevant time periods; or

(c)     has agreed to insure a person, property, and/or risk located within the State of New Jersey, and issued insurance policies to insure the New Jersey based predecessor of the New Jersey based plaintiff; or

(d)     has voluntarily submitted itself to the jurisdiction of this Court.

14.     Venue is proper in this County pursuant to R. 4:3-2(a) and (b) because GEA Mechanical's registered office is located in this County, GEA Mechanical does business in this County, and the cause of action arose in this County.  In addition, venue is proper in this County because, upon information and belief, all Defendants conduct business in this County or conducted business in this County during the relevant time period.

## THE INSURANCE POLICIES

15.     The Defendants sold various standard form primary, umbrella, and excess comprehensive general liability insurance policies, including, but not limited to, those listed on Exhibit A attached hereto (collectively, together with the policies described below in Paragraph 16 and any other presently unknown policies, the "Insurance Policies").  GEA Mechanical reserves the right to supplement this list with additional liability insurance policies or to amend the list as additional facts become available through discovery.

16.     Upon information and belief and in addition to the policies listed in Exhibit A, Aetna Casualty and Surety Company (n/k/a Travelers Casualty and Surety Company) sold various general liability insurance policies to Centrico.

17.     Centrico, predecessor to GEA Mechanical, is an insured policyholder under each of the Insurance Policies.

18.     All required premiums were paid to the Defendants to purchase the Insurance Policies.

19.     All applicable conditions precedent to recovery, if any, have been satisfied under each of the Insurance Policies, or, alternatively, all conditions precedent have been waived and/or will be satisfied upon the exhaustion or unavailability of coverage underlying each of the applicable Insurance Policies.

20.     The Insurance Policies require the Defendants to defend and indemnify and/or pay the costs of the investigation, defense, and indemnity (including settlements and judgments) of the Underlying Action and the Future Underlying Actions, as defined and described below.

## THE UNDERLYING ACTION

21.     GEA Mechanical was named (as "GEA Mechanical Equipment US, Inc., f/k/a GEA Westfalia Separator, Inc.") as a defendant in *Thornton v. Alfa Laval, Inc., et al.*, Case No. 17-006018 CA 42, Circuit Court for Miami-Dade County, Florida (the "Underlying Action").

22.     The plaintiffs in the Underlying Action sought judgment for damages arising out of alleged exposure to asbestos-containing products that were allegedly manufactured, sold, and/or distributed by GEA Mechanical.

23.     On or about June 17, 2019, the jury in the Underlying Action awarded plaintiffs past and future compensatory damages against GEA Mechanical in the amount of $70,102,000.00.  On or about June 19, 2019, the trial court entered a judgment on the jury verdict.  On or about September 24, 2019, GEA Mechanical entered into a confidential settlement agreement in the Underlying Action.

24.     Additional actions alleging bodily injury and/or wrongful death arising out of alleged exposure to asbestos in products allegedly manufactured, distributed, marketed, and/or

sold by Centrico or its successors ("Future Underlying Actions") are reasonably likely to be brought against GEA Mechanical.  GEA Mechanical seeks insurance coverage from the Defendants with respect to any such Future Underlying Actions.

25.      The allegations asserted against GEA Mechanical in the Underlying Action and in any Future Underlying Actions, the damages sought therein, and the sums expended to date, including defense costs, in connection with the same are within the coverage provided by the Insurance Policies.   Accordingly, GEA Mechanical is entitled to a declaration that the Defendants are contractually obligated to defend GEA Mechanical and/or pay the costs and expenses of defense, and to pay the legal liability of GEA Mechanical, in connection with the Underlying Action and any Future Underlying Actions.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT FOR ASBESTOS DEFENSE

26.      The averments of each of the preceding paragraphs are incorporated herein by reference as if set forth at length.

27.      As a result of the Underlying Action and any Future Underlying Actions, GEA Mechanical has incurred, and will incur in the future, substantial costs and expenses of defense.

28.      Each of the Defendants has failed to honor and have disputed or will dispute the extent of its obligations in accordance with applicable law to defend GEA Mechanical and/or pay defense costs incurred by GEA Mechanical in the Underlying Action and any Future Underlying Actions.

29.      By reason of the foregoing, an actual and justiciable controversy exists between GEA Mechanical and each of the Defendants.

30.      GEA Mechanical is entitled to a declaration by this Court of its rights and the obligations of the Defendants under the Insurance Policies to defend GEA Mechanical and/or

pay defense costs incurred by GEA Mechanical in connection with the investigation and defense of the Underlying Action and any Future Underlying Actions.  GEA Mechanical thus seeks a judicial determination by this Court of each Defendant's obligations to defend GEA Mechanical and/or pay defense costs incurred by GEA Mechanical in the Underlying Action and any Future Underlying Actions and an award of damages where applicable.  Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

**WHEREFORE**, GEA Mechanical requests judgment in its favor against the Defendants under the New Jersey Declaratory Judgment Act for the following relief:

(a)     a judgment declaring that, pursuant to the terms of the Insurance Policies, the Defendants are obligated to reimburse GEA Mechanical for the costs associated with its defense and investigation of the Underlying Action and any Future Underlying Actions;

(b)     a judgment declaring that GEA Mechanical is entitled to have the Insurance Policies interpreted in a reasonable manner that maximizes GEA Mechanical's insurance coverage;

(c)     granting GEA Mechanical money damages, including money damages available as supplemental relief under N.J.S.A. 2A:16-60, in an amount to be determined at trial, together with pre- and post-judgment interest;

(d)     requiring the Defendants to pay GEA Mechanical's reasonable attorneys' fees in this action pursuant to R. 4:42-9(a)(6);

(e)     requiring the Defendants to repay GEA Mechanical for the costs of suit incurred herein; and

(f)     providing for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

## SECOND CAUSE OF ACTION
## <u>DECLARATORY JUDGMENT FOR ASBESTOS INDEMNITY</u>

31.     The averments of each of the preceding paragraphs are incorporated herein by reference as if set forth at length.

32.     The Insurance Policies provide coverage for liability for damages because of bodily injury or personal injury, including damages arising out of the Underlying Action and any Future Underlying Actions.

33.     Each of the Defendants has failed to honor and have disputed or will dispute the extent of its obligations in accordance with applicable law to pay sums which GEA Mechanical has paid or may become legally obligated to pay, in connection with the Underlying Action and any Future Underlying Actions.

34.     By reason of the foregoing, an actual and justiciable controversy exists between GEA Mechanical and each of the Defendants.

35.     GEA Mechanical is entitled to a declaration by this Court of its rights and the obligations of the Defendants under the Insurance Policies to indemnify GEA Mechanical with respect to any liability for all sums of money that GEA Mechanical has paid or may be legally obligated to pay in connection with the investigation and defense of the Underlying Action and any Future Underlying Action.

36.     GEA Mechanical seeks a judicial determination by this Court of each Defendant's obligations to pay indemnity costs incurred by GEA Mechanical in the Underlying Action and any Future Underlying Actions and an award of damages where applicable.  Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

**WHEREFORE**, Plaintiff demands judgment in its favor against the Defendants:

(a)     declaring and adjudging the rights and obligations of the parties with respect to past, present, and future indemnity coverage for the Underlying Action and any Future Underlying Actions;

(b)     to the extent GEA Mechanical has paid, pays, or becomes legally obligated to pay indemnity costs in connection with the Underlying Action and any Future Underlying Actions, granting Plaintiff money damages, including money damages available as supplemental relief under N.J.S.A. 2A:16-60, in an amount to be determined at trial, together with pre- and post-judgment interest;

(c)     requiring the Defendants to pay GEA Mechanical's reasonable attorneys' fees in this action pursuant to R. 4:42-9(a)(6);

(d)     requiring the Defendants to repay GEA Mechanical for the costs of suit incurred herein; and

(e)     providing for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, GEA Mechanical Equipment US, Inc., hereby demands a jury trial for all claims so triable.

Respectfully submitted,

**K&L GATES LLP**
Attorneys for Plaintiff

By: _____
Donald W. Kiel

-and-

David F. McGonigle (*pro hac vice* application to be submitted)
Joseph C. Safar (*pro hac vice* application to be submitted)
Erin D. Fleury (*pro hac vice* application to be submitted)

Dated:  January 27, 2020

Attorneys for Plaintiff, GEA Mechanical Equipment US, Inc.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to <u>R.</u> 4:25-4, Donald W. Kiel is hereby designated as trial counsel.

Respectfully submitted,

**K&L GATES LLP**
Attorneys for Plaintiff

By: _____
    Donald W. Kiel

-and-

David F. McGonigle (*pro hac vice* application to be submitted)
Joseph C. Safar (*pro hac vice* application to be submitted)
Erin D. Fleury (*pro hac vice* application to be submitted)

Dated:  January 27, 2020     Attorneys for Plaintiff, GEA Mechanical Equipment US, Inc.

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no such action or arbitration proceeding is contemplated.  I am not aware of any other party which should be joined in this action pursuant to R. 4:28.  I am not aware of any other party which is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts.

K&L GATES LLP
Attorneys for Plaintiff

By: _____
            DONALD W. KIEL
            A Member of the Firm

Dated:  January 27, 2020

**EXHIBIT A**
**TO THE SECOND AMENDED COMPLAINT**

| Insurer | Policy Number | Policy Incepts | Policy Expires |
|---|---|---|---|
| Atlanta International Insurance Company (n/k/a Wellfleet New York Insurance Company) | UMB6230 | 10/25/1984 | 10/25/1985 |
| Continental Insurance Company | *Unknown* | 08/25/1979 | 08/25/1980 |
| Continental Insurance Company | SRU3192930 | 08/25/1980 | 08/25/1981 |
| Continental Insurance Company | SRU1591549 | 08/25/1981 | 08/25/1982 |
| Federal Insurance Company | (87)79078255 | 10/25/1986 | 10/25/1987 |
| Federal Insurance Company | (88)79078255 | 10/25/1987 | 10/25/1988 |
| First State Insurance Company | 914213 | 08/25/1977 | 08/25/1978 |
| First State Insurance Company | 914214 | 08/25/1977 | 08/25/1978 |
| First State Insurance Company | 925592 | 08/25/1977 | 08/25/1978 |
| First State Insurance Company | 940779 | 08/25/1978 | 08/25/1979 |
| First State Insurance Company | 928194 | 08/25/1979 | 10/25/1980 |
| First State Insurance Company | 930747 | 10/25/1980 | 10/25/1981 |
| First State Insurance Company | 932288 | 10/25/1981 | 10/25/1982 |
| First State Insurance Company | 951719 | 10/25/1982 | 10/25/1983 |

| Insurer | Policy Number | Policy Incepts | Policy Expires |
|---|---|---|---|
| First State Insurance Company | 953847 | 10/25/1983 | 10/25/1984 |
| Hartford Accident and Indemnity Company | 10C662182W | 08/25/1976 | 08/25/1977 |
| Hartford Accident and Indemnity Company | 10C667308 | 08/25/1977 | 08/25/1978 |
| Hartford Accident and Indemnity Company | 10C669913W | 08/25/1978 | 08/25/1979 |
| Hartford Accident and Indemnity Company | 10C671174W | 08/25/1979 | 10/25/1980 |
| Hartford Accident and Indemnity Company | 10CML0740W | 10/25/1980 | 10/25/1981 |
| Hartford Accident and Indemnity Company | 10CML0740W | 10/25/1981 | 10/25/1982 |
| Hartford Accident and Indemnity Company | 10CML0740W | 10/25/1982 | 10/25/1983 |
| Hartford Accident and Indemnity Company | 10CML0740W | 10/25/1983 | 10/25/1984 |
| Hartford Accident and Indemnity Company | 10CML0740W | 10/25/1984 | 10/25/1985 |
| Hartford Accident and Indemnity Company | 10CLRML0743W | 10/25/1985 | 10/25/1986 |
| Hartford Accident and Indemnity Company | 10CLRML0743W | 10/25/1986 | 10/25/1987 |
| Hartford Accident and Indemnity Company | 10CLRML0743W | 10/25/1987 | 10/25/1988 |
| Hartford Accident and Indemnity Company | 10UERML0743W | 10/25/1988 | 10/25/1989 |
| Hartford Accident and Indemnity Company | 10CLRNL0743W | 10/25/1989 | 10/25/1990 |

| Insurer | Policy Number | Policy Incepts | Policy Expires |
|---|---|---|---|
| Hartford Fire Insurance Company | 10UERML0743W | 10/25/1990 | 12/25/1991 |
| Hartford Fire Insurance Company | 10UERML0743W | 12/25/1991 | 12/31/1992 |
| Hartford Fire Insurance Company | 10UERML0743W | 12/31/1992 | 12/31/1993 |
| Hartford Fire Insurance Company | 10UERML0743W | 12/31/1993 | 12/31/1994 |
| Hartford Fire Insurance Company | 10UERML0743W | 12/31/1994 | 12/31/1995 |

# EXHIBIT B



peW

GEA Mechanical Equipment US, Inc.

**GEA Westfalia Separator Division**
100 Fairway Court
Northvale, NJ 07647

Phone (201) 767-3900
Fax (201) 767-3901
Sales.wsus@gea.com
www.gea.com

August 5, 2019

CENTR ALIZED OPS
HARTFORD

AUG 08 2019
RECEIVED
MC

**Certified Mail/Return Receipt Requested**

Hartford Accident & Indemnity Company
One Hartford Plaza
Hartford, Connecticut 06155

Re:   Suit:   *Thornton v. Alfa Laval, Inc., et al.*, Case No. 17-006018 CA 42 (Circuit
Court for Miami-Dade County, Florida) (the "Thornton Action")

Insured:   Centrico Inc.

Dear Sir or Madam:

We write to provide The Hartford with notice and tender of the above-captioned action (the
"Thornton Action') naming GEA Mechanical Equipment US, Inc. (as successor to Centrico Inc.)[1]
("GEA Mechanical") as a defendant. The plaintiffs in the Thornton Action seek damages arising
out of alleged exposure to asbestos-containing products allegedly manufactured, sold, and/or
distributed by GEA Mechanical's predecessor, Centrico.

The Thornton Action was filed on March 13, 2017 against several defendants not including
GEA Mechanical. The complaint was amended to include GEA Mechanical on December 13,
2018. Copies of the original and amended complaints are enclosed. On June 17, 2019, the jury
in the Thornton Action awarded plaintiffs past and future compensatory damages against GEA
Mechanical in the amount of $70,102,000.00. On June 19, 2019, the trial court entered a

---

[1] Centrico Inc. changed its name to Westfalia Separator, Inc. in 1996. Westfalia Separator, Inc.
changed its name to GEA Westfalia Separator, Inc. in 2008. GEA Westfalia Separator, Inc.
then merged into GEA Mechanical Equipment US, Inc. in 2010.

CONFIDENTIAL                                                    HART005950



judgment on the jury verdict.  Copies of the jury verdict and judgment are also enclosed.  The Thornton Action is currently on appeal.

The Hartford insured Centrico Inc. through liability insurance policies, including primary liability insurance policies, naming Centrico Inc. as the Named Insured.  These policies include Policy Nos. 10C671174W, 10CML0740W, 10CLRML0743W, 10UERML0743W, 10CLRNL0743W, and 10OUERML0743.  GEA Mechanical hereby requests defense and indemnity coverage for the Thornton Action under the above and any other potentially applicable policies issued by The Hartford or its affiliates and also would welcome a discussion regarding how The Hartford could become involved in the appeal.

Kindly acknowledge your receipt of this letter at your earliest convenience.

Sincerely,

Jamieson Greig, Esq.
General Counsel



GEA Mechanical Equipment US, Inc.

**GEA Westfalia Separator Division**
100 Fairway Court
Northvale, NJ 07647

Phone (201) 767-3900
Fax (201) 767-3901
Sales.wsus@gea.com
www.gea.com

August 5, 2019

**<u>Certified Mail/Return Receipt Requested</u>**

Wellfleet New York Insurance Company
5814 Reed Road
Fort Wayne, Iowa 46835

Re:   Suit:   *Thornton v. Alfa Laval, Inc., et al.*, Case No. 17-006018 CA 42 (Circuit
Court for Miami-Dade County, Florida) (the "Thornton Action")

Insured:   Centrico Inc.

Dear Sir or Madam:

We write to provide Wellfleet New York Insurance Company, as successor to Atlanta
International Insurance Company ("Wellfleet"), with notice and tender of the above-captioned
action (the "Thornton Action') naming GEA Mechanical Equipment US, Inc. (as successor to
Centrico Inc.)[1] ("GEA Mechanical") as a defendant. The plaintiffs in the Thornton Action seek
damages arising out of alleged exposure to asbestos-containing products allegedly
manufactured, sold, and/or distributed by GEA Mechanical's predecessor, Centrico.

The Thornton Action was filed on March 13, 2017 against several defendants not including
GEA Mechanical. The complaint was amended to include GEA Mechanical on December 13,
2018. Copies of the original and amended complaints are enclosed. On June 17, 2019, the jury
in the Thornton Action awarded plaintiffs past and future compensatory damages against GEA

---

[1] Centrico Inc. changed its name to Westfalia Separator, Inc. in 1996. Westfalia Separator, Inc.
changed its name to GEA Westfalia Separator, Inc. in 2008. GEA Westfalia Separator, Inc.
then merged into GEA Mechanical Equipment US, Inc. in 2010.

Confidential                                                                          AIIC00025



Mechanical in the amount of $70,102,000.00.  On June 19, 2019, the trial court entered a judgment on the jury verdict.  Copies of the jury verdict and judgment are also enclosed.  The Thornton Action is currently on appeal.

Atlanta International, as predecessor to Wellfleet, issued liability coverage naming Centrico Inc. as the Named Insured.  This coverage includes Policy No. UMB6230.  GEA Mechanical hereby requests defense and indemnity coverage for the Thornton Action under the above and any other potentially applicable policies issued by Wellfleet or its affiliates and also would welcome a discussion regarding how Wellfleet could become involved in the appeal.

Kindly acknowledge your receipt of this letter at your earliest convenience.

Sincerely,

Jamieson Greig, Esq.
General Counsel

AIIC00026

# EXHIBIT C

Stephen V. Gimigliano (034091983)
John Maloney (013882001)
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360
Attorneys for Defendants
Hartford Accident and Indemnity Company
and First State Insurance Company

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY (successor to AETNA CASUALTY AND SURETY COMPANY), WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY) and XYZ INSURANCE COMPANIES,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY DOCKET NO.: BER-L-5721-19<br><br>Civil Action<br><br><br><br>HARTFORD'S INITIAL INTERROGATORIES TO PLAINTIFF |

TO:    Donald W. Kiel, Esq.
       Robert F. Pawlowski, Esq.
       K&L Gates LLP
       One Newark Center, Tenth Floor
       Newark, New Jersey 07102-5252
       Attorneys for Plaintiff
       GEA Mechanical Equipment US, Inc.

PLEASE TAKE NOTICE that defendants Hartford Accident and Indemnity

Company ("Hartford A&I") and First State Insurance Company ("First State" and together with

Hartford A&I, "Hartford"), by their undersigned counsel, request that plaintiff GEA Mechanical

Equipment US, Inc. ("Plaintiff") respond to the following Interrogatories within the time and in

the manner prescribed by the New Jersey Court Rules.


/s/ *John Maloney*
Stephen V. Gimigliano
John Maloney
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360

Attorneys for Defendants
Hartford Accident and Indemnity Company
and First State Insurance Company

Dated: November 22, 2019


<u>INSTRUCTIONS</u>

The following general instructions apply to each of the Interrogatories set forth herein:

1.      The instructions are an integral part of these Interrogatories.

2.      These Interrogatories contain a list of definitions of certain frequently used terms.  It is essential that you refer to and utilize the definitions of all defined terms in the course of answering the Interrogatories.

3.      These Interrogatories seek all information and documents available to you or in your possession, custody or control from any source, wherever situated, including but not limited to information from any files, records, documents, employees, former employees, officers, former officers, directors, former directors, agents, former agents, counsel and former counsel.

4.     For each document whose production is requested, produce the entire original document, along with all attachments, appendices, and exhibits, and any copies that are not identical to the original (whether because of notes made on, or attached to, such copy or otherwise).

5.     Hartford does not seek the disclosure of privileged information or documents.  With respect to any document or information that you withhold on a claim of confidentiality or privilege, including the attorney-client privilege and the work-product doctrine, furnish a log of such documents or information providing at least the following: the nature, subject matter, date, title, author, and addressees of the documents or information, the identity of all recipients of the document or information or copies thereof, and the asserted basis for withholding the document or information.

