NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Case No. 2:20-cv-09741 (BRM) (ESK) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, and First State Insurance Company (collectively, "Hartford"), and The Continental Insurance Company ("Continental") and Wellfleet New York Insurance Company as successor to Atlanta International Insurance Company's ("AIIC") (together with Hartford and Continental, "Defendants") Appeal (ECF No. 20) of Magistrate Judge Kiel's October 8, 2020 Order denying Defendants' request to compel Plaintiff GEA Mechanical Equipment U.S., Inc. ("GEA") to produce certain information and documents protected by the attorney-client privilege and/or work-product doctrine (ECF No. 17). GEA opposes the Appeal. (ECF No. 21.) Having reviewed the papers submitted by counsel, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Appeal is **DENIED** and Judge Kiel's Order is **AFFIRMED**.

**I. BACKGROUND**

The Court will only recount facts relevant for the purposes of the Appeal. This is an asbestos insurance coverage action. GEA, a corporation organized and existing under the laws of

the State of Delaware with its corporate headquarters and principal place of business in New Jersey, seeks a declaration that it is entitled to insurance coverage under certain standard form comprehensive general liability insurance policies purchased from Defendants.[1] (ECF No. 1 at 2.) Specifically, here, GEA seeks coverage for an asbestos claim that resulted in a judgment against GEA in an amount in excess of $70 million. (*See* ECF No. 10 at 2.) The underlying complaint that resulted in the declaratory judgment was filed by Charles and Constance Thornton in the Circuit Court for Miami-Dade County in March 2017 (the "Thornton Action").[2] (*See* ECF No. 1.) The Thornton Action proceeded to trial with GEA as the remaining defendant in June of 2019 where the Thorntons claimed damages resulting from Charles Thornton's alleged exposure to products that contained asbestos allegedly made, sold, or distributed by GEA's predecessor in interest, Centrico Inc. (ECF No. 10 at 1–2.)

On June 17, 2019, the jury returned a verdict in favor of the Thorntons and against GEA in the total amount of $70,102,000 in compensatory damages. (*Id.* at 2.) A final judgment was entered against GEA on June 19, 2019. (*Id.*) On August 5, 2019, GEA tendered the Thornton Action claim to Hartford and AIIC.[3] (*Id.*) Following the tender, on September 16, 2019, GEA participated in a mediation, and ultimately, GEA reached a confidential settlement with the Thorntons on September 24, 2019. (*Id.* at 3.) GEA "apprised Hartford and AIIC of the mediation and settlement

---

[1] Defendants sold various standard form primary, umbrella, and excess comprehensive general liability insurance policies. (ECF No. 1 ¶ 12.)

[2] The original complaint did not name GEA but rather named "GEA Process Engineering, Inc. f/k/a GEA North America, Inc. f/k/a GEA Westfalia Separator, Inc." (ECF No. 10 at 2.) Still, GEA answered the complaint on April 17, 2017. (*Id.*) The Thorntons amended their complaint in December of 2018 to correctly identify GEA and sought judgment against same. (*Id.*)

[3] GEA also tendered the claim to Continental during the pendency of this action "as Plaintiff alleges that it became aware of the Continental policies as a result of documents products this action." (ECF No. 10 at 2 n.1.)

and they did not object." (*Id.*) Defendants have each disclaimed any coverage obligation to GEA for the Thornton Action, including on the basis that GEA's notice of the claim for the Thornton Action was provided impermissibly late and that GEA breached the cooperation clauses of Defendants' policies. (*See id.*) On August 6, 2019, GEA filed this insurance coverage action in the Superior Court of New Jersey, Law Division, Bergen County. (*Id.*; ECF No. 1 at 10.) This action was removed to this Court on July 31, 2020. (ECF No. 1.)

