IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., | Civil Action No. 2-20-cv-09741-BRM-ESK |
| Plaintiff, | |
| v. | Hon. Brian R. Martinotti, U.S.D.J. |
| FIRST STATE INSURANCE COMPANY, ET AL., | Hon. Edward S. Kiel, U.S.M.J. |
| Defendants. | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiff GEA Mechanical Equipment US, Inc. ("GEA Mechanical"), by its undersigned counsel, respectfully submits the following statement of material facts as to which there is no genuine issue to be tried.

1.      The Defendants[1] or their predecessors issued certain primary or excess general liability policies to Centrico, Inc. ("Centrico") covering various periods from May 15, 1979 to December 31, 1995 (the "Policies").[2]

---

[1] The "Defendants" are First State Insurance Company ("First State"), Hartford Accident and Indemnity Company ("Hartford A&I"), Hartford Fire Insurance Company ("Hartford Fire," and collectively with First State and Hartford A&I, "Hartford"), Wellfleet New York Insurance Company, as successor in interest to

2.      The Parties have agreed to and stipulated to the existence and key terms of the Policies.[3]

3.      The Policies insure the policyholder for liability incurred because of, *inter alia*, bodily injury caused by an occurrence.[4]

4.      GEA Mechanical is successor to Centrico and is entitled to all of the same rights and obligations under the Policies as Centrico with regard to the Thornton Action (defined below).[5]

5.      Wellfleet New York Insurance Company is successor to AIIC and is entitled to all of the same rights and obligations under the Policies as AIIC with regard to the Thornton Action (defined below).[6]

6.      GEA Mechanical and Hartford have agreed to the existence and authenticity of certain Retrospective Rating Agreements but have not agreed on whether

---

Atlanta International Insurance Company ("AIIC"), and Continental Insurance Company ("Continental").

[2] Certification of Donald Kiel in Support of Motion for Summary Judgment (the "Kiel Cert."), Exs. 27, 28, and 29 (Policy Stipulations, *infra* Note 3).

[3] *See generally* Stipulation Between Plaintiff GEA Mechanical and AIIC Regarding Authenticity and Completeness of Policy (Kiel Cert. Ex. 27); Stipulation Between Plaintiff GEA Mechanical and Continental Regarding the Existence, Authenticity, and Terms and Conditions of Policies (Kiel Cert. Ex. 28); Stipulation Between Plaintiff GEA Mechanical and First State, Hartford A&I, and Hartford Fire Regarding Authenticity and Completeness of Policies (Kiel Cert. Ex. 29).

[4] *See generally* Kiel Cert. Ex. 27; Kiel Cert. Ex. 28; Kiel Cert. Ex. 29.

[5] *See* Kiel Cert. Ex. 27, at ¶ 8; Kiel Cert. Ex. 28, at ¶ 10; Kiel Cert. Ex. 29, at ¶ 7.

[6] *See* Kiel Cert. Ex. 27, at ¶ 7.

those agreements apply to the Policies or GEA Mechanical's claim for coverage in this action.[7]

7.  In March 2017, Charles and Constance Thornton filed a lawsuit, captioned *Thornton v. Alfa Laval, Inc., et al.*, Case No. 17-006018 CA 42, Circuit Court for Miami-Dade County, Florida (the "Thornton Action"), against various underlying defendants.[8]

8.  GEA Mechanical retained the law firms of Miles & Stockbridge and Shapiro Blasi to defend GEA Mechanical in the Thornton Action.[9]

9.  The record in this action does not include privileged defense communications or work product relating to GEA Mechanical or its defense counsels' strategy for or analysis of the Thornton Action, as such information was withheld on privilege grounds and the Court upheld such assertions of privilege.[10]

10. The Thornton Action involved allegations that Mr. Thornton suffered bodily injury as a result of alleged exposure to asbestos-containing brakes and

---

[7] *See* Kiel Cert. Ex. 29, at ¶¶ 9, 12, Exs. 24-31. Hartford's corporate witness, Timothy Brady, admitted that "there's a conflict" between two provisions relating to the application of the Retro Agreements and that "one says one thing and one says another." Deposition of Timothy Brady (Kiel Cert. Ex. 13), at 144:22-25.

[8] Plaintiff's Responses and Objections to Interrogatories by Defendants Continental and AIIC (Kiel Cert. Ex. 2), No. 5.

[9] *Id.*, No. 1.

[10] *See* ECF No. 19, at 25-40 (ruling of Judge Kiel); ECF No. 17 (order); ECF No. 32 (ruling of Judge Martinotti); ECF No. 33 (order).

clutches contained in centrifuges or separators used to separate plasma from blood that were sold by Centrico to his employer.[11]

11.   The earliest date that Mr. Thornton could have been exposed to GEA Mechanical's products was May 15, 1979.[12]

12.   

13.   On December 4, 2018 GEA Mechanical, the Thorntons, and certain other defendants to the Thornton Action participated in a court-ordered mediation (the "2018 Mediation")

14.

---

[11] Thornton Complaint (Kiel Cert. Ex. 3).
[12] Deposition of Elizabeth O'Neill (Kiel Cert. Ex. 30), at 68:5-69:6.
[13] Kiel Cert. Ex. 2, No. 1 (detailing settlement discussions in the Thornton Action).
[14] *Id.*, No. 1; Deposition of Stuart Weinstein (Kiel Cert. Ex. 4), at 93:10-94:23.
[15] Kiel Cert. Ex. 2, No. 1; Kiel Cert. Ex. 4, at 93:10-94:23.
[16] Kiel Cert. Ex. 2, No. 1.
[17] *Id.* (detailing the settlement discussions in the Thornton Action).

