# EXHIBIT 24



**THE HARTFORD**

Business Insurance
Employee Benefits
Auto
Home

*SENT VIA CERTIFIED MAIL*

September 20, 2019

Jamieson Greig, Esq.
General Counsel
GEA Mechanical Equipment US, Inc.
GEA Westfalia Separator Division
100 Fairway Court
Northvale, NJ 07647
(201) 767-3900

**Re:**     **Policyholder:**          Centrico Inc.

          **Lawsuit:**          *Charles E. Thornton and Constance Thornton,*
                              *his wife, vs. GEA Mechanical Equipment*
                              *US, Inc., f/k/a GEA Westfalia Separator,*
                              *Inc. et al.*, Circuit Court of the 11th Judicial
                              Circuit in and for Miami-Dade County, FL,
                              Asbestos Division, Case No.: 17-006018 CA
                              42

          **Policies:**          See Attachment A

Dear Mr. Greig:

This letter responds to GEA Mechanical Equipment US, Inc.'s ("GEA") request for coverage for the above-referenced lawsuit (hereinafter, the "Lawsuit") under certain policies issued to Centrico, Inc. ("Centrico"), which are shown on Attachment A ("Policies").

The purpose of this letter is to convey to you the position of Hartford Accident & Indemnity Company, First State Insurance Company, Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively, "The Hartford") with respect to the Lawsuit under the Policies. The Hartford believes that this letter fairly informs you of its position and the reasons supporting our decision. If you disagree, or have questions regarding The Hartford's position, please contact me immediately.

With regards to the Lawsuit, Charles E. Thornton ("Plaintiff") was allegedly exposed to asbestos-containing products manufactured, sold, supplied and/or distributed by multiple defendants including "GEA Mechanical Equipment US, Inc., f/k/a/ GEA Westfalia Separator, Inc."[1]  The Lawsuit further indicates that Plaintiff "was exposed to asbestos while personally performing and being in the vicinity of maintenance work performed on biopharmaceutical equipment during his employment in the biopharmaceutical industry in Miami-Dade and Broward Counties, Florida including but not limited to Plaintiff's work at NABI Biopharmaceuticals, between or within the approximate years of 1976 through approximately 2010." As a result of his overall exposures, Plaintiff was allegedly diagnosed with mesothelioma in approximately September of 2016.

According to your letter dated August 5, 2019 ("Notice Letter"), the original complaint was filed on March 13, 2017 against several defendants including "GEA Process Engineering Inc. f/k/a GEA North America, Inc., f/k/a GEA Westfalia Separator, Inc." However, in its initial answer filed on April 17, 2017, GEA identified itself as "GEA Mechanical Equipment US, Inc. (f/k/a GEA Westfalia Separator Inc.), individually and wrongfully sued as "GEA Process Engineering Inc. f/k/a GEA North America, Inc. f/k/a GEA Westfalia Separator, Inc." The answer was filed by the Shapiro Blasi firm, which we understand still represents GEA in the Lawsuit as of today. The complaint was amended on December 13, 2018 to correct the perceived pleading error and name "GEA Mechanical Equipment US, Inc., f/k/a/ GEA Westfalia Separator, Inc." as a defendant. On June 17, 2019 a jury awarded Plaintiff and his wife past and future compensatory damages against GEA in the amount of $70,102,000.00. On June 19, 2019, the trial court entered a judgment on the jury verdict; this matter is currently on appeal. GEA first provided notice of this Lawsuit to The Hartford via the Notice Letter, which was received by the Hartford on August 8, 2019.

As stated above, we have located the Policies[2] issued to GEA identified in Attachment A. Please be advised, however, that after a review of the allegations in the Lawsuit and the terms and conditions of the Policies, we must inform you that coverage is not available for the Lawsuit. The reasoning underlying our position in connection with the Lawsuit and the Policies is discussed separately below.

## I.     CORPORATE HISTORY

As mentioned above, the Policies were issued to Centrico, Inc. Based upon information received to date, it is The Hartford's understanding that GEA's corporate history is as follows:

- Centrico, Inc. was incorporated on or about March 17, 1950;

- Centrico, Inc. changed its name to Westfalia Separator, Inc. on or about April 30, 1996 via a Certificate of Amendment of Incorporation;

---

[1] Per the Amended Complaint dated December 11, 2018.