6.     If any part of the information furnished in answer to any Interrogatory is not within the personal knowledge of the person answering these Interrogatories, identify each person to whom such information is a matter of personal knowledge and each person who communicated to the person answering these Interrogatories any part of that information.

7.     If you do not answer any Interrogatory or subpart thereof on the basis of any claim of privilege, state the privilege asserted or claimed, and the facts upon which you rely to support the claim of privilege.

8.     For each Interrogatory, a complete response is required to each part or portion with the same effect as if such part or portion were propounded as a separate Interrogatory.  If you object to any Interrogatory, the objection should clearly state to which part or portion of the Interrogatory it is directed.

9.     If, in answering any of these Interrogatories, you claim any ambiguity in interpreting an Interrogatory or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, but you should set forth as part of the response the language that you claim is ambiguous and the interpretation chosen or used in responding to the Interrogatory.

10.     Whenever a date, amount or other computation or figure is requested, the exact date, the amount or other computation or figure is to be given unless it is not known.  If it is not known, then the approximate date, amount or other computation or figure should be given or the best estimate thereof, and the answer shall state that the date, amount computation or figure is an estimate or approximation.

11.     When used herein the words "and" and "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the Interrogatory all responses which might otherwise be construed to be outside its scope.  "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each."  "Any" shall be construed to include the word "all" and  "all" shall be construed to include the word "any."  The use of the term "including" shall be construed to mean "without limitation."

12.     References to the singular shall include the plural and references to the plural shall include the singular.  References to the masculine gender include the feminine gender.

13.     The use of a verb in any tense shall be construed as the use of the verb in the past or present tense, as necessary to bring within the scope of the Interrogatory all responses which might otherwise be construed to be outside its scope.

14.     Annex hereto any documents that you identify in your response to each Interrogatory.

15.     These Interrogatories shall be deemed continuing so that supplemental answers shall be provided as soon as additional responsive information and documents become available.

## DEFINITIONS

As used herein:

A.     "Action" means the litigation entitled GEA Mechanical Equipment US, Inc. v. Federal Ins. Co., et al., docket no. BER-L-5721-19, in the Superior Court of New Jersey, Bergen County, Law Division.

B.      "Address" means the present or last known street name and number, city or town, state and zip code.

C.      "And" and "or" shall be defined to include both "and " and "or" and shall always be read to require the more inclusive answer.

D.     "Any" means "all" and vice versa.

E.     "Claim(s)" or "Underlying Claim(s)" means any and all property damage or bodily injury claims or demands for money or services arising from Plaintiff or any other Person's historical products and/or operations for which Plaintiff seeks insurance coverage from Hartford in this Action.

F.     "Communication" means any oral or written transmission of information between Persons, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, electronic mail, telecopies, telexes, conferences or seminars.

G.     "Complaint" means the First Amended Complaint filed on behalf of Plaintiff in this Action, as well as all prior and subsequent pleading(s) filed by Plaintiff against Hartford.

H.      "Concerning," "relate," "relating to" or "regarding" mean consisting of, referring to, reflecting, concerning or having logical or factual connection with the matter discussed.

I.      "Document" or "documents" means, by way of illustration and not by way of limitation, the following items, whether printed or recorded or reproduced by any other mechanical process, written, produced by hand or produced by or stored in a computer, regardless of origin or location: books, records, communications, reports, correspondence, letters, electronic mail, text messages, data, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, applications, booklets, brochures, catalogues, circulars, magazines, pamphlets, periodicals, bulletins, instructions, minutes, other communications (including but not limited to, inter- and intra-office communications), purchase orders, bills of lading, bid tabulations, questionnaires, surveys, contracts, agreements, options to purchase, memoranda of agreements, assignments, licenses, books of account, orders, invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, cancelled checks, bank statements, bank passbooks, confirmations, statements of accounts, analyses, diaries, graphs, notebooks, charts, tables, maps, sketches, chains of custody, time sheets, manifests, working papers, plans, indices, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of accountants or consultants, data sheets, data processing cards, photographs, photographic negatives, phono-records, tape recordings, discs, wire recordings, transcripts of recordings, drawings, motion picture film, advertisements, press releases, drafts, and marginal comments appearing on any such documents, all other written or printed matter of any kind, or any other and all other data compilations from which information can be obtained and translated if necessary.

J.      "First State" means defendant First State Insurance Company together with its predecessors, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

K.      "Hartford" means Hartford A&I and First State.

L.      "Hartford A&I" means defendant Hartford Accident and Indemnity Company together with its predecessors, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

M.      "Hartford Policies" means insurance policies issued by Hartford to the named insured identified therein, under which you seek coverage in connection with this Action.

N.      "Insurance" or "insurance policy" means all documents of insurance of any type including, but not limited to, homeowner's insurance, general liability insurance, bodily injury insurance, personal injury insurance, property insurance, environmental impairment liability insurance and pollution liability insurance, whether primary, excess or umbrella, and all insurance policies, cover notes, certificates and binders concerning such insurance, but excluding all policies of insurance that solely and exclusively provide specialized coverage for workers

compensation, employers liability, directors and officers liability, automobile or watercraft liability.

O.     "Identify," when used in reference to:

(1)     a natural person, means the following information be provided:
(a)     full name;
(b)     home address;
(c)     business address; and
(d)     present or last known position, business affiliation, and job title or description.

(2)     a company, corporation, association, partnership, or any legal entity other than a natural person means the following information be provided:
(a)     its full name;
(b)     a description of the type of organization or entity;
(c)     the address of its principal place of business;
(d)     the jurisdiction of its incorporation or organization; and
(e)     the date of its incorporation or organization.

(3)     a document means the following information be provided:
(a)     its description (for example, letter, memorandum, report, etc.);
(b)     its title;
(c)     its date;
(d)     the number of pages thereof;
(e)     its subject matter;
(f)     the identity of its author, signer, and any person who participated in its preparation;
(g)     the identity of its addressee or recipient;
(h)     the identity of each person to whom copies were sent and each person by whom copies were received;
(i)     its present location; and
(j)     the identity of its custodian.  (If any such document was, but is no longer, in your possession or subject to your control, state what disposition was made of it and when).

(4)     an oral communication means the following information be provided:
(a)     the date and time when it occurred;
(b)     the place where it occurred;
(c)     the complete substance of the communication;
(d)     the identity of each person:
(1)     to whom such communication was made;

(2)    by whom such communication was made; and

(3)    who was present when such communication was made.

(e)    if by telephone:

(1)    the identity of each person:

(A)    who made each telephone call;

(B)    who participated in each call;

(2)    the place where each person participating in each call was located;

(f)    the identity of all documents memorializing, referring or relating in any way to the subject matter of the communication.

P.    "Person" or "persons" means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

Q.    "Plaintiff," "you," or "your" means plaintiff GEA Mechanical Equipment US, Inc., together with its predecessors, and its past and present parents, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

R.    "Thornton Claim" means the Claim asserted against you by Charles E. Thornton and Constance Thornton, including the litigation entitled <u>Thornton v. Alfa Laval, Inc., et al.</u>, case no. 2017-6018-CA-01, in the Circuit Court of the 11th Judicial Circuit, Miami-Dade County, Florida.

<u>INTERROGATORIES</u>

1.    Identify all Persons having relevant knowledge of any facts and/or information relating to this Action.

RESPONSE:

2.    Identify all Persons having relevant knowledge of any facts and/or information relating to the Thornton Claim.

RESPONSE:

3.      Identify each Person who provided information used to prepare answers to these Interrogatories and set forth the number of each Interrogatory with respect to which they provided any information.

RESPONSE:

4.      State the name, address, title and job description of the Person(s) answering these Interrogatories.

RESPONSE:

5.      Set forth all facts and/or information (not legal conclusions) you relied upon in support of your Complaint and identify all Persons having knowledge of such facts and/or information.

RESPONSE:

6.      If any party to this litigation has made an admission, set forth in detail:

(a)      the identity(ies) of the party and the individual(s) making the alleged admission;
(b)      the date and place that each admission was made;
(c)      the substance of each admission;
(d)      the identity of each person to whom each admission was made;
(e)      the identity of any and all Persons present when each admission was made; and
(f)      the identity of any document(s) that evidence or relate to any of the admissions identified in your response to this interrogatory.

RESPONSE:

7.      Identify any and all experts retained by you to testify on your behalf at the time of trial.  Annex hereto a true copy of each expert's current curriculum vitae.  Identify and furnish a copy of each report from each such expert setting forth each opinion to which the

expert will testify at trial together with the facts and documentary references upon which the

expert will rely to support his/her opinion.  With respect to each expert identified:

(a)     provide a list of any articles, reports or other writings authored by the expert;

(b)     identify each administrative or adjudicative proceeding in which the expert has testified in writing or orally;

(c)     provide the subject matter upon which each expert is expected to testify; and

(d)     provide a summary of the grounds for each opinion which the expert is expected to testify to in advance.

RESPONSE:


8.     Set forth the corporate history of Plaintiff and identify:

(a)     all predecessors in interest by full corporate name, state of incorporation, date of incorporation and principal place of business;

(b)     all entities which merged into you;

(c)     all entities which merged to form you;

(d)     as to each merger or acquisition, set forth the date it became effective and give a summary of the transaction;

(e)     all documents which touch or concern each transaction;

(f)     every state in which you maintain or have maintained your principal place of business;

(g)     every state in which you were or have been incorporated and the dates of each such incorporation;

(h)     each of your parent corporations or subsidiary or affiliated corporations, including the full corporate name, state of incorporation, date of incorporation and principal place of business;

(i)     each of your successor corporations by full corporate name, state of incorporation, date of incorporation and principal place of business;

(j)     all locations in which you, or any parent, subsidiary, affiliated corporation, predecessor, or successor engaged in operations, together with a brief description of the activities conducted at each location and applicable dates; and

(k)     all transactions, including but not limited to the sale of any business, division, company, corporation, subsidiary and/or affiliate, concerning the operations of any business, division, company, corporation, subsidiary or affiliate alleged to be involved in the Thornton Claim.

RESPONSE:

9.     Identify the structure of Plaintiff and its predecessors-in-interest (including charts showing each division and all directors and officers of each division) before and after each transaction referred to in your answer to the immediately preceding Interrogatory.  If any organizational chart requested does not exist, describe the organization of the entities before and after each transaction.

RESPONSE:

10.     Identify any and all insurance policies issued to you or allegedly providing liability insurance coverage to you during the relevant time period and/or in connection with the Thornton Claim and/or under which you seek coverage in this Action.  For each policy identified:

> (a)     state the policy number, policy period and insurer issuing the policy;
> (b)     state the nature of coverage offered by the policy (i.e., comprehensive general liability);
> (c)     state the policy limits (including, if applicable, all per year, per person, per claim, per occurrence and aggregate limits) and the type of claims subject to the limits;
> (d)     state whether the policy is primary, excess or umbrella;
> (e)     if the policy is an excess or umbrella policy, state the amounts of underlying insurance above which the policy provides coverage and the extent to which any applicable underlying insurance has been exhausted;
> (f)     state whether the policy contains an asbestos exclusion and, if so, set forth the terms of the exclusion;
> (g)     state whether you possess a copy of the policy.  If not, state the basis for your belief that the policy was issued, and identify any and all documents which constitute, refer to, relate to, reflect or evidence the policy or its possible existence or nonexistence;
> (h)     identify any and all of your officers, directors or employees with knowledge of the terms, conditions, construction, implementation, application or administration of any of the insurance policies

identified in response to this Interrogatory and set forth the Person's dates of employment and job title(s) while employed by you; and

(i)     identify any and all documents in your possession, custody or control that refer or relate to the terms, conditions, construction, implementation, application or administration of the insurance policies identified in these answers to Interrogatories and at issue in this litigation.

RESPONSE:


11.     Set forth the name of each entity which you claim is an insured under any insurance policy identified in your answer to Interrogatory No. 10.  For each entity named, set forth:

(a)     each insurance policy at issue which you claim insures the entity;

(b)     the state of incorporation of the entity and date incorporated;

(c)     the entity's principal place(s) of business, together with applicable dates; and

(d)     all locations at which such entity conducted operations, together with all applicable dates.

RESPONSE:


12.     For each insurance policy identified in your answer to Interrogatory No. 10, set forth the extent to which its limits have been exhausted or eroded by payments made under the policy and identify the basis of the payments that have exhausted or eroded the limits. If you claim that limits have been exhausted or eroded other than by payment of claims or costs of defense, state the manner in which the limits have been exhausted or eroded and the amount of exhaustion or erosion.  Identify any and all documents regarding the exhaustion or erosion of the limits of any insurance policy.

RESPONSE:

13.     Identify any deductibles, self-insured retentions or retrospective premium obligations contained in and/or associated with any of the insurance policies identified in your answer to Interrogatory No. 10.

RESPONSE:

14.     Identify and produce any and all documents which refer or relate to the Thornton Claim.

RESPONSE:

15.     Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any communications between you and Hartford relating to (a) the subject matter of this Action, (b) the insurance policies allegedly providing insurance coverage to you in connection with the Thornton Claim, (c) insurance coverage for the Thornton Claim, (d) the Thornton Claim, (e) any Claims asserted against Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff, and/or (f) payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.

RESPONSE:

16.     Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any communications between you and any other insurer, including but not limited to the other defendants in this action, relating to (a) the subject matter of this Action, (b) the insurance policies allegedly providing insurance coverage to you in connection with the Thornton Claim, (c) insurance coverage for the Thornton Claim, (d) the Thornton Claim, (e) any Claims asserted against Plaintiff alleging bodily injury or property damage arising

from exposure to asbestos in products sold, distributed or manufactured by Plaintiff, and/or (f) payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.

RESPONSE:

17.     Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any communications between you and any other person(s) relating to (a) the subject matter of this Action, (b) the insurance policies allegedly providing insurance coverage to you in connection with the Thornton Claim, (c) insurance coverage for the Thornton Claim, (d) the Thornton Claim, (e) any Claims asserted against Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff, and/or (f) payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.

RESPONSE:

18.     Set forth the name of each Person, department, group or division which has or had responsibility for management and oversight of the Thornton Claim on behalf of Plaintiff and set forth the address of each Person, department, group or division at the time they had such responsibility.

RESPONSE:

19.     Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any notice of any accident or occurrence, Claim or suit given by you to Hartford for which you seek coverage under the Hartford Policies in this Action.  Please provide the following information:

(a)    state the date(s) and means by which you gave notice and the Person at Hartford you gave notice to;

(b)    identify the content of the communication(s), whether written or verbal, through which notice was given;

(c)    identify any and all Persons with knowledge of the notice given by you;

(d)    identify any and all documents in your possession, custody or control referring or relating to the notice given;

(e)    state whether any claim for coverage in connection with such notice is pending, settled or withdrawn; and

(f)    identify each response received to each notice given and referred to in your answer to this Interrogatory.

RESPONSE:

20.    Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any notice of any accident or occurrence, Claim or suit given by you to any other insurer(s) for which you seek coverage in this Action.  Please provide the following information:

(a)    state the date(s) and means by which you gave notice, the Person who provided notice, and the Person at each insurer you gave notice to;

(b)    identify the content of the communication(s), whether written or verbal, through which notice was given;

(c)    identify any and all Persons with knowledge of the notice given by you;

(d)    identify any and all documents in your possession, custody or control referring or relating to the notice given;

(e)    state whether any claim for coverage in connection with such notice is pending, settled or withdrawn; and

(f)    identify each response received to each notice given and referred to in your answer to this Interrogatory.

RESPONSE:

21.    Identify and produce any and all documents which refer or relate to any Claims, other than the Thornton Claim, asserted against Plaintiff alleging bodily injury or

property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff.

RESPONSE:

22.     Identify and produce any and all documents which refer or relate to the Claims asserted against Plaintiff in the litigation entitled <u>Donald and Joan Mazzaia, et al. v. A.O. Smith Corporation, et al.</u>, in the Superior Court of Connecticut, Judicial District of Fairfield.

RESPONSE:

23.     Identify and produce any and all documents which refer or relate to the Claims asserted against Plaintiff in the litigation entitled <u>Robert Johnson, et al. v. Alfa Laval, Inc., et al.</u>, case no. 09C-01-239 ASB, in the Superior Court of Delaware, New Castle County.

RESPONSE:

24.     Identify:

(a)     any agreement, whether interim or final, by any insurer to defend or indemnify you with respect to the Thornton Claim;
(b)     any reservation of rights made by any insurer with respect to the Thornton Claim; and
(c)     any and all documents regarding any such agreement or reservation of rights.

RESPONSE:

25.     Identify:

(a)     any agreement, whether interim or final, by any insurer to defend or indemnify you with respect to any Claims, other than the Thornton Claim, asserted against Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff;
(b)     any reservation of rights made by any insurer with respect to any such Claims; and

(c)    any and all documents regarding any such agreement or reservation of rights.

RESPONSE:

26.    Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any notice of any accident or occurrence, Claim or suit given by you to any insurer relating to any Claims, other than the Thornton Claim, asserted against you alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff.  Please provide the following information:

(a)    state the date(s) and means by which you gave notice the Person who provided notice, and the Person you gave notice to;

(b)    identify the content of the communication(s), whether written or verbal, through which notice was given;

(c)    identify any and all Persons with knowledge of the notice given by you;

(d)    identify any and all documents in your possession, custody or control referring or relating to the notice given;

(e)    state whether any claim for coverage in connection with such notice is pending, settled or withdrawn; and

(f)    identify each response received to each notice given and referred to in your answer to this Interrogatory.

RESPONSE:

27.    State the earliest date upon which you became aware of the facts or events resulting in the Thornton Claim.

RESPONSE:

28.    State how you obtained knowledge of the facts or events resulting in the Thornton Claim.

RESPONSE:

29.     Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any indemnity payments made by any Person on your behalf in connection with the Thornton Claim.

RESPONSE:

30.     Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence the payment by you or by any Person on your behalf of defense costs incurred in connection with the defense of the Thornton Claim.

RESPONSE:

31.     Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any and all negotiations relating to the settlement or potential settlement of the Thornton Claim.

RESPONSE:

32.     Identify any and all Persons who have knowledge of the alleged asbestos-containing products sold, distributed or manufactured by Plaintiff, including but not limited to the alleged asbestos-containing product(s) at issue in the Thornton Claim.

RESPONSE:

33.     Provide a breakdown of the costs that you have incurred in connection with the Thornton Claim.  Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.

RESPONSE:

34.     Provide a breakdown of the costs that you have incurred in connection with any other Claims for which you seek damages in this Action.  Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.

RESPONSE:


35.     State the total amount of defense costs you have incurred to date in connection with the Thornton Claim, including the date when each such cost was incurred, the reason each such cost was incurred and/or the particular activity for which each such cost was incurred.  Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.

RESPONSE:


36.     State the total amount of defense costs you are seeking from Hartford in connection with the Thornton Claim and set forth the basis for the calculation of that amount. Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.

RESPONSE:


37.     State the total amount of indemnity costs you are seeking from Hartford in connection with the Thornton Claim and set forth the basis for the calculation of that amount. Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.

RESPONSE:

38.     Identify all amounts paid to you by any insurance companies other than Hartford in connection with the Thornton Claim and produce any and all documents that support or reflect those amounts.

RESPONSE:

39.     Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence the payment by you or on your behalf of any deductibles, self-insured retentions or retrospective premiums associated with any of the Hartford Policies.

RESPONSE:

40.     Set forth the factual basis for your contention that "All applicable conditions precedent to recovery, if any, have been satisfied under each of" the Hartford Policies, as alleged in paragraph 19 of the Complaint.

RESPONSE:

41.     Set forth the factual basis for your contention that "All conditions precedent have been waived and/or will be satisfied upon the exhaustion or unavailability of coverage underlying each of" the Hartford Policies, as alleged in paragraph 19 of the Complaint.

RESPONSE:

42.     State whether Plaintiff has any document retention or destruction policy(ies) applicable to any documents identified in response to these Interrogatories.  If so, identify any and all documents referring or relating to the document retention or destruction policy.

RESPONSE:

43.     Identify each element of damages you seek in this action, including consequential damages, other than monies sought by you under the terms of the policies and alleged policies at issue herein, and for each element of such damages, identify each Person with knowledge of these damages, identify any and all documents relating to the calculation of these damages, and set forth an itemization by dollar amount and date incurred of each such element of damages claimed.

RESPONSE:


44.     Identify any and all Persons, firms, and/or corporations other than you who are known and/or believed to possess any of the documents requested in Hartford's Initial Requests for Production of Documents to Plaintiff, including but not limited to your parents, subsidiaries, divisions, predecessors, successors, and/or affiliates.