The present dispute involves whether documents and information relating to the Thornton Action that contain attorney-client privileged communications and/or work product should be produced. (ECF No. 10 at 3.) Defendants have served several interrogatories and requests for production that call for, *inter alia*, certain information relating to the underlying Thornton Action. (*Id.*) For present purposes, GEA does not dispute that the privileged and work-product materials at issue here are responsive to Defendants' discovery requests. (*Id.*) GEA produced documents in response to Defendants' document demands and interrogatories on a rolling basis, with the third (and most recent) production occurring on July 2, 2020. (*Id.*) To date, GEA has produced over 70,000 pages of documents. (*Id.* at 3–4.) GEA, however, withheld from production documents and information that contain attorney-client privileged communications and/or work product. (*Id.* at 11.) GEA also interposed objections based on relevance. (*Id.*) Defendants contend their interrogatories and document requests encompass attorney-client communications relating to the defense and settlement strategy and analysis of the Thornton Action, which documents have not been produced by GEA. (*See* ECF No. 10-1 at 2.) GEA asserts that such documents are protected by the attorney-client privilege and/or work-product doctrine and therefore need not be produced. (ECF No. 10 at 4.)

On September 21, 2020, the parties submitted a joint letter to Judge Kiel outlining the discovery dispute and the parties' respective positions. (*See generally* ECF No. 10.) Also, in the joint letter, Defendants requested GEA "be compelled to produce the requested privileged documents relating to the defense and settlement of the Thornton claim" (the "Application"). (*Id.* at 5.) On October 8, 2020, after hearing oral argument, Judge Kiel entered a decision on the record and issued an Order denying Defendants' Application. (ECF Nos. 17, 19.) On October 22, 2020, Defendants filed an appeal of Judge Kiel's decision to this Court. (ECF No. 20.) On November 2, 2020, GEA filed an opposition. (ECF No. 21.) On November 9, 2020, Defendants filed a reply. (ECF No. 22.)

## II. LEGAL STANDARD

A district court may reverse a magistrate judge's determination of a non-dispositive issue only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); *see also Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A district court may not take into consideration any evidence that was not put forth before the magistrate judge when reviewing the magistrate judge's factual determination. *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). Under the clearly erroneous standard, the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently. *See Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996). A district court, however, will review a magistrate judge's legal conclusions *de novo*. *See Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998) (citations omitted).

"Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of that discretion." *Id.*; *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 3069 (2d ed. 1997) (providing that "many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis"). The deferential standard of review is particularly appropriate in a case where the magistrate judge managed the case from the outset, and therefore has a thorough knowledge of the proceedings. *Cooper Hosp.*, 183 F.R.D. at 127 (citing *Pub. Interest Rsch. Grp. v. Hercules, Inc.*, 830 F. Supp. 1525, 1547 (D.N.J. 1993), *aff'd on other grounds and rev'd on other grounds*, 50 F.3d 1239 (3d Cir.1995)); *Robinson, v. Horizon Blue Cross-Blue Shield of N.J.*, Civ. A. No. 12-2981, 2014 WL 3573339, at *1 (D.N.J. July 21, 2014).

## III. DECISION

Defendants argue Judge Kiel's Order denying Defendants' motion to compel discovery should be reversed. (ECF No. 20-1 at 9, 26) ("[B]ecause Judge Kiel 'misinterpreted or misapplied' *Becton* and *NL Indus.*, which are both distinguishable from the present circumstances, the Order is contrary to law and should be reversed.").) Specifically, Defendants argue Judge Kiel "misapplied" *National Union Fire Insurance Co. of Pittsburgh v. Becton, Dickinson and Co.*, 2018 WL 627378 (D.N.J. Jan. 30, 2018) ("*Becton*") by "ignor[ing] important distinguishable facts, including that the insurer in *Becton* did not contend that, had it received timely notice, it would have participated in the defense of the underlying claims and been privy to defense counsel's communications concerning defense and settlement strategy." (*Id.* at 7–8.) Further, Defendants argue Judge Kiel "improperly relied" on *NL Industries, Inc. v. Commercial Union Insurance Co.*, 144 F.R.D. 225 (D.N.J. 1992) ("*NL Indus.*") "in finding that no common interest existed between

GEA and Defendants because the common interest doctrine only applies when the carriers have retained the insured's defense counsel. However, Judge Kiel misapplied *NL Indus.* [] as the 'adversarial line' was not drawn at the time the requested documents were created." (*Id.* at 8–9.) Defendants also assert, "there [] is no question" Defendants "established" the three *Kozlov* "foundations" for piercing privilege as articulated in *In re Kozlov*, 398 A.2d 882 (N.J. 1979). (*Id.* at 25.)