15. 

16.

17.    The Thornton Action went to trial in June 2019. On June 17, 2019, the jury

returned a verdict against GEA Mechanical in the total amount of $70.102

million in compensatory damages.[20] A final judgment in that amount was

entered against GEA Mechanical two days later on June 19, 2019.[21]

18. 

19.

20.    Hartford produced evidence of prior impairment to certain of the primary

Hartford Policies.[24] Resolute has not produced evidence suggesting the

---

[18] Deposition of Jamieson Greig (Kiel Cert. Ex. 9), at 169:2-173:11.

[19] Kiel Cert. Ex. 2, No. 1; Kiel Cert. Ex. 9, at 175:5-15.

[20] Verdict Form from the Thornton Action, June 17, 2019 (Kiel Cert. Ex. 6).

[21] Final Judgment from the Thornton Action, June 19, 2019 (Kiel Cert. Ex. 7).

[22] Settlement Agreement and General Release, Sept. 24, 2019 (Kiel Cert. Ex. 8), at GEA_00068194 - GEA_00068203.

[23] Kiel Cert. Ex. 9, at 211:20-25.

impairment information provided from Hartford is incorrect.[25] Resolute has not produced evidence showing prior impairment to the Continental or AIIC Policies.[26]

21.   The parties have entered into a stipulation regarding the applicable method (only if it is determined that coverage exists) for allocating indemnity costs incurred and paid by GEA Mechanical in connection with its settlement of the Thornton Action.[27] ███████████████████████

███████████████████████████████████

███████████████████████ The allocations shown in Appendix 1 account for the prior impairment discussed in Paragraph 20.

22.   On August 5 and 6, 2019, prior to the settlement of the Thornton Action, GEA Mechanical notified Hartford and AIIC of the Thornton Action.[28] Hartford and AIIC do not dispute receipt of notice of the Thornton Action at or around this time.

---

[24] Hartford Loss Run (Kiel Cert. Ex. 45), at HART006010 - HART006015.

[25] Deposition of Thomas Barriball (Kiel Cert. Ex. 17), at 104:16-20; *id.* at 205:13-17.

[26] *Id.* at 89:9-24.

[27] Stipulation Regarding Allocation Between Plaintiff GEA Mechanical Equipment US, Inc. and Defendants First State Insurance Company, Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, Wellfleet New York Insurance Company, and Continental Insurance Company (Kiel Cert. Ex. 1).

[28] Letter from Jamieson Greig, Aug. 6, 2019 (Kiel Cert. Ex. 15), at AIIC00024 - AIIC00026; Letter from Jamieson Greig, Aug. 5, 2019 (Kiel Cert. Ex. 16), at HART005950 - HART005951.

23. 

24.

25. Prior to the settlement of the Thornton Action, Resolute Management Inc. ("Resolute"), on behalf of AIIC, and Hartford each denied coverage under their policies.[31]



[31] Letter from Richard Merritt, Sept. 20, 2019 (Kiel Cert. Ex. 24), at GEA_00070143 - GEA_00070149; Letter from James M. Gardner, Sept. 24, 2019 (Kiel Cert. Ex. 25), at GEA_00008775 - GEA_00008776.

26.     On January 7, 2020, after this coverage litigation had been commenced and after the settlement in the Thornton Action, GEA Mechanical provided notice of the Thornton Action to Continental.[32]

27.     With respect to certain claims, including claims for coverage under the Policies for the Thornton Action, Resolute was and is the claims-handling agent for AIIC and Continental.[33] Resolute handled the Thornton claim in the same way for both AIIC and Continental.[34]

28.     Prior to the Thornton Action, GEA Mechanical was named as a defendant in two other asbestos bodily injury cases, *Johnson* and *Mazzaia*, which were both tendered to Hartford.[35]

29.     In both *Johnson* and *Mazzaia*, GEA Mechanical retained Miles & Stockbridge, one of the firms GEA Mechanical retained to defend the Thornton Action, and local counsel for the jurisdiction, to defend GEA

---

[32] Letter from Jamieson Greig, Jan. 7, 2020 (Kiel Cert. Ex. 26), at GEA_00070956 - GEA_00071023.

[33] Kiel Cert. Ex. 17, at 22:8-23:14 (discussing assignment of certain Continental and AIIC obligations).

[34] *Id.* at 28:24-29:3 (stating that AIIC and Continental follow the same claims handling procedures).

[35] Letter from Jamieson Greig, Apr. 7, 2011 (Kiel Cert. Ex. 10), at GEA_00061855 - GEA_00061856 (notice to Hartford of *Mazzaia* claim); Letter from Pamela L. Labaj, Mar. 4, 2009 (Kiel Cert. Ex. 11), at GEA_00014301 - GEA_00014302 (notice to Hartford of *Johnson* claim).

Mechanical.[36] ████████████████████████████████

██████████████████████████████

30. Other than generally receiving pleadings and periodic updates and issuing coverage position letters, Hartford has not identified any specific actions it took or advice it provided to GEA Mechanical in connection with the defense of the *Johnson* and *Mazzaia* matters.[38]

31. As outlined below, the Policies contain provisions regarding the timing of notice to the Defendants for claims. The relevant portions of these provisions are as follows:

    a. **Hartford A&I and Hartford Fire:**

        i.   Ten of the Hartford Policies provide:

             **4. Insured's Duties in the Event of Occurrence, Claim or Suit.**

             (a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

---

[36] *See* Kiel Cert. Ex. 9, at 60:25-61:6; *id.* at 73:13-16.