[2] In addition to the Policies, The Hartford also located policies that provides workers' compensation and employers' liability coverage and policies that provide auto coverage. At this time, it is our understanding that you are not seeking coverage for the Lawsuit under these policies. If our understanding is incorrect, please advise us immediately. Additionally, please note in the event that coverage is sought for the Lawsuit under the aforementioned policies, it does not appear that such policies would be implicated by the Lawsuit. The Hartford reserves all of its rights and defenses with regards to these policies.

- Westfalia Separator, Inc. changed its name to GEA Westfalia Separator, Inc. on or about July 2, 2008;

- On December 31, 2010, GEA Westfalia Separator, Inc. merged into GEA Westfalia Separator Reorganization, LLC and GEA Westfalia Separator Reorganization, LLC then merged into GEA Mechanical Equipment US, Inc. Further it our understanding that GEA Westfalia Separator is now a division of GEA Mechanical Equipment US, Inc.

If any of the aforementioned information is incorrect, please advise us immediately. Based on The Hartford's understanding of the corporate relationship between GEA and Centrico, it appears that GEA may have rights under the Policies. Should it later be determined that The Hartford's understanding of the corporate history is inaccurate and/or that GEA does not have rights under the Policies, The Hartford reserves the right to later deny coverage for the Lawsuit for these reasons as well.

## II.    PRIMARY POLICIES

The Hartford has located the primary policies (hereinafter, the "Primary Policies") issued to Centrico set forth in Attachment A. Please note that the Primary Policies contain the following or similar conditions, quoted in relevant part[3]:

### Section IV – Commercial General Liability Conditions

#### C. Insured's Duties in the Event of Occurrence, Claim or Suit

1. In the event of an occurrence, written notice containing particulars sufficient to identify the **Insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.

2. If the claim is made or suit is brought against the **Insured**, the **Insured** shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

3. The **Insured** shall cooperate with the Company, and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Insured** because of injury or damage with respect to which insurance is afforded under this policy, and the **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **Insured** shall not, except at his

---

[3]Primary policies 10 C 662182W (08/25/1976 – 08/25/1977), 10 C 667308W (8/25/77-8/25/78), 10 C 669913W (8/25/78-8/25/79), 10 C 671174W (8/25/79-10/25/80), 10 C ML0740W (10/25/80-10/25/85), 10 CLR ML0743W (10/25/85-10/25/89) contain Form 8117; primary policies 10 UER ML0743W (10/25/89-12/25/91) contain Form UN-116-1; primary policies 10 UER ML0743W (12/25/91-12/31/93) contain Form CG 00 01 11 88 and primary policies 10 UER ML0743W (12/31/93 – 12/31/1995) contain Form CG 00 01 10 93.

own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

*Occurrence* is further defined in the Primary Policies, in whole or similar part, as "an accident or repeated exposure to substantially the same general harmful conditions."

As described earlier in this correspondence,
The Hartford was not placed on notice of the Lawsuit at any point during the pendency of the Lawsuit; rather, The Hartford was placed on notice nearly two months after a jury verdict was returned and the matter was already on appeal. GEA's failure to provide timely notice and provide The Hartford with a meaningful opportunity to participate in the defense of the Lawsuit constitutes a breach of policy conditions, as quoted above. Based on the foregoing, The Hartford must respectfully disclaim any obligation to defend and/or indemnify GEA for the Lawsuit under the Primary Policies. If you have information that you feel would cause us to alter our position, please immediately submit that information and/or documentation for our review. The Hartford reserves all available rights and defenses in this regard. Additionally, to the extent that you make or have made any payment, including defense, settlement, judgment, or other payments, without The Hartford's consent, The Hartford reserves its rights to disclaim coverage for such payments.