RESPONSE:


45.     Identify any and all Persons you consulted in responding to Hartford's Initial Requests for Production of Documents to Plaintiff.

RESPONSE:

# EXHIBIT D

Stephen V. Gimigliano (034091983)
John Maloney (013882001)
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360
Attorneys for Defendants
Hartford Accident and Indemnity Company
and First State Insurance Company

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY (successor to AETNA CASUALTY AND SURETY COMPANY), WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY) and XYZ INSURANCE COMPANIES, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY DOCKET NO.: BER-L-5721-19 <br><br> Civil Action <br><br><br> HARTFORD'S INITIAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFF |

TO:    Donald W. Kiel, Esq.
       Robert F. Pawlowski, Esq.
       K&L Gates LLP
       One Newark Center, Tenth Floor
       Newark, New Jersey 07102-5252
       Attorneys for Plaintiff
       GEA Mechanical Equipment US, Inc.

PLEASE TAKE NOTICE that defendants Hartford Accident and Indemnity Company ("Hartford A&I") and First State Insurance Company ("First State" and together with Hartford A&I, "Hartford") request that, within the time and in the manner prescribed by the New Jersey Court Rules, plaintiff GEA Mechanical Equipment US, Inc. ("Plaintiff") produce the following documents at the offices of Gimigliano Mauriello & Maloney, P.A., 163 Madison Avenue, Suite 500, Morristown, New Jersey, or make such documents available for inspection.

/s/ *John Maloney*
Stephen V. Gimigliano
John Maloney
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360

Attorneys for Defendants
Hartford Accident and Indemnity Company
and First State Insurance Company

Dated: November 22, 2019

INSTRUCTIONS

A.      These requests are intended to be continuing and you are instructed to make prompt, further and supplemental production whenever an additional document is discovered responsive hereto.

B.      If any document called for by these requests is withheld on the ground that it is privileged, constitutes attorney work product, or is for any other reason exempt from discovery, set forth the ground or grounds for withholding such document, its present location and custodian and such additional information as may be required to enable it to be identified and to enable the Court to adjudicate the propriety of the withholding, including but not limited to the type of document, its date, author(s), addressee(s), if different, its recipient(s), and its general subject matter.

C.      Documents produced in response to these requests shall be produced in such a manner so as to identify the specific request to which they relate.

D.      The conjunctions "and" and "or" shall be interpreted as "and/or" and shall be construed disjunctively or conjunctively, as necessary, to include any information which otherwise might be construed to be outside the scope of the request.  No conjunctions shall be construed to limit the scope of the request.

E.      As used herein, any term in the singular shall be deemed to include the plural where appropriate and vice versa.

F.      You are requested to produce all documents in your possession, custody or control, regardless of whether such documents are possessed directly by you, your officers, directors, employees, agents, brokers, representatives, subsidiaries, affiliates, attorneys, accountants or any other person acting or purporting to act on your behalf or under your direction or control.

G.      If any requested document cannot be provided in full, identify each document or portion thereof or information withheld and set forth the reasons it has been withheld.

H.      In the event more than one copy of a document exists, a copy of the original shall be produced, as well as every copy on which appears any notation or marking of any sort not appearing on the original.  For any documents which are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in a manner as to preserve and indicate the file from which such documents were taken.

I.      Your refusal to produce any document or your objection to any request in no way excuses you from timely production of all other documents requested herein.

J.      It is not grounds for objection that the documents sought are within the possession of the party serving these requests.  It is also not grounds for objection that the documents sought are believed by you to be irrelevant or will be inadmissible at trial.  It is also not grounds for objection that the documents sought do not relate to a claim or defense of the party serving these requests.

K.      If it is known that a document was, but no longer is, in your possession or subject to your control, identify that document, state what disposition was made of that document, the reason for such disposition, and identify all persons who may have or who had possession, custody or control of the document or any copies thereof.

<u>DEFINITIONS</u>

As used herein:

A.      "Action" means the litigation entitled <u>GEA Mechanical Equipment US, Inc. v. Federal Ins. Co., et al.</u>, docket no. BER-L-5721-19, in the Superior Court of New Jersey, Bergen County, Law Division.

B.      "Address" means the present or last known street name and number, city or town, state and zip code.

C.      "And" and "or" shall be defined to include both "and " and "or" and shall always be read to require the more inclusive answer.

D.      "Any" means "all" and vice versa.

E.      "Claim(s)" or "Underlying Claim(s)" means any and all property damage or bodily injury claims or demands for money or services arising from Plaintiff or any other Person's historical products and/or operations for which Plaintiff seeks insurance coverage from Hartford in this Action.

F.      "Communication" means any oral or written transmission of information between persons, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, electronic mail, telecopies, telexes, conferences or seminars.

G.      "Complaint" means the First Amended Complaint filed on behalf of Plaintiff in this Action, as well as all prior and subsequent pleading(s) filed by Plaintiff against Hartford.

H.      "Concerning," "relate," "relating to" or "regarding" mean consisting of, referring to, reflecting, concerning or having logical or factual connection with the matter discussed.

I.      "Document" or "documents" means, by way of illustration and not by way of limitation, the following items, whether printed or recorded or reproduced by any other mechanical process, written, produced by hand or produced by or stored in a computer, regardless of origin or location: books, records, communications, reports, correspondence, letters, electronic mail, text messages, data, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, applications, booklets, brochures, catalogues, circulars, magazines, pamphlets, periodicals, bulletins, instructions, minutes, other communications (including but not limited to, inter- and intra-office communications), purchase orders, bills of lading, bid tabulations, questionnaires, surveys, contracts, agreements, options to purchase, memoranda of agreements, assignments, licenses, books of account, orders, invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, cancelled checks, bank statements, bank passbooks, confirmations, statements of accounts, analyses, diaries, graphs, notebooks, charts, tables, maps, sketches, chains of custody, time sheets, manifests, working papers, plans, indices, summaries or records of

meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of accountants or consultants, data sheets, data processing cards, photographs, photographic negatives, phono-records, tape recordings, discs, wire recordings, transcripts of recordings, drawings, motion picture film, advertisements, press releases, drafts, and marginal comments appearing on any such documents, all other written or printed matter of any kind, or any other and all other data compilations from which information can be obtained and translated if necessary.

       J.     "First State" means defendant First State Insurance Company together with its predecessors, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

       K.     "Hartford" means Hartford A&I and First State.

       L.     "Hartford A&I" means defendant Hartford Accident and Indemnity Company together with its predecessors, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

       M.     "Hartford Policies" means insurance policies issued by Hartford to the named insured identified therein, under which you seek coverage in connection with this Action.

       N.     "Insurance" or "insurance policy" means all documents of insurance of any type including, but not limited to, homeowner's insurance, general liability insurance, bodily injury insurance, personal injury insurance, property insurance, environmental impairment liability insurance and pollution liability insurance, whether primary, excess or umbrella, and all insurance policies, cover notes, certificates and binders concerning such insurance, but excluding all policies of insurance that solely and exclusively provide specialized coverage for workers compensation, employers liability, directors and officers liability, automobile or watercraft liability.

       O.     "Person" or "persons" means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

       P.     "Plaintiff," "you," or "your" means plaintiff GEA Mechanical Equipment US, Inc., together with its predecessors, and its past and present parents, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

       Q.     "Thornton Claim" means the Claim asserted against you by Charles E. Thornton and Constance Thornton, including the litigation entitled Thornton v. Alfa Laval, Inc., et al., case no. 2017-6018-CA-01, in the Circuit Court of the 11th Judicial Circuit, Miami-Dade County, Florida.

## DOCUMENTS TO PRODUCE

1.      All documents identified or referred to in your Complaint or relied upon in drafting your Complaint.

2.      All documents which you rely upon to support each allegation set forth in your Complaint, and/or any and all documents which refer or relate, in any way, to the claims or allegations in the Complaint.

3.      All documents used by you in answering or identified in response to Hartford's Initial Interrogatories to Plaintiff.

4.      All documents, including but not limited to all pleadings, correspondence and discovery, relating to the Thornton Claim.

5.      All documents relating to settlement negotiations concerning the Thornton Claim.

6.      All documents and communications reflecting or relating to the sale of any and all products that give rise to your alleged liability for the Thornton Claim, including but not limited to receipts, invoices, product descriptions and purchase/sales records.

7.      All documents and communications reflecting or relating to the commutation, exhaustion and/or erosion of policies under which you seek coverage in this Action, including but not limited to settlement agreements.

8.      All documents and communications reflecting or relating to your decision to retain counsel to defend the Thornton Claim, including but not limited to memoranda, retention agreements, evaluations, analyses, correspondence, emails and reports.

9.      All documents reflecting or relating to all Claims asserted against Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff other than the Thornton Claim.

10.      All documents reflecting or relating to all Claims for which you seek defense or indemnity from Hartford in this Action other than the Thornton Claim.

11.      Any and all documents which constitute, refer or relate to any communications between you and Hartford relating to the subject matter of this Action, the insurance policies that you assert or have previously asserted may provide defense or indemnity to you in connection with the Thornton Claim, defense or indemnity for the Thornton Claim, and/or payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.

12.      Any and all documents which constitute, refer or relate to any communications between you and any other insurer relating to the subject matter of this Action, the insurance policies that you assert or have previously asserted may provide defense or indemnity to you in connection with the Thornton Claim, defense or indemnity for the Thornton Claim, and/or payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.

13.      Any and all documents which constitute, refer or relate to any communications between you and any other Person(s) relating to the subject matter of this Action, the insurance policies that you assert or have previously asserted may provide defense or indemnity to you in connection with the Thornton Claim, defense or indemnity for the Thornton Claim, and/or payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.

14.     Any and all documents which refer or relate to your application for or negotiation of any insurance policy issued to you, or that you assert may provide defense or indemnity to you, in connection with the Thornton Claim.

15.     Any and all documents that constitute, refer to, relate to, reflect or evidence any notice given by you to any insurer, including but not limited to Hartford, through or by which you sought defense or indemnity under any insurance policy in connection with the Thornton Claim.

16.     Any and all documents which refer or relate to payment of premiums, including retrospective premiums, to any insurer, including but not limited to Hartford, for the insurance policies issued to you or that you assert or have previously asserted may provide defense or indemnity to you in connection with the Thornton Claim.

17.     Any and all documents which constitute, evidence, reflect, refer or relate to your calculation and/or payment of retrospective premium obligations under any insurance policies issued by Hartford that you assert or have previously asserted may provide defense or indemnity to you in connection with the Thornton Claim.

18.     All communications and documents exchanged between you and any broker or intermediary broker relating to any insurance policies that you assert or have previously asserted may provide defense or indemnity to you in connection with the Thornton Claim.

19.     All documents produced by any Persons, including but not limited to Marsh USA, in response to any subpoena(s) served by you in connection with this Action.

20.     All communications and documents exchanged between you and any broker or intermediary broker relating to the Thornton Claim.

21.     Any and all documents which refer or relate to the payment by you or by any Person on your behalf of defense costs incurred in connection with the defense of the Thornton Claim.

22.     Any and all documents which refer or relate to the payment by you or by any Person on your behalf for indemnity in connection with the Thornton Claim.

23.     Any and all documents which refer to or reflect your asserted liability for the Thornton Claim, including but not limited to defense costs, indemnity payments, financial reporting documents and/or projections of future liabilities, including but not limited to any projections prepared by a third party on your behalf.

24.     Any and all documents which constitute, evidence, refer or relate to your calculation and/or payment of loss sensitive features, including retrospective premiums, self-insured retentions and/or deductibles, under any insurance policies in connection with the Thornton Claim.

25.     Any and all documents which constitute, evidence, reflect, refer or relate to the payment of indemnity or defense costs incurred by you in connection with the Thornton Claim by other Persons or entities.

26.     All documents that refer to, reflect, evidence or relate to the use or asserted use of asbestos in any products manufactured, marketed, handled, designed or serviced by Plaintiff that are the subject of or are related to any Claims ever asserted against you, including but not limited to the Thornton Claim.

27.     Any and all documents which refer or relate to the asserted date of first exposure to an asbestos-containing product manufactured, sold or distributed by Plaintiff that is the subject of or related to the Thornton Claim.

28.     Any and all manuals, instructions, designs, blueprints or other documents describing, referring or relating to the asserted asbestos-containing products of Plaintiff at issue in any Claims ever asserted against you, including but not limited to the Thornton Claim.

29.     All documents, including but not limited to all pleadings, correspondence and discovery, relating to the Claims asserted against Plaintiff in the litigation entitled Donald and Joan Mazzaia, et al. v. A.O. Smith Corporation, et al., in the Superior Court of Connecticut, Judicial District of Fairfield.

30.     Any and all documents which constitute, refer or relate to any communications between you and any insurer, including Hartford, relating to the Claims asserted against Plaintiff in the litigation entitled Donald and Joan Mazzaia, et al. v. A.O. Smith Corporation, et al., in the Superior Court of Connecticut, Judicial District of Fairfield.

31.     All documents, including but not limited to all pleadings, correspondence and discovery, relating to the Claims asserted against Plaintiff in the litigation entitled Robert Johnson, et al. v. Alfa Laval, Inc., et al., case no. 09C-01-239 ASB, in the Superior Court of Delaware, New Castle County.

32.     Any and all documents which constitute, refer or relate to any communications between you and any insurer, including Hartford, relating to the Claims asserted against Plaintiff in the litigation entitled Robert Johnson, et al. v. Alfa Laval, Inc., et al., case no. 09C-01-239 ASB, in the Superior Court of Delaware, New Castle County.

33.     All documents that refer to, reflect, evidence or relate to your corporate history and corporate transactions, including information related to all predecessor companies referred to in paragraph 4 of the Complaint.

34.     Plaintiff's articles of incorporation and any amendments thereto.

35.     Any and all documents which reflect the corporate history of Plaintiff, corporate transactions and the formation of any subsidiaries, divisions and/or companies during the relevant time period, including but not limited to the corporate history and/or formation of any subsidiary, division and/or company that is asserted to have manufactured, sold and/or distributed asbestos-containing products.

36.     Any and all documents that constitute, refer to, relate to, reflect or evidence any and all insurance policies issued to Plaintiff as referenced in paragraph 4 of the Complaint.

37.     All documents or correspondence which constitute, refer to, reflect, evidence or relate to, in whole or in part, any insurance policies issued to Plaintiff, including without limitation their terms, conditions, existence, application, negotiation, procurement, modification and/or administration.

38.     All minutes, transcripts or notes of meetings, including but not limited to meetings of your Board of Directors and/or Shareholders, which mention, refer to, relate to or address the subject matter of the Action, the insurance policies that you asserted or have previously asserted may provide defense or indemnity to you in connection with the Thornton Claim, defense or indemnity for the Thornton Claim, the decision to seek (or not to seek) defense or indemnity for the Thornton Claim, and/or the allocation of defense and/or indemnity costs in connection with the Thornton Claim.

39.     Any and all documents which refer or relate to your document retention and document destruction policies and procedures relating to documents that refer or relate to (a) sales of the asbestos-containing products of Plaintiff at issue in any Claims ever asserted against

you and/or (b) insurance policies that you allege or have alleged may provide coverage for the

any Claims alleging bodily injury or property damage resulting from exposure to such products.

      40.     Any and all written reports, summaries, abstracts or other documents

prepared by, for, or at the direction of any expert retained by you to testify on your behalf at the

trial of this Action.

      41.     Any and all documents referred to, relied upon, or reviewed by any expert

retained by you to testify on your behalf at the time of trial of this Action.

      42.     A curriculum vitae for each expert retained by you to testify on your

behalf at the time of trial of this Action.

      43.     All invoices, bills or other billing materials for each expert retained by you

to testify on your behalf at the time of trial of this Action.

      44.     Any and all documents upon which you intend to rely at trial.

      45.     Any and all documents that evidence, refer or relate to any statements

made by any person which have been reduced to writing concerning the facts or events

concerning this Action.

      46.     Any and all documents that evidence, refer or relate to any statements

obtained by you, or on your behalf, from any Person which relate to the subject matter of this

Action.

Donald W. Kiel (NJ Bar No. 014371982)
Donald.Kiel@klgates.com
K&L GATES LLP
One Newark Center
Tenth Floor
Newark, New Jersey  07102-5252
973-848-4000

K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613
412-355-6500

*Attorneys for Plaintiff*
*GEA Mechanical Equipment US, Inc.*

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, et al., <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: <br> BERGEN COUNTY <br> DOCKET NO. BER-L-005721-19 <br><br> **CIVIL ACTION** |

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO
## HARTFORD'S INITIAL INTERROGATORIES TO PLAINTIFF

Pursuant to <u>R.</u> 4:17 of the Rules Governing the Courts of the State of New Jersey ("Rules of Court"), Plaintiff GEA Mechanical Equipment US, Inc. ("Plaintiff"), hereby objects and responds to Hartford Accident and Indemnity Company's and First State Insurance Company's (collectively, "Hartford")'s Initial Interrogatories to Plaintiff (the "Interrogatories").

### Preliminary Statement and General Objections

1.      The objections set forth herein apply to each of the Interrogatories and will not be repeated in response to each individual Interrogatory.  The assertion of additional objections to

each individual Interrogatory does not waive any of Plaintiff's objections set forth in the following sections.

2.      Plaintiff objects to the Interrogatories to the extent that they can be construed to impose burdens upon Plaintiff that are greater than or inconsistent with the Rules of Court, any applicable Court order, or other applicable law.

3.      Plaintiff objects to the Interrogatories to the extent that they can be construed to require Plaintiff to produce documents or provide responses that are protected by (a) the attorney-client privilege, (b) the work-product doctrine, (c) the joint-defense privilege, (d) the common-interest privilege, (e) any mediation privilege, (f) an order of confidentiality, or (g) any other legally recognized privilege or immunity from production.  In responding to the Interrogatories, Plaintiff relies upon, asserts, and does not waive each and every such privilege and immunity.  Further, Plaintiff reserves the right to recall, and does not waive any privilege with respect to, any privileged documents inadvertently produced.

4.      Plaintiff objects to the Interrogatories to the extent that they seek (a) trade secrets, (b) confidential information that is protected against disclosure by agreement, stipulation, or order entered in this or any other proceeding, (c) confidential, proprietary, or otherwise sensitive information, or (d) information subject to constitutional, statutory, or common law privacy rights concerning Plaintiff or the underlying asbestos claimants.

5.      Plaintiff objects to the Interrogatories to the extent that they seek information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

6.      Plaintiff objects to the Interrogatories, and in particular to Instruction 3 of the Interrogatories, to the extent that they can be construed to seek information that is not reasonably available to Plaintiff or within its possession, custody, or control.

7.      Plaintiff objects to the Interrogatories to the extent that they seek discovery that is unreasonably duplicative, cumulative, publicly available, equally available to Defendants as to Plaintiff, or obtainable from some other source that is more convenient, less burdensome, or less expensive.

8.      Plaintiff objects to the Interrogatories to the extent that they are vague, ambiguous, overly broad, unduly burdensome, not stated with reasonable particularity, or exceed what is permitted by the Rules of Court.

9.      Plaintiff objects to the Interrogatories to the extent that they can be construed to seek legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the litigation.

10.      Plaintiff objects to the Interrogatories to the extent that they call for legal conclusions.

11.      Plaintiff objects generally to the Interrogatories to the extent that they are premature in that investigation of facts and discovery of documents and other information relating to the claims at issue in this Action is ongoing.  Plaintiff's response to each Interrogatory will be based only upon such documents and information as are available and known to Plaintiff at the time of such response.  Plaintiff anticipates that further investigation and analysis of the claims at issue in this Action may disclose additional information that may be relevant to the

Interrogatories.  Plaintiff reserves the right to revise, correct, supplement, clarify, or amend at any time any and all of its objections and responses to the Interrogatories as additional information is obtained or becomes available or known to Plaintiff.

12.     Plaintiff objects to the Interrogatories to the extent that they seek information regarding asbestos-related bodily injury claims other than those arising from the historical products of Plaintiff.  In responding to these Interrogatories, Plaintiff will respond only with respect to asbestos-related bodily injury claims asserted against Plaintiff and actually or allegedly arising from the historical products of Plaintiff.

13.     Plaintiff objects to the Interrogatories to the extent that an answer may be derived or ascertained from the business records of Plaintiff that have been or will be produced by Plaintiff or other parties in this Action or from an examination, audit, or inspection of such business records, or from a compilation abstract or summary based thereon, or from electronically stored information, and the burden of deriving or ascertaining the answer is substantially the same for Defendants as for Plaintiff.