GEA argues Judge Kiel "carefully considered" Defendants' arguments and provided on the record:

> I also surveyed the case law in this district and looked at the cases cited by the parties. Judge Clark [in *Becton*] did not find a single case in which a judge allowed the piercing of the attorney-client privilege based on a carrier's defense of an impermissibly untimely notice. And from my research, that has not changed in this district since Judge Clark's opinion in 2018.

(ECF No. 21 at 11–12; *see* ECF No. 19 at 35.) Further, with respect to *NL Indus.*, GEA contends, "Defendants do not, because they cannot, cite a single case applying New Jersey law in which the common-interest doctrine was used offensively in the manner they seek." (*Id.* at 17.) GEA argues *NL Indus.* "held that an insurer could not use the common interest doctrine offensively to compel the production of privileged documents when there was no established joint-defense relationship at the time the privileged communication was made." (*Id.* (citing 144 F.R.D. at 232).) Additionally, GEA argues Defendants have "failed to meet their burden of establishing, by a preponderance of the evidence, they are entitled to pierce privilege in this case." (*Id.* at 19.)

Defendants have not provided any support for this Court to conclude Judge Kiel's decision was clearly erroneous. In the Order, Judge Kiel acknowledged the parties' arguments, and the

6

relevant case law, including *Becton*,[4] *NL Indus.*,[5] and *Kozlov*.[6] Judge Kiel's Order expressly states:

> weighing the importance and sanctity of attorney-client privilege, the very limited circumstances in which the privilege can be pierced, and the prevailing case law in this district, I find the defendants have not met their burden to demonstrate that GEA waived the privilege by putting the confidential communication and information in issue in this case or demonstrating that there's less restrictive means to getting the same information. So defendants' application to compel production of privileged information and documents from plaintiffs is denied. And I'll enter an order incorporating that decision.

(ECF No. 19 at 40.) The Court is persuaded by Judge Kiel's discussion of the facts and arguments of the parties and finds Judge Kiel carefully considered Defendants' contention that GEA should be compelled to produce the requested privilege documents relating to the defense and settlement of the Thornton Action before he denied Defendants' motion. (*See generally* ECF No. 19.) As such, this Court does not find Judge Kiel's decision was clearly erroneous or contrary to law, and will, therefore, affirm his ruling. *See Trzaska v. L'Oreal USA, Inc.*, Civ. A. No. 152713, 2020 WL 1082616, at *2 (D.N.J. Mar. 5, 2020); *Hubbard v. Lanigan*, Civ. A. No. 18-2055, 2019 WL 3817523, at *1 (D.N.J. Aug. 14, 2019) (noting that " a Magistrate Judge's 'determination in a discovery dispute is entitled to great deference and reversible only for an abuse of discretion'") (citation omitted).

---

[4] (ECF No. 17 at 33) (noting that the "issue presented here" was "addressed by Judge Clark" in *Becton* and like Judge Clark, "[Judge Kiel] also surveyed the case law in this district and looked at the cases cited by the parties . . . [and] did not find a single case in which a judge allowed the piercing of the attorney-client privilege based on a carrier's defense of an impermissibly timely notice").)

[5] (ECF No. 17 at 39) (agreeing that "[t]he privileged communications were produced in a period of uncertainty or in this case, lack of coverage, and was never intended to be discoverable").)

[6] (ECF No. 17 at 32) (citing the three-prong test under *Kozlov* and concluding attorney-client privilege would not be pierced).)

Accordingly, Defendants' Appeal is **DENIED**.

IV. **CONCLUSION**

For the reasons set forth above, Defendants' Appeal of Judge Kiel's October 8, 2020 Order is **DENIED** and Judge Kiel's October 8, 2020 Order is **AFFIRMED**. An appropriate order follows.

**Date: May 26, 2021**　　　　　　　　　　　　　　*/s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**