██ ████████████████████████████████████████
████████████████████████████████████████

[38] *See, e.g.,* Kiel Cert. Ex. 13, at 160:11-17 (discussing Hartford's lack of involvement in the *Johnson* case); Email chain with Casey Rigby (Kiel Cert. Ex. 14), at GEA_00068311 - GEA_00068314 (showing Hartford's involvement in *Mazzaia*).

(b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.   The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.[39]

    ii.    Three of the Hartford Policies provide:

C. Insured's Duties in the Event of **Occurrence**, Claim or Suit:

1. In the event of an occurrence, written notice containing particulars sufficient to identify the **Insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **Insured** to the Company or any of its authorized agents as soon as practicable.

2. If claim is made or suit is brought against the **Insured**, the **Insured** shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

---

[39] Kiel Cert. Ex. 29, Ex. 1, at HART001364 (8/25/78-8/25/79); *id.*, Ex. 2, at HART000089 (8/25/79-10/25/80); *id.*, Ex. 3, at HART000175 (10/25/80-10/25/81); *id.*, Ex. 4, at HART000225 (10/25/81-10/25/82); *id.*, Ex. 5, at HART000265 (10/25/82-10/25/83); *id.*, Ex. 6, at HART000325 (10/25/83-10/25/84); *id.*, Ex. 7, at HART000396 (10/25/84-10/25/85); *id.*, Ex. 8, at HART000462 (10/25/85-10/25/86); *id.*, Ex. 9, at HART000572 (10/25/86-10/25/87); *id.*, Ex. 10, at HART000680 (10/25/87-10/25/88).

3. The **Insured** shall cooperate with the Company[,] and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Insured** because of injury or damage with respect to which insurance is afforded under this policy, and the **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **Insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.[40]

iii. Four of the Hartford Policies provide:

**2. Duties In The Event of Occurrence, Claim Or Suit.**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

---

[40] *Id.*, Ex. 11, at HART010302 (10/25/88-10/25/89); *id.*, Ex. 12, at HART000820 (10/25/89-10/25/90); *id.*, Ex. 13, at HART001028 (10/25/90-12/25/91).

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.[41]

b. **First State:** The First State Policies provide:

> **D. Notice of Occurrence, Claim or Legal Proceeding:** Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.
>
> The INSURED shall give like notice of any claim made or legal proceeding commenced on account of such occurrence. If legal proceedings are begun, the INSURED, when requested by the COMPANY, shall forward to it each paper thereon, or a copy thereof received by the INSURED or the INSURED'S representatives, together with copies of reports of investigations

---

[41] *Id.*, Ex. 14, at HART001159 - HART001160 (12/25/91-12/31/92); *id.*, Ex. 15, at HART001545 - HART001546 (12/31/92-12/31/93); *id.*, Ex. 16, at HART 002381 - HART002382 (12/31/93-12/31/94); *id.*, Ex. 17, at HART001722 - HART001723 (12/31/94-12/31/95).

made by the INSURED with respect to such claim proceedings.[42]

c. **Continental**: The Continental policies provide:

**6. Notice of Occurrence, Claim or Legal Proceedings.**
When an occurrence takes place which is reasonably likely to involve the insurance afforded hereunder written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses. The insured shall give like notice of any claim made because of such occurrence. If legal proceedings are instituted, the insured, when requested by the company, shall forward to it each document in connection therewith or a copy thereof, received by the insured or the insured's representatives. The company shall also have the right to request from the insured and the insured shall furnish the company copies of reports of any investigations conducted by the insured relative to such claims or suits.[43]

d. **AIIC**: The AIIC Policy provides:

11.3 Insured's Duties in the Event of Occurrence, Claim or Suit. In the event of an occurrence reasonably likely to involve indemnity under this policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.

---

[42] *Id.*, Ex. 18, at HART002036 (8/25/1978 - 8/25/1979); *id.*, Ex. 22, at HART002045 (10/25/1982 - 10/25/1983); *id.*, Ex. 23, at HART002054 (10/25/1983 - 10/25/1984).

[43] *See* Kiel Cert. Ex. 28, Exs. 1-3, at Continental000012. The Parties stipulated that all of the policies issued by Continental contain identical terms.

If claim is made or suit is brought against the Insured relating to an occurrence reasonably likely to involve the insurance afforded by this policy, the Insured shall immediately notify the Company in writing and forward to the underlying insurer and to the Company every demand, notice, summons or other process received by him or his representative.[44]

32. GEA Mechanical served Interrogatory No. 41 on the Defendants, asking:

Do **YOU** contend that the **INSURED** failed to provide timely notice under **YOUR POLICIES** of any **UNDERLYING ASBESTOS-RELATED CLAIM(S)**? If **YOUR** answer is anything other than an unqualified negative:

(a) state all facts that support **YOUR** position;

(b) state whether **YOU** contend that **YOU** suffered any appreciable prejudice as a result of such failure; and

(c) if so, state all facts **RELATING TO** such appreciable prejudice.[45]

33. In response, Defendants responded as follows:

   a. **Hartford**:

   [Numerous general objections omitted, including Hartford's objection that the request "seeks information [not] relevant to the claims or defenses at issue in this litigation"].