### III.    UMBRELLA, EXCESS AND EXCESS UMBRELLA POLICIES:

We have located the umbrella, excess and/or excess umbrella policies (hereinafter "Umbrella/Excess Policies") issued to Centrico set forth in Attachment A. As an initial matter, please note that the Umbrella/Excess Policies would not be impacted by the Lawsuit unless and until the applicable limits of liability and/or self-insured retentions for the underlying insurance have been properly exhausted.[4]

To date, we have not been provided with information to indicate the underlying policies are exhausted. Additionally, to the extent the underlying policies include certain of the Primary Policies listed in Section II of this letter, the Primary Policies are not exhausted. The Hartford reserves all of its rights, positions and defenses in these matters.

In addition to the foregoing, please note the Umbrella/Excess Policies contain the same or similar conditions discussed in the Primary Policies section (Section II) of this letter as they relate to notice of claim and the insured's duties in the event of an occurrence, claim or suit. As previously described in this letter, GEA's failure to provide timely notice and provide The Hartford with a meaningful opportunity to participate in the defense of the Lawsuit constitutes a breach of policy conditions. Based on the foregoing, The Hartford must respectfully disclaim any obligation to defend and/or indemnify GEA for the Lawsuit under the Umbrella/Excess Policies. If you have information that you feel would cause us to alter our position, please immediately submit that information and/or documentation for our review. The Hartford reserves all available rights and defenses in this regard. Additionally, to the extent that you make or have made any payment, including defense, settlement, judgment, or other payments, without The Hartford's consent, The Hartford reserves its rights to disclaim coverage for such payments.

---

[4] In addition, any obligations The Hartford might owe under the Umbrella/Excess Policies are also subject to all other terms, conditions, endorsements and/or exclusions of the Umbrella/Excess Policies.

GEA_00070146

Additionally, please be advised that certain Umbrella/Excess Policies (policy nos. 10 XS SG7722 (10/25/1987 – 10/25/1988), 10 XS SG7925 (10/25/1988-10/25/1989), 10 XS SG8046 (10/25/1989-10/25/1990), 10 XS SL0601 (10/25/1990-12/31/1991), 10 XS SL1435 (12/31/1991-12/31/1992), 10 XS SL1596 (12/31/1992-12/31/1993), 10 XS SL2465 (12/31/1993-12/31/1994) and 10 XS SL2666 (12/31/1994-12/31/1995)) (collectively, the "Asbestos-Excluded Umbrella/Excess Policies") contain the following or substantially similar exclusionary language[5]:

> *It is agreed that the company shall have no obligation under this policy:*
>
> *(1) To investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the asbestos hazard; or*
> *(2) To pay, contribute to or indemnify another for any damages, judgments, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit or any such injury or damage, or in complying with any action authorized by law and relating to such injury or damage.*
>
> As used in this endorsement:
>
> *"asbestos hazard"* means:
>
> *(1) An actual exposure or threat of exposure to the harmful properties of asbestos, or*
> *(2) The presence of asbestos in any place, whether or not within a building or structure.*
>
> *"asbestos" means the mineral in any form, including but not limited to fibers or dust.*

As the Plaintiff seeks damages for alleged injuries resulting from exposure to asbestos and asbestos-containing products, coverage would be further precluded for the Lawsuit under the Asbestos-Excluded Umbrella/Excess Policies.

**IV.    AS TO ALL POLICIES:**

This communication is not intended to be and should not be construed as an exhaustive listing of all policy terms and conditions that may apply to this matter.  The Hartford hereby reserves all its rights, positions and defenses in these matters.  Neither this communication, nor any prior or subsequent communications, should be construed as a waiver of any rights, positions or defenses held by The Hartford.

In the event that any reservations are rejected by any court of appropriate jurisdiction (which shall be deemed to include a final order on appeal), The Hartford will provide coverage only in accordance with the theory of coverage adopted by such court and will seek and demand reimbursement of payments made by it based upon the reservations.

The Hartford reserves the right to supplement and/or to amend its coverage positions should facts and circumstances indicate the need to do so in connection with the Lawsuit.  If there is any

---

[5] Policy 10 XS SG7722 (10/25/1987 – 10/25/1988) contains Form L-5000-0; 10 XS SG7925 (10/25/1988-10/25/1989), 10 XS SG8046 (10/25/1989-10/25/1990) and 10 XS SL0601 (10/25/1990-12/31/1991) contain Form L-5000-1; 10 XS SL1435 (12/31/1991-12/31/1992), 10 XS SL1596 (12/31/1992-12/31/1993), 10 XS SL2465 (12/31/1993-12/31/1994) contain Form L-5000-3; and, 10 XS SL2666 (12/31/1994-12/31/1995) contains Form XN 00 08 13.