14.     In providing these objections and responses, Plaintiff does not waive, but rather intends to preserve and is preserving, each of the following: (a) all objections as to competency, relevancy, materiality, authenticity, and admissibility of any information or documents, including but not limited to all information and documents identified herein; (b) all rights to object on any ground to the use in any subsequent proceedings, including trial of this or any other action, of information or documents, including but not limited to information or documents provided herein; and (c) all rights to object on any ground to further discovery requests.

15.     Plaintiff objects to any instructions included with the Interrogatories that are at variance with the requirements of the Rules of Court or any applicable Court order.

16.     Plaintiff objects generally to any instructions requiring it to produce duplicate copies of the same documents.

17.     Plaintiff objects generally to any instructions requiring it to organize information in a way that exceeds the requirements of the Rules of Court.  As permitted under the Rules of Court, documents produced to Hartford will be organized as they are kept in the regular course of business.

18.     Plaintiff objects generally to any instructions requiring it to log individually voluminous privileged and/or work product protected documents and communications generated in connection with underlying or this litigation.  Plaintiff objects that the individualized logging of thousands of e-mails and other communications between and among client representatives, in-house and outside counsel regarding ongoing legal advice and strategy in connection with such litigation imposes disparate and unreasonable burdens on Plaintiff with no corresponding legitimate benefit to discovery in this matter.

19.     Plaintiff objects to the definitions included with the Interrogatories to the extent that they attempt to alter the plain meaning or understanding of any term and to the extent that they exceed, contradict, or attempt to impose an obligation greater than that imposed by the Rules of Court, any other applicable procedural rules, case law, or statutes governing the proper scope of discovery, or any applicable Court order.  To the extent that any definition in the Interrogatories exceeds the ordinary and commonly understood meaning for such term, or exceeds the requirements of the Rules of Court, Plaintiff will ascribe the ordinary and commonly understood meanings to such terms and will comply with the Rules of Court.

20.     Plaintiff objects to the definitions of "you," "your," and "Plaintiff" contained in the Interrogatories on the grounds that they are overly broad, impose undue burden, and seek discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence because these terms, as defined by the Interrogatories, seek to encompass entities other than Plaintiff or its predecessors.  The Interrogatories define "you," "your," and "Plaintiff" to include not only Plaintiff GEA Mechanical Equipment US, Inc., but also any of Plaintiff's "predecessors, and its past or present parents, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf[.]"  As such, the Interrogatories seek to obtain documents from distinct entities other than Plaintiff.  Plaintiff will interpret the terms "you," "your," and "plaintiff" to refer only to the Plaintiff named in the Complaint, its relevant predecessors, and its relevant agents.

21.     Plaintiff objects to the definition of "Insurance" or "Insurance Policy" contained in the Interrogatories on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it includes insurance policies that do not provide coverage for asbestos-related bodily injury claims.  Plaintiff will interpret the term "Insurance Policy" or "Policy" to refer only to insurance policies that provide coverage for asbestos-related bodily injury claims.

22.     Plaintiff objects to the definition of "Identify" contained in the Interrogatories on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects insofar as the definition seeks

details that may be derived or ascertained by examining, auditing, or inspecting Plaintiff's

business records that have been or will be produced by Plaintiff or other parties in this Action

and the burden of deriving or ascertaining the answer is substantially the same for Defendants as

it is for Plaintiff

23.     Any objection or lack of objection to any portion of the Interrogatories shall not

constitute an admission that Plaintiff has any information within the scope of any particular

Interrogatory.  Plaintiff reserves the right to amend or supplement these responses and objections

if Plaintiff learns of new facts through discovery or otherwise and will supplement these

responses to the extent required.

<u>**Specific Responses and Objections**</u>

**1.     Identify all Persons having relevant knowledge of any facts and/or information
relating to this Action.**

<u>**RESPONSE:**</u>

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad
and unduly burdensome.  Plaintiff further objects to this Interrogatory to the extent that it is
duplicative of and cumulative with other discovery already served on Plaintiff and/or included in
this set of Interrogatories.  Subject to and without waiving the foregoing objections, Plaintiff
responds as follows:

Plaintiff identifies the following individuals:

- Jamieson Greig, General Counsel and Company Compliance Officer, GEA Mechanical
  Equipment US, Inc., c/o K&L Gates;

- Bastian Laue, Senior Director, Head of Legal Operations BA Equipment, GEA Group
  Aktiengesellschaft, c/o K&L Gates;

- Stephan Petri, General Counsel / Chief Compliance Officer, GEA Group
  Aktiengesellschaft, c/o K&L Gates;

- Arcina Risk Group, 835 Wilshire Blvd. Suite 400, Los Angeles, CA 90017;

- Gray Robinson, 333 S.E. 2nd Avenue, Suite 3200, Miami, FL 33131;

- Miles & Stockbridge, 100 Light Street, Baltimore, MD 21202

- Shapiro Blasi Wasserman Hermann, 7777 Glades Rd, Suite 400, Boca Raton, FL 33434;

- Brown & Brown, Inc. (successor to Hays Companies), 220 S. Ridgewood Ave, Daytona Beach, FL 32114; and

- Marsh USA, 1166 Avenue of the Americas, 23rd Floor, New York, NY 10036-2774.

Plaintiff also identifies all Defendants, including dismissed defendants, in this Action.  Plaintiff further responds that the identity of additional Persons responsive to this Interrogatory may be identified by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Plaintiff reserves the right to amend this answer to set forth the identities of additional Persons responsive to this Interrogatory.


2.      **Identify all Persons having relevant knowledge of any facts and/or information relating to the Thornton Claim.**

**<u>RESPONSE:</u>**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.  Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff identifies the following individuals:

- Jamieson Greig, General Counsel and Company Compliance Officer, GEA Mechanical Equipment US, Inc., c/o K&L Gates;

- Bastian Laue, Senior Director, Head of Legal Operations BA Equipment, GEA Group Aktiengesellschaft, c/o K&L Gates;

- Stephan Petri, General Counsel / Chief Compliance Officer, GEA Group Aktiengesellschaft, c/o K&L Gates;

- Gray Robinson, 333 S.E. 2nd Avenue, Suite 3200, Miami, FL 33131;

- Shapiro Blasi Wasserman Hermann, 7777 Glades Rd, Suite 400, Boca Raton, FL 33434; and

- Miles & Stockbridge, 100 Light Street, Baltimore, MD 21202.

Plaintiff also identifies all Defendants, including dismissed defendants, in this Action.  Plaintiff further responds that the identity of additional Persons responsive to this Interrogatory may be identified by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Plaintiff reserves the right to amend this answer to set forth the identities of additional Persons responsive to this Interrogatory.

3.      **Identify each Person who provided information used to prepare answers to these Interrogatories and set forth the number of each Interrogatory with respect to which they provided any information.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.  Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff identifies the following individuals:

- Jamieson Greig, General Counsel and Company Compliance Officer, GEA Mechanical Equipment US, Inc., c/o K&L Gates;

- Bastian Laue, Senior Director, Head of Legal Operations BA Equipment, GEA Group Aktiengesellschaft, c/o K&L Gates;

- Stephan Petri, General Counsel / Chief Compliance Officer, GEA Group Aktiengesellschaft, c/o K&L Gates;

- Gray Robinson, 333 S.E. 2nd Avenue, Suite 3200, Miami, FL 33131;

- Shapiro Blasi Wasserman Hermann, 7777 Glades Rd, Suite 400, Boca Raton, FL 33434; and

- Miles & Stockbridge, 100 Light Street, Baltimore, MD 21202.

Plaintiff also identifies all Defendants, including dismissed defendants, in this Action.  Plaintiff further responds that the identity of additional Persons responsive to this Interrogatory may be identified by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Plaintiff reserves the right to amend this answer to set forth the identities of additional Persons responsive to this Interrogatory.

4.      **State the name, address, title and job description of the Person(s) answering these Interrogatories.**

**RESPONSE:**

Jamieson Greig, General Counsel and Company Compliance Officer, GEA Mechanical Equipment US, Inc., c/o K&L Gates.

5.      **Set forth all facts and/or information (not legal conclusions) you relied upon in support of your Complaint and identify all Persons having knowledge of such facts and/or information.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information. Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing. Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure. Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving any of the foregoing objections, Plaintiff refers Hartford to Plaintiff's Response to Hartford's Interrogatory Nos. 1 and 2 and to other relevant documents produced in this matter. Plaintiff further responds that additional individuals with knowledge of facts may be identified by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

6.    **If any party to this litigation has made an admission, set forth in detail:**

    **(a) the identity(ies) of the party and the individual(s) making the alleged admission;**

    **(b) the date and place that each admission was made;**

    **(c) the substance of each admission;**

    **(d) the identity of each person to whom each admission was made;**

    **(e) the identity of any and all Persons present when each admission was made; and**

    **(f) the identity of any document(s) that evidence or relate to any of the admissions identified in your response to this interrogatory.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Interrogatory on the grounds that it seeks legal conclusions. Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing. Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff. Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the

possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff. Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.

Subject to and without waiving the foregoing objections, Plaintiff states that all documents authored by or on behalf of a Defendant or statement by or on behalf of a Defendant is an admission, and Plaintiff refers to all such documents and statements.

7. **Identify any and all experts retained by you to testify on your behalf at the time of trial. Annex hereto a true copy of each expert's current curriculum vitae. Identify and furnish a copy of each report from each such expert setting forth each opinion to which the expert will testify at trial together with the facts and documentary references upon which the expert will rely to support his/her opinion. With respect to each expert identified:**

   **(a) provide a list of any articles, reports or other writings authored by the expert;**

   **(b) identify each administrative or adjudicative proceeding in which the expert has testified in writing or orally;**

   **(c) provide the subject matter upon which each expert is expected to testify; and**

   **(d) provide a summary of the grounds for each opinion which the expert is expected to testify to in advance.**

### RESPONSE:

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information. Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing. Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure. Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that, at this time, it has not currently retained any experts to testify at trial and no such relevant, discoverable, or non-privileged documents exist in Plaintiff's care, custody, or control. Plaintiff will provide all testifying expert-related documents and information only as required by the Rules of Court and New Jersey law at the time set forth in any order specifying the date for production of expert-related materials.

8.     **Set forth the corporate history of Plaintiff and identify:**

**(a) all predecessors in interest by full corporate name, state of incorporation, date of incorporation and principal place of business;**

**(b) all entities which merged into you;**

**(c) all entities which merged to form you;**

**(d) as to each merger or acquisition, set forth the date it became effective and give a summary of the transaction;**

**(e) all documents which touch or concern each transaction;**

**(f) every state in which you maintain or have maintained your principal place of business;**

**(g) every state in which you were or have been incorporated and the dates of each such incorporation;**

**(h) each of your parent corporations or subsidiary or affiliated corporations, including the full corporate name, state of incorporation, date of incorporation and principal place of business;**

**(i) each of your successor corporations by full corporate name, state of incorporation, date of incorporation and principal place of business;**

**(j) all locations in which you, or any parent, subsidiary, affiliated corporation, predecessor, or successor engaged in operations, together with a brief description of the activities conducted at each location and applicable dates; and**

**(k) all transactions, including but not limited to the sale of any business, division, company, corporation, subsidiary and/or affiliate, concerning the operations of any business, division, company, corporation, subsidiary or affiliate alleged to be involved in the Thornton Claim.**

**<u>RESPONSE:</u>**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it seeks discovery of information regarding entities other than the Plaintiff, its relevant predecessors, and its relevant agents. Plaintiff further objects to this Interrogatory on the grounds that the definition of "you" is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it includes persons other than the Plaintiff named in the Complaint, its predecessors, and its agents. Plaintiff will interpret the term "you" to refer only to the Plaintiff named in the Complaint, its relevant predecessors, and relevant agents. Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information. Plaintiff further objects to this Interrogatory to the extent that it seeks

documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure. Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Plaintiff further responds that it will make available for inspection relevant, discoverable, and non-privileged documents sufficient to show the corporate history of the Plaintiff and relevant predecessor companies referred to in paragraphs 3-4 of the Complaint, as well as any amendments thereto.

9.      **Identify the structure of Plaintiff and its predecessors-in-interest (including charts showing each division and all directors and officers of each division) before and after each transaction referred to in your answer to the immediately preceding Interrogatory. If any organizational chart requested does not exist, describe the organization of the entities before and after each transaction.**

**<u>RESPONSE:</u>**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it seeks discovery of information regarding entities other than the Plaintiff, its relevant predecessors, and its relevant agents. Plaintiff further objects to this Interrogatory on the grounds that the definition of "you" is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it includes persons other than the Plaintiff named in the Complaint, its predecessors, and its agents.  Plaintiff will interpret the term "you" to refer only to the Plaintiff named in the Complaint, its relevant predecessors, and relevant agents.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure. Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that

have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Plaintiff further responds that it will make available for inspection relevant, discoverable, and non-privileged documents sufficient to show the structure and corporate history of the Plaintiff and relevant predecessor companies as referred to in paragraphs 3-4 of the First Amended Complaint, and any amendments thereto.

**10.  Identify any and all insurance policies issued to you or allegedly providing liability insurance coverage to you during the relevant time period and/or in connection with the Thornton Claim and/or under which you seek coverage in this Action. For each policy identified:**

**(a) state the policy number, policy period and insurer issuing the policy;**

**(b) state the nature of coverage offered by the policy (i.e., comprehensive general liability);**

**(c) state the policy limits (including, if applicable, all per year, per person, per claim, per occurrence and aggregate limits) and the type of claims subject to the limits;**

**(d) state whether the policy is primary, excess or umbrella;**

**(e) if the policy is an excess or umbrella policy, state the amounts of underlying insurance above which the policy provides coverage and the extent to which any applicable underlying insurance has been exhausted;**

**(f) state whether the policy contains an asbestos exclusion and, if so, set forth the terms of the exclusion;**

**(g) state whether you possess a copy of the policy. If not, state the basis for your belief that the policy was issued, and identify any and all documents which constitute, refer to, relate to, reflect or evidence the policy or its possible existence or nonexistence;**

**(h) identify any and all of your officers, directors or employees with knowledge of the terms, conditions, construction, implementation, application or administration of any of the insurance policies identified in response to this Interrogatory and set forth the Person's dates of employment and job title(s) while employed by you; and**

**(i) identify any and all documents in your possession, custody or control that refer or relate to the terms, conditions, construction, implementation, application or administration of the insurance policies identified in these answers to Interrogatories and at issue in this litigation.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or

otherwise sensitive information.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it requires legal conclusions.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.  Plaintiff further objects to this Interrogatory on the grounds that the definition of "Insurance" or "Insurance Policy" is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it includes insurance policies that do not provide coverage for asbestos-related claims.  Plaintiff will interpret the term "Insurance" or "Insurance Policy" to refer only to insurance policies that provide coverage for asbestos-related claims.  Plaintiff further objects to this Interrogatory on the grounds that the definition of "you" is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it includes persons other than the Plaintiff named in the Complaint, its predecessors, and its agents.  Plaintiff will interpret the term "you" to refer only to the Plaintiff named in the Complaint, its relevant predecessors, and relevant agents.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer to Subparts (a) through (i) may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action, in particular the insurance policies already produced by Plaintiff in this Action, and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Answering further, in response to Subpart (a), Plaintiff refers Hartford to Exhibit A of the Complaint, and any amendments or revisions thereto.  In response to Subpart (g), Plaintiff answers that it has produced, or will produce, its copies, if any, of all insurance policies relevant to this Action as well as documents relevant to the existence and terms of the coverage.


11.  **Set forth the name of each entity which you claim is an insured under any insurance policy identified in your answer to Interrogatory No. 10. For each entity named, set forth:**

   **(a) each insurance policy at issue which you claim insures the entity;**

   **(b) the state of incorporation of the entity and date incorporated;**

   **(c) the entity's principal place(s) of business, together with applicable dates; and**

   **(d) all locations at which such entity conducted operations, together with all applicable dates.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it seeks discovery of information regarding entities other than the Plaintiff, its predecessors, and its agents.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it requires legal conclusions.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff answers that at all times relevant to the coverage sought in this Action, Centrico, Inc. (predecessor to GEA Mechanical Equipment US, Inc.) was incorporated in the state of New Jersey and its principal place of business was located in Northvale, New Jersey.  Answering further, Plaintiff refers Hartford to the Complaint, which sets forth the relevant corporate history of Plaintiff and its relevant predecessors.  Plaintiff further responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

12.     For each insurance policy identified in your answer to Interrogatory No. 10, set forth the extent to which its limits have been exhausted or eroded by payments made under the policy and identify the basis of the payments that have exhausted or eroded the limits.  If you claim that limits have been exhausted or eroded other than by payment of claims or costs of defense, state the manner in which the limits have been exhausted or eroded and the amount of exhaustion or erosion. Identify any and all documents regarding the exhaustion or erosion of the limits of any insurance policy.

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it

seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it requires legal conclusions.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

13.     **Identify any deductibles, self-insured retentions or retrospective premium obligations contained in and/or associated with any of the insurance policies identified in your answer to Interrogatory No. 10.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it requires legal conclusions.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action, in particular the insurance policies already produced by Plaintiff in this Action, and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

14.     **Identify and produce any and all documents which refer or relate to the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably

calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

15.    **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any communications between you and Hartford relating to (a) the subject matter of this Action, (b) the insurance policies allegedly providing insurance coverage to you in connection with the Thornton Claim, (c) insurance coverage for the Thornton Claim, (d) the Thornton Claim, (e) any Claims asserted against Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff, and/or (f) payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

16.     **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any communications between you and any other insurer, including but not limited to the other defendants in this action, relating to (a) the subject matter of this Action, (b) the insurance policies allegedly providing insurance coverage to you in connection with the Thornton Claim, (c) insurance coverage for the Thornton Claim, (d) the Thornton Claim, (e) any Claims asserted against Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff, and/or (f) payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

17.     **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any communications between you and any other person(s) relating to (a) the subject matter of this Action, (b) the insurance policies allegedly providing insurance coverage to you in connection with the Thornton Claim, (c) insurance coverage for the Thornton Claim, (d) the Thornton Claim, (e) any Claims asserted against Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff, and/or (f) payment and/or allocation of defense and indemnity costs in connection with the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

18.     **Set forth the name of each Person, department, group or division which has or had responsibility for management and oversight of the Thornton Claim on behalf of Plaintiff and set forth the address of each Person, department, group or division at the time they had such responsibility.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff identifies Jamieson Greig, General Counsel and Company Compliance Officer, GEA Mechanical Equipment US, Inc., c/o K&L Gates.  Plaintiff further responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced

in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

19. **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any notice of any accident or occurrence, Claim or suit given by you to Hartford for which you seek coverage under the Hartford Policies in this Action. Please provide the following information:**

(a) **state the date(s) and means by which you gave notice and the Person at Hartford you gave notice to;**

(b) **identify the content of the communication(s), whether written or verbal, through which notice was given;**

(c) **identify any and all Persons with knowledge of the notice given by you;**

(d) **identify any and all documents in your possession, custody or control referring or relating to the notice given;**

(e) **state whether any claim for coverage in connection with such notice is pending, settled or withdrawn; and**

(f) **identify each response received to each notice given and referred to in your answer to this Interrogatory.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is vague and ambiguous, particularly with regard to whether the phrase "in this Action" modifies the term "Hartford Policies" or the phrase "any accident or occurrence, Claim or suit given by you to Hartford for which you seek coverage[.]"  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing and that it is premature to the extent that the Action seeks declaratory judgment regarding obligations arising from Future Underlying Actions that may be asserted against Plaintiff in the future.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer to this Interrogatory may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Answering further with regard to Subpart (c), Plaintiff identifies Jamieson Greig, General Counsel and Company Compliance Officer, GEA Mechanical Equipment US, Inc., c/o K&L Gates.  Answering further with regard to Subpart (e), Plaintiff responds that its claim for coverage is one of the pending issues in this Action.

20.   **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any notice of any accident or occurrence, Claim or suit given by you to any other insurer(s) for which you seek coverage in this Action. Please provide the following information:**

**(a) state the date(s) and means by which you gave notice, the Person who provided notice, and the Person at each insurer you gave notice to;**

**(b) identify the content of the communication(s), whether written or verbal, through which notice was given;**

**(c) identify any and all Persons with knowledge of the notice given by you;**

**(d) identify any and all documents in your possession, custody or control referring or relating to the notice given;**

**(e) state whether any claim for coverage in connection with such notice is pending, settled or withdrawn; and**

**(f) identify each response received to each notice given and referred to in your answer to this Interrogatory.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is vague and ambiguous, particularly with regard to whether the phrase "in this Action" modifies the term "Hartford Policies" or the phrase "any accident or occurrence, Claim or suit given by you to Hartford for which you seek coverage[.]"  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing and that it is premature to the extent that the Action seeks declaratory judgment regarding obligations arising from Future Underlying Actions that may be asserted against Plaintiff in the future.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory

to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer to this Interrogatory may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Answering further with regard to Subpart (c), Plaintiff identifies Jamieson Greig, General Counsel and Company Compliance Officer, GEA Mechanical Equipment US, Inc., c/o K&L Gates. Answering further with regard to Subpart (e), Plaintiff responds that its claims for coverage are pending issues in this Action.