   Subject to and without waiving the foregoing objections, Hartford responds that Plaintiff failed to provide timely notice of the Thornton Claim to Hartford and that Hartford has been prejudiced as a result. Hartford refers to any relevant, non-privileged documents it will produce and/or has produced that are responsive to this Interrogatory, as well as any documents produced or to be produced by Plaintiff and any deposition testimony to be provided in connection with this action. Hartford further refers to the Hartford Policies for their precise terms, conditions and exclusions.[46]

   b. **AIIC**:

---

[44] Kiel Cert. Ex. 27, Ex. 1, at AIIC00122.

[45] Plaintiff's First Set of Interrogatories (Kiel Cert. Ex. 34), No. 41.

[46] Hartford's Responses and Objections to Plaintiff's First Set of Interrogatories (Kiel Cert. Ex. 46), No. 41.

See Answer to Interrogatory 40.[47] Notwithstanding the foregoing, AIIC further states that it has been appreciably prejudiced by GEA's failure to provide notice of the Thornton claim. AIIC further states that discovery is ongoing, but, at a minimum, AIIC has been prejudiced by, among other things, being prevented from participating in the defense of the case, being unable to evaluate the case before trial, being unable to participate in settlement negotiations prior to trial, being unable to participate in settlement negotiations prior to settlement of the entry of a verdict in excess of $70 million dollars, being unable to participate in trial strategy, and more. AIIC further states that being informed of a case only after the insured has had a judgment of more than $70 million entered against it is appreciable prejudice in itself.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████ Not

only was AIIC deprived of the opportunity to participate in or otherwise influence decisions about settlement and litigation strategy, but because, upon information and belief, GEA also failed to provide notice to the

---

[47] In pertinent part, AIIC's response to Interrogatory No. 40 provides:

> [General objections omitted]. Notwithstanding the foregoing, AIIC states that the notice provision in Policy No. UMB6230 bars coverage, as the first notice AIIC received of any underlying asbestos-related claim was the post-verdict notice of the Thornton claim it received from GEA in August of 2019, contemporaneously with GEA's filing of this action. AIIC further states that GEA has never provided notice of any other underlying asbestos claims to AIIC, and AIIC is unaware of any other such claims. AIIC further states that the cooperation provision in Policy No. UMB6230 requiring GEA to cooperate with the underlying insurer according to the terms of the underlying policy precludes coverage, as GEA failed to give notice of the underlying Thornton action to Hartford, the underlying insurer, until after the verdict in that action, and otherwise failed to cooperate with Hartford pursuant to the terms of the underlying policy.

AIIC's Response to Plaintiff's First Set of Interrogatories (Kiel Cert. Ex. 32), No. 40.

primary insurer Hartford, AIIC was deprived of the protections that an excess carrier inherently receives when an informed and accountable primary insurer retains counsel, controls the defense, and makes sound decisions about settlement and litigation strategy. For the foregoing reasons AIIC has been appreciably prejudiced as a matter of law. AIIC reserves the right to supplement its response to this interrogatory.[48]

c. **Continental**:

See Answer to Interrogatory 40.[49] Notwithstanding the foregoing, Continental further states that it has been appreciably prejudiced by GEA's failure to provide notice of the Thornton claim. Continental further states that discovery is ongoing, but, at a minimum, it has been prejudiced by, among other things, being prevented from participating in the defense of the case, being unable to evaluate the case before trial, being unable to participate in settlement negotiations prior to trial, being unable to participate in settlement negotiations prior to settlement of the entry of a verdict in excess of $70 million dollars, being unable to participate in trial strategy, and more. Continental further states that being informed of a case only after the insured has had a judgment of more than $70 million entered against it is appreciable prejudice in itself.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[48] *Id.*

[49] Continental's Response to Interrogatory No. 40 provides, in pertinent part:
[General objections omitted]. Notwithstanding the foregoing, Continental states that the notice provision in its policies bars coverage, as the first notice of any underlying asbestos-related action it received was the post-verdict notice of the Thornton claim it received from GEA in January of 2020. Continental further states that GEA has never provided notice of any other underlying asbestos claims to Continental, and Continental is unaware of any other such claims. Continental further states that the assistance and cooperation provision in its policies bars coverage.
Continental's Second Supplemental Response to Plaintiff's First Set of Interrogatories (Kiel Cert. Ex. 33), No. 40.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Not only was Continental deprived of the opportunity to participate in or otherwise influence decisions about settlement and litigation strategy, but because, upon information and belief, GEA also failed to provide notice to the primary insurer, Hartford, Continental was deprived of the protections that an excess carrier inherently receives when an informed and accountable primary insurer retains counsel, controls the defense, and makes sound decisions about settlement and litigation strategy. For the foregoing reasons Continental has been appreciably prejudiced as a matter of law. Continental further relies on the testimony of its corporate witness Thomas Barriball on this topic given during his August 11, 2021 deposition in this matter. Continental reserves the right to supplement its response to this Interrogatory.[50]

34.   GEA Mechanical served Interrogatory No. 42 on the Defendants, asking

> If **YOU** contend that the **INSURED** failed to provide timely notice under **YOUR POLICIES** of any **UNDERLYING ASBESTOS-RELATED CLAIM(S)**, state when the **INSURED** should have provided **YOU** notice of the **UNDERLYING ASBESTOS-RELATED CLAIM(S)**, and describe the basis for **YOUR** position.[51]

35.   In response, Defendants responded as follows:

a. **Hartford**:

> [Numerous general objections omitted, including Hartford's objection to the request "on the grounds that it is speculative" and "seeks information [not] relevant to the claims or defenses at issue in this litigation"].