CONFIDENTIAL

GEA_00070147

information or documentation that you would like us to consider, please immediately bring the same to my attention.

Should you have any questions regarding the foregoing and/or should you wish to discuss this matter in general, please do not hesitate to contact us.

Sincerely,

Richard Merritt

Richard Merritt
Claim Consultant
Strategic Claim Management
The Hartford
200 Colonial Center Parkway
Lake Mary, FL 32746
P: 407.391.2903
richard.merritt@thehartford.com


Cc:
Donald W. Kiel
K&L Gates LLP
One Newark Center
Tenth Floor
Newark, NJ 07102-5252
(973) 848-4000
Donald.Kiel@klgates.com

CONFIDENTIAL

GEA_00070148

**Attachment A**

Primary Policies:

**Hartford Accident and Indemnity Company**

| | |
|---|---|
| 10 C 662182W | (08/25/1976 – 08/25/1977) |
| 10 C 667308W | (08/25/1977 – 08/25/1978) |
| 10 C 669913W | (08/25/1978 – 08/25/1979) |
| 10 C 671174W | (08/25/1979 – 10/25/1980) |
| 10 C ML0740W | (10/25/1980 – 10/25/1981) |
| 10 C ML0740W | (10/25/1981 – 10/25/1982) |
| 10 C ML0740W | (10/25/1982 – 10/25/1983) |
| 10 C ML0740W | (10/25/1983 – 10/25/1984) |
| 10 C ML0740W | (10/25/1984 – 10/25/1985) |
| 10 CLR ML0743W | (10/25/1985 – 10/25/1986) |
| 10 CLR ML0743W | (10/25/1986 – 10/25/1987) |
| 10 CLR ML0743W | (10/25/1987 – 10/25/1988) |
| 10 CLR ML0743W | (10/25/1988 – 10/25/1989) |
| 10 UER ML0743W | (10/25/1989 – 10/25/1990) |

**Hartford Fire Insurance Company**

| | |
|---|---|
| 10 UER ML0743W | (10/25/1990 – 12/25/1991) |
| 10 UER ML0743W | (12/25/1991 – 12/31/1992) |
| 10 UER ML0743W | (12/31/1992 – 12/31/1993) |
| 10 UER ML0743W | (12/31/1993 – 12/31/1994) |
| 10 UER ML0743W | (12/31/1994 – 12/31/1995) |

Umbrella, Excess and Excess Umbrella Policies:

**First State Insurance Company**

| | |
|---|---|
| 914213 | (08/25/1977 – 08/25/1978) |
| 914214 | (08/25/1977 – 08/25/1978) |
| 925592 | (09/25/1977 – 08/25/1978) |
| 940779 | (08/25/1978 – 08/25/1979) |
| 928194 | (08/25/1979 – 10/25/1980) |
| 930747 | (10/25/1980 – 10/25/1981) |
| 932288 | (10/25/1981 – 10/25/1982) |
| 951719 | (10/25/1982 – 10/25/1983) |
| 953847 | (10/25/1983 – 10/25/1984) |

**Hartford Accident and Indemnity Company**

| | |
|---|---|
| 10 XS SG7722 | (10/25/1987 – 10/25/1988) |

**Hartford Casualty Insurance Company**

| | |
|---|---|
| 10 XS SG7925 | (10/25/1988 – 10/25/1989) |
| 10 XS SG8046 | (10/25/1989 – 10/25/1990) |
| 10 XS SL0601 | (10/25/1990 – 10/25/1991) |
| 10 XS SL1435 | (10/25/1991 – 10/25/1992) |
| 10 XS SL1596 | (10/25/1992 – 10/25/1993) |
| 10 XS SL2465 | (10/25/1993 – 10/25/1994) |
| 10 XS SL2666 | (10/25/1994 – 10/25/1995) |

CONFIDENTIAL