21.   **Identify and produce any and all documents which refer or relate to any Claims, other than the Thornton Claim, asserted against Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

22.   **Identify and produce any and all documents which refer or relate to the Claims asserted against Plaintiff in the litigation entitled <u>Donald and Joan Mazzaia, et al. v. A.O. Smith Corporation, et al.,</u> in the Superior Court of Connecticut, Judicial District of Fairfield.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

23.     **Identify and produce any and all documents which refer or relate to the Claims asserted against Plaintiff in the litigation entitled <u>Robert Johnson, et al. v. Alfa Laval, Inc., et al.</u>, case no. 09C-01-239 ASB, in the Superior Court of Delaware, New Castle County.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

24.    **Identify:**

    **(a) any agreement, whether interim or final, by any insurer to defend or indemnify you with respect to the Thornton Claim;**

    **(b) any reservation of rights made by any insurer with respect to the Thornton Claim; and**

    **(c) any and all documents regarding any such agreement or reservation of rights.**

**RESPONSE:**

Plaintiff objects to Subparts (a) and (b) of this Interrogatory on the grounds that they are vague and ambiguous.  Plaintiff further objects to Subpart (c) of this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff answers that, insofar as the phrase "any agreement . . . to defend or indemnify" refers to insurance policies, Plaintiff refers Hartford to Plaintiff's Response to Hartford's Interrogatory No. 10.  Answering further, Plaintiff responds that it is currently unaware of any other agreements by an insurer to defend or indemnify Plaintiff with regard to the Thornton Claim.  With regard to Subparts (b) and (c), Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

25.    **Identify:**

    **(a) any agreement, whether interim or final, by any insurer to defend or indemnify you with respect to any Claims, other than the Thornton Claim, asserted against**

**Plaintiff alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff;**

**(b) any reservation of rights made by any insurer with respect to any such Claims; and**

**(c) any and all documents regarding any such agreement or reservation of rights.**

**<u>RESPONSE:</u>**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks documents or information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff answers that, insofar as the phrase "any agreement . . . to defend or indemnify" refers to insurance policies, Plaintiff refers Hartford to Plaintiff's Response to Hartford's Interrogatory No. 10 and to other relevant documents produced in this matter.  Answering further, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

26.    **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any notice of any accident or occurrence, Claim or suit given by you to any insurer relating to any Claims, other than the Thornton Claim, asserted against you alleging bodily injury or property damage arising from exposure to asbestos in products sold, distributed or manufactured by Plaintiff. Please provide the following information:**

**(a) state the date(s) and means by which you gave notice[,] the Person who provided notice, and the Person you gave notice to;**

**(b) identify the content of the communication(s), whether written or verbal, through which notice was given;**

**(c) identify any and all Persons with knowledge of the notice given by you;**

**(d) identify any and all documents in your possession, custody or control referring or relating to the notice given;**

**(e) state whether any claim for coverage in connection with such notice is pending, settled or withdrawn; and**

**(f) identify each response received to each notice given and referred to in your answer to this Interrogatory.**

## RESPONSE:

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer to this Interrogatory, if any, may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

**27.     State the earliest date upon which you became aware of the facts or events resulting in the Thornton Claim.**

## RESPONSE:

Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it requires legal conclusions regarding what facts or events "result[ed]" in the Thornton Claim.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already

served on Plaintiff and/or included in this set of Interrogatories.  Plaintiff further objects to this Interrogatory on the grounds that the definition of "you" is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it includes persons other than the Plaintiff, its predecessors, and its agents.  Plaintiff will interpret the term "you" to refer only to the Plaintiff named in the Complaint, its relevant predecessors, and relevant agents.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

**28.     State how you obtained knowledge of the facts or events resulting in the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it requires legal conclusions regarding what facts or events "result[ed]" in the Thornton Claim.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.  Plaintiff further objects to this Interrogatory on the grounds that the definition of "you" is overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent that it includes persons other than the Plaintiff, its predecessors, and its agents.  Plaintiff will interpret the term "you" to refer only to the Plaintiff named in the Complaint, its relevant predecessors, and relevant agents.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Answering further, Plaintiff responds that it became aware of the Thornton claim as a result of the litigation initiated against GEA Process Engineering Inc.

29.     **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any indemnity payments made by any Person on your behalf in connection with the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks documents or information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Answering further, Plaintiff responds that it is not currently aware of any indemnity payments that have been made on its behalf in connection with the Thornton Claim.

30.     **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence the payment by you or by any Person on your behalf of defense costs incurred in connection with the defense of the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

31.     **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence any and all negotiations relating to the settlement or potential settlement of the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

**32.**     **Identify any and all Persons who have knowledge of the alleged asbestos-containing products sold, distributed or manufactured by Plaintiff, including but not limited to the alleged asbestos-containing product(s) at issue in the Thornton Claim.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff also objects to this Interrogatory to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

**33.**     **Provide a breakdown of the costs that you have incurred in connection with the Thornton Claim. Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that it incurred costs in the amount      Redacted      in connection with the Thornton Claim.  Answering further, Plaintiff responds that the identification of documents responsive to this Interrogatory may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

**34.**     **Provide a breakdown of the costs that you have incurred in connection with any other Claims for which you seek damages in this Action. Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff will interpret the term "other Claims" to refer to any known Future Underlying Actions, as that term is defined in the Complaint.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because fact discovery is ongoing and also to the extent that the Action seeks declaratory judgment regarding obligations arising from Future Underlying Actions that may be asserted against Plaintiff in the future.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks

documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure. Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information that are already in the possession of Hartford, its counsel, or other representatives, or that are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections and without waiving its right to seek damages for any costs incurred in the future, Plaintiff responds that it is not currently aware of any costs for which it is seeking damages that have been incurred in connection with any "other Claims[.]"

**35.**    **State the total amount of defense costs you have incurred to date in connection with the Thornton Claim, including the date when each such cost was incurred, the reason each such cost was incurred and/or the particular activity for which each such cost was incurred. Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.**

**<u>RESPONSE:</u>**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

**36.**    **State the total amount of defense costs you are seeking from Hartford in connection with the Thornton Claim and set forth the basis for the calculation of that amount. Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.**

**<u>RESPONSE:</u>**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither

relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory as premature to the extent that it seeks legal conclusions.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that it is not seeking legal defense costs from Hartford in connection with the Thornton Claim.

37.     **State the total amount of indemnity costs you are seeking from Hartford in connection with the Thornton Claim and set forth the basis for the calculation of that amount. Identify any and all documents which reflect, refer or relate to the costs identified in this Interrogatory.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks information that is protected from discovery by any applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory as premature to the extent that it seeks legal conclusions including, *inter alia*, with regard to issues of allocation. Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that it is seeking Hartford's allocated share under applicable law of        Redacted        in indemnity costs in connection with the Thornton Claim.

38.     **Identify all amounts paid to you by any insurance companies other than Hartford in connection with the Thornton Claim and produce any and all documents that support or reflect those amounts.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks documents or information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Answering further, Plaintiff responds that it is not currently aware of any amounts paid to it by an insurance company in connection with the Thornton Claim.

39.     **Identify and produce any and all documents which constitute, refer to, relate to, reflect or evidence the payment by you or on your behalf of any deductibles, self-insured retentions or retrospective premiums associated with any of the Hartford Policies.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks discovery that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it seeks legal conclusions.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

40.     **Set forth the factual basis for your contention that "All applicable conditions precedent to recovery, if any, have been satisfied under each of" the Hartford Policies, as alleged in paragraph 19 of the Complaint.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  Plaintiff further objects to this Interrogatory on the grounds that the definition of "Complaint" as used in this Interrogatory is ambiguous and vague, particularly to the extent that it refers to a particular paragraph but also includes "all prior and subsequent pleading(s)" which could contain changes in the relevant paragraph numbering.  Plaintiff will interpret the term "paragraph 19 of the Complaint" to refer to paragraph 19 of the First Amended Complaint and any renumbered, but materially-identical, paragraphs in subsequent pleadings, if

any.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it seeks legal conclusions.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

41.     **Set forth the factual basis for your contention that "All conditions precedent have been waived and/or will be satisfied upon the exhaustion or unavailability of coverage underlying each of" the Hartford Policies, as alleged in paragraph 19 of the Complaint.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  Plaintiff further objects to this Interrogatory on the grounds that the definition of "Complaint" as used in this Interrogatory is ambiguous and vague, particularly to the extent that it refers to a particular paragraph but also includes "all prior and subsequent pleading(s)" which could contain changes in the relevant paragraph numbering.  Plaintiff will interpret the term "paragraph 19 of the Complaint" to refer to paragraph 19 of the First Amended Complaint and any renumbered, but materially-identical, paragraphs in subsequent pleadings, if any.  Plaintiff further objects to this Interrogatory to the extent that it assumes facts that are not necessarily true.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it seeks legal conclusions.  Plaintiff further objects to this Interrogatory on the grounds that it is premature because it seeks contentions while fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.

42.     **State whether Plaintiff has any document retention or destruction policy(ies) applicable to any documents identified in response to these Interrogatories. If so, identify any and all documents referring or relating to the document retention or destruction policy.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks documents or information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that it has no document retention or destruction policies that would be responsive to this Interrogatory.

43.     **Identify each element of damages you seek in this action, including consequential damages, other than monies sought by you under the terms of the policies and alleged policies at issue herein, and for each element of such damages, identify each Person with knowledge of these damages, identify any and all documents relating to the calculation of these damages, and set forth an itemization by dollar amount and date incurred of each such element of damages claimed.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  Plaintiff further objects to this Interrogatory on the grounds that it is premature to the extent that the Action seeks declaratory judgment regarding obligations arising Future Underlying Actions that may be asserted against Plaintiff in the future.  The Interrogatory is also premature insofar as certain elements of these damages, and the facts supporting the damages, are not yet determinable at this stage of litigation.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections and without waiving its right to seek damages for any costs incurred in the future, Plaintiff answers that, in addition to amounts owed under the terms of the policies, Plaintiff seeks damages available as supplemental relief under

N.J.S.A. 2A:16-60, together with pre- and post-judgment interest, reasonable attorneys' fees and costs incurred in this Action, and any other relief the Court may deem just and proper.

**44.    Identify any and all Persons, firms, and/or corporations other than you who are known and/or believed to possess any of the documents requested in Hartford's Initial Requests for Production of Documents to Plaintiff, including but not limited to your parents, subsidiaries, divisions, predecessors, successors, and/or affiliates.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks documents or information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff will interpret this Interrogatory so as not to include any entities that "possess" documents that remain under the custody and control of Plaintiff.  Plaintiff further objects to this Interrogatory on the grounds that it is premature at this stage of the litigation because fact discovery is ongoing.  Plaintiff further objects to this Interrogatory to the extent that it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure. Plaintiff also objects to this Interrogatory, and in particular to the definition of "Identify" as applied in this Interrogatory, to the extent that it seeks documents or information which are publicly available and which are equally available to Hartford as to Plaintiff.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds that an answer may be derived or ascertained by examining, auditing, or inspecting Plaintiff's business records that have been or will be produced in this Action and the burden of deriving or ascertaining the answer is substantially the same for Defendants as it is for Plaintiff.  Answering further, Plaintiff identifies: (a) each of the Defendants in this Action; (b) Marsh USA (as successor to Fred S. James & Co. of New York, Inc. and Sedgwick James of New York, Inc.); and (c) Brown & Brown, Inc. (as successor to Hays Companies).

**45.    Identify any and all Persons you consulted in responding to Hartford's Initial Requests for Production of Documents to Plaintiff.**

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time or scope, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory to the extent that

it seeks confidential, proprietary, or otherwise sensitive information.  Plaintiff further objects to this Interrogatory to the extent that it seeks documents or information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable protection, immunity, or restriction from disclosure.  Plaintiff further objects to this Interrogatory to the extent that it is duplicative of and cumulative with other discovery already served on Plaintiff and/or included in this set of Interrogatories.

As to Objections:

**K&L GATES LLP**

By: _____

David F. McGonigle (*pro hac vice* application to be submitted)
Joseph C. Safar (*pro hac vice* application to be submitted)
Erin D. Fleury (*pro hac vice* application to be submitted)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613

-and-

Donald W. Kiel
Robert F. Pawlowski
K&L GATES LLP
One Newark Center
Tenth Floor
Newark, New Jersey  07102-5252

Dated: January 28, 2020

Attorneys for Plaintiff,
GEA Mechanical Equipment US, Inc.

-38-

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, et al.,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:<br>BERGEN COUNTY<br>DOCKET NO. BER-L-005721-19<br><br>**CIVIL ACTION** |

## <u>VERIFICATION</u>

STATE OF NEW JERSEY       )
                              )
COUNTY OF BERGEN        )

      I, Jamieson Greig, hereby certify as follows:

      I am General Counsel and Company Compliance Officer of GEA Mechanical Equipment US, Inc., and I verify that I have read the foregoing Plaintiff's Responses and Objections to Hartford's Initial Interrogatories to Plaintiff (the "Responses"). I am informed that the facts stated therein have been assembled by authorized employees and/or counsel of GEA Mechanical Equipment US, Inc., and I believe that the Responses are true and correct to the best of my knowledge, information, and belief.

      I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: January 28, 2020

                                        _____
                                        Jamieson Greig

## <u>CERTIFICATE OF SERVICE</u>

I, Donald Kiel, hereby certify on this 28th day of January 2020, that a true and correct copy of the foregoing **PLAINTIFF'S RESPONSES AND OBJECTIONS TO HARTFORD'S INITIAL INTERROGATORIES TO PLAINTIFF** is being served via electronic mail on all counsel of record, as set forth on the attached Service List, with the original being served via First Class U.S. Mail upon:

Stephen V. Gimigliano, Esquire
John Maloney, Esquire
Gimigliano Mauriello & Maloney
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, NJ 07962-1449

*Counsel for Defendants*
*Hartford Accident and Indemnity Company and First State Insurance Company*

Donald W. Kiel

**GEA Mechanical Equipment US, Inc. v. Federal Insurance Company, et al.,
Docket No. BER-L-005721-19 (N.J. Super. Bergen C'ty)**

**Service List**

| PARTY | COUNSEL |
|---|---|
| Federal Insurance Company | Lawrence A. Nathanson, Esquire<br>Cohn Baughman & Serlin<br>533 Fellowship Road<br>Mount Laurel, NJ 08054<br>Tel:  856-380-8910<br>E-mail:  lawrence.nathanson@mclolaw.com |
| Hartford Accident and Indemnity Company and First State Insurance Company | Stephen V. Gimigliano, Esquire<br>John Maloney, Esquire<br>Christopher Kim, Esquire<br>Gimigliano Mauriello & Maloney<br>163 Madison Avenue, Suite 500<br>P.O. Box 1449<br>Morristown, NJ 07962-1449<br>Tel:  973-946-8346 (Gimigliano DD)<br>Tel:  973-946-8302 (Maloney DD)<br>E-mail:  sgimigliano@lawgmm.com<br>          jmaloney@lawgmm.com<br>          ckim@lawgmm.com |
| Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company) | Daren S. McNally, Esquire<br>Barbara M. Almeida, Esquire<br>Meghan C. Goodwin, Esquire<br>Clyde & Co US LLP<br>200 Campus Drive, Suite 300<br>Florham Park, NJ 07932<br>Tel:  973-210-6700<br>E-mail:  daren.mcnally@clydeco.us<br>          barbara.almeida@clydeco.us<br>          meghan.goodwin@clydeco.us |
| Wellfleet New York Insurance Company (successor to Atlanta International Insurance Company) | Edward M. Pinter, Esquire<br>Caroline E. McKenna, Esquire<br>Ford Marrin Esposito Witmeyer & Gleser, LLP<br>Wall Street Plaza<br>88 Pine Street, 23rd Floor<br>New York, NY 10005<br>Tel:  212-269-4900<br>E-mail:  epinter@fordmarrin.com<br>          cmckenna@fordmarrin.com |

| PARTY | COUNSEL |
|---|---|
| GEA Mechanical Equipment US, Inc. | Donald W. Kiel, Esquire<br>Robert F. Pawlowski, Esquire<br>K&L Gates LLP<br>One Newark Center, 10th Floor<br>Newark, NJ 07102-5252<br>Tel:  973-848-4064 (Kiel DD)<br>Tel:  973-848-4032 (Pawlowski DD)<br>E-mail:  donald.kiel@klgates.com<br>         robert.pawlowski@klgates.com<br><br>David F. McGonigle, Esquire<br>Joseph C. Safar, Esquire<br>Erin D. Fleury, Esquire<br>K&L Gates LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222-2613<br>Tel:  412-355-6233 (McGonigle DD)<br>Tel:  412-355-6443 (Safar DD)<br>Tel:  412-355-7425 (Fleury DD)<br>E-mail:  david.mcgonigle@klgates.com<br>         joseph.safar@klgates.com<br>         erin.fleury@klgates.com |

# EXHIBIT F

FORD MARRIN ESPOSITO WITMEYER
   & GLESER, L.L.P.
Edward Pinter (Attorney ID # 041091989)
Caroline McKenna (Attorney ID # 315722019)
Wall Street Plaza, 16th Floor
New York, NY 10280
Tel.: (212) 269-4900
*Attorneys for Defendant Wellfleet New York Insurance Company,*
*as successor to Atlanta International Insurance Company*

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC.<br><br>                 Plaintiff,<br><br>   vs.<br><br>FEDERAL INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY (successor to AETNA CASUALTY AND SURETY COMPANY); WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY); and XYV INSURANCE COMPANIES.<br><br>                 Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br><br>Docket No.: BER-L-005721-19<br><br>Civil Action<br><br><br><br>**DEFENDANT WELLFLEET NEW YORK INSURANCE COMPANY as successor to ATLANTA INTERNATIONAL INSURANCE COMPANY'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

Pursuant to N.J. Rule 4:18-1, defendant Wellfleet New York Insurance Company (as successor to Atlanta International Insurance Company) ("AIIC") through its attorneys Ford Marrin Esposito Witmeyer & Gleser LLP responds as follows to Plaintiff GEA Mechanical Equipment US, Inc. ("Plaintiff" or "GEA")'s First Set of Requests for Production of Documents, as follows:

## <u>INSTRUCTIONS</u>

1.     Where a claim of privilege is asserted, and a document is not provided on the basis of such assertion:

     a.  The attorney asserting the privilege shall in the objection to the document demand or sub-part thereof, identify the nature of the privilege (including work product) which is being claimed; and

     b.  The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

        i.   the type of document;

        ii.  the subject matter of the document;

        iii. the date of the document; and

        iv.  such other information as is sufficient to identify the document, including where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other.

2.     If any document requested herein was formerly in your possession, custody or control and has been lost, destroyed or otherwise disposed of, furnish a list identifying each such document and stating the following information with respect to each document:

     a.  The nature of the document and its contents;

     b.  The persons who prepared or authored the document, and, if applicable, the persons to whom the document was sent;

     c.  The date on which the document was prepared or transmitted; and

d.  The date on which the document was lost, destroyed or otherwise disposed of, the conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition.

3.  Each paragraph and subparagraph herein shall be construed independently and not with reference to any other paragraph or subparagraph for the purpose of limitation.

4.  Each request herein for a document or documents to be produced contemplates production of the document in its entirety without abbreviation or expurgation.

5.  Any document that is attached by staple, clip or otherwise to a document requested herein shall also be produced (attached in the same manner as the original) regardless of whether the production of that document is otherwise requested herein.

6.  This request is continuing in nature and, to the extent that your responses may be enlarged, diminished or otherwise modified by information acquired subsequent to the production of your initial responses hereto, you are required to produce supplemental responses reflecting such changes in accordance with New Jersey Court Rules.

## **DEFINITIONS**

As used herein, the following terms have the meanings set forth below:

1.  The words "and" and "or" shall be construed either conjunctively or disjunctively so as to bring within the scope of this document request any information or documents that might otherwise be considered to be beyond their scope.

2.  The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular, so as to bring within the scope of this document request any information or documents that might otherwise be considered to be beyond their scope.