> Subject to and without waiving the foregoing objections, Hartford responds that, in accordance with the Hartford Policies, Plaintiff was required to provide immediate notice of any claim made or suit brought against it, which Plaintiff failed to do with respect to the Thornton Claim. Hartford refers to any relevant, non-privileged documents it will produce and/or has produced that are responsive to this Interrogatory, as well as any documents produced or to be produced by Plaintiff and any deposition testimony to be provided in connection with this action.

---

[50] *Id.*
[51] Kiel Cert. Ex. 34, No. 42.

Hartford further refers to the Hartford Policies for their precise terms, conditions and exclusions.[52]

b. **AIIC**:

See Answer to Interrogatory 40. Notwithstanding the foregoing, AIIC further states that GEA should have given notice of the underlying Thornton claim in accordance with the obligations of AIIC Policy No. UMB6230 and any underlying policies.[53]

c. **Continental:**

See Answer to Interrogatory 40 and 41. Notwithstanding the foregoing, Continental further states that GEA should have given notice of the underlying Thornton claim in accordance with the obligations of its policies of insurance.[54]

36.  GEA Mechanical served Interrogatory No. 43 on the Defendants, asking:

If **YOU** contend that the **INSURED** failed to provide timely notice under **YOUR POLICIES** of any **UNDERLYING ASBESTOS-RELATED CLAIM(S)**, describe (i) the actions that **YOU** would have undertaken had the **INSURED** provided **YOU** with what **YOU** contend is timely notice, and (ii) how those actions would have improved the outcome of the relevant **UNDERLYING ASBESTOS-RELATED CLAIM(S)**.[55]

37.  In response, Defendants responded as follows:

a. **Hartford**:

[Numerous general objections omitted, including Hartford's objection to the request "on the grounds that it is speculative" and "seeks information [not] relevant to the claims or defenses at issue in this litigation"].

Subject to and without waiving the foregoing objections, Hartford responds that, were it provided timely notice of the Thornton Claim, Hartford would likely have participated in decisions relating to the defense and potential settlement of that claim, including but not limited to utilizing Hartford's experience and knowledge relating to the defense and settlement of asbestos bodily injury claims to assist with the defense

---

[52] Kiel Cert. Ex. 46, No. 42.
[53] Kiel Cert. Ex. 32, No. 42.
[54] Kiel Cert. Ex. 33, No. 42.
[55] Kiel Cert. Ex. 34, No. 43.

of the Thornton Claim and analysis of settlement opportunities, which would have likely achieved a better outcome of the Thornton Claim. Hartford refers to any relevant, non-privileged documents it will produce and/or has produced that are responsive to this Interrogatory, as well as any documents produced or to be produced by Plaintiff and any deposition testimony provided or to be provided in connection with this action.[56]

b. **AIIC**:

See Answer to Interrogatory 41. In addition, AIIC objects to Interrogatory 43 on the ground that it is a hypothetical question that assumes a state of facts that does not, and never can, exist. Discovery continues, and AIIC reserves the right to amend or supplement its response to this interrogatory as additional information, including but not limited to any expert opinions, becomes available.[57]

c. **Continental:**

See Answer to Interrogatory 41. Continental further objects to this interrogatory as premature, as fact discovery is ongoing and expert discovery has not yet begun. In addition, Continental objects to Interrogatory 43 on the ground that it is a hypothetical question that assumes a state of facts that does not, and never can, exist. Continental further relies on the testimony of its corporate witness Thomas Barriball on this topic given during his August 11, 2021 deposition in this matter. Discovery continues, and Continental reserves the right to amend or supplement its response to this interrogatory as additional information, including but not limited to any expert opinions, becomes available.[58]

38.    GEA Mechanical served Interrogatory No. 44 on the Defendants, asking:

**IDENTIFY** all facts that support **YOUR** positions in **YOUR** answer to the preceding Interrogatory and **IDENTIFY** all person [*sic*] with knowledge **RELATED TO YOUR** positions.[59]

39.    In response, Defendants responded as follows:

---

[56] Hartford's Amended Responses and Objections to Interrogatory Nos. 37, 43, 44, and 47 (Kiel Cert. Ex. 35), No. 43.
[57] Kiel Cert. Ex. 32, No. 43.
[58] Kiel Cert. Ex. 33, No. 43.
[59] Kiel Cert. Ex. 34, No. 44.

a. **Hartford**:

[Numerous general objections omitted, including Hartford's objection to the request "on the grounds that it is speculative" and "seeks information [not] relevant to the claims or defenses at issue in this litigation"].

Subject to and without waiving the foregoing objections, Hartford refers to any relevant, non-privileged documents it will produce and/or has produced that are responsive to this Interrogatory, including but not limited to the Standards and Procedures and those portions of the KMT produced herewith. Hartford also refers to any documents produced or to be produced by Plaintiff and any deposition testimony provided or to be provided in connection with this action. Hartford further refers to the Hartford Policies which have been produced for their terms, conditions and exclusions.[60]

b. **AIIC**:

See Answer to Interrogatories 41 and 47.[61]

c. **Continental**:

See Answer to Interrogatories 41 and 47.[62]

40.    During discovery, GEA Mechanical requested documents relating to actions

Defendants took after receiving notice in other, similar claims against other

insureds.[63] All three Defendants objected to this discovery as not "relevant"

---

[60] Kiel Cert. Ex. 35, No. 44.