3

3.      The word "all" shall be construed as "any and all"; the word "any" shall be construed as "any and all"; and the word "each" shall be construed as "all and each," so as to bring within the scope of this document request any information or documents that might otherwise be considered to be beyond their scope.

4.      "Communication(s)" shall be interpreted in its broadest sense and means any transmission or exchange of thoughts, ideas, data, messages, inquiries or information of any kind, whether or not intended for exchange with any person, whether such transmission or exchange is generated, transcribed, transmitted or recorded orally, in writing, in meetings, personally, electronically or otherwise.

5.      "Document" shall mean the original and all copies, including all copies which are different in any way from the original (whether by receipt stamp, notation, indication of copy sent or received or otherwise), regardless of location, of all handwritten, typed, printed, photostated, photographed, recorded, transcribed, punched, taped, filmed, graphic matter, computer discs, computer software, computer CDs, E-Mail and phone-mail, including any means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sound or symbols or combination thereof and whether or not claimed to be privileged on any ground, however produced or reproduced, of which you have knowledge, to which you have or have had access or which may be or may have been in your possession, custody or control.

6.      "Fact" refers to all facts presently known to you and all facts, the existence of which are presently inferred by you from the existence of any combination of facts.

7.      "Person(s)" means all entities of every description and includes any natural person, corporation, partnership, association, company, estate, business or governmental entity or agency (public or private) having a separate identification, recognized in law or in fact.

8.      "Relating to", "relate to", "regarding", or "referring to" means consisting of, referring to, describing, discussing, constituting, evidencing, proving, disproving, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

9.      "Relevant to" shall mean referring, reflecting, describing, concerning, illustrating, constituting, comprising, identifying, dealing with, containing, embodying, evidencing, stating, commenting on, responding to, analyzing or pertaining to in any way.

10.     "Representative" refers to and includes any person, including your attorneys, agents or brokers or the federal government's attorneys, agents or brokers who acts, has at the time acted, or has at any time by any person been requested or solicited to act, at your request or another's request, for your benefit or on your behalf or who acts or who at any time acted on your behalf or for your benefit with your knowledge, consent or acquiescence.

11.     "You" or "your" refers to the party responding to these discovery requests.

## DOCUMENT REQUESTS

1.      All Documents related to or supporting your allegations that Plaintiff is the successor to GEA Westfalia Separator, Inc.

2.      All Documents relating in any way to or supporting your allegations that Centrico, Inc. changed its name to Westfalia Separator, Inc.; that Westfalia Separator, Inc. changed its name to GEA Westfalia Separator, Inc.; that GEA Westfalia Separator, Inc. merged

into GEA Westfalia Separator Reorganization, LLC; and that GEA Westfalia Separator Reorganization, LLC merged into Plaintiff.

3.      All documents relating to the Insurance Policies listed on Exhibit A to Plaintiff's First Amended Complaint in this action.

4.      All documents relating to applications for the Insurance Policies listed on Exhibit A to Plaintiff's First Amended Complaint in this action.

5.      All documents relating to premiums paid for the Insurance Policies listed on Exhibit A to Plaintiff's First Amended Complaint in this action.

6.      All documents related to any insurance policies not listed on Exhibit A to Plaintiff's First Amended Complaint in this action under which Plaintiff may be entitled to coverage for the *Thornton* v. *Alfa Laval, Inc., et al.,* Case No.17-006018 CA 42, Circuit Court for Miami-Dade County, Florida ("Underlying Action") or "Future Underlying Actions," as that terms is defined in Plaintiff's First Amended Complaint

7.      All communications with any insurers in connection with the Underlying Action or Future Underlying Actions, as that term is defined in Plaintiff's First Amended Complaint.

8.      All documents relating to or evidencing your contention in Plaintiff's First Amended Complaint that "additional actions alleging bodily injury and/or wrongful death arising out of alleged exposure to asbestos in products allegedly manufactured, distributed, marketed, and/or sold by Centrico or its successors are reasonably likely to be brought against GEA Mechanical."

9.      All documents relating to the Underlying Action, including but not limited to any correspondence, pleadings, motions, filings, deposition transcripts, hearing transcripts, argument transcripts, efforts to resolve the Underlying Action, invoices, and costs.

6

10.     All documents related to advertising for and/or marketing of the centrifuges that were the alleged source of the asbestos exposure in the Underlying Action.

11.     All instruction manuals, packaging, warnings, and other documents related to operation, installation, maintenance, and/or use of the centrifuges that were the alleged source of the asbestos exposure in the Underlying Action.

Dated: November 22, 2019

**FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P.**

By:        s/ Caroline McKenna
              Caroline McKenna

Wall Street Plaza, 16th Floor
New York, NY 10005
Tel.: (212) 269-4900
*Attorneys for Defendant Wellfleet*
*New York Insurance Company,*
*as successor to Atlanta International*
*Insurance Company*

# EXHIBIT G

FORD MARRIN ESPOSITO WITMEYER
    & GLESER, L.L.P.
Edward Pinter (Attorney ID # 041091989)
Caroline McKenna (Attorney ID # 315722019)
Wall Street Plaza, 16th Floor
New York, NY 10280
Tel.: (212) 269-4900
*Attorneys for Defendant The Continental  Insurance Company*

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC.<br><br>                   Plaintiff,<br><br>    vs.<br><br>FEDERAL INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; HARTFORD FIRE INSURANCE COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY (successor to AETNA CASUALTY AND SURETY COMPANY); WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY); CONTINENTAL INSURANCE COMPANY; and XYZ INSURANCE COMPANIES.<br><br>               Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY<br><br><br>Docket No.: BER-L-005721-19<br><br>Civil Action<br><br><br>**CONTINENTAL INSURANCE COMPANY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF GEA MECHANICAL EQUIPMENT US, INC.** |

        Pursuant to N.J. Rule 4:18-1, defendant Continental Insurance Company ("Continental") through its attorneys Ford Marrin Esposito Witmeyer & Gleser LLP requests that the following documents be produced by Plaintiff GEA Mechanical Equipment US, Inc. ("Plaintiff" or "GEA"):

## <u>INSTRUCTIONS</u>

1.      Where a claim of privilege is asserted, and a document is not provided on the basis of such assertion:

     a.   The attorney asserting the privilege shall in the objection to the document demand or sub-part thereof, identify the nature of the privilege (including work product) which is being claimed; and

     b.   The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

          i.   the type of document;

          ii.   the subject matter of the document;

          iii.   the date of the document; and

          iv.   such other information as is sufficient to identify the document, including where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other.

2.      If any document requested herein was formerly in your possession, custody or control and has been lost, destroyed or otherwise disposed of, furnish a list identifying each such document and stating the following information with respect to each document:

     a.   The nature of the document and its contents;

     b.   The persons who prepared or authored the document, and, if applicable, the persons to whom the document was sent;

     c.   The date on which the document was prepared or transmitted; and

2

     d.   The date on which the document was lost, destroyed or otherwise disposed of, the conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition.

3.    Each paragraph and subparagraph herein shall be construed independently and not with reference to any other paragraph or subparagraph for the purpose of limitation.

4.    Each request herein for a document or documents to be produced contemplates production of the document in its entirety without abbreviation or expurgation.

5.    Any document that is attached by staple, clip or otherwise to a document requested herein shall also be produced (attached in the same manner as the original) regardless of whether the production of that document is otherwise requested herein.

6.    This request is continuing in nature and, to the extent that your responses may be enlarged, diminished or otherwise modified by information acquired subsequent to the production of your initial responses hereto, you are required to produce supplemental responses reflecting such changes in accordance with New Jersey Court Rules.

## **DEFINITIONS**

As used herein, the following terms have the meanings set forth below:

1.    The words "and" and "or" shall be construed either conjunctively or disjunctively so as to bring within the scope of this document request any information or documents that might otherwise be considered to be beyond their scope.

2.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular, so as to bring within the scope of this document request any information or documents that might otherwise be considered to be beyond their scope.

3. The word "all" shall be construed as "any and all"; the word "any" shall be construed as "any and all"; and the word "each" shall be construed as "all and each," so as to bring within the scope of this document request any information or documents that might otherwise be considered to be beyond their scope.

4. "Communication(s)" shall be interpreted in its broadest sense and means any transmission or exchange of thoughts, ideas, data, messages, inquiries or information of any kind, whether or not intended for exchange with any person, whether such transmission or exchange is generated, transcribed, transmitted or recorded orally, in writing, in meetings, personally, electronically or otherwise.

5. "Document" shall mean the original and all copies, including all copies which are different in any way from the original (whether by receipt stamp, notation, indication of copy sent or received or otherwise), regardless of location, of all handwritten, typed, printed, photostated, photographed, recorded, transcribed, punched, taped, filmed, graphic matter, computer discs, computer software, computer CDs, E-Mail and phone-mail, including any means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sound or symbols or combination thereof and whether or not claimed to be privileged on any ground, however produced or reproduced, of which you have knowledge, to which you have or have had access or which may be or may have been in your possession, custody or control.

6. "Fact" refers to all facts presently known to you and all facts, the existence of which are presently inferred by you from the existence of any combination of facts.

7.     "Person(s)" means all entities of every description and includes any natural person, corporation, partnership, association, company, estate, business or governmental entity or agency (public or private) having a separate identification, recognized in law or in fact.

8.     "Relating to", "relate to", "regarding", or "referring to" means consisting of, referring to, describing, discussing, constituting, evidencing, proving, disproving, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

9.     "Relevant to" shall mean referring, reflecting, describing, concerning, illustrating, constituting, comprising, identifying, dealing with, containing, embodying, evidencing, stating, commenting on, responding to, analyzing or pertaining to in any way.

10.     "Representative" refers to and includes any person, including your attorneys, agents or brokers or the federal government's attorneys, agents or brokers who acts, has at the time acted, or has at any time by any person been requested or solicited to act, at your request or another's request, for your benefit or on your behalf or who acts or who at any time acted on your behalf or for your benefit with your knowledge, consent or acquiescence.

11.     "You" or "your" refers to the party responding to these discovery requests.

## DOCUMENT REQUESTS

1.     All Documents related to or supporting your allegations that Plaintiff is the successor to GEA Westfalia Separator, Inc.

2.     All Documents relating in any way to or supporting your allegations that Centrico, Inc. changed its name to Westfalia Separator, Inc.; that Westfalia Separator, Inc. changed its name to GEA Westfalia Separator, Inc.; that GEA Westfalia Separator, Inc. merged

into GEA Westfalia Separator Reorganization, LLC; and that GEA Westfalia Separator Reorganization, LLC merged into Plaintiff.

3.      All documents relating to the Insurance Policies listed on Exhibit A to Plaintiff's Second Amended Complaint in this action.

4.      All documents relating to applications for the Insurance Policies listed on Exhibit A to Plaintiff's Second Amended Complaint in this action.

5.      All documents relating to premiums paid for the Insurance Policies listed on Exhibit A to Plaintiff's Second Amended Complaint in this action.

6.      All documents related to any insurance policies not listed on Exhibit A to Plaintiff's Second Amended Complaint in this action under which Plaintiff may be entitled to coverage for the *Thornton* v. *Alfa Laval, Inc., et al.,* Case No.17-006018 CA 42, Circuit Court for Miami-Dade County, Florida ("Underlying Action") or "Future Underlying Actions," as that terms is defined in Plaintiff's Second Amended Complaint

7.      All communications with any insurers in connection with the Underlying Action or Future Underlying Actions, as that term is defined in Plaintiff's Second Amended Complaint.

8.      All documents relating to or evidencing your contention in Plaintiff's Second Amended Complaint that "additional actions alleging bodily injury and/or wrongful death arising out of alleged exposure to asbestos in products allegedly manufactured, distributed, marketed, and/or sold by Centrico or its successors are reasonably likely to be brought against GEA Mechanical."

9.      All documents relating to the Underlying Action, including but not limited to any correspondence, pleadings, motions, filings, deposition transcripts, hearing transcripts, argument

6

transcripts, efforts to resolve the Underlying Action, settlement efforts both prior to and after the verdict was entered in the Underlying Action, invoices, and costs.

10.    All documents related to GEA's decision to try the Underlying Action.

11.    All documents related to GEA's decision not to settle the Underlying Action prior to the trial of the Underlying Action.

12.    All documents evincing notice of the Underlying Action to Continental or any other insurer.

13.    All documents relating to the decision, if any, to provide notice to Continental or any other insurer, including documents relating to the timing of the decision.

14.    All documents related to advertising for and/or marketing of the centrifuges that were the alleged source of the asbestos exposure in the Underlying Action.

15.    All instruction manuals, packaging, warnings, and other documents related to operation, installation, maintenance, and/or use of the centrifuges that were the alleged source of the asbestos exposure in the Underlying Action.

Dated: March 27, 2020

**FORD MARRIN ESPOSITO WITMEYER**
**& GLESER, L.L.P.**

By:    _____s/ *Caroline McKenna*_____
        Caroline McKenna

Wall Street Plaza, 16th Floor
New York, NY 10005
Tel.: (212) 269-4900
*Attorneys for Defendant The Continental*
*Insurance Company*

7

# EXHIBIT H

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY

GEA MECHANICAL EQUIPMENT            .
U.S., INC.,                         .
                                    .
        Plaintiff,                  . Case No. 20-cv-09741
                                    .
vs.                                 . Newark, New Jersey
                                    . October 8, 2020
FEDERAL INSURANCE COMPANY, et       .
al.,                                .
                                    .
        Defendants.


             TRANSCRIPT OF HEARING: COURT'S RULING
              BEFORE THE HONORABLE EDWARD S. KIEL
                UNITED STATES MAGISTRATE JUDGE

This transcript has been reviewed and revised in accordance
with L. Civ. R. 52.1.

APPEARANCES (the parties appeared via Zoom videoconference):

 For the Plaintiff:       DONALD W. KIEL, ESQ.
                          K&L Gates LLP
                          One Newark Center, 10th Floor
                          Newark, New Jersey 07102
                          (973) 848-4000
                          donald.kiel@klgates.com

                          JOSEPH C. SAFAR, ESQ.
                          K&L Gates LLP
                          K&L Gates Center
                          210 Sixth Avenue
                          Pittsburgh, Pennsylvania 15222
                          (412) 355-6443
                          Joseph.Safar@klgates.com

Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ  07457
                          (973) 237-6080

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
 1   (APPEARANCES continued)

 2
     For the Plaintiff:      ERIN D. FLEURY, ESQ.
 3                           K&L Gates
                             K&L Gates Center
 4                           210 Sixth Avenue
                             Pittsburgh, Pennsylvania  15222
 5                           (412) 355-7425
                             Erin.fleury@klgates.com
 6

 7   For the Defendants:     JOHN MALONEY, ESQ.
                             Gimigliano Mauriello & Maloney, PA
 8                           163 Madison Avenue, Suite 500
                             PO Box 1449
 9                           Morristown, New Jersey 07962-1449
                             (973) 946-8360
10                           jmaloney@lawgmm.com

11                           CAROLINE E. MCKENNA, ESQ.
                             Ford Marrin Esposito Witmeyer &
12                           Gleser, L.L.P.
                             88 Pine Street, 23rd Floor
13                           New York, New York  10005
                             (212) 269-4900
14                           Cmckenna@fordmarrin.com

15                           EDWARD M. PINTER, ESQ.
                             Ford Marrin Esposito Witmeyer &
16                           Gleser, L.L.P.
                             Wall Street Plaza, 23rd Floor
17                           New York, New York  10005
                             (212) 269-4900
18                           Epinter@fordmarrin.com