[61] Kiel Cert. Ex. 32, No. 44. AIIC's response to Interrogatory No. 47 provides, in pertinent part, omitting objections and a statement on AIIC's knowledge: "Notwithstanding the foregoing, James Gardner is handling this claim on behalf of AIIC and has knowledge relevant to the handling of the claim." *Id.*, No. 47.

[62] Kiel Cert. Ex. 33, No. 44. Continental's response to Interrogatory No. 47 provides, in pertinent part, omitting objections and a statement on the scope of Continental's knowledge: "Notwithstanding the foregoing, Sathima Jones is handling this claim on behalf of Continental and has knowledge relevant to the handling of the claim." *Id.*, No. 47.

[63] Plaintiff's Second Supplemental Set of Requests for Production of Documents (Kiel Cert. Ex. 36), No. 1.

and refused to produce any documents in response.[64] Hartford subsequently agreed that it would not rely on its handling of other specific claims to substantiate its claim of prejudice, and accordingly, none of the Defendants has produced evidence showing how it handled other, comparable claims.[65]

41. During Rule 30(b)(6) depositions, the Defendants' corporate witnesses were unable to provide proof of any specific actions they claim they would have taken that would have resulted in a better outcome in the Thornton Action had notice been provided earlier.

    a. **Hartford**: Rule 30(b)(6) witness Timothy Brady admitted that Hartford could not provide more than speculation with regard to whether or not Hartford would have achieved a better outcome in the Thornton Action.

        i. With respect to what actions Hartford would have taken in response to earlier notice, Mr. Brady identified the following actions: issuing a reservation of rights letter; retaining defense counsel; requiring periodic updates from defense counsel; engaging in discussions with defense counsel as trial or mediation

---

[64] AIIC's Response to Plaintiff's Second Supplemental Set of Requests for Production of Documents (Kiel Cert. Ex. 37), No. 1; Continental's Response to Plaintiff's Second Supplemental Set of Requests for Production of Documents (Kiel Cert. Ex. 38), No. 1; Hartford's Responses and Objections to Plaintiff's Second Supplemental Set of Requests for Production of Documents (Kiel Cert. Ex. 39), No. 1.

[65] Email from John Maloney, July 12, 2021 (Kiel Cert. Ex. 40).

approached to "fill [Hartford] in" on various factors; and asking for detailed reporting from the defense counsel.[66] Mr. Brady could not state with certainty whether or not Hartford would have taken all of these actions. For example, Mr. Brady testified that Hartford "obviously would have retained defense counsel" but then went on to say "I don't know for certain whether or not [Miles & Stockbridge] would have been retained. It's possible that different counsel would have been used."[67]

ii.    Mr. Brady also admitted that Hartford could not provide more than speculation with regard to whether or not Hartford would have achieved a better outcome in the Thornton Action.[68] When asked what facts Hartford possesses to indicate that it would have achieved a superior result, Mr. Brady testified that "I can't hypothesize as to what specifically that outcome would have been … I suspect that there would have been a very different outcome."[69] ███████████

████████████████████

---

[66] Kiel Cert. Ex. 13, at 33:20:-34:24.

[67] *Id.* at 34:2-6.

[68] *Id.* at 32:20-25 (when asked if Hartford would have obtained a superior result, Mr. Brady responded: "I can say that Hartford would have done, you know, everything it could have -- to obtain the best possible outcome.").

[69] *Id.* at 33:4-18.



iii.   Mr. Brady also provided testimony that ██████████

in this Litigation. ████████████

---

[70] *Id.* at 42:24-43:18.
[71] *Id.* at 121:3-125:5.
[72] *Id.* at 122:3-123:1.
[73] *Id.* at 123:2-11.



iv.

v.   When asked about what actions Hartford took to associate in one prior lawsuit, *Johnson*, Mr. Brady could not identify any actions taken by Hartford during the 13 months between GEA Mechanical's tender to Hartford and the dismissal of the lawsuit.[78]

---

[75] *Id.* at 59:17-21.
[76] *Id.* at 75:14-21.
[77] *Id.* at 62:14-17.
[78] *Id.* at 160:11-17 ("Q: … I'm trying to figure out what Hartford did to assist or get involved in the defense of the [*Johnson*] case between March 4, 2009 [the tender date], and April 15, 2010 [the date of dismissal]. During that 13-month-or-

b. **AIIC and Continental**: Rule 30(b)(6) witness Thomas Barriball admitted that AIIC and Continental could not provide more than speculation with regard to whether or not they would have achieved a better outcome in the Thornton Action.

    i. When asked for specific suggestions the insurers would have made or how that would have led to a better outcome, Mr. Barriball testified that "it's impossible to give you specific examples[.]"[79]

    ii. When asked to specify what actions Continental would have taken to achieve a superior result and what result it would have achieved, Mr. Barriball testified that Continental, if it had the opportunity, "could have gotten involved, and encouraged and facilitated a better settlement."[80] When asked for facts on which he based this conclusion, Mr. Barriball testified that he based it on Continental's "experience" that "we can generally achieve better results than this" and when asked what specific information they had that they

---

so period, what did Hartford do to get involved in the defense or assist GEA in any way? A: I don't know of anything as I sit here.").