19

20

21

22

23

24

25
```

1                              I N D E X

2

3      Proceeding                                        Page

4          Proceedings                                    4

5          The Court's Ruling                            25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1                    (Commencement of proceedings)

 2

 3              THE COURT:  Good morning, everyone.  We're on the

 4    record in matter of GEA versus Federal Insurance Company.

 5    It's Case Number 20-cv-09741.

 6              If we could have the appearance on behalf of

 7    plaintiff.

 8              MALE SPEAKER:  On behalf of --

 9              MR. SAFAR:  Your Honor, this is Joe Safar from

10    K&L Gates.  And also for plaintiff Don Kiel of K&L Gates and

11    Erin Fleury of K&L Gates.

12              THE COURT:  Good morning, everyone.

13              And then, Mr. Mahoney [sic], can you make your

14    appearance on behalf of defendants?

15              MR. MALONEY:  Sure, Your Honor.  This is John

16    Maloney of Gimigliano Mauriello & Maloney on behalf of the

17    Hartford defendants.

18              I should point out there are a few other defendants

19    in the case that are separately represented.

20              THE COURT:  Oh, they are.  Okay.

21              Is there anybody else on the line?

22              MS. MCKENNA:  Yes, Your Honor.  This is --

23              MR. PINTER:  Yes, Your Honor.

24              Go ahead, Caroline.

25              MS. MCKENNA:  Your Honor, Caroline McKenna from

1    Ford Marrin.  Also on the call, you heard is Mr. Pinter.  As

2    we discussed last week, my admission to the District of New

3    Jersey is pending, but with Your Honor's permission, I'll be

4    speaking on behalf of Continental.  If not, Mr. Pinter can do

5    it as well.

6              THE COURT:  Okay.  Very good.

7              And you have Continental Insurance, Wellfleet,

8    those two companies.

9              And I should put on the record that Mr. Maloney has

10   Hartford Accident and Indemnity Company, Hartford Insurance

11   Company, and First State Insurance Company.

12             So let me just start with maybe Mr. Maloney or

13   Ms. McKenna -- and thank you, everybody, for getting on the

14   call on time and also sending in the joint -- joint letter.

15   And it was very helpful, and I took a good look at it and

16   reviewed a lot of the cases.

17             But it seems to me that -- that the National Union

18   Fire case that Judge Clark had written back in 2018, seems to

19   address very similar or maybe the same issue in this case,

20   and I'm wondering from the defendants' perspective -- and

21   I'll start with Mr. Maloney, if he wants to address this --

22   how is the National Union Fire case distinguishable from the

23   issue that's presented here today?

24             MR. MALONEY:  Sure, Your Honor.  I'm happy to start

25   with that.

1          The National Union -- or the <u>Becton Dickinson</u> case,

2    from our perspective, it is quite distinguishable from the

3    circumstances that we have here.

4          First of all, <u>Becton Dickinson</u> was a suit filed by

5    the insurer as opposed the insured.  And thus the insured in

6    that case did not affirmatively place anything at issue.  But

7    moreover the insurer in <u>Becton Dickinson</u> never contended that

8    it would have defended the insured in the underlying action,

9    and thus had access to the privileged documents.  That's a

10   big and very critical distinction from this case.  It

11   prevents the insurer in <u>Becton Dickinson</u> from arguing that

12   those communications would impact what it would or wouldn't

13   have done.

14         And, as you know, Your Honor, that's one of the

15   significant points that we've tried to raise on this motion

16   that in order to establish a late notice defense under New

17   Jersey law, we need to establish what -- what the defendant

18   wouldn't have done.  And to deprive -- counsel's analysis and

19   communication necessarily deprives the defendants from

20   assessing the issue that's most critical to their defense.

21   You know, what would we have -- what would the defendants

22   have done better or differently if timely notice had been

23   provided?

24         THE COURT:  I thought that that was the same claim

25   that the insurer was making in the <u>Becton Dickinson</u> -- in the

1   <u>Becton Dickinson</u> case that by claiming that the -- that there

2   was no appreciable prejudice and that their notice was

3   timely, that National -- that Becton Dickinson had placed the

4   whole issue of these private communications with this -- with

5   its counsel in issue in the case.  It seemed to be very

6   similar issues and a similar type of thing that they were

7   trying to get in that <u>National Union v. Becton Dickinson</u>

8   case.

9           And whether who was the one that was -- is the

10  plaintiff in the case and filed the complaint first, what the

11  issues that were -- or what with the issues that shook out in

12  that case seemed to be similar, it's -- it didn't really, to

13  me, look like it mattered for this analysis, who filed the

14  complaint first, whether it was a declaratory judgment first

15  by the insured or by the insurance company.

16          But how about you, Ms. McKenna, what -- is there

17  anything further different than you see in that case from

18  this case?

19          MS. MCKENNA:  Yes, Your Honor.  And in addition to

20  what Mr. Maloney said, I would add that in that case, the

21  entire -- the defense counsel himself had been subpoenaed.

22  He was not a party to the case.  And his entire file had been

23  subpoenaed.

24          And so, here, it's obviously not a nonparty's

25  materials or work product that is being sought.  It's a

1    discrete narrower issue of what the insured who breached the

2    conditions of the contract and then brought this suit was

3    told and then how they acted on that information.  So it's a

4    narrower issue being sought here, Your Honor.

5           THE COURT:  Yeah, sorry to -- sorry to interrupt

6    you, Ms. McKenna.

7           But the way that I read your papers when I read --

8    or the way that I read defendants' position was they were

9    looking for all the communications and all the privileged

10   documents between GEA and its counsel, not just some targeted

11   specific documents.

12          Am I mistaken about that?

13          MS. MCKENNA:  You're not, Your Honor.  I was making

14   the distinction between directly subpoenaing the defendant's

15   counsel's entire file, including things that were provided to

16   the client and what we're seeking here which is what the

17   client was actually provided by defense counsel.

18          THE COURT:  Oh, so then -- so then the distinction

19   that you're seeing is in the National Union case, there was a

20   greater degree of information that was sought through the

21   subpoena to the counsel than what you're seeking here?

22          MS. MCKENNA:  Correct.

23          THE COURT:  Okay.  All right.

24          And, Mr. Safar, you got any comments about the

25   National Union case, because it seems to be really something

1  that is in this district, written by Judge Clark only a

2  couple of years ago, and it seems to be similar to the issues

3  in this case.  So I'd like to hear from you on what you think

4  about that case.

5          MR. SAFAR:  Your Honor, absolutely.  Thank you very

6  much.

7          I think it is -- not only is it similar, but I

8  think it's really on all fours.  There's no reason for a

9  different result in this case.  And I'm going to confine my

10  comments, unless Your Honor has -- would like -- would like

11  more, I'm going to confine them to rebutting some of the

12  assertions that we've heard from Mr. Maloney and

13  Ms. McKenna --

14      (Simultaneous conversation)

15          MR. SAFAR:  Okay.  First of all, Mr. Maloney says

16  that it's distinguishable because that was a suit filed by

17  the insurer, and in that case the policy holder didn't place

18  it at issue.  Of course, in their papers, they say that --

19  that GEA placed late notice at issue through its affirmative

20  allegations in paragraph 19 of the complaint.  I don't know

21  if Your Honor has taken a look at paragraph 19 of the

22  complaint.  But all paragraph 19 -- and they badly

23  mischaracterized paragraph 19 of the complaint.

24          All paragraph 19 --

25          THE COURT:  I've read the complaint.  I have read

 1    the complaint.  But I wasn't focused on paragraph 19.  But I

 2    have it in front of me now.

 3            MR. SAFAR:  Paragraph -- oh, so you see all

 4    paragraph 19 alleges is a general allegation that all

 5    applicable conditions precedent to recovery, if any, have

 6    been satisfied.

 7            And that's where they hang their hat and say that's

 8    how the plaintiffs affirmatively put late notice at issue.

 9            But, of course, under New Jersey law, late notice

10    is an applicable condition precedent.  It's an affirmative

11    defense.  And they know that it's an affirmative deference

12    because they all alleged it as an affirmative defense.

13    Hartford alleged it as an affirmative defense, as its tenth

14    affirmative defense.  CNA and Wellfleet alleged it as their

15    sixth affirmative defense.  And CNA and Wellfleet went even

16    further, and their answers have counterclaims.  They asserted

17    counterclaims for late -- for late notice.

18            So that puts it on -- that puts it on four squares

19    with the Becton Dickinson case.  They're the ones that

20    alleged it and put it at issue.  And this is -- it just boils

21    down to very, very simply what -- what -- you know, stripped

22    of all the smoke and mirrors.  They want to assert a -- they

23    have asserted -- they have affirmative defenses that they

24    want to assert, and they think the privileged documents are

25    relevant and would be helpful to them.

1          But, of course, that's not the standard for

2     piercing privilege.

3          Second, this motion that they would have been

4     entitled to documents if they had chosen to defend the case,

5     that -- that's -- that is faulty on two scores.  One, it's a

6     totally unsupported counterfactual premise.  We have --

7     they've made no factual showing that they, in fact, would

8     have accepted the defense of the case.  Of course, we all

9     know from Insurance 101 that when an insurance company gets

10    notice of a case, they have three options:  Deny; reserve

11    rights to deny; or unconditionally accept and participate in

12    the case.

13          Under the first two scenarios, deny and reserve

14    rights to deny, they don't get access to privileged

15    information.  There's no question there, because they've set

16    up an adversarial relationship with the policy holder.

17          Of course, we all -- we know further as a data

18    point that in this case, they got notice while the defense

19    was still alive, albeit while there were posttrial motions

20    pending, and they then chose to deny.  They could have

21    accepted the defense then.  They could have said we're taking

22    this case over.  We're prosecuting the posttrial motions.

23    We're going to run the appeal, you know, blah, blah, blah.

24    But they didn't.

25          At that point, they chose to deny and set up an

1   adversarial relationship with the policy holder.

2           Now, they're coming in to Your Honor and making

3   unsupported assertions of counsel in a letter saying that if

4   we had gotten notice earlier, we would have defended the

5   case.  We don't know that --

6       (Simultaneous conversation)

7           MR. SAFAR:  We don't know that that's the case.

8   And I'm --

9       (Simultaneous conversation)

10          THE COURT:  Let me just interrupt you for one

11  second, Mr. Safar, and maybe this is my misunderstanding of

12  the facts.

13          I thought that the -- that the way that the case

14  was positioned now was that the -- that the carriers take the

15  position that they would have covered, had they provided

16  notice, but the time -- but the notice itself was untimely.

17          Have they disclaimed coverage as well and say that

18  the notice was untimely?

19          MR. SAFAR:  They've -- they've disclaimed coverage.

20          THE COURT:  Oh, okay.

21          MR. MALONEY:  No.

22          MR. SAFAR:  And so -- so the assertion that they

23  would have unconditionally accepted, had the notice been

24  given earlier, is unsupported.  It's simply an assertion.  We

25  have no affidavits, no factual support for that.

1          I will say that we -- interestingly, we asked in

2  discovery in this case for the insurers', you know, policies,

3  procedures, guidelines that they use to decide when they

4  deny, reserve rights, or accept coverage.  The response we

5  got back from Mr. Maloney, who represents the primary

6  insurers, "Objection, not relevant."  Okay?

7          So I can't even test Mr. Maloney's assertion that

8  they would have accepted coverage, had the notice been given

9  earlier.  Maybe they would --

10      (Interruption in proceedings)

11          MR. SAFAR:  Maybe they --

12      (Simultaneous conversation)

13          THE COURT:  Let me ask Mr. Maloney that.  Let me

14  ask Mr. Maloney that, because that's an issue that I didn't

15  know was in play.  I thought that the issue of coverage had

16  been resolved.

17          But is the issue of coverage itself and whether

18  this claim is going to be disclaimed based upon just the

19  policy as opposed to the untimely notice, is that still --

20  still at issue?

21          MR. MALONEY:  No, Your Honor.  This case is about

22  late notice and lack of cooperation.

23          And -- are far more -- this is the third claim

24  tendered to Hartford by GEA involving underlying asbestos.

25  And -- was involved in the defense of the prior two claims,

 1   Hartford communicated with counsel -- updates from counsel.

 2   And those claims were, you know, relatively minor and were

 3   dismissed without any cost to -- you know, in terms of

 4   settlement -- by GEA.

 5           The point is our first step -- case is that -- of

 6   proper and timely tender of notice -- whenever you're being

 7   asked to recreate the past, you know, there is no magic eight

 8   ball that allows one to go back and say, well, what would

 9   have happened with certainty?  So that's why we need the

10   facts that -- as to what was going on in the underlying

11   Thornton action, because that's exactly how Hartford will be

12   in a position to establish what it would have done.  Those

13   are the -- those communications that are at issue in this

14   case are the exact communications that The Hartford would

15   have relied on.  For example --

16       (Simultaneous conversation)

17           THE COURT:  Well, isn't that what Judge Clark

18   addressed in their -- in his decision that that's really not

19   the focus of what the communication would have been between

20   the lawyer and the client, but what -- what the carrier would

21   have done differently based upon what information that the

22   carrier had in front of him?  The pleadings, from

23   depositions, from those types of things?

24           MR. MALONEY:  But, Your Honor, let me give you an

25   example of why I think that this is different.

1          And certainly it isn't addressed in the <u>Becton</u>

2 <u>Dickinson</u> case.

3          We know that GEA missed multiple settlement

4 opportunities, although, candidly, we have scarce facts

5 around those settlement opportunities.  But we know that

6 there was at least a mediation and that were offers made or

7 demands made upon GEA to settle.

8          If Hartford were defending the case or were

9 involved in the defense of the case, there's no doubt that

10 GEA would have said, hey, Hartford, there is demand here of X

11 dollars.  You know, what do you think?  Do you want to -- do

12 you want to contribute something to settle this case?  That's

13 how the insured-insurer relationship works.

14          And --

15     (Simultaneous conversation)

16          THE COURT:  But then -- but then if that actually

17 happened, wouldn't Hartford have undertaken its own analysis

18 and looked through everything on its own and made its own

19 determination as to what they would have done?

20          MR. MALONEY:  Oh, Hartford would have relied on the

21 analysis of GEA's counsel, which would have been

22 communicating with GEA and with Hartford saying, this is what

23 we view the case to be worth, this our analysis of the case.

24 I mean if there was a mediation in this case -- and I'm going

25 to use hypotheticals, because I don't have real numbers, but

```
 1  let's say there was a demand made upon GEA for a hundred

 2  dollars.  And let's say GEA's counsel said, well, we think

 3  this case is worth $50.  But, you know, we would recommend an

 4  offer of $40.  And let's say that GEA said, we're not going

 5  to follow that advice, so we're going to make an offer of

 6  $1.50.  Well, that's pretty significant, Your Honor, because

 7  that same advice as to the value of the case would have been

 8  tendered to Hartford, and Hartford would have been the one

 9  paying it and controlling the decision as to what money to be

10  paid.

11          So to analyze after the fact what Hartford would

12  have done in a situation -- tremendously handcuffed without

13  Hartford having the information that would have guided --

14          THE COURT:  You started breaking up.  I think you

15  were finished.