[79] Kiel Cert. Ex. 17, at 109:2-3.

[80] *Id.* at 97:3-97:19; *see also id.* at 124:19-125:2 (explaining that Continental could have, and likely would have," asked for information from defense counsel, reviewed reports, offered opinions to defense counsel or to Hartford").

would have achieved a better result, he testified that it was "it's pure speculation and I couldn't say any more."[81]

iii. 

42. The Defendants have proffered purported expert opinions from Elizabeth O'Neill and Bernd Heinze.[84]

43. Mr. Heinze and Ms. O'Neill both rely on an affidavit from Marc Kunen, one of plaintiffs' lawyers in the Thornton Action, in forming their opinions.[85]

███████████████████████████████████████████████████████████

---

[81] *Id.* at 97:20-98:10.
[82] *Id.* at 116:8-12.

███████████████████████████████████████████████████████████

[84] Report of Defendants' Expert Witness, Bernd G. Heinze (Kiel Cert. Ex. 41); Rebuttal Report of Defendants' Expert Witness, Bernd G. Heinze (Kiel Cert. Ex. 42); Report of Elizabeth O'Neill (Kiel Cert. Ex. 5); Rebuttal Report of Elizabeth O'Neill (Kiel Cert. Ex. 43); Deposition of Bernd G. Heinze (Kiel Cert. Ex. 31); Kiel Cert. Ex. 30.
[85] Affidavit of Marc P. Kunen (Kiel Cert. Ex. 44). *See generally* Kiel Cert. Ex. 5; Kiel Cert. Ex. 41.

████████████████████████████████████████

████████████████████████████████

44.  Neither Mr. Heinze nor Ms. O'Neill take the position that the Defendants

would have defeated the claims in the Thornton Action.[87]

45.  Neither Mr. Heinze nor Ms. O'Neill have: (a) been employed by any of the

Defendants; (b) interviewed anyone who worked for the Defendants in

connection with this action; nor (c) reviewed any information from

Defendants' claims databases in connection with this action.[88]

46.  Mr. Heinze opines that the timing of GEA Mechanical's notice of the

Thornton Action, by itself, resulted in "appreciable prejudice to the

Insurers."[89] Mr. Heinze argues that "the Notice provision is a condition

precedent with which the insured must comply before coverage can be

afforded."[90]

---

[86] Affidavit of Marc P. Kunen (Kiel Cert. Ex. 44), at ¶ 6.

[87] Kiel Cert. Ex. 31, at 160:9-13; Kiel Cert. Ex. 30, at 267:3-5 ("I think it would have been very difficult to get a defense verdict in this case[.]").

[88] *E.g.*, Kiel Cert. Ex. 30, at 47:10-21 (has never worked for an insurer); *id.* at 30:7-10 (never interviewed anyone from the Defendants); *id.* at 74:17-22 (did not and has never reviewed insurer databases); Kiel Cert. Ex. 31, at 127:18-128:2 (has never looked at Defendants' databases); *id.* at 17:5-8 (did not interview anyone from Defendants).

[89] Kiel Cert. Ex. 41, at 20; *see also id.* at 23 ("The Appreciable Prejudice Sustained by the Insurers"); Kiel Cert. Ex. 31, at 157:8-12 (testifying that the loss of opportunity to achieve a more favorable settlement resulted in appreciable prejudice).

[90] *Id.* at 19.

47.    Mr. Heinze also opines that Defendants suffered appreciable prejudice as a result of a laundry-list of "lost opportunities," which included, *inter alia*, the inability to "[a]ctivate the tri-partite relationship between an insurance company, its insured and defense counsel[;]" and the loss of the opportunity to "[e]ngage and obtain the report of a forensic economist to calculate any alleged lost earnings[.]"[91]

48.    Ms. O'Neill asserts that GEA Mechanical and its counsel improperly evaluated the risk and liability exposure from the Thornton Action, and therefore, employed an improper settlement and litigation strategy, leading to the excess verdict.[92] ███████████████████████ ████████████████████████████████████████ ███████████████████████████

49.    ████████████████████████████████████████ ████████████████████████████████████████ ████████████████

50.    ████████████████████████████████████████ ████████████████    ████████████████████████

---

[91] *Id.* at 23-26.
[92] Kiel Cert. Ex. 5, at 5-12.
[93] *Id.* at 5-12.
[94] Kiel Cert. Ex. 30, at 96:1-20.

█ ████████████████████████████████████████



51. ███████████████████████████████████████████

████████████████████████

52.     In her reports, Ms. O'Neill repeatedly invokes the "experience" of insurers

    in handling and settling asbestos cases and opines they would have used this

    "experience" to help formulate a better strategy.[99] Ms. O'Neill claims that

    insurer input is valuable because "claims specialists have access to

    institutional knowledge about asbestos litigation in general, including data

    ████████████████████████████████████████

    ███████████████████████████████████"[100]

    ────────────────────────
    ███████████████████████████████████████████
    ███████████████████████████████████████████
    ███████████████████████████████████████████
    ██████████████████████
    [97] *Id.* at 100:1-5.
    ███████████████████████████████████████████
    ███████████████████████████████████████████
    [99] Kiel Cert. Ex. 5, at 5-12.
    [100] *Id.* at 5.