16          Mr. Safar.

17          MR. SAFAR:  Yeah, Your Honor, thank you.  I just

18  want to --

19          THE COURT:  Oh, I'm sorry.

20          MR. SAFAR:  I want to return just kind of where I

21  was before we -- before we went off on the point that

22  Mr. Maloney just made.

23          And just one last point on this idea that --

24          THE COURT:  Sure.  Go ahead.

25          MR. SAFAR:  That they would have had access to the
```

1   privileged documents.

2           Even if we accept the -- the unsupported assertion

3   that the -- first of all, Hartford has asserted in their

4   answer, 36 separate affirmative defenses.  So this is the

5   first time I've heard from Mr. Maloney that the only issue in

6   this case is late notice, but it sounds like an amended

7   answer is in order now, dropping every affirmative defense

8   except for late notice.  And unless that's forthcoming, I

9   think what we, you know, just heard is that posturing for

10  purposes of this -- of this motion only.

11          But even accepting the unsupported assertion that

12  they would have unconditionally accepted coverage earlier as

13  opposed to reserve rights, even doing so, doesn't

14  automatically entitle them to privileged documents under that

15  counterfactual scenario, because all that does is it

16  create- -- all -- all an unconditional acceptance does is

17  create a common interest between the policy holder and the

18  insurer creating the option to share privileged materials

19  without waiving as against the plaintiffs.  It doesn't create

20  a compulsion to share them.  And that's clear under the _In re_

21  _Environmental Insurance Coverage Actions_ case.  It's not a --

22  common interest is not a compulsion to share.  It's -- it

23  merely creates a permissive situation to share.

24          So, again, the premise that they would have been

25  entitled to the documents is unsupported, and it's wrong.

1   But let me --

2       (Simultaneous conversation)

3           THE COURT:  But also when I read Judge Pisano's

4   decision that you guys all cited as well in the NL Industries

5   case, it seemed pretty clear from Judge Pisano's decision

6   that this common interest only applies when the insurer has

7   actually retained counsel and has paid for it.  And whether

8   they want to come back later on and say, hey, we would have

9   retained, is that doesn't create the common interest

10  retroactively.  That's my understanding of Judge Pisano's

11  decision was back in that case.

12          MR. SAFAR:  Absolutely correct, Your Honor.

13          And then -- and so -- and now turning to the

14  argument that Mr. Maloney --

15          THE COURT:  Can you just hold on one second.

16  Mr. Safar?  Can you just hold on one second?

17          MR. SAFAR:  Sure.

18          THE COURT:  I just need to do one thing.

19      (Pause in proceedings)

20          THE COURT:  Sorry.  I apologize, everyone.  I have

21  another conference at 9:30, and I probably overbooked, but I

22  want make sure that I have plenty of time for you guys.

23          Okay.  So, go ahead.  I'm sorry.

24          MR. SAFAR:  Your Honor -- yeah, Your Honor.

25  This -- this really gets to the heart of the Becton case.

1   Right?  First of all, the insurers in <u>Becton</u> actually did

2   argue that they would have accepted the defense.  It's the

3   same argument Mr. Maloney made.  And if there's any -- if

4   there's any question about that, we're happy to -- we're

5   happy to send in the briefs where <u>National Union</u>, in fact,

6   advanced that, you know, same argument.  But I don't think

7   that's -- that's neither here nor there.

8           The idea that they need the subjective analysis of

9   counsel to be able to second-guess or make their own

10  determinations about what they would have done to defend the

11  case, doesn't hold together.  Right?  I mean, legal advice,

12  these -- this advice of counsel really consists of three

13  things.  Right?  It's the application of law and counsel's

14  judgment to the facts of the case to arrive at a

15  recommendation about a course of action to be taken in the --

16  in the defense.  Right?

17          They have three out of those four things are not

18  privileged.  The facts of the case are not privileged.  The

19  law is not privileged.  Right?  And the actions that counsel

20  actually took are -- as the <u>Becton</u> case recognizes are

21  reflected in the nonprivileged record.  They can look at the

22  trial transcript, look at the motions that were filed, look

23  at the experts that were presented, look at the arguments

24  that were made.  They can see -- they can see the offers,

25  the -- you know, someone demands, they can see the responses.

1   They can see the offers.  We're not saying that that's

2   privileged.  In some instances, it was oral, so they're going

3   to have to seek discovery of it, you know, either through a

4   deposition or by asking interrogatories, but anything that

5   was exchanged with the plaintiffs, that's obviously, fair

6   game.

7           So all that they're missing -- right? -- is

8   counsel's subjective analysis.

9           But just -- as Your Honor just pointed out, they

10  don't need that to decide or to make an argument about

11  whether or not they would have done something differently.

12  They have all the ingredients, and they can say, based

13  upon --

14      (Simultaneous conversation)

15          MR. SAFAR:  -- they can hire an expert or whatever,

16  based upon the law, based upon the facts --

17      (Simultaneous conversation)

18          MR. SAFAR:  -- we wouldn't have done -- we wouldn't

19  have zigged --

20      (Simultaneous conversation)

21          THE COURT:  Mr. Safar, you know, and I -- and I

22  appreciate that argument, and I know that's what Judge Clark

23  had decided.

24          But I think from the defendants' perspective, what

25  they're saying is, hey, we have the ingredients.  But there's

1    a chef out there, and there's this great lawyer, he's got a

2    lot of experience, he's got trial experience, he can give us

3    some more flavor to the case, and that may have been

4    something that may have influenced us.  I think that's their

5    counter to that argument.

6            But I understand certainly where you're coming

7    from, Mr. Safar.

8            MR. SAFAR:  Right.  But -- but that really just

9    boils down to, well, that would be one more thing that would

10   be helpful.  Right?  And that's not the standard for piercing

11   our privileges.  It's not just that it would be helpful --

12   and let me just say, Your Honor, that if -- and I don't -- it

13   doesn't sound to me like you're, you know, heading in this

14   direction, but there's a serious goose-and-gander issue here,

15   which is that if our privileges are pierced so that they can

16   see what counsel's advice was so that they can then take --

17   so they can have somebody take the stand, presumably some

18   claims handler, and say, oh, well, if I was privy to that

19   advice, I wouldn't have followed it.  I would have taken the

20   case in a different kind of direction.

21           Now, they've put at issue when their own claims

22   handlers choose to follow counsel's advice or not.  And if

23   they get this discovery, I have to get rebuttal discovery in

24   order to be able to rebut that, because if their own files

25   are filled of -- filled with examples from other cases with

1   similar facts -- right? -- where their claims handlers, in

2   fact, followed similar advice to what they got from our

3   counsel, they cannot be allowed to take the stand and

4   introduce into evidence our privileged documents and say in a

5   totally unrebutted manner that they wouldn't have followed

6   that advice, because in their decades of experience as claims

7   handlers, that's not a piece of advice that they would

8   follow.  Right?  And so now we have just opened up Pandora's

9   box on this, because -- because, you know --

10          (Simultaneous conversation)

11          THE COURT:  We're not at that point right now --

12   we're not at that point right now.  But that's -- but that

13   may be an issue that we'll address later, but I'd like to

14   stick to this.

15          So let me just finish up.

16          Anybody from the defendants' side want to add

17   anything further?  I read all the papers.  I understand the

18   arguments.  I've read all the cases that you -- that the

19   parties have cited to me.

20          So I'll ask the defendants if they have anything

21   further?

22          MR. MALONEY:  Yes --

23          MS. MCKENNA:  Yes, Your Honor go ahead --

24          THE COURT:  Okay.  Why don't we start with

25   Ms. McKenna, since she got to go second.

1          MS. MCKENNA:  Thank you, Your Honor.

2          I just would -- I'm going to focus on the point

3  Mr. Safar made about us raising late notice as an affirmative

4  defense.  You know, other cases besides Becton, including the

5  Human Tissues Product Litigation case --

6          THE COURT:  Yeah, sure.

7          MS. MCKENNA:  -- talk about whether you put

8  something in issue as being an issue of fairness.

9          And, here, you know, we didn't allegedly notice --

10  our reason.  We alleged late notice because plaintiffs

11  provided extraordinarily late notice after a $70 million

12  verdict was entered.

13          So the idea that it's an affirmative defense and,

14  therefore, it's not at issue because we pled it as an

15  affirmative defense, I think, really misses the mark and

16  shows kind the unfairness of plaintiff's position.

17          THE COURT:  Okay.  Thank you very much.

18          And then Mr. Maloney?

19          MR. MALONEY:  Yeah, if I could just add to

20  Ms. McKenna's comments, in the Human Tissue case, Judge Falk

21  set forth a three-part test to determine what is at issue.

22  And I don't think there's -- there should be any real dispute

23  that we satisfy that three-part test, that GEA made an

24  affirmative act which Judge Falk described as filing a suit

25  that put the information at issue by making it, quote,

1   relevant to the case.  Relevant to the case doesn't

2   necessarily mean relevant to GEA's claims, although they are,

3   but it's also relevant to the -- in this case.

4          The third prong of that test is that the assertion

5   of privilege would deny the defendants access to information

6   vital to their defense, which, again, as we discussed at

7   length, I think, is clear here.

8          And if I could turn Your Honor's attention to the

9   Hoechst Celanese case, in that case, the exact same

10  allegations of compliance with policy conditions were

11  expressly found to have placed privileged communications at

12  issue, which is the point that Mr. Safar was making.  And --

13  Celanese case -- and I think it's a Delaware case, although

14  Delaware law on this issue is not substantively different,

15  but Hoechst Celanese is really instructive, because in that

16  case, the Court found that whether the insured had complied

17  with those conditions of coverage "can only be truthfully and

18  fairly determined by an examination of the conduct of the

19  insured and its counsel in the underlying litigation."

20         It went on to say that "to hold otherwise would

21  permit an insured to seek coverage for claims while denying

22  the insurer access to information about the underlying

23  claims, which is contained substantially, if not exclusively

24  within the communications claimed to be privileged."

25         And that's the point we've been making all along,

1   Your Honor, that this isn't a case where we're seeking a

2   broad, you know, ability to pierce the privilege simply

3   because there's a coverage dispute.  This is a lot more

4   narrow than that, and it's focused on the fact that if we're

5   going to establish what we would have done, we have to have

6   the facts that would have been available to us at the time.

7           THE COURT:  Okay.  All right.  Well, thank you very

8   much.  I did look at the <u>Hoechst Celanese Corporation</u> case.

9   That was a case out of the District of -- I'm sorry -- the

10  Delaware Superior Court back in 1992.  It was a complicated

11  case that involved communications between a counsel and the

12  client during different periods of time when there was

13  coverage and there was a denial of coverage.  And I

14  appreciate you going over that case with me.

15          All right, everyone.  Let me just get my papers

16  together.  And let me ask you, Mr. Safar -- this is sort of a

17  silly question.  Is it GEA or GEA?

18          MR. SAFAR:  It's either, Your Honor, GEA

19  mechanical.  GEA.  It's all -- it all works.

20          THE COURT:  Okay.  Okay.  I'll call it GEA, since

21  it's easier to say.  All right.  Very good.

22          Well, in this case, plaintiff seeks coverage for an

23  asbestos claim that resulted in a judgment against plaintiff

24  in the amount of $70 million.  And the underlying complaint

25  that resulted in this declaratory judgment action was filed

1    in Florida in 2017 by Charles and Constance Thornton.  The

2    Thornton action proceeded to trial in June of 2019.  And the

3    Thorntons claimed that damages resulting out of

4    Mr. Thornton's alleged exposure to products that contained

5    asbestos that were allegedly made, sold, or distributed by

6    GEA's predecessor in interest.  The jury returned a verdict

7    of $70 million.  And judgment was entered in June 2019.

8              And in August of 2019, while posttrial motion and a

9    potential appeal were pending, plaintiff tendered the

10   Thornton claim to some of the defendants, and prior to that

11   notice, plaintiff had not provided any notice of the Thornton

12   claim to defendants; at least that's my understanding of the

13   facts.

14             And in September 2019, plaintiff participated in

15   mediation and kept defendants apprised of what was going on.

16   A confidential settlement was reached with the Thorntons on

17   September 24th, 2019.  And the defendants, apparently, did

18   not object to the settlement; at least, that's what I read

19   from the papers.

20             Defendants have disclaimed coverage, as I

21   understand it, based in part on what they believe was an

22   impermissibly late notice of the claim by plaintiff.  The

23   complaint was filed on August 6th, 2019, in New Jersey

24   Superior Court and removed to this Court on July 31st.

25             The parties submitted a joint letter on

1    September 21st -- did somebody just join?

2              FEMALE SPEAKER:  Good morning, Christina --

3              THE COURT:  Is this on the Hollands matter?

4              FEMALE SPEAKER:  Oh, no, this is not.  This is the

5    wrong conference line.  I apologize.

6              THE COURT:  Okay.  Thank you.

7              FEMALE SPEAKER:  Bye.

8              THE COURT:  With COVID and everything, all these

9    technology things, we have a lot of people coming in

10   sometimes.  And I apologize for that.

11             But going back to what the parties submitted a

12   joint letter on September 21st concerning a discovery dispute

13   involving the defendants' request for certain information.

14   That was ECF Number 10.  And the dispute centers around

15   whether plaintiff is required to produce documents and

16   information relating to the underlying Thornton action that

17   is subject to the attorney-client privilege.  To date,

18   plaintiff has said that it produced over 70,000 pages of

19   documents, but withheld the attorney-client privileged and

20   attorney work product documents from the production.

21   Plaintiff also objected on certain relevancy grounds as to

22   certain requests.

23             So as a threshold matter, defendants, as I

24   understand it, don't dispute that the withheld documents

25   would normally be protected by the attorney-client privilege

1   and the work product privileges, because they encompass

2   defense strategy and analysis and settlement negotiations,

3   settlement analysis and things that would normally be

4   protected by the privilege.  The defendants argue that

5   they're entitled to view what would normally be privileged

6   because plaintiff and its counsel in the underlying case, as

7   well as the attorney work product -- as well as the

8   attorneys' work product, because GEA has placed these

9   communications in issue in the case.  And defendants argue

10  the communications are in issue because plaintiff claims the

11  notice to defendants of the Thornton action was not untimely,

12  while defendants take the position that the notice was

13  impermissibly untimely.  Whether it's an affirmative defense

14  or -- or, like in the case before Judge Clark, it was an

15  affirmative claim or a declaratory judgment affirmative claim

16  by the insured, I don't think is really relevant.

17          Under New Jersey law, in order for a carrier to

18  succeed on a defense of untimely notice, the insurer must

19  show that there's a breach of the notice provision of the

20  policy and a likelihood of appreciable prejudice.  To

21  demonstrate this appreciable prejudice, defendants must prove

22  that, first, substantial rights have been irretrievably lost

23  by virtue of the failure of the insured to provide notice in

24  a timely fashion; and, second, the likelihood of success of

25  the insurer in defending the claim.

1         Defendants also argue that had timely notice been

2    provided, it would have been able to participate in the

3    defense of the Thornton action and would I have access to

4    plaintiff's counsel's files.  And defendant proffers that

5    from what has already been produced, there seems to be

6    evidence that there were opportunities to settle the

7    underlying case for what they call a fraction of the judgment

8    amount.  I don't have those facts in front of me, but I take

9    their representation.

10        Thus, according to defendant, attorney-client

11   communications relating to the settlement proposals, the

12   evaluation and analysis of the claims and the settlement

13   demands and the decisions made in responding to the

14   settlement demands are relevant to the issue of appreciable

15   prejudice.  This is because defendants would have had the

16   opportunity to evaluate any settlement demands in conjunction

17   with and in light of the advice of GEA's counsel, since

18   defendants would have been funding a settlement and probably

19   funding the defense cost as well.

20        If defendants were not able to obtain the

21   privileged communications, defendants say it would create "a

22   formidable obstacle" to their efforts to determine whether

23   they would have acted differently, had timely notice been

24   provided.  And withholding the communications would deprive

25   defendants of the very information that they would have used

1  in evaluating the course of the underlying litigation, and

2  from the defendants' perspective, indeed, these

3  communications would have been provided to defendants if --

4  if the plaintiff had timely notified the defendants and the

5  defendants were able to participate in the defense of the

6  underlying case.

7          On the other hand, plaintiff argues that an

8  attorney-client privilege should not be pierced and should

9  not be pierced in this case, and the case law says that it's

10 only pierced in the narrowest of circumstances.  And

11 plaintiffs cite the cases that they say stand for the

12 proposition that the privilege is only pierced where a

13 constitutional right is at stake or where a party has

14 explicitly waived the privilege.  Plaintiff views binding

15 case law as finding a waiver of the privilege where a party

16 seeking to claim the privilege is using -- is seeking to use

17 the privileged communication and information to prove its

18 claim or defense in the case.  So, in other words, a court

19 will not let a responding party use the attorney-client

20 privilege both as a sword and a shield.  So if a responding

21 party will use communication as a sword -- for example, to

22 disclaim liability based on the advice of counsel -- the

23 responding party cannot then prevent the requesting party's

24 attempt to gather discovery relating to that advice of

25 counsel.  I think that's black-letter law and everybody

1    agrees with that.

2            Under that understanding of case law, plaintiff

3    argues that defendants are not entitled to the production of

4    any privileged information because plaintiffs does not --

5    because the plaintiff does not intend to rely on any

6    privileged communication or information to prove its claim or

7    defenses or anything in this case.

8            Plaintiff also argues that defendants have not

9    cited to a single case in this district where a court has

10   held that a party seeking coverage under an insurance policy

11   placed privileged communications in issue and thereby was

12   required to produce such communications.  Plaintiffs cite to

13   various cases, you know, that stand for their position on

14   this -- on this issue.

15           Plaintiffs also argued that a privileged

16   communication and information are irrelevant because the

17   inquiry relating to appreciable prejudice is what action the

18   insurer would have taken, rather than the actions taken by

19   the insured, which is what the privileged information would

20   show.  The burden is on the insurer to show what specific

21   steps it would have taken to achieve a more favorable result.

22   Thus, according to plaintiff, it is not relevant why the case

23   was handled in the manner it was, but what the insurers would

24   have done differently under the circumstances and they have

25   all the facts in front of them.

1          Finally, defendant says that -- I'm sorry.

2          Finally plaintiff says that defendants have not

3    demonstrated there are less restrictive means to obtain the

4    relevant information it seeks.  It has produced over 70,000

5    pages of documents, and from reading of it, I assume those

6    documents encompass all the pleadings and depositions,

7    motions; correspondence between the parties; trial binders,

8    mediation memos; and any other nonprivileged documents

9    relating to the underlying case.

10          So the issue, as I see it, is whether the

11   privileged information and documents defendants seek will be

12   relevant to defendants' claim of appreciable prejudice

13   resulting from plaintiffs' alleged late notice of the

14   Thornton claim.

15          When a case is based upon federal diversity

16   jurisdiction, courts decide issues of privilege based upon

17   state law.  *In re* Ford Motor Corp., 110 F.3d 954 (3d Cir.

18   1997).  *In re* Kozlov, 79 N.J. 232 (1979) the New Jersey

19   Supreme Court set forth the analysis to be conducted to

20   determine whether to compel disclosure of a privileged

21   communication.  Under that decision, the party seeking

22   disclosure must establish first there's a legitimate need for

23   the evidence; second, the evidence must be relevant and

24   material to the issues before the court; and, third, by a

25   preponderance of the evidence, the requesting party must show

1  that the information cannot be secured from less intrusive

2  means.

3          When a party places confidential communication in

4  issue, that party voluntarily creates a need for the

5  disclosure of those confidences.  State v. Mauti, 208 N.J.

6  519 (2012).  Under New Jersey law, in order for a carrier to

7  succeed on a defense of untimely notice, the insurer must

8  show there's a breach of the notice provision in the policy

9  and a likelihood of appreciable prejudice.  That is Cooper v.

10  Government Employees Insurance Company, 51 N.J. 80 (1968).

11  In determining whether appreciable prejudice exists, courts

12  must look at whether, first, substantial rights have been

13  irretrievably lost by virtue of the failure of the insured to

14  provide notice in a timely manner, and, second, the

15  likelihood of success of the insurer in defending the claims.

16  Morales v. National Grange Mutual Insurance Company, 176 N.J.

17  Super. 347 (Law. Div. 1980)

18          The issue presented here was addressed by Judge

19  Clark in his decision in the National Fire case, which is at

20  2018 WL 627378 (D.N.J. 2018).  In that case, an insured

21  waited 16 years from the commencement of a case and 10 years

22  after a $100 million settlement of two antitrust cases to

23  tender the claim to the carrier.  Like in this case, in

24  National Union, the insurer argued that it needed to review

25  privileged communications between the insured and its

1    attorney in the underlying action as part of its defense that

2    it suffered appreciable prejudice.  The carrier wanted to

3    depose the insured's attorney concerning evaluations of

4    strategy and impressions regarding the merits of the claim.

5    And, like in this case, the insurer in National Union argued

6    that privileged information and communication with the

7    attorney were placed in issue, because plaintiff's position

8    that it was timely notified -- because of plaintiff's

9    position that it timely notified defendants created the need

10   for the disclosure of privileged communication and, thus, the

11   insured waived the privilege.

12          In that case, Judge Clark found two flaws in the

13   same arguments being made here by defendants.  First, that

14   any defense by an insurer based upon appreciable prejudice

15   against an insured's claim for coverage would always then

16   require the disclosure of privileged information, and such a

17   conclusion would create too wide of an exception to the

18   attorney-client privilege.  So, in other words, there must be

19   something more than a defense based on untimely notice,

20   because then every coverage case where untimely notice is an

21   issue would require the disclosure of privileged information

22   and communication.

23          And, second, Judge Clark found the carrier's

24   argument mischaracterized the relevant inquiry and the burden

25   of proof to determine appreciable prejudice.  In National

 1   Insurance, the insured argued that the carrier could not have

 2   achieved a better result.  Although facially it appears to be

 3   a different issue than in this case, in reality, it's, to me,

 4   is the same issue.  In this case, defendants want to see the

 5   privileged documents because they want to show that they

 6   would have achieved a better result than GEA, and, to me,

 7   that's just a mirror image of the insured's position in

 8   National Union that the carrier would not have a better

 9   result.

10        And Judge Clark noted that the inquiry is not on

11   the effectiveness of the attorney in the underlying case, but

12   the -- what the insurer would have done differently to

13   achieve a better result.  And so the burden is on the carrier

14   to show this.

15        Like Judge Clark, I also surveyed the case law in

16   this district and looked at the cases cited by the parties.

17   Judge Clark did not find a single case in which a judge

18   allowed the piercing of the attorney-client privilege based

19   on a carrier's defense of an impermissibly untimely notice.

20   And from my research, that has not changed in this district

21   since Judge Clark's opinion in 2018.

22        And Judge Clark also found that the carrier did not

23   meet its burden to show that there were no less intrusive

24   means to obtain the information.  Judge Clark wrote that the

25   insurer may obtain information it needs to show appreciable

1    prejudice from a variety of nonprivileged sources, "including

2    the pleadings, motions, depositions, transcripts,

3    communications between opposing counsel, and any discovery

4    produced therein, and by examining such sources plaintiff

5    should be able to develop its own information and impressions

6    regarding the underlying action and present its argument as

7    to what it would have done differently and what more

8    favorable outcome it would have achieved under the second

9    part of the appreciable prejudice inquiry."

10            Further, defendants can inquire about

11   plaintiff's -- can inquire through plaintiff's

12   representatives about the analysis of the case and settlement

13   strategy without delving into attorney-client privileged

14   communication.  Judge Clark cited as an example that

15   plaintiff's 30(b)(6) representative could be questioned why a

16   certain demand was not accepted without testifying about

17   privileged communication.  And the witness can certainly

18   testify about his own analysis of the settlement demands and

19   claims.

20            Although not explicitly stated, a logical extension

21   of defendants' argument and that the need to know what the

22   communication and advice was from GEA's attorney is that they

23   need to know that in the underlying action because they would

24   have been privy -- they would have been privy to that

25   information, and their decisions would have been informed by

1   the advice of counsel.  But, again, this is not the analysis,

2   and I agree with Judge Clark that that is not the analysis.

3   Defendants can review all the same documents, information,

4   settlement demands and settlement offers that were on the

5   table and make their own analysis of how they would have

6   reacted.  They can consult with competent counsel, which I am

7   sure defendant knows, to perform an independent legal

8   analysis.  And in this way, there are less intrusive ways to

9   obtain the information to demonstrate appreciable prejudice,

10  which will likely be what I figure an attack on GEA's failure

11  to settle the case prior to trial.

12          I also note Judge Pisano's decision in NL

13  Industries, 144 F.R.D. 225, (D.N.J. 1992), also cited by the

14  parties and in that case, the carrier sought the production

15  of privileged communications between the plaintiff and its

16  attorney in an underlying environmental action.  The carrier

17  argued it was entitled to the information because it had a

18  common interest with plaintiff and the insured that placed

19  the privilege communication at issue in the case.  Judge

20  Pisano denied the request finding that there was no common

21  interest and the communications were not placed in interest

22  and the information sought was irrelevant.  Judge Pisano

23  found that common interests may be found only when the

24  carrier retained the attorney.  Facts of Judge Pisano's case

25  are certainly distinguishable in a way in that the carrier

1  had denied coverage, and I understand that the carrier is

2  taking the position that it would not have denied coverage in

3  this case.  But the carrier in Judge Pisano's case asserted a

4  common interest.

5            But the result should be no different in this case.

6  Here, defendant did not know of the claim and therefore did

7  not retain counsel to defend plaintiff.  But that fact does

8  not change the analysis and thereby retroactively confer a

9  common interest relationship between the carrier and GEA.

10 GEA retained its counsel, which only served and represented

11 GEA and only shared privileged communications with GEA.

12           And I can't -- those -- those who are coming on the

13 Holland -- can you just please stand by?  Hollands matter.

14           We cannot assume these privileged communications

15 would have been exactly or even substantially the same if

16 defendants were providing coverage at the time.  In fact, I'm

17 pretty confident, including that GEA's attorneys' analysis --

18 with its clients, analysis of the settlement discussions and

19 evaluation of the claim would have been substantially

20 different had there been a carrier backing up the defense and

21 indemnifying GEA.  It's too far of a stretch to conclude that

22 an attorney representing what he or she believed to be an

23 uninsured client would have acted in the same manner if there

24 were confirmed insurance coverage.  Thus, that attorney's

25 mental impressions and analysis of settlement positions and

1    strategy are not, in my mind, relevant to what, if anything,

2    defendant would have done differently.

3           To me, the flaw in defendants' logical leap is that

4    the privileged communications would have been exactly or

5    substantially the same if there were confirmation of

6    insurance coverage.  Only in that way, would the

7    communications impacted or influenced the insurance decision.

8           And my thought with insurance coverage, the

9    landscape of the case from GEA's and its attorneys'

10   perspective would be substantially different than what they

11   faced in the underlying Thornton action.  As Judge Pisano

12   wrote, "The privileged communications were produced in a

13   period of uncertainty or in this case, lack of coverage, and

14   was never intended to be discoverable."  And I think the same

15   is true here.

16          And Judge Wolin similarly held in North River

17   Insurance Company v. Philadelphia Insurance, 797 F. Supp. 363

18   (D.N.J. 1992) that an insured does not automatically have

19   common interest between an insured and its counsel.  I think

20   this is an issue that was raised at the end in oral argument

21   by plaintiff's counsel.  Indeed, the common interest can only

22   be conferred when the carrier retains the attorney for the

23   insured.  To me, this makes sense because injecting a carrier

24   and its unique experience and influence over a litigation

25   significantly changes the dynamics of the relation from a

1  two-party relationship to a tri-partite relationship.

2          So weighing the importance and sanctity of

3  attorney-client privilege, the very limited circumstances in

4  which the privilege can be pierced, and the prevailing case

5  law in this district, I find the defendants have not met

6  their burden to demonstrate that GEA waived the privilege by

7  putting the confidential communication and information in

8  issue in this case or demonstrating that there's less

9  restrictive means to getting the same information.

10         So defendants' application to compel production of

11 privileged information and documents from plaintiffs is

12 denied.  And I'll enter an order incorporating that decision.

13         Everybody, just hold on one second.  Let me just

14 get everybody off the record.

15                  (Conclusion of proceedings)

16

17

18

19

20

21

22

23

24

25

1                        Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 41 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    s/ *Sara L. Kern*                    14th of October, 2020

19    _____    _____
      Signature of Approved Transcriber              Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      3 South Corporate Drive, Suite 203
23    Riverdale, NJ  07457
      (973) 237-6080
24

25

# EXHIBIT I

| | |
|---|---|
| **From:** | Rigby, Casey (Heritage Holdings (HHI)) |
| **Sent:** | Monday, August 08, 2011 11:32 AM |
| **To:** | Hovermill, Joseph W. |
| **Subject:** | RE: Donald and Joan Mazzaia, et al. v. A. O. Smith Corporation, et al. (including GEA Mechanical Equipment, US, Inc. a/k/a Westfalia Separator) |

Thank you for the quick response. I look forward to speaking with you.

**Casey A. Rigby**
Complex Claims Group
One Hartford Plaza
Hartford, CT 06155
**Phone:** 860.547.2701
**Fax:** 877.905.0403
**Email:** casey.rigby@thehartford.com

---

**From:** Hovermill, Joseph W. [mailto:jhovermi@MilesStockbridge.com]
**Sent:** Monday, August 08, 2011 11:29 AM
**To:** Rigby, Casey (Heritage Holdings (HHI))
**Subject:** RE: Donald and Joan Mazzaia, et al. v. A. O. Smith Corporation, et al. (including GEA Mechanical Equipment, US, Inc. a/k/a Westfalia Separator)

Casey.  Will pull this together this week.  Thanks.

Discovery so far shaping up well. Will call you once I send you these materials to discuss. Thanks.



---

**From:** Rigby, Casey (Heritage Holdings (HHI)) [mailto:Casey.Rigby@thehartford.com]
**Sent:** Monday, August 08, 2011 11:12 AM
**To:** Hovermill, Joseph W.
**Subject:** Donald and Joan Mazzaia, et al. v. A. O. Smith Corporation, et al. (including GEA Mechanical Equipment, US, Inc. a/k/a Westfalia Separator)

1

Good Morning Attorney Hovermill -

Jay Greig from GEA Group has informed me that you are representing GEA Mechanical Equipment, US, Inc. in the above-referenced matter. The Hartford has agreed to participate in the defense of this matter.

At your earliest convenience, can you please prove me with the following items:
- Your firms hourly rates for: partners, associates and paralegals;
- All invoices for this matter;
- All necessary legal documents, including answers filed,
- A current defense report; and,
- A current defense budget.

Please note my contact information below. Feel free to contact me with any questions, concerns or to discuss this matter.

Thanks,
Casey

**Casey A. Rigby**
Complex Claims Group
One Hartford Plaza
Hartford, CT 06155
**Phone:** 860.547.2701
**Fax:** 877.905.0403
**Email:** casey.rigby@thehartford.com

*****************************************************************
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information.  If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited.  If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
*****************************************************************

In accordance with Internal Revenue Service rules, any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.
Confidentiality Notice:
This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly indicated.

Secure Upload/Download files click here.