53. Ms. O'Neill admits that she does not identify "a single specific example of an asbestos case in which Resolute or Hartford was involved and in which they actually did the things that [Ms. O'Neill] assert[s] they would have done in this case."[101]

54. Ms. O'Neill also admits that she does not know specifically what, if any, internal claims data the Defendants possess because she did not review any of the Defendants' databases, claims files, or other cases that allegedly contain that knowledge.[102]

55. Ms. O'Neill's report identifies results from her own search of public verdicts in asbestos cases.[103] Based on her search, Ms. O'Neill speculates that "the insurers would have utilized a different strategy for settlement negotiations than that employed by GEA."[104]

---

[101] *E.g.*, Kiel Cert. Ex. 30, at 44:2-8 ("Q. Would you agree with me that nowhere in either of your two reports do you identify a single specific example of an asbestos case in which Resolute or Hartford was involved and in which they actually did the things that you assert they would have done in this case? A. That's correct. I do not."); *see also id.* at 99:11-20.

[102] *Id.* at 26:4-24; *see also id.* at 72:16-21 (stating that she did not perform an investigation into what particular institutional knowledge the Defendants have that would have been helpful in this case).

[103] Kiel Cert. Ex. 5, at 6-7.

[104] *Id.* at 7.

56.    Ms. O'Neill's opinion relies on her search of public verdicts in the relevant

jurisdiction but she admits that her search methodology did not include at

least 18 responsive verdict results.[105]

Respectfully submitted,

**K&L GATES LLP**
Attorneys for Plaintiff


By: _Donald W. Kiel_
        Donald W. Kiel
Donald W. Kiel (NJ Bar No. 014371982)
Donald.Kiel@klgates.com
K&L GATES LLP
One Newark Center
Tenth Floor
Newark, New Jersey  07102-5252
973-848-4000

-and-

Joseph C. Safar (admitted *pro hac vice*)
Erin D. Fleury (admitted *pro hac vice*)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613
412-355-6500

Dated:  June 24, 2022                    Attorneys for Plaintiff,
                                         GEA Mechanical Equipment US, Inc.

---

[105] *E.g.*, Kiel Cert. Ex. 30, at 129:15-16 (discussing the *Gonzalez* verdict); *see also id.* at 111-119 (discussing 17 other defense verdicts that were omitted from her analysis and opinion).

**Appendix 1**

*GEA Mechanical Equipment US, Inc. v. Federal Insurance Company, et al.*
**Application of Carter-Wallace Allocation Percentages by Period for Thornton Claim to Policies**

| Period Begin | Period End | Primary Insurer | Policy No. | Amount | Excess Insurer | Policy No. | Amount |
|---|---|---|---|---|---|---|---|
| 5/15/1979 | 8/25/1979 | Hartford Accident and Indemnity Company | 10C669913W | | First State Insurance Company | 940779 | |
| 8/25/1979 | 8/25/1980 | Hartford Accident and Indemnity Company | 10C671174W | | Continental Insurance Company | SRU2153318 | |
| 8/25/1980 | 10/25/1980 | Hartford Accident and Indemnity Company | 10C671174W | | Continental Insurance Company | SRU2153318 | |
| 10/25/1980 | 10/25/1981 | Hartford Accident and Indemnity Company | 10CML0740W | | Continental Insurance Company | SRU3192930 | |
| 10/25/1981 | 10/25/1982 | Hartford Accident and Indemnity Company | 10CML0740W | | Continental Insurance Company | SRU1591549 | |
| 10/25/1982 | 10/25/1983 | Hartford Accident and Indemnity Company | 10CML0740W | | First State Insurance Company | 951719 | |
| 10/25/1983 | 10/25/1984 | Hartford Accident and Indemnity Company | 10CML0740W | | First State Insurance Company | 953847 | |
| 10/25/1984 | 10/25/1985 | Hartford Accident and Indemnity Company | 10CML0740W | | Wellfleet New York Insurance Company | UMB-06230 | |
| 10/25/1985 | 10/25/1986 | Hartford Accident and Indemnity Company | 10CLRML0743W | | | | |
| 10/25/1986 | 10/25/1987 | Hartford Accident and Indemnity Company | 10CLRML0743W | | | | |
| 10/25/1987 | 10/25/1988 | Hartford Accident and Indemnity Company | 10CLRML0743W | | | | |
| 10/25/1988 | 10/25/1989 | Hartford Accident and Indemnity Company | 10UERML0743W | | | | |
| 10/25/1989 | 10/25/1990 | Hartford Accident and Indemnity Company | 10UERML0743W | | | | |
| 10/25/1990 | 10/25/1991 | Hartford Fire Insurance Company | 10UERML0743W | | | | |
| 10/25/1991 | 12/25/1991 | Hartford Fire Insurance Company | 10UERML0743W | | | | |
| 12/25/1991 | 12/25/1992 | Hartford Fire Insurance Company | 10UERML0743W | | | | |
| 12/25/1992 | 12/31/1992 | Hartford Fire Insurance Company | 10UERML0743W | | | | |
| 12/31/1992 | 12/31/1993 | Hartford Fire Insurance Company | 10UERML0743W | | | | |
| 12/31/1993 | 12/31/1994 | Hartford Fire Insurance Company | 10UERML0743W | | | | |
| 12/31/1994 | 12/31/1995 | Hartford Fire Insurance Company | 10UERML0743W | | | | |

| Subtotals By Insurer | Amount |
|---|---|
| Hartford Accident and Indemnity Company | |
| Hartford Fire Insurance Company | |
| First State Insurance Company | |
| Continental Insurance Company | |
| Wellfleet New York Insurance Company | |
| **Total** | |