# EXHIBIT 29

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., | Civil Action No. 2-20-cv-9741-BRM-ESK |
| Plaintiff, | Hon. Brian R. Martinotti, U.S.D.J. |
| v. | Hon. Edward S. Kiel, U.S.M.J. |
| FEDERAL INSURANCE COMPANY, *et al.*, |  |
| Defendants. |  |

**STIPULATION BETWEEN PLAINTIFF GEA MECHANICAL EQUIPMENT US, INC. AND FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, AND HARTFORD FIRE INSURANCE COMPANY REGARDING AUTHENTICITY AND COMPLETENESS OF POLICIES**

This Stipulation is entered into by and between Plaintiff GEA Mechanical Equipment US, Inc. ("GEA Mechanical"), as successor to Centrico, Inc., and Defendants First State Insurance Company ("First State"), Hartford Accident and Indemnity Company ("Hartford A&I"), and Hartford Fire Insurance Company ("Hartford Fire" and, collectively, "Hartford"), through their undersigned counsel, solely for use in the above-captioned action (the "Litigation").

The purpose of this Stipulation is to agree on the authenticity and completeness of (a) the policies issued by Hartford to GEA Mechanical's predecessor, Centrico, Inc., which are at issue in the Litigation and identified in Paragraph 1 of this Stipulation and annexed hereto (the "Subject Policies"), and (b) the Retrospective Rating Agreements identified in Paragraph 8 of this Stipulation, and to agree on GEA Mechanical's status as successor to Centrico, Inc.

Accordingly, GEA Mechanical and Hartford (collectively, the "Parties" and individually each a "Party") hereby enter into the following Stipulation:

1

1.    The Parties stipulate and agree that the best and most complete evidence of the contents of the Subject Policies presently available to them is set forth in the pages annexed hereto as Exhibits 1-23 as follows:

| Exhibit No. | Policy No. | Policy Period | Production Range | Insurer |
|---|---|---|---|---|
| 1. | 10C669913W | 8/25/78-8/25/79 | HART001289-HART001387 | Hartford A&I |
| 2. | 10C671174W | 8/25/79-10/25/80 | HART000001-HART000114 | Hartford A&I |
| 3. | 10CML0740W | 10/25/80-10/25/81 | HART000115-HART000198 | Hartford A&I |
| 4. | 10CML0740W | 10/25/81-10/25/82 | HART000199-HART000239 | Hartford A&I |
| 5. | 10CML0740W | 10/25/82-10/25/83 | HART000240-HART000285 | Hartford A&I |
| 6. | 10CML0740W | 10/25/83-10/25/84 | HART000286-HART000362 | Hartford A&I |
| 7. | 10CML0740W | 10/25/84-10/25/85 | HART000363-HART000428 | Hartford A&I |
| 8. | 10CLRML0743W | 10/25/85-10/25/86 | HART000429-HART000504 | Hartford A&I |
| 9. | 10CLRML0743W | 10/25/86-10/25/87 | HART000505-HART000609 | Hartford A&I |
| 10. | 10CLRML0743W | 10/25/87-10/25/88 | HART000610-HART000711 | Hartford A&I |
| 11. | 10UERML0743W | 10/25/88-10/25/89 | HART010187-HART010305 | Hartford A&I |
| 12. | 10UERML0743W | 10/25/89-10/25/90 | HART000712-HART000822 | Hartford A&I |
| 13. | 10UERML0743W | 10/25/90-12/25/91 | HART000823-HART001030 | Hartford Fire |
| 14. | 10UERML0743W | 12/25/91-12/31/92 | HART001031-HART001182 | Hartford Fire |
| 15. | 10UERML0743W | 12/31/92-12/31/93 | HART001388, HART001394-HART001595 | Hartford Fire |
| 16. | 10UERML0743W | 12/31/93-12/31/94 | HART001389-HART001393; HART002255-HART002425 | Hartford Fire |
| 17. | 10UERML0743W | 12/31/94-12/31/95 | HART001596-HART001764 | Hartford Fire |

| 18. | 940779 | 8/25/78-8/25/79 | HART002026-HART002036 | First State |
| 19. | 928194 | 8/25/79-10/25/80 | HART002002-HART002009 | First State |
| 20. | 930747 | 10/25/80-10/25/81 | HART002010-HART002018 | First State |
| 21. | 932288 | 10/25/81-10/25/82 | HART002019-HART002025 | First State |
| 22. | 951719 | 10/25/82-10/25/83 | HART002037-HART002045 | First State |
| 23. | 953847 | 10/25/83-10/25/84 | HART002046-HART002054 | First State |

2.      Subject to the provisions in paragraph 3 below, the Parties further stipulate and agree that: (a) neither Party shall contest the introduction, authenticity and/or admissibility into evidence of the Exhibits referenced in paragraph 1 above and annexed hereto for the purpose of establishing the contents of the Subject Policies; and (b) neither Party shall be required to respond or provide discovery (including but not limited to deposition testimony) to the other Party concerning the accuracy, authenticity or completeness of the Subject Policies.

3.      The Parties represent that they are not presently aware of any documents or information that calls into question the completeness or authenticity of the copies of the Subject Policies. In the event that GEA Mechanical or Hartford subsequently locates, identifies or is provided with any document or information that reasonably calls into question the accuracy, authenticity or completeness of any of the copies of the Subject Policies, that Party shall promptly disclose the document(s) or information to the other Party. In that event, GEA Mechanical or Hartford shall have the right to promptly rescind this Stipulation in part as to any such Subject Policies in question. If so rescinded, GEA Mechanical and Hartford shall use reasonable best efforts to modify this Stipulation with respect to any such Subject Policies in question, and the remainder of this Stipulation shall remain in full force and effect. Further, if any part of this

Stipulation is rescinded, either Party shall have the right to seek reasonable discovery (including but not limited to deposition testimony) regarding the newly-discovered document(s) or information; provided, however, that the Parties will use their reasonable best efforts to complete any such discovery promptly after the rescission and/or enter into a new Stipulation concerning the accuracy, authenticity and completeness of the Subject Policies in question. GEA Mechanical and Hartford agree that such discovery shall be permitted notwithstanding that fact discovery is closed, and that, if required, they will jointly seek leave of court to allow the taking of such discovery.

4.    Nothing in this Stipulation shall be construed to apply to any policy other than the Subject Policies, and the Parties each reserve all rights they may have with respect to any other policy that is not specifically addressed in this Stipulation.

5.    This Stipulation shall not be construed as an express or implied admission that coverage does or does not exist under the Subject Policies for any of the claims for which GEA Mechanical has and/or may seek coverage in this Litigation or otherwise, and neither GEA Mechanical nor Hartford intends to be bound by this Stipulation as to any non-Party. Other than as expressly set forth in this Stipulation or other stipulations entered into between GEA Mechanical and Hartford in this Litigation, GEA Mechanical and Hartford reserve all rights, arguments and positions with respect to the Subject Policies, including as to the interpretation and application of the Subject Policies.

6.    Notwithstanding anything to the contrary in this Stipulation, GEA Mechanical and Hartford further agree that any handwriting or marginalia appearing on the Subject Policies are not part of the Subject Policies, and reserve the right to separately authenticate any handwriting or marginalia appearing on the Subject Policies.

7.    The Parties stipulate and agree that in relation to the Subject Policies, GEA Mechanical is the successor to Centrico, Inc. and is subject to all of the same rights and obligations under the Subject Policies as Centrico, Inc.

8.    The Parties represent that they are not presently aware of any documents or information that calls into question GEA Mechanical's status as successor to Centrico, Inc.  In the event that GEA Mechanical or Hartford subsequently locates, identifies or is provided with any document or information that reasonably calls into question GEA Mechanical's status as successor to Centrico, Inc., that Party shall promptly disclose the document(s) or information to the other Party. In that event, GEA Mechanical or Hartford shall have the right to promptly rescind this Stipulation as to paragraph 7.

9.    The Parties stipulate and agree that the Parties entered into and agreed to certain Retrospective Rating Agreements, and the best and most complete evidence of the contents of the Retrospective Rating Agreements relating to the policy periods set forth below presently available to the Parties are set forth in the pages annexed hereto as Exhibits 24-31 as follows:

| Exhibit No. | Policy Period | Production Range |
|---|---|---|
| 24. | 10/25/85-10/25/86 | HART006035-HART006064 |
| 25. | 10/25/87-10/25/88 | HART006065-HART006093 |
| 26. | 10/25/88-10/25/89 | HART006094-HART006110 |
| 27. | 10/25/90-12/25/91 | HART006111-HART006141 |
| 28. | 12/25/91-12/31/92 | HART006142-HART006171 |
| 29. | 12/31/92-12/31/93 | HART006172-HART006204 |
| 30. | 12/31/93-12/31/94 | HART006205-HART006228 |
| 31. | 12/31/94-12/31/95 | HART006229-HART006256 |

10.    Subject to the provisions in paragraph 11 below, the Parties further stipulate and agree that: (a) neither Party shall contest the introduction, authenticity and/or admissibility into evidence of the Exhibits referenced in paragraph 9 above and annexed hereto for the purpose of

establishing the contents of the Retrospective Rating Agreements; and (b) neither Party shall be required to respond or provide discovery (including but not limited to deposition testimony) to the other Party concerning the accuracy, authenticity or completeness of the Retrospective Rating Agreements.

11.     The Parties represent that they are not presently aware of any documents or information that calls into question the completeness or authenticity of the copies of the Retrospective Rating Agreements. In the event that GEA Mechanical or Hartford subsequently locates, identifies or is provided with any document or information that reasonably calls into question the accuracy, authenticity or completeness of any of the copies of the Retrospective Rating Agreements, that Party shall promptly disclose the document(s) or information to the other Party. In that event, GEA Mechanical or Hartford shall have the right to promptly rescind this Stipulation in part as to any such Retrospective Rating Agreements in question. If so rescinded, GEA Mechanical and Hartford shall use reasonable best efforts to modify this Stipulation with respect to any such Retrospective Rating Agreements in question, and the remainder of this Stipulation shall remain in full force and effect. Further, if any part of this Stipulation is rescinded, either Party shall have the right to seek reasonable discovery (including but not limited to deposition testimony) regarding the newly-discovered document(s) or information; provided, however, that the Parties will use their reasonable best efforts to complete any such discovery promptly after the rescission and/or enter into a new Stipulation concerning the accuracy, authenticity and completeness of the Retrospective Rating Agreements in question. GEA Mechanical and Hartford agree that such discovery shall be permitted notwithstanding that fact discovery is closed, and that, if required, they will jointly seek leave of court to allow the taking of such discovery.

12.     This Stipulation shall not be construed as an express or implied admission regarding the terms of the Retrospective Rating Agreements nor the applicability of the Retrospective Rating Agreements to any particular claims, including GEA Mechanical's coverage claims in this Litigation. Nothing in this Stipulation shall be construed to apply to any Retrospective Rating Agreement other than those addressed in paragraph 9 above, and the Parties each reserve all rights they may have with respect to any other Retrospective Rating Agreement that is not specifically addressed in this Stipulation.

13.     Nothing in the negotiation or execution of this Stipulation or in the performance of this Stipulation according to its terms shall be deemed to be or cited as an act of bad faith or a basis for extra-contractual liability, or as a violation of any statute, regulation or duty allegedly owed by either Party.

14.     The Parties agree that this Stipulation embodies the entire agreement between them concerning the accuracy, authenticity and completeness of the Subject Policies and the Retrospective Rating Agreements, and that the details of negotiations regarding the preparation of this Stipulation and its Exhibits may not be used by any Party for any purpose, including without limitation in the Litigation.

15.     This Stipulation may not be used in any other litigation or proceeding other than the Litigation.

16.     This Stipulation is subject to the Discovery Confidentiality Order entered in the Litigation.

17.     This Stipulation may be executed in counterpart originals, each of which shall be deemed original, with the same effect as if the signatures were on the same instrument.  This Stipulation shall become effective on the date when the Parties have all executed originals.

*Stipulated and Agreed to by*:

**Plaintiff GEA Mechanical Equipment, US, Inc.**

**Defendants First State Insurance Company, Hartford Accident and Indemnity Company, and Hartford Fire Insurance Company**

Dated: 5/20/2022

Dated:

By and through its counsel:

By and through its counsel:

_____
Donald W. Kiel (NJ Bar No. 014371982)
K&L GATES LLP
One Newark Center
Tenth Floor
Newark, New Jersey 07102-5252
973-848-4000
-and-
Joseph C. Safar (admitted *pro hac vice*)
Erin D. Fleury (admitted *pro hac vice*)
K&L GATES LLP
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
412-355-6500

_____
Stephen V. Gimigliano (NJ Bar No. 034091983)
John Maloney (NJ Bar No. 013882001)
Christopher K. Kim (NJ Bar No. 024602010)
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
973-946-8360

17.    This Stipulation may be executed in counterpart originals, each of which shall be deemed original, with the same effect as if the signatures were on the same instrument. This Stipulation shall become effective on the date when the Parties have all executed originals.

*Stipulated and Agreed to by*:

**Plaintiff GEA Mechanical Equipment, US, Inc.**

**Defendants First State Insurance Company, Hartford Accident and Indemnity Company, and Hartford Fire Insurance Company**

Dated:

Dated:  5/20/22

By and through its counsel:

By and through its counsel:

Donald W. Kiel (NJ Bar No. 014371982)
K&L GATES LLP
One Newark Center
Tenth Floor
Newark, New Jersey 07102-5252
973-848-4000
-and-
Joseph C. Safar (admitted *pro hac vice*)
Erin D. Fleury (admitted *pro hac vice*)
K&L GATES LLP
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
412-355-6500

Stephen V. Gimigliano (NJ Bar No. 034091983)
John Maloney (NJ Bar No. 013882001)
Christopher K. Kim (NJ Bar No. 024602010)
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
973-946-8360

# EXHIBIT 1

COMPANY COPY

C 66-99-13

**THE HARTFORD INSURANCE GROUP**

Co. Codes
1 Hartford Fire Insurance Co.
5 Hartford Accident and Indemnity Co.
3 Hartford Casualty Insurance Co.
6 New York Underwriters Insurance Co.
Twin City Fire Insurance Co.

098-23-76 25

INPUT CCPS

| | | |
|---|---|---|
| Filed | Annual Audit | Monthly |
| Prem. Finance | Semi-Annual | Bureau |
| Large Risk | Quarterly ✕ | Loss Control |
| | | Retro |

DUPLICATED

Redacted

INSURER→  Co. Code 5

**DECLARATIONS**
Items
1. Named Insured and Address
The named insured is:  ☐ Individual  ☐ Joint Venture  ☐ Partnership ✕ Corporation  ☐ Other_____

Previous Policy No.
10 C 667308

POLICY NO. 10 C 669913 W

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J. 07647

08-25-78 To 08-25-79

12:01 A. M., standard time at the address of the *named insured* as stated herein.

Audit Period: Annual, unless otherwise stated.
☐ Semi-Annual
☐ Quarterly
☐ Monthly

S. JAMA CO. OF N.Y. INC.
25-2170

d Address       Agent Code       →From

...ce pe...... f...r this policy is as stated below. Insurance is afforded by the Coverage Parts forming a part hereof, ...... to ...ch ......s of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUMMARY OF ADVANCE PREMIUMS

| COVERAGE PARTS | ADVANCE PREMIUM |
|---|---|
| Comprehensive General Liability Insurance | $ 34,239.00 |
| Comprehensive Automobile Liability Insurance | $ 11,560.00 |
| Automobile Medical Payments Insurance | $ 297.00 |
| Uninsured Motorists Insurance | $ 109.00 |
| Automobile Physical Damage Insurance | $ 6,724.00 |
| Premises Medical Payments Insurance | $ 926.00 |
| Contractual Liability Insurance | $ 12,703.00 |
| Personal Injury Liability Insurance | $ |
| Garage Insurance | $ |
| COMPLETED OPERATIONS & PRODUCTS LIABILITY INSURANCE | $ 127,032.00 |
| | $ |

ATTACH FORMS ALONG MARGIN BELOW THIS

| Form Numbers of Coverage Parts and endorsements not listed on Coverage Parts forming part of Policy at issue: | TOTAL ADVANCE PREMIUM | |
|---|---|---|
| AL-8-1B (LIST) | $ 193,590.00 | SEE END |

| If Policy Period more than one year: Gross Premium $ | Discount $ | Net Premium $ |
|---|---|---|
| Premium is payable: On effective date of Policy $ | 1st Anniversary $ | 2nd Anniversary $ |

4. Business of the *named insured* is——→   MFG. INDUSTRIAL SEPARATORS

5. During the past 3 years no Insurer has cancelled insurance, issued to the *named insured*, similar to that afforded hereunder unless otherwise stated herein.

GUARANTY UNDERWRITING FUND $791.17

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-51-0 CDR  Printed in U. S. A.

HART001289

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 V**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date ..................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## LIST OF ENDORSEMENTS & COVERAGE PARTS FORMING PART OF POLICY AT ISSUE:-

| | |
|---|---|
| A2579-0 | L3125-2 |
| A2766-0 | L3025-0 |
| A2991-2 | L3252-1 |
| A2993-1 | L3243-0 |
| A3008-1 | L3355-1 |
| A3009-1 | L3503-1 |
| A3011-1 | L3505-0 |
| A3114-0 | L3513-0 |
| A3411-0 | L3523-0 |
| A3471-0 | AL-8-1B ASSAULT & BATTERY |
| A3506-0 | AL -8-1B INCIDENTAL MALPRACTICE |
| A3508-0 | AL-8-1B KNOW. & NOTICE OF OCCURRENCE |
| A3717-0 | AL-8-1B LIQUOR LIAB. HOSTS |
| A3718-0 | AL-8-1B NOTICE OF CANCELLATION |
| A3775-0 | AL-8-1B UNINTENTIONAL ERRORS |
| A3828-0 | AL-57-0 |
| L3014-0 | AL-68-0 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by.........................................................
Authorized Agent

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART001290

# Countersignature Memo

**Insured** CENTRICO INC.

CHICAGO REG. OFF.
100 FAIRWAY COURT
NORTHVALE, N.J.

| Company Office | MANHATTAN | Co. Code | Policy No. | Expiration | Date |
|---|---|---|---|---|---|
| | | 5 | 18 C 669913 U | 8-25-79 | 8-23-78 |

Please show Countersigning Agent preferred, if any, in block below.

**Name and Address of Producer**

FRED S. JAMES & CO. OF N.Y. INC.
55 WATER ST.
N.Y. N.Y. 10041

Name and Address of Countersigning Agent

**PRODUCER —**

The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a party to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

Producer's Rate of Commission 10.0% Premium

Effective Date 8-25-78

LIAB. 12.5 1105.
AUTO 10.0% 4785.

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| ILLINOIS | 135304320 | FRED S. JAMES |

If not licensed, is same desired? ☐ Yes ☐ No. If "Yes", which States:

company located these documents in its business records. At this time, the company does not certify that these documents constitute and accurate copy of the policy.

**THE HARTFORD**

Co. Code
☐ 1 Hartford Fire Insurance Company
☐ 5 Hartford Accident and Indemnity Company
☐ 3 Hartford Casualty Insurance Company

Co. Code
☐ 6 New York Underwriters Insurance Company
☐ 7 Twin City Fire Insurance Company

HART001291

Form G-2689-1 Printed in U.S.A.

**COMPANY OFFICE OF PRODUCER**

RESIDENT AGENT COUNTERSIGNATURE ENDORSEMENT

| | |
|---|---|
| **Co. Code** | **[1]** Hartford Fire Insurance Company<br>**[5]** Hartford Accident and Indemnity Company<br>**[3]** Hartford Casualty Insurance Company | **Co. Code** **[6]** New York Underwriters Insurance Company<br>**[7]** Twin City Fire Insurance Company |

Named Insured and Address

This Endorsement forms
a part of ☒ Policy No. ☐ *Bond No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

CENTRICO INC.

NORTHVALE, N.J.

Effective date **8-25-78**

Effective hour is the same as stated in the Declarations of the Policy.

*Note: *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| NEW JERSEY | FRED S. JAMES   25-2170 |

The insurer, with respect to each coverage shall be as designated by Co. Code Number.

| Co. Code | Coverages (Automobiles) | Premium For State | Co. Code | Coverages (other than Automobile) | Premium For State |
|---|---|---|---|---|---|
| 5 | Bodily Injury | $ 1036.00 | 5 | General Liability | $ 167,650.00 |
| | Medical Payments | $ | | Workmen's Compensation | $ |
| 5 | Property Damage | $ 778.00 | | Burglary | $ |
| | Comprehensive | $ | | Glass | $ |
| | Collision | $ | | Bond | $ |
| — | Other (specify)   UM | 10.00 | | Other (specify) | $ |
| 5 | PIP | $ 140.00 | | | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001292

Form **G-1760-7**   Printed in U.S.A. 6-'70

ORLANDO REG. OFF.
100 FAIRWAY COURT
NORTHVALE, N.J.

MANHATTAN

| Co. Code | Policy No. | Expiration | Date |
|---|---|---|---|
| 5 | 10 C 669913 W | 8-25-79 | 8-23-78 |

Please show Countersigning Agent preferred, if any, in block below.

Name and Address of Producer

FRED S. JAMES & CO. OF N.Y. INC.
55 WATER ST.
N.Y. N.Y. 10041

Name and Address of Countersigning Agent

**PRODUCER —**

The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a party to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| FLORIDA | 0161285373-01 | T.J.MAHONEY |

U.L. 12.5    914.

Producer's Rate of Commission 10.0 % Premium
Effective Date  8-25-78
AUTO 10.0    1655.

If not licensed, is same desired? ☐ Yes ☐ No. If "Yes", which States

The company located these documents in its business records. At this time, the company does not certify that these documents constitute an authentic or true copy of the policy.

THE HARTFORD

| Co. Code | | | Co. Code | |
|---|---|---|---|---|
| [1] | Hartford Fire Insurance Company | | [6] | New York Underwriters Insurance Company |
| [5] | Hartford Accident and Indemnity Company | | [7] | Twin City Fire Insurance Company |
| [3] | Hartford Casualty Insurance Company | | | |

HART001293

Form G-2669-1  Printed in U.S.A.    **COMPANY OFFICE OF PRODUCER**

AUTOMOBILE

## ILLINOIS EXTENDED PERSONAL INJURY PROTECTION

### AMENDATORY COVERAGE

### Insuring Agreement – BASIC PERSONAL INJURY PROTECTION

Named Insured and Address

This endorsement forms a part of Policy No.... **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................................................................. 12:01 A. M., standard time· at the address of the named insured as
stated herein.

## SCHEDULE

| COVERAGE | Auto No. | PREMIUMS |
|---|---|---|
| BASIC PERSONAL INJURY PROTECTION | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| TOTAL PREMIUM $ | | **INCLUDED** |

The Company agrees with the named insured to add the following to the bodily injury liability section of the policy, in accordance with Article XXXV of the Illinois Insurance Code, subject to all of the provisions of the Policy except as modified herein:

BASIC PERSONAL INJURY PROTECTION INSURANCE

The Company will pay to or for the benefit of the injured person:

(a)  Medical, Hospital and Funeral Expenses: All reasonable and necessary expenses arising from an accident for medical, surgical, x-ray, dental, prosthetic, ambulance, hospital, professional nursing and funeral services, incurred within one year after the date of the accident, subject to a limit of $2,000 per injured person.

(b)  Income Continuation:  85% of the income lost within one year immediately after the date of the accident by an injured person who was an income or wage-earner, as a result of total disability caused by the accident, subject to a payment limit of $150 per week per injured person for 52 weeks commencing on the date of the accident.

(c)  Loss of Services:  Where the injured person was not an income or wage-earner at the time of the accident, reimbursement for payments made to others, not members of the injured person's household, for reasonable and necessary expenses incurred as a result of disability caused by the accident for essential services ordinarily performed by the injured person for care and maintenance of the family or family household, actually rendered within one year after the date of such accident, subject to a limit of $12 per day per injured person for 365 days commencing on the date of the accident.

Definitions

When used in reference to this Insurance: "Injured Person" means

(a)  the named insured or any relative who sustains bodily injury in any motor vehicle accident;

(b)  any person, other than the named insured or a relative, who sustains bodily injury while occupying the insured automobile as a guest passenger;

(c)  any person, other than the named insured or a relative, who sustains bodily injury while using the insured automobile with the permission of the named insured; or

(d)  any pedestrian, other than the named insured or a relative, who sustains bodily injury through being struck by the insured automobile in an accident occurring within the State of Illinois;

"named insured" means the individual named in the declarations and includes his spouse if a resident of the same household;

"relative" means a relative of the named insured who is a resident of the same household;

"bodily injury" means bodily injury, sickness or disease, including death at any time resulting therefrom;

"occupying" means in or upon or entering into or alighting from;

"automobile" means a private passenger automobile of the sedan, station wagon, or jeep type, not used as a public livery conveyance, nor rented to others, and includes any other 4 wheel motor vehicle used as a utility automobile, pickup truck, sedan delivery truck, or panel truck which is not used primarily in the occupation, profession or business of the insured, other than farming or ranching;

"insured automobile" means an automobile described as an insured automobile under the bodily injury liability insurance of the policy and which is registered or principally garaged in the State of Illinois;

"total disability" means inability of the injured person to engage in his ordinary occupation;

"income or wage-earner" includes an individual who is usually and normally gainfully employed in a continuous full time or permanent occupation;

"medical services" includes services rendered by an individual licensed under the Medical Practice Act of the State of Illinois or under the comparable statute of the jurisdiction by which the individual rendering the services is licensed and any non-medical remedial treatment and care rendered in accordance with a recognized religious method of healing;

"motor vehicle" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-treads, or (3) a vehicle while located for use as a residence or premises.

Exclusions

BASIC PERSONAL INJURY PROTECTION does not apply:

(a)  to or on behalf of any injured person where such person's conduct contributed to the injury in any of the following ways:

(1)  by intentionally causing injury to himself;

(2)  while under the influence of intoxicating liquor or narcotic drugs;

(3)  by operating a motor vehicle without a license or after suspension or revocation of a license;

(4)  by operating a motor vehicle upon a bet or wager or in a race;

(5)  while seeking to elude lawful apprehension or arrest by a police officer;

(6)  while operating or riding in a vehicle known to him to be stolen; or

(7)  while in the commission of a felony;

(b)  to the named insured or any relative while occupying any automobile owned by the named insured or furnished for the named insured's regular use and not insured for automobile bodily injury liability;

(c)  to a relative while occupying any automobile owned by such relative or furnished for the relative's regular use and not insured for automobile bodily injury liability;

(d)  to any direct or indirect loss or interest of, or for services or benefits provided or furnished by, the United States of America or any of its agencies coincident to a contract of employment or of military enlistment, duty or service;

(e)  to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

(f)  to any person who sustains bodily injury due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing.

of the company's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-2766-0 TERM  Printed in U. S. A.  11-'71

HART001294

**Limits of Liability**

The limits stated in paragraphs (a), (b) and (c) under BASIC PERSONAL INJURY PROTECTION INSURANCE are the total limits of the Company's liability under this Insuring Agreement per injured person as the result of any one accident, regardless of the number of insured automobiles to which this insurance applies.

Any amount payable to or for the benefit of an injured person under this insurance must be reduced by:

(1)  any amount paid or payable to such injured person under the workmen's compensation laws of any State or the Federal Government;

(2)  any amount, received by or on behalf of such injured person from any third person who is or may be liable in tort therefor or from such third person's agent or insurer, to the extent that such amount would produce a duplication of payment or reimbursement for any loss or expense covered under this insurance; and

(3)  the amount of any similar automobile medical, income continuation, loss of services or survivor's benefits available to the injured person who is injured while occupying, or through being struck by a motor vehicle not insured for ILLINOIS EXTENDED PERSONAL INJURY PROTECTION.

## CONDITIONS

The following conditions apply to all Provisions of this endorsement except where otherwise noted:

(1)  **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the injured persons, and also reasonably obtainable information respecting the time, place and circumstances of the accident, must be given by or on behalf of the person who sustains injury to the Company or one of its authorized agents as soon as practical. If any injured person or his legal representative institutes legal action to recover damages for bodily injury against a third party, a copy of the summons and complaint or other process served in connection with such legal action must be forwarded as soon as practical to the Company by such injured person or his legal representative.

(2)  **Medical Reports; Proof of Claim.** As soon as practical the injured person, or someone on his behalf, shall give the Company written proof of claim, and shall, upon each reasonable request from the Company, execute authorization to enable the Company to obtain medical reports, copies of records and loss of earnings information. The injured person must submit to physical examinations by physicians selected by the Company whenever the Company may reasonably require. A copy of any medical report must be forwarded to the injured person. The Company may require that the injured person, as a condition for receiving income continuation payments, furnish the Company reasonable medical proof of his inability to work.

(3)  **Prompt Payments.** Payments to be made under BASIC EXTENDED PERSONAL INJURY PROTECTION must be made promptly after valid proof of loss has been submitted to the Company. Payments must be made periodically on a monthly basis as expenses are incurred. Payments for any period must be paid within 30 days after the Company has received reasonable proof of the fact and amount of expenses incurred during that period. If reasonable proof is not supplied as to the entire claim the amount supported by reasonable proof must be paid within 30 days after such proof is received by the Company. Any part or all of the remainder of the claim that is later supported by reasonable proof must be paid within 30 days after such proof is received by the Company.

(4)  **Action Against the Company.** No action may lie against the Company unless, as a condition precedent thereto, there has been full compliance with all the terms of this coverage.

(5)  **Policy Period and Territory.** This insurance applies only to accidents which occur on or after January 1, 1972, during the policy period and, except as otherwise provided under the definition of "injured person" herein, within the United States of America, its territories or possessions or Canada.

(6)  **Subrogation.** In the event of any payment under this coverage, the Company is subrogated to the rights of the person to or for whom such payments were made, to the extent of such payments, and such person must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(7)  **Trust Agreement.** In the event of any payment under this coverage:

    (a)  the Company is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person or organization legally responsible for the bodily injury because of which such payment is made, to the extent the damages recovered include the amount of any payment so made;

    (b)  the injured person shall hold in trust for the benefit of the Company all rights of recovery which he has against such other person or organization because of any payment so made which is the subject of claim made hereunder;

    (c)  the injured person shall do whatever is necessary to secure the rights of the Company;

    (d)  if requested in writing by the Company, the injured person shall take, through any representative designated by the Company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of the injured person;

    (e)  the injured person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

(8)  **Other Insurance.** No person may recover benefits prescribed by law and afforded under this coverage from more than one policy or company on a duplicate basis. The insurance afforded shall be primary unless BASIC PERSONAL INJURY PROTECTION benefits are available to the injured person as the result of such person being struck by an automobile with respect to which a specific premium charge for BASIC PERSONAL INJURY PROTECTION has been made under another policy or as the result of such person being injured while occupying such an automobile. In such an event, this insurance shall not apply. Subject to the foregoing, the insurance afforded shall also be primary as respects a relative injured while occupying or being struck by a motor vehicle for which benefits are not afforded unless BASIC PERSONAL INJURY PROTECTION benefits are available to the relative under a policy under which the relative is a named insured, in which event, this insurance shall not apply. However, the insurance afforded shall be primary for a relative when the relative is injured in an automobile described in the policy as an insured automobile. Regardless of the number of automobiles insured for such benefits, whether in one or more policies, whether written by the same or different companies, and regardless of the number of applicable policies affording such benefits to any one injured person, in no event shall the total benefits payable to such injured person as the result of any one accident exceed the total amount of BASIC PERSONAL INJURY PROTECTION benefits provided under this insurance.

## EXCESS INSURANCE

It is agreed that any automobile medical or accidental disability coverage shall be excess over any Basic or Excess benefits available under Illinois Extended Personal Injury Protection.

## PROTECTION AGAINST UNINSURED MOTORISTS COVERAGE

It is agreed that, in accordance with Section 606 of Article XXXV, Illinois Insurance Code, any amount payable to an injured person under the Protection Against Uninsured Motorists Coverage shall be reduced by the amount of any benefits paid to or on behalf of such injured person under any Illinois Extended Personal Injury Protection.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

Countersigned by ................................................

.................................................... Authorized Agent

Form A-2766-0  TERM  Printed in U. S. A.  11-'71

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001295



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

Co. Code ① Hartford Fire Insurance Company
Co. Code ⑤ Hartford Accident and Indemnity Company
Co. Code ③ Hartford Casualty Insurance Company

Co. Code ⑥ New York Underwriters Insurance Company
Co. Code ⑦ Twin City Fire Insurance Company

Named Insured and Address

This Endorsement forms
a part of ☒ Policy No. ☐ *Bond No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

**CENTRICO INC.**

**NORTHVALE, N.J.**

Effective date **8-25-78**                Effective hour is the same as stated in the Declarations of the Policy.

*Note: If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **FLORIDA** | **FRED S. JAMES & CO. OF N.Y. INC. 25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number.

| Co. Code | Coverages (Automobiles) | Premium For State | Co. Code | Coverages (other than Automobile) | Premium For State |
|---|---|---|---|---|---|
| **5** | Bodily Injury | $ **625.00** | **5** | General Liability | $ **914.00** |
| | Medical Payments | $ **27.00** | | Workmen's Compensation | $ |
| | Property Damage | $ **223.00** | | Burglary | $ |
| | Comprehensive | $ **144.00** | | Glass | $ |
| | Collision | $ **537.00** | | Bond | $ |
| | Other (specify) **PIP** **UM** | $ **81.00** $ **18.00** | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|

The company located these documents in its ... Authentication ... company ...
does not certify that these documents constitute a complete and accurate copy of the policy.

HART001296

Form G-1760-7   Printed in U.S.A. 6-'70

AUTOMOBILE

## COMPREHENSIVE COVERAGE — $100 DEDUCTIBLE

It is agreed that under the Comprehensive Coverage, $100 shall be deducted from the amount of each loss as to each automobile, other than loss by (a) fire or lightning, (b) smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the automobile is located, or (c) the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile is being transported.

If the policy affords insurance with respect to the Collision Coverage, breakage of glass caused by collision may, if the insured so elects, be treated as covered thereunder, subject to the terms thereof, instead of under the Comprehensive Coverage.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.



**THE HARTFORD**

_President_

**Form A-2579-0**   Printed in U. S. A.   4-'69   (IRB: 206a)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.
HART001297

**New Jersey Basic
Personal Injury Protection**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...................................... 12:01 A. M., standard time
at the address of the named insured as stated herein.

## SCHEDULE

| COVERAGE | Auto No. | PREMIUMS |
|---|---|---|
| | | $ |
| BASIC PERSONAL INJURY PROTECTION | | $   AS PER |
| | | $ |
| | | $   SCHEDULE |
| | | $ |
| TOTAL PREMIUM | | $   INCLUDED |

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in **bold face**, other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions"**.

The Company agrees with the **named insured,** subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I

**Basic Personal Injury Protection**

The Company will pay basic personal injury protection benefits consisting of

(a) **medical expense benefits,**
(b) **income continuation benefits,**
(c) **essential services benefits,**
(d) **survivor benefits,** and
(e) **funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person,** caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

**Exclusions**

The insurance under this endorsement does not apply:

(a) to **bodily injury** to a person whose conduct contributed to the injury in any of the following ways:

(1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

(2) while acting with specific intent to cause injury or damage to himself or others;

(b) to **bodily injury** to the **named insured** or any **relative** of the **named insured** sustained while occupying, using or entering into or alighting from a **private passenger automobile** which is not an **insured automobile** under this policy, if he is required to maintain automobile liability insurance coverage with respect to the automobile under the New Jersey Automobile Reparation Reform Act;

(c) to **bodily injury** to any person, other than the **named insured** or a **relative** of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey;

(d) to **bodily injury** arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

(e) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(f) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

**Definitions**

When used in reference to this insurance:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"eligible injured person"** means

(a) the **named insured** or any **relative** of the **named insured,** if the **named insured** or **relative** sustains **bodily injury**

(1) while occupying, using, entering into or alighting from a **private passenger automobile,** or

(2) while a **pedestrian,** caused by a **private passenger automobile** or as a result of being struck by an object propelled by or from such an automobile; or

(b) any other person who sustains **bodily injury**

(1) while, with the permission of the **named insured,** occupying, using, entering into or alighting from the **insured automobile,** or

(2) while a **pedestrian,** caused by the **insured automobile** or as a result of being struck by an object propelled by or from the **insured automobile;**

**"essential services benefits"** means an amount not exceeding $12.00 per day and a total limit of $4,380 payable to an **eligible**

**injured person** as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his lifetime and which he would ordinarily have performed not for **income** but for the care and maintenance of himself and his **relatives;**

**"funeral expense benefits"** means an amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred;

**"income"** means salary, wages, tips, commissions, fees and other earnings derived from work or employment;

**"income continuation benefits"** means an amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of **income** of an **income producer** during his lifetime, as a result of **bodily injury** disability;

**"income producer"** means a person who, at the time of the accident, was in an occupational status, earning or producing **income;**

**"insured automobile"** means an automobile with respect to which the **named insured** is required to maintain automobile liability insurance coverage under the New Jersey Automobile Reparation Reform Act, to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged;

**"medical expense benefits"** means all reasonable expenses incurred for medical, surgical and dental treatment, professional nursing, hospital and rehabilitation services, x-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses incurred for treatment prescribed by persons licensed to practice medicine, surgery, psychology or chiropractic, or for any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing;

**"named insured"** means the person or organization named as the insured in the declarations. If the **insured automobile** is owned by a farm family co-partnership or corporation, the term **"named insured"** also includes the head of the household of each family designated in the policy as having a working interest in the farm;

**"pedestrian"** means any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks and includes any person who is entering into or alighting from such a vehicle;

**"private passenger automobile"** means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) a private passenger or station wagon type automobile,

(2) a pick-up or panel truck or delivery sedan, or

(3) a utility automobile designed for personal use as a camper or motor home or for family recreational purposes; but

a **private passenger automobile** does not include a motorcycle, an automobile used as a public or livery conveyance for passengers, a pick-up or panel truck, delivery sedan or utility automobile customarily used for business, occupational or professional purposes other than farming or ranching or a utility automobile customarily used for the transportation of passengers other than members of the user's family or their guests;

**"relative"** means a person related to the **named insured** by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the **named insured;**

**"survivor benefits"** means the amount or amounts payable in the event of the death of an **eligible injured person** as determined in subdivision (1) or (2) hereof, as appropriate:

(1) if the **eligible injured person** was an **income producer** at the time of the accident, an amount equal to the difference between $5,200 and all basic **income continuation benefits** paid for any loss of **income** resulting from his injury prior to his death;

(2) if the **eligible injured person** ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount not to exceed the difference between $4,380 and all basic **essential services benefits** paid with respect to his injury prior to death.

The Hartford ... these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-2991-2  TERM  Printed in U. S. A.  (ISO: A989d; CP-05-61) Ed. 4-'75

HART001298

## Limit of Liability

Any amount payable by the Company as personal injury protection benefits with respect to **bodily injury** shall be reduced by all amounts paid, payable or required to be provided under any workmen's compensation or employees temporary disability law, or under Medicare provided under federal law.

The applicable limit on **income continuation benefits** applies separately to each full regular and customary work week of an **eligible injured person**. If his disability from work or employment consists of or includes only a part of such a week, the Company shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the part week bears to the number of days in his full work week.

## Policy Period; Territory

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions or Canada.

## Conditions

1. **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the **eligible injured person**, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each **eligible injured person** to the Company or any of its authorized agents as soon as practicable. If any **eligible injured person**, his legal representative or survivors shall institute legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such **eligible injured person**, his legal representative or his survivors.

2. **Medical Reports; Proof of Claim.** As soon as practicable the **eligible injured person** or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The **eligible injured person** shall submit to physical examination by physicians when and as often as the Company may reasonably require and a copy of the medical report will be forwarded to such **eligible injured person** if requested.

3. **Multiple Policies Applicable to One Accident: Non-duplication of Benefits; Priority of Complying Policies.** Regardless of the number of automobiles insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act, or the number of insurers or policies affording such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to **bodily injury** to any one person as the result of any one accident shall not exceed the applicable amounts or limits specified in Section 4 of said **Act**.

This insurance applies on a primary basis to **bodily injury** to the **named insured** and his **relative** and on a secondary basis to all other **eligible injured persons**. Similarly, the basic personal injury protection coverage provided by other complying policies applies on a primary basis to **bodily injury** to those persons who are named insureds under such policies and their relatives. If an **eligible injured person** to whom this insurance applies on a secondary basis has other basic personal injury protection coverage under another complying policy applicable to his **bodily injury** on a primary basis, all claims for basic personal injury protection benefits shall first be made against the insurer issuing the other complying policy. No basic personal injury protection benefits shall be due and payable under this insurance unless the other insurer fails to pay such benefits by reason of insolvency and the Company has been given written notice by the claimant of such failure. "Complying Policy" means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.

4. **Reimbursement and Trust Agreement.** Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement:

   (a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such **bodily injury**, his agent, his insurer or a court having jurisdiction in the matter;

   (b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such **bodily injury**;

   (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

   (d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

5. **Payment of Personal Injury Protection Benefits. Medical expense benefits** and **essential services benefits** may be paid at the option of the Company to the **eligible injured person** or the person or organization furnishing the products or services for which such benefits are due. In the event of the death of an **eligible injured person** any amounts payable, but unpaid prior to death, for **medical expense benefits** are payable to the **eligible injured person's** estate.

Benefits payable under subdivision (1) of the definition of **survivor benefits** are payable to the **eligible injured person's** surviving spouse, or if there is no surviving spouse, to his surviving children, or if there are no surviving spouse or surviving children, to the **eligible injured person's** estate.

Benefits payable under subdivision (2) of the definition of **survivor benefits** are payable to the person who has incurred the expense of providing essential services.

Funeral expense benefits are payable to the **eligible injured person's** estate.

## SECTION II

### Extended Medical Expense Benefits

The Company will pay **medical expense benefits** not to exceed the total amount of $10,000 and **funeral expense benefits** with respect to **bodily injury** sustained by an **insured person**, caused by an accident occurring during the policy period within the United States of America, its territories or possessions or Canada and arising out of the ownership, maintenance or use, including loading or unloading, of an **insured automobile** or of a **highway vehicle** not owned by or furnished or available for the regular use of the **named insured** or any **relative** of the **named insured**.

### Exclusions

The insurance under Section II is subject to all of the exclusions applicable to Section I, except that the word "person" in exclusion (c) is replaced by the word "**pedestrian**".

### Definitions

The definitions under Section I apply to Section II and under Section II: "**highway vehicle**" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-treads or (3) a vehicle while located for use as a residence or premises;

"**insured person**" means

(a) the **named insured** or any **relative** of the **named insured**, if the **named insured** or **relative** sustains **bodily injury**

   (1) while occupying, using, entering into or alighting from a **highway vehicle**; or

   (2) while a **pedestrian**, caused by a **highway vehicle**;

(b) any other person who sustains **bodily injury** while occupying a **highway vehicle** (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such **highway vehicle** is being operated by the **named insured** or a **relative** of the **named insured** or any other person using such **highway vehicle** with the permission of the **named insured**;

(c) any other person who sustains **bodily injury** while occupying an **insured automobile** if such **insured automobile** is being operated by the **named insured** or a **relative** of the **named insured** or any other person using such **insured automobile** with the permission of the **named insured**.

### Conditions

Conditions 1, 2 and 4 of Section I apply to Section II, substituting the term "**insured person**" for "**eligible injured person**" wherever it appears therein. The following additional condition applies under Section II:

**Other Insurance or Benefits.** This insurance does not apply to loss or expense with respect to which an **insured person** is entitled to benefits under any workmen's compensation law or Medicare provided under federal law or under Section 4 of the New Jersey Automobile Reparation Reform Act.

This insurance does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefor under any other automobile no-fault law or under any other automobile medical payments insurance.

## SECTION III

In consideration of the insurance afforded under Sections I and II of this endorsement, and the adjustment of applicable rates:

(a) any amount payable for economic loss under the Protection Against Uninsured Motorists Coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury** to an **eligible injured person**;

(b) any Automobile Medical Payments or Medical Expense Coverage afforded under the policy is deleted with respect to an automobile which is an **insured automobile**.

## SECTION IV

### Premium Recomputation

The premium for the policy is based on rates which have been reduced in accordance with Section 18 of the New Jersey Automobile Reparation Reform Act to reflect the limitations on the right to recover damages imposed by Section 8 of said Act. If a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, Section 8 of the Act invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy on the basis of revised rates which are subject to approval by the Commissioner of Insurance.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by _____    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form A-2991-2  TERM**

HART001299

PROTECTION AGAINST UNINSURED
MOTORISTS INSURANCE
(NEW JERSEY)

**THE HARTFORD**

This endorsement forms a part of the policy issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.

## SCHEDULE

| Designated Insured | Advance Premium | Limits of Liability | |
|---|---|---|---|
| | **10.00** Included | Bodily Injury Liability: | 15 thousand dollars each person |
| | | | 30 thousand dollars each accident |
| | | Property Damage Liability: | 5 thousand dollars each accident |

Description of Insured Highway Vehicles:
An insured highway vehicle is any highway vehicle registered or principally garaged in New Jersey (1) which is designated by ☒ below or (2) if no ☒ is entered below, which is an owned automobile under Section I of the policy.

☐ A private passenger automobile owned by the named insured
☒ Owned by the named insured
☐ Designated in the declarations of the policy by the letters "UM" and any highway vehicle of the same type ownership of which is acquired during the policy period by the named insured as a replacement therefor
☐ Any mobile equipment owned by the named insured
☐ ...............................................................................................................................................................................

In consideration of the payment of premium and subject to all of the provisions of this endorsement and to the applicable provisions of the policy, the company agrees with the named insured as follows:

### I. UNINSURED MOTORISTS COVERAGE
*(Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)*

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, that for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

#### Exclusions

This insurance does not apply:
(a) to bodily injury or property damage with respect to which the insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;
(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, or designated insured or any relative resident in the same household as the named or designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives;
(c) to property contained in or struck by a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, but this exclusion does not apply to property of the named insured or his relatives while contained in or struck by a highway vehicle owned by a designated insured or his relatives;
(d) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law;
(e) to the first $100 of the amount of property damage to the property of each insured as the result of any one accident;
(f) so as to inure directly or indirectly to the benefit of any insurer of property;
(g) to property damage arising out of the ownership, maintenance or use of a hit-and-run vehicle.

### II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured and any designated insured, and, while residents of the same household, the spouse and relatives of either;
(b) any other person while occupying an insured highway vehicle; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.
The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability.

### III. LIMITS OF LIABILITY

Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) highway vehicles to which this insurance applies, the company's liability is limited as follows:
(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.
(b) The limit of property damage liability stated in the schedule is the total limit of the company's liability for all damages because of property damage sustained by one or more insureds as the result of any one accident.
(c) Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is an insured shall be reduced by
  (1) all sums paid on account of such bodily injury or property damage by or on behalf of
    (i) the owner or operator of the uninsured highway vehicle and
    (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage,
  including all sums paid under the bodily injury or property damage liability coverage of the policy, and
  (2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.
(d) Any payment made under this insurance to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the bodily injury or property damage liability coverage of the policy.
(e) The company shall not be obligated to pay under this insurance that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under the medical payments or medical expense coverage of the policy or which represents loss paid or payable to the insured under any automobile physical damage insurance of the policy.

### IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

### V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy);
"**bodily injury**" means bodily injury, sickness or disease, including death, sustained by an insured under (a) or (b) of the Persons Insured provision;
"**designated insured**" means an individual named in the schedule under Designated Insured and also includes his spouse, if a resident of the same household;
"**highway vehicle**" means a land motor vehicle or trailer other than
(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,
(b) a vehicle operated on rails or crawler-treads, or
(c) a vehicle while located for use as a residence or premises;
"**hit-and-run vehicle**" means (i) a highway vehicle which causes an accident resulting in bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident, or (ii) a highway vehicle which without physical contact with the insured or with a vehicle which the insured is occupying at the time of the accident causes bodily injury to an insured arising out of an accident in New Jersey, provided:
(a) there cannot be ascertained the identity of either the operator or owner of such highway vehicle; and
(b) the insured or someone on his behalf shall have reported the accident within 48 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and
(c) at the company's request, the insured or his legal representative makes available for inspection the vehicle which the insured was occupying at the time of the accident; and
(d) with respect to subdivision (ii) the facts of such accident can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such accident;
"**insured highway vehicle**" means a highway vehicle:
(a) described in the schedule as an insured highway vehicle to which the bodily injury and property damage liability coverage of the policy applies;
(b) while temporarily used as a substitute for an insured highway vehicle, as described in subparagraph (a) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
but the term "insured highway vehicle" shall not include:
(i) a vehicle while used as a public or livery conveyance, unless such use is specifically declared and described in the policy;
(ii) a vehicle while being used without the permission of the owner;

HART001300

(iii) under subparagraphs (b) and (c) above, a vehicle owned by the named insured, any designated insured or any resident of the same household as the named or designated insured; or

(iv) under subparagraphs (b) and (c) above, a vehicle furnished for the regular use of the named insured or any resident of the same household;

"named insured" means the individual named in item 1 of the declarations and also includes his spouse, if a resident of the same household;

"occupying" means in or upon or entering into or alighting from;

"property damage" means injury to or destruction of (i) an insured highway vehicle owned by the named insured or his spouse, if a resident of the same household, (ii) any property owned by an insured under (a) or (b) of the Persons Insured provisions while contained in such insured highway vehicle and (iii) any property owned by an insured under (a) of the Persons Insured provision while contained in any insured highway vehicle;

"state" includes the District of Columbia, a territory or possession of the United States, and a province of Canada;

"uninsured highway vehicle" means:

(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or

(b) a hit-and-run vehicle, but only with respect to bodily injury caused thereby;

but the term "uninsured highway vehicle" shall not include:

(i)   an insured highway vehicle,

(ii)  a highway vehicle which is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,

(iii) a highway vehicle which is owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing.

## VI.  ADDITIONAL CONDITIONS

### A.  Policy Provisions.

None of the Insuring Agreements, Exclusions, Conditions or other provisions of the policy shall apply to the insurance afforded by this endorsement except the Conditions "Notice" (or "Notice of Accident" or "Insured's Duties in Event of Occurrence, Claim or Suit"), "Changes," "Assignment," "Cancellation" and "Declarations".

### B.  Premium.

If during the policy period the number of insured highway vehicles owned by the named insured or spouse or the number of dealer's license plates issued to the named insured changes, the named insured shall notify the company during the policy period of any change and the premium shall be adjusted in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

### C.  Proof of Claim.

As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or the person or persons entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records.

The insured or other person making claim for damage to property shall file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement setting forth the interest of the insured and of all others in the property affected, any encumbrances thereon, the actual cash value thereof at time of loss, the amount, place, time and cause of such loss, and the description and amounts of all other insurance covering such property. Upon the company's request, the insured shall exhibit the damaged property to the company.

### D.  Assistance and Cooperation of the Insured.

After notice of claim under this insurance, the company may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the bodily injury or property damage; and in any action against the company, the company may require the insured to join such person or organization as a party defendant.

### E.  Notice of Legal Action.

If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury or property damage against any person or organization legally responsible for the use of a highway vehicle involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.

### F.  Other Insurance.

With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

With respect to property damage, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance of any kind applicable to such property damage, and this insurance shall apply only in the amount by which the limit of liability for this coverage exceeds the amount recoverable under such other insurance.

### G.  Arbitration.

If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

### H.  Trust Agreement.

In the event of payment to any person under this insurance:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or property damage because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this insurance;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision.

### I.  Payment of Loss by the Company.

Any amount due hereunder is payable

(a) to the insured, or

(b) if the insured be a minor to his parent or guardian, or

(c) if the insured be deceased to his surviving spouse, otherwise

(d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents;

provided, the company may at its option pay any amount due hereunder in accordance with division (d) hereof.

### J.  Action Against Company.

No action shall lie against the company unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of the policy applicable to this coverage.

K.  This endorsement replaces any other provisions of the policy, including any endorsement forming a part thereof, affording similar insurance with respect to any damages arising out of the ownership, maintenance or use of an uninsured vehicle or a hit-and-run vehicle.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

Form A-2993-1

President

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001301

# Automobile Medical Payments Insurance Coverage Part

| | Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|---|
| | Quality Control | | |

This Coverage Part forms a part of Policy No.................................................................issued by THE HARTFORD INSURANCE GROUP
Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

**10 C 669913W**

> *(For use only if this Coverage Part is effective after the effective date of the Policy)*
>
> This Coverage Part is effective...............................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to...............................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premium | Limits of Liability |
|---|---|---|
| F — Automobile Medical Payments | $ **297.00** | $ **5,000.** each person |

**Designation of Automobiles—Division 1**

(1) ☐ Any *owned automobile*

(2) ☐ Any *hired automobile*

(3) ☒ Any licensed *owned private passenger automobile*

(4) ☐ Any *automobile* described in the schedule and designated "M.P."

(5) ☐ Any *non-owned automobile*

(6) ☐ ..............................................................................

**Designated Person Insured—Division 2**

Advance Premium
$
$
$

Form Numbers of Endorsements forming part of this Coverage Part at issue:

The conditions and provisions printed on page **AMP-2** of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

A-3008-1   CDR   Printed in U. S. A.   (ISO: CP-00-15) Ed 1-'74     AMP-1

...produced these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001302

COMPANY COPY

ATTACH FORMS ALONG MARGIN BELOW THIS MARK +

**Protection Against
Uninsured Motorists
Insurance Coverage Part**

| Col. Approved | Confidential Report | Ind. Notes: |
|---|---|---|
| Quality Control | | |

This Coverage Part forms a part of Policy No...........**10 C 669913 W**...........issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

COMPANY COPY

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective.................................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to.................................................................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability |
|---|---|---|
| U — Uninsured Motorists | $ **63.00** | $ **15** ,000 each person |
| | | $ **30** ,000 each accident |

Designated Insured:

**VEHICLES GARAGED IN CALIFORNIA**

Description of *Insured Highway Vehicles*
(Check appropriate box)

☒ Any *automobile* owned by the *named insured*

☐ Any *private passenger automobile* owned by the *named insured*

☐ Any *highway vehicle* to which are attached dealer's license plates issued to the *named insured*

☐ Any *highway vehicle* designated in the schedule of the policy by the letters "UM" and a *highway vehicle* ownership of which is acquired during the policy period by the *named insured* as a replacement therefor

☐ Any *mobile equipment* owned or leased by and registered in the name of the *named insured*

☐ ....................................................................................................................

ATTACH FORMS ALONG MARGIN BELOW THIS MARK +

### I. COVERAGE U — UNINSURED MOTORISTS
*(Damages for Bodily Injury)*

The company will pay all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured highway vehicle* because of *bodily injury* sustained by the *insured*, caused by accident and arising out of the ownership, maintenance or use of such *uninsured highway vehicle;* provided, for the purposes of this coverage, determination as to whether the *insured* or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the *insured* or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the *bodily injury* shall be conclusive, as between the *insured* and the company, of the issues of liability of such person or organization or of the amount of damages to which the *insured* is legally entitled unless such judgment is entered pursuant to an action prosecuted by the *insured* with the written consent of the company.

**Exclusions**

This insurance does not apply:

(a) to *bodily injury* to an *insured* with respect to which such *insured*, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b) to *bodily injury* to an *insured* while *occupying* a *highway vehicle* (other than an *insured highway vehicle*) owned by the *named insured*, any *designated insured* or any relative resident in the same household as the *named* or *designated insured*, or through being struck by such a vehicle, but this exclusion does not apply to the *named insured* or his relatives while *occupying* or if struck by a *highway vehicle* owned by a *designated insured* or his relatives;

(c) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law.

### II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) the *named insured* and any *designated insured* and, while residents of the same household, the spouse and relatives of either;

(b) any other person while *occupying* an *insured highway vehicle;* and

(c) any person, with respect to damages he is entitled to recover because of *bodily injury* to which this insurance applies sustained by an *insured* under (a) or (b) above.

The insurance applies separately with respect to each *insured*, except with respect to the limits of the company's liability.

The conditions and provisions printed on pages UM-2 and UM-3 of this form are hereby referred to and made a part hereof.
This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

A-3009-1   CDR   Printed in U. S. A.   (ISO: CP-00-25)   Ed. 1-'74          UM-1                    HART001303

**Protection Against Uninsured Motorists Insurance Coverage Part**

| | | Fd. Approved | Confidential Report | Und. Notes: |
|---|---|---|---|---|
| | | Quality Control | | |

This Coverage Part forms a part of Policy No. **10 C669913 W** issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

COMPANY COPY

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective.................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to.................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

### SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage are as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability |
|---|---|---|
| U — Uninsured Motorists | $ 36.00  INCL. | $ 10 ,000 each person  $ 20 ,000 each accident |

**Designated Insured:**

### VEHICLES GARAGED IN FLORIDA & ILLINOIS

Description of *Insured Highway Vehicles*
(Check appropriate box)

☒ Any *automobile* owned by the *named insured*

☐ Any *private passenger automobile* owned by the *named insured*

☐ Any *highway vehicle* to which are attached dealer's license plates issued to the *named insured*

☐ Any *highway vehicle* designated in the schedule of the policy by the letters "UM" and a *highway vehicle* ownership of which is acquired during the policy period by the *named insured* as a replacement therefor

☐ Any *mobile equipment* owned or leased by and registered in the name of the *named insured*

☐ ..........................................................

### I. COVERAGE U — UNINSURED MOTORISTS
*(Damages for Bodily Injury)*

The company will pay all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured highway vehicle* because of *bodily injury* sustained by the *insured*, caused by accident and arising out of the ownership, maintenance or use of such *uninsured highway vehicle*; provided, for the purposes of this coverage, determination as to whether the *insured* or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the *insured* or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the *bodily injury* shall be conclusive, as between the *insured* and the company, of the issues of liability of such person or organization or of the amount of damages to which the *insured* is legally entitled unless such judgment is entered pursuant to an action prosecuted by the *insured* with the written consent of the company.

**Exclusions**

This insurance does not apply:

(a) to *bodily injury* to an *insured* with respect to which such *insured*, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b) to *bodily injury* to an *insured* while *occupying* a *highway vehicle* (other than an *insured highway vehicle*) owned by the *named insured*, any *designated insured* or any relative resident in the same household as the *named* or *designated insured*, or through being struck by such a vehicle, but this exclusion does not apply to the *named insured* or his relatives while *occupying* or if struck by a *highway vehicle* owned by a *designated insured* or his relatives;

(c) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law.

### II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) the *named insured* and any *designated insured* and, while residents of the same household, the spouse and relatives of either;

(b) any other person while *occupying* an *insured highway vehicle*; and

(c) any person, with respect to damages he is entitled to recover because of *bodily injury* to which this insurance applies sustained by an *insured* under (a) or (b) above.

The insurance applies separately with respect to each *insured*, except with respect to the limits of the company's liability.

The conditions and provisions printed on pages UM-2 and UM-3 of this form are hereby referred to and made a part hereof.
This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

at this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

A-3009-1  CDR  Printed in U. S. A.  (ISO: CP-00-25)  Ed. 1-'74      **UM-1**      HART001304

| Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|
| Quality Control | | |

**COMPANY COPY**

# Automobile Physical Damage Insurance (Fleet Automatic) Coverage Part

**10 C 669913 W**

This Coverage Part forms a part of Policy No. ....................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to....................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

**Items**

1.(a) The insurance afforded is only with respect to such the following coverages as are indicated by specific premium charge or charges and, under each such coverage, applies only to such *covered automobiles* as are indicated, by entry herein, of one or more of the designating numerals for that purpose appearing in division (b) of this Item. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this insurance having reference thereto.

ATTACH FORMS ALONG MARGIN BELOW THIS MARK ↑

| Coverages | ★Covered Automobiles | Limit of Liability — each *covered automobile* | | | Advance Premiums |
|---|---|---|---|---|---|
| | | Amount or "ACV" (Actual Cash Value) | Deductible | "S" entered below means: "As separately stated in the Schedule of Covered Automobiles made a part hereof" | |
| O. Comprehensive | CA- 5  CA- | $ | $ 100 | | $ 1607.00 |
| P. Collision | CA- 5  CA- | $ | $ 250 | | $ 5117.00 |
| Q. Fire, Lightning or Transportation | CA-  CA- | | | | $ |
| R. Theft | CA-  CA- | | | | $ |
| S. Windstorm, Hail, Earthquake or Explosion | CA-  CA- | | | | $ |
| T. Combined Additional | CA-  CA- | | | | $ |
| V. Towing (Not available in California) | CA-  CA- | $25 for each disablement | | | $ |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | Maximum Limit of Liability | Advance Premium for Endorsements |
|---|---|---|
| **A3775** | $ 25,000 ....Any one *covered automobile*  $ 60,000 ....All *covered automobiles* at any one location  $ 150,000  All *covered automobiles* | |
| | | **TOTAL ADVANCE PREMIUMS** $ 6724.00 |

Records to be submitted ("M" = monthly; "Q" = quarterly; "S" = semi-annually):.................................

(b) Explanation of above entries designating the *covered automobiles* to which this insurance applies, under each Coverage afforded:

★ CA-1 = all *covered automobiles*
CA-2 = all registered *covered automobiles*
CA-3 = all *covered automobiles* of the *private passenger type*
CA-4 = all *covered automobiles* of the *commercial type*

CA-5 = the *covered automobiles* described in the Schedule of Covered Automobiles made a part hereof (including newly acquired vehicles, subject to the provisions of paragraph (b) of the "*covered automobile*" definition)

When also entered with CA-1, 2, 3 or 4:
6 = excluding vehicles leased to the *named insured*
7 = excluding under Collision Coverage, any vehicle not having an actual cash value of at least $...........

2. **Schedule of Covered Automobiles** as of effective date of this insurance

(a) Description; (b) Facts Respecting Purchase; (c) Limit of Liability (if not stated in Item 1 above), Rates, Advance Premiums

| AUTO No. | (a) | Year Model Trade Name | Body Type - Capacity (Truck Load, Gallonage, Bus Seating) | Identification No.(I), Serial No. (S). Motor No. (M) | No. of Cyls. Model | Principally garaged in (Town, State) | *Purpose of Use | Classification |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | **AS PER SCHEDULE OF AUTOMOBILES** | | | | | | |

| AUTO No. | (b) | List Price | Actual Cost | Purchased Mo./Yr.—New (N); Used (U) | Rating Symbol | Any *loss* under Coverages other than Towing is payable as interest may appear to the *named insured* and the Loss Payee named below: | | |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | | | | | | | |

| AUTO No. | (c) Limit of Liability—each *covered automobile* described in (a) above and covered for: | | | | Rates | Advance Premiums | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Coverages other than Collision Enter: Amt. or "ACV" | Deductible | Collision Enter: "ACV" | Deductible | | Cov. O | Cov. P | Cov. Q | Cov. R | Cov. S | Cov. T | Cov. V |
| 1 | $ | | $ | | $ | $ | $ | $ | $ | $ | $ | $ |
| 2 | $ | | $ | | $ | $ | $ | $ | $ | $ | $ | $ |
| | "ACV" means Actual Cash Value | | Totals | | $ | $ | $ | $ | $ | $ | $ | $ |

3. Except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance, the *named insured* is the sole owner of every *covered automobile* designated above as covered under this insurance, unless otherwise stated herein:

The company located these documents in its possession and Hartford and the company reproduced a true and accurate copy of the policy.

The conditions and provisions printed on pages PHF-2, PHF-3 and PHF-4 of this form are hereby referred to and made a part hereof. This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

**HART001305**

* P & B = Pleasure and Business: C = Commercial

A-3011-1  CDR   Printed in U.S.A.  (ISO: CP-00-35)   Ed.-8-'74          **PHF-1**

*Countersigned by*......................................

*Authorised Agent*

# Schedule of Automobiles — Covered Automobiles

This Schedule forms a part of Policy No. __10 C __69913 V__ issued by THE HARTFORD INSURANCE GROUP Company described therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date __8-25-78__  12:01 A. M., standard time.

**THE HARTFORD**

As to each covered *automobile* described herein, the insurance afforded applies only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all the terms of this insurance having reference thereto.

| Unit or Entry No. | Year Model Trade Name / Body Type - Truck Size, No. of Cyls., Truck Load, Gallonage, Bus Seating Capacity / Location (Town, State) | Identification No. (I) Serial No. (S) Motor No. (M) / Rating Territory | Rating Class | *Purpose of Use / Purchased Mo./Yr. New-Used / Original Cost New or Rating Symbol | BI Liab. Prem. / Medical Payments Premium | PD Liab. Prem. PIP / Uninsured Motorist Premium | Non. Coll. Cov. / Coll. Cov. (Insert App-licable Symbols) | Amt. or "ACV" (Actual Cash Value) | Deduc-tible if any | Rates | Premiums (each covered auto-mobile) | Trans Labor Costs Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 77 MERC. BENZ #11602412092315 | P&B | | | $ 179. / $ 35. | $ 124. / 370 B/8 3. | O / P | $ | 100 / 250 | | $ 119. / $ 353. | |
| | NORTHVALE, N.J. | T-10 | 7398 | 20,000/2 | | | | | | | | |
| 2 | 73 PONT. #2K57T3A160428 | P&B | | | $ 179. / $ 35. | $ 124. / $ 2. | O / P | $ | 100 / 250 | | $ 22. / $ 132. | |
| | NORTHVALE, N.J. | T-10 | 7398 | 5250/6 | | | | | | | | |
| 3 | 76 BUICK #4P39Y6H479570 | P&B | | | $ 179. / $ 35. | $ 124. / 2. | O / P | $ | 100 / 250 | | $ 34. / $ 207. | |
| | NORTHVALE, N.J. | T-10 | 7398 | 6178/3 | | | | | | | | |
| 4 | 72 DODGE TRK #B31BE2U721153 | C | | | $ 179. / $ 35. | $ 124. / $ 2. | O / P | $ | 100 / 250 | | $ 34. / $ 66. | |
| | NORTHVALE, N.J. | T-10 | 234100 | 4389/6 | | | | | | | | |
| 5 | 66 CHEV. TRK #8836P103956 | C | | | $ 320. / $ | $ 282. / $ 2. | O / P | $ | 100 / 250 | | $ 34. / $ 66. | |
| | NORTHVALE, N.J. | T-10 | 234100 | 3400/6 | | | | | | | | |
| 6 | 78 CHEV. IMPALA #1L69U8J249164 | P&B | | | $ 282. / $ 45. | $ 165. / $ 3. | O / P | $ | 100 / 250 | | $ 85. / $ 272. | |
| | BENSENVILLE, ILL. 1159 | T-15 | 7398 | 5500/1 | | | | | | | | |
| 7 | 76 FORD T-BIRD #6Y87A1D3820 | P&B | | | $ 282. / $ 45. | $ 165. / $ 3. | O / P | $ | 100 / 250 | | $ 90. / $ 268. | |
| | BENSENVILLE, ILL. | T-15 | 7398 | 7800/3 | | | | | | | | |

†Not Available in California    *P & B = Pleasure and Business;  C = Commercial

**TOTALS** $ ___ $ ___ $ ___

**LOSS PAYEES — IDENTIFY BY UNIT OR ENTRY NO.**

No. $ ___ $ ___

| No. | Name and Address of Loss Payee | | |
|---|---|---|---|
| | | | |

**CONT.**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

A-3471-0   Printed in U. S. A.

HART001306

# Schedule of Automobiles and Covered Automobiles

**THE HARTFORD**

**2**

This Schedule forms a part of Policy No. **70 C 069913 W** issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date **8-25-78**  12:01 A. M., standard time.

As respects each *covered automobile* described herein, the insurance afforded applies only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all the terms of this insurance having reference thereto.

| Unit or Entry No. | Year Model Trade Name / Location (Town, State) | Body Type / Rating Territory | Bus Seating Capacity / Rating Class | Purchased Mo./Yr. New-Used / Original Cost New or Rating Symbol | BI Liab. Prem. / Medical Payments Premium | PD Liab. Prem. / Uninsured Motorist Premium | Non. Coll. Cov. / Coll. Cov. | Amt. ACV / Amt. ACV | Deduc-tible if any | Premiums | Towing and Labor Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | PIP | | | | | | |
| 8 | 77 DODGE #HL45G7G32263 | | | | $ 282. | $ 165. | 0 | $ | $ 100 | $ 51. | $ |
| | BENSENVILLE, ILL. | T-15 | 7398 | 4954-2 | $ 45. | $ 3. | P | $ | $ 250 | $ 194. | $ |
| 9 | 78 DODGE #HL45G8B257169 | | | | $ 282. | $ 165. | 0 | $ | $ 100 | $ 85. | $ |
| | ELK GROVE, ILL. 4077 | T-15 | 7398 | 5400/1 | $ 45. | $ 3. | P | $ | $ 250 | $ 272. | $ |
| 10 | 77 DODGE #HL45G7B32262 | | | | $ 282. | $ 165. | 0 | $ | $ 100 | $ 51. | $ |
| | BENSENVILLE, ILL. | T-15 | 7398 | 4949/2 | $ 45. | $ 3. | P | $ | $ 250 | $ 194. | $ |
| 11 | 74 VOLKS #464Z013393 | | | | $ 282. | $ 165. | 0 | $ | $ 100 | $ 63. | $ |
| | BENSENVILLE, ILL. | T-15 | 7398 | 5204/5 | $ 45. | $ 3. | P | $ | $ 250 | $ 190. | $ |
| 12 | 74 AUDI #B442108394 | | | | $ 443. | $ 168. | 0 | $ | $ 100 | $ 54. | $ |
| | SAN MATEO, CALIF. | T-91 | 7398 | 4989/5 | $ | $ 7. | P | $ | $ 250 | $ 200. | $ |
| 13 | 77 PLYM. #HP41G7G82060 | | | | $ 443. | $ 168. | 0 | $ | $ 100 | $ 84. | $ |
| | SAN MATEO, CALIF. | T-91 | 7398 | 5811-2 | $ | $ 7. | P | $ | $ 250 | $ 288. | $ |
| 14 | 77 PLYM. #HL45G7G184645 | | | | $ 443. | $ 168. | 0 | $ | $ 100 | $ 84. | $ |
| | SAN MATEO, CALIF. | T-91 | 7398 | 5380/2 | $ | $ 7. | P | $ | $ 250 | $ 288. | $ |

† Not Available in California   *P & B = Pleasure and Business; C = Commercial

**LOSS PAYEES — IDENTIFY BY UNIT OR ENTRY NO.**

| No. | Name and Address of Loss Payee | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | No. | $ | $ | | | | | $ | |
| | | | | $ | $ | | | | | $ | |
| | | | | | | | | | | **CONT.** | |

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

A-3471-0  Printed in U. S. A.

HART001307

# Schedule of Automobiles and Covered Automobiles

This Schedule forms a part of Policy No. 10 C 669913W ...issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date.... 8-25-78    12:01 A. M., standard time.

**THE HARTFORD**

As respects each *covered automobile* described herein, the insurance afforded applies only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all the terms of this insurance having reference thereto.

| Unit or Entry No. | Year Model Trade Name / Location (Town, State) | Body Type - Truck Size No. of Cyls., Truck Load, Gallonage Bus Seating Capacity / Rating Territory | Identification No. (I) Serial No. (S) Motor No. (M) / Rating Class | *Purpose of Use | Purchased Mo./Yr. New-Used / Original Cost New or Rating Symbol | BI Liab. Prem. / Medical Payments Premium | PD Liab. Prem. PIP / Uninsured Motorist Premium | Non. Coll. Cov. (Insert Applicable Symbols) / Coll. Cov. (Insert Applicable Symbols) | Amt. or "ACV" (Actual Cash Value) | Deductible if any | Rates | Premiums (each covered automobile) | †Towing and Labor Costs Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 | 77 PLYM. #HL45G181926 | | | P&B | | $ 443. | $ 168. | 0 | $ | $ 100 | | $ 84. | $ |
| | SAN MATEO, CALIF. | T-91 | 7398 | | 5380/2 | $ | $ 7. | P | $ | $ 250 | | 288. | |
| 16 | 77 PLYM. #HL45G7B421164 | | | P&B | | $ 443. | $ 168. | 0 | $ | $ 100 | | $ 193. | $ |
| | SAN MATEO, CALIF. | T-91 | 7398 | | 5426-2 | $ | $ 7. | P | $ | $ 250 | | 340. | |
| 17 | 75 MERC.BENZ #11602012041307 | | | P&B | | $ 443. | $ 168. | 0 | $ | $ 100 | | $ 68. | † |
| | SAN MATEO, CALIF. | T-91 | 7398 | | 14,667/4 | $ | $ 7. | P | $ | $ 250 | | 210. | $ |
| 18 | 72 DODGE VAN #8318F2U53510 | | | P&B | | $ 443. | $ 168. | 0 | $ | $ 100 | | $ 84. | |
| | SAN MATEO, CALIF. | T-91 | 7398 | | 4600/6 | $ | $ 7. | P | $ | $ 250 | | 288. | |
| 19 | 74 CHEV. VAN #CCY334Z167106 | | | C | | $ 614. | $ 238. | 0 | $ | $ 100 | | $ 60. | $ |
| | SAN MATEO, CALIF. | T-91 | 034900 | | 5700/6 | $ | $ 7. | P | $ | $ 250 | | 176. | |
| 20 | 77 CHRYS. #HL45G7G184644 | | | P&B | | $ 443. | $ 168. | 0 | $ | $ 100 | | $ 84. | $ |
| | SAN MATEO, CALIF. | T-91 | 7398 | | 5380/2 | $ | $ 7. | P | $ | $ 250 | | 288. | $ |
| 21 | 77 DODGE B/W #DH45H7D109963 | | | P&B | | $ 334. 81. | $ 114. | 0 | $ | $ 100 | | $ 63. | $ |
| | S.WINTER HAVEN, FLA. | T-10 | 7398 | | 5800. | $ 27. | 5. | P | $ | $ 250 | | 259. | $ |

†Not Available in California    *P & B = Pleasure and Business; C = Commercial

TOTALS: $ | $ | $

**LOSS PAYEES — IDENTIFY BY UNIT OR ENTRY NO.**

| No. | Name and Address of Loss Payee | No. | | |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CONT.

A-3471-0  Printed in U. S. A.

HART001308

3

# Schedule of Automobiles and Covered Automobiles

**THE HARTFORD**

This Schedule forms a part of Policy No. **10 C 669913 M** issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date **8-25-78** 12:01 A. M., standard time.

As respects each *covered automobile* described herein, the insurance afforded applies only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all the terms of this insurance having reference thereto.

| Unit or Entry No. | Year Model Trade Name / Location (Town, State) | Body Type - Truck Size No. of Cyls, Truck Load, Gallonage Bus Seating Capacity / Rating Territory | Identification No. (I) Serial No. (S) Motor No. (M) / Rating Class | Purpose of Use | Purchased Mo./Yr. New-Used / Original Cost New or Rating Symbol | BI Liab. Prem. / Medical Payments Premium | PD Liab. Prem. PIP / Uninsured Motorist Premium | Non. Coll. Cov. (Insert Applicable Symbols) / Coll. Cov. (Insert Applicable Symbols) | Amt. or "ACV" (Actual Cash Value) / Amt. or "ACV" (Actual Cash Value) | Deductible if any / Deductible if any | Rates / Rates | Premiums (each covered automobile) | Towing and Labor Costs Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 | 78 FORD EL RANCHERO 0985 | C | | | | $ 291. / $ | $ 109. / $ | 0 / P | $ / $ | 100 / 250 | | 81. / 278. | $ |
| | S. WINTER HAVEN, FLA. | T-10 | 034900 | | 7840. | | $ 12. | | | | | | |
| | | | | | | $ / $ | $ / $ | $ / $ | $ / $ | $ / $ | | $ / $ | $ |
| | | | | | | $ / $ | $ / $ | $ / $ | $ / $ | $ / $ | | $ / $ | $ |
| | | | | | | $ / $ | $ / $ | $ / $ | $ / $ | $ / $ | | $ / $ | $ |
| | | | | | | $ / $ | $ / $ | $ / $ | $ / $ | $ / $ | | $ / $ | $ |
| | | | | | | $ / $ | $ / $ | $ / $ | $ / $ | $ / $ | | $ / $ | $ |
| | | | | | | $ / $ | $ / $ | $ / $ | $ / $ | $ / $ | | $ / $ | $ |
| | | | | | | $ / $ | $ / $ | $ / $ | $ / $ | $ / $ | | $ / $ | $ |

†Not Available in California   *P & B = Pleasure and Business; C = Commercial

**TOTALS** $ 7511. / $ 3573. ... $ 1607. / $ 221. $ ... $ 5117. / $ 297 $ 109.

LOSS PAYEES — IDENTIFY BY UNIT OR ENTRY NO.

| No. | Name and Address of Loss Payee | No. |
|---|---|---|
| | | |
| | | |
| | | |

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

A-3471-0   Printed in U. S. A.

HART001309

**COMPANY COPY**

## THE HARTFORD

10 C 669913 V

| | Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|---|
| | Quality Control | | |

This Coverage Part forms a part of Policy No........................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective.......................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to...............

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

### SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability | | |
|---|---|---|---|---|
| C — Bodily Injury Liability | $ 7917.00 | $ 500 | ,000 each person | |
| | | $ 500 | ,000 each occurrence | |
| D — Property Damage Liability | $ 3643.00 | $ 250 | ,000 each occurrence | |

### Description of Hazards

**1. Owned Automobiles**  Premium Basis — Per Automobile

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE, BUS SEATING CAPACITY) | IDENTIFICATION NO. SERIAL NO. (S) MOTOR NO. (M) | (1) TOWN AND STATE IN WHICH THE AUTOMOBILE WILL BE PRINCIPALLY GARAGED | (a) PURPOSE OF USE CLASSIFICATION | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | | | Coverage C | Coverage D |
| AS PER SCHEDULE OF AUTOMOBILES | | | | | 7511. | 3573. |
| PIP | | | | | 221. | |

**2. Hired Automobiles**  Premium Basis—Total Cost of Hire

| TYPES HIRED (b) | LOCATIONS WHERE AUTOMOBILES WILL BE PRINCIPALLY USED | PURPOSES OF USE (a) | ESTIMATED TOTAL COST OF HIRE | RATES PER $100 TOTAL COST OF HIRE COVERAGE C | COVERAGE D | | |
|---|---|---|---|---|---|---|---|
| PP C | NORTHVALE, N.J. T-10 | P&B C | IF ANY | .495 | .407 | 29. | 9. |

**3. Non-Owned Automobiles**  Premium Basis—Total Number of Employees at all Locations

Total Number of Employees at all Locations

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 300 | 6603-00 | | | | | 156. | 61. |

Form Numbers of Endorsements forming part of this Coverage Part at issue:

AL-8-1B (LIST)

| | TOTAL ADVANCE PREMIUMS | $ 7917.00 | $ 3643.00 |
|---|---|---|---|

The conditions and provisions printed on page **CAL-2** of this form are hereby referred to and made a part hereof.   8093   3201

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by......................................................
*Authorized Agent*

HART001310

(a)  P & B = Pleasure and Business;  C = Commercial
(b)  PP = Private Passenger Automobile;  C = Commercial Automobile

**Form A-3717-0  CDR**  Printed in U.S.A.  (ISO: CP-00-10)  Ed. 10-'75      **CAL-1**

**Florida Automobile Reparations Reform Act**
**(Amendatory Endorsement)**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913W** issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date .................................... 12:01 A.M., standard time at the address of the named insured as stated herein.

## SCHEDULE

| COVERAGE | LIMITS OF LIABILITY | Auto No. | PREMIUMS |
|---|---|---|---|
| Personal Injury Protection | $5,000 each person less $ _____ deductible applicable to ☐ the following **named insured** only: .............................................................................. ☐ each **named insured** and each **relative**. | 1 2 3 4 | $ $ $ $ **AS PER SCHEDULE** |
| | ☐ **Work loss** for **named insured** does not apply ☐ **Work loss** for **named insured** and **relative** does not apply ☐ Coverage reduced by Medicare Benefits for **named insured** and **relative** ☐ Coverage reduced by military benefits for **named insured** and dependent relative | | **TOTAL PREMIUM $ INCLUDED** |

The Company agrees with the **named insured**, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

## SECTION I

**PERSONAL INJURY PROTECTION**

The Company will pay, in accordance with the Florida Automobile Reparations Reform Act, as amended, to or for the benefit of the injured person:

(a) 80% of **medical expenses**, and
(b) 60% of **work loss**, and
(c) **replacement services expenses**, and
(d) funeral, burial or cremation expenses,
incurred as a result of **bodily injury**, caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

(1) the **named insured** or any **relative** while **occupying** a **motor vehicle** or, while a **pedestrian**, through being struck by a **motor vehicle**; or

(2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian**, through being struck by the **insured motor vehicle**.

**Exclusions**

This insurance does not apply:

(a) to the **named insured** or any **relative** while **occupying** a **motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

(b) to any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured**;

(c) to any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

(i) causing **bodily injury** to himself intentionally;

(ii) convicted of driving while under the influence of alcohol or narcotic drugs to the extent that his driving faculties are impaired; or

(iii) while committing a felony;

(d) to the **named insured** or **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

(e) to any **pedestrian**, other than the **named insured** or any **elative**, not a legal resident of the State of Florida;

(f) to any person, other than the **named insured**, if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Automobile Reparations Act, as amended;

(g) to any person, other than the **named insured** or any **relative**, who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

(h) to any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

**Limit of Liability; Application of Deductible; Other Insurance**

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Automobile Reparations Reform Act, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **bodily injury** as the result of any one accident shall be $5,000; provided that payment for funeral, cremation or burial expenses included in the foregoing shall in no event exceed $1,000.

Any amount payable under this insurance shall be reduced by the amount of benefits an injured person has recovered or is entitled to recover for the same elements of loss under the workmen's compensation laws of any state or the federal government or the Medicaid program.

If benefits have been received under the Florida Automobile Reparations Reform Act, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, the Company shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from the Company its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

The amount of any deductible stated in the schedule of this endorsement shall be deducted from the total amount of all sums otherwise payable by the Company with respect to all loss and expense incurred by or on behalf of each person to whom the deductible applies and who sustains **bodily injury** as the result of any one accident, and if the total amount of such loss and expense exceeds such deductible, the total limit of benefits the Company is obligated to pay shall then be the difference between such deductible amount and the applicable limit of the Company's liability.

If an entry in the schedule or declarations so indicates any amount payable under this insurance to the **named insured** or **relative** shall be reduced by any benefits payable (a) under the Federal Medicare Program, or (b) by the Federal Government to active or retired military personnel and their dependent relatives. If such benefits are not available at the time of loss the Company shall have the right to recompute and charge the appropriate premium.

**Definitions**

When used in reference to this Section:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"medical expenses"** means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

**"named insured"** means the person or organization named in the declarations of the policy and if an individual, shall include the spouse if a resident of the same household;

**"motor vehicle"** means a 4 wheel self-propelled vehicle of a type required to be registered and licensed under Florida law, which is not used as a public or livery conveyance, and which is one of the following types:

(a) a private passenger vehicle, such as a sedan, station wagon or jeep-type vehicle,

(b) a pick-up or panel truck not used primarily in the occupation, business or profession of the owner,

(c) a utility automobile designed for personal use, as a camper or motor home or for family recreational purposes but a utility automobile does not include any such automobile used primarily (1) in the occupation, profession or business of the owner or (2) for the transportation of passengers;

a "motor vehicle" does not include a vehicle owned by the State of Florida, any political subdivision or municipality thereof, or the Federal Government;

**"occupying"** means in or upon or entering into or alighting from;

**"insured motor vehicle"** means a **motor vehicle** of which the **named insured** is the **owner** and with respect to which security is required to be maintained under the Florida Automobile Reparations Reform Act, as amended, and for which a specific premium is charged;

**"relative"** means a person related to the **named insured** by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the **named insured**;

**"pedestrian"** means a person while not an occupant of any self-propelled vehicle;

**"owner"** means a person or organization who holds the legal title to a **motor vehicle**, and also includes:

(a) a debtor having the right to possession, in the event a motor vehicle is the subject of a security agreement, and

(b) a lessee having the right to possession, in the event a motor vehicle is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

(c) a lessee having the right to possession, in the event a motor vehicle is the subject of a lease without option to purchase and such

Form A-3828-1   Printed in U.S.A. (NS)

lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

**"work loss"** means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

**"replacement services expenses"** means with respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household.

**Policy Period; Territory**

The insurance under this Section applies only to accidents which occur during the policy period

(a)  in the State of Florida; and

(b)  as respects the **named insured** or a **relative**, while **occupying the insured motor vehicle** outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c)  as respects the **named insured**, while **occupying a motor vehicle** of which a **relative** is the **owner** and for which security is maintained under the Florida Automobile Reparations Reform Act, as amended, outside the State of Florida but within the United States of America, its territories or possessions or Canada.

**Conditions**

1.  **Notice.** In the event of an accident, written notice of the loss must be given to the Company or any of its authorized agents as soon as practicable.

    If any injured person or his legal representative shall institute legal action to recover damages for **bodily injury** against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such injured person or his legal representative.

2.  **Action Against the Company.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until 30 days after the required notice of accident and reasonable proof of claim has been filed with the Company.

3.  **Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld.** As soon as practicable the person making claim

shall give to the company written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the company in determining the amount due and payable. Such person shall submit to mental or physical examinations at the company's expense when and as often as the company may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination the company will not be liable for subsequent personal injury protection benefits. Whenever a person making claim is charged with

(a)  driving while under the influence of alcohol or narcotic drugs to the extent that his driving faculties are impaired, or

(b)  committing a felony

the company shall withhold benefits until at the trial level the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

4.  **Reimbursement and Subrogation.** Unless prohibited by the Florida Automobile Reparations Reform Act, as amended, and in the event of payment to or for the benefits of any injured person under this insurance:

(a)  the Company shall be reimbursed to the extent of such payment, exclusive of reasonable attorneys' fees and other reasonable expenses, out of the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made and the Company shall have a lien on such proceeds to such extent;

(b)  the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

5.  **Special Provision for Rented or Leased Vehicles.** Notwithstanding any provision of this coverage to the contrary, if a person is injured while **occupying**, or through being struck by, a **motor vehicle** rented or leased under a rental or lease agreement which does not specify otherwise in bold type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

## SECTION II

**MODIFICATION OF POLICY COVERAGES**

Any automobile medical payments insurance and any uninsured motorists insurance afforded by the policy shall be excess over any personal injury protection benefits paid or payable or which would be available but for the application of a deductible.

If automobile medical payments insurance is afforded by this policy, that

insurance shall be applicable for medical expenses incurred within one year beginning on the date all personal injury protection benefits have been exhausted or three years from the date of the Accident.

Further, medical payments coverage must allow recovery of the 20% of medical expenses not reimbursed under the Section I Coverage.

## SECTION III

**PROVISIONAL PREMIUM**

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Automobile Reparations Reform Act, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return pre-

mium previously credited or refunded to the **named insured** pursuant to Section 12 (2) (e) of the Florida Automobile Reparations Reform Act, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the **named insured** shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.............................................................................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-3828-1



HART001312

## EXCLUSION
### COMPLETED OPERATIONS AND PRODUCTS HAZARDS

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 N**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date...................................................................12:01 A. M., standard time at the address of the *named insured* as
stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE
### SMP LIABILITY INSURANCE

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply
to *bodily injury* or *property damage* included within the *Completed Operations Hazard* or the *Products Hazard*.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**

Countersigned by..............................................................................

*Authorized Agent*

The company located these documents in its
business records. At this time, the
does not certify that these documents constitute
a complete and accurate copy of the policy.

**Form L-3014-0**   Printed in U. S. A.   7-'66   (NBCU: G 304)

HART001313

**Comprehensive General Liability Insurance Coverage Part**

| Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|
| Quality Control. | | |

This Coverage Part forms a part of Policy No. .......... **10 C 669913 W** ..........issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective ..........................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to..................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

**SCHEDULE**

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| A — Bodily Injury Liability | $ 24,799.00 | $ AS ,000 each occurrence |
| | | $ PER ,000 aggregate |
| B — Property Damage Liability | $ 9,440.00 | $ AL-68-0 ,000 each occurrence |
| | | $ ,000 aggregate |

| Rating Classifications Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates B.I. | Rates P.D. | Advance Premiums B.I. | Advance Premiums P.D. |
|---|---|---|---|---|---|---|
| (a) Premises — Operations | | (a) Area (b) Frontage (c) Remuneration (d) Receipts | (a) Per 100 Sq. Ft. of Area (b) Per Linear Foot (c) Per $100 of Remun. (d) Per $100 of Receipts | | | |
| (b) Escalators | | (e) Landings | (e) Per Landing | | | |
| (c) Independent Contractors | | (f) Cost | (f) Per $100 of Cost | | | |
| (d) Completed Operations | | (g) Receipts | (g) Per $1,000 of Receipts | | | |
| (e) Products | | (h) Sales | (h) Per $1,000 of Sales | | | |
| A) AS PER EXTENSION SCHEDULES | | | | | 19,655. 3,813. 495. 723. | 7,605. 1,079. 404. 352. |
| " " " " | | | | | | |
| " " " " | | | | | | |
| " " " " | | | | | | |
| INCREASED LIMITS BASIC CHARGE | 99901 | | | | 113. | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: AL-8-1B(LIST) | TOTAL ADVANCE PREMIUMS | $24,799. | $ 9,440. |
|---|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $          1st Anniversary $          2nd Anniversary $

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by..................

....................Authorized Agent

**ATTACH FORMS ALONG THIS MARGIN BELOW THIS MARK +**

Form L-3503-1   CDR   Printed in U.S.A. (ISO: CGL 1/1/73)          CGL-1

HART001314
**COMPANY COPY**

**Extension Schedule for
CGL, OLT or MC Coverage Parts
of Casualty Insurance Policy or
SMP Policy — Section II**



**THE HARTFORD**

This schedule forms a part of Policy No. __10 C 669913 W__, and is an extension of the schedule of the_____Coverage Part(s) forming a
part thereof, issued to_____

by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another
effective date is stated herein.

Effective date_____12:01 A.M., standard time.

**RATING CLASSIFICATIONS**
Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy.

| Code No. | Premium Bases | Rates BI | PD | Advance Premiums BI | PD |
|---|---|---|---|---|---|
| <u>NEW JERSEY</u> | | | | | |
| **A) OPERATIONS** 100 FAIRWAY COURT NORTHVALE, N.J. T-00  50812 MACHINERY DEALER - NOT FARM MACHINERY | C)900,000 | 1.585 | .503 | 6/4 14,265. | 4,527. ✓ |
| 17895 ERECTION OR REPAIR OF MACHINERY | C)320,000 | .995 | .483 | 3,184. | 1,546. ✓ |
| 99982 BROAD FORM P.D. | | | | | 1,215. ✓ |
| 11111 SUPPLEMENTARY COVERAGE | | | | 1,745. | 304. ✓ |
| 80998 INCIDENTAL MALPRACTICE | | | | 68. | |
| 11111 LIQUOR LIAB.(HOST) | | | | 22. 19,284. | 7. 7,599. |
| **A) PREMISES** 75 W. FOREST AVE. ENGLEWOOD, N.J. T-15  65198 BUILDINGS OR PREMISES- BANK, MERCANTILE, MFG. OR OFFICE NOT OCCUPIED BY THE INSURED (LESSOR'S RISK ONLY) | A)10,530 | 3.196 | .050 | 4/ 337. | 5. ✓ |
| 99982 BROAD FORM P.D. | | | | | 1. ✓ |
| 11111 SUPPLEMENTARY COV. | | | | 34. 371. | - ✓ 6. |

Form L-3125-2  Printed in U.S.A. (NS)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

COMPANY COPY

| Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|
| Quality Control | | |

This Coverage Part forms a part of Policy No.........**10 C 669913 W**.........issued by THE HARTFORD INSURANCE GROUP
Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

---

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective.....................................................(at the hour stated in the policy) and forms a part of the above designated
policy issued to...........................................................................

---

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein,
agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability | |
|---|---|---|---|
| A — Bodily Injury Liability | $  84,912.00 | $  AS | ,000 each occurrence |
| | | $  PER | ,000 aggregate |
| B — Property Damage Liability | $  42,120.00 | $  AL-68 | ,000 each occurrence |
| | | $ | ,000 aggregate |

| Rating Classifications Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B. I. | P. D. | B. I. | P. D. |
| Completed Operations | | (a) Receipts | (a) Per $1,000 of Receipts | | | |
| Products | | (b) Sales | (b) Per $1,000 of Sales | | | |
| NEW JERSEY | | | | | | |
| MACHINERY INSTALLATION (VENDORS LIMITED INCLUDED) | 17901 | G)500,000 | .915 | .827 | 456. | 414. |
| BROAD FORM P.D. | 99982 | | | | | 83. |
| INDUSTRIAL MACHINERY & EQUIP. (VENDORS LIMITED INCLUDED) | 35500 | $ 18,000,000 | 4.692 | 1.927 | 84,456. | 34,686. |
| BROAD FORM P.D. | 99982 | | | | | 6,937. |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS | $ 84,912. | $ 42,120. |
|---|---|---|---|
| AL-8-1B(LIST) | | | |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $              1st Anniversary $              2nd Anniversary $

The conditions and provisions printed on page CO/PR-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by............................................

The company located these documents in its business records. At this time, the company ... a complete and accurate copy of the policy.

HART001316

*Authorized Agent*

Form L-3513-0  CDR  Printed in U.S.A.  (ISO: CO/PR 1/1/73)          CO/PR-1

ATTACH FORMS ALONG MARGIN BELOW THIS MARK +

**Extension Schedule for
CGL, OLT or MC Coverage Parts
of Casualty Insurance Policy or
SMP Policy — Section II**



**THE HARTFORD**

This schedule forms a part of Policy No. __**10 C 669913 W**__, and is an extension of the schedule of the _____Coverage Part(s) forming a part thereof, issued to_____

by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date_____12:01 A.M., standard time.

**RATING CLASSIFICATIONS**
Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy.

| Code No. | Premium Bases | Rates BI | PD | Advance Premiums BI | PD |
|---|---|---|---|---|---|
| **CALIFORNIA (T-03)** | | | | | |
| **A) OPERATIONS** | | | | | |
| 17895 ERECTION OR REPAIR OF MACHINERY | C)120,000 | 1.769 | .704 | *75* 2,122. | 845. ✓ |
| 99982 BROADFORM P.D. | | | | | 169. ✓ |
| 11111 SUPPLEMENTARY COVERAGE | | | | 212. | 51. ✓ |
| | | | | 2,334. | 1,065. |
| **A) PREMISES** 3400 THIRD AVE. FOSTER CITY, CAL. (T-12) | | | | | |
| 65121 BUILDING OR PREMISES-OFFICE | A)11,616 | 10.611 | .086 | *150* 1,233. | 10. / |
| 99982 BROAD FORM P.D. | | | | | 2. / |
| 11111 SUPPLEMENTARY COVERAGE | | | | 123. | 1. ✓ |
| ADD'L INSURED L3025 10% OF 65121 | | | | 123. | 1. ✓ |
| | | | | 1,479. | 14. |

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3125-2  Printed in U.S.A. (NS)

HART001317 COMPANY COPY

## ADDITIONAL INSURED
### (Premises Leased to the Named Insured)

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date........................................................................12:01 A. M., standard time at the address of the *named insured* as
stated herein.

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
> COMPREHENSIVE GENERAL LIABILITY INSURANCE
> MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
> OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
> STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect
to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject
to the following additional exclusions:

The insurance does not apply:
1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Premiums Property Damage Liability |
|---|---|---|---|
| 3400 THIRD AVE. FOSTER CITY, CAL. | SAN MATEO BAY BUILDING ASSOCIATES | 123.00 | 1.00 |
| | | (INCLUDED IN CALIF. EXT. SCHEDULE) | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company;  provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**

Countersigned by.................................................................................
*Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART001318

Form L-3025-0   Printed in U. S. A.   5-'67   (NBCU: G 109)

**Extension Schedule for
CGL, OLT or MC Coverage Parts
of Casualty Insurance Policy or
SMP Policy — Section II**

**THE HARTFORD**

This schedule forms a part of Policy No. **10 C 669913W**_____, and is an extension of the schedule of the_____Coverage Part(s) forming a
part thereof, issued to_____

by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another
effective date is stated herein.

Effective date_____12:01 A.M., standard time.

**RATING CLASSIFICATIONS**
Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy.

| Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|
| | | BI | PD | BI | PD |
| **ILLINOIS** | | | | | |
| A). OPERATIONS (T-01) | | | | | |
| 17895 | | | | *20* | |
| ERECTION OR REPAIR OF MACHINERY | C)25,000 | 2.285 | .583 | 571. | 146. ✓ |
| 99982 | | | | | |
| BROAD FORM P.D. | | | | | 29. ✓ |
| 11111 | | | | | |
| SUPPLEMENTARY COV. | | | | 57. | 175. ✓ |
| | | | | 628. | 350. |
| A) PREMISES | | | | | |
| 1375 E. HIGGINS RD. | | | | | |
| ELK GROVE, ILL. | | | | | |
| T-14    65121 | | | | *10* | |
| BUILDINGS OR PREMISES- OFFICE | A) 1,850 | 4.193 | .094 | 78. | 2. ✓ |
| 99982 | | | | | |
| BROAD FORM P.D. | | | | | - |
| 11111 | | | | | |
| SUPPLEMENTARY COV. | | | | 8. | - |
| ADD'L INSURED | | | | | |
| (L3025 10% OF 65121) | | | | 9. | - ✓ |
| | | | | 95. | 2. |

Form L-3125-2  Printed in U.S.A. (NS)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

COMPANY COPY

HART001319

## ADDITIONAL INSURED
(Premises Leased to the Named Insured)

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date..................................................................12:01 A. M., standard time at the address of the *named insured* as
stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect
to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject
to the following additional exclusions:

The insurance does not apply:
1.  to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2.  to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| **1375 E. HIGGENS RD. ELK GROVE, ILL.** | **JOHN G. TWIST CO.** | **9.00** | **INCL. (INCLUDED)** |
| **AND** | | | |
| **ANY PREMISES UPON WHICH THE NAMED INSURED IS REQUIRED IN A WRITTEN AGREEMENT TO PROVIDE INSURANCE ON BEHALF OF THE LESSOR & OF WHICH THE COMPANY IS NOTIFIED WITHIN THIRTY (30) DAYS OF THE EXECUTION OF SAID WRITTEN AGREEMENT.** | | **EACH SUCH PREMISES TO BE SEPARATELY & SPECIFICALLY RATED.** | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



## THE HARTFORD

Countersigned by.....................................................................................
*Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART001320

Form L-3025-0  Printed in U. S. A.  5-'67  (NBCU: G 109)

**Extension Schedule for
CGL, OLT or MC Coverage Parts
of Casualty Insurance Policy or
SMP Policy — Section II**

**THE HARTFORD**

This schedule forms a part of Policy No. **10 C 669913 W** , and is an extension of the schedule of the_____Coverage Part(s) forming a part thereof, issued to_____

by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date_____12:01 A.M., standard time.

**RATING CLASSIFICATIONS**
Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy.

| Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|
| | | BI | PD | BI | PD |
| **FLORIDA** | | | | | |
| **A) OPERATIONS (T-01)** | | | | *15* | |
| 17895 | | | | | |
| **ERECTION OR REPAIR OF MACHINERY** | C)44,000 | .995 | .724 | 438. | 319. |
| 99982 | | | | | |
| **BROAD FORM P.D.** | | | | | 64. |
| 11111 | | | | | |
| **SUPPLEMENTARY COVERAGE** | | | | 44. | 19. |
| | | | | 482. | 402. |
| **A) PREMISES** | | | | | |
| 360 - 6TH ST. S/W | | | | | |
| WINTER HAVEN, FLA. | | | | | |
| T-06  65121 | | | | *1* | |
| **BUILDINGS OR PREMISES-OFFICE** | A) 2,400 | .498 | .086 | 12. | 2. |
| 99982 | | | | | |
| **BROAD FORM P.D.** | | | | | - |
| 11111 | | | | | |
| **SUPPLEMENTARY COVERAGE** | | | | 1. | - |
| | | | | 13. | 2. |

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3125-2  Printed in U.S.A. (NS)

COMPANY COPY

| | Approved | | Und. Notes: |
|---|---|---|---|
| | Quality Control | Confidential Report | |

This Coverage Part forms a part of Policy No...........**10 C 669913 W**...........issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability | |
|---|---|---|---|
| E — Premises Medical Payments | $ 926.00 | $ 1,000 | each person |
| | | $ 10,000 | each accident |

| Description of Hazards | | Advance Premiums |
|---|---|---|
| **(a) Premises and Operations** | | |
| A) PREMISES | PERCENTAGE OF PREMISES B.I. PREM. | |
| 75 W. FOREST AVE. ENGLEWOOD, N.J. | 12.2% | 41.— |
| 3400 THIRD AVE. FOREST CITY, CAL. | 12.2% | 150. |
| 360- 6TH ST. S/W WINTER HAVEN, FLA. | 12.2% | 1. |
| 1375 EAST HIGGINS RD. ELK GROVE, ILL. | 12.2% | 10.— |
| A) OPERATIONS | PERCENTAGE OF OPERATIONS B.I. PREM. | |
| NEW JERSEY | 3.52% | 614. |
| CALIFORNIA | 3.52% | 75. |
| FLORIDA | 3.52% | 15. |
| ILLINOIS | 3.52% | 20. |
| **(b) Escalators** | | |
| **(c) Sports Activities** | | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: AL-8-1B (LIST) | TOTAL ADVANCE PREMIUM | $ 926.00 |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $      1st Anniversary $      2nd Anniversary $

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by............................................ Authorized Agent

Form L-3505-0 CDR    Printed in U.S.A.    (ISO: MP 1/1/73)      MP-1

The company located these documents in its does not certify that these documents constitute a complete and accurate copy of the policy.
HART001322

# BROAD FORM PROPERTY DAMAGE ENDORSEMENT
(Including Completed Operations)

 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No....**10 C 669913W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...........................................................Effective hour is the
same as stated in the Declarations of the Policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

~~CONTRACTUAL LIABILITY INSURANCE~~

---

**Classification:**

It is agreed that the insurance for **property damage** liability applies, subject to the following additional provisions:

A.  The exclusions relating to **property damage** to (1) property owned, occupied or used by or rented to the **insured** or in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control and (2) work performed by or on behalf of the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (y) and (z):

   (y)  to **property damage**

      (1)  to property owned or occupied by or rented to the **insured**, or, except with respect to the use of **elevators**, to property held by the **insured** for sale or entrusted to the **insured** for storage or safekeeping,

      (2)  except with respect to liability under a written sidetrack agreement or the use of **elevators** to

         (a)  property while on premises owned by or rented to the **insured** for the purpose of having operations performed on such property by or on behalf of the **insured,**

         (b)  tools or equipment while being used by the **insured** in performing his operations,

         (c)  property in the custody of the **insured** which is to be installed, erected or used in construction by the **insured,**

         (d)  that particular part of any property, not on premises owned by or rented to the **insured,**

            (i)  upon which operations are being performed by or on behalf of the **insured** at the time of the **property damage** arising out of such operations, or

            (ii)  out of which any **property damage** arises, or

            (iii)  the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the **insured;**

   (z)  with respect to the **completed operations hazard** and with respect to any classification stated above as "including completed operations", to **property damage** to work performed by the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

B.  The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **insured**, such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by................................................Authorized Agent

**Form L-3252-2**  Printed in U.S.A.  NS

HART001323

**COMPANY COPY**

## ADDITIONAL INSURED
(Vendors—Limited Form)

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913** W
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date ............................................................12:01 A. M., standard time at the address of the named insured as
stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

~~COMPREHENSIVE GENERAL LIABILITY INSURANCE~~

## COMPLETED OPERATIONS & PRODUCTS LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include any person or organization (herein referred to as "Vendor"), as an Insured,
but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following
additional provisions:

1.  The insurance with respect to the Vendor does not apply to:

    (a) any express warranty, or any distribution or sale for a purpose, unauthorized by the Named Insured

    (b) bodily injury or property damage arising out of

        (i) any act of the Vendor which changes the condition of the products,

        (ii) any failure to maintain the product in merchantable condition,

        (iii) any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make
        in the usual course of business, in connection with the distribution or sale of the products, or

        (iv) products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingre-
        dient of any other thing or substance by or for the Vendor;

    (c) bodily injury or property damage occurring within the Vendor's premises.

2.  This insurance does not apply to any person or organization, as Insured, from whom the Named Insured has acquired such products or any
    ingredient, part or container, entering into, accompanying or containing such products.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



## THE HARTFORD
### INSURANCE GROUP
HARTFORD, CONNECTICUT

Countersigned by ...............................................................
................................................Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form L-3243-0   Printed in U. S. A.   10-'63   (NBCU: G-114)

HART001324

**SUPPLEMENTARY LIABILITY ENDORSEMENT**
**PERSONAL INJURY AND ADDITIONAL INSURED (Employees)**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date................................................................12:01 A. M., standard time at the address of the *named insured*
as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

It is agreed that:

1. The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply

   a. to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

   b. to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured*, or if the *named insured* is a partnership or joint venture, any partner or member thereof.

It is further agreed that:

1. Such insurance as is afforded under Coverage A with respect to *bodily injury*, is extended to apply to *personal injury* as defined herein, subject to the following additional provisions:

   1. This insurance does not apply

      a. to liability for *personal injury* assumed by the *insured* under any contract or agreement;

      b. to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured;*

      c. to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured;*

      d. to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

      e. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

      f. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured.*

   2. When used in reference to this insurance

      a. "personal injury" means:
         1. injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory.*

      b. "personal injury offense" means:
         1. false arrest, detention or imprisonment, or malicious prosecution,
         2. libel, slander, defamation, disparagement or violation of an individual's right of privacy, or
         3. wrongful entry or eviction or other invasion of the right of private occupancy.

   3. The Limits of Liability section is amended in the following respect:

      The total liability of the company for all damages because of all *personal injury* to which this policy applies, shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

created these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



**THE HARTFORD**

Countersigned by .............................................

.............................................
Authorized Agent

HART001325

Form L-3355-1   Printed in U. S. A.   (NS)

| Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|
| Quality Control | | |

This Coverage Part forms a part of Policy No. **10 C 669913 W** issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective.................................... ......................................(at the hour stated in the policy) and forms a part of the above designated policy issued to.................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| YB — Contractual Bodily Injury Liability | $ 8,491.00 | $ AS ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ 4,212.00 | $ PER ,000 each occurrence |
| | | $ AL-68-0 ,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates B. I. | Rates P. D. | Advance Premiums B. I. | Advance Premiums P. D. |
|---|---|---|---|---|---|---|
| NEW JERSEY ALL WRITTEN AGREEMENTS | 17985 | (a) Cost (b) Sales 10% OF PRODUCTS & COMPLETED OPERATIONS HAZARD PREMIUM | (a) Per $100 of Cost (b) Per $1,000 of Sales | | 8,491. | 4,212. |

Form Numbers of Endorsements forming part of this Coverage Part at issue:
AL-8-1B

| | TOTAL ADVANCE PREMIUMS | $ 8,491. | $ 4,212. |
|---|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $         1st Anniversary $         2nd Anniversary $

The following exclusions also apply:
☐ Exclusion (p) — Products and Completed Operations    ☐ Exclusion (q)—x, c & u

**I.    COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

**COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

**Coverage YB.** *bodily injury* or

**Coverage ZB.** *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

(ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.
This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by ................................................
................................................ *Authorized Agent*

Form L-3523-0  CDR   Printed in U.S.A.   (ISO: KB 1/1/73)

KB-1

HART001326
At this time, the company does not certify that this documents constitute a true and accurate copy of the policy

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No..........**10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ..........................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

---

### - ASSAULT & BATTERY -

### IT IS AGREED THAT THE DEFINITION OF OCCURRENCE IS AMENDED BY ADDING THERETO THE FOLLOWING:-

> "BODILY INJURY OR PROPERTY DAMAGE CAUSED FOR
> THE PURPOSE OF PROTECTING PERSONS OR PROPERTY
> SHALL BE DEEMED NEITHER EXPECTED NOR INTENDED
> FROM THE STANDPOINT OF THE INSURED."

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by..........................................
                                    *Authorized Agent*

Form AL-8-1 B   Printed in U.S.A.  ISO:

HART001327

**THE HARTFORD**

Named Insured and Address

**TO C 669913W**

This endorsement forms a part of Policy No.........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

---

### - INCIDENTAL MALPRACTICE -

**IT IS AGREED THAT:-**

1. THE DEFINITION OF "BODILY INJURY" IS AMENDED TO INCLUDE INJURY ARISING OUT OF THE RENDERING OF OR FAILURE TO RENDER PROFESSIONAL SERVICES BY ANY PHYSICIAN, DENTIST OR NURSE WHILE EMPLOYED BY THE NAMED INSURED TO PROVIDE SUCH SERVICES.

2. EXCLUSION (J) DOES NOT APPLY TO INJURY TO THE EMOTIONS OR REPUTATIONS OF A PERSON ARISING OUT OF THE RENDERING OF SUCH SERVICES.

| CODE NO. | NO. OF NURSES | RATE | PREMIUM |
|---|---|---|---|
| 80998 | 4 (FULL TIME) | $6.938 | (INCLUDED IN N.J. EXT. SCHED.) |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.........................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.  ISO:

HART001328

THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No. ........................................ **10 C 669913W** { }
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### KNOWLEDGE AND NOTICE OF OCCURRENCE.

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY AN AGENT,
SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT CONSTITUTE
KNOWLEDGE TO THE INSURED UNLESS AN EXECUTIVE OFFICER OF THE
NAMED INSURED CORPORATION OR OTHER PERSONS EMPLOYED BY IT
IN A MANAGERIAL CAPACITY SHALL HAVE RECEIVED SUCH NOTICE.

IT IS AGREED THAT IF THE INSURED REPORTS AN OCCURRENCE TO
ITS WORKMEN'S COMPENSATION CARRIER WHICH DEVELOPS INTO
A LIABILITY CLAIM FAILURE TO REPORT SUCH OCCURRENCE TO THE
COMPANY AT THE TIME OF OCCURRENCE SHALL NOT BE DEEMED IN
VIOLATION OF CONDITION 4 " INSURED'S" DUTIES IN THE EVENT
OF OCCURRENCE, CLAIM OR SUIT".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by .............................................................
                                                    *Authorized Agent*

The company located these documents in its
records. At this time the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART001329

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 M**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

- LIQUOR LIABILITY HOSTS -

IT IS AGREED THAT EXCLUSION (H) OF THE COMPREHENSIVE

GENERAL LIABILITY COVERAGE PART SHALL NOT APPLY.

| CODE 70414 | F.C. | B.I. | P.D. |
|---|---|---|---|
| | | $22.00 | $7.00 |

(INCL. IN N.J. EXT. SCHEDULE)

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................
                                    *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART001330

**THE HARTFORD**

Named Insured and Address

**10 C 669913W**

This endorsement forms a part of Policy No.............................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

AUTO MEDICAL PAYMENTS, AUTO PHYSICAL DAMAGE, COMPLETED OPERATIONS
AND PRODUCTS INSURANCE
COMPREHENSIVE AUTO LIABILITY, COMPREHENSIVE GEN'L LIABILITY,
CONTRACTUAL LIABILITY, PREMISES MEDICAL PAYMENTS, PROTECTION
AGAINST UNINSURED MOTORISTS

- NOTICE OF CANCELLATION -

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THE POLICY

FOR ANY REASON OTHER THAN NON PAYMENT OF PREMIUM, THIRTY (30)

DAYS PRIOR WRITTEN NOTICE THEREOF WILL BE FURNISHED TO THE

NAMED INSURED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by.................................................................
*Authorized Agent*

**Form AL-8-1 B**   Printed in U.S.A.   ISO:

HART001331

## THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No....**10 C 669913W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

### – UNINTENTIONAL ERRORS OR OMISSIONS –

IT IS AGREED THAT FAILURE OF THE INSURED TO DISCLOSE
ALL HAZARDS EXISTING AS OF THE INCEPTION DATE OF THE
POLICY SHALL NOT PREJUDICE THE INSURED WITH RESPECT
TO THE COVERAGE AFFORDED BY THIS POLICY, PROVIDED SUCH
FAILURE OR ANY OMISSION IS NOT INTENTIONAL.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................
                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART001332

**Premium Installment**                    **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913W**
issued by THE HARTFORD INSURANCE GROUP company
designated therein, and takes effect as of the effective date of
said Policy unless another effective date is stated herein.

Effective date **8-25-78** .......................... 12:01 A. M., standard time at the address of the
named insured as stated herein.

It is hereby understood and agreed that the **ORIGINAL** ..........Premium of $ **193,590.00**
(Insert "original" or "additional" or "return")

will **BE PAYABLE IN** ...................... **FOUR** ...................installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

## SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 8-25-78 | 52,470. | 3,590. | 2,017. | | $ 58,077. |
| 2 | 10-25-78 | 43,725. | 2,992. | 1,681. | | 48,398. |
| 3 | 12-25-78 | 43,725. | 2,992. | 1,681. | | 48,398. |
| 4 | 2-25-79 | 34,980. | 2,392. | 1,345. | | 38,717. |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| TOTALS | | 174,900. | 11,966. | 6,724. | | 193,590. |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..........................................
                                    *Authorized Agent*

any located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-57-0   Printed in U.S.A.

HART001333



# Amendment — Limits of Liability
## (Single Limit)

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date...................................................................Effective hour is the
same as stated in the Declarations of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | |
|---|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE | — (Coverage Part "CAL") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |

---

## SCHEDULE

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| Bodily Injury Liability and Property Damage Liability | "CGL" | $ 1000 ,000 each occurrence |
| | "CGL" | $ 1000 ,000 aggregate — Division 1 |
| | | $ ,000 aggregate — Division 2 |
| Bodily Injury Liability and Property Damage Liability | | $ ,000 each occurrence |

**Division 1** — Applicable to damages because of *bodily injury* and *property damage* as specified in paragraph (b) in the "Limits of Liability" provision of this endorsement.

**Division 2** — Applicable to damages because of all *bodily injury* and *property damage* as stated in paragraph (c) in the "Limits of Liability" provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof is amended to read as follows:

## LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, (3) claims made or suits brought on account of *bodily injury* or *property damage* or (4) *automobiles* or *mobile equipment* to which this policy applies, the company's liability is limited as follows:

### Bodily Injury Liability and Property Damage Liability Coverage

(a) The limit of liability stated in the Schedule of this endorsement as applicable to "each *occurrence*" is the total limit of the company's liability under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of *bodily injury*, including damages for care and loss of services, and all *property damage* as the result of any one *occurrence*; provided that, with respect to any one *occurrence* for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-68-0   CDR   Printed in U.S.A. (NS)                    Page 1                    HART001334

Company Copy

(b) The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 1**" is, subject to provision (a) hereof respecting "each *occurrence*", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all *bodily injury* and *property damage* which is included in any of the numbered subparagraphs below and, in subparagraph (3), with respect either to the *bodily injury or property damage*, or to the *bodily injury* and *property damage* (within one or both the hazards identified therein) for which insurance is actually afforded under at least one such Coverage Part:

   (1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

   (2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured*, including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

   (3) all *bodily injury* and *property damage* included within the *completed operations hazard* and all *bodily injury* and *property damage* included within the *products hazard;*

   (4) all *property damage* for which liability is assumed under any contract, other than an *incidental contract*, to which the Contractual Liability Insurance, if afforded, applies.

   Such "aggregate — **Division 1**" limit shall apply separately:

      (i) to the *property damage* included in subparagraphs (1) and (2) and separately with respect to each project away from premises owned by or rented to the *named insured;*

      (ii) to the sum of the damages for all *bodily injury* and *property damage* included in subparagraph (3) and for which insurance, if any, is afforded as stated in paragraph (b) above;

      (iii) to the *property damage* included in subparagraph (4) and separately with respect to each project away from premises owned by or rented to the *named insured.*

(c) The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 2**" is, subject to provision (a) hereof respecting "each *occurrence*", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all *bodily injury* and *property damage.*

(d) For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by...................................................................................................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



**Amendment — Limits of Liability**
**(Single Limit)**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 W** issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date...........................................Effective hour is the same as stated in the Declarations of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | |
|---|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE | — (Coverage Part "CAL") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |

---

## SCHEDULE

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| Bodily Injury Liability and Property Damage Liability | COMPLETED OPERATIONS PRODUCTS AND CONTRACTUAL LIABILITY INSURANCE "K" | $250 , 000 each occurrence |
| | | $250 , 000 aggregate — Division 1 |
| | | $    , 000 aggregate — Division 2 |
| Bodily Injury Liability and Property Damage Liability | | $    , 000 each occurrence |

**Division 1** — Applicable to damages because of *bodily injury* and *property damage* as specified in paragraph (b) in the "Limits of Liability" provision of this endorsement.

**Division 2** — Applicable to damages because of all *bodily injury* and *property damage* as stated in paragraph (c) in the "Limits of Liability" provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof is amended to read as follows:

## LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, (3) claims made or suits brought on account of *bodily injury* or *property damage* or (4) *automobiles* or *mobile equipment* to which this policy applies, the company's liability is limited as follows:

### Bodily Injury Liability and Property Damage Liability Coverage

(a) The limit of liability stated in the Schedule of this endorsement as applicable to "each *occurrence*" is the total limit of the company's liability under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of *bodily injury*, including damages for care and loss of services, and all *property damage* as the result of any one *occurrence*; provided that, with respect to any one *occurrence* for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001336

Company Copy

(b) The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 1**" is, subject to provision (a) hereof respecting "each *occurrence*", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all *bodily injury* and *property damage* which is included in any of the numbered sub-paragraphs below and, in subparagraph (3), with respect either to the *bodily injury* or *property damage*, or to the *bodily injury* and *property damage* (within one or both the hazards identified therein) for which insurance is actually afforded under at least one such Coverage Part:

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured*, including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *bodily injury* and *property damage* included within the *completed operations hazard* and all *bodily injury* and *property damage* included within the *products hazard*;

(4) all *property damage* for which liability is assumed under any contract, other than an *incidental contract*, to which the Contractual Liability Insurance, if afforded, applies.

Such "aggregate — **Division 1**" limit shall apply separately:

(i) to the *property damage* included in subparagraphs (1) and (2) and separately with respect to each project away from premises owned by or rented to the *named insured*;

(ii) to the sum of the damages for all *bodily injury* and *property damage* included in subparagraph (3) and for which insurance, if any, is afforded as stated in paragraph (b) above;

(iii) to the *property damage* included in subparagraph (4) and separately with respect to each project away from premises owned by or rented to the *named insured*.

(c) The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 2**" is, subject to provision (a) hereof respecting "each *occurrence*", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all *bodily injury* and *property damage*.

(d) For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..................................................................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

ATTACH

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **30 C 669913**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Centrico Inc.
100 Fairway Court
Northvale N.J. 07647

Effective date **8-25-78** ..................... 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**Comprehensive Auto Coverage**

---

**Serial # as respects to vehicle # 22 to read SM6H100805**

ENTRY UNNECESSARY

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the...

Countersigned by ........................................................
                                    *Authorized Agent*

HART001338

Form AL-8-1 A   Printed in U.S.A.   ISO:

**Broad Form**
**Property Damage Coverage**
**(Excluding Completed Operations)**

ENTRY UNNECESSARY

ATTACH

THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No....10..C..66991.3.......
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...............8/25/78........................Effective hour is the
same as stated in the Declarations of the policy.

Centrico Inc.
100 Fairway Court
Northvale, N.J. 07647

| This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: |
| --- |
| COMPREHENSIVE GENERAL LIABILITY INSURANCE |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE |
| CONTRACTUAL LIABILITY INSURANCE |

**Classification:**

It is agreed that the insurance for *property damage* liability applies, subject to the following additional provisions:

A.  The exclusions relating to *property damage* to (1) property owned, occupied or used by or rented to the *insured* or in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control and (2) work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (w) and (x):

    (w)  to *property damage*

        (1)  to property owned or occupied or rented to the *insured*, or, except with respect to the use of *elevators,* to property held by the *insured* for sale or entrusted to the *insured* for storage or safekeeping,

        (2)  except with respect to liability under a written sidetrack agreement or the use of *elevators* to

            (a)  property while on premises owned by or rented to the *insured* for the purpose of having operations performed on such property by or on behalf of the *insured,*

            (b)  tools or equipment while being used by the *insured* in performing his operations,

            (c)  property in the custody of the *insured* which is to be installed, erected or used in construction by the *insured,*

            (d)  that particular part of any property, not on premises owned by or rented to the *insured,*

                (i)  upon which operations are being performed by or on behalf of the *insured* at the time of the *property damage* arising out of such operations, or

                (ii)  out of which any *property damage* arises, or

                (iii)  the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the *insured;*

    (x)  with respect to the *completed operations hazard* (if the insurance otherwise applies to *property damage* included within such hazard) and with respect to any classification stated above as "including completed operations", to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

B.  The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the *insured,* such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

**10% Premises- Operations P.D. Premiums**

Countersigned by....................................................
                                               *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3139-5  Printed in U.S.A.  NS

HART001339



**THE HARTFORD**

Named Insured and Address.

This endorsement forms a part of Policy No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

**Centrico Inc.**
**100 Fairway Court**
**Northvale, N.J. 07647**

Effective date ........ **8/25/78** ........................ 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### Comprehensive Auto Coverage

---

**It is agreed that the S# is amended on the following Vehicle**
**Veh # 9 to # NL45GB8B257169**
**& Veh # 11 to # 4642013393**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the original.

Countersigned by........................................................ *Authorized Agent*

HART001340

Form AL-8-1 A   Printed in U.S.A.   ISO:

HART001341
a complete and accurate copy of the policy.
does not certify that these documents constitute
Certification of Coverage — Amendment of Declarations
The company located these documents in its
business records.

DX-64-76617 PC
A/P $540.00

**DUPLICATED**

THE HARTFORD 

### Certification of Coverage — Amendment of Declarations

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date stated herein.

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J. 07647

Effective date **12/1/78**                              12:01 A. M., standard time at the address of the *named insured* as stated herein.

It is agreed that the policy is amended, with respect only to such of the following Items as are indicated by ☒:

**Item**

☐ 1. The *named insured's* NAME is amended to read ........................................................................

☐ 2. The *named insured's* ADDRESS is amended to read ..................................................................

☐ 3. CHANGE OF COVERAGE — The insurance afforded is amended as indicated by entry in the SCHEDULE of this endorsement.

☐ 4. The CLASSIFICATION for the Automobile designated herein is amended to read as follows:        ☐ 5. Automobiles DELETED — The insurance with respect to the Automobile designated herein is terminated.

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | RATING CLASSIFICATION | YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. |
|---|---|---|---|---|---|---|
| | | | | | | |

☒ 6. Automobile(s) ADDED —                                    *Purposes of Use (P and B = Pleasure and Business; C = Commercial)*

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | NO. OF CYLS. MODEL | PRINCIPALLY GARAGED IN (TOWN, STATE) | *PURPOSE OF USE | RATING CLASSIFICATION |
|---|---|---|---|---|---|---|
| 79 CHEV. | 1L6909J103174 | | | BENSONVILLE, ILL | P&B | 7398 |

| LIST PRICE | ACTUAL COST | PURCHASED MO./YR. NEW-USED | SYMBOL | LOSS PAYEE: Any loss under the Physical Damage Coverages (excluding Towing) is payable as interest may appear to the named insured and: |
|---|---|---|---|---|
| | 6145/1 | | 7 | |

If more than one automobile is insured by the policy and the amendments effected by this endorsement are not to apply to all automobiles insured by the policy such amendments apply only with respect to the following automobile(s):

SCHEDULE                              **P/R .732**

The insurance afforded for the added automobile is only with respect to such and so many of the following coverages, each as defined in the policy, as are indicated by an additional or return premium or the words "no charge" in the Premiums column. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

★(Insert X in applicable column)                    ACV *means Actual Cash Value*          PREMIUMS

| *INCLUDE | *DELETE | ★AMEND LIMITS | COVERAGES | LIMITS OF LIABILITY | | ANNUAL | ADDITIONAL | RETURN |
|---|---|---|---|---|---|---|---|---|
| X | | | Bodily Injury Liability | $ 500 ,000 each person $ 500 ,000 each occurrence | | $ 282 | $ 206 | $ |
| X | | | Medical Payments | $ each person | | $ 45 | $ 33 | $ |
| X | | | Property Damage Liability | $ 250 ,000 each occurrence | | $ 165 | $ 121 | $ |
| X | | | Uninsured Motorists | $ 10 ,000 each person $ 20 ,000 each accident | | $ 3 | $ 2 | $ |
| X | | | Comprehensive | $ ACV unless amount stated less $ 100 deductible | | $ 85 | $ 62 | $ |
| X | | | Collision | ACV less $ 500 deductible | | $ 159 | $ 116 | $ |
| | | | Fire, Lightning or Transportation | $ ACV unless amount stated | | $ | $ | $ |
| | | | Theft | $ ACV unless amount stated | | $ | $ | $ |
| | | | Combined Additional | $ ACV unless amount stated | | $ | $ | $ |
| | | | Towing | $ each disablement | | $ | $ | $ |
| | | | | | | $ | $ | $ |
| | | | | | | $ | $ | $ |
| | | | | | TOTALS | $ | | $ |
| | | | | | NET ADDITIONAL OR RETURN | $ 540 | | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated. This endorsement shall not be binding unless countersigned by a duly authorized agent of the company.

Form A-3459-0  Printed in U.S.A.

Countersigned by ........................................................

*Authorized Agent*

25-2170
A/P  $153.00

**DUPLICATED**

**THE HARTFORD**

Change, Limitation or Addition of Automobile
Change — Coverage — Amendment of Declarations

Named Insured and Address

10 C 669913W

...nt forms a part of Policy No.............
...RTFORD INSURANCE GROUP company desig-
...es effect as of the effective date stated herein.

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J. 07647

Effective date.......... 06/18/79

12:01 A. M., standard time at the address of the *named insured* as stated herein.

...agreed that the policy is amended, with respect only to such of the following Items as are indicated by ☒:

**Item**

☐ 1. The *named insured's* NAME is amended to read ...........................................................
☐ 2. The *named insured's* ADDRESS is amended to read ...........................................................
☐ 3. CHANGE OF COVERAGE — The insurance afforded is amended as indicated by entry in the SCHEDULE of this endorsement.
☐ 4. The CLASSIFICATION for the Automobile designated herein is amended to read as follows:    ☐ 5. Automobiles DELETED — The insurance with respect to the Automobile designated herein is terminated.

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | RATING CLASSIFICATION | | YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

☒ 6. Automobile(s) ADDED —          *Purposes of Use (P and B = Pleasure and Business; C = Commercial)

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | NO. OF CYLS. MODEL | PRINCIPALLY GARAGED IN (TOWN, STATE) | *PURPOSE OF USE | RATING CLASSIFICATION |
|---|---|---|---|---|---|---|
| 79 CHEV | 116 | 9B91249262 | | BENSENVILLE, ILL | P&B | 7398 |
| | | | T-15 | | | |

| LIST PRICE | ACTUAL COST | PURCHASED MO./YR. NEW-USED | SYM-BOL | LOSS PAYEE: Any loss under the Physical Damage Coverages (excluding Towing) is payable as interest may appear to the named insured and: |
|---|---|---|---|---|
| | 6,550/1 | | | |
| | | | | |

If more than one automobile is insured by the policy and the amendments effected by this endorsement are not to apply to all automobiles insured by the policy such amendments apply only with respect to the following automobile(s):

**P/R .186**

**SCHEDULE**

The insurance afforded for the added automobile is only with respect to such and so many of the following coverages, each as defined in the policy, as are indicated by an additional or return premium or the words "no charge" in the Premiums column. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

★(Insert X in applicable column)          ACV means Actual Cash Value

| ★INCLUDE | ★DELETE | ★AMEND LIMITS | COVERAGES | LIMITS OF LIABILITY | ANNUAL | ADDITIONAL | RETURN |
|---|---|---|---|---|---|---|---|
| x | | | Bodily Injury Liability | $ 500 ,000 each person | $ 282 00 | $ 52 00 | $ |
| | | | | $ 500 ,000 each occurrence | | | |
| x | | | Medical Payments | $ each person | $ 45 00 | $ 8 00 | $ |
| x | | | Property Damage Liability | $ 250 ,000 each occurrence | $ 165 00 | $ 31 00 | $ |
| | | | | $ ,000 each person | | | |
| x | | | Uninsured Motorists | $ ,000 each accident | $ 3 00 | $ 1 00 | $ |
| | | | | $ ACV unless amount stated | | | |
| x | | | Comprehensive | less $ 100 deductible | $ 104 00 | $ 19 00 | $ |
| x | | | Collision | ACV less $ 500 deductible | $ 226 00 | $ 42 00 | $ |
| | | | Fire, Lightning or Transportation | $ ACV unless amount stated | $ | $ | $ |
| | | | Theft | ACV unless amount stated | $ | $ | $ |
| | | | Combined Additional | ACV unless amount stated | $ | $ | $ |
| | | | Towing | $ each disablement | $ | $ | $ |
| | | | | | $ | $ | $ |
| | | | • | | $ | $ | $ |
| | | | TOTALS | | $ | $ | $ |
| | | | NET ADDITIONAL OR RETURN | | $ 153 00 | | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated. This endorsement shall not be binding unless countersigned by a duly authorized agent of the company.

Countersigned by.........................

The company treated these documents in its
insurance business and it represents the
a complete and accurate copy of the policy.

HART001342

*Authorized Agent*

Form A-3459-0  Printed in U.S.A.

Check ___ or Addition of Automobile
Change ___ age ___ Amendment of Declarations


THE HARTFORD

Named Insured and Address **DUPLICATED**

This endorsement forms a part of Policy No. **10 C 669913W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, a..d takes effect as of the effective date stated herein.

**CENTRICO INC.**

**NORTHVALE, N.J.**

Effective date................**1-22-79**.......................................  12:01 A. M., standard time at the address of the *named insured* as stated herein.

It is agreed that the policy is amended, with respect only to such of the following Items as are indicated by ☒:

Item
☐ 1. The *named insured's* NAME is amended to read .........................................
☐ 2. The *named insured's* ADDRESS is amended to read .........................................
☐ 3. CHANGE OF COVERAGE — The insurance afforded is amended as indicated by entry in the SCHEDULE of this endorsement.
☐ 4. The CLASSIFICATION for the Automobile designated herein is amended to read as follows:        ☐ 5. Automobiles DELETED — The insurance with respect to the Automobile designated herein is terminated.

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | RATING CLASSIFICATION | YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

☒ 6. Automobile(s) ADDED —                  *Purposes of Use (P and B = Pleasure and Business: C = Commercial)*

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | NO. OF CYLS. MODEL | PRINCIPALLY GARAGED IN (TOWN, STATE) | *PURPOSE OF USE | RATING CLASSIFICATION |
|---|---|---|---|---|---|---|
| 79 CHEV. | IMPALA | C1L6969S146330 |  | SHELBYVILLE, KY | P&B | 7398 |

| LIST PRICE | ACTUAL COST | PURCHASED MO./YR. NEW-USED | SYM-BOL |  |
|---|---|---|---|---|
| 7567 | N/1 |  |  | **LOSS PAYEE:** Any loss under the Physical Damage Coverages (excluding Towing) is payable as interest may appear to the named insured and: |

If more than one automobile is insured by the policy and the amendments effected by this endorsement are not to apply to all automobiles insured by the policy such amendments apply only with respect to the following automobile(s):

SCHEDULE    P/R .589

The insurance afforded for the added automobile is only with respect to such and so many of the following coverages, each as defined in the policy, as are indicated by an additional or return premium or the words "no charge" in the Premiums column. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

*(Insert X in applicable column)                      ACV means Actual Cash Value

| *INCLUDE | *DELETE | *AMEND LIMITS | COVERAGES | LIMITS OF LIABILITY | | ANNUAL | ADDITIONAL | RETURN |
|---|---|---|---|---|---|---|---|---|
| X |  |  | Bodily Injury Liability | $ 500 ,000 each person | | $ 167. | $ 98. | $ |
|  |  |  |  | $ 500 ,000 each occurrence | |  |  |  |
|  |  |  | Medical Payments | $ each person | | $ | $ | $ |
| X |  |  | Property Damage Liability | $ 250 ,000 each occurrence | | 94. | 55. | $ |
| X |  |  | Uninsured Motorists | $ 10 ,000 each person | | 4. | 2. | $ |
|  |  |  |  | $ 20 ,000 each accident | |  |  |  |
| X |  |  | Comprehensive | $ ACV unless amount stated less $ 100 deductible | | 93. | 55. | $ |
| X |  |  | Collision | ACV less $ 500 deductible | | 237. | 140. | $ |
|  |  |  | Fire, Lightning or Transportation | $ ACV unless amount stated | | $ | $ | $ |
|  |  |  | Theft | $ ACV unless amount stated | | $ | $ | $ |
|  |  |  | Combined Additional | $ ACV unless amount stated | | $ | $ | $ |
|  |  |  | Towing | $ each disablement | | $ | $ | $ |
| X |  |  | PIP | $ | | 13. | 8. | $ |
|  |  |  | **TOTALS** **NET ADDITIONAL OR RETURN** | | | $ | 358 | $ |

**(7% TAX INC IN B.I.)**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated. This endorsement shall not be binding unless countersigned by a duly authorized agent of the company.

The company certified these documents in its business records as true and accurate and a complete and accurate copy of the policy.

HART001343

Form A-3459-0   Printed in U.S.A.

Countersigned by............................................................

*Authorized Agent*

TOTAL A/P $475.

ange, Eliminatio.
ige of Cove        ITY INC.

29 2170

🦌 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date **4-19-79** ..................12:01 A. M., standard time
of the *named insured* as stated herein.

CENTRICO INC.

NORTHVALE, N.J.

ment modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE

IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT THE FOLLOWING
VEHICLES ARE ADDED    GARAGED NORTHVALE, N.J. T-10

| | | BI | PD | PIP | MED | UM | $100 COMP | $500 COLL |
|---|---|---|---|---|---|---|---|---|
| 79 BMW | ANNL A/P | 179. | 124. | 35. | INCL | 2. | 157. | 312. |
| 5786519 | | | | | | | | |
| $23,850 N/1 | P/R .351 | 63. | 44. | 12. | INCL | 1. | 55. | 110. |
| 7398 T-10 | | | | | | | | |
| | | | | | | | | |
| 78 BUICK | ANNL A/P | 179. | 124. | 35. | INCL | 2. | 42. | 157. |
| #4H47U8G174814 | | | | | | | | |
| $6900 N/W | P/R .351 | 63. | 44. | 12. | INCL | 1. | 15. | 55. |
| 7398 T-10 | | | | | | | | |

TOTAL A/P $475

N.J. GUARANTY FUND    $2.38

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ........................................................ Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B    Printed in U.S.A.  ISO:

HART001344



**...ection Endorsement**
**(Kentucky)**

**THE HARTFORD**

This endorsement forms a part of Policy No.............................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

**10 C 669913W**

Named Insured and Address

CENTRICO INC.

NORTHVALE, N.J.

Effective date ......................................................... 12:01 A.M., standard
time at the address of the named insured as stated herein.

**1-22-79**

## SCHEDULE

| COVERAGE | | Auto No. | PREMIUMS |
|---|---|---|---|
| PERSONAL INJURY PROTECTION | DEDUCTIBLE $ **NO** | | $ **AS PER** $ $ $ |
| | | **TOTAL PREMIUM $** | **A3459** |

The Company agrees with the **named insured**, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### Section I

**PERSONAL INJURY PROTECTION COVERAGE**

The Company will pay, in accordance with Kentucky Revised Statutes Chapter 304, Sub Title 39, personal injury protection benefits for:

(a) **medical expense,**
(b) **work loss,**
(c) **replacement services loss,**
(d) **survivor's economic loss,**
(e) **survivor's replacement services loss, and**
(f) **funeral expense**

incurred with respect to **bodily injury** sustained by an **eligible injured person** and caused by an accident arising out of the operation, maintenance or use of a **motor vehicle** as a vehicle.

**Exclusions**

This coverage does not apply:

(a) to **bodily injury** sustained by the **named insured** or any relative while **occupying** a **motor vehicle** owned by the **named insured** which is not an **insured motor vehicle**;

(b) to **bodily injury** sustained by any **relative** while **occupying** any **motor vehicle** owned by such **relative** with respect to which the security required by the Kentucky Revised Statutes Chapter 304, Sub Title 39, is not in effect;

(c) to **bodily injury** sustained by the **named insured** or any relative, who has not rejected his tort limitation pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, while **occupying** or while a **pedestrian** through being struck by, any **motor vehicle**, other than the **insured motor vehicle**, with respect to which the security required under the Kentucky Revised Statutes Chapter 304, Sub Title 39, is in effect, unless the provider of such security fails to make payment for loss within 30 days of reasonable proof of the fact and the amount of loss sustained;

(d) to **bodily injury** sustained by any person if such injury arises from his conduct within the course of a business of repairing, servicing or otherwise maintaining **motor vehicles** unless such conduct occurs off the business premises;

(e) to **bodily injury** sustained by any person arising from conduct in the course of loading or unloading any **motor vehicle** unless such conduct occurs while **occupying** such **motor vehicle**;

(f) to **bodily injury** sustained by any person other than the **named insured** or any **relative** which arises from the operation, maintenance or use of a **motor vehicle** without a good faith belief that he is legally entitled to do so;

(g) to any benefits any person would otherwise be entitled to receive hereunder for **bodily injury** intentionally caused by such person or arising out of his intentionally attempting to cause **bodily injury**, and, if any person dies as a result of intentionally causing or attempting to cause **bodily injury** to himself, his survivors are not entitled to any **survivor's economic loss** or **survivor's replacement services loss** benefits;

(h) to **bodily injury** sustained by any **pedestrian**, other than the **named insured** or any **relative**, outside the Commonwealth of Kentucky;

(i) to **bodily injury** sustained by any person, other than the **named insured** or any **relative** while **occupying** a **motor vehicle** which is regularly used in the course of the business of transporting persons or property and which is one of five or more **motor vehicles** under common ownership, or a **motor vehicle** owned by a government other than the Commonwealth of Kentucky, its political subdivisions, municipal corporations, or public agencies, if the accident occurs outside the Commonwealth of Kentucky;

(j) to **bodily injury** sustained by any person arising out of the use of any **motor vehicle** while located as a residence or premises;

(k) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(l) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

(m) to **bodily injury** sustained by any person while **occupying** a motorcycle.

**Definitions**

When used in reference to this coverage:

**"bodily injury"** means bodily harm, sickness, disease, or death;

**"eligible injured person"** means

(a) the **named insured** or any **relative** who sustains **bodily injury** while **occupying** or while a **pedestrian** through being struck by any **motor vehicle** provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an **eligible injured person**, unless basic reparation injury protection coverage has subsequently been purchased for such person under this policy, or

(b) any other person who sustains **bodily injury** while **occupying** or while a **pedestrian** through being struck by, the **insured motor vehicle**, provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an **eligible injured person**;

however, any rejection of tort limitations applicable solely to motorcycles shall not affect the status of any person as an **eligible injured person** with respect to any **motor vehicle** other than a motorcycle;

**"funeral expense"** means reasonable charges incurred for expenses in any way related to funeral, cremation or burial;

**"insured motor vehicle"** means a **motor vehicle** with respect to which:

(a) the **bodily injury** liability insurance of the policy applies and for which a specific premium is charged, and

(b) the **named insured** is required to maintain security under the provisions of Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"medical expense"** means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, and other remedial treatment and care, any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing, and any healing arts professions of a type licensed by the Commonwealth of Kentucky, provided that medical expense shall not include that portion of a charge for a room in a hospital, clinic, convalescent or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge for semi-private accommodations, unless intensive care is medically required;

**"motor vehicle"** means a vehicle of a kind registered or required to be registered under Kentucky Revised Statutes;

**"named insured"** means the person or organization named in the declarations;

**"occupying"** means in or upon, entering into or alighting from;

**"pedestrian"** is a person who is not **occupying** a **motor vehicle** at the time the injury occurs;

**"relative"** means the spouse and any person related to the **named insured** by blood, marriage or adoption including a minor in the custody of the **named insured**, spouse or such related person who is a resident of the same household as the **named insured**, whether or not temporarily residing elsewhere, but does not include any such person who is a **named insured** under any other policy providing the security under Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"replacement services loss"** means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the **eligible injured person** would have performed, not for income, but for the benefit of himself or his family if he had not been injured;

**"survivor"** means a person identified in Kentucky Revised Statutes Section 411.130 as one entitled to receive benefits by reason of the death of another person;

**"survivor's economic loss"** means loss after the **eligible injured person's** death of contributions of things of economic value to his **survivors**, not including services they would have received from the **eligible injured person** had he not suffered the fatal injury, less expenses of the **survivors** avoided by reason of **eligible injured person's** death;

**"survivor's replacement services loss"** means expenses reasonably incurred by **survivors** after the **eligible injured person's** death in obtaining ordinary and necessary services in lieu of those the **eligible injured person** would have performed for their benefit had he not suffered the fatal injury, less expenses of the **survivors** avoided by reason of the **eligible injured person's** death and not subtracted in calculating **survivor's economic loss**;

**"work loss"** means loss of income from work the **eligible injured person** would probably have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him.

**Policy Period; Territory**

This coverage applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

**Limits of Liability**

Regardless of the number of persons insured, policies or approved plans of self-insurance applicable, claims made or **insured motor vehicles** to which this coverage applies, the Company's liability for personal injury protection benefits with respect to **bodily injury** sustained by any one **eligible injured person** in any one **motor vehicle** accident shall not exceed $10,000 in the aggregate, and subject to such aggregate limit:

1. the maximum amount payable for **work loss, replacement services loss, survivor's economic loss, and survivor's replacement services loss** shall not exceed $200 per week (in the aggregate prorated for any lesser period, provided that if the **eligible injured person's** earnings or work are seasonal or irregular, the weekly limit shall be equitably adjusted or apportioned on an annual basis.

2. the maximum amount payable for **funeral expense** shall not exceed $1,000.

Any amount payable by the Company under the terms of this coverage shall be reduced by any deductible specified for this coverage in the Declarations or the Schedule of this endorsement, but only with respect to **bodily injury** sustained by the **named insured** or any **relative**, provided that, if two or more such persons sustain **bodily injury** in the same **motor vehicle** accident, such deductible applicable to all of them shall not exceed such deductible amount and such amount shall be allocated equally among them. Provided further that, a **named insured** or **relative** is entitled to receive under this coverage the difference between this deductible and a greater deductible applicable under another policy applying to personal injury protection coverage pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39.

In calculating loss or expense for which personal injury protection benefits are payable under this coverage, a reduction shall be made in the amount of:

The Company reserves the right to...
All benefits or advantages a person receives or is entitled to receive from social security and workmen's compensation, unless these benefits or advantages have not been received before personal injury protection benefits are overdue or the claim is paid;

a complete and accurate copy of the policy.

business...

does no...

HART001345

2. any income tax saving resulting from benefits or advantages received for loss of income under this coverage or from like benefits or advantages received under social security or workmen's compensation which are not considered taxable income, provided that the maximum reduction may not exceed 15% of the loss of income and shall be in lesser amount if the claimant furnishes to the Company reasonable proof of a lower value of the income tax advantage.

**Conditions**

A. **Action Against Company.** No action shall lie against the Company unless as a condition precedent thereto, there shall have been full compliance with all the terms of this coverage.

B. **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the **eligible injured person**, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each **eligible injured person** to the Company or any of its authorized agents as soon as practicable.

C. **Medical Reports; Proof of Claim.** As soon as practicable, the **eligible injured person** or someone on his behalf shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the **bodily injury**, treatment and rehabilitation received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The **eligible injured person** shall submit to the physical and mental examination by physicians selected by the Company when and as often as the Company may reasonably require.

D. **Subrogation.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of any payment under this coverage, the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

E. **Reimbursement and Trust Agreement.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of any payment to any person under this coverage:

1. the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made, and the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such **bodily injury**, his agent, his insurer or a court having jurisdiction in the matter;

2. such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such **bodily injury**;

3. such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; and

4. such person shall execute and deliver to the Company instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

F. **Non-Duplication of Benefits; Priority of Payments; Other Insurance.** No **eligible injured person** shall recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved self-insurance plans. In the event an **eligible injured person** has other similar insurance, including approved self-insurance plans, available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this coverage and such other insurance.

**Section II**

In consideration of the coverage afforded under Section I and the adjustment of applicable rates:

(a) any amount payable under the Protection Against Uninsured Motorists Coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury sustained by an eligible injured person**.

(b) any Automobile Medical Payments or Medical Expense Coverage afforded under this policy shall be excess insurance over any personal injury protection benefits paid or payable but for the application of a deductible under this or any other automobile insurance policy because of **bodily injury** sustained by an **eligible injured person**.

**Section III**

**Constitutionality Clause**

The premium for and the coverages of the policy have been established in reliance upon the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39. In the event a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, the provisions of such acts invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy and the provisions of this endorsement shall be voidable or subject to amendment at the option of the Company.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..........................................................................

Authorized Agent

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The foregoing are the provisions of the Basic Personal Injury Protection Endorsement (Kentucky). In addition thereto and pursuant to The Kentucky Insurance Department we bring to your attention the following "Notice to Policyholders":

**Notice to Policyholders**

Acceptance of the coverage described in Kentucky Revised Statutes Chapter 304, Sub Title 39, places some limitations on your right to bring suit for bodily injury. KRS 304.39-060 reads in part:

"(1) Any person who registers, operates, maintains or uses a motor vehicle on the public roadways of this commonwealth shall, as a condition of such registration, operation, maintenance or use of such motor vehicle and use of the public roadways, be deemed to have accepted the provisions of this act, and in particular those provisions which are contained in this section.

(2) (a) Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this Act are payable therefor, or that would be payable but for any deductible authorized by this Act, under any insurance policy or other method of security complying with the requirements of this Act, except to the extent noneconomic detriment qualifies under subsection (2) (b) hereof.

(b) In any action of tort brought against the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required in this Act, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of bodily injury, sickness or disease arising out of the ownership, maintenance, operation or use of such motor vehicle only in the event that the benefits which are payable for such injury as "medical expense" or which would be payable but for any exclusion or deductible authorized by this Act exceed $1,000.00, or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least $1,000.00.

(c) Tort liability is not so limited for injury to a person who is not an owner, operator, maintainer or user of a motor vehicle within subsection (1) of this section.

(4) Any person may refuse to consent to the limitations of his tort rights and liabilities as contained in this section. Such rejection must be in writing in a form to be prescribed by the department of insurance and must have been executed and filed with the department at a time prior to any motor vehicle accident for which such rejection is to apply...."

These are some of the exceptions to the limitations on your right to sue and are not intended to comprise a complete enumeration of all circumstances under which suit may be brought for bodily injury.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



2

S 6    OF N.Y. IN

A.P.
$445.00

DUPLICATED

THE HARTFORD

Change, Elimination or Addition of Automobile
Change of Coverage — Amendment of Declarations

Named Insured and Address

**10 C 669913**

This endorsement forms a part of Policy No.....................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date stated herein.

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J. 07647

Effective date................**1/5/79**...........................   12:01 A. M., standard time at the address of the *named insured* as stated herein.

It is agreed that the policy is amended, with respect only to such of the following Items as are indicated by ☒:

Item
☐ 1. The *named insured's* NAME is amended to read   ...................................................
☐ 2. The *named insured's* ADDRESS is amended to read   ...................................................
☐ 3. CHANGE OF COVERAGE — The insurance afforded is amended as indicated by entry in the SCHEDULE of this endorsement.
☐ 4. The CLASSIFICATION for the Automobile designated herein is      ☐ 5. Automobiles DELETED — The insurance with respect amended to read as follows:                                               to the Automobile designated herein is terminated.

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | RATING CLASSIFICATION | YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. |
|---|---|---|---|---|---|---|
| | | | | | | |

☒ 6. Automobile(s) ADDED —                        *Purposes of Use (P and B = Pleasure and Business: C = Commercial)*

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | NO. OF CYLS. MODEL | PRINCIPALLY GARAGED IN (TOWN, STATE) | *PURPOSE OF USE | RATING CLASSIFICATION |
|---|---|---|---|---|---|---|
| 79 DODGE | | #B11AE9X141018 | | WINTER HAVEN T-10 FLA. | C | 034900 |

| LIST PRICE | ACTUAL COST | PURCHASED MO./YR. NEW-USED | SYM-BOL | LOSS PAYEE: Any loss under the Physical Damage Coverages (excluding Towing) is payable as interest may appear to the named insured and: |
|---|---|---|---|---|
| | 6936/1 | | | |

If more than one automobile is insured by the policy and the amendments effected by this endorsement are not to apply to all automobiles insured by the policy such amendments apply only with respect to the following automobile(s):

**SCHEDULE**                                        **P/R .636**

The insurance afforded for the added automobile is only with respect to such and so many of the following coverages, each as defined in the policy, as are indicated by an additional or return premium or the words "no charge" in the Premiums column. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

★(Insert X in applicable column)                ACV means *Actual Cash Value*              PREMIUMS

| ★INCLUDE | ★DELETE | ★AMEND LIMITS | COVERAGES | LIMITS OF LIABILITY | ANNUAL | ADDITIONAL | RETURN |
|---|---|---|---|---|---|---|---|
| | | | Bodily Injury Liability | $ 500 ,000 each person | $ 291 | $ 185 | $ |
| | | | | $ 500 ,000 each occurrence | | | |
| | | | Medical Payments | $ each person | $ | $ | $ |
| | | | Property Damage Liability | $ 250 ,000 each occurrence | $ 109 | $ 69 | $ |
| | | | Uninsured Motorists | $ 10 ,000 each person | $ 12 | $ 8 | $ |
| | | | | $ 20 ,000 each accident | | | |
| | | | Comprehensive | $ ACV unless amount stated less $ 100 deductible | $ 80 | $ 51 | $ |
| | | | Collision | ACV less $ 500 deductible | $ 207 | $ 132 | $ |
| | | | Fire, Lightning or Transportation | $ ACV unless amount stated | $ | $ | $ |
| | | | Theft | $ ACV unless amount stated | $ | $ | $ |
| | | | Combined Additional | $ ACV unless amount stated | $ | $ | $ |
| | | | Towing | $ each disablement | $ | $ | $ |
| | | | | | $ | $ | $ |
| | | | | | $ | $ | $ |
| | | | TOTALS | | $ | $ | $ |
| | | | NET ADDITIONAL OR RETURN | | | $ 445 | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated. This endorsement shall not be binding unless countersigned by a duly authorized agent of the company.

The company has used these documents in its business and certify that these documents are a complete and accurate copy of the policy.

HART001347

**Form A-3459-0**   Printed in U.S.A.

Countersigned by................................................
                                                                  *Authorized Agent*

Fred S.



**THE HARTFORD**

DUPLICATED

Named Insured and Address

Centrico Inc.
100 Fairway Court
Northvale N.J. 07647

This endorsement forms a part of Policy No. **10 C 669513**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date **10-10-78** .............12:01 A. M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**Comprehensive Auto Coverage P/E .874**

---

In consideration of the above premium it is hereby understood that collision deductible
is amended to 500 ded.

| Veh #1-77 Merc | old | new | diff. | R/P 103. | |
|---|---|---|---|---|---|
| Cl 7398-T10 | 353 | 235 | 118 | R/P 103. | |
| #2-73 Pont. | | | | | |
| Cl 7398-T-10 | 132 | 88 | 44 | R/P 38. | |
| #3-73 Buick | | | | | |
| Cl 7398-T10 | 207 | 136 | 71 | R/P 62. | |
| #4-72 Dodge | 66 | 49 | 17 | R/P 15. | |
| Cl 234100-T-10 | | | | | |
| #5 66 Chev. | 66 | 49 | 17 | R/P 15. | |
| Cl 234100-T10 | | | | | |
| #6-76 Chev | 272 | 196 | 76 | R/P 66. | |
| Cl 7398-T-15 | | | | | |
| #7-76 Ford | 268 | 193 | 75 | R/P 66. | |
| Cl 7398-T-15 | | | | | |
| #8-77 Dodge | 194 | 141 | 53 | R/P 46. | |
| Cl 7398-T-15 | | | | | |
| #9-78 Dodge | 272 | 196 | 76 | R/P 66. | |
| Cl 7398-T-15 | | | | | |
| #10-77 Dodge | 194 | 140 | 54 | R/P 47. | |
| Cl 7398-T-15 | | | | | |
| #11-74 Volks | 190 | 137 | 53 | R/P 46. | |
| Cl 7398-T-15 | | | | | |

Cont.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by....................................................................
Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

AL-8-1 B   Printed in U.S.A.   ISO:

HART001348



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .............**10-10-78**.............12:01 A.M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**Comprehensive Auto Coverage P/R. 874**

| | old | new | diff. | R/P | | |
|---|---|---|---|---|---|---|
| #12-74 Audi C1-7398-T-91 | 200 | 144 | 56 | R/P | 49. | Calif |
| #13-77 Plym C1 7398-T-91 | 288 | 208 | 80 | R/P | 70. | " |
| #14-77 Plym C1-7398-T-91 | 288 | 208 | 80 | R/P | 70. | " |
| #15-77 Plym C1-7398-T-91 | 288 | 208 | 80 | R/P | 70. | " |
| #16-77 Plym C1 7398-T-91 | 340 | 208 | 132 | R/P | 115 | " |
| #17-75 Merc. C1 7398-T-91 | 210 | 228 | 18 | A/P | 16 | " |
| #18-72 Dodge C1 7398-T-91 | 288 | 115 | 173 | R/P | 151 | " |
| #19-74 Chev. C1 C34900-T-91 | 176 | 156 | 20 | R/P | 17 | " |
| #20-77 Chrys. C1 7398-T-91 | 288 | 208 | 80 | R/P | 70 | " |
| #21-77 Dodge C1 7398-T-10 | 259 | 173 | 86 | R/P | 75 | Fla |
| #22-78 Ford C1 C34900-T-10 | 278 | 208 | 70 | R/P | 61 | Fla |
| #23-78 Plym. C17398-T-91 | 337 | 244 | 93 | R/P | 81 | Calif |
| #24-78 Plym C1 7398-T-91 | 337 | 244 | 93 | R/P | 81 | " |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................................
                                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 C   Printed in U.S.A.   ISO:

HART001349

**THE HARTFORD**

1 25217C   P/R
$771.00

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

**CENTRICO INC.**

**NORTHVALLE, NJ 07647**

Effective date ....................**08 25 78**....................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE AUTO COVERAGE.**

IN CONSIDERATION OF THE ABOVE PREMIUM IT IS HEREBY
UNDERSTOOD THAT FORM A3459-0 ADDING A 78 FOR 8H48H100805
EFF 08 25 78 IS SHOWING AN A/P OF $771.00 IS ELIMINATED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ..............................................................
                                              Authorized Agent

The company located these documents in its
business records. At this time, the Company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART001350



**Automobile ... nt of Declarations**



**DUPLICATED**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No..... **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date stated herein.

Centrico Inc.
100 Fairway Court
Northvale, N.J. 07647

Effective date.......... **9/27/78** ...........................

12:01 A. M., standard time at the address of the *named
insured* as stated herein.

It is agreed that the policy is amended, with respect only to such of the following Items as are indicated by ⊠:

Item
- ☐ 1. The *named insured's* NAME is amended to read .........................................................................
- ☐ 2. The *named insured's* ADDRESS is amended to read .........................................................................
- ☐ 3. CHANGE OF COVERAGE — The insurance afforded is amended as indicated by entry in the SCHEDULE of this endorsement.
- ☐ 4. The CLASSIFICATION for the Automobile designated herein is amended to read as follows:
- ☐ 5. Automobiles DELETED — The insurance with respect to the Automobile designated herein is terminated.

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | RATING CLASSIFICATION | YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

⊠ 6. Automobile(s) ADDED —      *Purposes of Use (P and B = Pleasure and Business: C = Commercial)

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | NO. OF CYLS. MODEL | PRINCIPALLY GARAGED IN (TOWN, STATE) | *PURPOSE OF USE | RATING CLASSIFICATION |
|---|---|---|---|---|---|---|
| 78 Plym Volare | St W | #HL45H8B249603 | | Foster City Calif. | P&B | 7398 |
| | | | 9, | | | |

| LIST PRICE | ACTUAL COST | PURCHASED MO./YR. NEW-USED | SYM-BOL | LOSS PAYEE: Any loss under the Physical Damage Coverages (excluding Towing) is payable as interest may appear to the named insured and: |
|---|---|---|---|---|
| | 5900/1 | | | |

If more than one automobile is insured by the policy and the amendments effected by this endorsement are not to apply to all automobiles insured by the policy such amendments apply only with respect to the following automobile(s):

**SCHEDULE**      **P/R 909**

The insurance afforded for the added automobile is only with respect to such and so many of the following coverages, each as defined in the policy, as are indicated by an additional or return premium or the words "no charge" in the Premiums column. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

★(Insert X in applicable column)      ACV means *Actual Cash Value*      PREMIUMS

| ★INCLUDE | ★DELETE | ★AMEND LIMITS | COVERAGES | LIMITS OF LIABILITY | | ANNUAL | ADDITIONAL | RETURN |
|---|---|---|---|---|---|---|---|---|
| | | | Bodily Injury Liability | $ 500,000 each person | | | | |
| | | | | $ 500,000 each occurrence | | $ 443 | $ 403 | $ |
| | | | Medical Payments | $ each person | | $ | $ | $ |
| | | | Property Damage Liability | $ 250,000 each occurrence | | $ 168 | $ 153 | $ |
| | | | Uninsured Motorists | $ 10,000 each person | | | | |
| | | | | $ 30,000 each accident | | $ 7 | $ 6 | $ |
| | | | Comprehensive | $ ACV unless amount stated less $ 100 deductible | | $ 100 | $ 91 | $ |
| | | | Collision | ACV less $ 250 deductible | | $ 337 | $ 306 | $ |
| | | | Fire, Lightning or Transportation | $ ACV unless amount stated | | $ | $ | $ |
| | | | Theft | $ ACV unless amount stated | | $ | $ | $ |
| | | | Combined Additional | $ ACV unless amount stated | | $ | $ | $ |
| | | | Towing | $ each disablement | | $ | $ | $ |
| | | | | $ | | $ | $ | $ |
| | | | | | | $ | $ | $ |
| | | | TOTALS | | | $ | $ | $ |
| | | | NET ADDITIONAL OR RETURN | | | | 959 | $ |

The company located these documents in its business records. At this time, the company does not know whether these documents constitute

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated. This endorsement shall not be binding unless countersigned by a duly authorized agent of the company.

HART001351

Printed in U.S.A.      Countersigned by.......................................................

Addition of Automobile
Change of Coverage--Amendment of Declarations



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 669913 W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date stated herein.

Centrico Inc.
100 Fairway Court
Northvale, N.J. 07647

Effective date.................. **9/11/78** ..................   12:01 A. M., standard time at the address of the *named insured* as stated herein.

It is agreed that the policy is amended, with respect only to such of the following Items as are indicated by ☒:

**Item**

☐ 1. The *named insured's* NAME is amended to read .............................................

☐ 2. The *named insured's* ADDRESS is amended to read ..........................................

☐ 3. CHANGE OF COVERAGE — The insurance afforded is amended as indicated by entry in the SCHEDULE of this endorsement.

☐ 4. The CLASSIFICATION for the Automobile designated herein is amended to read as follows:       ☐ 5. Automobiles DELETED — The insurance with respect to the Automobile designated herein is terminated.

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | RATING CLASSIFICATION | YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

☒ 6. Automobile(s) ADDED —        *Purposes of Use (P and B = Pleasure and Business; C = Commercial)*

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | NO. OF CYLS. MODEL | PRINCIPALLY GARAGED IN (TOWN, STATE) | *PURPOSE OF USE | RATING CLASSIFICATION |
|---|---|---|---|---|---|---|
| 78 Plym Volare Stw | | #HL45H8B249622 | | Foster City Calif | P&B | 7398 |

| LIST PRICE | ACTUAL COST | PURCHASED MO./YR. NEW-USED | SYM-BOL | LOSS PAYEE: Any loss under the Physical Damage Coverages (excluding Towing) is payable as interest may appear to the named insured and: |
|---|---|---|---|---|
| | 5900/1 | | | |

If more than one automobile is insured by the policy and the amendments effected by this endorsement are not to apply to all automobiles insured by the policy such amendments apply only with respect to the following automobile(s):

SCHEDULE        P/R .953

The insurance afforded for the added automobile is only with respect to such and so many of the following coverages, each as defined in the policy, as are indicated by an additional or return premium or the words "no charge" in the Premiums column. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

★(Insert X in applicable column)        ACV *means Actual Cash Value*        PREMIUMS

| ★INCLUDE | ★DELETE | ★AMEND LIMITS | COVERAGES | LIMITS OF LIABILITY | | ANNUAL | ADDITIONAL | RETURN |
|---|---|---|---|---|---|---|---|---|
| | | | Bodily Injury Liability | $ | 500,000 each person | $ 443 | $ 422 | $ |
| | | | | $ | 500,000 each occurrence | | | |
| | | | Medical Payments | $ | each person | $ | $ | $ |
| | | | Property Damage Liability | $ | 250,000 each occurrence | $ 168 | $ 160 | $ |
| | | | | $ | 15,000 each person | | | |
| | | | Uninsured Motorists | $ | 30,000 each accident | $ 7 | $ 7 | $ |
| | | | Comprehensive | less $ 100 deductible | ACV unless amount stated | $ 100 | $ 95 | $ |
| | | | Collision | ACV less $ 250 deductible | | $ 337 | $ 321 | $ |
| | | | Fire, Lightning or Transportation | $ | ACV unless amount stated | $ | $ | $ |
| | | | Theft | $ | ACV unless amount stated | $ | $ | $ |
| | | | Combined Additional | $ | ACV unless amount stated | $ | $ | $ |
| | | | Towing | $ | each disablement | $ | $ | $ |
| | | | | | | $ | $ | $ |
| | | | | | | $ | $ | $ |
| | | | | TOTALS | | $ | $ | $ |
| | | | | NET ADDITIONAL OR RETURN | | $ 1005 | | |

The company located these documents in its files and produced them. This does not constitute admission that they are part of the policy.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated. This endorsement shall not be binding unless countersigned by a duly authorized agent of the company.

Form A 2450-0  Printed in U.S.A.

Countersigned by.................................................................

*Authorized Agent*

HART001352



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. 10 C 669913 W
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ........ 8/25/78 ......................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

Centrico Inc.
100 Fairway Court
Northvale, N.J. 07647

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

Comprehensive General Liability Insurance (L-3503-1)
Completed Operations and Products Liability Insurance (L-3513-0)

---

I t is agreed that the policy ceases to afford coverage provided by Broad Form
Property Damage (including Completed Operations) endorsement L-3252-2

| | | | | |
|---|---|---|---|---|
| New Jersey | Code 99982 | (A) Operations | Return Premium P.D. | 1,215.00 |
| New Jersey | Code 99982 | (A) Premises | Return Premium P.D. | 1.00 |
| California | Code 99982 | (A) Operations | Return Premium P.D. | 169.00 |
| California | Code 99982 | (A) Premises | Return Premium P.D. | 2.00 |
| Illinois | Code 99982 | (A) Operations | Return Premium P.D. | 29.00 |
| Florida | Code 99982 | (A) Operations | Return Premium P.D. | 64.00 |
| New Jersey | Code 99982 | (Compl Opers & Products) | Return Premium P.D. | 6,937.00 |
| | | | Total Ret. | 8,417.00 |

---

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by.................................................
_Authorized Agent_

HART001353

Form AL-8-1 B  Printed in U.S.A.  ISO:

Additional Premium 742.00

**THE HARTFORD**

Named Insured and Address

...forms a part of Policy No. **10 C 669913 W** ... ...RTFORD INSURANCE GROUP company designated therein, and ... effect as of the effective date of said policy unless another effective date is stated herein.

Centrico Inc.
100 Fairway Court
Northvale, N.J. 07647

Effective date ................**8/25/78**................12:01 A. M., standard time at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**Comprehensive General Liability Insurance (L-3503-1)**

**It is agreed that the policy is extended to afford coverage provided by**

**Broad Form Property Damage Coverage (excluding completed Operations) Endorsement L-3139-4**

| | | | | |
|------------|------------|---------------|-------------------------|--------|
| New Jersey | Code 99981 | (A) Operations | Additional Premium P.D. | 608.00 |
| New Jersey | Code 99981 | (A) Premises | Additional Premium P.D. | 1.00 |
| California | Code 99981 | (A) Operations | Additional Premium P.D. | 85.00 |
| California | Code 99981 | (A) Premises | Additional Premium P.D. | 1.00 |
| Illinois | Code 99981 | (A) Operations | Additional Premium P.D. | 15.00 |
| Florida | Code 99981 | (A) Operations | Additional Premium P.D. | 32.00 |
| | | | Total Add'l | 742.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ..................................................... *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART001354

...on of Automobile
Chan... ...ment of Declarations

 THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No. 10 C 669913 W

...SURANCE GROUP company desig-
...of the effective date stated herein.

date 8/25/78

Centrico Inc.
100 Fairway Court
Northvale, N.J. 07647

12:01 A. M., standard time at the address of the *named insured* as stated herein.

It is agreed that the policy is amended, with respect only to such of the following Items as are indicated by ☒:

**Item**

☐ 1. The *named insured's* NAME is amended to read ...........................................

☐ 2. The *named insured's* ADDRESS is amended to read ...........................................

☐ 3. CHANGE OF COVERAGE — The insurance afforded is amended as indicated by entry in the SCHEDULE of this endorsement.

☐ 4. The CLASSIFICATION for the Automobile designated herein is amended to read as follows:

☐ 5. Automobiles DELETED — The insurance with respect to the Automobile designated herein is terminated.

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | RATING CLASSIFICATION | YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. |
|---|---|---|---|---|---|---|
| | | | | | | |

☒ 6. Automobile(s) ADDED — *Purposes of Use (P and B = Pleasure and Business: C = Commercial)*

| YEAR MODEL TRADE NAME | BODY TYPE — TRUCK SIZE (TRUCK LOAD, GALLONAGE BUS SEATING CAPACITY) | IDENTIFICATION NO. | NO. OF CYLS. MODEL | PRINCIPALLY GARAGED IN (TOWN, STATE) | *PURPOSE OF USE | RATING CLASSIFICATION |
|---|---|---|---|---|---|---|
| 78 Ford Plu | # 8H48H100805 | | | Winter Haven Fla T-10 | C | 034900 |

| LIST PRICE | ACTUAL COST | PURCHASED MO./YR. NEW-USED | SYM-BOL | LOSS PAYEE: Any loss under the Physical Damage Coverages (excluding Towing) is payable as interest may appear to the named insured and: |
|---|---|---|---|---|
| | 7840/1 | | | |

If more than one automobile is insured by the policy and the amendments effected by this endorsement are not to apply to all automobiles insured by the policy such amendments apply only with respect to the following automobile(s):

## SCHEDULE

The insurance afforded for the added automobile is only with respect to such and so many of the following coverages, each as defined in the policy, as are indicated by an additional or return premium or the words "no charge" in the Premiums column. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

★(Insert X in applicable column) — ACV means Actual Cash Value — PREMIUMS

| *INCLUDE | *DELETE | ★AMEND LIMITS | COVERAGES | LIMITS OF LIABILITY | | ANNUAL | ADDITIONAL | RETURN |
|---|---|---|---|---|---|---|---|---|
| | | | Bodily Injury Liability | $ 500 ,000 each person | | | | $ |
| | | | | $ 500 ,000 each occurrence | | $ 291 | $ 291 | $ |
| | | | Medical Payments | $ each person | | $ | $ | $ |
| | | | Property Damage Liability | $ 250 ,000 each occurrence | | $ 109 | $ 109 | $ |
| | | | Uninsured Motorists | $ 10 ,000 each person | | | | |
| | | | | $ 20 ,000 each accident | | $ 12 | $ 12 | $ |
| | | | Comprehensive | $ ACV unless amount stated less $ 100 deductible | | $ 81 | $ 81 | $ |
| | | | Collision | ACV less $ 250 deductible | | $ 278 | $ 278 | $ |
| | | | Fire, Lightning or Transportation | $ ACV unless amount stated | | $ | $ | $ |
| | | | Theft | $ ACV unless amount stated | | $ | $ | $ |
| | | | Combined Additional | $ ACV unless amount stated | | $ | $ | $ |
| | | | Towing | $ each disablement | | $ | $ | $ |
| | | | | | | $ | $ | $ |
| | | | TOTALS | | | $ | $ | $ |
| | | | NET ADDITIONAL OR RETURN | | | | $ 771 | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated. This endorsement shall not be binding unless countersigned by a duly authorized agent of the company.

The company located these documents in its business records. Archiving alone, the company does not certify that these declarations constitute the policy.

HART001355

Form A-3459-0   Printed in U.S.A.

Countersigned by ...........................................
...d Agent
Au...

**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

## NOTICE OF REINSTATEMENT

**BRANCH OR SERVICE OFFICE
OR
GENERAL AGENT'S COPY.**

CONTRICO INC.
100 FAIRWAY COURT
NORTHVALE N.J. 07647

Date.....**NOV. 14**..............................19..**78**.

You are hereby notified that Policy No.....**10C 669913**.....issued to....**ABOVE**...............................,

which was cancelled by Notice of Cancellation date...........**NOV. 17**...............................19.....**78**, is hereby reinstated as

of the............**17TH**.......................day of.....**NOV.**.....................19..**78**., at.....**12:01 A.** M.

Agent or Broker

.............................................................
*Authorized Representative*

FRED S. JAMES  252170

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.
HART001356

THE HARTFORD
INSURANCE GROUP
HARTFORD, CONNECTICUT

## NOTICE OF REINSTATEMENT

**DEPARTMENTAL OFFICE
COPY**

┌                                      ┐
CONTRICO INC.
100 FAIRWAY COURT
NORTHVALE N.J. 07647                    Date....**NOV. 14**..............................19...**78**.
└                                      ┘

You are hereby notified that Policy No....**10C 669913**.......issued to....**ABOVE**.................................,

which was cancelled by Notice of Cancellation date.........**NOV. 17**.............................19....**78**, is hereby reinstated as

of the..........**17TH**....................day of.....**NOV.**.......................19..**78**., at....**12:01 A.** M.

Agent or Broker

..................................................
*Authorized Representative*

┌                                      ┐

**FRED S. JAMES   252170**

└                                      ┐

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.
HART001357

Form G-2749-2   Printed in U. S. A.   1-'72

**THE HARTFORD**

| 10C 669913 | DATE OF CANCELLATION OR POLICY EXPIRATION DATE<br>12:01 A.M., standard time at the address of the Named Insured as stated in the<br>policy    November 17, 1978 | MAILING DATE<br>11/2/78 |
|---|---|---|

G.R.

| INSURANCE<br>COMPANY<br>(Herein<br>called the<br>Company) | Hartford Acc & Ind Co<br>123 William Street<br>New York, New York | Named Insured and Address<br>Centrico Inc<br>100 Fairway Court<br>Northvale New Jersey    07647 |
|---|---|---|

Loss Payee's Name and Address

Producer's Name and Address
Fred S James
252170

Non Payment of Balance on Pol C667308

(Applicable item marked ☒)

☒ The above numbered policy, issued to the Named Insured by the Company named herein, is cancelled as of the Effective Date of Cancellation stated above. No endorsement or continuation certificate and no act of the Company, the Named Insured, or any agent of either shall extend this policy to apply after said Date unless this cancellation is specifically rescinded by the Company and the policy is thereby specifically reinstated.

☐ As your agent has probably informed you, your above numbered policy will not be renewed in this Company beyond the Policy Expiration Date stated above and will terminate on said Date. We suggest that you contact your agent in order to arrange for replacement insurance as of said Expiration Date so that there will be no interruption in your insurance protection.

The company located these documents in its
a complete and accurate copy of the policy.

HART001358

**Form A-3084-1**   Printed in U.S.A.

**LOSS PAYEE'S COPY**

**THE HARTFORD**

| POLICY NO. | EFFECTIVE DATE OF CANCELLATION OR POLICY EXPIRATION DATE 12:01 A.M., standard time at the address of the Named Insured as stated in the policy | MAILING DATE |
|---|---|---|
| 10C 669913 | November 17, 1978 | 11/2/78 |

G.R.

INSURANCE
COMPANY
(Herein
called the
Company)

Hartford Acc & Ind Co
123 William Street
New York, New York

Named Insured and Address

Centrico Inc
100 Fairway Court
Northvale New Jersey      07647

Loss Payee's Name and Address

Producer's Name and Address

Fred S James
252170

(Applicable item marked ☒)      Non Payment of Balance on Pol C667308

☒ The above numbered policy, issued to the Named Insured by the Company named herein, is cancelled as of the Effective Date of Cancellation stated above. No endorsement or continuation certificate and no act of the Company, the Named Insured, or any agent of either shall extend this policy to apply after said Date unless this cancellation is specifically rescinded by the Company and the policy is thereby specifically reinstated.

☐ As your agent has probably informed you, your above numbered policy will not be renewed in this Company beyond the Policy Expiration Date stated above and will terminate on said Date. We suggest that you contact your agent in order to arrange for replacement insurance as of said Expiration Date so that there will be no interruption in your insurance protection.

Reason(s) For Cancellation or Non-Renewal

You are hereby notified that with respect to automobile liability insurance on private passenger automobiles only:

Cancellation or Non-Renewal of the above-numbered policy is for the reason(s) indicated by specific entry herein (and correspondingly identified below for Cancellation Reasons or on the back of this Notice for Non-Renewal Reasons).

| Reason No. |
|---|
| 1 |

Additional information regarding the reason(s)_____
Non Payment of Balance on Pol C667308
_____
_____
_____

_____
Authorized Representative

Automobile Insurance Plan

Unless this termination is solely for non-payment of premium, the provisions of the New Jersey statutes require that you be advised that liability limits sufficient to meet the financial responsibility requirements of the state may be available through the New Jersey Automobile Insurance Plan.

**REASONS FOR CANCELLATION**

(See above for Applicable Reason Number)

1. The Named Insured failed to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof, whether payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit.

2. The driver's license of the Named Insured or of any other operator who either resides in the same household or customarily operates an automobile insured under this policy has been under suspension or revocation during the policy period.

(See other side for the Reasons For Non-Renewal)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-3084-1   Printed in U.S.A.

REASONS FOR NON-RENE

Sec. 11:3 - 8.1 N.J. Administrative Code

(See front of this form for Applicable Reason Number)

1. Accident involvement: The named insured or any operator of an automobile resident in the same household who customarily operates the automobile or any other operator who customarily operates the automobile has been involved during the 36 months period ended 90 days prior to the expiration of the current policy in

   i. More than one bodily injury accident if there is one car in the household or an average of more than one accident for all cars in the household, provided a loss payment has been made or a loss reserve has been established for such accidents other than a payment or reserve for the personal injury protection benefits, or

   ii. More than one accident involving damage to any property including his own of $200.00 or more for which a payment was made or a loss reserve was established if there is one car in the household, or an average of more than one such accident for all cars in the household, provided that loss payments or reserves under the comprehensive physical damage coverage shall not be counted, or

   iii. A combination of more than one such bodily injury or property damage accident, or

   iv. If the named insured or anyone customarily operating the automobile has been involved in more than two such accidents regardless of the number of cars in the household.

2. Exceptions: Accidents under i to iv. above shall not be counted if the accident occurred under the following circumstances:

   i. Accident involved a claim or payment only under the Personal Injury Protection Coverage;

   ii. Automobile lawfully parked (an automobile rolling from a parked position shall not be considered as lawfully parked, but shall be considered as the operation of the last operator);

   iii. Named insured or other operator residing in the same household, reimbursed by, or on behalf of, a person responsible for the accident or has judgment against such persons;

   iv. Automobile of the named insured or other operator resident in the same household struck in rear by another vehicle, and the operator has not been convicted of a moving traffic violation in connection with the accident;

   v. Operator of the other automobile involved in such accident was convicted of a moving traffic violation and the named insured or other operator resident in the same household was not convicted of a moving traffic violation in connection therewith;

   vi. Automobile operated by named insured or other operator resident in the same household is damaged as a result of contact with a "hit and run" driver, if the accident was reported to legal authority within a reasonable time thereafter;

   vii. Accidents involving damage by contact with animals or fowl.

3. Convictions concerning motor vehicle law: The named insured or any operator of an automobile resident in the same household who customarily operates the automobile or any other operator who customarily operates the automobile

   i. Has been convicted, entered a plea of guilty or nolo contendere, forfeited bail bond or other security for any one of the following motor vehicle law violations during the 36 months ended 90 days prior to the expiration date of the current policy:

      (1) Driving while intoxicated or under the influence of drugs;

      (2) Leaving the scene of an accident;

      (3) Criminal negligence or assault arising out of the operation of a motor vehicle;

      (4) Driving while license is suspended or revoked.

   ii. Has been convicted, entered a plea of guilty or nolo contendere, or forfeited bail bond or other security for other moving traffic violations during the 36 months period ended 90 days prior to the expiration of the current policy which result in the accumulation of an average of nine points or more as defined in the New Jersey Motor Vehicle Law per car in the household or which result in an accumulation of nine or more points for any one such operator, provided that any operator who has been involved in such motor vehicle law violations continues to be an operator of the automobile at the time of renewal.

4. Convictions other than motor vehicle laws: The named insured or anyone customarily operating the automobile is convicted, entered a plea of guilty or nolo contendere, forfeited bail bond or other security for obtaining or attempting to obtain from any other person, insurance company or the Unsatisfied Claim and Judgment Fund any money or any other thing of value by falsely or fraudulently representing that such person is entitled to such consideration under the automobile insurance policy or falsely and fraudulently making statements or presenting documentation in order to obtain such consideration or by cooperating , conspiring or otherwise acting in concert with any person seeking to obtain or attempting to obtain falsely or fraudulently such consideration.

5. Use of the automobile in professional racing.

6. Physical or mental impairment of the named insured or anyone customarily operating the automobile which adversely affects the ability to operate the automobile safely, unless a physical disability is compensated for.

7. Refusal to submit to a medical examination at company expense where there is reason for the company to doubt an operator's ability to operate the automobile safely.

8. Addition of an operator of the automobile during the policy term or for the new policy term with respect to whom any of the above causes for nonrenewal would apply.

9. In the case of companies which limit their writing to members of a church, profession or occupation or similar group, loss of the qualification for such group by the owner of the automobile. In such case an additional 12 months of nonrenewal notice shall be given. Termination of membership in an automobile or travel club shall not fall under this provision.

10. Failure by an insured under the policy to comply with the cooperation or subrogation clause of the policy, subject to reasonable rules established by the Commissioner.

11. "Request by producer of record not to renew policy, provided such request is accompanied by a true statement by the producer that he has replaced like coverage at approved rates in the voluntary market with an admitted carrier specifying the name of the carrier; provided also that the carrier has advised the insured in writing of his right to renewal in the same company before obtaining the insured's consent to transfer and of the insured's right to reinsure if he or she is cancelled by the new carrier for reasons other than nonpayment or suspension or revocation of registration or driver's license. The producer's request for nonrenewal shall be made no later than 90 days prior to the expiration of the policy and a copy thereof shall be sent by the producer to the named insured. A nonrenewal based on such request shall be invalid and the company shall renew the policy at the request of the insured through another active agent or directly if the replacement policy is cancelled by the carrier for any reason other than the reasons allowed for cancellation by N.J.S.A. 29C-7. (Nonpayment of premium or suspension or revocation of registration or driver's license)

(f) Failure by a terminated agent to request renewal during the period of nine months from the effective date of termination as provided in N.J.S.A. 17:22-6.14(a) shall be construed as request not to renew in the context of this regulation.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-3084-1   Printed in U.S.A.

HART001360

# CASUALTY INSURANCE POLICY

**THE HARTFORD**

The member company of **THE HARTFORD INSURANCE GROUP** designated on the Declarations page as the Insurer (a stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the *named insured* as follows:

## COVERAGE

Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the *insured* in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy,

and the cost of bail bonds required of the *insured* because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the *insured* for first aid to others at the time of an accident, for *bodily injury* to which this policy applies;

(d) reasonable expenses incurred by the *insured* at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

*"automobile"* means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include *mobile equipment;*

*"bodily injury"* means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

*"collapse hazard"* includes "structural property damage" as defined herein and *property damage* to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The *collapse hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard* or the *underground property damage hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract;*

*"completed operations hazard"* includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured*. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

Case 2:20-cv-09741-BRM-SDA Document 63-33 Filed 11/18/22 Page 85 of 612 PageID: 5540

The *completed operations hazard* does not include *bodily injury* or *property damage* arising out of

(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

*"elevator"* means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an *automobile* servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

*"explosion hazard"* includes *property damage* arising out of blasting or explosion. The *explosion hazard* does not include *property damage* (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the *named insured* by independent contractors, or (3) included within the *completed operations hazard* or the *underground property damage hazard*, or (4) for which liability is assumed by the *insured* under an *incidental contract*;

*"incidental contract"* means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) *elevator* maintenance agreement;

*"insured"* means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

*"mobile equipment"* means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the

*named insured*, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed for or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

*"named insured"* means the person or organization named in Item 1. of the declarations of this policy;

*"named insured's products"* means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

*"occurrence"* means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*;

*"policy territory"* means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the *bodily injury* or *property damage* does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of *bodily injury* or *property damage* arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

*"products hazard"* includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others;

*"property damage"* means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period;

*"underground property damage hazard"* includes underground *property damage* as defined herein and *properly damage* to any other property at any time resulting therefrom. "Underground property damage" means *property damage* to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The *underground property damage hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract*.

## DESCRIPTION OF TERMS USED AS PREMIUM BASES

When used as a premium basis for:

(a) Comprehensive General Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance, *"admissions"* means the total number of persons, other than employees of the *named insured*, admitted to the event covered by the insurance or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(b) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance; Owners' and Contractors' Protective Liability Insurance, *"cost"* means the total cost to the *named insured* with respect to operations performed for the *named insured* during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(c) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance or Completed Operations and Products Liability Insurance, *"receipts"* means the gross amount of money charged by the *named insured* for such operations during the policy period or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

(d) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance which includes coverage for structural alterations, new construction and demolition operations, *"remuneration"* means the entire remuneration earned during the policy period by proprietors and by all employees of the *named insured*, other than chauffeurs (except operators of *mobile equipment*) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

HART001362

Case 2:20-cv-00741-BRM-SDA    Document 63-33    Filed 11/18/22    Page 86 of 612 PageID: 5508

(e) Comprehensive General Liability Insurance or Completed Operations and Products Liability Insurance, **"sales"** means the gross amount of money charged by the **named insured** or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the **named insured** and such others collect as a separate item and remit directly to a governmental division;

(f) Contractual Liability Insurance, **"cost"** means the total cost to any indemnitee, with respect to any contract which is insured, of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or the subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(g) Garage Insurance, **"remuneration"** means (a) the entire remuneration earned during the policy period by each Class A employee and each Class C employee of the **named insured**, subject to an average weekly maximum of $100, and (b) the remuneration of each Class B person at a fixed amount of $2,000 per annum with respect to Dealer Risks (Hazard 1) or $5,200 per annum with respect to Non-Dealer Risks (Hazard 2)

    **"Class A"** means all clerical office employees

    **"Class B"** means all proprietors and officers active in the business, and inactive proprietors or officers (other than an inactive proprietor or officer who is a spouse of an active proprietor or officer) who customarily drive an **automobile**

managers and chauffeurs

    **"Class C"** means all other employees;

(h) Comprehensive Automobile Liability Insurance,

(1) **"cost of hire"** means the amount incurred for (a) the hire of **automobiles**, including the entire remuneration of each employee of the **named insured** engaged in the operation of such **automobiles** subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of **"cost of hire"** shall be 5% of the applicable **hired automobile** rates, provided the owner of such **hired automobile** has purchased **automobile** Bodily Injury Liability and Property Damage Liability insurance covering the interest of the **named insured** on a direct primary basis as respects such **automobile** and submits evidence of such insurance to the **named insured;**

(2) **"Class 1 persons"** means the following persons, provided their usual duties in the business of the **named insured** include the use of **non-owned automobiles:** (a) all employees, including officers, of the **named insured** compensated for the use of such **automobiles** by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the **named insured;**

(3) **"Class 2 employees"** means all employees, including officers, of the **named insured**, not included in Class 1 persons.

# NUCLEAR ENERGY LIABILITY EXCLUSION

This exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMERS COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. The policy does not apply:

  A. Under any Liability Coverage, to **bodily injury** or **property damage**

    (1) with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

  C. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

    (1) the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (b) has been discharged or dispersed therefrom;

    (2) the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

    (3) the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear**

**facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

II. As used in this exclusion:

**"hazardous properties"** include radioactive, toxic or explosive properties;

**"nuclear material"** means **source material**, **special nuclear material** or **byproduct material;**

**"source material"**, **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

**"waste"** means any waste material (1) containing **byproduct material** and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

**"nuclear facility"** means

(a) any **nuclear reactor**,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,

(c) any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**"property damage"** includes all forms of radioactive contamination of property.

The companies that wrote these documents were business insurance company does not constitute a complete and accurate copy of the policy.

Form 8117    3    HART001363

# CONDITIONS

**1. Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured*, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the *named insured*.

The *named insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

**2. Inspection and Audit** The company shall be permitted but not obligated to inspect the *named insured's* property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *named insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the *named insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for *bodily injury* liability or for *property damage* liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**4. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

**5. Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the *insured* to determine the *insured's* liability, nor shall the company be impleaded by the *insured* or his legal representative. Bankruptcy or insolvency of the *insured* or of the *insured's* estate shall not relieve the company of any of its obligations hereunder.

**6. Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights.

**8. Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

**9. Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the *named insured* shall die, such insurance as is afforded by this policy shall apply (1) to the *named insured's* legal representative, as the *named insured*, but only while acting within the scope of his duties as such, and (2) with respect to the property of the *named insured*, to the person having proper temporary custody thereof, as *insured*, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

**11. Cancellation** This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing.

If the *named insured* cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12. Declarations** By acceptance of this policy, the *named insured* agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its President and a Secretary, but the same shall not be binding unless countersigned on the declarations page by a duly authorized agent of the company.

Michael S. Wilder, *Secretary*

President R. Salm, *President*

Downloaded from the Hartford Insurance's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the company's business records.

HART001364

Form A117   Printed in U. S. A.   (ISO: AG-00-01   Rd 1-'73)

4

**Limits of Liability**

The limits stated in paragraphs (a), (b) and (c) under BASIC PERSONAL INJURY PROTECTION INSURANCE are the total limits of the Company's liability under this Insuring Agreement per injured person as the result of any one accident, regardless of the number of insured automobiles to which this insurance applies.

Any amount payable to or for the benefit of an injured person under this insurance may be reduced by:

    (1)  any amount paid or payable to such injured person under the workmen's compensation laws of any State or the Federal Government;

    (2)  any amount, received by or on behalf of such injured person from any third person who is or may be liable in tort therefor or from such third person's agent or insurer, to the extent that such amount would produce a duplication of payment or reimbursement for any loss or expense covered under this insurance; and

    (3)  the amount of any similar automobile medical, income continuation, loss of services or survivor's benefits available to the injured person who is injured while occupying, or through being struck by a motor vehicle not insured for ILLINOIS EXTENDED PERSONAL INJURY PROTECTION.

## CONDITIONS

The following conditions apply to all Provisions of this endorsement except where otherwise noted:

    (1)  **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the injured persons, and also reasonably obtainable information respecting the time, place and circumstances of the accident, must be given by or on behalf of the person who sustains injury to the Company or one of its authorized agents as soon as practical. If any injured person or his legal representative institutes legal action to recover damages for bodily injury against a third party, a copy of the summons and complaint or other process served in connection with such legal action must be forwarded as soon as practical to the Company by such injured person or his legal representative.

    (2)  **Medical Reports; Proof of Claim.** As soon as practical the injured person, or someone on his behalf, shall give the Company written proof of claim, and shall, upon each reasonable request from the Company, execute authorization to enable the Company to obtain medical reports, copies of records and loss of earnings information. The injured person must submit to physical examinations by physicians selected by the Company whenever the Company may reasonably require. A copy of any medical report must be forwarded to the injured person. The Company may require that the injured person, as a condition for receiving income continuation payments, furnish the Company reasonable medical proof of his inability to work.

    (3)  **Prompt Payments.** Payments to be made under BASIC EXTENDED PERSONAL INJURY PROTECTION must be made promptly after valid proof of loss has been submitted to the Company. Payments must be made periodically on a monthly basis as expenses are incurred. Payments for any period must be paid within 30 days after the Company has received reasonable proof of the fact and amount of expenses incurred during that period. If reasonable proof is not supplied as to the entire claim the amount supported by reasonable proof must be paid within 30 days after such proof is received by the Company. Any part or all of the remainder of the claim that is later supported by reasonable proof must be paid within 30 days after such proof is received by the Company.

    (4)  **Action Against the Company.** No action may lie against the Company unless, as a condition precedent thereto, there has been full compliance with all the terms of this coverage.

    (5)  **Policy Period and Territory.** This insurance applies only to accidents which occur on or after January 1, 1972, during the policy period and, except as otherwise provided under the definition of "injured person" herein, within the United States of America, its territories or possessions or Canada.

    (6)  **Subrogation.** In the event of any payment under this coverage, the Company is subrogated to the rights of the person to or for whom such payments were made, to the extent of such payments, and such person must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

    (7)  **Trust Agreement.** In the event of any payment under this coverage:

        (a)  the Company is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person or organization legally responsible for the bodily injury because of which such payment is made, to the extent the damages recovered include the amount of any payment so made;

        (b)  the injured person shall hold in trust for the benefit of the Company all rights of recovery which he has against such other person or organization because of any payment so made which is the subject of claim made hereunder;

        (c)  the injured person shall do whatever is necessary to secure the rights of the Company;

        (d)  if requested in writing by the Company, the injured person shall take, through any representative designated by the Company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of the injured person;

        (e)  the injured person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

    (8)  **Other Insurance.** No person may recover benefits prescribed by law and afforded under this coverage from more than one policy or company on a duplicate basis. The insurance afforded shall be primary under BASIC PERSONAL INJURY PROTECTION benefits are available to the injured person as the result of such person being struck by an automobile with respect to which a specific premium charge for BASIC PERSONAL INJURY PROTECTION has been made under another policy or as the result of such person being injured while occupying such an automobile. In such an event, this insurance shall not apply. Subject to the foregoing, the insurance afforded shall also be primary as respects a relative injured while occupying or being struck by a motor vehicle for which benefits are not afforded unless BASIC PERSONAL INJURY PROTECTION benefits are available to the relative under a policy under which the relative is a named insured, in which event, this insurance shall not apply. However, the insurance afforded shall be primary for a relative when the relative is injured in an automobile described in the policy as an insured automobile. Regardless of the number of automobiles insured for such benefits, whether in one or more policies, whether written by the same or different companies, and regardless of the number of applicable policies affording such benefits to any one injured person, in no event shall the total benefits payable to such injured person as the result of any one accident exceed the total amount of BASIC PERSONAL INJURY PROTECTION benefits provided under this insurance.

## EXCESS INSURANCE

It is agreed that any automobile medical or accidental disability coverage shall be excess over any Basic or Excess benefits available under Illinois Extended Personal Injury Protection.

## PROTECTION AGAINST UNINSURED MOTORISTS COVERAGE

It is agreed that, in accordance with Section 606 of Article XXXV, Illinois Insurance Code, any amount payable to an injured person under the Protection Against Uninsured Motorists Coverage shall be reduced by the amount of any benefits paid to or on behalf of such injured person under any Illinois Extended Personal Injury Protection.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001365

    (4)  by operating a motor vehicle upon a bet or wager or in a race;

    (5)  while seeking to elude lawful apprehension or arrest by a police officer;

    (6)  while operating or riding in a vehicle known to him to be stolen; or

    (7)  while in the commission of a felony;

(b)  to the named insured or any relative while occupying any automobile owned by the named insured or furnished for the named insured's regular use and not insured for automobile bodily injury liability;

(c)  to a relative while occupying any automobile owned by such relative or furnished for the relative's regular use and not insured for automobile bodily injury liability;

(d)  to any direct or indirect loss or interest of, or for services or benefits provided or furnished by, the United States of America or any of its agencies coincident to a contract of employment or of military enlistment, duty or service;

(e)  to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

(f)  to any person who sustains bodily injury due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing.

U

'orm A-2766-0 TERM   Printed in U. S. A.   11-'71

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001366

# New Jersey Basic
# Personal Injury Protection

 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No.
Issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date                    12:01 A. M., standard time
at the address of the named insured as stated herein.

## SCHEDULE

| COVERAGE | Auto No. | PREMIUMS |
|---|---|---|
| | | $ |
| | | $ |
| BASIC PERSONAL INJURY PROTECTION | | $ |
| | | $ |
| | | $ |
| **TOTAL PREMIUM $** | | |

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in **bold face**, other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions"**.

The Company agrees with the **named insured,** subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

HART001367

## SECTION I

### Basic Personal Injury Protection

The Company will pay basic personal injury protection benefits consisting of

   (a) medical expense benefits,
   (b) income continuation benefits,
   (c) essential services benefits,
   (d) survivor benefits, and
   (e) funeral expense benefits

with respect to bodily injury sustained by an **eligible injured person**, caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

### Exclusions

The insurance under this endorsement does not apply:

   (a) to bodily injury to a person whose conduct contributed to the injury in any of the following ways:

      (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

      (2) while acting with specific intent to cause injury or damage to himself or others;

   (b) to bodily injury to the **named insured** or any **relative** of the **named insured** sustained while occupying, using or entering into or alighting from a **private passenger automobile** which is not an **insured automobile** under this policy, if he is required to maintain automobile liability insurance coverage with respect to the automobile under the New Jersey Automobile Reparation Reform Act;

   (c) to bodily injury to any person, other than the **named insured** or a **relative** of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey;

   (d) to bodily injury arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

   (e) to bodily injury due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

   (f) to bodily injury resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

### Definitions

When used in reference to this insurance:

"**bodily injury**" means bodily injury, sickness or disease, including death at any time resulting therefrom;

injured persons as reimbursement for payments made to others for performing essential services of the type actually rendered during his lifetime and which he would ordinarily have performed not for income but for the care and maintenance of himself and his relatives;

"**funeral expense benefits**" means an amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred;

"**income**" means salary, wages, tips, commissions, fees and other earnings derived from work or employment;

"**income continuation benefits**" means an amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an income producer during his lifetime, as a result of bodily injury disability;

"**income producer**" means a person who, at the time of the accident, was in an occupational status, earning or producing income;

"**insured automobile**" means an automobile with respect to which the named insured is required to maintain automobile liability insurance coverage under the New Jersey Automobile Reparation Reform Act, to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged;

"**medical expense benefits**" means all reasonable expenses incurred for medical, surgical and dental treatment, professional nursing, hospital and rehabilitation services, x-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses incurred for treatment prescribed by persons licensed to practice medicine, surgery, psychology or chiropractic, or for any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing;

"**named insured**" means the person or organization named as the insured in the declarations. If the **insured automobile** is owned by a farm family co-partnership or corporation, the term "**named insured**" also includes the head of the household of each family designated in the policy as having a working interest in the farm;

"**pedestrian**" means any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks and includes any person who is entering into or alighting from such a vehicle;

"**private passenger automobile**" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) a private passenger or station wagon type automobile,

(2) a pick-up or panel truck or delivery sedan, or

(3) a utility automobile designed for personal use as a camper or motor home or for family recreational purposes; but

a **private passenger automobile** does not include a motorcycle, an automobile used as a public or livery conveyance for passengers, a pick-up or panel truck, delivery sedan or utility automobile customarily used for business, occupational or professional purposes other than farming or ranching or a utility automobile customarily

**The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.**

HART001368

**Limit of Liability**

Any amount payable by the Company as personal injury protection benefits with respect to **bodily injury** shall be reduced by all amounts paid, payable or required to be provided under any workmen's compensation or employees temporary disability law, or under Medicare provided under federal law.

The applicable limit on **income continuation benefits** applies separately to each full regular and customary work week of an **eligible injured person**. If his disability from work or employment consists of or includes only a part of such a week, the Company shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the part week bears to the number of days in his full work week.

**Policy Period; Territory**

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions or Canada.

**Conditions**

1. **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the **eligible injured person**, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each **eligible injured person** to the Company or any of its authorized agents as soon as practicable. If any **eligible injured person**, his legal representative or survivors shall institute legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such **eligible injured person**, his legal representative or his survivors.

5. **Payment of Personal Injury Protection Benefits. Medical expense benefits** and **essential services benefits** may be paid at the option of the Company to the **eligible injured person** or the person or organization furnishing the products or services for which such benefits are due. In the event of the death of an **eligible injured person** any amounts payable, but unpaid prior to death, for **medical expense benefits** are payable to the **eligible injured person's** estate.

Benefits payable under subdivision (1) of the definition of **survivor benefits** are payable to the **eligible injured person's** surviving spouse, or if there is no surviving spouse, to his surviving children, or if there are no surviving spouse or surviving children, to the **eligible injured person's** estate.

Benefits payable under subdivision (2) of the definition of survivor benefits are payable to the person who has incurred the expense of providing essential services.

**Funeral expense benefits** are payable to the **eligible injured person's** estate.

**SECTION II**

**Extended Medical Expense Benefits**

The Company will pay **medical expense benefits** not to exceed the total amount of $10,000 and **funeral expense benefits** with respect to **bodily injury** sustained by an **insured person**, caused by an accident occurring during the policy period within the United States of America, its territories or possessions or Canada and arising out of the ownership, maintenance or use, including loading or unloading, of an **insured automobile** or of a highway vehicle not owned by or furnished or available for the regular use of the **named insured** or any **relative** of the **named insured**.

**Exclusions**

The insurance under Section II is subject to all of the exclusions applicable to Section I, except that the word "person" in exclusion (c) is replaced by the word **"pedestrian".**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001369

2. **Medical Reports; Proof of Claim.** As soon as practicable the eligible injured person or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The eligible injured person shall submit to physical examination by physicians when and as often as the Company may reasonably require and a copy of the medical report will be forwarded to such eligible injured person if requested.

3. **Multiple Policies Applicable to One Accident: Non-duplication of Benefits; Priority of Complying Policies.** Regardless of the number of automobiles insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act, or the number of insurers or policies affording such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to **bodily injury** to any one person as the result of any one accident shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

This insurance applies on a primary basis to **bodily injury** to the **named insured** and his **relative** and on a secondary basis to all other **eligible injured persons.** Similarly, the basic personal injury protection coverage provided by other complying policies applies on a primary basis to **bodily injury** to those persons who are named insureds under such policies and their relatives. If an **eligible injured person** to whom this insurance applies on a secondary basis has other basic personal injury protection coverage under another complying policy applicable to his **bodily injury** on a primary basis, all claims for basic personal injury protection benefits shall first be made against the insurer issuing the other complying policy. No basic personal injury protection benefits shall be due and payable under this insurance unless the other insurer fails to pay such benefits by reason of insolvency and the Company has been given written notice by the claimant of such failure. "Complying Policy" means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.

4. **Reimbursement and Trust Agreement.** Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement:

(a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such **bodily injury, his agent, his insurer** or a court having jurisdiction in the matter;

(b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such **bodily injury;**

(c) such person shall do whatever is proper to secure and shall do nothing **after** loss to prejudice such rights;

(d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

**Definitions**

The definitions under Section I apply to Section II and those under Section II:

"**automobile**" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-treads or (3) a vehicle while located for use as a residence or premises;

"**insured person**" means

(a) the **named insured** or any **relative** of the **named insured**, if the **named insured or relative** sustains **bodily injury**

   (1) while occupying, using, entering into or alighting from a **highway vehicle;** or

   (2) while a **pedestrian**, caused by a **highway vehicle;**

(b) any other person who sustains **bodily injury** while occupying a **highway vehicle** (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such **highway vehicle** is being operated by the **named insured** or a **relative** of the **named insured** or any other person using such **highway vehicle** with the permission of the **named insured;**

(c) any other person who sustains **bodily injury** while occupying an **insured automobile** if such **insured automobile** is being operated by the **named insured** or a **relative** of the **named insured** or any other person using such **insured automobile** with the permission of the **named insured.**

**Conditions**

Conditions 1, 2 and 4 of Section I apply to Section II, substituting the term "**insured person**" for "**eligible injured person**" wherever it appears therein. The following additional condition applies under Section II:

**Other Insurance or Benefits.** This insurance does not apply to loss or expense with respect to which an **insured person** is entitled to benefits under any workmen's compensation law or Medicare provided under federal law or under Section 4 of the New Jersey Automobile Reparation Reform Act.

This insurance does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefor under any other automobile no-fault law or under any other automobile medical payments insurance.

**SECTION III**

In consideration of the insurance afforded under Sections I and II of this endorsement, and the adjustment of applicable rates:

(a) any amount payable for economic loss under the Protection Against Uninsured Motorists Coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury** to an **eligible injured person;**

(b) any Automobile Medical Payments or Medical Expense Coverage afforded under the policy is deleted with respect to an automobile which is an **insured automobile.**

**SECTION IV**

**Premium Recomputation**

The premium for the policy is based on rates which have been reduced in accordance with Section 18 of the New Jersey Automobile Reparation Reform Act to reflect the limitations on the right to recover damages imposed by Section 8 of said Act. If a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, Section 8 of the Act invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy on the basis of revised rates which are subject to approval by the Commissioner of Insurance.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement ...kes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by

Authorized Agent

HART001370

## COVERAGE F—AUTOMOBILE MEDICAL PAYMENTS

The company will pay all reasonable *medical expense* incurred within one year from the date of the accident:

**Division 1.** to or for each person who sustains *bodily injury*, caused by accident, while *occupying a designated automobile* which is being used by a person for whom *bodily injury* liability insurance is afforded under this policy with respect to such use;

**Division 2.** to or for each *insured* who sustains *bodily injury*, caused by accident, while *occupying* or, while a pedestrian, through being struck by a *highway vehicle*.

### Exclusions

This insurance does not apply:

(a) to *bodily injury* to any person or *insured* while employed or otherwise engaged in duties in connection with an *automobile business*, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(b) to *bodily injury* due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) under Division 1, to *bodily injury* to any employee of the *named insured* arising out of and in the course of employment by the *named insured*, but this exclusion does not apply to any such *bodily injury* arising out of and in the course of domestic employment by the *named insured* unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(d) under Division 2, to *bodily injury* sustained while *occupying* a *highway vehicle* owned by any *insured*, or furnished for the regular use of any *insured* by any person or organization other than the *named insured*.

## II.   PERSONS INSURED—DIVISION 2.

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) any person designated as *insured* in the schedule;

(b) while residents of the same household as such designated person, his spouse and the relatives of either;

and if such designated person shall die, any person who was an *insured* at the time of such death shall continue to be an *insured*.

## III.   LIMIT OF LIABILITY

Regardless of the number of (1) persons or organizations who are *insureds* under this policy, (2) persons who sustain *bodily injury*, (3) claims made or suits brought on account of *bodily injury* or (4) *designated automobiles* to which this policy applies, the limit of liability for medical payments stated in the schedule as applicable to "each person" is the limit of the company's liability for all *medical expense* incurred by or on behalf of each person who sustains *bodily injury* as the result of any one accident.

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## IV.   ADDITIONAL DEFINITIONS

The additional definitions applicable to automobile bodily injury liability insurance also apply to this insurance; and when used in reference to this insurance (including endorsements forming a part of the policy):

"*designated automobile*" means an *automobile* designated in the schedule and includes:

(a) an *automobile* not owned by the *named insured* while temporarily used as a substitute for an *owned automobile* designated in the schedule when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction; and

(b) a trailer designed for use with a *private passenger automobile*, if not being used for business purposes with another type *automobile* and if not a home, office, store, display or passenger trailer;

"*highway vehicle*" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"*medical expense*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services;

"*occupying*" means in or upon or entering into or alighting from.

## V.   POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the territory described in paragraph (1) or (2) of the definition of "*policy territory*".

## VI.   ADDITIONAL CONDITIONS

### A.   Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

### B.   Excess Insurance

Except with respect to an *owned automobile*, the insurance under Division 1 shall be excess insurance over any other valid and collectible automobile medical payments or automobile *medical expense* insurance.

The insurance under Division 2 shall be excess insurance over any other valid and collectible automobile medical payments or automobile *medical expense* insurance available to the *insured* under any other policy.

### C.   Non-Applicability of Subrogation Condition

The Subrogation Condition does not apply to the Automobile Medical Payments Coverage.

The company has produced these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Automobile Physical Damage
Insurance (Fleet Automatic) Coverage Part**

*(continued)*

### I. COVERAGE AGREEMENTS

**1.** The company will pay for *loss* to *covered automobiles,* under:

**Coverage O-Comprehensive**—from any cause except *collision;* but, for the purpose of this Coverage, breakage of glass and *loss* caused by missiles, falling objects, fire, theft or larceny, windstorm, hail, earthquake, explosion, riot or civil commotion, malicious mischief or vandalism, water, flood, or colliding with a bird or animal, shall not be deemed *loss* caused by *collision;*

**Coverage P-Collision**—caused by *collision;*

**Coverage Q-Fire, Lightning or Transportation**—caused by

(a) fire or lightning,

(b) smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the *covered automobile* is located, or

(c) the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the *covered automobile* is being transported;

**Coverage R-Theft**—caused by theft or larceny;

**Coverage S-Windstorm, Hail, Earthquake or Explosion**—caused by windstorm, hail, earthquake or explosion;

**Coverage T-Combined Additional**—caused by

(a) windstorm, hail, earthquake or explosion,

(b) riot or civil commotion,

(c) the forced landing or falling of any aircraft or its parts or equipment,

(d) malicious mischief or vandalism,

(e) flood or rising waters, or

(f) external discharge or leakage of water;

provided that, with respect to each *covered automobile,*

(i) under the Comprehensive Coverage (except as to *loss* from any of the causes described in the Fire, Lightning or Transportation Coverage) and under the Collision Coverage, such payment shall be only for the amount of each *loss* in excess of the deductible amount, if any, stated in the schedule as applicable thereto;

(ii) under the Combined Additional Coverage, $25 shall be deducted from the amount of each *loss* caused by malicious mischief or vandalism.

**2.** The company will pay, under:

**Coverage V-Towing**—for towing and labor costs necessitated by the disablement of *covered automobiles,* provided the labor is performed at the place of disablement.

**3. Supplementary Payments:** In addition to the applicable limits of liability, the company will:

(a) with respect to such transportation insurance as is afforded herein, pay general average and salvage charges for which the *named insured* becomes legally liable;

(b) reimburse the *named insured,* in the event of a theft covered by this insurance of an entire *covered automobile* of the *private passenger type* (not used as a public or livery conveyance and not, at time of theft, being held for sale by an automobile dealer), for expense incurred for the rental of a substitute for such *covered automobile* during the period commencing 48 hours after such theft has been reported to the company and the police and terminating, regardless of expiration of the policy period, when such *covered automobile* is returned to use or the company pays for the *loss;* but, as to any one such theft, such reimbursement shall not exceed $10 for any one day nor $300 total.

**4.** Such insurance as is afforded under each Coverage applies separately to each *covered automobile,* and a land motor vehicle and one or more trailers or semitrailers attached thereto shall be held to be separate *covered automobiles* as respects limits of liability and any deductible provisions applicable thereto.

**Exclusions**

This insurance does not apply:

(a) to any *covered automobile* while used as a public or livery conveyance, unless such use is specifically declared and described in the schedule;

(b) to damage which is due and confined to:

(i) wear and tear, or

(ii) freezing, or

(iii) mechanical or electrical breakdown or failure,

unless such damage is the result of other *loss* covered by this insurance;

(c) to tires, unless

(i) *loss* be coincident with and from the same cause as other *loss* covered by this insurance; or

(ii) damaged by fire, by malicious mischief or vandalism, or stolen and, as to the *covered automobile, loss* caused by such damage or theft is covered by this insurance;

(d) to *loss* due to

(i) war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(ii) radioactive contamination;

(e) to *loss* to

(i) any device or instrument designed for the recording, reproduction, or recording and reproduction of sound unless such device or instrument is permanently installed in the *covered automobile;*

(ii) any tape, wire, record disc or other medium for use with any device or instrument designed for the recording, reproduction, or recording and reproduction of sound;

(f) to *loss* to a *camper body* designed for use with a *covered automobile* and not designated in the schedule and for which no premium has been charged if such *camper body* was owned at the inception of the policy period or the inception of any renewal or extension period thereof;

(g) under the Comprehensive and Theft Coverages, to loss or damage due to conversion, embezzlement or secretion by any person in possession of a *covered automobile* under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance;

(h) under the Collision Coverage, to breakage of glass if insurance with respect to such breakage is otherwise afforded herein;

(i) under the Windstorm, Hail, Earthquake or Explosion and Combined Additional Coverages, to *loss* resulting from rain, snow or sleet, whether or not wind-driven.

### II. LIMIT OF LIABILITY

**1.** The limit of the company's liability for *loss* to any one *covered automobile* shall not exceed the least of the following amounts:

(a) the actual cash value of such *covered automobile,* or if the *loss* is to a part thereof the actual cash value of such part, at time of *loss;* or

(b) what it would then cost to repair or replace such *covered automobile* or part thereof with other of like kind and quality, with deduction for depreciation; or

(c) the limit of liability stated in the schedule as applicable to "each *covered automobile*" under the Coverage afforded for the *loss* to such *covered automobile,* provided that if such limit of liability is expressed as a stated amount it shall, with respect to a *covered automobile* newly acquired during the policy period and not described in the schedule, be deemed as having been replaced by "actual cash value";

and, subject to the above provisions, shall not in any event exceed the amount, if any, stated in the schedule as the "maximum limit of liability" applicable to "any one *covered automobile.*"

**2.** The total limit of the company's liability for all *loss* directly attributable to a single happening out of which *loss* occurs shall not exceed:

(a) as to all *covered automobiles* at any one location, the amount, if any, stated in the schedule as the "maximum limit of liability" applicable thereto, subject to the above provisions respecting any one *covered automobile;*

(b) as to all *covered automobiles,* the amount, if any, stated in the schedule as the "maximum limit of liability" applicable thereto, subject to the above provisions respecting (i) any one *covered automobile* and (ii) any one location.

The [watermark text] business at this time, the company does not [watermark text] a co[watermark text] py of the policy.

HART001372

**Automobile Physical Damage
Insurance (Fleet Automatic) Coverage Part**

*(continued)*

## III. POLICY PERIOD; TERRITORY; PURPOSES OF USE

This insurance applies only to *loss* which occurs during the policy period, while the *covered automobile* is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof and, if a *covered automobile* described in the schedule, is maintained and used for the purposes stated therein as applicable thereto.

## IV. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

*"camper body"* means a body designed to be mounted upon a *covered automobile* and equipped as sleeping or living quarters;

*"collision"* means (i) collision of a *covered automobile* with another object or with a vehicle to which it is attached, or (ii) upset of such *covered automobile;*

*"commercial type"* means

(i) a land motor vehicle of the truck, pick-up, express, sedan or panel delivery type, including truck-type tractors, trailers and semitrailers, used for the transportation or delivery of goods or merchandise or for other business purposes, or

(ii) an altered *private passenger type* vehicle used for retail or wholesale delivery;

*"covered automobile"* means a land motor vehicle, trailer or semitrailer, including its equipment and other equipment permanently attached thereto (but not including robes, wearing apparel or personal effects), which is either

(a) designated in the schedule, by description or otherwise, as a *covered automobile* to which this insurance applies and is:

   (i) owned by the *named insured*, or

   (ii) leased to the *named insured* for a term of not less than one year under an agreement expressly prohibiting any right of the lessor or owner to use such vehicle during the term of such lease except either as an operator employed by the *named insured* or for its repair or exchange; or

(b) if not so designated, such vehicle is newly acquired by the *named insured* during the policy period provided, however, that:

   (i) it replaces a described *covered automobile*, or as of the date of its delivery this insurance applies to all *covered automobiles*, and

   (ii) the *named insured* notifies the company within 30 days following such delivery date;

but *"covered automobile"* does not include a vehicle owned by or registered in the name of any individual partner or executive officer of the *named insured*, unless specifically stated otherwise by endorsement forming a part of the policy;

*"loss"* means direct and accidental loss or damage;

*"private passenger type"* means a 4-wheel land motor vehicle of the private passenger or station wagon type;

as to *"purposes of use"*:

*"commercial"* means use principally in the business occupation of the *named insured* as stated in the declarations, including occasional use for personal, pleasure, family and other business purposes;

*"pleasure and business"* means personal, pleasure, family and business use.

## V. CONDITIONS

None of the Conditions of the policy shall apply to this insurance except "Premium", "Inspection and Audit", "Subrogation", "Changes", "Assignment", "Cancellation", and "Declarations". This insurance shall also be subject to the following additional Conditions:

### 1. Named Insured's Duties in Event of Loss

In the event of *loss* the *named insured* shall:

(a) protect the *covered automobile*, whether or not this insurance applies to the *loss*, and any further loss or damage due to the *named insured's* failure to protect shall not be recoverable under this insurance; reasonable expenses incurred in affording such protection shall be deemed incurred at the company's request;

(b) give notice thereof as soon as practicable to the company or any of its authorized agents and also, in the event of theft or larceny, to the police;

(c) file with the company, within 91 days after *loss*, his sworn proof of *loss* in such form and including such information as the company may reasonably require and, upon the company's request, shall exhibit the damaged property and submit to examination under oath;

(d) cooperate with the company and, upon the company's request, shall assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the *named insured* because of *loss* with respect to which this insurance applies; and shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses;

but the *named insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation, offer or pay any reward for recovery of stolen property or incur any expense other than as specifically provided in this insurance.

### 2. Payment for Loss

With respect to any *loss* covered by this insurance, the company may pay for said *loss* in money, or may:

(a) repair or replace the damaged or stolen property, or

(b) return at its expense any stolen property to the *named insured*, with payment for any resultant damage thereto, at any time before the *loss* is so paid or the property is so replaced, or

(c) take all or any part of the damaged or stolen property at the agreed or appraised value,

but there shall be no abandonment to the company.

### 3. Appraisal

If the *named insured* and the company fail to agree as to the amount of *loss*, either may, within 60 days after proof of *loss* is filed, demand an appraisal of the *loss*. In such event the *named insured* and the company shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall state separately the actual cash value and the amount of *loss* and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of *loss*. The *named insured* and the company shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

The company shall not be held to have waived any of its rights by any act relating to appraisal.

### 4. Action Against Company

No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this insurance nor until 30 days after proof of *loss* is filed and the amount of *loss* is determined as provided in this insurance.

HART001373

**Automobile Physical Damage
Insurance (Fleet Automatic) Coverage Part**

*(continued)*

**5. Other Insurance**

If the *named insured* has other insurance against a *loss* covered by this insurance, the company shall not be liable under this insurance for a greater proportion of such *loss* than the applicable limit of liability stated in the schedule bears to the total applicable limit of liability of all valid and collectible insurance against such *loss;* provided, however, with respect to any *covered automobile* newly acquired during the policy period and not described in the schedule, this insurance shall not apply to any *loss* against which the *named insured* has other valid and collectible insurance.

**6. No Benefit to Bailee**

None of the provisions of this insurance shall inure directly or, indirectly to the benefit of any carrier or other bailee for hire.

**7. Terms of Insurance Conformed to Statute**

Terms of this insurance which are in conflict with the statutes of the state wherein this insurance is issued are hereby amended to conform to such statutes.

---

## STATE EXCEPTIONS

**KANSAS** — If this insurance is issued in the State of Kansas, the following applies:

1. In the "Named Insured's Duties in Event of Loss" Condition, paragraph (a) is amended to read:

   "(a) use every reasonable means to protect the *covered automobile* (whether or not this insurance applies to the *loss*) from further *loss;* reasonable expenses incurred in affording such protection shall be deemed incurred at the company's request;"

2. In the "Appraisal" Condition, the term "30 days" is substituted for "60 days".

---

**NORTH CAROLINA** — If this insurance is issued in the State of North Carolina, the following applies:

**Proofs of Loss** — The failure of the *named insured* to furnish proofs of *loss* as required by the terms of this insurance shall not debar him from recovery hereunder unless within fifteen (15) days after receipt of notice of *loss* the company or its representatives shall provide the *named insured* with a blank or blanks in duplicate, in the form approved by the Insurance Commissioner, to be used for the purpose of making such proofs of *loss.*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001374

## Out-of-State Insurance



# THE HARTFORD

It is agreed that, subject to all the provisions of the policy except where modified herein, the following provision is added:

If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.

*President*

HART001375

A-3114-0  Printed in U. S. A.  (ISO: A979a)

Insurance for Excluded
Use of an Automobile

    **THE HARTFORD**

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
BASIC AUTOMOBILE LIABILITY INSURANCE
AUTOMOBILE MEDICAL PAYMENTS INSURANCE

---

It is agreed that any endorsement which limits the insurance with respect to the *automobile* designated in the endorsement to use of the *automobile* for the purposes described therein shall not apply if the *named insured* notifies the company within thirty days after the first use of the *automobile* during the policy period for other purposes.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.

*President*

A-3411-0  Printed in U. S. A.  (ISO: CP-03-17)  Ed. 1-74

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART001376

**California Amendment**    THE HARTFORD

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

PROTECTION AGAINST UNINSURED MOTORISTS INSURANCE

---

It is agreed that:

1. Exclusion (c) is amended to read as follows:

   (c) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation, disability benefits law or any similar law or directly to the benefit of the United States or any *state* or political subdivision thereof.

2. Subsections (b), (c) and (d) of the provision entitled "Limits of Liability" are replaced by the following:

   (b) Any loss payable under the terms of this insurance to or for any person shall be reduced by:

   (1) the amount paid and the present value of all amounts payable to him under any workmen's compensation law, exclusive of non-occupational disability benefits;

   (2) the amount the *insured* is entitled to recover from any other person insured under the *bodily injury* liability coverage of the policy; and

   (3) all sums paid by or on behalf of the owner or operator of the *uninsured highway vehicle* and any other person or organization jointly or severally liable together with such owner or operator for *bodily injury* to an *insured*.

   (c) The company shall not be obligated to pay under this insurance that part of the damages, including damages for care and loss of services because of *bodily injury* which the *insured* may be entitled to recover from the owner or operator of an *uninsured highway vehicle* which represents expenses for medical services paid or payable under the Automobile Medical Payments Coverage of the policy.

3. Paragraph (a) of the definition of "*uninsured highway vehicle*" is amended to read as follows:

   (a) a *highway vehicle* with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the *state* in which the *insured highway vehicle* is principally garaged, no *bodily injury* liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a *bodily injury* liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or refuses to admit coverage thereunder except conditionally or with reservation or such company is or becomes insolvent; or

4. The Condition entitled "Other Insurance" is replaced by the following:

   **Other Insurance**
   With respect to *bodily injury* to any *insured occupying* a *highway vehicle* (other than a *highway vehicle* which is owned by the *named insured*) to which the *bodily injury* liability coverage of the policy applies, the insurance hereunder shall not apply if the owner of such vehicle has insurance similar to that provided for herein.

   Subject to the preceding paragraph, if the *insured* has other similar insurance available to him, any damages, including damages for care and loss of services because of *bodily injury* shall be deemed not to exceed the higher of the applicable limits of the respective coverages and such damages, including damages for care and loss of services because of *bodily injury* shall be pro-rated between such coverages in such proportion as each coverage bears to the total of such limits.

5. The Condition entitled "Arbitration" is amended to read as follows:

   **Arbitration**
   If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages, including damages for care and loss of services because of *bodily injury* from the owner or operator of an *uninsured highway vehicle* because of *bodily injury* to the *insured*, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by a single neutral arbitrator, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrator pursuant to this insurance.

6. The Condition entitled "Action Against Company" is amended to read as follows:

   **Action Against Company**
   No action shall lie against the company unless, as a condition precedent thereto, the *insured* or his legal representative has fully complied with all the terms of this policy nor unless within one year from the date of the accident:

   (a) suit for *bodily injury* has been filed against the uninsured motorists in a court of competent jurisdiction, or

   (b) agreement as to the amount due under this insurance has been concluded, or

   (c) the *insured* or his legal representative has formally instituted arbitration proceedings.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.

The company located these documents in its does not certify that these documents constitute a complete and accurate copy of the policy.

A-3506-0  Printed in U. S. A.  (ISO: CP-04-51) Ed. 1-'74

HART001377

*President*

## COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
## COVERAGE PART

*(continued)*

### I.  COVERAGE C—BODILY INJURY LIABILITY
### COVERAGE D—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of

Coverage C. *bodily injury* or

Coverage D. *property damage*

to which this insurance applies, caused by an *occurrence* and arising out of the ownership, maintenance or use, including loading and unloading, of any *automobile*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement;

(b) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(c) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury; but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the *insured* unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(d) to *property damage* to

(1) property owned or being transported by the *insured*, or

(2) property rented to or in the care, custody or control of the *insured*, or as to which the *insured* is for any purpose exercising physical control, other than *property damage* to a residence or private garage by a *private passenger automobile* covered by this insurance;

(e) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to expenses for first aid under the Supplementary Payments provision;

(f) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or polutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

### II.  PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) the *named insured*;

(b) any partner or executive officer thereof, but with respect to a *non-owned automobile* only while such *automobile* is being used in the business of the *named insured*;

(c) any other person while using an *owned automobile* or a *hired automobile* with the permission of the *named insured*, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to *bodily injury* or *property damage* arising out of the loading or unloading thereof, such other person shall be an *insured* only if he is:

(1) a lessee or borrower of the *automobile*, or

(2) an employee of the *named insured* or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an *insured* under (a), (b) or (c) above.

None of the following is an *insured*:

(i) any person while engaged in the business of his employer with respect to *bodily injury* to any fellow employee of such person injured in the course of his employment;

(ii) the owner or lessee (of whom the *named insured* is a sublessee) of a *hired automobile* or the owner of a *non-owned automobile*, or any agent or employee of any such owner or lessee;

(iii) an executive officer with respect to an *automobile* owned by him or by a member of his household;

(iv) any person or organization, other than the *named insured*, with respect to:

(1) a motor vehicle while used with any *trailer* owned or hired by such person or organization and not covered by like insurance in the company (except a *trailer* designed for use with a *private passenger automobile* and not being used for business purposes with another type motor vehicle), or

(2) a *trailer* while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company;

(v) any person while employed in or otherwise engaged in duties in connection with an *automobile business*, other than an *automobile business* operated by the *named insured*.

This insurance does not apply to *bodily injury* or *property damage* arising out of (1) a *non-owned automobile* used in the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*, or (2) if the *named insured* is a partnership, an *automobile* owned by or registered in the name of a partner thereof.

### III.  LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, (3) claims made or suits brought on account of *bodily injury* or *property damage* or (4) *automobiles* to which this policy applies, the company's liability is limited as follows:

**Coverage C**—The limit of *bodily injury* liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of any one *occurrence;* but subject to the above provision respecting "each person", the total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

**Coverage D**—The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

**Coverages C and D**—For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

### IV.  POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the territory described in paragraph (1) or (2) of the definition of *policy territory*.

### V.  ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*automobile business*" means the business or occupation of selling, repairing, servicing, storing or parking *automobiles*;

"*hired automobile*" means an *automobile* not owned by the *named insured* which is used under contract in behalf of, or loaned to, the *named insured*, provided such *automobile* is not owned by or registered in the name of (a) a partner or executive officer of the *named insured* or (b) an employee or agent of the *named insured* who is granted an operating allowance of any sort for the use of such *automobile;*

"*non-owned automobile*" means an *automobile* which is neither an *owned automobile* nor a *hired automobile;*

"*owned automobile*" means an *automobile* owned by the *named insured;*

"*private passenger automobile*" means a four wheel private passenger or station wagon type *automobile;*

"*trailer*" includes semi-trailer but does not include *mobile equipment*.

### VI.  ADDITIONAL CONDITION

**Excess Insurance—Hired and Non-Owned Automobiles**

With respect to a *hired automobile*, or a *non-owned automobile*, this insurance shall be excess insurance over any other valid and collectible insurance available to the *insured*.

The images are business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-3717-0

CAL-2

**Amendment of Description
of Terms Used As
Premium Bases**

 **THE HARTFORD**

It is agreed that Paragraph (h) of the Description of Terms Used as Premium Bases is amended to read as follows:

(h)    Comprehensive Automobile Liability Insurance, **"cost of hire"** means the total amount incurred for the hire of **automobiles** not including charges for services performed by motor carriers of property or passengers which are subject to the compulsory insurance requirements of any motor carrier law or regulation.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.

*President*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form A-3716-0   Printed in U.S.A.

HART001379

**.. und Receiving and Transmitting
Equipment Excluded**



**THE HARTFORD**

---

| This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: |
|---|
| **AUTOMOBILE PHYSICAL DAMAGE INSURANCE (Fleet Automatic)** |
| **AUTOMOBILE PHYSICAL DAMAGE INSURANCE (Non-Fleet)** |
| **AUTOMOBILE PHYSICAL DAMAGE INSURANCE (Dealers)** |

---

It is agreed that the following exclusion is added:

"This insurance does not apply to *loss* to any sound receiving or sound receiving and transmitting equipment designed for use as a citizen's band radio, two way mobile radio or telephone, or scanning monitor receiver including any accessories or antennas. This exclusion does not apply to *loss* to any of this equipment if installed in a *covered automobile* which is:

1.   owned by a police or fire department or

2.   equipped as an emergency vehicle and owned by a municipality, county, state or the federal government or by any political subdivision or agency of any of these or

3.   equipped as an emergency vehicle and owned by a volunteer fire department, volunteer rescue squad or volunteer ambulance corps operations."

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

'. .ndorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.

*Roy C. Thomas*
*President*

**Form A-3775-0**  Printed in U.S.A.  (ISO: CP-00-37) Ed. 4-'76

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART001380

"medical expenses" means expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

"motor vehicle" means a 4 wheel self-propelled vehicle of a type required to be registered and licensed under Florida law, which is not used as a public or livery conveyance, and which is one of the following types:

(a) a private passenger vehicle, such as a sedan, station wagon or jeep-type vehicle,

(b) a pick-up or panel truck not used primarily in the occupation, business or profession of the owner,

(c) a utility automobile designed for personal use, as a camper or motor home or for family recreational purposes but a utility automobile does not include any such automobile used primarily (1) in the occupation, profession or business of the owner or (2) for the transportation of passengers.

A "motor vehicle" does not include a vehicle owned by the State of Florida, any political subdivision or municipality thereof, or the Federal Government;

"named insured" means the person or organization named in the declarations of the policy and if an individual, shall include the spouse if a resident of the same household;

"occupying" means in or upon or entering into or alighting from;

"insured motor vehicle" means a motor vehicle of which the named insured is the owner and with respect to which (a) the bodily injury liability insurance of the policy applies and (b) security is required to be maintained under the Florida Automobile Reparations Reform Act;

"relative" means a person related to the named insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the named insured;

"pedestrian" means a person while not an occupant of any self-propelled vehicle;

"owner" means a person or organization who holds the legal title to a motor vehicle, and also includes:

(a) a debtor having the right to possession, in the event a motor vehicle is the subject of a security agreement, and

(b) a lessee having the right to possession, in the event a motor vehicle is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

(c) a lessee having the right to possession, in the event a motor vehicle is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

**Policy Period; Territory**

The insurance under this Section applies only to accidents which occur during the policy period

(a) in the State of Florida;

(b) as respects the named insured or a relative, while occupying the insured motor vehicle outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c) as respects the named insured, while occupying a motor vehicle of which a relative is the owner and for which security is maintained under the Florida Automobile Reparations Reform Act, outside the State of Florida but within the United States of America, its territories or possessions or Canada.

**Conditions**

(1) **Notice.** In the event of an accident, written notice of the loss must be given to the Company or any of its authorized agents as soon as practicable.

If any injured person or his legal representative shall institute legal action to recover damages for bodily injury against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such injured person or his legal representative.

(2) **Action Against the Company.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this insurance, nor until 30 days after the required notice of accident and reasonable proof of claim has been filed with the Company.

(3) **Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld.** As soon as practicable the person making claim shall give to the Company written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. Such person shall submit to mental or physical examinations at the Company's expense when and as often as the Company may reasonably require and a copy of the medical report shall be forwarded to such person if requested.

If the person unreasonably refuses to submit to an examination, the company will not be liable for subsequent personal injury protection benefits. Whenever a person making claim is charged with:

(a) driving while under the influence of alcohol or narcotic drugs to the extent that his driving faculties are impaired, or

(b) committing a felony,

the company shall withhold benefits until at the trial level the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**SECTION II**

**MODIFICATION OF POLICY COVERAGES**

Any automobile medical payments insurance and any protection against uninsured motorists insurance afforded by the policy shall be excess over any personal injury protection benefits paid or payable or which would be available but for the application of a deductible.

If automobile medical payments insurance is afforded by this policy, that insurance shall be applicable for medical expenses incurred within one year beginning on the date all personal injury protection benefits have been exhausted.

**SECTION III**

**FINANCIAL RESPONSIBILITY**

With respect only to any motor vehicle for which security is required to be maintained under the Florida Automobile Reparations Reform Act and for which insurance is afforded under the policy, the limits of the Company's liability under the insurance for bodily injury and property damage liability shall comply with the limits of liability required by any other applicable motor vehicle financial responsibility or compulsory insurance law.

**SECTION IV**

**PROVISIONAL PREMIUM**

It is agreed that in the event of any change in the rules, rates, rating plans, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Automobile Reparations Reform Act providing for the exemption of persons from tort liability, the premium stated in the declarations for any Automobile Bodily Injury, Automobile Property Damage Liability, Automobile Medical Payments and Protection Against Uninsured Motorists Insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation

shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to Section 12(2)(e) of the Florida Automobile Reparations Reform Act with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations the named insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company [is unable to locate] a complete and accurate copy of the policy.

Form A-3828-0

Countersigned by ................................................................
Authorized Agent

HART001381

## Comprehensive General Liability Insurance Coverage Part (Continued)

### I. COVERAGE A — BODILY INJURY LIABILITY

### COVERAGE B — PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

**Coverage A** – *bodily injury* or

**Coverage B** – *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

   (1) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

   (2) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured*;

but this exclusion does not apply to the parking of an *automobile* on premises owned by, rented to or controlled by the *named insured* or the ways immediately adjoining, if such *automobile* is not owned by or rented or loaned to any *insured*;

(c) to *bodily injury* or *property damage* arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to *bodily injury* or *property damage* arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured;*

(e) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

   (1) any watercraft owned or operated by or rented or loaned to any *insured*, or

   (2) any other watercraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the *named insured;*

(f) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to

   (1) liability assumed by the *insured* under an *incidental contract*, or

   (2) expenses for first aid under the Supplementary Payments provision;

(h) to *bodily injury* or *property damage* for which the *insured* or his indemnitee may be held liable

   (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

   (2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

   (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

   (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contibutes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the *insured* or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract;*

(k) to *property damage* to

   (1) property owned or occupied by or rented to the *insured*,

   (2) property used by the *insured*, or

   (3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to *property damage* (other than to *elevators*) arising out of the use of an *elevator* at premises owned by, rented to or controlled by the *named insured;*

(l) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

   (1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

   (2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(n) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(o) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q) to *property damage* included within

   (1) the *explosion hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "x",

The company located these documents in its business records that these documents constitute a complete and accurate copy of the policy.

HART001382

# Comprehensive General Liability Insurance Coverage Part *(Continued)*    **THE HARTFORD**

(2) the *collapse hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "c".

(3) the *underground property damage hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "u".

## II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured;* and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of *mobile equipment* registered under any motor vehicle registration law,

(i) an employee of the *named insured* while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the *named insured* any such equipment registered in the name of the *named insured* and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an *insured* under this paragraph (e) with respect to:

(1) *bodily injury* to any fellow employee of such person injured in the course of his employment, or

(2) *property damage* to property owned by, rented to, in charge of or occupied by the *named insured* or the employer of any person described in subparagraph (ii).

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured.*

## III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage,* or (3) claims made or suits brought on account of *bodily injury* or *property damage,* the company's liability is limited as follows:

**Coverage A** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of (1) all *bodily injury* included within the *completed operations hazard* and (2) all *bodily injury* included within the *products hazard* shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate":

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured,* including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *property damage* included within the *products hazard* and all *property damage* included within the *completed operations hazard.*

Such aggregate limit shall apply separately to the *property damage* described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the *named insured.*

**Coverages A and B** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

## IV. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory.*

The company located these documents in its business files. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001383

**COVERAGE PART**
*(continued)*

## I. COVERAGE E — PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains *bodily injury* caused by accident and all reasonable *medical expense* incurred within one year from the date of the accident on account of such *bodily injury*, provided such *bodily injury* arises out of (a) a condition in the *insured premises* or (b) operations with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy.

### Exclusions

This insurance does not apply:

(a) to *bodily injury*

    (1) arising out of the ownership, maintenance, operation, use, loading or unloading of

        (i) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

        (ii) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured*;

    but this exclusion does not apply to the parking of an *automobile* on the *insured premises*, if such *automobile* is not owned by or rented or loaned to any *insured*;

    (2) arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

    (3) arising out of the ownership, maintenance, operation, use, loading or unloading of

        (i) any watercraft owned or operated by or rented or loaned to any *insured*, or

        (ii) any other watercraft operated by any person in the course of his employment by any *insured*;

    but this exclusion does not apply to watercraft while ashore on the *insured premises*; or

    (4) arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured*;

(b) to *bodily injury*

    (1) included within the *completed operations hazard* or the *products hazard*;

    (2) arising out of operations performed for the *named insured* by independent contractors other than (i) maintenance and repair of the *insured premises* or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

    (3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the *named insured* is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the *named insured* is such an owner or lessor;

    (4) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) to *bodily injury*

    (1) to the *named Insured*, any partner therein, any tenant or other person regularly residing on the *insured premises* or any employee of any of the foregoing if the *bodily injury* arises out of and in the course of his employment therewith;

    (2) to any other tenant if the *bodily injury* occurs on that part of the *insured premises* rented from the *named insured* or to any employee of such a tenant if the *bodily injury* occurs on the tenant's part of the *insured premises* and arises out of and in the course of his employment for the tenant;

    (3) to any person while engaged in maintenance and repair of the *insured premises* or alteration, demolition or new construction at such premises;

    (4) to any person if any benefits for such *bodily injury* are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

    (5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sports activities in the policy with respect to Premises Medical Payments Coverage;

(d) to any *medical expense* for services by the *named insured*, any employee thereof or any person or organization under contract to the *named insured* to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all *medical expense* for *bodily injury* to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all *medical expense* for *bodily injury* to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the schedule as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*insured premises*" means all premises owned by or rented to the *named insured* with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy, and includes the ways immediately adjoining on land;

"*medical expense*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services, and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART001384

# COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE
## COVERAGE PART

*(continued)*

## I. COVERAGE A—BODILY INJURY LIABILITY
## COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of

**Coverage A.** *bodily injury* or

**Coverage B.** *property damage*

to which this insurance applies, caused by an *occurrence*, if the *bodily injury* or *property damage* is included within the *completed operations hazard* or the *products hazard*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement; but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b) to *bodily injury* or *property damage* for which the *insured* may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the *insured* as an owner or lessor described in (2) above;

(c) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(d) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury;

(e) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

(2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured*;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured*;

(f) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(g) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(h) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property

are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(i) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured*.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or suits brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage A** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *bodily injury* to which this coverage applies shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate".

**Coverages A and B** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

## IV. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute

HART001385

## CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the *bodily injury* or *property damage*;

(c) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to *bodily injury* or *property damage* for which the indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage,or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the *insured* may be held liable in an action on a contract by a third party beneficiary for *bodily injury* or *property damage* arising out of a project for a public authority; but this exclusion does not apply to action by the public authority or any other person or organization engaged in the project;

(g) to *property damage* to

(1) property owned or occupied by or rented to the *insured*,

(2) property used by the *insured*, or

(3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

(h) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

(2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured*;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured*;

(j) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(k) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(m) As respects any agreement relating to construction operations, to *bodily injury* or *property damage* arising out of

(1) construction, maintenance or repair of watercraft or loading or unloading thereof, or

(2) operations within fifty feet of any railroad property affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(n) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(o) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

When stated in the schedule as applicable, the following exclusions also apply to *contractual liability* assumed by the *insured*.

This insurance does not apply:

(p) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *products hazard*;

(q) to *property damage* included within

(1) the *explosion hazard*,

(2) the *collapse hazard*, or

(3) the *underground property damage hazard*.

### II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

### III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or *suits* brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage YB** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

**Coverage ZB** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the *named insured*.

**Coverages YB and ZB** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

HART001386

**CONTRACTUAL LIABILITY INSURANCE**
**COVERAGE PART**

**(Blanket Coverage)**
*(Continued)*

**IV. ADDITIONAL DEFINITIONS**

When used in reference to this insurance (including endorsements forming a part of the policy):

*"contractual liability"* means liability expressly assumed under a written contract or agreement; provided, however, that *contractual liability* shall not be construed as including liability under a warranty of the fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

*"suit"* includes an arbitration proceeding to which the *insured* is required to submit or to which the *insured* has submitted with the company's consent.

**V. POLICY TERRITORY**

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

**VI. ADDITIONAL CONDITIONS**

**Arbitration**

The company shall be entitled to exercise all of the *insured's* rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

**Premium**

When used as a premium basis:

1. the word *"cost"* means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which *"cost"* is the basis of premium, regardless of whether any liability is assumed under such contracts by the *insured*. It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the *insured*, or others including all fees, allowances, bonuses or commissions made, paid or due. It shall not include the cost of any operations to which exclusion (m) applies.

2. the word *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

# EXHIBIT 2

RATED RISK

INSURANCE POLICY Form 8117 and DECLARATIONS Form AL-102-0

**COMPANY COPY**

DUPLICATED

Redacted

| | Annual Audit | | Monthly | Participating |
|---|---|---|---|---|
| | Filing | | Bureau | Retro |
| Prem. Finance | Semi-Annual | | | |
| X Large Risk | Quarterly | X | Loss Control | |

INSURER →

Co. Code **5**

POLICY NO. **10  C  671174W**

**DECLARATIONS**

Items

Previous Policy No. **10 C 669913W**

REFER UND.

1. Named Insured and Mail Address (No., Street, Town, County, State, Zip Code)

The Named Insured is: ☐ Individual ☐ Partnership ☐X Corporation ☐ Joint Venture (Other) ...........................

**CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J. 07647**

Period — From **08/25/79** To **08/25/80**

20 YP. RET.

Producer's Name and Address    Producer's Code

**JAMES & CO. OF N.Y. INC.
25-217C**

12:01 A.M., standard time at the address of the named insured as stated herein.

Audit Period: Annual, unless otherwise stated. ☐ Semi-Annual

| ☐ Free ............ | ☐ | ☐ | ........ Report ....... | ☐ Quarterly |
|---|---|---|---|---|
| ☐X Refer Und ....... | ☐ | ☐ | ☐ MVR ........ | ☐ Monthly |
| ☐ Risk Exper ...... | ☐ | ☐ | ☐ Return ASF ... | |
| ☐ Reins ......... | ☐ | ☐ | ........... | ☐ |

The advance premium for this policy is as stated below. Insurance is afforded by the Coverage Parts forming a part hereof, subject to limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

### SUMMARY OF ADVANCE PREMIUMS

| COVERAGE PARTS | ADVANCE PREMIUM |
|---|---|
| Comprehensive General Liability Insurance | $166,200.00 |
| Premises Medical Payments Insurance | $ INCLUDED ABOVE |
| Contractual Liability Insurance | $ INCLUDED ABOVE |
| Completed Operations and Products Liability Insurance | $ |
| Owners' and Contractors' Protective Liability Insurance | $ |
| Storekeepers' Insurance | $ |
| Personal Injury Liability Insurance | $ |
| Comprehensive — Plus General Liability Insurance | $ |
| ERRORS AND OMISSIONS INSURANCE - EMPLOYEES BENEFIT PROGRAMS | $ INCLUDED ABOVE |
| | $ |
| | $ |
| Business Auto | $ 23,428.00 |
| Truckers | $ |
| Garage | $ |

| Form Numbers of Coverage Parts and endorsements not listed on Coverage Parts forming part of Policy at Issue: **AL-8-1-B (LIST)** G.L. N.J. GUARANTY FUND $831.00   AUTO                          23.06 | TOTAL ADVANCE PREMIUM | $189,628.00 |
|---|---|---|

| If Policy Period more than one year: Gross Premium $ | Discount $ | Net Premium $ |
|---|---|---|
| Premium is payable: On effective date of Policy $ | 1st Anniversary $ | 2nd Anniversary $ |

4. Business of the named insured is ————— MFG. INDUSTRIAL SEPARATORS

The company located these documents in its business records maintained in the normal course of business. The company does not certify that these documents constitute a complete and accurate copy of the policy.

COMPANY COPY

Form AL-102-0   CDR   Printed in U.S.A.

HART000001

**THE HARTFORD**

Named Insured and Address

**10 C 671174W**

This endorsement forms a part of Policy No.................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

**CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J.**

Effective date ....................................... 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | | | | | | |
|---|---|---|---|---|---|---|
| 12. | 74 AUDI – 8394 | 604.00 | | 38.00 | 10.00 | 37.00 | 110.00 |
| | 7398 T-91 $4,989/6 | 101.00 | | 6.00 | 2.00 | 6.00 | 18.00 |
| 13. | 77 PLYMOUTH – 2060 | 604.00 | | 38.00 | 10.00 | 77.00 | 201.00 |
| | 7398 T-91 $5,811/3 | 101.00 | | 6.00 | 2.00 | 13.00 | 34.00 |
| 14. | 77 PLYMOUTH – 4645 | 604.00 | | 38.00 | 10.00 | 77.00 | 201.00 |
| | 7398 T-91 $5,380/3 | 101.00 | | 6.00 | 2.00 | 13.00 | 34.00 |
| 15. | 77 PLYMOUTH –1819U | 604.00 | | 38.00 | 10.00 | 77.00 | 201.00 |
| | 7398 T-91 $5,380/3 | 101.00 | | 6.00 | 2.00 | 13.00 | 34.00 |
| 16. | 77 PLYMOUTH 1164 | 604.00 | | 38.00 | 10.00 | 77.00 | 201.00 |
| | 7398 T-91 $5,426/3 | 101.00 | | 6.00 | 2.00 | 13.00 | 34.00 |
| 17. | 75 MERC 1307 | 604.00 | | 38.00 | 10.00 | 176.00 | 291.00 |
| | 7398 T-91 $14,667/5 | 101.00 | | 6.00 | 2.00 | 29.00 | 49.00 |
| 18. | 72 DODGE 3510 | 604.00 | | 38.00 | 10.00 | 48.00 | 173.00 |
| | 7398 T-91 $4,600/6 | 101.00 | | 6.00 | 2.00 | 8.00 | 29.00 |
| 19. | 74 CHEV 7106 | 802.00 | | 86.00 | 10.00 | 48.00 | 173.00 |
| | 03414 T-91 $5,700/6 | 134.00 | | 14.00 | 2.00 | 8.00 | 29.00 |
| 20. | 77 CHEVY 4644 | 604.00 | | 38.00 | 10.00 | 78.00 | 201.00 |
| | 7398 T-91 $5,380/3 | 101.00 | | 6.00 | 2.00 | 13.00 | 34.00 |
| 21. | 77 DODGE 9963 | 438.00 | 35.00 | 16.00 | 7.00 | 46.00 | 137.00 |
| | 7398 T-10 $5,800/3 | 73.00 | 6.00 | 3.00 | 1.00 | 8.00 | 23.00 |
| 22. | 78 FORD 0805 | 479.00 | | 55.00 | 17.00 | 53.00 | 137.00 |
| | 03414 T-10 $7,840/2 | 80.00 | | 9.00 | 3.00 | 9.00 | 23.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..........................................................
                                                    *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form AL-8-1 C**   Printed in U.S.A.   ISO:

 **THE HARTFORD**

10 C 671174W

This endorsement forms a part of Policy No.........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address
CENTRICO INC
100 FAIRWAY COURT
MONTVALE, N.J. 07647

Effective date .................................................12:01 A.M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 23. 78 PLYMOUTH 9603 | 604.00 | | 38.00 | 10.00 | 96.00 | | 232.00 |
| 7398 T-91 $5,900/2 | 101.00 | | 6.00 | 2.00 | 16.00 | | 39.00 |
| 24. 78 FORD 9622 | 604.00 | | 38.00 | 10.00 | 96.00 | | 232.00 |
| 7398 T-91 $5,900/2 | 101.00 | | 6.00 | 2.00 | 16.00 | | 39.00 |
| 25. 79 DODGE 1018 | 479.00 | | 55.00 | 17.00 | 69.00 | | 187.00 |
| 03414 T-10 $6,936/1 | 80.00 | | 9.00 | 3.00 | 12.00 | | 31.00 |
| 26. 79 CHEV 6330 | 245.00 | 32.00 | 24.00 | 5.00 | 57.00 | | 139.00 |
| 7398 T-11 $7,567/1 | 41.00 | 2.00 | 4.00 | 1.00 | 10.00 | | 23.00 |
| 27. 79 BMW 6519 | 386.00 | 36.00 | ---- | 2.00 | 141.00 | | 280.00 |
| 7398 T-10 $23,850/1 | 64.00 | 6.00 | ---- | ---- | 24.00 | | 47.00 |
| 28. 78 BUICK 8617 | 386.00 | 36.00 | ---- | 2.00 | 38.00 | | 141.00 |
| 7398 T-10 $6,900/2 | 64.00 | 6.00 | ---- | ---- | 6.00 | | 24.00 |
| 29. 79 CHEV 9262 | 432.00 | ---- | 31.00 | 4.00 | 77.00 | | 166.00 |
| 7398 T-15 $6,550/1 | 72.00 | ---- | 5.00 | 1.00 | 13.00 | | 28.00 |
| 30. 79 PONTIAC 3179 | 604.00 | | 38.00 | 10.00 | 91.00 | | 207.00 |
| 7398 T-91 $7,200/1 | 101.00 | | 6.00 | 2.00 | 15.00 | | 35.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| HIRED CAR | 22.00 | | | | | |
| 6619   T-10 | 4.00 | | | | | |
| NON OWNED | 180.00 | | | | | |
| 6603 | 30.00 | | | | | |
| | 2565.00 | 38.00 | 156.00 | 39.00 | 325.00 | 793.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ..........................................................
                                        *Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-8-1 C    Printed in U.S.A.  ISO:

**Schedule of Covered Autos You Own**

THE HARTFORD

This schedule completes:
ITEM FOUR of Business Auto Policy
ITEM FOUR of Truckers' Policy
ITEM EIGHT of Garage Policy — Supplementary Schedule For Non-Dealers
ITEM TWELVE of Garage Policy — Supplementary Schedule For Auto Dealers

of Policy No. _____ TO C 671174W

at the hour stated in the policy.   Effective _____

Premiums and Limits — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | | Vehicle Identification No. (VIN) | | | City or Town and State where the covered auto will be principally garaged | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Size** — GVW, GCW or Vehicle Seating Capacity | **Use:** S = Service R = Retail C = Commercial Other (Describe) | | | | Radius of Operation | Auto Med Pay Limit — For each insured | Uninsured Motorists Limit Any one Accident | Original Cost New (Chassis & Body including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
| **Territory Code** | **Classification Code** | Liability Premium | PIP Premium | Added PIP Premium | | Premium | Premium | | Premium | Premium | Premium | Premium |
| 25 | 79 DODGE #B11AE9X141018, S. WINTER HAVEN, FLA. | | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | | ☐L ☐I ☐LD | 5,000 | 20,000 | 6,936/ 1 | 100. | | 500.00 | |
| 10 | 03414 | 479.00 | | | | 55.00 | 17.00 | | 69. | | 187.00 | |
| 26 | 79 CHEV #C1L6969S146330, SHELBYVILLE, KY | | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | | ☐L ☐I ☐LD | 5,000 | 20,000 | 7,567/ 1 | 50. | | 500.00 | |
| 11 | 7398 | 245.00 | 12.00 | | | 24.00 | 5.00 | | 57. | | 139.00 | |
| 27 | 79 BHW #5786519, NORTHVALE, N.J. | | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | | ☐L ☐I ☐LD | | 15/30/5 | 23,850/ 1 | 100. | | 500.00 | |
| 10 | 7398 | 386.00 | 36.00 | | | | 2.00 | | 141. | | 280.00 | |
| 28 | 78 BUICK #4M47U8G17, NORTHVALE, N.J. | | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | | ☐L ☐I ☐LD | | 15/30/5 | 6,900/2 | 100. | | 500.00 | |
| 10 | 7398 | 386.00 | 36.00 | | | | 2.00 | | 38. | | 141.00 | |
| 29 | 79 CHEV # 1169B91249262, BENSENVILLE, ILL. | | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | | ☐L ☐I ☐LD | 5,000 | 20,000 | 6,550/ 1 | 100. | | 500.00 | |
| 15 | 7398 | 432.00 | ---- | | | 81.00 | 4.00 | | 77. | | 166.00 | |
| 30 | 79 PONTIAC #2Y685A6103179, FOSTER CITY, CALIF. | | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | | ☐L ☐I ☐LD | 5,000 | 30,000 | 7,200/ 1 | 100. | | 500.00 | |
| 91 | 7398 | 604.00 | | | | 38.00 | 10.00 | | 91. | | 207.00 | |
| **PREMIUM TOTALS** | | 15,167. | 227. | | | 965.00 | 208.00 | | 1,934. | | 4,725. | |

Loss Payees (Identified by Covered Auto No.) — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). Loss Payee Name and Address | Covered Auto No(s). Loss Payee Name and Address |
|---|---|
| | |

business record does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-4221-0 CDR Printed in U.S.A. (NS)

COMPANY COPY

*Radius of Operation: L = Local   I = Intermediate   LD = Long Distance

HART000004

# Schedule of Covered Autos You Own

**This schedule completes:**
ITEM FOUR of Business Auto Policy
ITEM FOUR of Truckers' Policy
ITEM EIGHT of Garage Policy — Supplementary Schedule For Non-Dealers
ITEM TWELVE of Garage Policy — Supplementary Schedule For Auto Dealers

of Policy No. O C 671174W
at the hour stated in the policy.   Effective _____

**THE HARTFORD**

**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | Vehicle Identification No. (VIN) | | City or Town and State where the covered auto will be principally garaged | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Size — GVW, GCW or Vehicle Seating Capacity | Use: S = Service R = Retail C = Commercial Other (Describe) | | | Radius of Operation ★ | Auto Med Pay Limit — For each Insured | Uninsured Motorists Limit — Any one Accident | Original Cost New (Chassis & Body including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
| Territory Code | Classification Code | Liability Premium | PIP Premium | Added PIP Premium | | Premium | Premium | | Premium | Premium | Premium | Premium |
| **7** | 76 FORD #6Y87A1D3820, BENSENVILLE, ILL | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | ☐L ☐I ☐LD | $5,000 | $20,000 | 7,800/4 | $100 | | $500.00 | |
| 15 | 7398 | $432.00 | $ ---- | $ | | $1.00 | 4.00 | | $ 57 | $ | $116.00 | |
| **8** | 77 DODGE #HL45G7G32263, BENSENVILLE, ILL | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | ☐L ☐I ☐LD | $5,000 | $20,000 | 4,954/3 | $100 | | $500.00 | |
| 15 | 7398 | $432.00 | $ ---- | $ | | $1.00 | 4.00 | | $ 38 | $ | $104.00 | |
| **9** | 78 DODGE #NL45GB8B257169 (ELK GROVE) ILL | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | ☐L ☐I ☐LD | $5,000 | $20,000 | 5,400/2 | $100 | | $500.00 | |
| 15 | 7398 | $432.00 | $ ---- | $ | | $1.00 | 4.00 | | $ 53 | $ | $123.00 | $ |
| **10** | 77 DODGE #HL45G7G32262, BENSENVILLE, ILL | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | ☐L ☐I ☐LD | $5,000 | $20,000 | 4,949/3 | $100 | | $500.00 | |
| 15 | 7398 | $432.00 | $ ---- | $ | | $1.00 | 4.00 | | $ 38 | $ | $104.00 | $ |
| **11** | 74 VOLKS #4642013393, BENSENVILLE, ILL | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | ☐L ☐I ☐LD | $5,000 | $20,000 | 5,204/6 | $100 | | $500.00 | |
| 15 | 7398 | $432.00 | $ ---- | $ | | $1.00 | 4.00 | | $ 35 | $ | $79.00 | $ |
| **12** | 74 AUDI B442108394, SAN MATEO CALIF. | | | | | | | | | | |
| | ☐S ☐R ☐C Other: | | | ☐L ☐I ☐LD | $5,000 | $30,000 | 4,989/6 | $100 | | $500.00 | |
| 91 | 7398 | $604.00 | $ | $ | | $8.00 | 10.00 | | $ 37 | $ | $110.00 | $ |
| **PREMIUM TOTALS** | | $ | | $ | | | | | $ | $ | $ | $ |

**Loss Payees** (Identified by Covered Auto No.) — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

The enclosed or attached documents are the business records [and] does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-4221-0 CDR Printed in U.S.A. (NS)   **COMPANY COPY**   ★Radius of Operation: L = Local   I = Intermediate   LD = Long Distance

HART000005

# Schedule of Covered Autos You Own

THE HARTFORD

**This schedule completes:**
ITEM FOUR of Business Auto Policy
ITEM FOUR of Truckers' Policy
ITEM EIGHT of Garage Policy — Supplementary Schedule For Non-Dealers
ITEM TWELVE of Garage Policy — Supplementary Schedule For Auto Dealers

of Policy No. **10 C 671174W** at the hour stated in the policy.   Effective _____

**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | | Vehicle Identification No. (VIN) | | | City or Town and State where the covered auto will be principally garaged | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Size — GVW, GCW or Vehicle Seating Capacity** | **Use: S = Service R = Retail C = Commercial Other (Describe)** | | | | Radius of Operation ★ | Auto Med Pay Limit — For each insured | Uninsured Motorists Limit — Any one Accident | Original Cost New (Chassis & Body including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
| Territory Code | Classification Code | Liability Premium | PIP Premium | Added PIP Premium | | Premium | Premium | | Premium | Premium | Premium | Premium |
| **1** | 77 MERC BENZ 11602412092315, NORTHVALE, N.J. | | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | | ☐ L ☐ I ☐ LD $ | | $15/30/5 | 20,000/ 3 | $ 100.00 | | $ 500.00 | |
| 10 | 7398 | $ 386.00 | $ 36.00 | $ | | $ | $2.00 | | $ 107.00 | $ | $ 213.00 | |
| **2** | 73 PONTIAC 2K57T3A160428, NORTHVALE, N.J. | | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | | ☐ L ☐ I ☐ LD $ | | $15/30/5 | 5,250/ 6 | $ 100.00 | | $ 500.00 | |
| 10 | 7398 | $ 386.00 | $ 36.00 | $ | | $ | $2.00 | | $ 19.00 | $ | $ 79.00 | $ |
| **3** | 76 BUICK 4P39Y6H479570, NORTHVALE, N.J. | | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | | ☐ L ☐ I ☐ LD $ | | $15/30/5 | 6,178/ 4 | $ 100.00 | | $ 500.00 | |
| 10 | 7398 | $ 386.00 | $ 36.00 | $ | | $ | $2.00 | | $ 27.00 | $ | $ 100.00 | $ |
| **4** | 72 DODGE B31BE2U721153, NORTHVALE, N.J. | | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | | ☐ L ☐ I ☐ LD $ 5,000 | | $15/30/5 | 4,389/ 6 | $ 250.00 | | $ 500.00 | |
| 10 | 23414 | $ 563.00 | $ ---- | $ | | $47.00 | $2.00 | | $ 24.00 | $ | $ 37.00 | $ |
| **5** | 66 CHEV TRUCK #8836P103956, NORTHVALE, N.J. | | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | | ☐ L ☐ I ☐ LD $ 5,000 | | $15/30/5 | 3,400/ 6 | $ 250.00 | | $ 500.00 | |
| 10 | 23414 | $ 563.00 | $ ---- | $ | | $47.00 | $2.00 | | $ 24.00 | $ | $ 37.00 | $ |
| **6** | 78 CHEV. 1L69U8J249164, BENSENVILLE, ILL. | | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | | ☐ L ☐ I ☐ LD $ 5,000 | | $20,000 | 5,500/ 2 | $ 100.00 | | $ 500.00 | |
| 15 | 7398 | $ 432.00 | $ | $ | | $31.00 | $4.00 | | $ 53.00 | $ | $ 123.00 | |
| **PREMIUM TOTALS** | | $ | | $ | | $ | | | $ | | $ | $ |

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). Loss Payee Name and Address | Covered Auto No(s). Loss Payee Name and Address |
|---|---|
| | |

The Hartford has produced this business record in discovery but does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-4221-0   COR   Printed in U.S.A. (NS)

**COMPANY COPY**

★Radius of Operation: L = Local   I = Intermediate   LD = Long Distance

# Schedule of Covered Autos You Own

**THE HARTFORD**

This schedule completes:
ITEM FOUR of Business Auto Policy
ITEM FOUR of Truckers' Policy
ITEM EIGHT of Garage Policy — Supplementary Schedule For Non-Dealers
ITEM TWELVE of Garage Policy — Supplementary Schedule For Auto Dealers

of Policy No. _____ 10 C 671174W
at the hour stated in the policy.    Effective _____

Premiums and Limits — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | | Vehicle Identification No. (VIN) | | City or Town and State where the covered auto will be principally garaged | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Size — GVW, GCW or Vehicle Seating Capacity** | **Use:** S = Service R = Retail C = Commercial Other (Describe) | | | **Radius of Operation** ★ | **Auto Med Pay Limit —** For each Injured | **Uninsured Motorists Limit —** Any one Accident | **Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol** | **Comprehensive** Deductible | **Specified Perils** | **Collision** Deductible | **Towing and Labor** |
| **Territory Code** | **Classification Code** | **Liability Premium** | **PIP Premium** | **Added PIP Premium** | | **Premium** | **Premium** | | **Premium** | **Premium** | **Premium** | **Premium** |
| 13 | | 77 PLYMOUTH #HP41G7G82060, SAN MATEO, CALIF. | | | | | | | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | 5,000 | 30,000 | 5,811/ | $ 100 | | $ 500.00 | |
| 91 | 7398 | $ 604.00 | $ | $ | | $38.00 | $10.00 | 3 | $ 77 | | $ 201.00 | ● |
| 14 | | 77 PLYMOUTH #HL45G184645, SAN MATEO, CALIF. | | | | | | | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | 5,000 | 30,000 | 5,380/ | $ 100 | | $ 500.00 | |
| 91 | 7398 | $ 604.00 | $ | $ | | $38.00 | $10.00 | 3 | $ 77 | $ | $ 201.00 | $ |
| 15 | | 77 PLYMOUTH #HL45G1819U, SAN MATEO, CALIF. | | | | | | | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | 5,000 | 30,000 | 5,380/ | $ 100 | | $ 500.00 | |
| 91 | 7398 | $ 604.00 | $ | $ | | $38.00 | $10.00 | 3 | $ 77 | $ | $ 201.00 | $ |
| 16 | | 77 PLYMOUTH #HL45G7B421164, SAN MATEO CALIF. | | | | | | | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | 5,000 | 30,000 | 5,426/ | $ 100 | | $ 500.00 | |
| 91 | 7398 | $ 604.00 | $ | $ | | $38.00 | $10.00 | 3 | $ 77 | $ | $ 201.00 | $ |
| 17 | | 75 MERC BENZ #11602012041307, SAN MATEO CALIF. | | | | | | | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | 5,000 | 30,000 | 4,667/ | $ 100 | | $ 500.00 | |
| 91 | 7398 | $ 604.00 | $ | $ | | $38.00 | $10.00 | 5 | $ 176. | | $ 291.00 | $ |
| 18 | | 72 DODGE #8318F2U53510, SAN MATEO CALIF. | | | | | | | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | 5,000 | 30,000 | $ 250. | | | $ 500.00 | |
| 91 | 7398 | $ 604.00 | $ | $ | | $38.00 | $10.00 | 4,600/6 | $ 48.00 | | $ 173.00 | $ |
| **PREMIUM TOTALS** | | $ | $ | $ | | $ | $ | | $ | $ | $ | $ |

Loss Payees (Identified by Covered Auto No.) — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

This company created these documents in its business records does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-4221-0  CDR  Printed in U.S.A. (NS)    **COMPANY COPY**    ★Radius of Operation: L = Local    I = Intermediate    LD = Long Distance

HART0000007

# Schedule of Covered Autos You Own

**THE HARTFORD**

This schedule completes:
ITEM FOUR of Business Auto Policy
ITEM FOUR of Truckers' Policy
ITEM EIGHT of Garage Policy — Supplementary Schedule For Non-Dealers
ITEM TWELVE of Garage Policy — Supplementary Schedule For Auto Dealers

of Policy No. **TB C671174W**
at the hour stated in the policy.   Effective _____

**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. / Territory Code / Classification Code | Description — Year, Model, Trade Name, Body Type / Use / Liability Premium | PIP Premium | Added PIP Premium | Radius of Operation | Auto Med Pay Limit — For each injured / Premium | Uninsured Motorists Limit — Any one Accident / Premium | Original Cost New. (Chassis & Body including Special Equipment) or Rating Symbol | Comprehensive Deductible / Premium | Specified Perils Premium | Collision Deductible / Premium | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **19** | 74 CHEV. #CCY334Z167106, SAN MATEO, CALIF. | | | | | | | | | | |
| | ☐ S. ☐ R. ☐ C Other: | | | ☐ L ☐ I ☐ LD | $5,000 | $30,000 | 5,700/ | $250. | | $500.00 | |
| 91  03414 | $802.00 | $ | $ | | 86.00 | $10.00 | 6 | $ 48. | | $173.00 | |
| **20** | 77 CHRYSLER #HL45G7G184644, SAN MATEO CALIF. | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | $5,000 | $30,000 | 5,380/ | $100. | | $500.00 | |
| 91  7398 | $604.00 | $ | $ | | $8.00 | $10.00 | 3 | $ 78. | $ | $201.00 | $ |
| **21** | 77 DODGE #DH45H7D109963, S. WINTER HAVEN, FLA. | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | $5,000 | $20,000 | 5,800/ | $100. | | $500.00 | |
| 10  7398 | $438.00 | $ 35.00 | $ | | $6.00 | $ 7.00 | 3 | $ 46. | | $137.00 | |
| **22** | 78 FORD #8H48H100805, S. WINTER HAVEN, FLA. | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | $5,000 | $20,000 | 7,840/ | $100.00 | | $500.00 | |
| 10  03414 | $479.00 | $ ---- | $ | | 55.00 | $17.00 | 2 | $ 53.00 | | $137.00 | |
| **23** | 78 PLYMOUTH #HL45H8B249603, FOSTER CITY, CALIF. | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | $5,000 | $30,000 | 5,900/ | $100. | | $500.00 | |
| 91  7398 | $604.00 | $ | $ | | 38.00 | $10.00 | 2 | $ 96. | $ | $232.00 | |
| **24** | 78 FORD #HL45H8B249622, FOSTER CITY, CALIF. | | | | | | | | | | |
| | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | $5,000 | $30,000 | 5,900/ | $100. | | $500.00 | |
| 91  7398 | $604.00 | $ | $ | | 38.00 | $10.00 | 2 | $ 96. | $ | $232.00 | $ |
| **PREMIUM TOTALS** | $ | $ | | | $ | $ | | $ | $ | $ | $ |

Loss Payees (identified by Covered Auto No.) — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

Covered Auto No(s). / Loss Payee Name and Address     Covered Auto No(s). / Loss Payee Name and Address

The Hartford admits that this includes business records, but hereby expressly does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-4221-0 CDR   Printed in U.S.A. (NS)     **COMPANY COPY**   ★Radius of Operation: L = Local   I = Intermediate   LD = Long Distance

HART000008

**Premium Installment**

🦌 **THE HARTFORD**

Named Insured and Address

10 C 671174½

This endorsement forms a part of Policy No.............................
issued by THE HARTFORD INSURANCE GROUP company
designated therein, and takes effect as of the effective date of
said Policy unless another effective date is stated herein.

Effective date................................................ 12:01 A. M., standard time at the address of the
named insured as stated herein.

It is hereby understood and agreed that the....................................Premium of $..............................
(Insert "original" or "additional" or "return")

will................................................................................................installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

## SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 08/25/79 | 49,860. | 5,031. | 1,997. | | 56,888. |
| 2 | 10/25/79 | 41,550. | 4,192. | 1,665. | | 47,407. |
| 3 | 12/25/79 | 41,550. | 4,192. | 1,665. | | 47,407. |
| 4 | 02/25/80 | 33,240. | 3,354. | 1,332. | | 37,936. |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| TOTALS | | 166,200. | 16,769. | 6,659. | | 189,628. |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the
policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this
endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on
the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this
endorsement.

Countersigned by.........................................
Authorized Agent

any located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-57-0   Printed in U. S. A.

HART000009

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. ........................................   **10 C 671174W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: .

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
**CONTRACTUAL LIABILITY INSURANCE**
**PREMISES MEDICAL PAYMENTS INSURANCE**
**ERRORS AND OMISSIONS INSURANCE - EMPLOYEE BENEFIT PROGRAMS**

## PREMIUM COMPUTATION

### IT IS AGREED THAT THE PREMIUM SHALL BE COMPUTED AS FOLLOWS:

| CODE NO. | ESTIMATED SALES | RATES PER $1000 SALES | ADVANCE PREMIUM |
|---|---|---|---|
| 20050 | $20,000,000 | 8.31 | $166,200.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................................
                                                              *Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART000010

# Countersignature Memo

**ORLANDO REGIONAL OFFICE**
**100 FAIRWAY COURT**
**NORVALE, N.J. 07647**

Insured: **CENTRICO INC.**
Address

Company Office: **MANHATTAN REGIONAL**   Co. Code **5**   Policy No. **10 C 671174W**   Expiration **08/25/80**   Date **08/29/79 SR**

Please show Countersigning Agent preferred, if any, in block below.

Name and Address of Producer
**FRED S JAMES & CO. OF N.Y.**
**55 WATER STREET**
**NEW YORK, N.Y.**

Name and Address of Countersigning Agent

**PRODUCER —**

The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a party to any negotiation with the Countersigning Agent for the payment of the commission or fees. The counter-signing fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly. **100**

**2,227.**

Producer's Rate of Commission % Premium
Effective Date **08/25/79**

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| FLA | 0161285373-01 | |

If not licensed, is same desired? ☐ Yes   ☐ No.   If "Yes", which States:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a true and accurate copy of the policy.

**THE HARTFORD**

Co. Code ☐1 Hartford Fire Insurance Company
☐5 Hartford Accident and Indemnity Company
☐3 Hartford Casualty Insurance Company

Code ☐6 New York Underwriters Insurance Company
☐7 Twin City Fire Insurance Company

Form G-2689-1  Printed in U.S.A.

**COMPANY OFFICE OF PRODUCER**

HART000011

**THE HARTFORD INSURANCE GROUP**
HARTFORD, CONNECTICUT

Co. Code
[1] Hartford Fire Insurance Company
[5] Hartford Accident and Indemnity Company
[3] Hartford Casualty Insurance Company

Co. Code
[6] New York Underwriters Insurance Company
[7] Twin City Fire Insurance Company

Named Insured and Address

**CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J 07647**

This Endorsement forms a part of ☐ Policy No. ☐ *Bond No. **10 C 671174W** issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date.................**08/25/79**................... Effective hour is the same as stated in the Declarations of the Policy.

*Note: *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **FLA** | **FRED S JAMES & CO. OF N.Y. 25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number.

| Co. Code | Coverages (Automobiles) | Premium For State | Co. Code | Coverages (other than Automobile) | Premium For State |
|---|---|---|---|---|---|
| 5 | Bodily Injury | $ 1,396. | | General Liability | $ |
| 5 | Medical Payments | $ 126. | | Workmen's Compensation | $ |
| 5 | PROPXXXDAMAGEXX PIP | $ 35. | | Burglary | $ |
| 5 | Comprehensive | $ 160. | | Glass | $ |
| 5 | Collision | $ 461. | | Bond | $ |
| 5 | Other (specify) UM | $ 41. | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|

**Form G-1760-7** Printed in U.S.A. 6-70

The company located these documents in its files. Authentication by the company does not certify that these documents constitute a complete and accurate copy of the policy.

# Countersignature Memo

**CHICAGO REGIONAL OFFICE**

Insured
**CENTRICO INC.**

Address
**1 FAIRWAY COURT
NORTHVALE, N.J. 07647**

| Company Office | Co. Code | Policy No. | | Expiration | Date |
|---|---|---|---|---|---|
| **MANHATTAN REGIONAL** | **5** | **10 C 671174W** | | **08/25/80** | **08/29/79 SR** |

Please show Countersigning Agent preferred, if any, in block below.

Name and Address of Countersigning Agent

**Name and Address of Producer**

┌
**FRED S JAMES & CO. OF N.Y.
55 WATER STREET
NEW YORK, N.Y.**
┘

**PRODUCER —**

The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a party to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

Producer's Rate of Commission **100** % Premium **$435.**

Effective Date **08/25/79**

| States of 'Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| **ILLINOIS** | | |

If not licensed, is same desired? ☐ Yes  ☐ No. If "Yes", which States:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Co. Code
[1] Hartford Fire Insurance Company
[5] Hartford Accident and Indemnity Company
[3] Hartford Casualty Insurance Company

Co. Code
[6] New York Underwriters Insurance Company
[7] Twin City Fire Insurance Company

Form G-2669-1  Printed in U.S.A.

**COMPANY OFFICE OF PRODUCER**

HART000013



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

| Co. Code | | Co. Code | |
|---|---|---|---|
| 1 | Hartford Fire Insurance Company | 6 | New York Underwriters Insurance Company |
| 5 | Hartford Accident and Indemnity Company | 7 | Twin City Fire Insurance Company |
| 3 | Hartford Casualty Insurance Company | | |

Named Insured and Address

This Endorsement forms **10 C 671174W**
a part of ☐ Policy No. ☐ *Bond No.....................................
issued by THE HARTFORD INSURANCE GROUP company des-
ignated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

**CENTRICO INC.**
**100 FAIRWAY COURT**
**NORTHVALE, N.J.  07647**

**08/25/79**

Effective date.........................................................................

Effective hour is the same as stated in the Declarations of
the Policy.

**\*Note:**  *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **ILLINOIS** | **FRED S JAMES & CO. OF N.Y.  25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number.

| Co. Code | Coverages (Automobiles) | Premium For State | Co. Code | Coverages (other than Automobile) | Premium For State |
|---|---|---|---|---|---|
| | Bodily Injury | $ 3,024.00 | | General Liability | $ |
| | Medical Payments | $ 217.00 | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| | Comprehensive | $ 351.00 | | Glass | $ |
| | Collision | $ 815.00 | | Bond | $ |
| | Other (specify)  UM | $ 28.00 | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-1760-7   Printed in U.S.A. 6-'70

HART000014

# Countersignature Memo

**CINCINNATI REGIONAL OFFICE**
100 NORWAY COURT
NORTHVALE, N.J. 07647

Insured
**CENTRICO INC.**

| Company Office | Co. Code | Policy No. | Expiration | Date |
|---|---|---|---|---|
| MANHATTAN REGIONAL | 5 | 10 C 6711740 | 08/25/80 | 08/29/79 SR |

Please show Countersigning Agent preferred, if any, in block below.

Name and Address of Producer
FRED S JAMES & CO. OF N.Y.
55 WATER STREET
NEW YORK, N.Y.

Name and Address of Countersigning Agent

CULMAN AGENCY
2ND NATIONAL BANK BLDG.
ASHLAND, KY

**PRODUCER —**

The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a party to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| KENTUCKY | | NO LIC |

Producer's Rate of Commission 100 % Premium 482.
Effective Date 08/25/79

If not licensed, is same desired? ☐ Yes ☐ No. If "Yes", which States?

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Co. Code
☐1 Hartford Fire Insurance Company
☐5 Hartford Accident and Indemnity Company
☐3 Hartford Casualty Insurance Company

Co. Code
☐6 New York Underwriters Insurance Company
☐7 Twin City Fire Insurance Company

Form G-2669-1 Printed in U.S.A.

**COMPANY OFFICE OF PRODUCER**

HART000015

**THE HARTFORD**
INSURANCE GROUP.
HARTFORD, CONNECTICUT

Co. Code
1 Hartford Fire Insurance Company
5 Hartford Accident and Indemnity Company
3 Hartford Casualty Insurance Company

Co. Code
6 New York Underwriters Insurance Company
7 Twin City Fire Insurance Company

Named Insured and Address

This Endorsement forms **10 C 671174W**
a part of ☐ Policy No. ☐ *Bond No...................................
issued by THE HARTFORD INSURANCE GROUP company des-
ignated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

**CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J.**

**08/25/79**

Effective date............................................................................. Effective hour is the same as stated in the Declarations of
the Policy.

**\*Note:** *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **KENTUCKY** | **FRED S JAMES & CO. OF N.Y.  25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number.

| Co. Code | Coverages (Automobiles) | Premium For State | Co. Code | Coverages (other than Automobile) | Premium For State |
|---|---|---|---|---|---|
| 5 | Bodily Injury | $ 245.00 | | General Liability | $ |
| 5 | Medical Payments | $ 24.00 | | Workmen's Compensation | $ |
| 5 | XXXXXXXXXXXX PIP | $ 12.00 | | Burglary | $ |
| 5 | Comprehensive | $ 57.00 | | Glass | $ |
| 5 | Collision | $ 139.00 | | Bond | $ |
| 5 | Other (specify) | $ 5.00 | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

The company located these documents in its business records. Hartford Insurance Company does not certify that these documents constitute a complete and accurate copy of the policy.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

Form G-1760-7  Printed in U.S.A. 6-'70

HART000016



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

Co. Code:
☒ ① Hartford Fire Insurance Company
☐ ⑤ Hartford Accident and Indemnity Company
☐ ③ Hartford Casualty Insurance Company

Co. Code:
☐ ⑥ New York Underwriters Insurance Company
☐ ⑦ Twin City Fire Insurance Company

Named Insured and Address

This Endorsement forms
a part of ☐ Policy No. ☐ *Bond No.....................................
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

**10 C 671174W**

**CENTRICO INC.**
**100 FAIRWAY COURT**
**NORTHVALE, N.J.**

**08/25/79**

Effective date.............................................................

Effective hour is the same as stated in the Declarations of the Policy.

*Note:   If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **NEW JERSEY** | **FRED S JAMES & CO. OF N.Y. INC.    25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number.

| Co. Code | Coverages (Automobiles) | Premium For State | Co. Code | Coverages (other than Automobile) | Premium For State |
|---|---|---|---|---|---|
| | Bodily Injury | $ 3,055. | 5 | General Liability | $ 166,200.00 |
| | Medical Payments | $ 94. | | Workmen's Compensation | $ |
| | ~~Property Damage~~ PIP | $ 180. | | Burglary | $ |
| | Comprehensive | $ | | Glass | $ |
| | Collision | $ | | Bond | $ |
| | Other (specify) UM | $ 14. | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|

The company located these documents in its files and is providing copies. At this time the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-1760-7   Printed in U.S.A. 6-'70

HART000017

**Amendment — Limits of Liability**
**(Single Limit)**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 671174W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date.................................................Effective hour is the
same as stated in the Declarations of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
|---|---|
| COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE | — (Coverage Part "CAL") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |

---

## SCHEDULE

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by
symbol herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| Bodily Injury Liability and Property Damage Liability | "CGL" "K" | $ **1,000**,000 each occurrence |
| | "CGL" "K" | $ **1,000**,000 aggregate — Division 1 |
| | | $ ,000 aggregate — Division 2 |
| Bodily Injury Liability and Property Damage Liability | | $ ,000 each occurrence |

**Division 1** — Applicable to damages because of *bodily injury* and *property damage* as specified in paragraph (b) in the "Limits of Liability"
provision of this endorsement.

**Division 2** — Applicable to damages because of all *bodily injury* and *property damage* as stated in paragraph (c) in the "Limits of Liability"
provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision
thereof is amended to read as follows:

## LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, (3) claims
made or suits brought on account of *bodily injury* or *property damage* or (4) *automobiles* or *mobile equipment* to which this policy applies, the
company's liability is limited as follows:

## Bodily Injury Liability and Property Damage Liability Coverage

(a) The limit of liability stated in the Schedule of this endorsement as applicable to "each *occurrence*" is the total limit of the company's
liability under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of *bodily
injury*, including damages for care and loss of services, and all *property damage* as the result of any one *occurrence*; provided that, with
respect to any one *occurrence* for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial
responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of
liability shall be applied to provide the separate limits required by such law, but the separate application of such limit shall not increase
the total limit of the company's liability.

business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-68-0   CDR   Printed in U. S. A.   (NS)

Company Copy

HART000018

(b) The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 1**" is, subject to provision (a) hereof respecting "each *occurrence*", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all *bodily injury* and *property damage* which is included in any of the numbered sub-paragraphs below and, in subparagraph (3), with respect either to the *bodily injury* or *property damage*, or to the *bodily injury* and *property damage* (within one or both the hazards identified therein) for which insurance is actually afforded under at least one such Coverage Part:

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured,* including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *bodily injury* and *property damage* included within the *completed operations hazard* and all *bodily injury* and *property damage* included within the *products hazard;*

(4) all *property damage* for which liability is assumed under any contract, other than an *incidental contract,* to which the Contractual Liability Insurance, if afforded, applies.

Such "aggregate — **Division 1**" limit shall apply separately:

(i) to the *property damage* included in subparagraphs (1) and (2) and separately with respect to each project away from premises owned by or rented to the *named insured;*

(ii) to the sum of the damages for all *bodily injury* and *property damage* included in subparagraph (3) and for which insurance, if any, is afforded as stated in paragraph (b) above;

(iii) to the *property damage* included in subparagraph (4) and separately with respect to each project away from premises owned by or rented to the *named insured.*

(c) The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 2**" is, subject to provision (a) hereof respecting "each *occurrence*", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all *bodily injury* and *property damage.*

(d) For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.............................................................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-68-0 (NS)

HART000019

These DECLARATIONS and POLICY PROVISIONS and endorsements issued to form a part hereof, complete this

## Business Auto Coverage Part

**THE HARTFORD**

issued to form a part of Policy No. **10 C 671174W** to be effective _____ at the hour stated in the policy. The Stock Insurance Company providing this insurance is shown on the Declarations Page of such policy as the "Insurer."

This Coverage Part is not binding unless countersigned by a duly authorized agent of **ours**; but if it takes effect as of the effective date of the policy of which this Coverage Part forms a part then countersignature on the Declarations Page of that policy by a duly authorized agent of **ours** is valid countersignature of this Coverage Part.

All of the provisions, conditions and other terms of this BUSINESS AUTO COVERAGE PART shall apply only as specified herein and none of the provisions, conditions and other terms of the policy of which this BUSINESS AUTO COVERAGE PART forms a part shall apply to insurance hereunder unless otherwise stated herein. Hereafter, any use of the word "policy" in this BUSINESS AUTO COVERAGE PART (or any endorsement forming a part of, changing or applicable to this BUSINESS AUTO COVERAGE PART ) shall be deemed to read "BUSINESS AUTO COVERAGE PART."

## DECLARATIONS — BUSINESS AUTO COVERAGE PART

### ITEM ONE — NAMED INSURED AND ADDRESS ————————➤

### ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those **autos** shown as covered **autos**. Autos are shown as covered **autos** for a particular coverage by the entry of one or more of the symbols from **ITEM THREE** next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from ITEM THREE shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS (Absence of a limit or deductible entry below means that the limit or deductible entry shown, if any, in ITEM FOUR applies instead) | ESTIMATED PREMIUM |
|---|---|---|---|
| LIABILITY INSURANCE | 1 | $ 750 ,000 | $ 15,369.00 |
| PERSONAL INJURY PROTECTION (or equivalent No-Fault coverage) | 5 | Separately stated in each Personal Injury Protection Endorsement minus $ NO deductible applicable to the named insured and relatives only | $ 227.00 |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-Fault coverage) | | Separately stated in each Added Personal Injury Protection Endorsement | $ |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each Property Protection Insurance Endorsement minus $ deductible for each **accident** | $ |
| AUTO MEDICAL PAYMENTS INSURANCE | 4 | $5000 for **Bodily Injury** for each **Insured** | $ 965.00 |
| UNINSURED MOTORISTS INSURANCE | 2 | $ .000 | $ 208.00 |
| PHYSICAL DAMAGE INSURANCE | | | |
| COMPREHENSIVE COVERAGE | 2 | Actual Cash Value or Cost of Repair, whichever is smaller, minus $ deductible for each covered **auto** for all **loss** except fire or lightning† | $ 1,934.00 |
| SPECIFIED PERILS COVERAGE | | Actual Cash Value or Cost of Repair, whichever is smaller, minus $25 deductible for each covered **auto** for **loss** caused by mischief or vandalism† | $ |
| COLLISION COVERAGE | 2 | Actual Cash Value or Cost of Repair, whichever is smaller, minus $ deductible for each covered **auto**† | $ 4,725.00 |
| TOWING AND LABOR (Not available in California) | | $25 for each disablement of a private passenger **auto** | $ |

Form Numbers of Endorsements forming part of this policy on above effective date:

A 1675, CA 0015, CA 9921 (NOT APP IN NY) CA 9903, CA 2117, A-4307-0, CA 2230, CA 2114, CA 2102, CA 2101 (KY) CA 2216 (FLA) CA 2210

**Endorsement Premium** (Not included in above Coverage premiums) $

**ESTIMATED TOTAL PREMIUM** $ 23,428.00

*For ITEM THREE see page BA-2 of this Declarations
†For HIRED AUTO LIMITS see ITEM FIVE on page BA-2 of this Declarations

The estimated total premium for this policy is based on the exposures you told **us you** would have when this policy began. **We** will compute **your** final premium due when **we** determine **your** actual exposures. The estimated total premium will be credited against the final premium due and **you** will be billed for the balance, if any. If the estimated total premium exceeds the final premium due **you** will get a refund. To determine **your** final premium due **we** may examine **your** records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year, the premium shall be computed annually based on **our** rates or premiums in effect at the beginning of each year of the policy.

The remainder of these DECLARATIONS printed on BA-2, and the conditions and provisions printed on pages BA-3 through BA-5 are a part of this Coverage Part.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977

Form A-4264-0  CDR  Printed in U.S.A.  (NS)

BA-1

COMPANY COPY

HART000020

**DECLARATIONS —**
**BUSINESS AUTO COVERAGE PART**
**(Continued)**

**THE HARTFORD**

Policy No.    10 C 671174W

## ITEM THREE — DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

| SYMBOL | | DESCRIPTION |
|---|---|---|
| 1 | = | ANY AUTO. (Auto liability coverage only.) |
| 2 | = | OWNED AUTOS ONLY. Only those **autos you** own (and for liability coverage any **trailers you** don't own while attached to power units **you** own).This includes those **autos** whose ownership **you** acquire after the policy begins. |
| 3 | = | OWNED PRIVATE PASSENGER AUTOS ONLY. Only the private passenger **autos you** own. This includes those private passenger **autos** whose ownership **you** acquire after the policy begins. |
| 4 | = | OWNED AUTOS OTHER THAN PRIVATE PASSENGER AUTOS ONLY. Only those **autos you** own which are not of the private passenger type (and for liability coverage any **trailers you** don't own while attached to power units **you** own). This includes those **autos**, not of the private passenger type, whose ownership **you** acquire after the policy begins. |
| 5 | = | OWNED AUTOS SUBJECT TO NO-FAULT. Only those **autos you** own for which **you** are required to have No-Fault Benefits in the state where they are licensed or principally garaged. This includes those **autos** whose ownership **you** acquire after the policy begins provided **you** are required to have No-Fault Benefits in the state where they are licensed or principally garaged. |

| SYMBOL | | DESCRIPTION |
|---|---|---|
| 6 | = | OWNED AUTOS SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those **autos you** own for which, because of the law in the state where they are licensed or principally garaged **you** are required to have and cannot reject uninsured motorists insurance. This includes those **autos** whose ownership **you** acquire after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | = | SPECIFICALLY DESCRIBED AUTOS. Only those **autos** described in **ITEM FOUR** for which a premium charge is shown (and for liability coverage any **trailers you** don't own while attached to any power unit described in **ITEM FOUR**). |
| 8 | = | HIRED AUTOS ONLY. Only those **autos you** lease, hire, rent or borrow. This does not include any **auto you** lease, hire, rent or borrow from any of **your** employees or members of their households. |
| 9 | = | NONOWNED AUTOS ONLY. Only those **autos you** do not own, lease, hire or borrow which are used in connection with **your** business. This includes **autos** owned by **your** employees or members of their households but only while used in **your** business or **your** personal affairs. |
| 10 | = | |

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

This item is completed by entries on endorsement(s) titled "**Schedule of Covered Autos You Own**" issued to form a part of this policy.

## ITEM FIVE — SCHEDULE OF HIRED AUTOS (Coverages and Premiums)

**LIABILITY INSURANCE — RATING BASIS IS COST OF HIRE**

| STATE   6619   T-10 | ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | ESTIMATED PREMIUM |
|---|---|---|---|
| NEW JERSEY | $  IF ANY | $    .760 | $  22.00 |

*Cost of hire means the total amount **you** incur for the hire of **autos you** don't own (not including **autos you** borrow or rent from **your** employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**PHYSICAL DAMAGE INSURANCE**

| COVERAGES | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | ESTIMATED TOTAL OF AUTO/DAYS OF HIRED AUTOS | RATE PER AUTO PER DAY | ESTIMATED PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | $          or Actual Cash Value or Cost of Repair, whichever is smallest, minus $          deductible for each covered **auto** for all **loss** except fire or lightning. | | | $ |
| SPECIFIED PERILS | $          or Actual Cash Value or Cost of Repair, whichever is smallest, minus $ 25  deductible for each covered **auto** for **loss** caused by mischief or vandalism. | | | $ |
| COLLISION | $          or Actual Cash Value or Cost of Repair, whichever is smallest, minus $          deductible for each covered **auto** | | | $ |
| | | | ESTIMATED TOTAL PREMIUM | $ |

**PHYSICAL DAMAGE INSURANCE** for hired **autos** is excess unless indicated below by "☒".

☐ If this box is marked, **PHYSICAL DAMAGE INSURANCE** applies on a direct primary basis and for purposes of the condition entitled OTHER INSURANCE, any hired **auto** is deemed to be a covered **auto you** own.

## ITEM SIX — SCHEDULE OF NONOWNED AUTOS

**LIABILITY INSURANCE** (Includes **autos** owned by **your** employees or members of their households but only while used in **your** business or **your** personal affairs) — RATING BASIS IS NUMBER OF EMPLOYEES

| ESTIMATED NUMBER OF EMPLOYEES | CLASSIFICATION CODE | ESTIMATED PREMIUM |
|---|---|---|
| 300 | 6603 | $    180.00 |

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, 1977

Countersigned by ...............................................

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form A-4264-0  CDR  Printed in U.S.A.  (NS)        BA-2        HART00-00012W

COMPANY COPY



CA 21 14
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE
## (NEW JERSEY)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No.  **10  C  671174W** |
|---|---|
| Named Insured | Countersigned by |
| | (Authorized Representative) |

In consideration of the payment of premium and subject to all of the provisions of this endorsement and to the applicable provisions of the policy, the company agrees with the named insured as follows:

### Schedule

Designated Insured:_____

Limits of Liability:  Bodily Injury      $15,000 each person
$30,000 each accident
Property Damage $ 5,000 each accident

Advance Premiums $

Description of Insured Highway Vehicles:

Any highway vehicle registered or principally garaged in New Jersey which is:

(check appropriate box)

☐ An owned automobile under Part I of the policy

☐ A private passenger automobile owned by the named insured

☐ Owned by the named insured

☐ Designated in the declarations of the policy and any highway vehicle of the same type ownership of which is acquired during the policy period by the named insured as a replacement therefor

☐ Any mobile equipment owned by the named insured

☐ _____

## I.   COVERAGE UNINSURED MOTORISTS

(Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally

entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

**Exclusions**

This insurance does not apply:

(a) to bodily injury or property damage with respect to which the insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives;

The company or its representative does not certify that these documents constitute a complete and accurate copy of the policy.

CA 21 14 (Ed. 01 78)          Copyright, Insurance Services Office, 1977          Page 1 of 4

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
## (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. 10 C 671174W |
|---|---|
| Named Insured | Countersigned by |
| | (Authorized Representative) |

The Company agrees with the **named insured**, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

The insurance for PERSONAL INJURY PROTECTION is subject to a deductible of $ __NO__ applicable to ☒ the following **named insured** only: ____

☐ each **named insured** and each dependent **relative.**

☐ **Work loss** for named insured does not apply

☐ **Work loss** for named insured and dependent **relative** does not apply

☐ Coverage reduced by Medicare Benefits for **named insured** and dependent **relative**

☐ Coverage reduced by military benefits for **named insured** and dependent **relative**

### SECTION I

### PERSONAL INJURY PROTECTION

The Company will pay, in accordance with the Florida Automobile Reparations Reform Act, as amended, to or for the benefit of the injured person:

(a) 80% of **medical expenses,** and

(b) 60% of **work loss,** and

(c) **replacement services expenses,** and

(d) funeral, burial or cremation expenses,

incurred as a result of **bodily injury,** caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

(1) the **named insured** or any **relative** while **occupying** a **motor vehicle** or, while a **pedestrian** through being struck by a **motor vehicle;** or

(2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian,** through being struck by the **insured motor vehicle.**

### Exclusions

This insurance does not apply:

(a) to the **named insured** or any **relative** while **occupying** a **motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

(b) to any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured;**

(c) to any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

(i) causing **bodily injury** to himself intentionally;

(ii) convicted of driving while under the influence of alcohol or narcotic drugs to the extent that his driving faculties are impaired; or

(iii) while committing a felony;

(d) to the **named insured** or dependent **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

(e) to any **pedestrian,** other than the **named insured** or any **relative,** not a legal resident of the State of Florida;

(f) to any person, other than the **named insured,** if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Automobile Reparations Act, as amended;

(g) to any person, other than the **named insured** or any **relative,** who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

(h) to any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

### Limit of Liability; Application of Deductible; Other Insurance

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total

The company certifies that this is one of its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000023



**General Liability**
**Amendatory Endorsement — Additional Definition**

**THE HARTFORD**

Named Insured and Address

## 10 C 671174W

This endorsement forms a part of Policy No..........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ....................................................Effective hour is the same
as stated in the Declarations of the Policy.

It is agreed that the following definition is added:

"*loading or unloading*", with respect to an *automobile*, means the handling of property after it is moved from the place where it is accepted for movement into or onto an *automobile* or while it is in or on an *automobile* or while it is being moved from an *automobile* to the place where it is finally delivered, but "loading or unloading" does not include the movement of property by means of a mechanical device (other than a hand truck) not attached to the *automobile*.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by.................................................................
                                                    *Authorized Agent*

**Form L-4128-0**  Printed in U.S.A.  ISO: (GL0019 (Ed. 07-78))

HART000024

## ERRORS AND OMISSIONS INSURANCE — EMPLOYEE BENEFIT PROGRAMS

Named Insured and Address

**10 C 671174W**

This endorsement forms a part of Policy No.....................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................... ........................................ Effective hour is the same as stated in the Declarations of the policy.

### SCHEDULE

| Limits of Liability | | Estimated Advance Premium |
|---|---|---|
| $  **25,000**  each claim | | |
| $  **75,000**  aggregate | | $  **INCL IN COMPOSITE RATE** |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

### INSURING AGREEMENTS

I. **COVERAGE.** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** As respects such insurance as is afforded by the terms of this endorsement, the company shall:
(a) defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III. **DEFINITIONS.**
(a) **"Insured"** — The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
(b) **"Employee Benefit Programs"** — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
(c) **"Administration"** — The unqualified word "Administration", wherever used, shall mean:
(1) giving counsel to employees with respect to Employee Benefit Programs;
(2) interpreting Employee Benefit Programs;
(3) handling of records in connection with Employee Benefit Programs;
(4) effecting enrollment of employees under Employee Benefit Programs;
provided all such acts are authorized by the Named Insured.

IV. **ENDORSEMENT PERIOD, TERRITORY.** This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

### EXCLUSIONS

This endorsement does not apply:
(a) to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b) to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
(c) to any claim for failure of performance of contract by an insurer;
(d) to any claim based upon:
(1) failure of stock to perform as represented by an insured,
(2) advice given by an insured to an employee to participate or not to participate in stock subscription plans.

### CONDITIONS

1. **Policy Conditions.** All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2. **Limits of Liability**
(a) Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above proviso respecting "each claim", the total limit of the company's liability hereunder for all damages.
(b) $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
(c) The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. If the company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the company.
(d) The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3. **Premium.** The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| **122** | .......................First  5,000 | $................ |
| | ........................Next  5,000 | $................ |
| | ........................Over 10,000 | |
| | | Total $  **INCL IN COMPOSITE RATE** |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing contained herein shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

Form L-2894-1   Printed in U.S.A.  6/66

The company generated these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by .............................................
                                    Authorized Agent

## ADDITIONAL INSURED
(Premises Leased to the Named Insured)

Named Insured and Address

**10 C 671174W**

This endorsement forms a part of Policy No.............................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date...........................................................12:01 A. M., standard time at the address of the *named insured* as
stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

---

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect
to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject
to the following additional exclusions:

The insurance does not apply:

1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums |  |
|---|---|---|---|
|  |  | Bodily Injury Liability | Property Damage Liability |
| 3400 THIRD AVENUE FOSTER CITY, CAL. | SAN MATEO BAY BUILDING ASSOCIATES | INCLUDED IN COMPOSITE RATE | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**

Countersigned by.............................................................................
*Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form L-3025-0   Printed in U. S. A.   5-'67   (NBCU: G 109)

HART000026

## ADDITIONAL INSURED
### (Premises Leased to the Named Insured)

Named Insured and Address

### 10 C 671174W

This endorsement forms a part of Policy No.............................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date..............................................................12:01 A. M., standard time at the address of the *named insured* as
stated herein.

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
> COMPREHENSIVE GENERAL LIABILITY INSURANCE
> MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
> OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
> STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect
to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject
to the following additional exclusions:

The insurance does not apply:

1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| 1375 E. HIGGENS RD ELK GROVE, ILL. | JOHN G. TWIST CO. | | |
| **AND** ANY PREMISES UPON WHICH THE NAMED INSURED IS REQUIRED IN A WRITTEN AGREEMENT TO PROVIDE INSURANCE ON BEHALF OF THE LESSOR & OF WHICH THE COMPANY IS NOTIFIED WITHIN THIRTY (30) DAYS OF THE EXECUTION OF SAID WRITTEN AGREEMENT. | | INCLUDED IN COMPOSITE RATE. | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**

Countersigned by.................................................................
*Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form L-3025-0   Printed in U. S. A.   5-'67   (NBCU: G 109)

HART000027

**BROAD FORM PROPERTY**
**DAMAGE ENDORSEMENT**
(Including Completed Operations)

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 671174V**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................Effective hour is the
same as stated in the Declarations of the Policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

XXXXXXXXXXXXXXXXXXXXXXXXXX

**Classification:**

It is agreed that the insurance for *property damage* liability applies, subject to the following additional provisions:

A.   The exclusions relating to *property damage* to (1) property owned, occupied or used by or rented to the *insured* or in the care, custody or
     control of the *insured* or as to which the *insured* is for any purpose exercising physical control and (2) work performed by or on behalf of the
     *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are
     replaced by the following exclusions (y) and (z):

   (y)   to *property damage*
      (1)   to property owned or occupied by or rented to the *insured*, or, except with respect to the use of *elevators*, to property held by the
            *insured* for sale or entrusted to the *insured* for storage or safekeeping,
      (2)   except with respect to liability under a written sidetrack agreement or the use of *elevators* to
         (a)   property while on premises owned by or rented to the *insured* for the purpose of having operations performed on such property
               by or on behalf of the *insured,*
         (b)   tools or equipment while being used by the *insured* in performing his operations,
         (c)   property in the custody of the *insured* which is to be installed, erected or used in construction by the *insured,*
         (d)   that particular part of any property, not on premises owned by or rented to the *insured,*
            (i)    upon which operations are being performed by or on behalf of the *insured* at the time of the *property damage* arising out of
                   such operations, or
            (ii)   out of which any *property damage* arises, or
            (iii)  the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by
                   or on behalf of the *insured;*
   (z)   with respect to the *completed operations hazard* and with respect to any classification stated above as "including completed operations",
         to *property damage* to work performed by the *named insured* arising out of the work or any portion thereof, or out of materials, parts or
         equipment furnished in connection therewith.

B.   The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible
     portion thereof) available to the *insured,* such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk
     Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy, and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

INCL IN COMPOSITE RATE
The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a valid and accurate copy of the policy.

Countersigned by.......................................................
                                                    Authorized Agent

## ADDITIONAL INSURED
(Vendors—Limited Form)

**10 C 671174W**

Named Insured and Address

This endorsement forms a part of Policy No.................................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date..................................................................12:01 A. M., standard time at the address of the named insured as
stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

---

It is agreed that the "Persons Insured" provision is amended to include any person or organization (herein referred to as "Vendor"), as an Insured, but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following additional provisions:

1. The insurance with respect to the Vendor does not apply to:

    (a) any express warranty, or any distribution or sale for a purpose, unauthorized by the Named Insured

    (b) bodily injury or property damage arising out of

     (i) any act of the Vendor which changes the condition of the products,

     (ii) any failure to maintain the product in merchantable condition,

     (iii) any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products, or

     (iv) products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the Vendor;

    (c) bodily injury or property damage occurring within the Vendor's premises.

2. This insurance does not apply to any person or organization, as Insured, from whom the Named Insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

## INCL IN COMPOSITE RATE

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
**INSURANCE GROUP**
HARTFORD, CONNECTICUT

Countersigned by.............................................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form L-3243-0**  Printed in U. S. A.  10-'68  (NBCU: G-114)

SUPPLEMENTARY COVERAGE ENDORSEMENT
PERSONAL INJURY AND ADDITIONAL INSURED (Employees)

10 C 671174W

Named Insured and Address

This endorsement forms a part of Policy No..........................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.:..................................................12:01 A. M., standard time at the address of the *named insured*
as stated herein.

. This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

It is agreed that:

1. The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply

   a. to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

   b. to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured*, or if the *named insured* is a partnership or joint venture, any partner or member thereof.

## EXCLUSION 1 (C) IS DELETED

It is further agreed that:

1. Such insurance as is afforded under Coverage A with respect to *bodily injury*, is extended to apply to *personal injury* as defined herein, subject to the following additional provisions:

   1. This insurance does not apply

      a. to liability for *personal injury* assumed by the *insured* under any contract or agreement;

      b. to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

      c. to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured*;

      d. to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

      e. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

      f. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

   2. When used in reference to this insurance

      a. "personal injury" means:

         1. injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory*.

      b. "personal injury offense" means:

         1. false arrest, detention or imprisonment, or malicious prosecution,
         2. libel, slander, defamation, disparagement or violation of an individual's right of privacy, or
         3. wrongful entry or eviction or other invasion of the right of private occupancy.

   3. The Limits of Liability section is amended in the following respect:

      The total liability of the company for all damages because of all *personal injury* to which this policy applies, shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by...................................    Authorized Agent



**THE HARTFORD**

Form L-3355-1   Printed in U. S. A.   (NS)

...ted these documents in its
business record... ...the... company
does not certify that these documents constitute
a complete and accurate copy of the policy.
INCLUDE COMPOSITE RATE

# Comprehensive General Liability Insurance Coverage Part

| Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|
| Quality Control. | | |

This Coverage Part forms a part of Policy No. **10 C 671174W** ..............................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective .............................................(at the hour stated in the policy) and forms a part of the above designated policy issued to..................................................................................................................................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| A — Bodily Injury Liability | $ | $   AS PER   ,000 each occurrence |
| | | $   AL-68 ,000 aggregate |
| B — Property Damage Liability | $ | $   ,000 each occurrence |
| | | $   ,000 aggregate |

| Rating Classifications<br>Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | B.I. | P.D. |
| (a) Premises — Operations | | (a) Area<br>(b) Frontage<br>(c) Remuneration<br>(d) Receipts | (a) Per 100 Sq. Ft. of Area<br>(b) Per Linear Foot<br>(c) Per $100 of Remun.<br>(d) Per $100 of Receipts | | | |
| (b) Escalators | | (e) Landings | (e) Per Landing | | | |
| (c) Independent Contractors | | (f) Cost | (f) Per $100 of Cost | | | |
| (d) Completed Operations | | (g) Receipts | (g) Per $1,000 of Receipts | | | |
| (e) Products | | (h) Sales | (h) Per $1,000 of Sales | | | |
| | | | | | INCLUDED IN COMPOSITE RATE | |

Form Numbers of Endorsements forming part of this Coverage Part at issue:

**AL-8-1-B (LIST)**

| TOTAL ADVANCE PREMIUMS | $ | $ |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $          1st Anniversary $          2nd Anniversary $

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by..................................................................................

*Authorized Agent*

Form L-3503-1   CDR   Printed in U.S.A. (ISO: CGL 1/1/73)          CGL-1          HARTFORD COMPANY COPY

I hereby certify that these documents constitute a complete and accurate copy of the policy.

ATTACH FORMS ALONG THIS MARGIN BELOW THIS MARK +

| | Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|---|
| | Quality Control | | |

## 10 C 671174W

This Coverage Part forms a part of Policy No.................................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective...................................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to..................................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges.  The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability | |
|---|---|---|---|
| E — Premises Medical Payments | $ | $ 1,000 | each person |
| | | $10,000 | each accident |

| Description of Hazards | Advance Premiums |
|---|---|
| (a) Premises and Operations | **INCLUDED IN COMPOSITE RATE** |
| (b) Escalators | |
| (c) Sports Activities | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUM | |
|---|---|---|
| AL-8-1-B (LIST) | | $ |

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $     1st Anniversary $     2nd Anniversary $

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by..................................................
                                *Authorized Agent*

Form L-3505-0 CDR    Printed in U. S. A.   (ISO: MP 1/1/73)        **MP-1**

The company located these documents in its records and produces them as they are kept in the ordinary course of business. The company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000032

# CONTRACTUAL LIABILITY INSURANCE (BLANKET COVERAGE) — COVERAGE PART   COMPANY COPY

| Approved | Confidential Report | Und. Notes: |
|---|---|---|
| Quality Control | | |

This Coverage Part forms a part of Policy No. **10 C 671174W** issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective............................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to..............................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| YB — Contractual Bodily Injury Liability | $ | $ **AS PER** ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ | $ **AL-68** ,000 each occurrence |
| | | $ ,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B. I. | P. D. | B. I. | P. D. |
| | | (a) Cost | (a) Per $100 of Cost | | | |
| | | (b) Sales | (b) Per $1,000 of Sales | | | |
| ALL WRITTEN AGREEMENTS | | | | | INCLUDED IN COMPOSITE RATE | |

Form Numbers of Endorsements forming part of this Coverage Part at issue :
**AL-8-1-B**

| TOTAL ADVANCE PREMIUMS | $ | $ |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $          1st Anniversary $          2nd Anniversary $

The following exclusions also **apply:**
☐ Exclusion (p) — Products and Completed Operations     ☐ Exclusion (q)—x, c & u

I.   **COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

   **COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

   **Coverage YB.** *bodily injury* or

   **Coverage ZB.** *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

   (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

   (ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by........................................................
                                                        *Authorized Agent*

At this time, the company does not certify that these documents constitute a true and accurate copy of the policy.

ATTACH FORMS ALONG MARGIN BELOW THIS MARK +

## THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No............................ **10 C 671174W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

### – ASSAULT & BATTERY –

**IT IS AGREED THAT THE DEFINITION OF OCCURRENCE IS AMENDED BY
ADDING THERETO THE FOLLOWING:**

"**BODILY INJURY OR PROPERTY DAMAGE CAUSED FOR
THE PURPOSE OF PROTECTING PERSONS OR PROPERTY
SHALL BE DEEMED NEITHER EXPECTED NOR INTENDED
FROM THE STANDPOINT OF THE INSURED.**"

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company, shall constitute valid countersignature of this endorsement.

Countersigned by.........................................................................
                                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

**THE HARTFORD**

Named Insured and Address

TO C 671174W

This endorsement forms a part of Policy No..........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### -INCIDENTAL MALPRACTICE-

**IT IS AGREED THAT: -**

1. **THE DEFINITION OF "BODILY INJURY" IS AMENDED TO INCLUDE INJURY ARISING OUT OF THE RENDERING OF OR FAILURE TO RENDER PROFESSIONAL SERVICES BY ANY PHYSICIAN, DENTIST OR NURSE WHILE EMPLOYED BY THE NAMED INSURED TO PROVIDE SUCH SERVICES.**

2. **EXCLUSION (J) DOES NOT APPLY TO INJURY TO THE EMOTIONS OR REPUTATIONS OF A PERSON ARISING OUT OF THE RENDERING OF SUCH SERVICES.**

**INCLUDED IN COMPOSITE RATE.**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.......................................................... *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART000035

THE HARTFORD

Named Insured and Address

**10 C 671174W**

This endorsement forms a part of Policy No.........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...........................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### KNOWLEDGE AND NOTICE OF OCCURRENCE.

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY AN AGENT,
SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT CONSTITUTE
KNOWLEDGE TO THE INSURED UNLESS AN EXECUTIVE OFFICER OF THE
NAMED INSURED CORPORATION OR OTHER PERSONS EMPLOYED BY IT
IN A MANAGERIAL CAPACITY SHALL HAVE RECEIVED SUCH NOTICE.

IT IS AGREED THAT IF THE INSURED REPORTS AN OCCURRENCE TO
ITS WORKMEN'S COMPENSATION CARRIER WHICH DEVELOPS INTO
A LIABILITY CLAIM FAILURE TO REPORT SUCH OCCURRENCE TO THE
COMPANY AT THE TIME OF OCCURRENCE SHALL NOT BE DEEMED IN
VIOLATION OF CONDITION 4 " INSURED'S" DUTIES IN THE EVENT
OF OCCURRENCE, CLAIM OR SUIT".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ...........................................................
                                                    *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

**THE HARTFORD**

Named Insured and Address

**10 C 671174W**

This endorsement forms a part of Policy No..............................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### -LIQUOR LIABILITY HOSTS -

## IT IS AGREED THAT EXCLUSION (H) OF THE COMPREHENSIVE

## GENERAL LIABILITY COVERAGE PART SHALL NOT APPLY.

### INCLUDED IN COMPOSITE RATE

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by...................................................................
                                                    *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART000037

**THE HARTFORD**

Named Insured and Address

**10 C 671174W**

This endorsement forms a part of Policy No.................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date :................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**AUTO MEDICAL PAYMENTS, AUTO PHYSICAL DAMAGE, COMPLETED OPERATIONS
AND PRODUCTS INSURANCE
COMPREHENSIVE AUTO LIABILITY, COMPREHENSIVE GENERAL LIABILITY,
CONTRACTUAL LIABILITY, PREMISES MEDICAL PAYMENTS, PROTECTION
AGAINST UNINSURED MOTORISTS**

## -NOTICE OF CANCELLATION-

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THE POLICY

FOR ANY REASON OTHER THAN NON-PAYMENT OF PREMIUM, THIRTY (30)

DAYS PRIOR WRITTEN NOTICE THEREOF WILL BE FURNISHED TO THE

NAMED INSURED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................................
                                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form AL-8-1 B**   Printed in U.S.A.   ISO:

HART000038

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 671174W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY

---

### -UNINTENTIONAL ERRORS OR OMISSIONS-

IT IS AGREED THAT FAILURE OF THE INSURED TO DISCLOSE ALL
HAZARDS EXISTING AS OF THE INCEPTION DATE OF THE POLICY
SHALL NOT PREJUDICE THE INSURED WITH RESPECT TO THE COVERAGE
AFFORDED BY THIS POLICY, PROVIDED SUCH FAILURE OR ANY
OMISSION IS NOT INTENTIONAL.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by .............................................................
                                              Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-8-1 B    Printed in U.S.A.   ISO:

HART000039

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 671174W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ....................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**LIST OF ENDORSEMENTS AND COVERAGE PARTS FORMING PART OF POLICY AT ISSUE:**

| | |
|---|---|
| A-1675 | L-2853-1 |
| CA-0015 | L-3025-0 |
| CA-9921 | L-3252-2 |
| CA-9903 | L-3243-0 |
| CA-2117 | L-3355-1 |
| A-4307-0 | L-3503-1 |
| CA-2230 (N.J.) | L-3505-0 |
| CA-2114 (N.J.) | L-3513-0 |
| CA-2102 (CA) | L-3523-0 |
| CA-2101 (KY) | AL-8-1-B ASSAULT & BATTERY |
| CA-2216 (KY) | AL-8-1-B INCIDENTAL MALPRACTICE |
| CA-2210 (FL) | AL-8-1-B KNOWLEDGE & NOTICE OF OCCURRENCE |
| L-4128-0 | AL-8-1-B LIQUOR LIABILITY HOSTS |
| | AL-8-1-B NOTICE OF CANCELLATION |
| | AL-8-1-B UNINTENTIONAL ERRORS |
| | AL-57-0 |
| | AL-68-0 |
| | AL-8-1-B (PREMIUM COMPUTATION) |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..................................................................
                                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART000040



**THE HARTFORD**

This endorsement forms a part of Policy No. **10 C 671174W** issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address

**CENTRICO INC.**
**100 FAIRWAY COURT**
**NORTHVALE, N.J. 07647**

Effective date **08/25/80** .................................12:01 A. M., standard time at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
**PREMISES MEDICAL PAYMENTS INSURANCE**
**CONTRACTUAL LIABILITY INSURANCE**
**ERRORS AND OMISSIONS INSURANCE - EMPLOYEE BENEFIT PROGRAMS**

IT IS AGREED THAT ITEM 2. "POLICY PERIOD" IS EXTENDED TO EXPIRE ON

10/25/80 12:01 A.M. STANDARD TIME

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by: ....................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B    Printed in U.S.A.    ISO:



**THE HARTFORD**

This endorsement forms a part of Policy No. ............................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

10 C 671174W

Named Insured and Address

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J. 07647

Effective date ....................................... 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

**08/25/80**

P/R .167

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**BUSINESS AUTO**

**IT IS AGREED THE POLICY PERIOD IS EXTENDED TO EXPIRE 10/25/80**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. 77 MERC - 2315 | 386.00 | 36.00 | ---- | 2.00 | 107.00 | 213.00 |
| 7398 T-10 $20,000/3 | 64.00 | 6.00 | ---- | ---- | 18.00 | 36.00 |
| 2. 73 PONTIAC - 0428 | 386.00 | 36.00 | ---- | 2.00 | 19.00 | 79.00 |
| 7398 T-10 $5,250/6 | 64.00 | 6.00 | ---- | ---- | 3.00 | 13.00 |
| 3. 76 BUICK - 9570 | 386.00 | 36.00 | ---- | 2.00 | 27.00 | 100.00 |
| 7398 T-10 $6,178/4 | 64.00 | 6.00 | ---- | ---- | 5.00 | 17.00 |
| 4. 72 DODGE - 1153 | 563.00 | ---- | 47.00 | 2.00 | 24.00 | 37.00 |
| 23414 T-10 $4,389/6 | 94.00 | ---- | 8.00 | ---- | 4.00 | 6.00 |
| 5. 66 CHEV - 3956 | 563.00 | ---- | 47.00 | 2.00 | 24.00 | 37.00 |
| 23414 T-10 $3,400/6 | 94.00 | ---- | 8.00 | ---- | 4.00 | 6.00 |
| 6. 78 CHEV - 9164 | 432.00 | ---- | 31.00 | 4.00 | 53.00 | 123.00 |
| 7398 T-15 $5,500/3 | 72.00 | ---- | 5.00 | 1.00 | 9.00 | 21.00 |
| 7. 76 FORD - 3820 | 432.00 | ---- | 31.00 | 4.00 | 57.00 | 116.00 |
| 7398 T-15 $7,800/5 | 72.00 | ---- | 5.00 | 1.00 | 10.00 | 19.00 |
| 8. 77 DODGE - 2263 | 432.00 | ---- | 31.00 | 4.00 | 38.00 | 104.00 |
| 7398 T-15 $4,954/4 | 72.00 | ---- | 5.00 | 1.00 | 6.00 | 17.00 |
| 9. 78 DODGE -7169 | 432.00 | ---- | 31.00 | 4.00 | 53.00 | 123.00 |
| 7398 T-15 $5,400/2 | 72.00 | ---- | 5.00 | 1.00 | 9.00 | 21.00 |
| 10. 77 DODGE - 2262 | 432.00 | ---- | 31.00 | 4.00 | 38.00 | 104.00 |
| 7398 T-10 $4,949/3 | 72.00 | ---- | 5.00 | 1.00 | 6.00 | 17.00 |
| 11. 74 VOLKS - 3393 | 432.00 | ---- | 31.00 | 4.00 | 35.00 | 79.00 |
| 7398 T-15 $5,204/6 | 72.00 | ---- | 5.00 | 1.00 | 6.00 | 13.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the *declarations* page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ................................................................
Authorized Agent

The company located these documents in its files. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

FRED S JAMES & CO, OF N.Y. 25-2170
08/29/79

**THE HARTFORD**

10 C 671174U

This endorsement forms a part of Policy No....................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J.

Effective date ....................................12:01 A.M., standard time
at the address of the named insured as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | | | | | | |
|---|---|---|---|---|---|---|
| 12. 74 AUDI - 8394 | 604.00 | ------ | 38.00 | 10.00 | 37.00 | 110.00 |
| 7398 T-91 $4,989/6 | 101.00 | ------ | 6.00 | 2.00 | 6.00 | 18.00 |
| 13. 77 PLYMOUTH - 2060 | 604.00 | ------ | 38.00 | 10.00 | 77.00 | 201.00 |
| 7398 T-91 $5,811/3 | 101.00 | ------ | 6.00 | 2.00 | 13.00 | 34.00 |
| 14. 77 PLYMOUTH - 4645 | 604.00 | ------ | 38.00 | 10.00 | 77.00 | 201.00 |
| 7398 T-91 $5,380/3 | 101.00 | ------ | 6.00 | 2.00 | 13.00 | 34.00 |
| 15. 77 PLYMOUTH -1819U | 604.00 | ------ | 38.00 | 10.00 | 77.00 | 201.00 |
| 7398 T-91 $5,380/3 | 101.00 | ------ | 6.00 | 2.00 | 13.00 | 34.00 |
| 16. 77 PLYMOUTH 1164 | 604.00 | ------ | 38.00 | 10.00 | 77.00 | 201.00 |
| 7398 T-91 $5,426/3 | 101.00 | ------ | 6.00 | 2.00 | 13.00 | 34.00 |
| 17. 75 MERC 1307 | 604.00 | ------ | 38.00 | 10.00 | 176.00 | 291.00 |
| 7398 T-91 $14,667/5 | 101.00 | ------ | 6.00 | 2.00 | 29.00 | 49.00 |
| 18. 72 DODGE 3510 | 604.00 | ------ | 38.00 | 10.00 | 48.00 | 173.00 |
| 7398 T-91 $4,600/6 | 101.00 | ------ | 6.00 | 2.00 | 8.00 | 29.00 |
| 19. 74 CHEV 7106 | 802.00 | ------ | 86.00 | 10.00 | 48.00 | 173.00 |
| 03414 T-91 $5,700/6 | 134.00 | ------ | 14.00 | 2.00 | 8.00 | 29.00 |
| 20. 77 CHEVY 4644 | 604.00 | ------ | 38.00 | 10.00 | 78.00 | 201.00 |
| 7398 T-91 $5,380/3 | 101.00 | ------ | 6.00 | 2.00 | 13.00 | 34.00 |
| 21. 77 DODGE 9963 | 438.00 | 35.00 | 16.00 | 7.00 | 46.00 | 137.00 |
| 7398 T-10 $5,800/3 | 73.00 | 6.00 | 3.00 | 1.00 | 8.00 | 23.00 |
| 22. 78 FORD 0805 | 479.00 | ----- | 55.00 | 17.00 | 53.00 | 137.00 |
| 03414 T-10 $7,840/2 | 80.00 | ----- | 9.00 | 3.00 | 9.00 | 23.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.....................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 C   Printed in U.S.A.   ISO:



**THE HARTFORD**

10 C 671174W

This endorsement forms a part of Policy No.................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address

CENTRICO INC.
100 FAIRWAY COURT
MONTVALE, N.J. 07647

Effective date .................................................12:01 A.M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | | | | | |
|---|---|---|---|---|---|
| 23. 78 PLYMOUTH 9603 | 604.00 | ----- | 38.00 | 10.00 | 96.00 | 232.00 |
| 7398 T-91 $5,900/2 | 101.00 | ----- | 6.00 | 2.00 | 16.00 | 39.00 |
| 24. 78 FORD 9622 | 604.00 | ----- | 38.00 | 10.00 | 96.00 | 232.00 |
| 7398 T-91 $5,900/2 | 101.00 | ----- | 6.00 | 2.00 | 16.00 | 39.00 |
| 25. 79 DODGE 1018 | 479.00 | ----- | 55.00 | 17.00 | 69.00 | 187.00 |
| 03414 T-10 $6,936/1 | 80.00 | ----- | 9.00 | 3.00 | 12.00 | 31.00 |
| 26. 79 CHEV 6330 | 245.00 | 12.00 | 24.00 | 5.00 | 57.00 | 139.00 |
| 7398 T-11 $7,567/1 | 41.00 | 2.00 | 4.00 | 1.00 | 10.00 | 23.00 |
| 27. 79 BHW 6519 | 386.00 | 36.00 | ---- | 2.00 | 141.00 | 280.00 |
| 7398 T-10 $23,850/1 | 64.00 | 6.00 | ---- | ---- | 24.00 | 47.00 |
| 28. 78 BUICK 8G17 | 386.00 | 36.00 | ---- | 2.00 | 38.00 | 141.00 |
| 7398 T-10 $6,900/2 | 64.00 | 6.00 | ---- | ---- | 6.00 | 24.00 |
| 29. 79 CHEV 9262 | 432.00 | ---- | 31.00 | 4.00 | 77.00 | 166.00 |
| 7398 T-15 $6,550/1 | 72.00 | ---- | 5.00 | 1.00 | 13.00 | 28.00 |
| 30. 79 PONTIAC 3179 | 604.00 | ----- | 38.00 | 10.00 | 91.00 | 207.00 |
| 7398 T-91 $7,200/1 | 101.00 | ----- | 6.00 | 2.00 | 15.00 | 35.00 |
| HIRED CAR | 22.00 | | | | | |
| 6619 T-10 | 4.00 | | | | | |
| NON OWNED | 180.00 | | | | | |
| 6603 | 30.00 | | | | | |
| | 2565.00 | 38.00 | 156.00 | 39.00 | 325.00 | 793.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of said policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by....................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 C   Printed in U.S.A.  ISO:

HART000044

# Countersignature Memo

**ORLANDO REGIONAL OFFICE**

Insured
**CENTRICO INC.**

Address

**YOU CAN AT COURT**
**NO. V. , N.J. 07647**

| Company Office | Co. Code | Policy No. | Expiration | Date |
|---|---|---|---|---|
| MANHATTAN REGIONAL | 5 | 10 C 671174W | 08/25/80 | 08/29/79 SR |

Please show Countersigning Agent preferred, if any, in block below.

Name and Address of Countersigning Agent

**Name and Address of Producer**

FRED S JAMES & CO. OF N.Y.
55 WATER STREET
NEW YORK, N.Y.

**PRODUCER —**

The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a party to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| FLA | 0161285373-01 | T. J. Mahoney |

Producer's Rate of Commission **100** % Premium **166.9**
Effective Date **08/25/79**

10-25-80

If not licensed, is same desired? ☐ Yes ☐ No. If "Yes", which States:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Code
1 Hartford Fire Insurance Company
5 Hartford Accident and Indemnity Company
3 Hartford Casualty Insurance Company

Code
6 New York Underwriters Insurance Company
7 Twin City Fire Insurance Company

Form G-2669-1 Printed in U.S.A.

**EXTRA COPY**

HART000045

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 671174U**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

## -LIQUOR LIABILITY HOSTS -

## IT IS AGREED THAT EXCLUSION (H) OF THE COMPREHENSIVE GENERAL LIABILITY COVERAGE PART SHALL NOT APPLY.

### INCLUDED IN COMPOSITE RATE

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ..................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B    Printed in U.S.A.    ISO:

THE HARTFORD

Named Insured and Address

10 C 671174V

This endorsement forms a part of Policy No...........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
*contractual Liability Insurance*
*Premises Medical Payments Insurance*

## KNOWLEDGE AND NOTICE OF OCCURRENCE.

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY AN AGENT,
SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT CONSTITUTE
KNOWLEDGE TO THE INSURED UNLESS AN EXECUTIVE OFFICER OF THE
NAMED INSURED CORPORATION OR OTHER PERSONS EMPLOYED BY IT
IN A MANAGERIAL CAPACITY SHALL HAVE RECEIVED SUCH NOTICE.

IT IS AGREED THAT IF THE INSURED REPORTS AN OCCURRENCE TO
ITS WORKMEN'S COMPENSATION CARRIER WHICH DEVELOPS INTO
A LIABILITY CLAIM FAILURE TO REPORT SUCH OCCURRENCE TO THE
COMPANY AT THE TIME OF OCCURRENCE SHALL NOT BE DEEMED IN
VIOLATION OF CONDITION 4 " INSURED'S" DUTIES IN THE EVENT
OF OCCURRENCE, CLAIM OR SUIT°.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ..............................................................
                                          Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL 8 1 B  Printed in U.S.A.  ISO:



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 671174U**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.



Effective date ................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

---

## -INCIDENTAL MALPRACTICE-

### IT IS AGREED THAT: -

1. THE DEFINITION OF "BODILY INJURY" IS AMENDED TO INCLUDE INJURY ARISING OUT OF THE RENDERING OF OR FAILURE TO RENDER PROFESSIONAL SERVICES BY ANY PHYSICIAN, DENTIST OR NURSE WHILE EMPLOYED BY THE NAMED INSURED TO PROVIDE SUCH SERVICES.

2. EXCLUSION (J) DOES NOT APPLY TO INJURY TO THE EMOTIONS OR REPUTATIONS OF A PERSON ARISING OUT OF THE RENDERING OF SUCH SERVICES.

~~INCLUDED IN COMPOSITE RATE~~

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ...........................................................
                                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form At-8-T-B   Printed in U.S.A.  ISO:

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. .................. 10 C 671174V
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.



This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
*Contractual Liability Insurance*

**- ASSAULT & BATTERY -**

**IT IS AGREED THAT THE DEFINITION OF OCCURRENCE IS AMENDED BY ADDING THERETO THE FOLLOWING:**

**"BODILY INJURY OR PROPERTY DAMAGE CAUSED FOR THE PURPOSE OF PROTECTING PERSONS OR PROPERTY SHALL BE DEEMED NEITHER EXPECTED NOR INTENDED FROM THE STANDPOINT OF THE INSURED."**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.....................................................
                                    *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-6-T-B   Printed in U.S.A.   ISO:
22440-2 A



**Amendment — Limits of Liability
(Single Limit)**

**THE HARTFORD**

Named Insured and Address



**10 C 671174U**

This endorsement forms a part of Policy No.
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date..........................................................................Effective hour is the
same as stated in the Declarations of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | |
|---|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE | — (Coverage Part "CAL") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |

## SCHEDULE

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| **Bodily Injury Liability and Property Damage Liability** | "CGL"  "K" | $ **1,000** , 000 each occurrence |
| | "CGL"  "K" | $ **1,000** , 000 aggregate — Division 1 |
| | | $ , 000 aggregate — Division 2 |
| **Bodily Injury Liability and Property Damage Liability** | | $ , 000 each occurrence |

**Division 1** — Applicable to damages because of *bodily injury* and *property damage* as specified in paragraph (b) in the "Limits of Liability" provision of this endorsement.

**Division 2** — Applicable to damages because of all *bodily injury* and *property damage* as stated in paragraph (c) in the "Limits of Liability" provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof is amended to read as follows:

## LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, (3) claims made or suits brought on account of *bodily injury* or *property damage* or (4) *automobiles* or *mobile equipment* to which this policy applies, the company's liability is limited as follows:

### Bodily Injury Liability and Property Damage Liability Coverage

(a) The limit of liability stated in the Schedule of this endorsement as applicable to "each *occurrence*" is the total limit of the company's liability under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of *bodily injury*, including damages for care and loss of services, and all *property damage* as the result of any one *occurrence*; provided that, with respect to any one *occurrence* for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

L - 4152 - 0

business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000050

(b) The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 1**" is, subject to provision (a) hereof respecting "each *occurrence*", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all *bodily injury* and *property damage* which is included in any of the numbered sub-paragraphs below and, in subparagraph (3), with respect either to the *bodily injury* or *property damage*, or to the *bodily injury* and *property damage* (within one or both the hazards identified therein) for which insurance is actually afforded under at least one such Coverage Part:

    (1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

    (2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured,* including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

    (3) all *bodily injury* and *property damage* included within the *completed operations hazard* and all *bodily injury* and *property damage* included within the *products hazard;*

    (4) all *property damage* for which liability is assumed under any contract, other than an *incidental contract,* to which the Contractual Liability Insurance, if afforded, applies.

Such "aggregate — **Division 1**" limit shall apply separately:

    (i) to the *property damage* included in subparagraphs (1) and (2) and separately with respect to each project away from premises owned by or rented to the *named insured;*

    (ii) to the sum of the damages for all *bodily injury* and *property damage* included in subparagraph (3) and for which insurance, if any, is afforded as stated in paragraph (b) above;

    (iii) to the *property damage* included in subparagraph (4) and separately with respect to each project away from premises owned by or rented to the *named insured.*

(c) The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 2**" is, subject to provision (a) hereof respecting "each *occurrence*", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all *bodily injury* and *property damage.*

(d) For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................................................
*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form AL-68-0 (NS)**

HART000051



# General Liability
## Amendatory Endorsement — Additional Definition

**THE HARTFORD**

Named Insured and Address

10 C 671174U

This endorsement forms a part of Policy No............................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.



Effective date ....................................................Effective hour is the same
as stated in the Declarations of the Policy.

It is agreed that the following definition is added:

*"loading or unloading"*, with respect to an *automobile,* means the handling of property after it is moved from the place where it is accepted for
movement into or onto an *automobile* or while it is in or on an *automobile* or while it is being moved from an *automobile* to the place where it is
finally delivered, but "loading or unloading" does not include the movement of property by means of a mechanical device (other than a hand truck) not
attached to the *automobile.*

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by............................................................................
                                                          *Authorized Agent*

**Form L-4128-0**   Printed in U.S.A.   ISO: (GL0019 (Ed. 07-78))

HART000052

**SUPPLEMENTARY COVERAGE ENDORSEMENT**
**PERSONAL INJURY AND ADDITIONAL INSURED (Employees)**

Named Insured and Address

**10 C 671174V**

This endorsement forms a part of Policy No.................................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.............................................12:01 A. M., standard time at the address of the *named insured*
as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

---

It is agreed that:

1. The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply

    a. to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

    b. to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured*, or if the *named insured* is a partnership or joint venture, any partner or member thereof.

**\* EXCLUSION ₤ (C) IS DELETED**

It is further agreed that:

1. Such insurance as is afforded under Coverage A with respect to *bodily injury*, is extended to apply to *personal injury* as defined herein, subject to the following additional provisions:

    1. This insurance does not apply

        a. to liability for *personal injury* assumed by the *insured* under any contract or agreement;

        b. to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

    \*   c. to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured*;

        d. to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

        e. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

        f. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

    2. When used in reference to this insurance

        a. "personal injury" means:

            1. injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory*.

        b. "personal injury offense" means:

            1. false arrest, detention or imprisonment, or malicious prosecution,
            2. libel, slander, defamation, disparagement or violation of an individual's right of privacy, or
            3. wrongful entry or eviction or other invasion of the right of private occupancy.

    3. The Limits of Liability section is amended in the following respect:

        The total liability of the company for all damages because of all *personal injury* to which this policy applies, shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

reproduced these documents in its business ... the company does not certify that these documents constitute a complete and accurate copy of the policy.



**THE HARTFORD**

Form L-3865-1   Printed in U. S. A. (NS)

Countersigned by.................................................

Authorized Agent

HART000053

# BROAD FORM PROPERTY
# DAMAGE ENDORSEMENT
(Including Completed Operations)

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. ...................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ..............................................Effective hour is the
same as stated in the Declarations of the Policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

**Classification:**

It is agreed that the insurance for *property damage* liability applies, subject to the following additional provisions:

A.  The exclusions relating to *property damage* to (1) property owned, occupied or used by or rented to the *insured* or in the care, custody or
control of the *insured* or as to which the *insured* is for any purpose exercising physical control and (2) work performed by or on behalf of the
*named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are
replaced by the following exclusions (y) and (z):

(y)  to *property damage*

(1)  to property owned or occupied by or rented to the *insured*, or, except wtih respect to the use of *elevators*, to property held by the
*insured* for sale or entrusted to the *insured* for storage or safekeeping,

(2)  except with respect to liability under a written sidetrack agreement or the use of *elevators* to

(a)  property while on premises owned by or rented to the *insured* for the purpose of having operations performed on such property
by or on behalf of the *insured*,

(b)  tools or equipment while being used by the *insured* in performing his operations,

(c)  property in the custody of the *insured* which is to be installed, erected or used in construction by the *insured*,

(d)  that particular part of any property, not on premises owned by or rented to the *insured*,

(i)  upon which operations are being performed by or on behalf of the *insured* at the time of the *property damage* arising out of
such operations, or

(ii)  out of which any *property damage* arises, or

(iii)  the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by
or on behalf of the *insured*;

(z)  with respect to the *completed operations hazard* and with respect to any classification stated above as "including completed operations",
to *property damage* to work performed by the *named insured* arising out of the work or any portion thereof, or out of materials, parts or
equipment furnished in connection therewith.

B.  The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible
portion thereof) available to the *insured*, such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk
Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of said policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

INCL IN COMPOSITE RATE

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by ......................................
Authorized Agent

Form L-3252-2  Printed in U.S.A.  NS

UNDERWRITER'S COPY

HART000054

## ADDITIONAL INSURED
(Vendors—Limited Form)

**10 C 671174V**

Named Insured and Address

This endorsement forms a part of Policy No.
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.....................................................................12:01 A. M., standard time at the address of the named insured as
stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include any person or organization (herein referred to as "Vendor"), as an Insured, but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following additional provisions:

1. The insurance with respect to the Vendor does not apply to:

    (a) any express warranty, or any distribution or sale for a purpose, unauthorized by the Named Insured

    (b) bodily injury or property damage arising out of

        (i) any act of the Vendor which changes the condition of the products,

        (ii) any failure to maintain the product in merchantable condition,

        (iii) any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products, or

        (iv) products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the Vendor;

    (c) bodily injury or property damage occurring within the Vendor's premises.

2. This insurance does not apply to any person or organization, as Insured, from whom the Named Insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

~~INCL. IN COMPOSITE RATE~~

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
**INSURANCE GROUP**
HARTFORD, CONNECTICUT

Countersigned by.................................................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form L-3243-0**  Printed in U. S. A.  10-'68  (NBCU: G-114)

PageID: 5587

## ADDITIONAL INSURED
### (Premises Leased to the Named Insured)

Named Insured and Address

**10 C 6711740**

This endorsement forms a part of Policy No.......................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.........................................................12:01 A. M., standard time at the address of the *named insured* as
stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect
to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject
to the following additional exclusions:

The insurance does not apply:

1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

## SCHEDULE

The company located these documents in its
business records. At this time, the company

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums | |
|---|---|---|---|
| | | Bodily Injury Liability | Property Damage Liability |

cannot verify that this document constitutes a complete and accurate copy of the policy.

**Designation of Premises** (Part Leased to Named Insured)

**Name of Person or Organization** (Additional Insured)

**1375 C. HIGGENS RD**

**JOHN G. TWIST CO.**

**ELK GROVE, ILL.**
*1270 MARNET ST., BENSENVILLE, ——*

HART000056

## ADDITIONAL INSURED
### (Premises Leased to the Named Insured)

Named Insured and Address

This endorsement forms a part of Policy No. ~~10 C 671174W~~
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date .................................................12:01 A. M., standard time at the address of the *named insured* as
stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject to the following additional exclusions:

The insurance does not apply:

1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

## SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| 3400 THIRD AVE. FOSTER CITY, CA.. 1270 *Market St* *Bennerville 14* | SAN MATEO BAY BUILDING ASSOCIATES *John G. Tract Co* | ~~INCLUDED IN COMPOSITE RATE~~ | |
| AND ANY OTHER PREMISES UPON WHICH THE NAMED INSURED IS REQUIRED IN A WRITTEN AGREEMENT TO PROVIDE INSURANCE ON BEHALF OF THE LESSOR & OF WHICH THE COMPANY IS NOTIFIED WITHIN THIRTY (30) DAYS OF THE EXECUTION OF SAID WRITTEN AGREEMENT. | | ~~INCLUDED IN COMPOSITE RATE.~~ | |

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company, provided that this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**

Countersigned by ..................................................................
*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3025-0   Printed in U. S. A.   5-'67   (NBCU: G 109)

# CONTRACTUAL LIABILITY INSURANCE (BLANKET COVERAGE) — COVERAGE PART

| Approved | | |
|---|---|---|
| Quality Control | | |

This Coverage Part forms a part of Policy No. **10 C 671117U** ................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective.................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to.................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| YB — Contractual Bodily Injury Liability | $ *Included* | $ **AS PER** ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ *Included* | $ ~~71 50~~ ,000 each occurrence $ *A $ 4152 -0*,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates B. I. | Rates P. D. | Advance Premiums B. I. | Advance Premiums P. D. |
|---|---|---|---|---|---|---|
| **ALL WRITTEN AGREEMENTS** | | (a) Cost (b) Sales | (a) Per $100 of Cost (b) Per $1,000 of Sales | *As per Premium Computation Endorsement* | ~~INCLUDED IN COMPOSITE RATE~~ | |

Form Numbers of Endorsements forming part of this Coverage Part at issue: **~~AL-3-T-B~~ (LIST) G 2240-2B**

| TOTAL ADVANCE PREMIUMS | $ *Included* |
|---|---|

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $ ............    1st Anniversary $ ............    2nd Anniversary $ ............

The following exclusions also apply:
☐ Exclusion (p) — Products and Completed Operations    ☐ Exclusion (q)—x, c & u

**I.    COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

**COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

**Coverage YB.** *bodily injury* or

**Coverage ZB.** *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

(ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.
This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by.................................................
*Authorised Agent*

At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy

Form L-3523-0    DR    Printed in U. S. A.    (ISO: KB 1/1/73)    **KB-1**

ATTACH FORMS ALONG MARGIN BELOW THIS MARK +



This Coverage Part forms a part of Policy No.................................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective...................................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to......................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability | |
|---|---|---|---|
| E — Premises Medical Payments | $ *Included* | $ 1,000 | each person |
| | | $10,000 | each accident |

| Description of Hazards | Advance Premiums |
|---|---|
| **(a) Premises and Operations**<br><br>*As per premium computation endorsement* | ~~INCLUDED IN~~<br>~~COMPOSITE RATE~~ |
| **(b) Escalators** | |
| **(c) Sports Activities** | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | | TOTAL ADVANCE PREMIUM | $ *Included* |
|---|---|---|---|
| AL-6-1-6 (LIST)    G-2240-28 | | | |

If the Policy Period is more than one year, the Premium is Payable:

| On effective date of Policy $ | 1st Anniversary $ | 2nd Anniversary $ |
|---|---|---|

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by.........................................................

*Authorized Agent*

The company located these documents in its does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3505-0   DR   Printed in U.S.A.   (ISO: MP 1/1/73)        MP-1

HART000059

| | Und. Approved | | Und. Notes: |
|---|---|---|---|
| | Quality Control. | Report | |

This Coverage Part forms a part of Policy No. .......... 10 C 671174v .......... issued by THE HARTFORD INSURANCE GROUP
Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective ...........................:.....................................(at the hour stated in the policy) and forms a part of the above designated
policy issued to.......................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees
with the *named insured* as follows:

**SCHEDULE**
**The Insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges.
The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having
reference thereto.**

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| A — Bodily Injury Liability | $ *Included* | $ **AS PER** ,000 each occurrence |
| | | $ **AL-GG** ,000 aggregate |
| B — Property Damage Liability | $ *Included* | $ *A - 4152 - 0* ,000 each occurrence |
| | | $ ,000 aggregate |

| Rating Classifications Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | B.I. | P.D. |
| (a) Premises — Operations | | (a) Area (b) Frontage (c) Remuneration (d) Receipts | (a) Per 100 Sq. Ft. of Area (b) Per Linear Foot (c) Per $100 of Remun. (d) Per $100 of Receipts | | | |
| (b) Escalators | | (e) Landings | (e) Per Landing | | | |
| (c) Independent Contractors | | (f) Cost | (f) Per $100 of Cost | | | |
| (d) Completed Operations | | (g) Receipts | (g) Per $1,000 of Receipts | | | |
| (e) Products | | (h) Sales | (h) Per $1,000 of Sales | | | |

*a) As per premium computation endorsement*   ~~INCLUDED IN COMPOSITE RATE~~

*c)*

*d)*

*e)*

| Form Numbers of Endorsements forming part of this Coverage Part at Issue: | TOTAL ADVANCE PREMIUMS | $ *Included* |
|---|---|---|
| AL-S-T-B (LIST)  G 2240 -2B | | |

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $ .......... 1st Anniversary $ .......... 2nd Anniversary $ ..........

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by.......................................
                                            Authorized Agent

Form L-3503-1    DR   Printed in U.S.A. (ISO: CGL 1/1/73)    **CGL-1**

The company certified these documents in its [...] that these documents constitute a complete and accurate copy of the policy.

HART000060

## ERRORS AND OMISSIONS INSURANCE — EMPLOYEE BENEFIT PROGRAMS

Named Insured and Address

This endorsement forms a part of Policy No. **10 C 671174U**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date..................... ...................................... Effective hour is the same as stated in the Declarations of the policy.

### SCHEDULE

| Limits of Liability | | Estimated Advance Premium |
|---|---|---|
| $ **25,000** | each claim | *Included* |
| $ **75,000** | aggregate | $ ~~INCL IN COMPOSITE RATE~~ |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, exclusions and other terms of this endorsement:

### INSURING AGREEMENTS

I. **COVERAGE.**  To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.**  As respects such insurance as is afforded by the terms of this endorsement, the company shall:
(a) defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III. **DEFINITIONS.**
(a) **"Insured"** — The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
(b) **"Employee Benefit Programs"** — The term "Employee Benefit Programs" shall mean Group Life Insurance, Gr ... Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insuran  Social Security and Disability Benefits.
(c) **"Administration"** — The unqualified word "Administration", wherever used, shall mean:
(1) giving counsel to employees with respect to Employee Benefit Programs;
(2) interpreting Employee Benefit Programs;
(3) handling of records in connection with Employee Benefit Programs;
(4) effecting enrollment of employees under Employee Benefit Programs;
provided all such acts are authorized by the Named Insured.

IV. **ENDORSEMENT PERIOD, TERRITORY.**  This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reason-ably foreseen any circumstances which might result in a claim or suit.

### EXCLUSIONS

This endorsement does not apply:
(a) to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b) to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
(c) to any claim for failure of performance of contract by an insurer;
(d) to any claim based upon:
(1) failure of stock to perform as represented by an insured;
(2) advice given by an insured to an employee to participate or not to participate in stock subscription plans.

### CONDITIONS

1. **Policy Conditions.**  All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2. **Limits of Liability**
(a) Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
(b) $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim.  Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
(c) The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount.  If the company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the company.
(d) The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3. **Premium.**  The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| ~~122~~ 300 | ...............First 5,000 | $................ |
| | ...............Next 5,000 | $................ |
| | ...............Over 10,000 | $................ |
| | | Total $... |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates.  If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid counter signature of this endorsement.



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

Form L-2857-1  Printed in U.S.A.  6/66

signed these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by ....................................
Authorized Agent

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PERSONAL INJURY PROTECTION ENDORSEMENT
### (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No.   10 C 6711748 |
|---|---|
| Named Insured | Countersigned by |
| | (Authorized Representative) |

The Company agrees with the **named insured**, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

The insurance for PERSONAL INJURY PROTECTION is subject to a deductible of $ __50__ applicable to $ ☐ the following **named insured** only: ____

☐ each **named insured** and each dependent **relative**.

☐ **Work loss** for **named insured** does not apply

☐ **Work loss** for **named insured** and dependent **relative** does not apply

☐ Coverage reduced by Medicare Benefits for **named insured** and dependent **relative**

☐ Coverage reduced by military benefits for **named insured** and dependent **relative**

### SECTION I

**PERSONAL INJURY PROTECTION**

The Company will pay, in accordance with the Florida Automobile Reparations Reform Act, as amended, to or for the benefit of the injured person:

   (a) 80% of **medical expenses,** and

   (b) 60% of **work loss,** and

   (c) **replacement services expenses,** and

   (d) funeral, burial or cremation expenses,

incurred as a result of **bodily injury,** caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

   (1) the **named insured** or any **relative** while **occupying** a **motor vehicle** or, while a **pedestrian** through being struck by a **motor vehicle;** or

   (2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian,** through being struck by the **insured motor vehicle.**

**Exclusions**

This insurance does not apply:

   (a) to the **named insured** or any **relative** while **occupying a motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

   (b) to any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured;**

   (c) to any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

     (i) causing **bodily injury** to himself intentionally;

     (ii) convicted of driving while under the influence of alcohol or narcotic drugs to the extent that his driving faculties are impaired; or

     (iii) while committing a felony;

   (d) to the **named insured** or dependent **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

   (e) to any **pedestrian,** other than the **named insured** or any **relative,** not a legal resident of the State of Florida;

   (f) to any person, other than the **named insured,** if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Automobile Reparations Act, as amended;

   (g) to any person, other than the **named insured** or any **relative,** who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

   (h) to any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

**Limit of Liability; Application of Deductible; Other Insurance**

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total

Copyright, Insurance Services Office, 1977, 1978

Page 1 of 3

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000062



CA 21 14
(Ed. Q1 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## UNINSURED MOTORISTS INSURANCE
## (NEW JERSEY)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. — 10 C 671174V |
|---|---|
| Named Insured | Countersigned by |
| | (Authorized Representative) |

In consideration of the payment of premium and subject to all of the provisions of this endorsement and to the applicable provisions of the policy, the company agrees with the named insured as follows:

### Schedule

Designated Insured:

Limits of Liability:  Bodily Injury      $15,000 each person
                                         $30,000 each accident
           Property Damage  $ 5,000 each accident

Advance Premiums $

Description of Insured Highway Vehicles:

Any highway vehicle registered or principally garaged in New Jersey which is:

   (check appropriate box)

[X] An owned automobile under Part I of the policy

[ ] A private passenger automobile owned by the named insured

[ ] Owned by the named insured

[ ] Designated in the declarations of the policy and any highway vehicle of the same type ownership of which is acquired during the policy period by the named insured as a replacement therefor

[ ] Any mobile equipment owned by the named insured

[ ] _____

### I.  COVERAGE UNINSURED MOTORISTS

**(Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)**

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally

entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

### Exclusions

This insurance does not apply:

(a) to bodily injury or property damage with respect to which the insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives;

The company business does not certify that these documents constitute a complete and accurate copy of the policy.

HART000063

CLARATIONS —
BUSINESS AUTO COVERAGE PART
(Continued)

**THE HARTFORD**    Policy No. 10 C 671174U

## ITEM THREE — DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

| SYMBOL | | DESCRIPTION |
|---|---|---|
| 1 | = | **ANY AUTO.** (Auto liability coverage only.) |
| 2 | = | **OWNED AUTOS ONLY.** Only those **autos you** own (and for liability coverage any **trailers you** don't own while attached to power units **you** own).This includes those **autos** whose ownership **you** acquire after the policy begins. |
| 3 | = | **OWNED PRIVATE PASSENGER AUTOS ONLY.** Only the private passenger **autos you** own. This includes those private passenger **autos** whose ownership **you** acquire after the policy begins. |
| 4 | = | **OWNED AUTOS OTHER THAN PRIVATE PASSENGER AUTOS ONLY.** Only those **autos you** own which are not of the private passenger type (and for liability coverage any **trailers you** don't own while attached to power units **you** own). This includes those **autos**, not of the private passenger type, whose ownership **you** acquire after the policy begins. |
| 5 | = | **OWNED AUTOS SUBJECT TO NO-FAULT.** Only those **autos you** own for which **you** are required to have No-Fault Benefits in the state where they are licensed or principally garaged. This includes those **autos** whose ownership **you** acquire after the policy begins provided **you** are required to have No-Fault Benefits in the state where they are licensed or principally garaged. |

| SYMBOL | | DESCRIPTION |
|---|---|---|
| 6 | = | **OWNED AUTOS SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW.** Only those **autos you** own for which, because of the law in the state where they are licensed or principally garaged **you** are required to have and cannot reject uninsured motorists insurance. This includes those **autos** whose ownership **you** acquire after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | = | **SPECIFICALLY DESCRIBED AUTOS.** Only those **autos** described in **ITEM FOUR** for which a premium charge is shown (and for liability coverage any **trailers you** don't own while attached to any power unit described in **ITEM FOUR**). |
| 8 | = | **HIRED AUTOS ONLY.** Only those **autos** you lease, hire, rent or borrow. This does not include any **auto** you lease, hire, rent or borrow from any of **your** employees or members of their households. |
| 9 | = | **NONOWNED AUTOS ONLY.** Only those **autos** you do not own, lease, hire or borrow which are used in connection with **your** business. This includes **autos** owned by **your** employees or members of their households but only while used in **your** business or **your** personal affairs. |
| 10 | = | |

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

This item is completed by entries on endorsement(s) titled "Schedule of Covered Autos You Own" issued to form a part of this policy.

## ITEM FIVE — SCHEDULE OF HIRED AUTOS (Coverages and Premiums)

LIABILITY INSURANCE — RATING BASIS IS COST OF HIRE*

| STATE 6619 T-10 | ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | ESTIMATED PREMIUM |
|---|---|---|---|
| NEW JERSEY | $ IF ANY | .750 | $ 22.00 |

*Cost of hire means the total amount **you** incur for the hire of **autos you** don't own (not including **autos** you borrow or rent from **your** employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

### PHYSICAL DAMAGE INSURANCE

| COVERAGES | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | ESTIMATED TOTAL OF AUTO/DAYS OF HIRED AUTOS | RATE PER AUTO PER DAY | ESTIMATED PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | $   or Actual Cash Value or Cost of Repair, whichever is smallest, minus $   deductible for each covered **auto** for all **loss** except fire or lightning | | | $ |
| SPECIFIED PERILS | $   or Actual Cash Value or Cost of Repair, whichever is smallest, minus $ 25  deductible for each covered **auto** for **loss** caused by mischief or vandalism | | | $ |
| COLLISION | $   or Actual Cash Value or Cost of Repair, whichever is smallest, minus $   deductible for each covered **auto** | | | $ |
| | | | ESTIMATED TOTAL PREMIUM | $ |

**PHYSICAL DAMAGE INSURANCE** for hired **autos** is excess unless indicated below by ☒.

☐ If this box is marked, **PHYSICAL DAMAGE INSURANCE** applies on a direct primary basis and for purposes of the condition entitled **OTHER INSURANCE**, any hired **auto** is deemed to be a covered **auto you** own.

## ITEM SIX — SCHEDULE OF NONOWNED AUTOS

LIABILITY INSURANCE (Includes **autos** owned by **your** employees or members of their households but only while used in **your** business or **your** personal affairs)
— RATING BASIS IS NUMBER OF EMPLOYEES

| ESTIMATED NUMBER OF EMPLOYEES | CLASSIFICATION CODE | ESTIMATED PREMIUM |
|---|---|---|
| 300 | 6603 | $ 180.00 |

The company located and produced documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, 1977

Countersigned by..................................................

Authorized Agent

Form A-4264-0  DR  Printed in U.S.A.  (NS)    BA-2

HART000064

7/17/CODN-MW

FRED S JAMES & CO OF NY INC 25 2170

THE HARTFORD

**REINSURANCE**

Named Insured and Address

This endorsement forms a part of Policy No. 10 C 671174W issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ 07 **DUPLICATED**

Effective date 6/30/80 TO 10/25/80 1 A. M., standard time at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**BUSINESS AUTO**

IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT THE FOLLOWING VEHICLE IS ADDED:

1980 VOLKS WAGON
#33AC114634
COST 9,493/1  CL. 7398
T-091
FOSTER CITY, CALIF.

| | LIAB. | MED. | UM. | (100 DED) COMP. | (500 DED) COLLISION |
|---|---|---|---|---|---|
| ANN'L | 604. | 38. | 10. | 91. | 206. |
| PERIOD 6/30/80 TO 8/25/80 | | | | | |
| P/R .153 | 92. | 6. | 2. | 14. | 32. |
| | A/P | A/P | A/P | A/P | A/P |
| PERIOD 8/25/80 TO 10/25/80 | | | | | |
| P/R .167 | 101. | 6. | 2. | 15. | 34. |
| | A/P | A/P | A/P | A/P | A/P |
| | | | | | |
| A/P TOTAL'S | 193. | 12. | 4. | 29. | 66. |

TOTAL A/P = $304.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by .......................................... Authorized Agent

Form AL-8-1 B  Printed in U.S.A.  ISO:

5/27/80CPMM                                                      TOTAL A/P $60
FRED S JAMES & CO OF NY INC 25 2170

**THE HARTFORD**

This endorsement forms a part of Policy No. 10 C 671174W
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ  07647

Effective date ...... 5/2/80 ............12:01 A. M., standard time
at the address of the *named insured* as stated herein.

8/25/79 - 10/25/80

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**BUSINESS AUTO POLICY**

IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT VEHICAL #3 IS TRANSFERED.

|  |  | LIAB. | PIP. | UM. | COMP. | COLL |
|---|---|---|---|---|---|---|
| N- 1980 BUICK ELECTRA | N | 386 | 36 | 2 | 68. | 182 |
| 4X69XAH499140 |  |  |  |  |  |  |
| $11,396 N/1 |  |  |  |  |  |  |
| NORTHVALE, NJ |  |  |  |  |  |  |
| 7398 T 10 |  |  |  |  |  |  |
| O- 76 BUICK | O | 386 | 36 | 2 | 27 | 100 |
| #4P39X6H47957 |  |  |  |  |  |  |
| ANN'L R/P | NO PREMIUM CHANGE |  |  |  | 41 | 82 ANN'L A/P |
| 5-01-80 TO 08-25-80 P/R 315 |  |  |  | P/R A/P | 13 A/P | 26 |
| 8-25-80 TO 10-25-80 P/R 167 |  |  |  | P/R A/P | 7 A/P | 14 |
|  |  |  |  | A/P | 20 A/P | 40 |

TOTAL A/P  60

NJ GUAUNTY FUND .30

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by .................................................
                                          Authorized Agent

The company located these documents in its records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B  Printed in U.S.A.  ISO:

HART000066

FRED S JAMES & CO OF NY INC 25 2170

TOTAL R/P
$453

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. 10 C 671174W
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

4/1/80

Effective date ..............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ 07647

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**BUSINESS AUTO POLICY**

---

IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT VEHICAL #12 IS DELETED.

74 AUDI #8442108394

| | LIAB | MED | UM | COMP | COLL |
|---|---|---|---|---|---|
| 04-1-80 ANN'L R/P | 604 | 38 | 10 | 37 | 110 |
| TO 8-25-80 P/R .400 | 242 | 15 | 4 | 15 | 44 |
| ANN'L R/P | | | | | |
| 8-25-80 P/R 167 | 604 | 38 | 10 | 37 | 110 |
| TO 10-25-80 | 101 | 6 | 2 | 6 | 18 |

TOTAL R/P    343    R/P    21   R/P 6 R/P 21   R/P 62

TOTAL R/P $453

---

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART000067

2-24-81  PM
Fred S. James & Co of NY Inc
25-2170

Total AP $158

**THE HARTFORD**

Named Insured and Address

IC  37117

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Centrico Inc
100 Fairway Court
Northvale, New Jersey  07647

Effective Date  8-25-80

Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

In consideration of the above premium it is agreed that vehical #40 is included for policy period the policy was extended Eff 8-25-80 to 10-25-80

1980 Volks
$3340126462
$9611 W/1
738 T 091

| | | Liab | Med | Um | Comp | Coll |
|---|---|---|---|---|---|---|
| Annl AP | | 604 | 38 | 10 | 91 | 206 |
| P/R  167 | | 101 | 6 | 2 | 15 | 34 |

Total  AP  $ 158

4404

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by ......................................
- Authorized Agent

Form G-2240-3 B   Printed in U.S.A.

Fred S. James & Co of
NY Inc 25-2170

**THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY**



Change Endorsement for "Schedule of Covered Autos You Own"          Total AP $28          **THE HARTFORD**

This endorsement changes the policy effect on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | Policy Number | Named Insured | | Countersigned by |
|---|---|---|---|---|
| 8-14-80 | 10 C 671174W | Centrico Inc | | |

☐ **AUTO(S) ADDED.** The Policy provides only those coverages where an additional premium or the words "no charge" is shown below.          (Authorized Representative)

Premiums and Limits — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. / Size / Vehicle Sr | Body Type / C = Commercial | Vehicle Identification No. (VIN) | | City or Town and State where the covered auto will be principally garaged | | | | |
|---|---|---|---|---|---|---|---|---|
| Territory Code / Classification Code / Pro Rata Factor | Liability Annual Premium / Additional Premium | PIP Annual Premium / Additional Premium | Added PIP Annual Premium / Additional Premium | Radius of Operation | ★ Auto Med Pay Limit — For each Insured Annual Premium / Additional Premium | Uninsured Motorists Limit — Any One Accident Annual Premium / Additional Premium | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol | Comprehensive Deductible Annual Premium / Additional Premium | Specified Perils Annual Premium / Additional Premium | Collision Deductible Annual Premium / Additional Premium | Towing and Labor Annual Premium / Additional Premium |

| 40 | | 1980 Volks Wagon Dasher Diesel #33A0126462 | | | | | Foster City Calif | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ☐ S ☐ R ☐ C Other: | | ☐ L ☐ I ☐ LD | $ 5,000 | $ 30,000 | | $ 100 | | $ 500 | |
| 091 | 7398 | $ 604 | $ | $ | | $ 38 | $ 10 | N/1 9611 | $ 91 | | $ 206 | $ |
| P/R 030 | | $ | $ | $ | | $ 1 | $ waived | | $ 3 | | $ 6 | $ |

| | | ☐ S ☐ R ☐ C Other: | | ☐ L ☐ I ☐ LD | $ | $ | | $ | | $ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | | $ | $ | | $ | | $ | $ |
| | | $ | $ | $ | | $ | $ | | $ | | $ | $ |

**Loss Payees** (Identified by Covered Auto No.) — Except for Towing, all physical damage **loss** is payable to **you** and the loss payee named below as interests may appear at the time of **loss**.

| Covered Auto No(s). Loss Payee Name and Address | Covered Auto No(s). Loss Payee Name and Address |
|---|---|
| | |

☐ **AUTO(S) DELETED.** Coverages for the auto(s) described below are ended.

| Covered Auto No. Description / Factor | Return Premium | Return Premium | Return Premium | Loss Payee Return Premium | Return Premium | | Return Premium | Return Premium | Return Premium | Return Premium |
|---|---|---|---|---|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ | | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | | $ | $ | $ | $ |

Form Numbers of Endorsements added to form a part of this policy:

The company located these documents in its business records. By doing so, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**NET PREMIUM FOR ALL CHANGES SHOWN ON THIS ENDORSEMENT**

| Return Premium | Additional Premium |
|---|---|
| $ | $ 28 |

★**Radius of Operation** L = Local    I = Intermediate    LD = Long Distance

Form A-4257-1  CDR  Printed in U.S.A          **COMPANY COPY**          HART000069

**ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

*Total A/p 8 28*

**THE HARTFORD**

## Change Endorsement for "Schedule of Covered Autos You Own"

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | Policy Number | Named Insured | | Countersigned by | |
|---|---|---|---|---|---|
| 8-14-80 | 10C671174hl | | | | (Authorized Representative) |

☐ **AUTO(S) ADDED.** The Policy provides only those coverages where an additional premium or the words "no charge" is shown below. Premiums and Limits — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | Vehicle Identification No. (VIN) | | | | City or Town and State where the covered auto will be principally garaged |
|---|---|---|---|---|---|---|---|---|

| Size — GVW, GCW or Vehicle Seating Capacity | Use: S = Service R = Retail C = Commercial Other (Describe) | | Radius of Operation | ★ Auto Med Pay Limit — For each Insured | Uninsured Motorists Limit — Any One Accident | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
|---|---|---|---|---|---|---|---|---|---|---|
| Territory Code | Classification Code | Liability Annual Premium | PIP Annual Premium | Added PIP Annual Premium | | Annual Premium | Annual Premium | | Annual Premium | Annual Premium | Annual Premium | Annual Premium |
| Pro Rata Factor | | Additional Premium | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | Additional Premium | Additional Premium |

| 40 | 1980 Volkswagen Dasher Diesel #33A0126462 | | | | | | Foster City Calif | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD $5000 | $30,000 | N/1 | $100 | | $500 | |
| 69 7398 | $604 | $ | $ | $38 | $10 | 9611 | $91 | $ | $206 | $ |
| P/R 030 | 18 | $ | $ | $1 | Waived | | $3 | $ | $6 | $ |

| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD $ | $ | | $ | | $ | $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ |

**Loss Payees (identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|

☐ **AUTO(S) DELETED.** Coverages for the auto(s) described below are ended.

| Covered Auto No. | Description | | | | Loss Payee | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Factor | | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | | Return Premium | Return Premium | Return Premium | Return Premium |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ |

Form Numbers of Endorsements added to form a part of this policy:

Form Numbers of Endorsements deleted from this policy:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

| NET PREMIUM FOR ALL CHANGES SHOWN ON THIS ENDORSEMENT | |
|---|---|
| Return Premium | Additional Premium |
| $ | $ 28 |

★ **Radius of Operation** L = Local   I = Intermediate   LD = Long Distance

**Form A-4257-1  CDR**   Printed in U.S.A.

**COMPANY COPY**

HART000070

THE HARTFORD    REINSURANCE

This endorsement forms a part of Policy No. 10 C 671174W issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ   07647

Effective date 6/30/80 TO 10/25/80 (12.01 A. M., standard time at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## BUSINESS AUTO

---

IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT THE FOLLOWING VEHICLE IS ADDED:

1980 VOLKS WAGON
#33A0114634
COST 9,493/1   CL. 7398
T-091
FOSTER CITY, CALIF.

| | LIAB. | MED. | UM. | (100 DED) COMP. | (500 DED) COLLISION |
|---|---|---|---|---|---|
| ANN'L | 604. | 38. | 10. | 91. | 206. |
| PERIOD 6/30/80 TO 8/25/80 P/R .153 | 92. A/P | 6. A/P | 2. A/P | 14. A/P | 32. A/P |
| PERIOD 8/25/80 TO 10/25/80 P/R .167 | 101. A/P | 6. A/P | 2. A/P | 15. A/P | 34. A/P |
| A/P TOTAL'S | 193. | 12. | 4. | 29. | 66. |

TOTAL A/P = $304.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time the company does not certify that these documents constitute a complete and accurate copy of

Countersigned by ................................................
                                    Authorized Agent

Form AL-8-1 B   Printed in U.S.A.   ISO:

## THE HARTFORD

Named Insured and Address

**10 C 671174H**

This endorsement forms a part of Policy No........................................
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Centrico Inc
100 Fairway Court
Northvale, New Jersey   07647

Effective date........**8-14-80**........................Effective hour is the same as stated in the Declarations of the policy.

In consideration of the above premium it is agreed that the endorsement effective 8-14-80 c/s 10-22 et LJ adding vehical #40 and showing the A/P of $ 186 is cancelled flat

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ...........................................................
_Authorized Agent_

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

G-2240-2 A   Printed in U. S. A.   6-'74

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

A/P $186.

DUPLICATED

 **THE HARTFORD**

Change ... of Covered Autos You Own"

This endor... changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | Policy Number | Named Insured | | Countersigned by |
|---|---|---|---|---|
| 8-14-80 | 10 C 671174 | CENTRICO INC. | | |

(Authorized Representative)

☑ **AUTO(S) ADDED.** The Policy provides only those coverages where an additional premium or the words "no charge" is shown below.
**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

2-20-8... PM
S. James & Co of NY Inc
... 370

| Territory Code / Pro Rata | Number / Premium | ☐ S ☐ R ☐ C Other: Annual Premium / Additional Premium | Annual Premium / Additional Premium | Vehicle Identification No. (VIN) / ... of Operation | ★Auto Med Pay Limit — For each Insured Annual Premium / Additional Premium | Uninsured Motorists Limit — Any One Accident Annual Premium / Additional Premium | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol | Comprehensive Deductible Annual Premium / Additional Premium | Specified Perils Annual Premium / Additional Premium | Collision Deductible Annual Premium / Additional Premium | Towing and Labor Annual Premium / Additional Premium | City or Town and State where the covered auto will be principally garaged |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 1980 V.W. DASHER DIESEL | ☐ S ☐ R ☐ C Other: | | #33A0126462  ☐ L ☐ I ☐ LD | $5,000 | $30,000 | N/1 | $100 | | $500 | | FOSTER CITY, CALIF. |
| 091 | 7398 | $604 | $ | | $38 | $10 | 9611 | $91 | $ | $206 | $ | |
| P/R .197 | | $118 | $ | | $7 | $2 | | $18 | $ | $41 | $ | |
| | | ☐ S ☐ R ☐ C Other: | | ☐ L ☐ I ☐ LD $ | $ | | $ | | | | | |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ | |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ | |

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage **loss** is payable to **you** and the loss payee named below as interests may appear at the time of **loss**.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

☐ **AUTO(S) DELETED.** Coverages for the **auto(s)** described below are ended.

| Covered Auto No. | Description | | Loss Payee | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Factor | | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | | Return Premium | Return Premium | Return Premium | Return Premium |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ |

Form Numbers of Endorsements added to form a part of this policy:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form Numbers of Endorsements deleted from this policy:

**NET PREMIUM FOR ALL CHANGES SHOWN ON THIS ENDORSEMENT**

| Return Premium | Additional Premium |
|---|---|
| $ | $ 186.00 |

★**Radius of Operation** L = Local   I = Intermediate   LD = Long Distance

**COMPANY COPY**

Form A-4267-1  CDR  Printed in U.S.A.

HART000073

10-22 c1  L.J.
FRED S. JAMES & CO. OF L

DESTROY

DATE_____

**Renewal Transfer**

**THE HARTFORD**

## ATTENTION RECORDS DEPARTMENT

☐ **DUPLICATE DAILY:** Attach this notice to the face of the Company Copy of the expiring daily report.

☐ **POLICY SYMBOL/NUMBER CONVERSION:** Attach this notice to the top of the white file card OA-1116.

**EXPIRING POLICY NUMBER** /0 C 6711-74/w

**NEW POLICY NUMBER** /0 C ML07240w

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form OA-1111-1   Printed in U.S.A.

HART000074

OF N.Y. INC.    TOTAL A/P  $563.

**THE HARTFORD**

Redacted

Named Insured

This endorsement forms a part of Policy No. **10 C 671174W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.
  **04/02/80  TO  10/25/80**
Effective date .....................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

CENTRICO INC.
100 FAIRWAY COURT
MONTHVALE, N.J.  07647

**DUPLICATED**

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**BUSINESS   AUTO   POLICY**

**IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT THE FOLLOWING VEHICLE IS ADDED**

<u>1980 AUDI MODLE 4000 #81AC102143 $10,700. W/1</u>

GARAGED   FOSTER CITY CALIFORNIA    94404                **100**            **$500**

7398 T-091                                      5

| | **LIAB.** | **MED.** | **UM.** | **COMP.** | **COLL.** |
|---|---|---|---|---|---|
| ANN'L | 604. | 38. | 10. | 129. | 217. |
| PERIOD 04-02-80 TO 08-25-80  PR 397 | 240. | 15. | 4. | 51. | 86. 396 |
| | | | 2 | | |
| PERIOD 08-25-80 TO 10-25-80  PR 167 | 101. | 6. | 2. | 22. | 36. 167 |
| TOTAL A/P | 341. | 21. | 6. | 73. | 122. |

TOTAL  A/P  $563.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..................................................................

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.  ISO:

HART000075

FRED S JAMES & CO OF NY INC 25 217   TOTAL A/P $60




**THE HARTFORD**   DUPLICATED

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ   07647

This endorsement forms a part of Policy No. **10 C 671174W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ........**5/2/80**......................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## BUSINESS AUTO POLICY

IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT VEHICAL #3 IS TRANSFERED.

| | | LIAB. | PIP. | UM. | COMP. | COLL |
|---|---|---|---|---|---|---|
| N- 1980 BUICK ELECTRA 4X69XAH499140 $11,396 N/1 NORTHVALE, NJ 7398 T 10 | N | 386 | 36 | 2 | 68. 21 | 182 58 |
| | | | | | | 32 |
| O- 76 BUICK #4P39X6H47957 | O | 386 | 36 | 2 | 9 27 12 5 | 100 31 17 |
| ANN'L R/P | NO PREMIUM CHANGE | | | | 41 | 822 ANNL A/P |
| 5-01-80 TO 08-25-80 P/R 315 | | | | P/R | A/P 13 | A/P 26 |
| 8-25-80 TO 10-25-80 P/R 167 | | | | P/R | A/P 7 | A/P 14 |
| | | | | A/P | 20 | A/P 40 |

TOTAL  A/P   60

NJ GUAUNTY FUND  .30

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ................................................ Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.   ISO:

HART000076

NY INC 2170

TOTAL R/P
$453

**THE HARTFORD**

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ 07647

...dorsement forms a part of Policy No.**10 C 671174W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

effective date **4/1/80** ..................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**BUSINESS AUTO POLICY**

IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT VEHICAL #12 IS DELETED.

74 AUDI #8442108394

| | LIAB | MED | UM | COMP | COLL |
|---|---|---|---|---|---|
| 04-1-80        ANN'L R/P | 604 | 38 | 10 | 37 | 110 |
| TO 8-25-80 P/R   .400 | 242 | 15 | 4 | 15 | 44 |
| ANN'L   R/P | | | | | |
| 8-25-80 — P/R  167 | 604 | 38 | 10 | 37 | 110 |
| TO 10-25-80 | 101 | 6 | 2 | 6 | 18 |

|  | TOTAL R/P | 343 | R/P | 21 | R/P 6 | R/P 21 | R/P 62 |
|---|---|---|---|---|---|---|---|

TOTAL R/P $453

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by...........................................................

Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-8-1 B   Printed in U.S.A.  ISO:

 Freie r. James & Co. of N. J. Inc.
25-2170

KP 1277.

THE HARTFORD



DUPLICATE

Named Insured and Address

This endorsement forms a part of Policy No. ........ 10 C 671174
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Centrico Inc
100 Fairway Court
Northvale, NJ 07647

Effective date ......... 2-01-80 ........12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**Business Auto Inx.**

Its agreed that A4257-1 W/AP 1277.00 is deleted. That coverage was
added on a previous end.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ...............................................
                                    Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-8-1 B    Printed in U.S.A.  ISO:

HART000078

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

ENDT #6

... Y INC.



**THE HARTFORD**

...sement for "Schedule of Covered Autos You Own"

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | Policy Number | Named Insured | | Countersigned by |
|---|---|---|---|---|
| 02/01/80 | 10 C 671174W | CENTRICO INC. | | |

☐ **AUTO(S) ADDED.** The Policy provides only those coverages where an additional premium or the words "no charge" is shown below.     (Authorized Representative)

**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | Vehicle Identification No. (VIN) | | City or Town and State where the covered auto will be principally garaged | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Size — GVW, GCW or Vehicle Seating Capacity | Use: S = Service R = Retail C = Commercial Other (Describe) | | | Radius of Operation | ★ Auto Med Pay Limit — For each Insured | Uninsured Motorists Limit — Any One Accident | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
| Territory Code | Classification Code | Liability Annual Premium | PIP Annual Premium | Added PIP Annual Premium | | Annual Premium | Annual Premium | | Annual Premium | Annual Premium | Annual Premium | Annual Premium |
| Pro Rata Factor | | Additional Premium | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | Additional Premium | Additional Premium |
| 32 | | 80 CHEV. | | I69HAC100792 | | PLEASANTON, CA. | | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD $5,000 | $ 30,000 | | $ 100 | | $ 500 | |
| 075 | 7398 | $ 620.00 | $ | $ | $ 46.00 | $ 10.00 | 7,100/1 | $ 161.00 | $ | $ 205.00 | $ |
| .729 | | $ 452.00 | $ | $ | $ 34.00 | $ 7.00 | | $ 117.00 | $ | $ 149.00 | $ |
| 33 | | 80 CHEV. | | II69JAJ179462 | | BENSONVILLE ILL. | | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD $5,000 | $20,000 | | $ 100 | | $ 500 | |
| 015 075 | 7398 | $ 432.00 | $ | $ | $ 31.00 | $ 4.00 | 6900/1 | $ 77.00 | $ | $ 166.00 | $ |
| .729 | | $ 315.00 | $ | $ | $ 23.00 | $ 3.00 | | $ 56.00 | $ | $ 121.00 | $ |

**Loss Payees** (Identified by Covered Auto No.) — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

☐ **AUTO(S) DELETED.** Coverages for the auto(s) described below are ended.

| Covered Auto No. | Description | | | | Loss Payee | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Factor | | Return Premium | Return Premium | Return Premium | | Return Premium | Return Premium | | Return Premium | Return Premium | Return Premium |
| | | $ | $ | $ | | $ | $ | | $ | $ | $ |
| | | $ | $ | $ | | $ | $ | | $ | $ | $ |

Form Numbers of Endorsements added to form a part of this policy:

The company located these documents in its business records ... time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form Numbers of Endorsements deleted from this policy

**NET PREMIUM FOR ALL CHANGES SHOWN ON THIS ENDORSEMENT**

| Return Premium | Additional Premium |
|---|---|
| $ | $ 1,277.00 |

★ **Radius of Operation** L = Local  I = Intermediate  LD = Long Distance

COMPA...

Form A-4257-1  CDR  Printed in U.S.A.

HART000079

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

A/P $472. (8

**Change Endorsement for "Schedule of Covered Autos You Own"**

THE HARTFORD

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | Policy Number | Named Insured | | Countersigned by | |
|---|---|---|---|---|---|
| 2-15-80 | 10 C 671174W | CENTRICO INC. | | | (Authorized Representative) |

☐ **AUTO(S) ADDED.** The Policy provides only those coverages where an additional premium or the words "no charge" is shown below.
**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | | Vehicle Identification No. (VIN) | | | City or Town and State where the covered auto will be principally garaged | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Size — GVW, GCW or Vehicle Seating Capacity | Use: S = Service R = Retail C = Commercial Other (Describe) | | | Radius of Operation | ★ Auto Med Pay Limit — For each Insured | Uninsured Motorists Limit — Any One Accident | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
| Territory Code | Classification Code | Liability Annual Premium | PIP Annual Premium | Added PIP Annual Premium | | Annual Premium | Annual Premium | | Annual Premium | Annual Premium | Annual Premium | Annual Premium |
| Pro Rata Factor | | Additional Premium | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | Additional Premium | Additional Premium |
| 35 | 80 BUICK | #4M47AAZ119582 | | | | | | FOSTER CITY, CALIF. | | | | |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD $5,000 | $30,000 | | $100 | | $500 | |
| 091 | 7398 | $ 604 | $ | $ | $ 38 | $ 10 | | $ 91 | $ | $207 | $ |
| P.R.496 | | $ 300 | $ | $ | $ 19 | $ 5 | 8100/1 | $ 45 | $ | $103 | $ |
| | | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD $ | $ | | $ | | $ | |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ |
| | | $ | $ | $ | $ | $ | | $ | $ | $ | $ |

**Loss Payees (Identified by Covered Auto No.) —** Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

☐ **AUTO(S) DELETED.** Coverages for the auto(s) described below are ended.

| Covered Auto No. | Description | | | | Loss Payee | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Factor | | Return Premium | Return Premium | Return Premium | | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium |
| | | $ | $ | $ | | $ | $ | | $ | $ | $ | $ |
| | | $ | $ | $ | | $ | $ | | $ | $ | $ | $ |

Form Numbers of Endorsements added to form a part of this policy:

Form Numbers of Endorsements deleted from this policy:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**NET PREMIUM FOR ALL CHANGES SHOWN ON THIS ENDORSEMENT**

| Return Premium | Additional Premium |
|---|---|
| $ | $472. |

★ **Radius of Operation** L = Local I = Intermediate LD = Long Distance

Form A-4257-1 CDR Printed in U.S.A.

**COMPANY COPY**

HART000080


A/P $496    (7

INDL



**THE HARTFORD**

## Change Endorsement for "Schedule of Covered Autos You Own"

This endorsement changes ... effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | ... Number | Named Insured | Countersigned by |
|---|---|---|---|
| 2-11-80 | C 671174W | CENTRICO INC. | |

(Authorized Representative)

☐ **AUTO(S) ADDED.** The Policy provides only those coverages where an additional premium or the words "no charge" is shown below.
**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | Vehicle Identification No. (VIN) | | City or Town and State where the covered auto will be principally garaged | |
|---|---|---|---|---|---|---|---|

| Size — GVW, GCW or Vehicle Seating Capacity | Use: S = Service R = Retail C = Commercial Other (Describe) | | | Radius of Operation | ★ Auto Med Pay Limit — For each Insured | Uninsured Motorists Limit — Any One Accident | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Territory Code / Classification Code | Liability Annual Premium | PIP Annual Premium | Added PIP Annual Premium | | Annual Premium | Annual Premium | | Annual Premium | Annual Premium | Annual Premium | Annual Premium |
| Pro Rata Factor | Additional Premium | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | Additional Premium | Additional Premium |

| 34 | 79 DODGE TEST TRAILER | | | #CA78DGM1039 | | SAN MATEO, CALIF. | |
|---|---|---|---|---|---|---|---|
| | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | $ 5,000 | $30,000 | $ 100 | | $ 500 | |
| 091 / 7398 | $ 604 | $ | $ | | $ 38 | $ 10 | $ 77 | | $ 201 | $ |
| P.R.534 | $ 323 | $ | $ | | $ 20 | $ 5 | 5666/2 / $ 41 | | $ 107 | $ |
| | ☐ S ☐ R ☐ C Other: | | | ☐ L ☐ I ☐ LD | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | | $ | $ | $ | $ | $ | $ |

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|

☐ **AUTO(S) DELETED.** Coverages for the auto(s) described below are ended.

| Covered Auto No. | Description | | | Loss Payee | |
|---|---|---|---|---|---|
| Factor | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium |
| | $ | $ | $ | | $ | $ | | $ | $ | $ | $ |
| | $ | $ | $ | | $ | $ | | $ | $ | $ | $ |

Form Numbers of Endorsements added to form a part of this policy:

Form Numbers of Endorsements deleted from this policy:

The company located these documents in its business records. In doing so, the company does not certify that these documents constitute a complete and accurate copy of the policy.

| **NET PREMIUM FOR ALL CHANGES SHOWN ON THIS ENDORSEMENT** | |
|---|---|
| Return Premium | Additional Premium |
| $ | $ 496. |

★ Radius of Operation L = Local    I = Intermediate    LD = Long Distance

Form A-4257-1    CDR    Printed in U.S.A.

**COMPANY COPY**

HART000081

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

$1,277.00

FRED S JAMES AND CO OF N Y INC
252170

DUPLICATE

**Change Endorse__ __ for "Schedule of Covered Autos You Own"**

THE HARTFORD

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | Policy Number | Named Insured | |
|---|---|---|---|
| 2 1 80 | 10 C 671174W | CENTRICO INC | |
| | | | Countersigned by |

☐ **AUTO(S) ADDED.** The Policy provides only those coverages where an additional premium or the words "no charge" is shown below.  (Authorized Representative)

**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | | Vehicle Identification No. (VIN) | | | | City or Town and State where the covered auto will be principally garaged | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Size — GVW, GCW or Vehicle Seating Capacity | Use: S = Service R = Retail C = Commercial Other (Describe) | | | Radius of Operation | ★ Auto Med Pay Limit — For each Insured | Uninsured Motorists Limit — Any One Accident | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
| Territory Code | Classification Code | Liability Annual Premium | PIP Annual Premium | Added PIP Annual Premium | Annual Premium | Annual Premium | | Annual Premium | Annual Premium | Annual Premium | Annual Premium |
| Pro Rata Factor | | Additional Premium | Additional Premium | Additional Premium | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | Additional Premium | Additional Premium |
| 32 | 80 CHEV L69HAC100792 | | | | | | PLEASANTON CA | | | | |
| 075 | 7398 | ☐S ☐R ☐C Other: $620.00 | $ | $ | ☐L ☐I ☐LD $5,000 46.00 | $30,000 10.00 | 7100/1 | $100 161.00 | $ | $500 205.00 | $ |
| .729 | | $452.00 | $ | $ | 34.00 | 7.00 | | 117.00 | $ | $149.00 | $ |
| 33. | 80 CHEV 1L69JAJ179462 | | | | | | BENSONVILLE ILL | | | | |
| 075 | 7398 | ☐S ☐R ☐C Other: $432.00 | $ | $ | ☐L ☐I ☐LD $5,000 $31.00 | $20,000 $4.00 | 6900/1 | $100 $77.00 | $ | $500 $166.00 | $ |
| .729 | | $315.00 | $ | $ | $23.00 | $3.00 | | $56.00 | 1159 | $121.00 | $ |

**Loss Payees** (Identified by Covered Auto No.) — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

☐ **AUTO(S) DELETED.** Coverages for the auto(s) described below are ended.

| Covered Auto No. | Description | | | | Loss Payee | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Factor | | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium |
| | | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| | | $ | $ | $ | $ | $ | $ | $ | $ | $ |

Form Numbers of Endorsements added to form a part of this policy:

Form Numbers of Endorsements deleted from this policy:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

| NET PREMIUM FOR ALL CHANGES SHOWN ON THIS ENDORSEMENT | |
|---|---|
| Return Premium | Additional Premium |
| $ | $ 1,277.00 |

★**Radius of Operation** L = Local   I = Intermediate   LD = Long Distance

**Form A-4257-1  CDR**  Printed in U.S.A.

COMPANY COPY

HART000082

DUPLICATED

252170 **FRED S JAMES & CO.**
**OF NY INC.**



**TOTAL ADDITIONAL PREM:$64.00**

**THE HARTFORD**

Named Insured and Address

**CENTRICO INC.**
**100 FAIRWAY COURT**
**NORTHVALE, NJ 07647**

**10C 671174 W**

This endorsement forms a part of Policy No...................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

**11-21-79 TO 10-25-80**

Effective date .................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**BUSINESS AUTO POLICY**

**IN CONSIDERATION OF THE ABOVE PREMIUM IT IS AGREED THAT**
**VEHICAL #7 IS DELETED AND REPLACED BY 1980 (98) OLDSMOBILE SED**
**#3X69RAM148851 $8500 W/I GARAGED : BINSENVILLE, ILL 7398 T 015.**

|  |  | LIAB. | MED | UM | 100 COMP | 500 COLL |
|---|---|---|---|---|---|---|
| N-1980 OLDS | N | 432.00 | 31.00 | 4.00 | 77.00 | 166.00 |
| O-76 FORD | O | 432.00 | 31.00 | 4.00 | 57.00 | 116.00 |

```
ANNL A/P        NO       CHANGE IN PREM AP 20.00   A/P 50.00
11-21-79   P/R                        PR AP 15.00   P/P 38.00
TO 8-25-80   759
```

|  |  | | | | | |
|---|---|---|---|---|---|---|
| N-80 OLDS | N | 432.00 | 31.00 | 4.00 | 77.00 | 166.00 |
| O 76 FORD | O | 432.00 | 31.00 | 4.00 | 57.00 | 116.00 |

```
ANNL            NO       CHANGE IN PREM AP 20.00   AP 50.00
P/R 167                                 AP  3.00   AP  8.00
08 25 80 TO
10-25-80
```

**TOTAL        AP 18.00        46.00**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by....................................................        Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form AL-8-1 8**  Printed in U.S.A.  ISO:

HART000083

ATTACH

**THE HARTFORD**

This endorsement forms a part of Policy No. **10 C 671174U**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address

**CENTRICO INC.**

**NORTHVALE, N.J.**

Effective date **8-25-79** ..................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

IT IS AGREED THAT THE "DESIGNATION OF PREMISES
(PART LEASED TO NAMED INSURED) APPEARING ON
"ADDITIONAL INSURED" L-3025-0

1375 E. HIGGINS ROAD, ELK GROVE, ILL.

IS AMENDED TO READ:

1270 MARKET ST., BENSENVILLE, ILL.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.......................................................
                                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-8-1 B  Printed in U.S.A.  ISO:

HART000084

EH JB 8/4/80    FRED S JAMES & CO OF NY INC.    ENDT #14

25-2179    THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY    A/P $597.00

| | POLICY PERIOD | P/R |
|---|---|---|
| | 7-28-80 - 8-25-80 | .077 |
| Own" | 8-25-80 - 10-25-80 | .167 |

Change Endorsement for

THE HARTFORD

This endorsement changes the policy effec...    er date is indicated below.

UNDERWRITING FILE COPY

| Endorsement Effective | Policy Number | Named Insured | Countersigned by |
|---|---|---|---|
| 7-28-80 | 10 C 671174V | CENTRICO INC. | |

**AUTO(S) ADDED.** The Policy provides only those coverages where an additional premium or the words "no charge" is shown below.    (Authorized Representative)

**Premiums and Limits** — Absence, if any, of a limit or deductible entry means that the limit or deductible entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type | | | Vehicle Identification No. (VIN) | | | City or Town and State where the covered auto will be principally garaged | | |
|---|---|---|---|---|---|---|---|---|---|
| Size — GVW, GCW or Vehicle Seating Capacity | Use: S = Service R = Retail C = Commercial Other (Describe) | | | Radius of Operation | Auto Med Pay Limit — For each Insured | Uninsured Motorists Limit — Any One Accident | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol | Comprehensive Deductible | Specified Perils | Collision Deductible | Towing and Labor |
| Territory Code | Classification Code | Liability Annual Premium | PIP Annual Premium | Added PIP Annual Premium | | Annual Premium | Annual Premium | | Annual Premium | Annual Premium | Annual Premium | Annual Premium |
| Pro Rata Factor | | Additional Premium | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | | Additional Premium | Additional Premium | Additional Premium | Additional Premium |

(Pro Rata Factor values: .077 / .167)

| 38 | | 80 GMC #TGM36A7506695 | | | | NORTHVALE, N.J. | | | |
|---|---|---|---|---|---|---|---|---|---|

| 010 | 23414 | 563. | | | | 47. | 2. | 8960/1 | 139. | | 500 / 386. |
| .077 | | 43. | | | | 4. | | | 11. | | 30. |
| .167 | | 94. | | | | 8. | - | | 23. | | 34. |

| 39 | | 80 GMC  TGM36A7506642 | | | | NORTHVALE, N J | | | |
|---|---|---|---|---|---|---|---|---|---|

| 010 | 23414 | 463. | | | | 47. | 2. | 10,054/1 | 191. | | 500 / 510. |
| .077 | | 43. | | | | 4. | | | 15. | | 39. |
| .167 | | 94. | | | | 8. | - | | 32. | | 85. |

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of loss.

| Covered Auto No(s). | Loss Payee Name and Address | Covered Auto No(s). | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

**AUTO(S) DELETED.** Coverages for the auto(s) described below are ended.

| Covered Auto No. | Description | | | | Loss Payee | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Factor | | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium | Return Premium |
| | | $ | $ | $ | $ | $ | $ | $ | $ |
| | | $ | $ | $ | $ | $ | $ | $ | $ |

Form Numbers of Endorsements added to form a part of this policy:    Form Numbers of Endorsements deleted from this policy:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

| NET PREMIUM FOR ALL CHANGES SHOWN ON THIS ENDORSEMENT | |
|---|---|
| Return Premium | Additional Premium |
| $ | $ 597.00 |

★Radius of Operation L = Local    I = Intermediate    LD = Long Distance

Form A-4257-1   DR   Printed in U.S.A.

# CASUALTY INSURANCE POLICY

**THE HARTFORD**

GENERAL POLICY PROVISIONS    Form 8117

The member company of **THE HARTFORD INSURANCE GROUP** designated on the Declarations page as the Insurer (a stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the *named insured* as follows:

## COVERAGE

Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the *insured* in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy,

and the cost of bail bonds required of the *insured* because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the *insured* for first aid to others at the time of an accident, for *bodily injury* to which this policy applies;

(d) reasonable expenses incurred by the *insured* at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

**"automobile"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include *mobile equipment;*

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

**"collapse hazard"** includes "structural property damage" as defined herein and *property damage* to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The *collapse hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard* or the *underground property damage hazard,* or (3) for which liability is assumed by the *insured* under an *incidental contract;*

**"completed operations hazard"** includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured.* "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The Hartford retains this as an accurate copy of the business records this Attorney wishes the company document to Acquire the company to execute a complete and accurate copy of the policy.

The *completed operations hazard* does not include *bodily injury* or *property damage* arising out of

(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

*"elevator"* means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an *automobile* servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

*"explosion hazard"* includes *property damage* arising out of blasting or explosion. The *explosion hazard* does not include *property damage* (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the *named insured* by independent contractors, or (3) included within the *completed operations hazard* or the *underground property damage hazard*, or (4) for which liability is assumed by the *insured* under an *incidental contract*;

*"incidental contract"* means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) *elevator* maintenance agreement;

*"insured"* means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

*"mobile equipment"* means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the

*named insured*, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

*"named insured"* means the person or organization named in Item 1. of the declarations of this policy;

*"named insured's products"* means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

*"occurrence"* means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured;*

*"policy territory"* means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the *bodily injury* or *property damage* does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of *bodily injury* or *property damage* arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

*"products hazard"* includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others;

*"property damage"* means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period;

*"underground property damage hazard"* includes underground property damage as defined herein and *properly damage* to any other property at any time resulting therefrom. "Underground property damage" means *property damage* to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The *underground property damage hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract*.

## DESCRIPTION OF TERMS USED AS PREMIUM BASES

When used as a premium basis for:

(a) Comprehensive General Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance, *"admissions"* means the total number of persons, other than employees of the *named insured*, admitted to the event covered by the insurance or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(b) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance; Owners' and Contractors' Protective Liability Insurance, *"cost"* means the total cost to the *named insured* with respect to operations performed for the *named insured* during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(c) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance or Completed Operations and Products Liability Insurance, *"receipts"* means the gross amount of money charged by the *named insured* for such operations to the *named insured* or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

(d) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance which includes coverage for structural alterations, new construction and demolition operations, *"remuneration"* means the entire remuneration earned during the policy period by proprietors and by all employees of the *named insured*, other than chauffeurs (except operators of *mobile equipment*) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

Form 8117

2

The Insurance does business does not constitute a complete and accurate copy of the policy.

(e) Comprehensive General Liability Insurance or Completed Operations and Products Liability Insurance, *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division;

(f) Contractual Liability Insurance, *"cost"* means the total cost to any indemnitee, with respect to any contract which is insured, of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or the subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(g) Garage Insurance, *"remuneration"* means (a) the entire remuneration earned during the policy period by each Class A employee and each Class C employee of the *named insured*, subject to an average weekly maximum of $100, and (b) the remuneration of each Class B person at a fixed amount of $2,000 per annum with respect to Dealer Risks (Hazard 1) or $5,200 per annum with respect to Non-Dealer Risks (Hazard 2)

*"Class A"* means all clerical office employees

*"Class B"* means all proprietors and officers active in the business, and inactive proprietors or officers (other than an inactive proprietor or officer who is a spouse of an active proprietor or officer) who customarily drive an *automobile*

man-ations and Products Liability Insurance, *"sales"* means the managers, service managers and chauffeurs

*"Class C"* means all other employees;

(h) Comprehensive Automobile Liability Insurance,

(1) *"cost of hire"* means the amount incurred for (a) the hire of *automobiles*, including the entire remuneration of each employee of the *named insured* engaged in the operation of such *automobiles* subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of *"cost of hire"* shall be 5% of the applicable *hired automobile* rates, provided the owner of such *hired automobile* has purchased *automobile* Bodily Injury Liability and Property Damage Liability insurance covering the interest of the *named insured* on a direct primary basis as respects such *automobile* and submits evidence of such insurance to the *named insured;*

(2) *"Class 1 persons"* means the following persons, provided their usual duties in the business of the *named insured* include the use of *non-owned automobiles:* (a) all employees, including officers, of the *named insured* compensated for the use of such *automobiles* by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the *named insured;*

(3) *"Class 2 employees"* means all employees, including officers, of the *named insured*, not included in Class 1 persons.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMERS COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to *bodily injury* or *property damage*

(1) with respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the *insured* is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

C. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material*, if

(1) the *nuclear material* (a) is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured* or (b) has been discharged or dispersed therefrom;

(2) the *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

(3) the *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear*

*facility*, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

II. As used in this exclusion:

*"hazardous properties"* include radioactive, toxic or explosive properties;

*"nuclear material"* means *source material, special nuclear material* or *byproduct material;*

*"source material"*, *"special nuclear material"*, and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"waste"* means any waste material (1) containing *byproduct material* and (2) resulting from the operation by any person or organization of any *nuclear facility* included within the definition of *nuclear facility* under paragraph (a) or (b) thereof;

*"nuclear facility"* means

(a) any *nuclear reactor,*

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing *spent fuel*, or (3) handling, processing or packaging *waste,*

(c) any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste,*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"property damage"* includes all forms of radioactive contamination of property.

Form 8117     3

The Hartford business does "property documents constitute a complete and accurate copy of the policy."

HART000088

Case 2:20-cv-09741-BRM-SDA Document 63-33 Filed 11/18/22 Page 200 of 612

1. **Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured*, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the *named insured*.

The *named insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

2. **Inspection and Audit** The company shall be permitted but not obligated to inspect the *named insured's* property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *named insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the *named insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. **Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for *bodily injury* liability or for *property damage* liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

4. **Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

5. **Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the *insured* to determine the *insured's* liability, nor shall the company be impleaded by the *insured* or his legal representative. Bankruptcy or insolvency of the *insured* or of the *insured's* estate shall not relieve the company of any of its obligations hereunder.

6. **Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. **Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights.

8. **Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

9. **Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the *named insured* shall die, such insurance as is afforded by this policy shall apply (1) to the *named insured's* legal representative, as the *named insured*, but only while acting within the scope of his duties as such, and (2) with respect to the property of the *named insured*, to the person having proper temporary custody thereof, as *insured*, but only until the appointment and qualification of the legal representative.

10. **Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

11. **Cancellation** This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing.

If the *named insured* cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

12. **Declarations** By acceptance of this policy, the *named insured* agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its President and a Secretary, but the same shall not be binding unless countersigned on the declarations page by a duly authorized agent of the company.

Michael S. Wilder, *Secretary*

Donald R. Frahm, *President*

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the such

HART000089

# NEW YORK AUTOMOBILE ACCIDENT INDEMNIFICATION ENDORSEMENT

The company, agrees with the named insured, in consideration of the payment of the premium for this endorsement and subject to all terms of this endorsement:

## INSURING AGREEMENTS

**I. Damages for Bodily Injury Caused by Uninsured Automobiles**

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

## II. Definitions

(a) **Insured.** The unqualified word "insured" means:

(1) the named insured and, while residents of the same household, his spouse and the relatives of either;

(2) any other person while occupying

(i) an automobile owned by the named insured or, if the named insured is an individual, such spouse and used by or with the permission of either, or

(ii) any other automobile while being operated by the named insured or such spouse,

except a person occupying an automobile not registered in the State of New York, while used as a public or livery conveyance; and

(3) any person, with respect to damages he is entitled to recover because of bodily injury to which this endorsement applies sustained by an insured under (1) or (2) above.

(b) **Uninsured Automobile.** The term "uninsured automobile" means:

(1) an automobile with respect to the ownership, maintenance or use of which there is, in the amounts specified in the New York Motor Vehicle Financial Security Act, neither (i) cash or securities on deposit with the New York Commissioner of Motor Vehicles nor (ii) a bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same disclaims liability or denies coverage thereunder, or

(2) a hit-and-run automobile as defined;

but the term "uninsured automobile" shall not include:

(i) an automobile owned by the named insured or spouse;

(ii) an automobile which is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law, or any similar law;

(iii) an automobile which is owned by the United States of America, Canada, a state, a political sub-division of any such government or an agency of any of the foregoing;

(iv) a land motor vehicle or trailer, if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle; or

(v) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.

(c) **Hit-and-Run Automobile.** The term "hit-and-run automobile" means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or the owner of such "hit-and-run automobile"; (2) the insured or someone on his behalf shall have reported the accident within 24 hours or as soon as reasonably possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 90 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at the request of the company, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident.

(d) **Occupying.** The word "occupying" means in or upon or entering into or alighting from.

(e) **State.** The word "state" includes the District of Columbia, a territory or possession of the United States, and a province of Canada.

## III. Territory

This endorsement applies only to accidents which occur within the State of New York.

## EXCLUSIONS

This endorsement does not apply:

(a) to bodily injury to an insured while operating an automobile in violation of an order of suspension or revocation; or to care or loss of services recoverable by an insured because of such bodily injury so sustained;

(b) to bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, his legal representatives or any person entitled to payment under this endorsement shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor;

(c) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law.

## CONDITIONS

**1. Policy Provisions.** None of the Insuring Agreements, Exclusions or Conditions of the policy shall apply to the insurance afforded by this endorsement except the Conditions "Notice" or "Notice of Accident" and "Declarations".

**2. Premium.** If during the policy period the number of automobiles owned by the named insured or spouse and registered in New York or the number of New York dealer's license plates or transporter plates issued to the named insured changes, the named insured shall notify the company during the policy period of any change and the premium shall be adjusted as of the date of such change in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

**3. Notice and Proof of Claim: Medical Reports.** Within 90 days or as soon as practicable, the insured or other person making claim shall give to the company written notice of claim under this endorsement.

As soon as practicable after written request by the company, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall as may reasonably be required submit to examinations under oath by any person named by the company and subscribe the same. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examinations by physicians selected by the company when and as the company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or the person or persons entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records.

Form A-1875-3  Printed in U. S. A.  4-'69

1

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000090

**4. Notice of Legal Action.** If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury against any person or organization legally responsible for the use of an automobile involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.

**5. Limits of Liability.** (a) The limit of liability of the company for all damages, including damages for care or loss of services, because of bodily injury sustained by one person, as the result of any one accident is $10,000 and, subject to the above provision, the total limit of liability of the company for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons, whether insureds or qualified persons under the New York Motor Vehicle Accident Indemnification Corporation law, as the result of any one accident is $20,000.

(b) Any amount payable under the terms of this endorsement, including amounts payable for care or loss of services, because of bodily injury sustained by one person, shall be reduced by (1) all sums paid to one or more insureds on account of such bodily injury by or on behalf of (a) the owner or operator of the uninsured automobile and (b) any other person or persons jointly or severally liable together with such owner or operator for such bodily injury, (2) all sums paid to one or more insureds on account of bodily injury sustained in the same accident under any insurance or statutory benefit similar to that provided by this endorsement and (3) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, exclusive of non-occupational disability benefits.

**6. Other Insurance.** With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

**7. Arbitration.** If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrators may be entered in any Court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement.

**8. Trust Agreement.** In the event of payment to any person under this endorsement:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of such bodily injury;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) if requested in writing by the company, such person shall take, through any representative designated by the company such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys fees incurred by it in connection therewith;

(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision and, upon request of the company, shall attend hearings and trials and assist in securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings.

**9. Payment of Loss by Company.** Any amount due hereunder is payable (a) to the insured, or (b) if the insured be a minor to his parent or guardian, or (c) if the insured be deceased to his surviving spouse, otherwise (d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents; provided, the company may at its option pay any amount due hereunder in accordance with sub-division (d) hereof.

**10. Action Against Company.** No action shall lie against the company unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of this endorsement.

**11. Changes.** This endorsement embodies all agreements existing between the insured and the company relating to this insurance. Notice to or knowledge possessed by the company, any agent or any other person shall not effect a waiver or a change in this endorsement or estop the company from asserting any right under the terms of this endorsement.

**12. Assignment.** Assignment of interest under this endorsement shall not bind the company until its consent is endorsed hereon; if, however, the named insured or his spouse if a resident of the same household, shall die, this endorsement shall cover (1) the survivor as named insured, (2) his legal representative as named insured but only while acting within the scope of his duties as such, and (3) any relative who was an insured at the time of such death.

**13. Policy Period — Termination.** This endorsement applies only to accidents which occur on and after the effective date hereof and during the policy period and shall terminate upon (1) termination of the policy of which it forms a part or (2) termination of New York registration on all automobiles owned by the named insured or spouse.

## LIMITATION OF FAMILY PROTECTION AGAINST UNINSURED MOTORISTS

It is agreed that such insurance as is afforded by the policy or by any endorsement used therewith, other than the New York Automobile Accident Indemnification Coverage, with respect to damages which the insured shall become legally entitled to recover from the owner or operator of an uninsured automobile, does not apply to any accident occurring within the State of New York.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.



**THE HARTFORD**
**INSURANCE GROUP**
HARTFORD, CONNECTICUT

*President*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000091

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Temporary Substitute Autos; Autos**
**Owned by Partners; Partners,**
**Executive Officers as Insured**



**THE HARTFORD**

**A.** **"PART II — WHICH AUTOS ARE COVERED AUTOS" is changed by adding the following:**

   D. **TEMPORARY SUBSTITUTE AUTOS.**

      Any **auto you** do not own while used as a temporary substitute for an **auto you** do own is a covered **auto** for the same LIABILITY INSURANCE and UNINSURED MOTORISTS INSURANCE as is provided by the policy for the **auto you** do own, but only if that owned **auto** is out of normal use because of its breakdown, repair, servicing, loss or destruction.

   E. **AUTOS OWNED BY PARTNERS.**

      If **you** are a partnership, no **auto** owned by any of **your** partners or members of their households is a covered **auto** for LIABILITY INSURANCE unless the policy is endorsed to cover that **auto** as a covered **auto** and the proper premium is charged.

**B.** **"WHO IS INSURED" of "PART IV — LIABILITY INSURANCE" is changed by adding the following between paragraphs 1 and 2:**

   1A. Any partner or executive officer of **yours** is an **insured** for any covered **auto** except that none of them is an **insured**:

      a. For a covered **auto** that **you** do not own, lease, hire or borrow or which is a temporary substitute **auto** (as described in PART II, D of "WHICH AUTOS ARE COVERED AUTOS"), unless the **auto** is being used in **your** business or **your** personal affairs.

      b. For an **auto** owned by him or her or by a member of his or her household.

**Form A-4307-0** Printed in U.S.A. (NS)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



CA 00 15
(Ed. 07 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CHANGES IN POLICY—HANDLING OF PROPERTY

LIABILITY INSURANCE is changed as follows:

A.  The exclusion relating to loading or unloading of property does not apply. The following two exclusions apply instead:

This insurance does not apply to:

**Bodily injury** or **property damage** resulting from the handling of property:

   a.  Before it is moved from the place where it is accepted by the **insured** for movement into or onto the covered **auto**, or

   b.  After it is moved from the covered **auto** to the place where it is finally delivered by the **insured.**

**Bodily injury** or **property damage** resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered **auto.**

B.  WHO IS INSURED is changed to read:

   D.  WHO IS INSURED

      1.  You are an **insured** for any covered **auto.**

2.  Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

   a.  Someone using a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

   b.  Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos.**

   c.  Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto.**

3.  Anyone is an **insured** for his or her liability because of acts or omissions of an **insured** described above. However, the owner of or anyone else from whom **you** hirer or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 21 01
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CHANGES IN UNINSURED MOTORISTS INSURANCE

This endorsement is applicable in the states of AR., KY., & LA.

The insured shall not be required to arbitrate disputed claims.

Copyright, Insurance Services Office, 1977

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000094



CA 22 16
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PERSONAL INJURY PROTECTION ENDORSEMENT
### (KENTUCKY)

The Company agrees with the named insured subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I

#### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay, in accordance with Kentucky Revised Statutes Chapter 304, Sub Title 39, personal injury protection benefits for:

(a)  medical expense,

(b)  work loss,

(c)  replacement services loss,

(d)  survivor's economic loss,

(e)  survivor's replacement services loss, and

(f)  funeral expense

incurred with respect to bodily injury sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance or use of a motor vehicle as a vehicle.

#### Exclusions

This coverage does not apply:

(a)  to bodily injury sustained by the named insured or any relative while occupying any motor vehicle owned by the named insured which is not an insured motor vehicle;

(b)  to bodily injury sustained by any relative while occupying any motor vehicle owned by such relative with respect to which the security required by the Kentucky Revised Statutes Chapter 304, Sub Title 39, is not in effect;

(c)  to bodily injury sustained by the named insured or any relative, who has not rejected his tort limitation pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, while occupying or while a pedestrian through being struck by, any motor vehicle, other than the insured motor vehicle, with respect to which the security required under the Kentucky Revised Statutes Chapter 304, Sub Title 39, is in effect unless the provider of such security fails to make payment for loss within 30 days of reasonable proof of the fact and the amount of loss sustained;

(d)  to bodily injury sustained by any person if such injury arises from his conduct within the course of a business of repairing, servicing or otherwise maintaining motor vehicles unless such conduct occurs off the business premises;

(e)  to bodily injury sustained by any person arising from conduct in the course of loading or unloading any motor vehicle unless such conduct occurs while occupying such motor vehicle;

(f)  to bodily injury sustained by any person other than the named insured or any relative which arises from the operation, maintenance or use of a motor vehicle without a good faith belief that he is legally entitled to do so;

(g)  to any benefits any person would otherwise be entitled to receive hereunder for bodily injury intentionally caused by such person or arising out of his intentionally attempting to cause bodily injury, and, if any person dies as a result of intentionally causing or attempting to cause bodily injury to himself, his survivors are not entitled to any survivor's economic loss or survivor's replacement services loss benefits;

(h)  to bodily injury sustained by any pedestrian, other than the named insured or any relative, outside the Commonwealth of Kentucky;

(i)  to bodily injury sustained by any person, other than the named insured or any relative while occupying a motor vehicle which is regularly used in the course of the business of transporting persons or property and which is one of five or more motor vehicles under common ownership, or a motor vehicle owned by a government other than the Commonwealth of Kentucky, its political subdivisions, municipal corporations, or public agencies, if the accident occurs outside the Commonwealth of Kentucky.

(j)  to bodily injury sustained by any person arising out of the use of any motor vehicle while located as a residence or premises;

(k)  to bodily injury due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(l)  to bodily injury resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

(m)  to bodily injury sustained by any person while occupying a motorcycle.

#### Definitions

When used in reference to this coverage:

"bodily injury" means bodily harm, sickness, disease, or death;

"eligible injured person" means

(a)  the named insured or any relative who sustains bodily injury while occupying or while a pedestrian through being struck by any motor vehicle, provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an eligible injured person, unless personal injury protection coverage has subsequently been purchased for such person under this policy, or

The company does not certify that these documents constitute a complete and accurate copy of the policy.

(b) any other person who sustains bodily injury while occupying or while a pedestrian through being struck by the insured motor vehicle, provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an eligible injured person,

however, any rejection of tort limitations applicable solely to motorcycles shall not affect the status of any person as an eligible injured person with respect to any motor vehicle other than a motorcycle;

"funeral expense" means reasonable charges incurred for expenses in any way related to funeral, cremation or burial;

"insured motor vehicle" means a motor vehicle with respect to which:

(a) the bodily injury liability insurance of the policy applies and for which a specific premium is charged, and

(b) the named insured is required to maintain security under the provisions of Kentucky Revised Statutes Chapter 304, Sub Title 39;

"medical expense" means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, and other remedial treatment and care, any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing, and any healing arts professions of a type licensed by the Commonwealth of Kentucky, provided that medical expense shall not include that portion of charge for a room in a hospital, clinic, convalescent or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge for semi-private accommodations, unless intensive care is medically required;

"motor vehicle" means a vehicle of a kind registered or required to be registered under Kentucky Revised Statutes;

"named insured" means the person or organization named in the declarations;

"occupying" means in or upon, entering into or alighting from;

"pedestrian" means a person who is not occupying a motor vehicle at the time the injury occurs;

"relative" means the spouse and any person related to the named insured by blood, marriage, or adoption including a minor in the custody of the named insured, spouse or such related person who is a resident of the same household as the named insured, whether or not temporarily residing elsewhere, but does not include any such person who is a named insured under any other policy providing the security under Kentucky Revised Statutes Chapter 304, Sub Title 39;

"replacement services loss" means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the eligible injured person would have performed, not for income, but for the benefit of himself or his family if he had not been injured;

"survivor" means a person indentified in Kentucky Revised Statutes Section 411.130 as one entitled to receive benefits by reason of the death of another person;

"survivor's economic loss" means loss after the eligible injured person's death of contributions of things of economic value to his survivors, not including services they would have received from the eligible injured person had he not suffered the fatal injury, less expenses of the survivors avoided by reason of the eligible injured person's death;

"survivor's replacement services loss" means expenses reasonably incurred by survivors after the eligible injured person's death in obtaining ordinary and necessary services in lieu of those the eligible injured person would have performed for their benefit had he not suffered the fatal injury, less expenses of the survivors avoided by reason of the eligible injured person's death and not subtracted in calculating survivor's economic loss;

"work loss" means loss of income from work the eligible injured person would probably have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him.

### Policy Period; Territory

This coverage applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

### Limits of Liability

Regardless of the number of persons insured, policies or approved plans of self-insurance applicable, claims made or insured motor vehicles to which this coverage applies, the Company's liability for personal injury protection benefits with respect to bodily injury sustained by any one eligible injured person in any one motor vehicle accident shall not exceed $10,000 in the aggregate, and subject to such aggregate limit:

1. the maximum amount payable for work loss, replacement services loss, survivor's economic loss, and survivor's replacement services loss shall not exceed $200 per week in the aggregate prorated for any lesser period, provided that if the eligible injured person's earnings or work are seasonal or irregular, the weekly limit shall be equitably adjusted or apportioned on an annual basis;

2. the maximum amount payable for funeral expense shall not exceed $1,000.

Any amount payable by the Company under the terms of this coverage shall be reduced by any applicable deductible set forth in the declarations, but only with respect to bodily injury sustained by the named insured or any relative, provided that, if two or more such persons sustain bodily injury in the same motor vehicle accident, such deductible applicable to all of them shall not exceed such deductible amount and such amount shall be allocated equally among them. Provided further that, a named insured or relative is entitled to receive under this coverage the difference between this deductible and a greater deductible applicable under another policy applying to personal injury protection coverage pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39.

these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, 1977

HART000096

In calculating loss or expense for which personal injury protection benefits are payable under this coverage, a reduction shall be made in the amount of:

1. all benefits or advantages a person receives or is entitled to receive from social security and work-men's compensation, unless these benefits or advantages have not been received before personal injury protection benefits are overdue or the claim is paid.

2. any income tax saving resulting from benefits or advantages received for loss of income under this coverage or from like benefits or advantages received under social security or workmen's compensation which are not considered taxable income, provided that the maximum reduction may not exceed 15% of the loss of income and shall be in lesser amount if the claimant furnishes to the Company reasonable proof of a lower value of the income tax advantage.

**Conditions**

A. **Action Against Company.** No action shall lie against the Company unless as a condition precedent thereto, there shall have been full compliance with all the terms of this coverage.

B. **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the eligible injured person, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each eligible injured person to the Company or any of its authorized agents as soon as practicable.

C. **Medical Reports; Proof of Claim.** As soon as practicable, the eligible injured person or someone on his behalf shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the bodily injury, treatment and rehabilitation received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The eligible injured person shall submit to physical and mental examination by physicians selected by the Company when and as often as the Company may reasonably require.

D. **Subrogation.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of any payment under this coverage, the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

E. **Reimbursement and Trust Agreement.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of the payment to any person under this coverage:

1. the Company shall be entitled to the extent of such payment to the proceeds of any settlement

or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made, and the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter;

2. such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;

3. such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; and

4. such person shall execute and deliver to the Company instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

F. **Non-Duplication of Benefits; Priority of Payments; Other Insurance.** No eligible injured person shall recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved self-insurance plans. In the event an eligible injured person has other similar insurance, including approved self-insurance plans, available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this coverage and such other insurance.

## SECTION II

In consideration of the coverage afforded under Section I and the adjustment of applicable rates:

(a) any amount payable under the uninsured motorists coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of bodily injury sustained by an eligible injured person;

(b) any automobile medical payments or expense coverages afforded under this policy shall be excess insurance over any personal injury protection benefits paid or payable but for the application of a deductible under this or any other automobile insurance policy because of bodily injury sustained by an eligible injured person.

## SECTION III

**Constitutionality Clause.**

The premium for and the coverages of the policy have been established in reliance upon the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39. In the event a

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 22 16** (Ed. 01 78)

Copyright. Insurance Services Office. 1977

Page 3 of 4

HART000097

court of competent jurisdiction declares, or enters a judgment the effect of which is to render, the provisions of such statutes invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy and the provisions of this endorsement shall be voidable or subject to amendment at the option of the Company.

**Notice to Policyholders.**

Acceptance of the coverage described in Kentucky Revised Statutes Chapter 304, Sub Title 39, places some limitations on your right to bring suit for bodily injury, KRS 304.39-060 reads in part:

"(1)    Any person who registers, operates, maintains or uses a motor vehicle on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such motor vehicle and use of the public roadways, be deemed to have accepted the provisions of this Act, and in particular those provisions which are contained in this section.

(2)    (a)    Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is 'abolished' for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this Act are payable therefor, or that would be payable but for any deductible authorized by this Act, under any insurance policy or other method of security complying with the requirements of this Act, except to the extent non-economic detriment qualifies under subsection (2)(b) hereof.

(b)    In any action of tort brought against the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required in this Act, or against any

person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of bodily injury, sickness or disease arising out of the ownership, maintenance, operation or use of such motor vehicle only in the event that the benefits which are payable for such injury as 'medical expense' or which would be payable but for any exclusion or deductible authorized by this Act exceed $1,000.00 or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least $1,000.

(c)    Tort liability is not so limited for injury to a person who is not an owner, operator, maintainer or user of a motor vehicle within subsection (1) of this section.

(4)    Any person may refuse to consent to the limitations of his tort rights and liabilities as contained in this section. Such rejection must be in writing in a form to be prescribed by the Department of Insurance and must have been executed and filed with the Department at a time prior to any motor vehicle accident for which such rejection is to apply . . ."

These are some of the exceptions to the limitations on your right to sue and are not intended to comprise a complete enumeration of all circumstances under which suit may be brought for bodily injury.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



CA 22 30
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
## (NEW JERSEY)

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in **bold face**, other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions"**.

The Company agrees with the **named insured**, subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I

### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay personal injury protection benefits consisting of

(a) **medical expense benefits**,

(b) **income continuation benefits**,

(c) **essential services benefits**,

(d) **survivor benefits**, and

(e) **funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person**, caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

### Exclusions

The insurance under this endorsement does not apply:

(a) to **bodily injury** to a person whose conduct contributed to the injury in any of the following ways:

   (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

   (2) while acting with specific intent to cause injury or damage to himself or others;

(b) to **bodily injury** to the **named insured** or any **relative** of the **named insured** sustained while occupying, using or entering into or alighting from a **private passenger automobile** which is not an **insured automobile** under this policy, if he is required to maintain automobile liability insurance coverage with respect to the automobile under the New Jersey Automobile Reparation Reform Act;

(c) to **bodily injury** to any person, other than the **named insured** or a **relative** of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey;

(d) to **bodily injury** arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

(e) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(f) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

### Definitions

When used in reference to this insurance:

"**bodily injury**" means bodily injury, sickness or disease, including death at any time resulting therefrom;

"**eligible injured person**" means

(a) the **named insured** or any **relative** of the **named insured**, if the **named insured** or **relative** sustains **bodily injury**

   (1) while occupying, using, entering into or alighting from a **private passenger automobile**, or

   (2) while a **pedestrian**, caused by a **private passenger automobile** or as a result of being struck by an object propelled by or from such an automobile; or

(b) any other person who sustains **bodily injury**

   (1) while, with the permission of the **named insured**, occupying, using, entering into or alighting from the **insured automobile**, or

   (2) while a **pedestrian**, caused by the **insured automobile** or as a result of being struck by an object propelled by or from the **insured automobile**;

"**essential services benefits**" means an amount not exceeding a limit of \$12.00 per day and a total limit of \$4,380 payable to an **eligible injured person** as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his lifetime and which he would ordinarily have performed not for **income** but for the care and maintenance of himself and his **relatives**;

"**funeral expense benefits**" means an amount not exceeding \$1,000 for reasonable funeral, burial and cremation expenses incurred;

"**income**" means salary, wages, tips, commissions, fees and other earnings derived from work or employment;

"**income continuation benefits**" means an amount not exceeding a limit of \$100 per week and a total limit of \$5,200 payable for the loss of income of an **income producer** during his lifetime, as a result of **bodily injury disability**;

The company has located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, 1977

HART000099

"income producer" means a person who, at the time of the accident, was in an occupational status, earning or producing income;

"insured automobile" means an automobile with respect to which the named insured is required to maintain auto-mobile liability insurance coverage under the New Jersey Automobile Reparation Reform Act, to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged;

"medical expense benefits" means all reasonable expenses incurred for medical, surgical and dental treatment, professional nursing, hospital and rehabilitation services, x-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses incurred for treatment prescribed by persons licensed to practice medicine, surgery, psychology or chiropractic, or for any non-medical remedial treatment rendered in accordance with a recognized religious method of healing;

"named insured" means the person or organization named in the insured in the declarations. If the insured automobile is owned by a farm family co-partnership or corporation, the term "named insured" also includes the head of the household of each family designated in the policy as having a working interest in the farm;

"pedestrian" means any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks and includes any person who is entering into or alighting from such a vehicle;

"private passenger automobile" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) a private passenger or station wagon type automobile,

(2) a pick-up or panel truck or delivery sedan, or

(3) a utility automobile designed for personal use as a camper or motor home or for family recreational purposes: but

a private passenger automobile does not include a motorcycle an automobile used as a public or livery conveyance for passengers, a pick-up or panel truck, delivery sedan or utility automobile customarily used for business, occupational or professional purposes other than farming or ranching or a utility automobile customarily used for the transportation of passengers other than members of the user's family or their guests;

"relative" means a person related to the named insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the named insured;

"survivor benefits" means the amount or amounts payable in the event of the death of an eligible injured person as determined in subdivision (1) or (2) hereof, as appropriate:

(1) if the eligible injured person was an income producer at the time of the accident, an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of income resulting from his injury prior to his death;

(2) if the eligible injured person ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount not to exceed the difference between $4,380 and all basic essential services benefits paid with respect to his injury prior to death.

### Limit of Liability

Any amount payable by the Company as personal injury protection benefits with respect to bodily injury shall be reduced by all amounts paid, payable or required to be provided under any workmen's compensation or employees temporary disability law, or under Medicare provided under federal law.

The applicable limit on income continuation benefits applies separately to each full regular and customary work week of an eligible injured person. If his disability from work or employment consists of or includes only a part of such a week, the Company shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the part week bears to the number of days in his full work week.

### Policy Period; Territory

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions or Canada.

### Conditions

1. **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the eligible injured person, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each eligible injured person to the Company or any of its authorized agents as soon as practicable. If any eligible injured person, his legal representative or survivors shall institute legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such eligible injured person, his legal representative or his survivors.

2. **Medical Reports; Proof of Claim.** As soon as practicable the eligible injured person or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The eligible injured person shall submit to physical examination by physicians when and as often as the Company may reasonably require, and a copy of the medical report will be forwarded to such eligible injured person if requested.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute true and accurate copies of the policy.

Copyright, Insurance Services Office, 1977

3. **Multiple Policies Applicable to One Accident; Non-duplication of Benefits; Priority of Complying Policies.** Regardless of the number of automobiles insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act, or the number of insurers or policies affording such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to bodily injury to any one person as the result of any one accident shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

This insurance applies on a primary basis to bodily injury to the named insured and his relative and on a secondary basis to all other eligible injured persons. Similarly, the basic personal injury protection coverage provided by other complying policies applies on a primary basis to bodily injury to those persons who are named insureds under such policies and their relatives. If an eligible injured person to whom this insurance applies on a secondary basis has other basic personal injury protection coverage under another complying policy applicable to his bodily injury on a primary basis, all claims for basic personal injury protection benefits shall first be made against the insurer issuing the other complying policy. No basic personal injury protection benefits shall be due and payable under this insurance unless the other insurer fails to pay such benefits by reason of insolvency and the Company has been given written notice by the claimant of such failure. "Complying Policy" means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.

4. **Reimbursement and Trust Agreement.** Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement

   (a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter;

   (b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;

   (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

   (d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

5. **Payment of Personal Injury Protection Benefits.** Medical expense benefits and essential services benefits may be paid at the option of the Company to the eligible injured person or the person or organization furnishing the products or services for which such benefits are due. In the event of the death of an eligible injured person any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the eligible injured person's estate.

Benefits payable under subdivision (1) of the definition of survivor benefits are payable to the eligible injured person's surviving spouse, or if there is no surviving spouse, to his surviving children, or if there are no surviving spouse or surviving children, to the eligible injured person's estate.

Benefits payable under subdivision (2) of the definition of survivor benefits are payable to the person who has incurred the expense of providing essential services.

Funeral expense benefits are payable to the eligible injured person's estate.

## SECTION II

### EXTENDED MEDICAL EXPENSE BENEFITS COVERAGE

The Company will pay medical expense benefits not to exceed the total aggregate amount stated in the schedule and funeral expense benefits with respect to bodily injury sustained by an insured person, caused by an accident occurring during the policy period within the United States of America, its territories or possessions or Canada and arising out of the ownership, maintenance or use, including loading and unloading, of an insured automobile or of a highway vehicle not owned by or furnished or available for the regular use of the named insured or any relative of the named insured.

**Exclusions**

The insurance under Section II is subject to all of the exclusions applicable to Section I, except that the word "person" in exclusion (c) is replaced by the word "pedestrian".

**Definitions**

The definitions under Section I apply to Section II and under Section II:

"highway vehicle" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-treads or (3) a vehicle while located for use as a residence or premises;

The company located these documents in its business records. At this time, the company does not certify that these documents constitute _____ and accurate copy of the policy.

HART000101

sured person" means

(a) the **named insured** or any **relative** of the **named insured**, if the **named insured** or **relative** sustains **bodily injury**

   (1) while occupying, using, entering into or alighting from a **highway vehicle**; or

   (2) while a **pedestrian**, caused by a **highway vehicle**;

(b) any other person who sustains **bodily injury** while occupying a **highway vehicle** (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such **highway vehicle** is being operated by the **named insured** or a **relative** of the **named insured** or any other person using such **highway vehicle** with the permission of the **named insured**;

(c) any other person who sustains **bodily injury** while occupying an **insured automobile** if such **insured automobile** is being operated by the **named insured** or a **relative** of the **named insured** or any other person using such **insured automobile** with the permission of the **named insured**.

**Conditions**

Conditions 1, 2 and 4 of Section I apply to Section II, substituting the term "insured person" for "eligible injured person" wherever it appears therein. The following additional condition applies under Section II:

**Other Insurance or Benefits.** This insurance does not apply o loss or expense with respect to which an **insured person** is entitled to benefits under any workmen's compensation law or Medicare provided under federal law or under Section 4 of the New Jersey Automobile Reparation Reform Act.

This insurance does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefor under any other automobile no-fault law or under any other automobile medical payments insurance.

## SECTION III

In consideration of the insurance afforded under Sections I and II of this endorsement, and the adjustment of applicable rates:

(a) any amount payable for economic loss under uninsured motorists coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury** to an **eligible injured person**;

(b) any automobile medical payments coverage afforded under the policy is deleted with respect to an automobile which is an **insured automobile**.

### SECTION IV

#### Premium Recomputation

The premium for the policy is based on rates which have been reduced in accordance with Section 18 of the New Jersey Automobile Reparation Reform Act to reflect the limitations on the right to recover damages imposed by Section 8 of said Act. If a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, Section 8 of the Act invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy on the basis of revised rates which are subject to approval by the Commissioner of Insurance.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



*CA 99 03*
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AUTO MEDICAL PAYMENTS INSURANCE

### A. WORDS AND PHRASES WITH SPECIAL MEANING

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for AUTO MEDICAL PAYMENTS INSURANCE:

1. "Family member" means a person related to you, by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

### B. WE WILL PAY

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an insured who sustains bodily injury caused by accident. We will pay only those expenses incurred within three years from the date of the accident.

### C. WE WILL NOT COVER — EXCLUSIONS

This insurance does not apply to:

1. Bodily injury sustained by an insured while occupying a vehicle located for use as a premises.

2. Bodily injury sustained by you or any family member while occupying or struck by any vehicle (other than a covered auto) owned by you or furnished or available for your regular use.

3. Bodily injury sustained by any family member while occupying or struck by any vehicle owned by or furnished or available for the regular use of any family member.

4. Bodily injury to your employee arising out of and in the course of employment by you. However, we will cover bodily injury to your domestic employees if not entitled to workers' compensation benefits.

5. Bodily injury to an insured while working in a business of selling, servicing, repairing or parking autos.

6. Bodily injury caused by declared or undeclared war or insurrection or any of their consequences.

7. Bodily injury to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

### D. WHO IS INSURED

1. You or any family member while occupying or, while a pedestrian, when struck by any auto.

2. Anyone else occupying a covered auto of a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

### E. OUR LIMIT OF LIABILITY

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for bodily injury for each insured injured in any one accident is the limit of AUTO MEDICAL PAYMENTS shown in the declarations.

### F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for AUTO MEDICAL PAYMENTS INSURANCE as follows:

1. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

2. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible auto medical payments insurance.

CA 99 03 (Ed. 01 78)

Copyright, Insurance Services Office, 1977

[company] located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

It is agreed that:

A.  The policy does not apply:

1.  Under any Liability Coverage, to **bodily injury** or **property damage**

    a.  with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    b.  resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material,** if

    a.  the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

    b.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

    c.  the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories

or possessions or Canada, this exclusion c applies only to **property damage** to such **nuclear facility** and property thereat.

B.  As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties;

**"nuclear material"** means **source material, special nuclear material** or **byproduct material;**

**"source material"**, **"special nuclear material"**, and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

**"waste"** means any waste material (a) containing **byproduct material** and (b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph 1 or 2 thereof;

"**nuclear facility**" means

1.  any **nuclear reactor,**

2.  any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel,** or (c) handling, processing or packaging **waste,**

3.  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

4.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**"property damage"** includes all forms of radioactive contamination of property.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office,  1977

## ERRORS AND OMISSIONS INSURANCE — EMPLOYEE BENEFIT PROGRAMS

This endorsement forms a part of Policy No.
Issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address {

Effective date.................................................    Effective hour is the same as stated in the Declarations of the policy.

### SCHEDULE

| Limits of Liability | | Estimated Advance Premium |
|---|---|---|
| $          each claim | | $ |
| $          aggregate | | $ |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

### INSURING AGREEMENTS

I. **COVERAGE.** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** As respects such insurance as is afforded by the terms of this endorsement, the company shall:
(a) defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III. **DEFINITIONS.**
(a) "Insured" — The unqualified word "Insured", wherever used, includes not only claims under the local jurisdiction of a court of law within the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
(b) "Employee Benefit Programs" — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
(c) "Administration" — The unqualified word "Administration", wherever used, shall mean:
(1) giving counsel to employees with respect to Employee Benefit Programs;
(2) interpreting Employee Benefit Programs;
(3) handling of records in connection with Employee Benefit Programs;
(4) effecting enrollment of employees under Employee Benefit Programs;
provided all such acts are authorized by the Named Insured.

IV. **ENDORSEMENT PERIOD, TERRITORY.** This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

### EXCLUSIONS

This endorsement does not apply:
(a) to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b) to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
(c) to any claim for failure of performance of contract by an insurer;
(d) to any claim based upon:
(1) failure of stock to perform as represented by an insured.
(2) advice given by an insured to an employee to participate or not to participate in stock subscription plans.

### CONDITIONS

1. **Policy Conditions.** All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2. **Limits of Liability**
(a) Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
(b) $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
(c) The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. The company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the Insured.
(d) The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3. **Premium.** The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| | ....................First  5,000 | $.................... |
| | ....................Next  5,000 | $.................... |
| | ....................Over 10,000 | $.................... |
| | Total $.................... | |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

Form L-2055-1    Printed in U. S. A.   6-'66

Countersigned by ..................................................

.................................................. Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**BROAD FORM PROPERTY
DAMAGE ENDORSEMENT**
(Including Completed Operations)



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No.................................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .........................................................Effective hour is the
same as stated in the Declarations of the Policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

---

**Classification:**

It is agreed that the insurance for **property damage** liability applies, subject to the following additional provisions:

A.  The exclusions relating to **property damage** to (1) property owned, occupied or used by or rented to the **Insured** or in the care, custody or control of the **Insured** or as to which the **Insured** is for any purpose exercising physical control and (2) work performed by or on behalf of the **named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (y) and (z):

   (y)  to **property damage**

     (1)  to property owned or occupied or rented to the **Insured**, or, except with respect to the use of **elevators**, to property held by the **Insured** for sale or entrusted to the **Insured** for storage or safekeeping,

     (2)  except with respect to liability under a written sidetrack agreement or the use of **elevators** to

       (a)  property while on premises owned by or rented to the **Insured** for the purpose of having operations performed on such property by or on behalf of the **Insured,**

       (b)  tools or equipment while being used by the **Insured** in performing his operations,

       (c)  property in the custody of the **Insured** which is to be installed, erected or used in construction by the **Insured,**

       (d)  that particular part of any property, not on premises owned by or rented to the **Insured,**

         (i)  upon which operations are being performed by or on behalf of the **Insured** at the time of the **property damage** arising out of such operations, or

         (ii)  out of which any **property damage** arises, or

         (iii)  the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the **Insured;**

   (z)  with respect to the **completed operations hazard** and with respect to any classification stated above as "including completed operations", to **property damage** to work performed by the **named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

B.  The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **Insured,** such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the records

Countersigned by ...........................................................
                                       *Authorized Agent*

**Form L-3252-2**   Printed in U.S.A.   (NS)

INSURED'S COPY

## Comprehensive General Liability Insurance Coverage Part (Continued)

### I. COVERAGE A — BODILY INJURY LIABILITY

### COVERAGE B — PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

**Coverage A** – *bodily injury* or

**Coverage B** – *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

   (1) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured,* or

   (2) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to the parking of an *automobile* on premises owned by, rented to or controlled by the *named insured* or the ways immediately adjoining, if such *automobile* is not owned by or rented or loaned to any *insured;*

(c) to *bodily injury* or *property damage* arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to *bodily injury* or *property damage* arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured;*

(e) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

   (1) any watercraft owned or operated by or rented or loaned to any *insured,* or

   (2) any other watercraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the *named insured;*

(f) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to

   (1) liability assumed by the *insured* under an *incidental contract,* or

   (2) expenses for first aid under the Supplementary Payments provision;

(h) to *bodily injury* or *property damage* for which the *insured* or his indemnitee may be held liable

   (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

   (2) if not so engaged, as an owner or lessor of premises used for such purposes,

   if such liability is imposed

   (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

   (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the *insured* or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract;*

(k) to *property damage* to

   (1) property owned or occupied by or rented to the *insured,*

   (2) property used by the *insured,* or

   (3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to *property damage* (other than to *elevators*) arising out of the use of an *elevator* at premises owned by, rented to or controlled by the *named insured;*

(l) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

   (1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

   (2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(n) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(o) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q) to *property damage* included within:

   (1) the *explosion hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "x";

The company located these documents in its business records and that these documents constitute a complete and accurate copy of the policy.

## Comprehensive General Liability Insurance Coverage Part *(Continued)*     **THE HARTFORD**

(2) the *collapse hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "c".

(3) the *underground property damage hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "u".

## II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured*; and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of *mobile equipment* registered under any motor vehicle registration law,

(i) an employee of the *named insured* while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the *named insured* any such equipment registered in the name of the *named insured* and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an *insured* under this paragraph (e) with respect to:

(1) *bodily injury* to any fellow employee of such person injured in the course of his employment, or

(2) *property damage* to property owned by, rented to, in charge of or occupied by the *named insured* or the employer of any person described in subparagraph (ii).

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured.*

## III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or suits brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage A** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of (1) all *bodily injury* included within the *completed operations hazard* and (2) all *bodily injury* included within the *products hazard* shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate":

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured*, including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *property damage* included within the *products hazard* and all *property damage* included within the *completed operations hazard.*

Such aggregate limit shall apply separately to the *property damage* described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the *named insured.*

**Coverages A and B** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

## IV. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory.*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

**PREMISES MEDICAL PAYMENTS INSURANCE COVERAGE PART**

This Coverage Part forms a part of Policy No..................................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

| *(For use only if this Coverage Part is effective after the effective date of the Policy)* |
|---|
| This Coverage Part is effective...................................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to ........................................ |

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability |
|---|---|---|
| E — Premises Medical Payments | $ | $          each person |
| | | $          each accident |

| Description of Hazards | Advance Premiums |
|---|---|
| **(a) Premises and Operations** | |
| | |
| **(b) Escalators** | |
| | |
| **(c) Sports Activities** | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUM | $ |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:

**On effective date of Policy $**          **1st Anniversary $**          **2nd Anniversary $**

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by................................................
Authorized Agent

the company does not have these documents in its business records. At this time, the company takes... a complete and accurate copy of the policy.

HART0001009

## I. COVERAGE E — PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains *bodily injury* caused by accident and all reasonable *medical expense* incurred within one year from the date of the accident on account of such *bodily injury*, provided such *bodily injury* arises out of (a) a condition in the *insured premises* or (b) operations with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy.

### Exclusions

This insurance does not apply:

**(a)** to *bodily injury*

**(1)** arising out of the ownership, maintenance, operation, use, loading or unloading of

  **(i)** any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

  **(ii)** any other *automobile* or aircraft operated by any person in the course of his employment by any *insured*;

but this exclusion does not apply to the parking of an *automobile* on the *insured premises*, if such *automobile* is not owned by or rented or loaned to any *insured*;

**(2)** arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

**(3)** arising out of the ownership, maintenance, operation, use, loading or unloading of

  **(i)** any watercraft owned or operated by or rented or loaned to any *insured*, or

  **(ii)** any other watercraft operated by any person in the course of his employment by any *insured*;

but this exclusion does not apply to watercraft while ashore on the *insured premises*; or

**(4)** arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured*;

**(b)** to *bodily injury*

**(1)** included within the *completed operations hazard* or the *products hazard*;

**(2)** arising out of operations performed for the *named insured* by independent contractors other than (i) maintenance and repair of the *insured premises* or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

**(3)** resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the *named insured* is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the *named insured* is such an owner or lessor;

**(4)** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

**(c)** to *bodily injury*

**(1)** to the *named Insured*, any partner therein, any tenant or other person regularly residing on the *insured premises* or any employee of any of the foregoing if the *bodily injury* arises out of and in the course of his employment therewith;

**(2)** to any other tenant if the *bodily injury* occurs on that part of the *insured premises* rented from the *named insured* or to any employee of such a tenant if the *bodily injury* occurs on the tenant's part of the *insured premises* and arises out of and in the course of his employment for the tenant;

**(3)** to any person while engaged in maintenance and repair of the *insured premises* or alteration, demolition or new construction at such premises;

**(4)** to any person if any benefits for such *bodily injury* are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law; or under any similar law;

**(5)** to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sports activities in the policy with respect to Premises Medical Payments Coverage;

**(d)** to any *medical expense* for services by the *named insured*, any employee thereof or any person or organization under contract to the *named insured* to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all *medical expense* for *bodily injury* to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all *medical expense* for *bodily injury* to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the schedule as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*insured premises*" means all premises owned by or rented to the *named insured* with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy, and includes the ways immediately adjoining on land;

"*medical expense*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services, and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000110

# COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE
## COVERAGE PART

*(continued)*

## I.    COVERAGE A—BODILY INJURY LIABILITY
## COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of

### Coverage A. *bodily injury* or
### Coverage B. *property damage*

to which this insurance applies, caused by an *occurrence*, if the *bodily injury* or *property damage* is included within the *completed operations hazard* or the *products hazard*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement; but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b) to *bodily injury* or *property damage* for which the *insured* may be held liable

   (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

   (2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

   (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

   (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person; but part (ii) of this exclusion does not apply with respect to liability of the *insured* as an owner or lessor described in (2) above;

(c) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(d) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury;

(e) to loss of use of tangible property which has not been physically injured or destroyed resulting from

   (1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

   (2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured*;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured*;

(f) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(g) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(h) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property

are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(i) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## II.    PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured*.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

## III.    LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or suits brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage A** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *bodily injury* to which this coverage applies shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate".

**Coverages A and B** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

## IV.    POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a true and accurate copy of the policy.

## Contractual Liability Insurance
## Coverage Part (Blanket Coverage)

This Coverage Part forms a part of Policy No. .................................................................issued by THE HARTFORD INSURANCE GROUP
Company designated therein, an d takes effect as of the effective date of said policy unless otherwise stated herein.

| *(For use only if this Coverage Part is effective after the effective date of the Policy)* |
|---|
| This Coverage Part is effective..................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to... |

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

### SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| YB — Contractual Bodily Injury Liability | $ | $          ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ | $          ,000 each occurrence |
|  |  | $          ,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
|  |  |  | B. I. | P. D. | B. I. | P. D. |
|  |  | (a) Cost | (a) Per $100 of Cost |  |  |  |
|  |  | (b) Sales | (b) Per $1,000 of Sales |  |  |  |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS $ | $ |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $ _____   1st Anniversary $ _____   2nd Anniversary $ _____

The following exclusions also **apply:**

☐ Exclusion (p) — Products and Completed Operations    ☐ Exclusion (q)—x, c & u

---

**I.    COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

**COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

Coverage YB. *bodily injury* or

Coverage ZB. *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured*'s rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including
   (i)  the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and
   (ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

---

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.
This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by ...........................................

Form L-3523-0   (HS)   Printed in U.S.A.   (NS)          **KB-1**          *Authorized Agent*

The Hartford does not certify that these documents constitute a complete and accurate copy of the policy.

HART000112

## CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

### (Blanket Coverage)
(Continued)

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the *bodily injury* or *property damage;*

(c) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to *bodily injury* or *property damage* for which the indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage,or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the *insured* may be held liable in an action on a contract by a third party beneficiary for *bodily injury* or *property damage* arising out of a project for a public authority; but this exclusion does not apply to action by the public authority or any other person or organization engaged in the project;

(g) to *property damage* to

(1) property owned or occupied by or rented to the *insured*,

(2) property used by the *insured*, or

(3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

(h) to *property damage* to premises alienated by the *named insured* out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

(2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured*;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured*;

(j) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(k) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(m) As respects any agreement relating to construction operations, to *bodily injury* or *property damage* arising out of

(1) construction, maintenance or repair of watercraft or loading or unloading thereof, or

(2) operations within fifty feet of any railroad property affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(n) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(o) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

When stated in the schedule as applicable, the following exclusions also apply to *contractual liability* assumed by the *insured*.

This exclusion does not apply:

(p) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *products hazard;*

(q) to *property damage* included within

(1) the *explosion hazard,*

(2) the *collapse hazard,* or

(3) the *underground property damage hazard.*

## II.   PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

## III.   LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or *suits* brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage YB** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

**Coverage ZB** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the *named insured*.

Coverages YB and ZB — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

HART000113

# CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

## IV.  ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

*"contractual liability"* means liability expressly assumed under a written contract or agreement; provided, however, that *contractual liability* shall not be construed as including liability under a warranty of the fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

*"suit"* includes an arbitration proceeding to which the *insured* is required to submit or to which the *insured* has submitted with the company's consent.

## V.  POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory.*

## VI.  ADDITIONAL CONDITIONS

**Arbitration**

The company shall be entitled to exercise all of the *insured's* rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

**Premium**

When used as a premium basis:

1.  the word *"cost"* means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which *"cost"* is the basis of premium, regardless of whether any liability is assumed under such contracts by the *insured*.  It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the *insured*, or others including all fees, allowances, bonuses or commissions made, paid or due.  It shall not include the cost of any operations to which exclusion (m) applies.

2.  the word *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

# EXHIBIT 3

DAILY REPORT (for use with CASUALTY INSURANCE
THE HARTFORD INSURANCE GROUP

Redacted

**DUPLI**

| | | Annual Audit | |
|---|---|---|---|
| Finance | | Semi-Annual | Bureau |
| Large Risk | | Quarterly | Lost Control |

PAER → | Co. Code 5 | POLICY NO. 10 | C M10740W

## DECLARATIONS

Previous Policy No.
NO C 671174W

**Items**

1. Named Insured and Mail Address (No., Street, Town, County, State, Zip Code)
The Named Insured is: ☐ Individual ☐ Partnership ☒ Corporation
☐ Joint Venture (Other) ...........................→ From

CENTRICO INC.
100 FAIRWAY COURT  INPUT CCPS
NORTHVALE, N.J.  07647

REFER UND.

2. Policy Period
Producer's Name and Address   Producer's Code
25-2170

FTD S. JAMES & CO., INC. OF N.Y.

10-25-80    To    10-25-81

12:01 A.M., standard time at the address of the *named insured* as stated herein.
Audit Period: Annual, unless otherwise stated. ☐ Semi-Annual ☐ Quarterly ☐ Monthly

**20 YR. RET.**

...olicy is as stated below. Insurance is afforded by the Coverage Parts forming a part hereof, subject to ...erein and subject to all the terms of the policy having reference thereto.

## SUMMARY OF ADVANCE PREMIUMS

| | ADVANCE PREMIUM |
|---|---|
| ...neral Liability Insurance | $ 175,750. |
| Premises ...surance | $ INCLUDED |
| Contractual Liability Insurance | $ INCLUDED |
| Completed Operations and Products Liability Insurance | $ |
| Owners' and Contractors' Protective Liability Insurance | $ |
| Storekeepers' Insurance | $ |
| Personal Injury Liability Insurance | $ |
| Comprehensive — Plus General Liability Insurance | $ |
| ERRORS AND OMISSIONS INSURANCE | $ INCLUDED |
| | $ |
| | $ |
| Business Auto | $ 30,560. |
| Truckers | $ |
| Garage | $ |

Form Numbers of Coverage Parts and endorsements not listed on Coverage Parts forming part of Policy at issue:

G 2240-2B  C 2014-0  C 2013-0  C 2016-0

| | TOTAL ADVANCE PREMIUM | $ 206,310. |
|---|---|---|

If Policy Period more than one year: Gross Premium $ ___ Discount $ ___ Net Premium $ ___
Premium is payable: On effective date of Policy $ ___ 1st Anniversary $ ___ 2nd Anniversary $ ___

4. Business of the *named insured* is ___

G L N J GUARANTY FUND  878.75    AUTO N.J. GUARANTY FUND  42.15

MFG. INDUSTRIAL SEPARATORS  documents in its possession. At this time, the company does not certify that these documents constitute a complete and accurate copy of COMPANY COPY

Form AL-102-0  CDR  Printed in U.S.A.

HART000115

38

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................................................Effective hour is the same
as stated in the Declarations of the Policy.

## LIST OF ENDORSEMENTS AND COVERAGE PARTS FORMING PART OF POLICY AT ISSUE:

| | |
|---|---|
| CA 0015 07-78 | L 2853-1 |
| CA 9921 01-78 (N/A IN NY) | L 3025-0 |
| CA 9903 01-80 | L 3252-2 |
| CA 2X17 01-78 | L 3243-0 |
| A 4307-0 | L 3503-1 |
| CA 2230 (N.J.) | L 3505-0 |
| CA 2X14 (N.J.) 01-78 | L 3523-0 |
| CA 2102 (CA.) 01-80 | L 3991-0 |
| CA 2101 (KY.) 01-78 | L 4128-0 |
| CA 2216 (KY.) 01-79 | L 4152-0 |
| CA 2210 (FL.) 01-79 | L 4191-0 |
| L 4128-0 | G 2240-2B ASSAULT & BATTERY |
| C 2013-0 | G 2240-2B INCIDENTAL MALPRACTICE |
| C 2014-0 | G 2240-2B KNOWLEDGE & NOTICE OF OCCURRENCE |
| C 2016-0 | G 2240-2B NOTICE OF CANCELLATION |
| C 3000-0 | G 2240-2B UNINTENTIONAL ERRORS |
| G 1760-8 | AL 57-0 |
| G 2669-3   CA 0224 01-78 | G 2240-2B PREMIUM COMPUTATION |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not represent that these documents constitute a complete and accurate copy of the policy.

Countersigned by....................................................
Authorized Agent

G-2240-2 B   Printed in U. S. A.   6-74

HART000116

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE
### (NEW JERSEY)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. 10 C ML0740W |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

In consideration of the payment of premium and subject to all of the provisions of this endorsement and to the applicable provisions of the policy, the company agrees with the named insured as follows:

## Schedule

Designated Insured:_____

Limits of Liability:  Bodily Injury     $15,000 each person
                                              $30,000 each accident
             Property Damage  $ 5,000 each accident

Advance Premiums $

Description of Insured Highway Vehicles:

Any highway vehicle registered or principally garaged in New Jersey which is:

(check appropriate box)

[X] An owned automobile under Part I of the policy

[ ] A private passenger automobile owned by the named insured

[ ] Owned by the named insured

[ ] Designated in the declarations of the policy and any highway vehicle of the same type ownership of which is acquired during the policy period by the named insured as a replacement therefor

[ ] Any mobile equipment owned by the named insured

[ ] _____

## I.   COVERAGE UNINSURED MOTORISTS

### (Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally

entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

### Exclusions

This insurance does not apply:

(a) to bodily injury or property damage with respect to which the insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or. any relative resident in the same household as the named or designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives;

The complete business does not certify that these documents constitute a complete and accurate copy of the policy.



CA 22 10
(Ed. 01. 79)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
## (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. 10 C ML0740W |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

The Company agrees with the **named insured**, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

The insurance for PERSONAL INJURY PROTECTION is subject to a deductible of $ **NO** _____
applicable to ☒ the following **named insured** only:

☐ each **named insured** and each dependent **relative.**

☐ **Work loss** for **named insured** does not apply

☐ **Work loss** for **named insured** and dependent **relative** does not apply

☐ Coverage reduced by Medicare Benefits for **named insured** and dependent **relative**

☐ Coverage reduced by military benefits for **named insured** and dependent **relative**

### SECTION I

### PERSONAL INJURY PROTECTION

The Company will pay, in accordance with the Florida Automobile Reparations Reform Act, as amended, to or for the benefit of the injured person:

   (a) 80% of **medical expenses,** and

   (b) 60% of **work loss,** and

   (c) **replacement services expenses,** and

   (d) funeral, burial or cremation expenses,

incurred as a result of **bodily injury,** caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

   (1) the **named insured** or any **relative** while **occupying a motor vehicle** or, while a **pedestrian** through being struck by a **motor vehicle;** or

   (2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian,** through being struck by the **insured motor vehicle.**

### Exclusions

This insurance does not apply:

   (a) to the **named insured** or any **relative** while **occupying a motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

   (b) to any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured;**

   (c) to any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

     (i) causing **bodily injury** to himself intentionally;

     (ii) convicted of driving while under the influence of alcohol or narcotic drugs to the extent that his driving faculties are impaired; or

     (iii) while committing a felony;

   (d) to the **named insured** or dependent **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

   (e) to any **pedestrian,** other than the **named insured** or any **relative,** not a legal resident of the State of Florida;

   (f) to any person, other than the **named insured,** if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Automobile Reparations Act, as amended;

   (g) to any person, other than the **named insured** or any **relative,** who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

   (h) to any person who sustains **bodily injury** while **occupying a motor vehicle** located for use as a residence or premises.

### Limit of Liability; Application of Deductible; Other Insurance

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total

The company has produced these documents from its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000118

**General Liability**
**Amendatory Endorsement — Additional Definition**



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C MLO740W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .....................................................Effective hour is the same
as stated in the Declarations of the Policy.

It is agreed that the following definition is added:

*"loading or unloading"*, with respect to an *automobile,* means the handling of property after it is moved from the place where it is accepted for movement into or onto an *automobile* or while it is in or on an *automobile* or while it is being moved from an *automobile* to the place where it is finally delivered, but "loading or unloading" does not include the movement of property by means of a mechanical device (other than a hand truck) not attached to the *automobile.*

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by.................................................................................
                                                              Authorized Agent

**Form L-4128-0**   Printed in U.S.A.   ISO: (GL0019 (Ed. 07-78))

HART000119

**Business Auto Coverage Part**



**THE HARTFORD**

issued to form a part of Policy No. **10 C MI074LON** to be effective _____ at the hour stated in the policy. The Stock Insurance Company providing this insurance is shown on the Declarations Page of such policy as the "Insurer."

This Coverage Part is not binding unless countersigned by a duly authorized agent of **ours**; but if it takes effect as of the effective date of the policy of which this Coverage Part forms a part then countersignature on the Declarations Page of that policy by a duly authorized agent of **ours** is valid countersignature of this Coverage Part.

All of the provisions, conditions and other terms of this BUSINESS AUTO COVERAGE PART shall apply only as specified herein and none of the provisions, conditions and other terms of the policy of which this BUSINESS AUTO COVERAGE PART forms a part shall apply to insurance hereunder unless otherwise stated herein. Hereafter, any use of the word "policy" in this BUSINESS AUTO COVERAGE PART (or any endorsement forming a part of, changing or applicable to this BUSINESS AUTO COVERAGE PART) shall be deemed to read "BUSINESS AUTO COVERAGE PART."

# DECLARATIONS — BUSINESS AUTO COVERAGE PART

## ITEM ONE — NAMED INSURED AND ADDRESS

This BUSINESS AUTO COVERAGE PART is completed by:

  (a) this Declarations Form C-2013,

               Form C-2014,

               Form C-2015,

               Form C-2016,

  (b) its provisions and conditions printed in Form CA00010180

  (c) any Endorsements issued to form a part of it.

Form Numbers of Endorsement forming part of this BUSINESS AUTO COVERAGE PART on the above effective date:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by _____    _____ Authorized Agent

Includes copyrighted material of Insurance Services Office, with its permission. Copyright Insurance Services Office, 1977, 1979.

Form C-2013-0    Printed in U.S.A. (NS)

**Form C-2014**

DECLARATIONS —
BUSINESS AUTO POLICY (Continued)    **THE HARTFORD**
ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

Policy No. **10 C ML0740W**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those **autos** shown as covered **autos**. Autos are shown as covered **autos** for a particular coverage by the entry of one or more of the symbols from **ITEM THREE** next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from ITEM THREE shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS (Absence of a limit entry means that the limit entry shown, if any, in item four applies instead) | ESTIMATED PREMIUM |
|---|---|---|---|
| AA = LIABILITY INSURANCE | 1 | $ 750 ,000 each accident | $ 18,444. |
| AB = LIABILITY INSURANCE | | $ ,000 Bodily Injury each person<br>$ ,000 Bodily Injury each accident<br>$ ,000 Property Damage each accident | $ |
| AC = PERSONAL INJURY PROTECTION (or equivalent No-Fault coverage) | 5 | Separately stated in each Personal Injury Protection Endorsement minus $ NO deductible | $ 321. |
| AD = ADDED PERSONAL INJURY PROTECTION (or equivalent added No-Fault coverage) | | Separately stated in each Added Personal Injury Protection Endorsement | $ |
| AE = PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in the Property Protection Insurance Endorsement minus $ deductible for each accident | $ |
| AF = AUTO MEDICAL PAYMENTS INSURANCE | 3 | $ for Bodily Injury for each Insured AS PER SCHED. | $ 1,285. |
| AG = UNINSURED MOTORISTS INSURANCE | | $ ,000 each accident | $ |
| AH = UNINSURED MOTORISTS INSURANCE | 6 | Separately stated in the Split Uninsured Motorists Limits Endorsement | $ 240. |
| PHYSICAL DAMAGE INSURANCE | | | |
| AJ = COMPREHENSIVE COVERAGE | 2 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered auto for all loss except fire or lightning | $ 3,140. |
| AK = SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in Item four as "Dollar Limit", whichever is smallest, minus $25 Deductible for each covered auto for loss covered by mischief or vandalism | $ |
| AL = FIRE COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AM = FIRE AND THEFT COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in Item four as "Dollar Limit", whichever is smallest | $ |
| AO = FIRE, THEFT AND WINDSTORM COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AP = LIMITED SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AR = COLLISION COVERAGE | 2 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in Item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered auto | $ 7,130. |
| AT = TOWING AND LABOR (Not available in California) | | $25 for each disablement of a private passenger auto | $ |
| | | Endorsement Premium (Not included in above Coverage premiums) | $ |
| | | ESTIMATED TOTAL PREMIUM | $ 30,560. |

**N.J. GUARANTY FUND 42.15
KENTUCKY TAX 7% INCL.**

The estimated total premium for this policy is based on the exposures **you** told **us you** would have when this policy began.
**We** will compute **your** final premium due when **we** determine **your** actual exposures. The estimated total premium will be credited against the final premium due and **you** will be billed for the balance, if any. If the estimated total premium exceeds the final premium due **you** will get a refund. To determine **your** final premium due **we** may examine **your** records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year, the premium shall be computed annually based on **our** rates or premiums in effect at the beginning of each year of the policy.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979.

...ed these documents in its ...le, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-2016
**DECLARATIONS—**
**BUSINESS AUTO POLICY (Continued)**

 

**THE HARTFORD**

Policy No. 10 C ML0740W

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type<br>City or Town and State where the covered auto will be principally garaged | | | Vehicle Identification No. (VIN) | | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation L = Local, I = Intermediate, LD = Long Distance<br>Use S = Service, R = Retail, C = Commercial, Other (Describe) | |
| **1** | Garaged: | | | **AS PER** | | |
| | | | | | Radius of Operation: | |
| | | | | | Use: | |
| **2** | Garaged: | | | **SCHEDULE C-3000-0** | | |
| | | | | | Radius of Operation: | |
| | | | | | Use: | |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov.<br>AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Limit each Accident Cov. AG | Physical Damage (Non-Collision)<br>Coverage * | | Collision Cov. AR | | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov.<br>AG ☐ AH ☐ | Deductible | Dollar Limit | Deductible | Dollar Limit | |
| | | | | | Premium | Rate | Premium | Rate | Cov. AT |
| **1** | | | | | Coverage | | | | |
| | $ | $ | $ | $ | $ | $ | $ | $ | |
| | $ | $ **AS** | $ **PER** | $ | $ | $ | $ | $ | $ |
| **2** | | | | | Coverage | | | | |
| | $ | $ | $ | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ **C-3000-0** | $ | $ | $ | $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

## ITEM FIVE — SCHEDULE OF HIRED AUTOS (Coverages and Premiums)

**LIABILITY INSURANCE — RATING BASIS IS COST OF HIRE. Cost of hire** means the total amount **you** incur for the hire of **autos you** don't own (not including **autos you** borrow or rent from **your** employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| HEADQUARTERS STATE | CLASSIFICATION CODE | ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | ESTIMATED PREMIUM |
|---|---|---|---|---|
| **NEW JERSEY** | 6619 | $ **IF ANY** | $ **415.** | $ **26.** |
| **T-10** | | $ | $ | $ |

## ITEM SIX — SCHEDULE FOR NON-OWNERSHIP LIABILITY
**LIABILITY INSURANCE** (Includes **autos** owned by **your** employees or members of their households but only while used **in your** business or **your** personal affairs)

| — RATING BASIS IS NUMBER OF EMPLOYEES | | | |
|---|---|---|---|
| ESTIMATED NUMBER OF EMPLOYEES | CLASSIFICATION CODE | HEADQUARTERS STATE | ESTIMATED PREMIUM |
| **300** | **6603** | **NJ 1010** | $ **209. INCL.** |

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979

The company located these documents in its business records and at this time, the company believes these documents constitute a complete and accurate copy of the policy.

FORM C-2016-0 CDR PRINTED IN U.S.A. (NS)

COMPANY COPY

HART000122

# Schedule of Covered Autos You Own

Effective

**10 C M10740W** THE HARTFORD

Policy Number 5655

**Description** — Year, Model, Trade Name, Body Type
City or Town and State where the covered auto will be principally garaged

Vehicle Identification No. (VIN)

Original Cost New (Chassis & Body including Special Equipment) or Rating Symbol

Radius of Operation L = Local, I = Intermediate, LD = Long Distance
Use S = Service, R = Retail, C = Commercial, Other (Describe)

| Covered Auto No. | Description / Garaged | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation / Use | VIN | Original Cost |
|---|---|---|---|---|---|---|---|---|
| 1 | 77 MERCEDES BENZ / Garaged: NORTHVALE, N.J. | 010 | 0369 | 7398 | | Use: PPT | 11602412092315 | N/5 / 20,000. |
| 2 | 73 PONTIAC / Garaged: NORTHVALE, N.J. | 010 | 0369 | 7398 | | Use: PPT | 2K57T3A160428 | N/6 / 5,250. |
| 3 | 80 BUICK ELECTRA / Garaged: NORTHVALE, N.J. | 010 | 0369 | 7398 | | Use: PPT | 4X69XAH499140 | N/2 / 11,396. |
| 4 | 72 DODGE / Garaged: NORTHVALE, N.J. | 010 | 0369 | 23414 | 18,000 | Radius of Operation: L / Use: C | B31BE2U721153 | N/6 / 4,389. |
| 5 | 66 CHEV. TRK. / Garaged: NORTHVALE, N.J. | 010 | 0369 | 23414 | 18,000 | Radius of Operation: L / Use: C | 836F103956 | N/6 / 3,400. |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA / AB | PIP Premium Cov. AC | Added PIP Premium Cov. AD / PPI Premium Cov. AE | Auto Med Pay Limit each Insured Cov. AF / Auto Med Pay Premium Cov. AF | Uninsured Limit each Accident Cov. AG / Uninsured Motorists Premium Cov. AG AH | Physical Damage (Non-Collision) Coverage* / Premium | Rate | Collision Cov. AH Deductible / Premium | Dollar Limit / Rate | Towing and Labor Premium Cov. AT |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 360. / $ 43. | $ | $ / $ | $ 10,000 / $ 1. | $15/30/5 / $ 2. | Coverage AJ / $ 100 / $ 131. | $ / $ | $ 500. / $ 258. | $ / $ | $ |
| 2 | $ 360. / $ 43. | $ | $ / $ | $ 10,000 / $ 1. | $15/30/5 / $ 2. | Coverage AJ / $ 100 / $ 28. | $ / $ | $ 500. / $ 101. | $ / $ | $ |
| 3 | $ 360. / $ 43. | $ | $ / $ | $ 10,000 / $ 1. | $15/30/5 / $ 2. | Coverage AJ / $ 100. / $ 107. | $ / $ | $ 500. / $ 261. | $ / $ | $ |
| 4 | $ 692. / $ NOT COV. | $ | $ / $ 48. | $ 5,000 / $ 48. | $15/30/5 / $ 2. | Coverage AJ / $ 250. / $ 32. | $ / $ | $ 500. / $ 76. | $ / $ | $ |
| 5 | $ 692. / $ NOT COV. | $ | $ / $ 48. | $ 5,000 / $ 48. | $15/30/5 / $ 2. | Coverage AJ / $ 250. / $ 32. | $ / $ | $ 500. / $ 76. | $ / $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

The Hartford verified these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3000-0   Printed in U.S.A.   (NS)

# Schedule of Covered Autos You Own

Effective

10 C M10740W

**THE HARTFORD**

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type<br>City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation L=Local, I = Intermediate, LD = Long Distance<br>Use S = Service, R = Retail, C = Commercial, Other (Describe) | |
| | 78 CHEV.<br>Garaged: BENSENVILLE, ILL. | | | | 1169U8J249164 | N/4 |
| 6 | 015 | 1159 ~~1600~~ | 7398 | | Radius of Operation:<br>Use: PPT | 5,500. |
| | 80 OLDS<br>Garaged: BENSENVILLE, ILL. | | | | 3X69RAM148851 | N/2 |
| 7 | 015 | 1159 ~~1600~~ | 7398 | | Radius of Operation:<br>Use: PPT | 8,500. |
| | 77 DODGE<br>Garaged: BENSENVILLE, ILL. | | | | H145G7G32263 | N/5 |
| 8 | 015 | 1159 ~~1600~~ | 7398 | | Radius of Operation:<br>Use: PPT | 4,954. |
| | 78 DODGE<br>Garaged: ELK GROVE, ILL. | | | | N145GB8B257169 | N/4 |
| 9 | 015 | 4077 ~~1600~~ | 7398 | | Radius of Operation:<br>Use: PPT | 5,400. |
| | 77 DODGE<br>Garaged: BENSENVILLE, ILL. | | | | H145G7G32262 | N/5 |
| 10 | 015 | 1159 ~~1600~~ | 7398 | | Radius of Operation:<br>Use: PPT | 4,949. |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov.<br>AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Limit each Accident Cov. AG | Physical Damage (Non-Collision)<br>Coverage * | | Collision Cov. AR | | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Deductible | Dollar Limit | Deductible | Dollar Limit | |
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov.<br>AG ☐ AH ☐ | Premium | Rate | Premium | Rate | Cov. AT |
| | $ 473. | $ | $ 5,000 | $20,000 | Coverage AJ<br>$ 100. | $ | $ 500. | $ | |
| 6 | $ | $ | $ 28. | $ 4. | $ 46. | $ | $ 105. | $ | $ |
| | $ 473. | $ | $ 5,000 | $20,000 | Coverage AJ<br>$ 100. | $ | $ 500. | $ | |
| 7 | $ | $ | $ 28. | $ 4. | $ 92. | $ | $ 182. | $ | $ |
| | $ 473. | $ | $ 5,000 | $20,000 | Coverage AJ<br>$ 100. | $ | $ 500. | $ | |
| 8 | $ | $ | $ 28. | $ 4. | $ 46. | $ | $ 105. | $ | $ |
| | $ 473. | $ | $ 5,000 | $20,000 | Coverage AJ<br>$ 100. | $ | $ 500. | $ | |
| 9 | $ | $ | $ 28. | $ 4. | $ 46. | $ | $ 105. | $ | $ |
| | $ 473. | $ | $ 5,000 | $20,000 | Coverage AJ<br>$ 100. | $ | $ 500. | $ | |
| 10 | $ | $ | $ 28. | $ 4. | $ 46. | $ | $ 105. | $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees (identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |
| | | | |

The company noted that these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3000-0   Printed in U.S.A.   (NS)

# Schedule of Covered Autos You Own

Effective

**10 C ML0740W**

**THE HARTFORD**

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type / City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation L = Local, I = Intermediate, LD = Long Distance / Use S = Service, R = Retail, C = Commercial, Other (Describe) | |
| | | | 74 VOLKS | | 464Z013393 | |
| | Garaged: | | BENSENVILLE, ILL. | | | N/6 |
| 11 | 015 | 1600 | 7398 | PPT | Radius of Operation: / Use: PPT | 5,204. |
| | | | 77 PLYM. | | HP41G7G82060  ZIP 94402 | |
| | Garaged: | | SAN MATEO, CALOF. | | | N/5 |
| 12 | 091 | 4110 | 7398 | | Radius of Operation: / Use: PPT | 5,811. |
| | | | 77 PLYM. | | HL45S184645  ZIP 94402 | |
| | Garaged: | | SAN MATEO, CALIF. | | | N/5 |
| 13 | 091 | 4110 | 7398 | | Radius of Operation: / Use: PPT | 5,380. |
| | | | 77 PLYM. | | HL45S1819U  ZIP 94402 | |
| | Garaged: | | SAN MATEO, CALIF. | | | N/5 |
| 14 | 091 | 4110 | 7398 | | Radius of Operation: / Use: PPT | 5,380. |
| | | | 77 PLYMOUTH | | H45S7B421164  ZIP 94402 | |
| | Garaged: | | SAN MATEO, CALIF. | | | N/5 |
| 15 | 091 | 4110 | 7398 | | Radius of Operation: / Use: PPT | 5,426. |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Limit each Accident Cov. AG | Physical Damage (Non-Collision) Coverage * | | Collision Cov. AR | | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov. AG ☐ AH ☐ | Deductible | Dollar Limit | Deductible | Dollar Limit | Cov. AT |
| | | | | | Premium | Rate | Premium | Rate | |
| | $ 473. | $ | $ 5,000 | $ 20,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 11 | $ | $ | $ 28. | $ 4. | $ 34. | $ | $ 82. | $ | $ |
| | $ 480. | $ | $ 5,000 | $ 30,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 12 | $ | $ | $ 46. | $ 10. | $ 62. | $ | $ 159. | $ | $ |
| | $ 480. | $ | $ 5,000 | $ 30,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 13 | $ | $ | $ 46. | $ 10. | $ 62. | $ | $ 159. | $ | $ |
| | $ 480. | $ | $ 5,000 | $ 30,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 14 | $ | $ | $ 46. | $ 10. | $ 62. | $ | $ 159. | $ | $ |
| | $ 480. | $ | $ 5,000 | $ 30,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 15 | $ | $ | $ 46. | $ 10. | $ 62. | $ | $ 159. | $ | |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3000-D   Printed in U.S.A.   (NS)

# Schedule of Covered Autos You Own

Effective

10 C ML0740W

**THE HARTFORD**

**Description** — Year, Model, Trade Name, Body Type
City or Town and State where the covered auto will be principally garaged

**Vehicle Identification No. (VIN)**

| Covered Auto No. | Territory Code | Tax Code | Classification Code | Size — GWV or GCW or Vehicle Seating Capacity | Radius of Operation L=Local, I = Intermediate, LD = Long Distance | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|
| | | | 76 MERCEDES BENZ | | 11602012041307 | |
| | | | Garaged: SAN MATEO, CALIF. | | ZIP 94402 | N/6 |
| 16 | 091 | 4110 | 7398 | | Radius of Operation: / Use: PPT | 4,667. |
| | | | 72 DODGE | | 8318P2U53510 | |
| | | | Garaged: SAN MATEO, CALIF. | | ZIP 94402 | N/6 |
| 17 | 091 | 4110 | 7398 | | Radius of Operation: / Use: PPT | 4,600. |
| | | | 74 CHEV. | | CLX334Z167106 | |
| | | | Garaged: SAN MATEO, CALIF. | | ZIP 94402  L | N/6 |
| 18 | 091 | 4110 03414 | 8500 | | Radius of Operation: Use: C | 5,700. |
| | | | 77 CHRYSLER | | HL45G7S184644 | |
| | | | Garaged: SAN MATEO, CALIF. | | ZIP 94402 | N/5 |
| 19 | 091 | 4110 | 7398 | | Radius of Operation: Use: PPT | 5,380. |
| | | | 77 DODGE | | DH45H7D109963 | |
| | | | Garaged: S. WINTER HAVEN, FLORIDA | | | N/5 |
| 20 | 010 | 0985 6793 | 7398 | | Radius of Operation: Use: PPT | 5,800. |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ / PIP Premium Cov. AC | Added PIP Premium Cov. AD / PPI Premium Cov. AE | Auto Med Pay Limit for each Insured Cov. AF / Auto Med Pay Cov. AF | Uninsured Limit each Accident Cov. AX / Uninsured Motorists Premium Cov. AG ☐ AH ☐ | Physical Damage (Non-Collision) Coverage* | | Collision Cov. AR | | Towing and Labor Premium Cov. AT |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Deductible / Premium | Dollar Limit / Rate | Deductible / Premium | Dollar Limit / Rate | |
| 16 | $480. / $ | $ / $ | $5,000 / $ 46. | $ 30,000 / $ 10. | Coverage AJ $ 100. / $ 46. | $ / $ | $500. / $125. | $ / $ | $ |
| 17 | $480. / $ | $ / $ | $5,000 / $ 46. | $ 30,000 / $ 10. | Coverage AJ $ 100. / $ 46. | $ / $ | $500. / $125. | $ / $ | $ |
| 18 | $775. / $ | $ / $ | $5,000 / $ 82. | $ 30,000 / $ 10. | Coverage AJ $ 250. / $ 53. | $ / $ | $500. / $130. | $ / $ | $ |
| 19 | $480. / $ | $ / $ | $5,000 / $ 46. | $ 30,000 / $ 10. | Coverage AJ $ 100. / $ 62. | $ / $ | $500. / $159. | $ / $ | $ |
| 20 | $415. / $ 32. | $ / $ | $5,000 / $ 15. | $ 20,000 / $ 7. | Coverage AJ $ 100. / $ 46. | $ / $ | $500. / $128. | $ / $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered **Auto**.

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage **loss** is payable to **you** and the loss payee named below as interest may appear at the time of **loss**.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

The company located the documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3000-0  Printed in U.S.A.  (NS)

HART000126

# Schedule of Covered Autos You Own

Effective:

Policy Number 5659

10 C MLO740W

THE HARTFORD

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GWV or GCW or Vehicle Seating Capacity | Radius of Operation L= Local, I = Intermediate, LD = Long Distance Use S = Service, R = Retail, C = Commercial, Other (Describe) | | |
| | 78 FORD Garaged: S. WINTER HAVEN, FLORIDA | | | | 8H48H100805 | | N/4 |
| 21 | 010 | 6985 0793 | 03414 | 8500 | Radius of Operation: L Use: C | | 7,840. |
| | 78 PLYM. Garaged: FOSTER CITY, CALIF. | | | | HI45H8B249603 ZIP 94404 | | N/4 |
| 22 | 091 | 4110 | 7398 | | Radius of Operation: Use: PPT | | 5,900. |
| | 78 FORD Garaged: FOSTER CITY, CALIF. | | | | HI45H8B249622 ZIP 94404 | | N/4 |
| 23 | 091 | 4110 | 7398 | | Radius of Operation: Use: PPT | | 5,900. |
| | 79 DODGE Garaged: S. WINTER HAVEN, FLORIDA | | | | B11AE9X141018 | | N/3 |
| 24 | 010 | 0988 0793 | 03414 | 8500 | Radius of Operation: L Use: C | | 6,936. |
| | 79 CHEV. Garaged: SHELBYVILLE, KENTUCKY | | | | C1169695146330 | | N/3 |
| 25 | 011 | 2272 0660 | 7398 | | Radius of Operation: Use: PPT | | 7,567. |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Limit each Accident Cov. AG | Physical Damage (Non-Collision) Coverage * | | Collision Cov. AR | | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Deductible | Dollar Limit | Deductible | Dollar Limit | |
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov. AG ☐ AH ☐ | Premium | Rate | Premium | Rate | Cov. AT |
| | $ 270. | $ | $ 5,000 | $ 20,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 21 | $ 31. | $ | $ 14. | $ 7. | $ 53. | $ | $ 138. | $ | $ |
| | $ 480. | $ | $ 5,000 | $ 30,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 22 | $ | $ | $ 46. | $10. | $ 62. | $ | $ 159. | $ | $ |
| | $ 480. | $ | $ 5,000 | $ 30,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 23 | $ | $ | $ 46. | $10. | $ 62. | $ | $ 159. | $ | $ |
| | $ 270. | $ | $ 5,000 | $ 20,000 | Coverage AJ $ 100. | $ | $ 500. | $ | |
| 24 | $ 31. | $ | $ 14. | $ 7. | $ 53. | $ | $ 138. | $ | $ |
| | $ 246. | $ | $ 5,000 | $ 20,000 | Coverage AJ $ 50. | $ | $ 500. | $ | |
| 25 | $ 12. | $ | $ 24. | $ 5. | $ 49. | $ | $ 116. | $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees** (Identified by Covered Auto No.) — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

Form C-3000-O   Printed in U.S.A.   (NS)

The Hartford produced these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000127

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GWV or GCW or Vehicle Seating Capacity | Radius of Operation L=Local, I = Intermediate, LD = Long Distance Use S = Service, R = Retail, C = Commercial, Other (Describe) | | |
| | **79 BMW** | | | | 5786519 | | N/3 |
| | Garaged: **NORTHVALE, N.J.** | | | | Radius of Operation: | | |
| 26 | 010 | 0369 | 7398 | | Use: PPT | | 23,850. |
| | **78 BUICK** | | | | 4M47U8G17 | | N/4 |
| | Garaged: **NORTHVALE, N.J.** | | | | Radius of Operation: | | |
| 27 | 010 | 0369 | 7398 | | Use: PPT | | 6,900. |
| | **79 CHEV.** | | | | 1169B91249262 | | N/3 |
| | Garaged: **BENSENVILLE, ILL.** | | | | Radius of Operation: | | |
| 28 | 015 | 1159 1600 | 7398 | | Use: PPT | | 6,550. |
| | **79 PONTIAC** | | | | 2Y685A6103179 ZIP 94404 | | N/3 |
| | Garaged: **FOSTER CITY, CALIF.** | | | | Radius of Operation: | | |
| 29 | 091 | 4110 | 7398 | | Use: PPT | | 7,200. |
| | **79 CHEV.** | | | | 1169G9J103174 | | N/3 |
| | Garaged: **BENSENVILLE, ILL.** | | | | Radius of Operation: | | |
| 30 | 015 | 1159 1600 | 7398 | | Use: PPT | | 6,145. |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Limit each Accident Cov. AG | Physical Damage (Non-Collision) Coverage * | | | Collision Cov. AR | | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|---|
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov. AG ☐ AH ☐ | Deductible | Dollar Limit | | Deductible | Dollar Limit | |
| | | | | | Premium | Rate | | Premium | Rate | Cov. AT |
| | $ 360. | $ | $10,000 | $ 15/30/5 | Coverage AJ $ 100. | $ | | $ 500. | $ | |
| 26 | $43. | $ | $ 1. | $ 2. | $ 205. | | | $417. | $ | $ |
| | $ 360. | $ | $10,000 | $ 15/30/5 | Coverage AJ $ 100. | $ | | $ 500. | $ | |
| 27 | $ 43. | $ | $ 1. | $ 2. | $ 59. | | | $157.° | $ | $ |
| | $473. | $ | $5,000 | $ 20,000 | Coverage AJ $ 100. | $ | | $ 500. | $ | |
| 28 | $ | $ | $28. | $ 4. | $ 78. | | | $155. | $ | $ |
| | $480. | $ | $5,000 | $ 30,000 | Coverage AJ $ 100. | $ | | $ 500. | $ | |
| 29 | $ | $ | $46. | $ 10. | $ 107. | $ | | $ 236. | $ | $ |
| | $473. | $ | $5,000 | $ 20,000 | Coverage $ 100. | $ | | $ 500. | $ | |
| 30 | $ | $ | $28. | $ 4. | $ 78. | | | $ 155. | $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage **loss** is payable to you and the loss payee named below as interest may appear at the time of **loss**.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

Form C-3000-0   Printed in U.S.A.   (NS)

The Hartford produced these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

# Schedule of Covered Autos You Own

Effective:  Policy Number 5661

10 C M1O74OW

**THE HARTFORD**

| Covered Auto No. | Description — Year, Model, Trade Name, Body Style / City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GWW or GCW or Vehicle Seating Capacity / Radius of Operation L=Local, I=Intermediate, LD=Long Distance / Use S=Service, R=Retail, C=Commercial, Other (Describe) | | |
| | 80 CHEV. Garaged: PLEASANTON, CALIF. | | | | I69HAC100792 ZIP 94566 | N/2 |
| 31 | 075 | 0150 | 7398 | Radius of Operation: / Use: PPT | | 7,100. |
| | 80 CHEV. Garaged: BENSENVILLE, ILL. | | | | 1169JAJ179462 | N/2 |
| 32 | 015 | 1600 | 7398 | Radius of Operation: / Use: | | 6,900. |
| | 79 DODGE TESTTRLR. Garaged: SAN MATEO, CALIF. | | | | CA78DGM1039 ZIP 94402 | N/3 |
| 33 | 091 | 4110 | 68499 | Radius of Operation: / Use: | | 5,666. |
| | 80 BUICK Garaged: FOSTER CITY, CALIF. | | | | 4A47AAZ119582 ZIP 94404 | N/2 |
| 34 | 091 | 4110 | 7398 | Radius of Operation: / Use: PPT | | 8,100. |
| | 80 AUDI MDLE. 4000 Garaged: FOSTER CITY, CALIF. | | | | 81AC102143 ZIP 94404 | N/2 |
| 35 | 091 | 4110 | 7398 | Radius of Operation: / Use: PPT | | 10,700. |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ / PIP Premium Cov. AC | Added PIP Premium Cov. AD / PPI Premium Cov. AE | Auto Med Pay Limit for each Insured / Auto Med Pay Premium Cov. AF | Uninsured Limit each Accident / Uninsured Motorists Premium Cov. AG ☐ AH ☐ | Physical Damage (Non-Collision) Coverage* / Premium | Deductible / Rate | Collision Cov. AR / Premium | Deductible / Rate | Towing and Labor Premium Cov. AT |
|---|---|---|---|---|---|---|---|---|---|
| 31 | $ 550. / $ | $ / $ | $ 5,000 / $ 43. | $30,000 / $ 10. | Coverage AJ $ 100. / $ 155. | $ / $ | $ 500. / $ 197. | $ / $ | $ |
| 32 | $ 473. / $ | $ / $ | $ 5,000 / $ 28. | $20,000 / $ 4. | Coverage AJ $ 100. / $ 78. | $ / $ | $ 500. / $ 155. | $ / $ | $ |
| 33 | $ 138. / $ | $ / $ | $ NOT / $ NOT | COV. / COV. | Coverage AJ $ 100. / $ 61. | $ / $ | $ 500. / $ 139. | $ / $ | $ |
| 34 | $ 480. / $ | $ / $ | $ 5,000 / $ 46. | $ 30,000 / $ 10. | Coverage AJ $ 100. / $ 126. | $ / $ | $ 500. / $ 273. | $ / $ | $ |
| 35 | $ 480. / $ | $ / $ | $ 5,000 / $ 46. | $30,000 / $ 10. | Coverage $ 100. / $ 173. | $ / $ | $ 500. / $ 322. | $ / $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3000-0   Printed in U.S.A.   (NS)

**Schedule of Covered Autos You Own**

Effective

10 C ML0740W                                          THE HARTFORD

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type / City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation L = Local, I = Intermediate, LD = Long Distance / Use S = Service, R = Retail, C = Commercial, Other (Describe) | |
| | 80 VOLKSWAGON | | | | 33A0114634 | N/2 |
| | Garaged: FOSTER CITY, CALIF. | | | | ZIP 94404 | |
| 36 | 091 | 4110 | 7398 | | Radius of Operation: / Use: PPT | 9,493. |
| | 80 GMC TRK | | | | TGM36A7506695 | N/2 |
| | Garaged: NORTHVALE, N.J. | | | | | |
| 37 | 010 | 0369 | 23414 | 18,000 | Radius of Operation: L / Use: C | 8,960. |
| | 80 GMC TRK. | | | | TGM3A7506696 | N/2 |
| | Garaged: NORTHVALE, N.J. | | | | | |
| 38 | 010 | 0369 | 23414 | 18,000 | Radius of Operation: L / Use: C | 10,054. |
| | 80 V/W DASHER | | | | 33A0126462 | N/2 |
| | Garaged: FOSTER CITY, CALIF. | | | | ZIP 94404 | |
| 39 | 091 | 4110 | 7398 | | Radius of Operation: / Use: PPT | 9,611. |
| | Garaged: | | | | Radius of Operation: / Use: | |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ / PIP Premium Cov. AC | Added PIP Premium Cov. AD / PPI Premium Cov. AE | Auto Med Pay Limit for each Insured Cov. AF / Auto Med Pay Premium Cov. AF | Uninsured Limit each Accident Cov. AG ☐ AH ☐ / Uninsured Motorists Premium Cov. AG | Physical Damage (Non-Collision) Coverage* / Deductible / Premium | Dollar Limit / Rate | Collision Cov. AR / Deductible / Premium | Dollar Limit / Rate | Towing and Labor Premium Cov. AT |
|---|---|---|---|---|---|---|---|---|---|
| 36 | $ 480. / $ | $ / $ | $5,000 / $46. | $ 30,000 / $ 10. | Coverage AJ / $ 100. / $ 126. | $ / $ | $ 500. / $ 273. | $ / $ | $ |
| 37 | $ 692. / $ | $ / $ | $5,000 / $48. | $ 15/30/5 / $ 2. | Coverage AJ / $ 100. / $ 146. | $ / $ | $ 500. / $ 390. | $ / $ | $ |
| 38 | $ 692. / $ | $ / $ | $5,000 / $48. | $ 15/30/5 / $ 2. | Coverage AJ / $ 100. / $ 202. | $ / $ | $ 500. / $ 519. | $ / $ | $ |
| 39 | $ 480. / $ | $ / $ | $5,000 / $46. | $ 30,000 / $ 10. | Coverage AJ / $ 100. / $ 126. | $ / $ | $ 500. / $ 273. | $ / $ | $ |
| | $ / $ | $ / $ | $ / $ | $ / $ | Coverage / $ / $ | $ / $ | $ / $ | $ / $ | $ |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered **Auto**.

**Loss Payee (Identified by Covered Auto No.)** — Except for Towing, all physical damage **loss** is payable to **you** and the loss payee named below as interest may appear at the time of **loss**.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

The Hartford produced these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3000-0    Printed in U.S.A.    (NS)

HART000130

# Resident Agent Countersignature Endorsement

Co. Code
☐ [1] Hartford Fire Insurance Company
☐ [5] Hartford Accident and Indemnity Company
☐ [3] Hartford Casualty Insurance Company

Co. Code
☐ [6] New York Underwriters Insurance Company
☐ [7] Twin City Fire Insurance Company



**THE HARTFORD**

This Endorsement forms a part of
☒ Policy No.  ☐ *Bond No. **10 C MLO740W**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address

**CENTRICO INC.**
**100 FAIRWAY COURT**
**NORTHVALE, N.J.  07647**

| Effective date | Effective hour is the same as stated |
|---|---|
| **10-25-80** | in the Declarations of the Policy. |

\*Note:  *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **NEW JERSEY** | **FRED S. JAMES & CO. OF N.Y. INC.    25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| **5** | Bodily Injury | $ **4,803.** | **5** | General Liability | $ **175,750** |
| **5** | Medical Payments | $ **197.** | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| | Comprehensive | $ | | Glass | $ |
| | Collision | $ | | Bond | $ |
| **5** | Other (specify)  **P.I.P.** | **215.** | | Other (specify) | |
| **5** | **U/M** | $ **18.** | | | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

The company retains these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-1760-8   Printed in U.S.A.

HART000131

# Countersignature Memo

Insured

**CENTRICO INC.**

**100 FAIRWAY COURT
NORTHVALE, N.J. 07647**

| Company Office | Policy No. | Expiration | Date |
|---|---|---|---|
| **MANHATTAN** | **10 C ML0740N** | **10-25-81** | **10-22-80** |

Please show Countersigning Agent preferred, if any, in block below.

**Name and Address of Producer**

**FRED S. JAMES & CO. OF N.Y.
55 WATER ST.
NY NY**

**Name and Address of Countersigning Agent**

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| **KENTUCKY** | | **NO LIC.** |

| Producer's Rate of Commission | Effective Date |
|---|---|
| | **10-25-80** |
| **100** % Premium | **$452.00** |

If not licensed, is same desired?

☐ Yes   ☐ No

If "Yes", which States:

Company

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Form G-2669-3  Printed in U.S.A.

**COMPANY OFFICE OF PRODUCER**

Resident Agent Countersignature Endorsement

Co. Code
[1] Hartford Fire Insurance Company
[5] Hartford Accident and Indemnity Company
[3] Hartford Casualty Insurance Company

Co. Code
[6] New York Underwriters Insurance Company
[7] Twin City Fire Insurance Company



THE HARTFORD

Named Insured and Address

This Endorsement forms a part of
☒ Policy No. ☐ *Bond No........ **10 C M10740M**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J.  07647

| Effective date | Effective hour is the same as stated |
|---|---|
| **10-25-80** | in the Declarations of the Policy. |

*Note:  *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **KENTUCKY** | **FRED S. JAMES & CO. OF N.Y.  25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| **5** | Bodily Injury | $ **246.** | | General Liability | $ |
| **5** | Medical Payments | $ **24.** | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| **5** | Comprehensive | $ **49.** | | Glass | $ |
| **5** | Collision | $ **116.** | | Bond | $ |
| **5** | Other (specify)   **P.I.P.** | **12.** | | Other (specify) | |
| **5** |   **U/M** | $ **5.** | | | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far
as concerns that portion of the Risk located in the State named above.

This company has been unable to locate this in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

Form G-1760-8   Printed in U.S.A.

**6**

# Countersignature Memo

| Insured | | | | | |
|---|---|---|---|---|---|
| CENTRICO INC. | | | | 100 FAIRWAY COURT NORTHVALE, N.J.  07647 | |

| Company Office | Policy No. | Expiration | Date |
|---|---|---|---|
| MANHATTAN | 10 C ML0740N | 10-25-81 | 10-22-80 |

Name and Address of Producer

Please show Countersigning Agent preferred, if any, in block below.

FRED S. JAMES & CO. OF N.Y.
55 WATER ST.
NY  NY

Name and Address of Countersigning Agent

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The counter-signing fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| ILLINOIS | 13-5304320 | F.S.J. F.A. MC DOUGOLD |

| Producer's Rate of Commission | Effective Date |
|---|---|
| | 10-25-80 |
| 100 % Premium | $6,238. |

If not licensed, is same desired?
☐ Yes   ☐ No

If "Yes", which States:

Company

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Form G-2669-3  Printed in U.S.A.

**COMPANY OFFICE OF PRODUCER**          HART000134

**7**

**Resident Agent Countersignature Endorsement**

Co. Code [1] Hartford Fire Insurance Company
Co. Code [5] Hartford Accident and Indemnity Company
Co. Code [3] Hartford Casualty Insurance Company

Co. Code [6] New York Underwriters Insurance Company
Co. Code [7] Twin City Fire Insurance Company



**THE HARTFORD**

Named Insured and Address

This Endorsement forms a part of
☒ Policy No.   ☐ *Bond No. ........ **10 C NL0740W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

**CENTRICO INC.**
**100 FAIRWAY COURT**
**NORTHVALE, NJ   07647**

| Effective date | Effective hour is the same as stated in the Declarations of the Policy. |
|---|---|
| **10-25-80** | |

*Note: If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **ILLINOIS** | **FRED S. JAMES & CO. OF N.Y.   25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| **5** | Bodily Injury | $ **4,257.** | | General Liability | $ |
| **5** | Medical Payments | $ **252.** | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| **5** | Comprehensive | $ **544.** | | Glass | $ |
| **5** | Collision | $ **1,149.** | | Bond | $ |
| **5** | Other (specify) **U/M** | $ **36.** | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

This copy is reproduced from the company's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-1760-8   Printed in U.S.A.

# Countersignature Memo

| Insured | | | | | | |
|---|---|---|---|---|---|---|
| **CENTRICO INC.** | | | | **100 FAIRWAY COURT** **NORTHVALE, NJ  07647** | | |

| Company Office | | Policy No. | Expiration | Date |
|---|---|---|---|---|
| **MANHATTAN** | | **10 C MLO740N** | **10-25-81** | **10-22-80** |

Name and Address of Producer

· Please show Countersigning Agent preferred, if any, in block below.

**FRED S. JAMES & CO. OF N.Y.**
**55 WATER ST.**
**NY  NY**

Name and Address of Countersigning Agent

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The counter-signing fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | | | Producer's Rate of Commission | Effective Date |
|---|---|---|---|---|---|
| | Number | Name of Licensee | | | **10-25-80** |
| **FLA.** | **0161285373-01** | **T.J. MAHONEY** | | **100** % Premium | **$1,669.** |

| If not licensed, is same desired? | If "Yes", which States: |
|---|---|
| ☐ Yes    ☐ No | |
| | Company |

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Form G-2669-3  Printed in U.S.A.

**COMPANY OFFICE OF PRODUCER**          HART000136

## Resident Agent Countersignature Endorsement



| Co. Code | | Co. Code | |
|---|---|---|---|
| [1] | Hartford Fire Insurance Company | [6] | New York Underwriters Insurance Company |
| [5] | Hartford Accident and Indemnity Company | [7] | Twin City Fire Insurance Company |
| [3] | Hartford Casualty Insurance Company | | |



**THE HARTFORD**

Named Insured and Address

This Endorsement forms a part of

☒ Policy No.  ☐ *Bond No. **10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

**CENTRICO INC.**
**100 FAIRWAY COURT**
**NORTHVALE, NJ 07647**

| Effective date **10-25-80** | Effective hour is the same as stated in the Declarations of the Policy. |
|---|---|

**\*Note:** *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **FLA.** | **FRED S. JAMES & CO. OF N.Y.   25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| **5** | Bodily Injury | $ **955.** | | General Liability | $ |
| **5** | Medical Payments | $ **43.** | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| **5** | Comprehensive | $ **152.** | | Glass | $ |
| **5** | Collision | $ **404.** | | Bond | $ |
| **5** | Other (specify)   **U/M** | **21.** | | Other (specify) | |
| **5** |   **P.I.P.** | $ **94.** | | | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

This copy may be missing documents or there is no business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form G-1760-8**  Printed in U.S.A.

## ERRORS AND OMISSIONS INSURANCE — EMPLOYEE BENEFIT PROGRAMS

Named Insured and Address

This endorsement forms a part of Policy No..... **10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................... ........................................... Effective hour is the same as stated in the Declarations of the policy.

### SCHEDULE

| Limits of Liability | Estimated Advance Premium |
|---|---|
| $ **25,000**  each claim | $ **INCLUDED** |
| $ **75,000**  aggregate | |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

### INSURING AGREEMENTS

I. **COVERAGE.**  To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.**  As respects such insurance as is afforded by the terms of this endorsement, the company shall:
(a) defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III. **DEFINITIONS.**
(a) **"Insured"** — The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
(b) **"Employee Benefit Programs"** — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
(c) **"Administration"** — The unqualified word "Administration", wherever used, shall mean:
(1) giving counsel to employees with respect to Employee Benefit Programs;
(2) interpreting Employee Benefit Programs;
(3) handling of records in connection with Employee Benefit Programs;
(4) effecting enrollment of employees under Employee Benefit Programs;
provided all such acts are authorized by the Named Insured.

IV. **ENDORSEMENT PERIOD, TERRITORY.**  This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reason-ably foreseen any circumstances which might result in a claim or suit.

### EXCLUSIONS

This endorsement does not apply:
(a) to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b) to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
(c) to any claim for failure of performance of contract by an insurer;
(d) to any claim based upon:
(1) failure of stock to perform as represented by an insured,
(2) advice given by an insured to an employee to participate or not to participate in stock subscription plans.

### CONDITIONS

1. **Policy Conditions.**  All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2. **Limits of Liability**
(a) Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder;  the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
(b) $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim.  Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
(c) The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount.  If the company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the company.
(d) The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3. **Premium.**  The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| **300** | ...................First  5,000 | $.................. |
| | ...................Next  5,000 | $................... |
| | ...................Over  10,000 | $.................. |
| | Total $............................. | |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates.  If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the company;  if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company;  provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

Form L 2654-1  Printed in U.S.A.  6/66

Countersigned by............................................
                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a true and accurate copy of the policy.

25

## ADDITIONAL INSURED
(Premises Leased to the Named Insured)

Named Insured and Address

This endorsement forms a part of Policy No. **10 C M10740W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................................................................12:01 A. M., standard time at the address of the *named insured* as
stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

---

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect
to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject
to the following additional exclusions:

The insurance does not apply:
1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| 3400 THIRD AVE. FOSTER CITY, CA. | SAN MATEO BAY BUILDING ASSOCIATES | INCLUDED | |
| 1270 MARKET ST. BENSENVILLE, IL. AND | JOHN G. TWIST CO. | | |
| ANY OTHER PREMISES UPON WHICH THE NAMED INSURED IS REQUIRED IN A WRIT-TEN AGREEMENT TO PROVIDE INSURANCE ON BEHALF OF THE LESSOR & OF WHICH THE COMPANY IS NOTIFIED WITHIN THIR-TY (30) DAYS OF THE EXECUTION OF SAID WRITTEN AGREEMENT. | | | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**

Countersigned by...........................................................................................
                                                                            *Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form L-3025-0  Printed in U. S. A.  5-'67  (NBCU: G 109)

HART000139

**BROAD FORM PROPERTY
DAMAGE ENDORSEMENT**
(Including Completed Operations)

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No....**10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...........................................................Effective hour is the
same as stated in the Declarations of the Policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

---

**Classification:**

It is agreed that the insurance for **property damage** liability applies, subject to the following additional provisions:

A.  The exclusions relating to **property damage** to (1) property owned, occupied or used by or rented to the **insured** or in the care, custody or
control of the **insured** or as to which the **insured** is for any purpose exercising physical control and (2) work performed by or on behalf of the
**named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are
replaced by the following exclusions (y) and (z):

(y)  to **property damage**

(1)  to property owned or occupied by or rented to the **insured**, or, except with respect to the use of **elevators**, to property held by the
**insured** for sale or entrusted to the **insured** for storage or safekeeping,

(2)  except with respect to liability under a written sidetrack agreement or the use of **elevators** to

(a)  property while on premises owned by or rented to the **insured** for the purpose of having operations performed on such property
by or on behalf of the **insured**,

(b)  tools or equipment while being used by the **insured** in performing his operations,

(c)  property in the custody of the **insured** which is to be installed, erected or used in construction by the **insured**,

(d)  that particular part of any property, not on premises owned by or rented to the **insured**,

(i)  upon which operations are being performed by or on behalf of the **insured** at the time of the **property damage** arising out of
such operations, or

(ii)  out of which any **property damage** arises, or

(iii)  the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by
or on behalf of the **insured;**

(z)  with respect to the **completed operations hazard** and with respect to any classification stated above as "including completed operations",
to **property damage** to work performed by the **named insured** arising out of the work or any portion thereof, or out of materials, parts or
equipment furnished in connection therewith.

B.  The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductib'
portion thereof) available to the **insured**, such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation F
Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by..............................................................
_Authorized Agent_

COMPANY COPY

HART000040

## ADDITIONAL INSURED
(Vendors—Limited Form)

Named Insured and Address

This endorsement forms a part of Policy No......**10 C MLO740N**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date..................................................................12:01 A. M., standard time at the address of the named insured as
stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

---

It is agreed that the "Persons Insured" provision is amended to include any person or organization (herein referred to as "Vendor"), as an Insured,
but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following
additional provisions:

1.  The insurance with respect to the Vendor does not apply to:

    (a) any express warranty, or any distribution or sale for a purpose, unauthorized by the Named Insured

    (b) bodily injury or property damage arising out of

        (i) any act of the Vendor which changes the condition of the products,

        (ii) any failure to maintain the product in merchantable condition,

        (iii) any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make
        in the usual course of business, in connection with the distribution or sale of the products, or

        (iv) products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingre-
        dient of any other thing or substance by or for the Vendor;

    (c) bodily injury or property damage occurring within the Vendor's premises.

2.  This insurance does not apply to any person or organization, as Insured, from whom the Named Insured has acquired such products or any
    ingredient, part or container, entering into, accompanying or containing such products.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
**INSURANCE GROUP**
HARTFORD, CONNECTICUT

Countersigned by.........................................................
                                        *Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

**Form L-3243-0**  Printed in U. S. A.  10-'68  (NBCU: G-114)

**Comprehensive General Liability Insurance Coverage Part**

| Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|
| Quality Control. | | |

This Coverage Part forms a part of Policy No. .............. **10  C  ML0740W** .............................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective ...........................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to....................................................................................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

**SCHEDULE**
The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability | |
|---|---|---|---|
| A — Bodily Injury Liability | $ **INCLUDED** | $ **AS PER** | ,000 each occurrence |
| | | $ | ,000 aggregate |
| B — Property Damage Liability | $ **INCLUDED** | $ **A 4152-0** | ,000 each occurrence |
| | | $ | ,000 aggregate |

| Rating Classifications<br>Entries herein, except as specifically provided else-where in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | B.I. | P.D. |
| (a) Premises — Operations | | (a) Area<br>(b) Frontage<br>(c) Remuneration<br>(d) Receipts | (a) Per 100 Sq.Ft. of Area<br>(b) Per Linear Foot<br>(c) Per $100 of Remun.<br>(d) Per $100 of Receipts | | | |
| (b) Escalators | | (e) Landings | (e) Per Landing | | | |
| (c) Independent Contractors | | (f) Cost | (f) Per $100 of Cost | | | |
| (d) Completed Operations | | (g) Receipts | (g) Per $1,000 of Receipts | | | |
| (e) Products | | (h) Sales | (h) Per $1,000 of Sales | | | |

A)   AS PER PREMIUM COMPUTATION ENDORSEMENT

C)   "    "    "    "        "

D)   "    "    "    "        "

E)   "    "    "    "        "

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS | $ **INCLUDED** |
|---|---|---|
| G 2240-2B — (LIST) | | |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $             1st Anniversary $             2nd Anniversary $

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by................................................................
                              Authorized Agent

Form L-3503-1  CDR  Printed in U.S.A. (ISO: CGL 1/1/73)          **CGL-1**

I hereby certify that these documents constitute a complete and accurate copy of the policy.

HART0004467 COPY

PREMISES MEDICAL PAYMENTS INSURANCE COVERAGE PART

| | Approved | Confidential Report | Und. Notes: |
|---|---|---|---|
| | Quality Control | | |

## 10 C ML0740W

This Coverage Part forms a part of Policy No.................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective.................................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to....................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability | |
|---|---|---|---|
| E — Premises Medical Payments | $ INCLUDED | $ 1,000 | each person |
| | | $ 10,000 | each accident |

| Description of Hazards | Advance Premiums |
|---|---|
| **(a) Premises and Operations**<br><br>AS PER PREMIUM COMPUTATION ENDORSEMENT | |
| **(b) Escalators** | |
| **(c) Sports Activities** | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue:<br>G 2240-2B  (LIST) | TOTAL ADVANCE PREMIUM | $ INCLUDED |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $          1st Anniversary $          2nd Anniversary $

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by.................................................

*Authorized Agent*

The company located these documents in its
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000143

| | Rec'd. Approved | Confidential Report | Und. Notes: |
|---|---|---|---|
| | Quality Control | | |

This Coverage Part forms a part of Policy No........**10 C ML07140W**........................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

---

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective............................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to............................................................

---

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| YB— Contractual Bodily Injury Liability | $     INCLUDED | $     AS PER     ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $     INCLUDED | $     ,000 each occurrence $A **4152-0**,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B. I. | P. D. | B. I. | P. D. |
| ALL WRITTEN AGREEMENTS | AS PER PREMIUM COMPUTATION ENDORSEMENT | (a) Cost (b) Sales | (a) Per $100 of Cost (b) Per $1,000 of Sales | | | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS | | |
|---|---|---|---|
| G 2240-2B (LIST) | | $ INCLUDED | $ |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $     1st Anniversary $     2nd Anniversary $

The following exclusions also **apply:**
☐ Exclusion (p) — Products and Completed Operations    ☐ Exclusion (q)—x, c & u

**I. COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

**COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

**Coverage YB.** *bodily injury* or

**Coverage ZB.** *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any *claim* or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

  (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

  (ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

---

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by....................................................................

*Authorized Agent*

Form L-3523-0   CDR   Printed in U. S. A.   (ISO: KB 1/1/73)     **KB-1**

At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

ATTACH FORMS ALONG MARGIN BELOW THIS MARK +

**Supplementary Coverage Endorsement**
**Personal Injury and Additional Insured**
**(Employees)**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. ........................... **10 C ML074CW**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................. 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE

Insured's Participation _____ **NIL** _____ %

It is agreed that:   **EXCLUSION (C) IS DELETED**

I.   The insurance afforded under the Coverage for Bodily Injury Liability is extended to apply to damages because of *personal injury,* subject to the following additional provisions:

1.   This extended insurance does not apply:

(a)   to liability for *personal injury* assumed by the *insured* under any contract or agreement;

(b)   to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured;*

✱(c)   to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured;*

(d)   to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

(e)   to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

(f)   to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured.*

2.   When used in reference to this insurance:

"*personal injury*" means injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory;*

"*personal injury offense*" means (a) false arrest, detention or imprisonment, or malicious prosecution; (b) libel, slander, defamation, disparagement or violation of an individual's right of privacy; or (c) wrongful entry or eviction or other invasion of the right of private occupancy.

3.   The "Limits of Liability" provision is amended by adding the following thereto:

The total liability of the company for all damages because of all *personal injury* to which this insurance applies shall not exceed the amount stated in the Schedule as the limit of *bodily injury* liability and as applicable to "each *occurrence*".

With respect to any claim because of *personal injury,* the company shall not be liable for a greater proportion of any loss than the difference between the participation percentage, if any, stated above and one hundred percent, and the balance of the loss shall be borne by the *insured;* provided the company may pay the *insured's* portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the *named insured* shall promptly reimburse the company therefor.

II.   The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

(1)   to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

(2)   to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured,* or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by ..........................................................................
_____
*Authorized Agent*

Form L-3991-0   Printed in U.S.A.   (NS)

**Amendment — Limits of Liability
(Single Limit)**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. ......**10 C M10740N** ...........
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................................Effective hour is the
same as stated in the Declarations of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | |
|---|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE | — (Coverage Part "CO/PR") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |
| OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE | — (Coverage Part "OCP") |

## SCHEDULE

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol
herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| | "CGL" "K" | $ **1,000**,000 each occurrence |
| Bodily Injury Liability and Property Damage Liability | "CGL" "K" | $ **1,000**,000 aggregate — **Division 1** |
| | | $ ,000 aggregate — **Division 2** |
| Bodily Injury Liability and Property Damage Liability | | $ ,000 each occurrence |

**Division 1** — Applicable to damages because of **bodily injury** and **property damage** as specified in paragraph (b) in the "Limits of Liability"
provision of this endorsement.

**Division 2** — Applicable to damages because of all **bodily injury** and **property damage** as stated in paragraph (c) in the "Limits of Liability"
provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof
is amended to read as follows:

## LIMITS OF LIABILITY

Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage,** (3) claims
made or suits brought on account of **bodily injury** or **property damage** or (4) **automobiles** or **mobile equipment** to which this policy applies, the
company's liability is limited as follows:

### Bodily Injury Liability and Property Damage Liability Coverage

(a)   The limit of liability stated in the Schedule of this endorsement as applicable to "each **occurrence**" is the total limit of the company's liability
under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of **bodily injury,**
including damages for care and loss of services, and all **property damage** as the result of any one **occurrence;** provided that, with respect to
any one **occurrence** for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for
the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to
provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's
liability.

business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000146

## Host Liability Insurance                    **THE HARTFORD**

( Named Insured and Address

This endorsement forms a part of Policy No. **10 C MLO74OW**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .....................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS', AND TENANTS' LIABILITY INSURANCE

It is agreed that exclusion (h) does not apply to liability imposed upon the insured as the result of the giving or serving of alcoholic beverages at functions incidental to the named insured's business, provided the named insured is not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages, and provided further that there has been no intentional violation of any statute, regulation, or ordinance committed by or at the direction of the insured.

Nothing herein contained shall be held to vary, waive, alter,     extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of

Countersigned by.............................................................
                                                    *Authorized Agent*

Form L-4191-0   Printed in U.S.A.   (N.S.)

HART000147

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date...................................................Effective hour is the same
as stated in the Declarations of the Policy.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

## CONTRACTUAL LIABILITY INSURANCE

## ASSAULT & BATTERY

IT IS AGREED THAT THE DEFINITION OF OCCURRENCE IS AMENDED BY
ADDING THERETO THE FOLLOWING:

"BODILY INJURY OR PROPERTY DAMAGE CAUSED FOR

THE PURPOSE OF PROTECTING PERSONS OR PROPERTY

SHALL BE DEEMED NEITHER EXPECTED NOR INTENDED

FROM THE STANDPOINT OF THE INSURED."

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy,
other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement
takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page
of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by..................................................
Authorized Agent

G-2240-2 B   Printed in U. S. A.   6·'74

HART000148

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C MLO740W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................................Effective hour is the same
as stated in the Declarations of the Policy.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### INCIDENTAL MALPRACTICE

IT IS AGREED THAT:

1. THE DEFINITION OF "BODILY INJURY" IS AMENDED TO INCLUDE
   INJURY ARISING OUT OF THE RENDERING OF OR FAILURE TO REN-
   DER PROFESSIONAL SERVICES BY ANY PHYSICIAN, DENTIST OR
   NURSE WHILE EMPLOYED BY THE NAMED INSURED TO PROVIDE SUCH
   SERVICES.

2. EXCLUSION (J) DOES NOT APPLY TO INJURY TO THE EMOTIONS OR
   REPUTATIONS OF A PERSON ARISING OUT OF THE RENDERING OF
   SUCH SERVICES.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy,
other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement
takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page
of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by....................................
                                      Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

G-2240-2 B   Printed in U. S. A.   6-'74

HART000149

## THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No. **10 C ML0740W** issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date...................................................Effective hour is the same as stated in the Declarations of the Policy.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

PREMISES MEDICAL PAYMENTS INSURANCE

KNOWLEDGE AND NOTICE OF OCCURRENCE.

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY AN AGENT, SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT CONSTITUTE KNOWLEDGE TO THE INSURED UNLESS AN EXECUTIVE OFFICER OF THE NAMED INSURED CORPORATION OR OTHER PERSONS EMPLOYED BY IT IN A MANAGERIAL CAPACITY SHALL HAVE RECEIVED SUCH NOTICE.

IT IS AGREED THAT IF THE INSURED REPORTS AN OCCURRENCE TO ITS WORKMEN'S COMPENSATION CARRIER WHICH DEVELOPS INTO A LIABILITY CLAIM FAILURE TO REPORT SUCH OCCURRENCE TO THE COMPANY AT THE TIME OF OCCURRENCE SHALL NOT BE DEEMED IN VIOLATION OF CONDITION 4 " INSURED'S" DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company: provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................

Authorized Agent

Forms a part thereof, countersignature on the declarations page is business records. At this time, the company does not certify that these documents constitute and accurate copy of the policy.

G-2240-2 B   Printed in U.S.A.   6-'74

HART000150

## THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No.......**1O C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date...................................................Effective hour is the same
as stated in the Declarations of the Policy.

<u>COMPREHENSIVE GENERAL LIABILITY INSURANCE</u>

<u>CONTRACTUAL LIABILITY INSURANCE</u>

<u>PREMISES MEDICAL PAYMENTS INSURANCE</u>

<u>NOTICE OF CANCELLATION</u>

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THE
POLICY BY THE COMPANY FOR ANY REASON OTHER THAN NON-
PAYMENT OF PREMIUM, THIRTY (30) DAYS PRIOR WRITTEN NO-
TICE THEREOF WILL BE FURNISHED TO THE NAMED INSURED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by................................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

G-2240-2 B   Printed in U. S. A.   6-'74

HART000151

## THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No. **10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................................................Effective hour is the same
as stated in the Declarations of the Policy.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

PREMISES MEDICAL PAYMENTS INSURANCE

UNINTENTIONAL ERRORS OR OMISSIONS

IT IS AGREED THAT FAILURE OF THE INSURED TO DISCLOSE ALL
HAZARDS EXISTING AS OF THE INCEPTION DATE OF THE POLICY
SHALL NOT PREJUDICE THE INSURED WITH RESPECT TO THE COVE-
RAGE AFFORDED BY THIS POLICY, PROVIDED SUCH FAILURE OR
ANY OMISSION IS NOT INTENTIONAL.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy,
other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement
takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page
of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..............................................................
Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

G-2240-2 B   Printed in U. S. A.   6 · 74

HART000152

**Premium Installment**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No....**10 C MLO740W**
issued by THE HARTFORD INSURANCE GROUP company
designated therein, and takes effect as of the effective date of
said Policy unless another effective date is stated herein.

Effective date.......................................... 12:01 A. M., standard time at the address of the
named insured as stated herein.

It is hereby understood and agreed that the...........**ORIGINAL**........................Premium of $ **175,750   G L**
(Insert "original" or "additional" or "return")                                              **30,560   AUTO**

will ......**BE PAYABLE IN**..................**FOUR (4)**..................installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

## SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 10-25-80 | 43,939. | 5,074. | 2,569. | | 51,582. |
| 2 | 12-25-80 | 43,937. | 5,072. | 2,567. | | 51,576. |
| 3 | 2-25-81 | 43,937. | 5,072. | 2,567. | | 51,576. |
| 4 | 4-25-81 | 43,937. | 5,072. | 2,567. | | 51,576. |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| TOTALS | | 175,750. | 20,290. | 10,270. | | 206,310. |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.........................................................
                                                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-57-0   Printed in U.S.A.

# THE HARTFORD

Named Insured and Address

This endorsement forms a part of Policy No. **10 C MLO740W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date................................................Effective hour is the same
as stated in the Declarations of the Policy.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

## CONTRACTUAL LIABILITY INSURANCE

## PREMISES MEDICAL PAYMENTS INSURANCE &

## ERRORS AND OMISSIONS INSURANCE - EMPLOYEE BENEFIT PROGRAMS

## PREMIUM COMPUTATION

IT IS AGREED THAT THE PREMIUM FOR COMPREHENSIVE GENERAL

LIABILITY INSURANCE SHALL BE COMPUTED AS FOLLOWS:

| CODE | TOTAL SALES | RATES PER $1,000 SALES | | ADVANCE PREMIUMS | |
|------|-------------|-------|-------|-------|-------|
| | | B.I. | P.D. | B.I. | P.D. |
| 20050 | $25,000,000. | 4.36 | 2.67 | 109,000. | $66,750. |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy,
other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement
takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page
of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................................
Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

G-2240-2 B   Printed in U. S. A.   6-'74

HART000154



# Countersignature Memo

**Insured**

CENTRICO INC.

100 FAIRWAY COURT
NORTHVALE, NJ  07647

| Company Office | Policy No. | Expiration | Date |
|---|---|---|---|
| MANHATTAN | 10 C ML0740N | 10-25-81 | 10-22-80 |

**Name and Address of Producer**

Please show Countersigning Agent preferred, if any, in block below.

FRED S. JAMES & CO. OF N.Y.
55 WATER ST.
NY  NY

**Name and Address of Countersigning Agent**

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | | |
|---|---|---|---|
| | Number | Name of Licensee | |
| FLA. | 0161285373-01 | T.J. MAHONEY | |

| Producer's Rate of Commission | Effective Date |
|---|---|
| | 10-25-80 |
| 100 % Premium | $1.669. |

If not licensed, is same desired?
☐ Yes   ☐ No

If "Yes", which States:

Company

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Form G-2669-3  Printed in U.S.A.

**EXTRA COPY**

# Countersignature Memo

| Insured | | | | | | |
|---|---|---|---|---|---|---|
| CENTRICO INC. | | | | 100 FAIRWAY COURT NORTHVALE, N.J. 07647 | | |

| Company Office | | | Policy No. | Expiration | Date |
|---|---|---|---|---|---|
| MANHATTAN | | | 10 C ML0740N | 10-25-81 | 10-22-80 |

Name and Address of Producer

Please show Countersigning Agent preferred, if any, in block below.

FRED S. JAMES & CO. OF N.Y.
55 WATER ST.
NY NY

Name and Address of Countersigning Agent

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | | | |
|---|---|---|---|---|
| | Number | Name of Licensee | | |
| ILLINOIS | 13-5304320 | P.S.J. F.A. MC DOUGOLD | | |

| Producer's Rate of Commission | Effective Date |
|---|---|
| | 10-25-80 |
| 100 % Premium | $6,238. |

If not licensed, is same desired?

☐ Yes  ☐ No

If "Yes", which States:

Company

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Form G-2669-3  Printed in U.S.A.

**EXTRA COPY**

8

# Countersignature Memo

| Insured | | | | |
|---|---|---|---|---|
| **CENTRICO INC.** | | **100 FAIRWAY COURT** | | |
| | | **NORTHVALE, N.J.  07647** | | |

| Company Office | Policy No. | Expiration | Date |
|---|---|---|---|
| **MANHATTAN** | **10 C M10740N** | **10-25-81** | **10-22-80** |

Please show Countersigning Agent preferred, if any, in block below.

Name and Address of Countersigning Agent

**Name and Address of Producer**

**FRED S. JAMES & CO. OF N.Y.**
**55 WATER ST.**
**NY  NY**

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The counter-signing fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| **KENTUCKY** | | **NO LIC.** |

| Producer's Rate of Commission | Effective Date |
|---|---|
| | **10-25-80** |
| **100** % Premium | **$452.00** |

If not licensed, is same desired?

☐ Yes    ☐ No

If "Yes", which States:

Company

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THE HARTFORD**

Form G-2689-3  Printed in U.S.A.

**EXTRA COPY**

HART000157

# Resident Agent Countersignature Endorsement

Co. Code
☑ 1 Hartford Fire Insurance Company
5 Hartford Accident and Indemnity Company
3 Hartford Casualty Insurance Company

Co. Code
6 New York Underwriters Insurance Company
7 Twin City Fire Insurance Company



**THE HARTFORD**

This Endorsement forms a part of
☒ Policy No. ☐ Bond No. **10 C MLO7406**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address

**CENTRICO INC.**
**NORTHVALE, NJ 07647**

| Effective date | Effective hour is the same as stated |
|---|---|
| **10-25-80** | in the Declarations of the Policy. |

*Note:* If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **FLA.** | **FRED S. JAMES & CO. OF N.Y.   25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| **5** | Bodily Injury | $ **955.** | | General Liability | $ |
| **5** | Medical Payments | $ **43.** | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| **5** | Comprehensive | $ **152.** | | Glass | $ |
| **5** | Collision | $ **404.** | | Bond | $ |
| **5** | Other (specify) **U/M** | **21.** | | Other (specify) | |
| **5** | **P.I.P.** | $ **94.** | | | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

The company related these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-1760-8   Printed in U.S.A.

Resident Agent Countersignature Endorsement

Co. Code
[1] Hartford Fire Insurance Company
[5] Hartford Accident and Indemnity Company
[3] Hartford Casualty Insurance Company

Co. Code
[6] New York Underwriters Insurance Company
[7] Twin City Fire Insurance Company



**THE HARTFORD**

This Endorsement forms a part of

☒ Policy No.  ☐ *Bond No. **10 C MLO7403**

issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address

**CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, NJ  07647**

| Effective date | Effective hour is the same as stated |
|---|---|
| **10-25-80** | in the Declarations of the Policy. |

***Note:*** *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **ILLINOIS** | **FRED S. JAMES & CO. OF N.Y.   25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| **5** | Bodily Injury | $ **4,257.** | | General Liability | $ |
| **5** | Medical Payments | $ **252.** | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| **5** | Comprehensive | $ **544.** | | Glass | $ |
| **5** | Collision | $ **1,149.** | | Bond | $ |
| **5** | Other (specify) **U/M** | $ **36.** | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

This company has assembled these documents from its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-1760-8   Printed in U.S.A.

Resident Agent Countersignature Endorsement




| Co. Code | | |
|---|---|---|
| [1] Hartford Fire Insurance Company | [6] New York Underwriters Insurance Company | |
| [5] Hartford Accident and Indemnity Company | [7] Twin City Fire Insurance Company | |
| [3] Hartford Casualty Insurance Company | | |

**THE HARTFORD**

Named Insured and Address

This Endorsement forms a part of

☒ Policy No.  ☐ *Bond No........**10 C M10740M**.............
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J.  07647

| Effective date | Effective hour is the same as stated |
|---|---|
| **10-25-80** | in the Declarations of the Policy. |

**\*Note:** *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **KENTUCKY** | **FRED S. JAMES & CO. OF N.Y.  25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| **5** | Bodily Injury | $ 246. | | General Liability | $ |
| **5** | Medical Payments | $ 24. | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| **5** | Comprehensive | $ 49. | | Glass | $ |
| **5** | Collision | $ 116. | | Bond | $ |
| **5** | Other (specify)  P.I.P. | 12. | | Other (specify) | |
| **5** | U/M | $ 5. | | | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

The countersignature hereto, by a duly authorized agent of the company,
as concerns that portion of the Risk located in the State named above.

This copy is produced from the company's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

Form G-1760-8  Printed in U.S.A.

HART000160

10

**Resident Agent Countersignature Endorsement**



Co. Code
☐ 1 Hartford Fire Insurance Company
☐ 5 Hartford Accident and Indemnity/Company
☐ 3 Hartford Casualty Insurance Company

Co. Code
☐ 6 New York Underwriters Insurance Company
☐ 7 Twin City Fire Insurance Company

**THE HARTFORD**

This Endorsement forms a part of
☒ Policy No.   ☐ *Bond No. **10 C M10740N**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address

**CENTRICO INC.**
**100 FAIRWAY COURT**
**NORTHVALE, N.J.   07647**

| Effective date | Effective hour is the same as stated |
|---|---|
| **10-25-80** | in the Declarations of the Policy. |

*Note: If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **NEW JERSEY** | **FRED S. JAMES & CO. OF N.Y. INC.   25-2170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| 5 | Bodily Injury | $ ~~4,803.~~ 20069. | 5 | General Liability | $ ~~175,750~~ 121800. |
| 5 | Medical Payments | $ ~~197.~~ link | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| | Comprehensive | $ | | Glass | $ |
| | Collision | $ | | Bond | $ |
| 5 5 | Other (specify)   P.I.P.   U/M | $ ~~215.~~   $ 18. | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

This document is a true and accurate representation of the company's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-1760-8   Printed in U.S.A.

HART000161

(b)   The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 1**" is, subject to provision (a) hereof respecting "each **occurrence**", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all **bodily injury** and **property damage** which is included in any of the numbered subparagraphs below and, in subparagraph (3), with respect either to the **bodily injury** or **property damage**, or to the **bodily injury** and **property damage** (within one or both the hazards identified therein) for which insurance is actually afforded under at least one such Coverage Part:

(1)   all **property damage** arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including **property damage** for which liability is assumed under any **incidental contract** relating to such premises or operations, but excluding **property damage** included in subparagraph (2) below;

(2)   all **property damage** arising out of and occurring in the course of operations performed for the **named insured** by independent contractors and general supervision thereof by the **named insured**, including any such **property damage** for which liability is assumed under any **incidental contract** relating to such operations, but this subparagraph (2) does not include **property damage** arising out of maintenance or repairs at premises owned by or rented to the **named insured** or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3)   all **bodily injury** and **property damage** included within the **completed operations hazard** and all **bodily injury** and **property damage** included within the **products hazard**;

(4)   all **property damage** for which liability is assumed under any contract, other than an **incidental contract,** to which the Contractual Liability Insurance, if afforded, applies.

Such "aggregate — **Division 1**" limit shall apply separately:

(i)    to the **property damage** included in subparagraphs (1) and (2) and separately with respect to each project away from premises owned by or rented to the **named insured;**

(ii)   to the sum of the damages for all **bodily injury** and **property damage** included in subparagraph (3) and for which insurance, if any, is afforded as stated in paragraph (b) above;

(iii)  to the **property damage** included in subparagraph (4) and separately with respect to each project away from premises owned by or rented to the **named insured.**

(c)   The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 2**" is, subject to provision (a) hereof respecting "each **occurrence**", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all **bodily injury** and **property damage.**

(d)   For the purpose of determining the limit of the company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence.**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.........................................................................................
                                                                                        *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-4152-0 (NS)                                    Page 2

HART000162

**THE HARTFORD**

10 C ML0740W

This endorsement forms a part of Policy No.............................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date 10-25-80 .................Effective hour is the same
as stated in the Declarations of the Policy.

**Named Insured and Address**

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647

IT IS AGREED THAT THE TAX CODES AS RESPECTS TO THE FOLLOWING LOCATIONS

ARE CORRECTED TO READ AS FOLLOWS:

| | TAX CODES |
|---|---|
| ELK GROVE ILLINOIS | 4077 |
| BENSONVILLE ILLINOIS | 1159 |
| SHELBYVILLE KENTUCKY | 2327 |
| SOUTH WINTER HAVEN FLA. | 0985 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by......................................................
Authorized Agent

G-2240-2 B   Printed in U. S. A.   6-'74

The company located these documents in its business records. At this time, the company does not verify that these documents constitute a complete and accurate copy of the policy.

HART000163

EHDT #4-5.



THE HARTFORD

## UNDERWRITING FILE COPY

This endorsement forms a part of Policy No. **10 C ML07402**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless other effective date is stated herein.

**Named Insured and Address**
CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ 07647

: 7 25 80

Effective date.................................Effective hour is the
same as stated in the Declarations of the policy.

| | | | LIAB. | P.I.P. | MED. | H. | COMP. | COLL. |
|---|---|---|---|---|---|---|---|---|
| #34) | 80 BUICK | O | 480 | NOT | 46 | 10 | 126 | 273 |
| | $8100 N/2 | N | 439 | COV | 42 | 10 | 103 | 224 |
| | 7398 T-091 | R/P | 41 | – | R/P 4 | – | R/P 23 | R/P 49 |
| 35) | 80 AUDI | O | 480 | NOT | 46 | 10 | 173 | 322 |
| | $10,700 N/2 | N | 439 | COV | 42 | 10 | 142 | 264 |
| | 7398 T-091 | R/P | 41 | – | R/P 4 | – | R/P 31 | R/P 58 |
| 36) | 80 VOLKSWAGEN | O | 480 | NOT | 46 | 10 | 126 | 273 |
| | $9493 N/2 | N | 439 | COV | 42 | 10 | 103 | 224 |
| | 7398 T-091 | R/P | 41 | – | R/P 4 | – | R/P 23 | R/P 49 |
| 37) | 80 GMC TRK | O | 692 | NOT | 48 | 2 | 146 | 390 |
| | $8960 N/2 | N | 633 | COV | 43 | 2 | 120 | 320 |
| | 23414 T-010 | R/P | 59 | – | R/P 5 | – | R/P 26 | R/P 70 |
| 38) | 80 GMC TRK | O | 692 | NOT | 48 | 2 | 202 | 519 |
| | $10,054 N/2 | N | 633 | COV | 43 | 2 | 166 | 425 |
| | 23414 T-010 | R/P | 59 | – | R/P 5 | – | R/P 36 | R/P 94 |
| 39) | 80 VOLKS | O | 480 | NOT | 46 | 10 | 126 | 273 |
| | $9611 N/2 | N | 439 | COV | 42 | 10 | 103 | 224 |
| | 7398 T-091 | R/P | 41 | – | R/P 4 | – | R/P 23 | R/P 49 |
| | N.J. H.C. T-010 | O | 26 | | | | | |
| | 6619 | N | 23 | | | | | |
| | | R/P | 3. | | | | | |
| | NON OWNED T-010 | O | 209 | | | | | |
| | 6603 (300) | N | 191 | | | | | |
| | | R/P | 18. | | | | | |

| TOTAL R/P | $ 1,513. | $ 23. | $ 115. | NO CHANGE | $ 549. | $ 1,243. |
|---|---|---|---|---|---|---|

**TOTAL R/P INCLUDED ON PAGE 1**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................
*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

G-2240-2 C   Printed in U. S. A.   6-'74

HART000164

CI JB 2 11 81   FRED S JAMES & CO  252170

ENDT. 04-4

PAGE IV

THE HARTFORD

## UNDERWRITING FILE COPY

10 C HL0740W

This endorsement forms a part of Policy No. ................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as ░░░░ te of said policy
unless another effective date is

Effective date 10 25 P0 ..............................Effective hour
same as stated in the Dec. tions of the policy

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ 07647



| | | | LIAB. | U.M. | COMP. | COLL. |
|---|---|---|---|---|---|---|
| #26) 79 BMW $23,850 N/3 7398 T-010 | O N R/P | 360 329 31 | 43 39 RP 4 | 1 1 – | 2 2 – | 205 168 R/P 37 | 417 342 R/P 75 |
| 27) 78 BUICK $6900 N/4 7398 T-010 | O N R/P | 360 329 31 | 43 39 RP 4 | 1 1 – | 2 2 – | 59 48 R/P 11 | 157 129 R/P 28 |
| 28) 79 CHEV $6550 N/3 7398 T-015 | O N R/P | 473 432 41 | NOT COV – | 28 25 R/P 3 | 4 4 – | 78 64 R/P 14 | 155 127 R/P 28 |
| 29) 79 PONTIAC $7200 N/3 7398 T-091 | O N R/P | 480 439 41 | NOT COV – | 46 42 R/P 4 | 10 10 – | 107 88 R/P 19 | 236 193 R/P 43 |
| 30) 79 CHEV $6145 N/3 7398 T-015 | O N R/P | 473 432 41 | NOT COV – | 28 25 R/P 3 | 4 4 – | 78 64 R/P 14 | 155 127 R/P 28 |
| 31) 89 CHEV $7100 N/2 7398 T-075 | O N R/P | 550 502 48 | NOT COV – | 43 39 R/P 4 | 10 10 – | 155 127 R/P 28 | 197 161 R/P 36 |
| 32) 80 CHEV $6900 N/2 7398 T-015 | O N R/P | 473 432 41 | NOT COV – | 28 25 R/P 3 | 4 4 – | 78 64 R/P 14 | 155 127 R/P 28 |
| 33) 79 DODGE TRL $5666 N/3 68499 T-091 | O N R/P | 138 126 12 | NOT COV – | NOT COV – | NOT COV – | 61 50 R/P 11 | 139 114 R/P 25 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..................................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

G-2240-2 C  Printed in U. S. A.  6-'74

Case 2:20-cv-09741-BRM-SDA    Document 63-33    Filed 11/18/22    Page 278 of 612
PageID: 5698

ENDT. #4-3



## UNDERWRITING FILE COPY

THE HARTFORD

This endorsement forms a part of Policy No. **10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date being unless another effective date is stated herein.

**Named Insured and Address**

CENTRICO INC
100 FAIRWAY COURT
MONTVALE, NJ 07647

Effective date **10-25-80** Effective hour is the same as stated in the Declarations of the policy.

| | | | LIAB | P.I.P. | MED | U.M. | COMP | COLL. |
|---|---|---|---|---|---|---|---|---|
| 18) | 74 CHEV | O | 775 | NOT | 82 | 10 | 53 | 130 |
| | $5700 N/6 | N | 708 | COV | 75 | 10 | 43 | 107 |
| | 03414 T-091 | R/P | 67 | – | RP 7 | – | R/P 10 | R/P 23 |
| 19) | 77 CHRYSLER | O | 480 | NOT | 46 | 10 | 62 | 159 |
| | $5380 N/5 | N | 439 | COV | 42 | 10 | 51 | 130 |
| | 7398 T-091 | R/P | 41 | – | R/P 4 | – | R/P 11 | R/P 29 |
| 20) | 77 DODGE | O | 415 | 32 | 15 | 7 | 46 | 128 |
| | $5800 N/5 | N | 379 | 30 | 14 | 7 | 38 | 105 |
| | 7398 T-010 | R/P | 36 | RP 2 | R/P 1 | – | R/P 8 | R/P 23 |
| 21) | 78 FORD | O | 270 | 31 | 14 | 7 | 53 | 138 |
| | $7840 N/4 | N | 247 | 29 | 13 | 7 | 43 | 113 |
| | 03414 T-010 | R/P | 23 | RP 2 | R/P 1 | – | R/P 10 | R/P 25 |
| 22) | 78 PLYM | O | 480 | NOT | 46 | 10 | 62 | 159 |
| | $5900 N/4 | N | 439 | COV | 42 | 10 | 51 | 130 |
| | 7398 T-091 | R/P | 41 | – | R/P 4 | – | R/P 11 | R/P 29 |
| 23) | 78 FORD | O | 480 | NOT | 46 | 10 | 62 | 159 |
| | $5900 N/4 | N | 439 | COV | 42 | 10 | 51 | 130 |
| | 7398 T-091 | R/P | 41 | – | R/P 4 | – | R/P 11 | R/P 29 |
| 24) | 79 DODGE | O | 270 | 31 | 14 | 7 | 53 | 138 |
| | $6936 N/3 | N | 247 | 29 | 13 | 7 | 43 | 113 |
| | 03414 T-010 | R/P | 23 | RP 2 | R/P 1 | – | R/P 10 | R/P 25 |
| 25) | 79 CHEV | O | 246 | 12 | 24 | 5 | 49 | 116 |
| | $7567 N/3 | N | 225 | 11 | 22 | 5 | 40 | 95 |
| | 7398 T-011 | R/P | 21 | RP 1 | R/P 2 | – | R/P 9 | R/P 21 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................................

*Authorized Agent*

G-2240-2 C  Printed in U. S. A.  6-74

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.



ENDT. 84-2

THE HARTFORD

**UNDERWRITING FILE COPY**

This endorsement forms a part of Policy No. C ML0740W
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect
unless another effective dat

Named Insured and Address
{ CENTRICO INC
100 FAIRWAY COURT
NJ 07647

10-25

Effective date
same as stated in the D

|  |  | LIAB | P.I.P. | MED. | U.M. | COMP. | COLL. |
|---|---|---|---|---|---|---|---|
| 9) 78 DODGE | O | 473 | NOT | 28 | 4 | 46 | 105 |
| $5400 N/4 | N | 432 | COV | 25 | 4 | 38 | 86 |
| 7398 T-015 | R/P | 41 | - | R/P 3 | - | R/P 8 | R/P 19 |
| 10) 77 DODGE | O | 473 | NOT | 28 | 4 | 46 | 105 |
| $4949 N/5 | N | 432 | COV | 25 | 4 | 38 | 86 |
| 7398 T-015 | R/P | 41 | - | R/P 3 | - | R/P 8 | R/P 19. |
| 11) 74 VOLKS | O | 473 | NOT | 28 | 4 | 34 | 82 |
| $5204 N/6 | N | 432 | COV | 25 | 4 | 28 | 67 |
| 7398 T-015 | R/P | 41 | - | R/P 3 | - | R/P 6 | R/P 15 |
| 12) 77 PLYM | O | 480 | NOT | 46 | 10 | 62 | 159 |
| $5811 N/5 | N | 439 | COV | 42 | 10 | 51 | 130 |
| 7398 T-091 | R/P | 41 | - | R/P 4 | - | R/P 11 | R/P 29 |
| 13) 77 PLYM | O | 480 | NOT | 46 | 10 | 62 | 159 |
| $5380 N/5 | N | 439 | COV | 42 | 10 | 51 | 130 |
| 7398 T-091 | R/P | 41 | - | R/P 4 | - | R/P 11 | R/P 29 |
| 14) 77 PLYM | O | 480 | NOT | 46 | 10 | 62 | 159 |
| $5380 N/5 | N | 439 | COV | 42 | 10 | 51 | 130 |
| 7398 T-091 | R/P | 41 | - | R/P 4 | - | R/P 11 | R/P 29 |
| 16) 76 MERCEDES | O | 480 | NOT | 46 | 10 | 46 | 125 |
| $4667 N/6 | N | 439 | COV | 42 | 10 | 38 | 102 |
| 7398 T-091 | R/P | 41 | - | R/P 4 | - | R/P 8 | R/P 23 |
| 17) 72 DODGE | O | 480 | NOT | 46 | 10 | 46 | 125 |
| $4667 N/6 | N | 439 | COV | 42 | 10 | 38 | 102 |
| 7398 T-091 | R/P | 41 | - | R/P 4 | - | R/P 8 | R/P 23 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by
*Authorized Agent*

G-2240-2 C  Printed in U. S. A.  6-'74

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CI JB 24-81   FRED S JAMES & CO   252270   TOTAL R/P $3,443.00

ENDT #4-1



PAGE 1

THE HARTFORD

## UNDERWRITING FILE COPY

This endorsement forms a part of Policy No. ............... **10 C ML0740N**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective d~~...~~, I policy
unless another effective date is stated herein.

Effective date ....... **10-25-80**
same as stated in the Declarati......

**Named Insured and Address**

CENTRICO INC
100 FAIRWAY COURT
NORTH~~...~~    07647

IN CONSIDERATION OF THE ABOVE PREMIUM, IT IS AGREED THAT AUTO
LIABILITY AND PHYSICAL DAMAGE PREMIUMS ARE AMENDED TO READ AS FOLLOWS:

|   |   | LIAB. | P.I.P. | MED. | U.M. | COMP. | COLL. |
|---|---|-------|--------|------|------|-------|-------|
| 1) 77 MERCEDES | O | 360 | 43 | 1 | 2 | 131 | 258 |
| $20,000 N/5 | N | 329 | 39 | 1 | 2 | 107 | 211 |
| 7398 T-010 | R/P | 31 | R/P 4 | NO CHANGE | | RP 24 | RP 47 |
| 3) 80 BUICK | O | 360 | 43 | 1 | 2 | 107 | 261 |
| $11,396 N/2 | N | 329 | 39 | 1 | 2 | 88 | 214 |
| 7398 T-010 | R/P | 31 | R/P 4 | NO CHANGE | | RP 19 | RP 47 |
| 4) 72 DODGE | O | 692 | NOT | 48. | 2 | 32 | 76 |
| $4389 N/6 | N | 633 | COV | 43 | 2 | 26 | 62 |
| 23414 T-010 | R/P | 59 | - R/P 5 | NO CHANGE | R/P 6 | RP 14 |
| 5) 66 CHEV TRK | O | 692 | NOT | 48 | 2 | 32 | 76 |
| $3400 N/6 | N | 633 | COV | 43 | 2 | 26 | 62 |
| 23414 T-010 | R/P | 59 | - RP 5 | - | RP 6 | RP 14 |
| 6) 76 CHEV | N | 473 | NOT | 28 | 4 | 46 | 105 |
| $5500 N/4 | O | 432 | COV | 25 | 4 | 38 | 86 |
| 7398 T-015 | R/P | 41 | - RP 3 | - | RP 8 | RP 19 |
| 7) 80 OLDS | O | 473 | NOT | 28 | 4 | 92 | 182 |
| $8500 N/2 | N | 432 | COV | 25 | 4 | 75 | 149 |
| 7398 T-015 | R/P 41 | - RP 3 | - | RP 17 | RP 33 |
| 8) 77 DODGE | O | 473 | NOT | 28 | 4 | 46 | 105 |
| $4954 N/5 | N | 432 | COV | 25 | 4 | 38 | 86 |
| 7398 T-015 | R/P 41 | - RP 3 | - | RP 8 | RP 19 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by...............................................................

*Authorized Agent*

G-2240-2 C   Printed in U. S. A.   6-'74

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

JB 2 11 81   FRED S JAMES & CO  252170
TOTAL R/P $1,292.00

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 C MLO740W**

UNDERWRITING FILE COPY

This endorsement forms a part of the policy as numbered above, issued
by THE HARTFORD INSURANCE GROUP company designated therein,
and takes effect as of the effective date of said policy unless another
effective date is stated herein.

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ 07647

Effective Date
**10-25-80**

Effective
in the D

Endt. No.
**#3-1**

IN CONSIDERATION OF THE ABOVE PREMIUM, IT IS AGREED THAT

VEHICLES #2 AND 15 ARE DELETED.

| | | | LIAB. | P.I.P. | MED. | U.M. | COMP. | COLL. |
|---|---|---|---|---|---|---|---|---|
| 2) | 73 PONTIAC 2K57T34160428 N J | R/P | 360 | 43 | 1 | 2 | 28 | 101 |
| 15) | 77 PLYMOUTH H45B7B421164 CALIF | R/P | 480 | NOT COV | 46 | 10 | 62 | 159 |
| | TOTAL R/P | | $ 840. | $ 43. | $47. | $12. | $ 90. | $ 260. |

TOTAL R/P $1,292.00

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy

Form G-2240-3 B  Printed in U.S.A.

Countersigned by

Authorized Agent

HART000169

NC OF N Y 252170

3. The advance premium for this...
such limits of liability as are stated th...

COVER  ARTS



**THE HARTFORD**

AUDIT

10 C ML0740W

This endorsement forms a part of Policy No...........................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647

Effective date 10-25-80 ........................Effective hour is the same
as stated in the Declarations of the Policy.

IT IS AGREED THAT THE TAX CODES AS RESPECTS TO THE FOLLOWING LOCATIONS

ARE CORRECTED TO READ AS FOLLOWS:

| | TAX CODES |
|---|---|
| ELK GROVE ILLINOIS | 4077 |
| BENSONVILLE ILLINOIS | 1159 |
| SHELBYVILLE KENTUCKY | 2327 |
| SOUTH WINTER HAVEN FLA. | 0985 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy,
other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement
takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page
of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ............................................................
                                                    Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

G-2240-2 B   Printed in U. S. A.   6-·74

HART000170

THE HARTFORD

Named Insured and Address

| Policy Number |
| --- |
| 10 C ML 0740W |

Centrico Inc
100 Fairway Court
Northvale NJ 07647

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated |
| --- | --- |
| 10-25-81 | in the Declarations of the policy. |

| Endt. No. |
| --- |
| 1 |

It is agreed as respect: Business Auto:

Physical Damage was rated as:

100 Ded Comprehensive

500 Ded Collision

No change in Policy Premium

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ...................................................
                                                    Authorized Agent

Form G-2240-3 B   Printed in U.S.A.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

# CASUALTY INSURANCE POLICY

GENERAL POLICY PROVISIONS    Form 8117

**THE HARTFORD**

The member company of **THE HARTFORD INSURANCE GROUP** designated on the Declarations page as the Insurer (a stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the *named insured* as follows:

## COVERAGE

Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the *insured* in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy,

and the cost of bail bonds required of the *insured* because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the *insured* for first aid to others at the time of an accident, for *bodily injury* to which this policy applies;

(d) reasonable expenses incurred by the *insured* at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

*"automobile"* means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include *mobile equipment;*

*"bodily injury"* means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

*"collapse hazard"* includes "structural property damage" as defined herein and *property damage* to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The *collapse hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard* or the *underground property damage hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract;*

*"completed operations hazard"* includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured*. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The [HARTFORD]...
business records... Actual... the company...
document... copy of the policy...
accurate copy of the policy.

The *completed operations hazard* does not include *bodily injury* or *property damage* arising out of

(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

**"elevator"** means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an *automobile* servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

**"explosion hazard"** includes *property damage* arising out of blasting or explosion. The *explosion hazard* does not include *property damage* (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the *named insured* by independent contractors, or (3) included within the *completed operations hazard* or the *underground property damage hazard*, or (4) for which liability is assumed by the *insured* under an *incidental contract*;

**"incidental contract"** means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) *elevator* maintenance agreement;

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

**"mobile equipment"** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the

*named insured*, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

**"named insured's products"** means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured;*

**"policy territory"** means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the *bodily injury* or *property damage* does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of *bodily injury* or *property damage* arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

**"products hazard"** includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others;

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period;

**"underground property damage hazard"** includes underground property damage as defined herein and *properly damage* to any other property at any time resulting therefrom. "Underground property damage" means *property damage* to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The *underground property damage hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract*.

## DESCRIPTION OF TERMS USED AS PREMIUM BASES

When used as a premium basis for:

(a) Comprehensive General Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance, **"admissions"** means the total number of persons, other than employees of the *named insured*, admitted to the event covered by the insurance or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(b) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance; Owners' and Contractors' Protective Liability Insurance, **"cost"** means the total cost to the *named insured* with respect to operations performed for the *named insured* during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(c) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance or Completed Operations and Products Liability Insurance, **"receipts"** means the gross amount of money charged by the *named insured* for such operations during the policy period by the *named insured* or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

(d) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance which includes coverage for structural alterations, new construction and demolition operations, *"remuneration"* means the entire remuneration earned during the policy period by proprietors and by all employees of the *named insured*, other than chauffeurs (except operators of *mobile equipment*) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

HART000173

Case 2:20-cv-10974-BRM-SDA Document 63-33 Filed 11/18/22 Page 286 of 612

(e) Comprehensive General Liability Insurance or Comprehensive General Liability and Products Liability Insurance, *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division;

(f) Contractual Liability Insurance, *"cost"* means the total cost to any indemnitee, with respect to any contract which is insured, of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or the subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(g) Garage Insurance, *"remuneration"* means (a) the entire remuneration earned during the policy period by each Class A employee and each Class C employee of the *named insured*, subject to an average weekly maximum of $100, and (b) the remuneration of each Class B person at a fixed amount of $2,000 per annum with respect to Dealer Risks (Hazard 1) or $5,200 per annum with respect to Non-Dealer Risks (Hazard 2)

    *"Class A"* means all clerical office employees

    *"Class B"* means all proprietors and officers active in the business, and inactive proprietors or officers (other than an inactive proprietor or officer who is a spouse of an active proprietor or officer) who customarily drive an *automobile*

managers, service managers and chauffeurs

    *"Class C"* means all other employees;

(h) Comprehensive Automobile Liability Insurance,

(1) *"cost of hire"* means the amount incurred for (a) the hire of *automobiles*, including the entire remuneration of each employee of the *named insured* engaged in the operation of such *automobiles* subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of *"cost of hire"* shall be 5% of the applicable *hired automobile* rates, provided the owner of such *hired automobile* has purchased *automobile* Bodily Injury Liability and Property Damage Liability insurance covering the interest of the *named insured* on a direct primary basis as respects such *automobile* and submits evidence of such insurance to the *named insured;*

(2) *"Class 1 persons"* means the following persons, provided their usual duties in the business of the *named insured* include the use of *non-owned automobiles:* (a) all employees, including officers, of the *named insured* compensated for the use of such *automobiles* by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the *named insured;*

(3) *"Class 2 employees"* means all employees, including officers, of the *named insured*, not included in Class 1 persons.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMERS COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to *bodily injury* or *property damage*

(1) with respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the *insured* is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

C. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material*, if

(1) the *nuclear material* (a) is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured* or (b) has been discharged or dispersed therefrom;

(2) the *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

(3) the *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear*

*facility*, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

II. As used in this exclusion:

*"hazardous properties"* include radioactive, toxic or explosive properties;

*"nuclear material"* means *source material, special nuclear material* or *byproduct material;*

*"source material"*, *"special nuclear material"*, and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"waste"* means any waste material (1) containing *byproduct material* and (2) resulting from the operation by any person or organization of any *nuclear facility* included within the definition of *nuclear facility* under paragraph (a) or (b) thereof;

*"nuclear facility"* means

(a) any *nuclear reactor*,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing *spent fuel*, or (3) handling, processing or packaging *waste*,

(c) any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste*,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"property damage"* includes all forms of radioactive contamination of property.

Form 8117     3

HART000174

Case 2:20-cv-09741-BRM-SDA    Document 63-33    Filed 11/18/22    Page 287 of 612

1. **Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured*, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the *named insured*.

The *named insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

2. **Inspection and Audit** The company shall be permitted but not obligated to inspect the *named insured's* property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *named insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the *named insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. **Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for *bodily injury* liability or for *property damage* liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

4. **Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

5. **Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the *insured* to determine the *insured's* liability, nor shall the company be impleaded by the *insured* or his legal representative. Bankruptcy or insolvency of the *insured* or of the *insured's* estate shall not relieve the company of any of its obligations hereunder.

6. **Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. **Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights.

8. **Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

9. **Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the *named insured* shall die, such insurance as is afforded by this policy shall apply (1) to the *named insured's* legal representative, as the *named insured*, but only while acting within the scope of his duties as such, and (2) with respect to the property of the *named insured*, to the person having proper temporary custody thereof, as *insured*, but only until the appointment and qualification of the legal representative.

10. **Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

11. **Cancellation** This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing.

If the *named insured* cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

12. **Declarations** By acceptance of this policy, the *named insured* agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its President and a Secretary, but the same shall not be binding unless countersigned on the declarations page by a duly authorized agent of the company.

This document is reproduced from the company's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the records.

Michael S. Wilder, *Secretary*

Donald R. Frahm, *President*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Temporary Substitute Autos; Autos
 Owned by Partners; Partners,
 Executive Officers as Insured**

 **THE HARTFORD**

A.  **"PART II — WHICH AUTOS ARE COVERED AUTOS" is changed by adding the following:**

   D.  **TEMPORARY SUBSTITUTE AUTOS.**

   Any **auto you** do not own while used as a temporary substitute for an **auto you** do own is a covered **auto** for the same LIABILITY INSURANCE and UNINSURED MOTORISTS INSURANCE as is provided by the policy for the **auto you** do own, but only if that owned **auto** is out of normal use because of its breakdown, repair, servicing, loss or destruction.

   E.  **AUTOS OWNED BY PARTNERS.**

   If **you** are a partnership, no **auto** owned by any of **your** partners or members of their households is a covered **auto** for LIABILITY INSURANCE unless the policy is endorsed to cover that **auto** as a covered **auto** and the proper premium is charged.

B.  **"WHO IS INSURED" of "PART IV — LIABILITY INSURANCE" is changed by adding the following between paragraphs 1 and 2:**

   1A.  Any partner or executive officer of **yours** is an **insured** for any covered **auto** except that none of them is an **insured**:

   a.  For a covered **auto** that **you** do not own, lease, hire or borrow or which is a temporary substitute **auto** (as described in PART II, D of "WHICH AUTOS ARE COVERED AUTOS"), unless the **auto** is being used in **your** business or **your** personal affairs.

   b.  For an **auto** owned by him or her or by a member of his or her household.

**Form A-4307-0**  Printed in U.S.A.  (NS)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



CA 00 15
(Ed. 07 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CHANGES IN POLICY—HANDLING OF PROPERTY

LIABILITY INSURANCE is changed as follows:

A. The exclusion relating to loading or unloading of property does not apply. The following two exclusions apply instead:

This insurance does not apply to:

**Bodily injury** or **property damage** resulting from the handling of property:

    a. Before it is moved from the place where it is accepted by the **insured** for movement into or onto the covered **auto**, or

    b. After it is moved from the covered **auto** to the place where it is finally delivered by the **insured**.

**Bodily injury** or **property damage** resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered **auto**.

B. WHO IS INSURED is changed to read:

    D. WHO IS INSURED

        1. **You** are an **insured** for any covered **auto**.

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

    a. Someone using a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

    b. Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos**.

    c. Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto**.

3. Anyone is an **insured** for his or her liability because of acts or omissions of an **insured** described above. However, the owner of or anyone else from whom **you** hirer or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



CA 02 24
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CHANGES IN POLICY — CANCELLATION

A. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

1. If we cancel the policy we will mail notice to any lienholder shown in the policy.

2. If we cancel for any reason other than nonpayment of premium we will mail you and any lienholder shown in the policy at least 30 days notice.

B. The following Condition is added:

**NON-RENEWAL**

1. If we decide not to renew or continue this policy we will mail you and any lienholder shown in this policy notice at least 30 days before the end of the policy period.

2. If we fail to mail proper notice of non-renewal and you have failed to pay any required premium when due this policy will terminate at the end of the current policy period.

3. Any notice of non-renewal will be mailed to your last known address. However, we may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 02 24 (Ed. 01 78)                    Copyright, Insurance Services Office, 1977

CA 21 01
(Ed. 01 78)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CHANGES IN UNINSURED MOTORISTS INSURANCE**

This endorsement is applicable in the states of AR., KY., & LA.

The insured shall not be required to arbitrate disputed claims.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Copyright, Insurance Services Office. 1977

HART000179



# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN UNINSURED MOTORISTS INSURANCE

A. WORDS AND PHRASES WITH SPECIAL MEANING is changed as follows:

**"Family member"** means **your** spouse, whether or not a resident of **your** household, and any other person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

Paragraph c. of **"uninsured motor vehicle"** is changed to read:

For which the insuring or bonding company denies coverage or refuses to admit coverage except conditionally or with reservation or becomes insolvent, or

B. Exclusion 2 under WE WILL NOT COVER—EXCLUSIONS is changed to read:

This insurance does not apply to:

The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability or similar law or to the direct benefit of the United States, a state or its political subdivisions.

C. OUR LIMIT OF LIABILITY is changed to read:

1. Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident,** the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any loss payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation law exclusive of non-occupational disability benefits, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

D. OTHER INSURANCE is changed to read:

1. For **bodily injury** sustained by an **insured** while **occupying** an **auto** he does not own, UNINSURED MOTORISTS INSURANCE does not apply if the owner of the **auto** has uninsured motorists insurance.

2. Except as provided in paragraph 1, if an **insured** has other uninsured motorists insurance, the damages shall be deemed not to exceed the higher of the applicable limits of the respective coverages. **We** will pay only **our** share of these damages. **Our** share is the proportion that the limit of UNINSURED MOTORISTS INSURANCE bears to the total of the limits of all uninsured motorists insurance.

E. The policy's condition LEGAL ACTION AGAINST US is changed to read:

No legal action may be brought against **us** until there has been full compliance with all the terms of this policy nor unless within one year from the date of the **accident:**

1. Suit for **bodily injury** has been filed against the uninsured motorist in a court of competent jurisdiction, or

2. Agreement as to the amount due under this insurance has been concluded, or

3. The **insured** has formally instituted legal proceedings.

F. ARBITRATION is changed to read:

1. If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event the disagreement will be settled by a single neutral arbitrator. Each party will bear the expenses of the arbitrator equally.

2. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedures and evidence will apply. The decision of the arbitrator will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 21 02 (Ed. 08 80)



# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
### (NEW JERSEY)

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in **bold face**, other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions"**.

The Company agrees with the **named insured**, subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I

### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay personal injury protection benefits consisting of

(a) **medical expense benefits**,

(b) **income continuation benefits**,

(c) **essential services benefits**,

(d) **survivor benefits**, and

(e) **funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person**, caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

### Exclusions

The insurance under this endorsement does not apply:

(a) to **bodily injury** to a person whose conduct contributed to the injury in any of the following ways:

    (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

    (2) while acting with specific intent to cause injury or damage to himself or others;

(b) to **bodily injury** to the **named insured** or any **relative** of the **named insured** sustained while occupying, using or entering into or alighting from a **private passenger automobile** which is not an **insured automobile** under this policy, if he is required to maintain automobile liability insurance coverage with respect to the automobile under the New Jersey Automobile Reparation Reform Act;

(c) to **bodily injury** to any person, other than the **named insured** or a **relative** of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey;

(d) to **bodily injury** arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a **residence** or premises other than for transitory recreational purposes;

(e) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(f) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

### Definitions

When used in reference to this insurance:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"eligible injured person"** means

(a) the **named insured** or any **relative** of the **named insured**, if the **named insured** or **relative** sustains **bodily injury**

    (1) while occupying, using, entering into or alighting from a **private passenger automobile**, or

    (2) while a **pedestrian**, caused by a **private passenger automobile** or as a result of being struck by an object propelled by or from such an automobile; or

(b) any other person who sustains **bodily injury**

    (1) while, with the permission of the **named insured**, occupying, using, entering into or alighting from the **insured automobile**, or

    (2) while a **pedestrian**, caused by the **insured automobile** or as a result of being struck by an object propelled by or from the **insured automobile**;

**"essential services benefits"** means an amount not exceeding a limit of $12.00 per day and a total limit of $4,380 payable to an **eligible injured person** as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his lifetime and which he would ordinarily have performed not for **income** but for the care and maintenance of himself and his **relatives**;

**"funeral expense benefits"** means an amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred;

**"income"** means salary, wages, tips, commissions, fees and other earnings derived from work or employment;

**"income continuation benefits"** means an amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an **income producer** during his lifetime, as a result of **bodily injury disability**;

The company has located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, 1977

HART000181

"income producer" means a person who, at the time of the accident, was in an occupational status, earning or producing income;

"insured automobile" means an automobile with respect to which the named insured is required to maintain automobile-liability-insurance coverage-under the New Jersey Automobile Reparation Reform Act, to which the bodily injury insurance of the policy applies and for which a specific premium is charged;

"medical expense benefits" means all reasonable expenses incurred for medical, surgical and dental treatment, professional nursing, hospital and rehabilitation services, x-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses incurred for treatment prescribed by persons licensed to practice medicine, surgery, psychology or chiropractic, or for any non-medical remedial treatment rendered in accordance with a recognized religious method of healing;

"named insured" means the person or organization named in the insured in the declarations. If the insured automobile is owned by a farm family co-partnership or corporation, the term "named insured" also includes the head of the household of each family designated in the policy as having a working interest in the farm;

"pedestrian" means any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks and includes any person who is entering into or alighting from such a vehicle;

"private passenger automobile" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) a private passenger or station wagon type automobile,

(2) a pick-up or panel truck or delivery sedan, or

(3) a utility automobile designed for personal use as a camper or motor home or for family recreational purposes: but

a private passenger automobile does not include a motorcycle an automobile used as a public or livery conveyance for passengers, a pick-up or panel truck, delivery sedan or utility automobile customarily used for business, occupational or professional purposes other than farming or ranching or a utility automobile customarily used for the transportation of passengers other than members of the user's family or their guests;

"relative" means a person related to the named insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the named insured;

"survivor benefits" means the amount or amounts payable in the event of the death of an eligible injured person as determined in subdivision (1) or (2) hereof, as appropriate:

(1) if the eligible injured person was an income producer at the time of the accident, an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of income resulting from his injury prior to his death;

(2) if the eligible injured person ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount not to exceed the difference between $4,380 and all basic essential services benefits paid with respect to his injury prior to death.

## Limit of Liability

Any amount payable by the Company as personal injury protection benefits with respect to bodily injury shall be reduced by all amounts paid, payable or required to be provided under any workmen's compensation or employees temporary disability law, or under Medicare provided under federal law.

The applicable limit on income continuation benefits applies separately to each full regular and customary work week of an eligible injured person. If his disability from work or employment consists of or includes only a part of such a week, the Company shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the part week bears to the number of days in his full work week.

## Policy Period; Territory

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions or Canada.

## Conditions

1. **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the eligible injured person, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each eligible injured person to the Company or any of its authorized agents as soon as practicable. If any eligible injured person, his legal representative or survivors shall institute legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such eligible injured person, his legal representative or his survivors.

2. **Medical Reports; Proof of Claim.** As soon as practicable the eligible injured person or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The eligible injured person shall submit to physical examination by physicians when and as often as the Company may reasonably require, and a copy of the medical report will be forwarded to such eligible injured person if requested.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute true and accurate copies of its policy.

CA 22 30 (Ed. 01 78)          Copyright, Insurance Services Office, 1977          Page 2 of 4

3. **Multiple Policies Applicable to One Accident: Non-duplication of Benefits; Priority of Complying Policies.** Regardless of the number of automobiles insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act, or the number of insurers or policies affording such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to bodily injury to any one person as the result of any one accident shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

This insurance applies on a primary basis to bodily injury to the named insured and his relative and on a secondary basis to all other eligible injured persons. Similarly, the basic personal injury protection coverage provided by other complying policies applies on a primary basis to bodily injury to those persons who are named insureds under such policies and their relatives. If an eligible injured person to whom this insurance applies on a secondary basis has other basic personal injury protection coverage under another complying policy applicable to his bodily injury on a primary basis, all claims for basic personal injury protection benefits shall first be made against the insurer issuing the other complying policy. No basic personal injury protection benefits shall be due and payable under this insurance unless the other insurer fails to pay such benefits by reason of insolvency and the Company has been given written notice by the claimant of such failure. "Complying Policy" means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.

4. **Reimbursement and Trust Agreement.** Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement

  (a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter;

  (b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;

  (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

  (d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

5. **Payment of Personal Injury Protection Benefits.** Medical expense benefits and essential services benefits may be paid at the option of the Company to the eligible injured person or the person or organization furnishing the products or services for which such benefits are due. In the event of the death of an eligible injured person any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the eligible injured person's estate.

Benefits payable under subdivision (1) of the definition of survivor benefits are payable to the eligible injured person's surviving spouse, or if there is no surviving spouse, to his surviving children, or if there are no surviving spouse or surviving children, to the eligible injured person's estate.

Benefits payable under subdivision (2) of the definition of survivor benefits are payable to the person who has incurred the expense of providing essential services.

Funeral expense benefits are payable to the eligible injured person's estate.

## SECTION II

### EXTENDED MEDICAL EXPENSE BENEFITS COVERAGE

The Company will pay medical expense benefits not to exceed the total aggregate amount stated in the schedule and funeral expense benefits with respect to bodily injury sustained by an insured person, caused by an accident occurring during the policy period within the United States of America, its territories or possessions or Canada and arising out of the ownership, maintenance or use, including loading and unloading, of an insured automobile or of a highway vehicle not owned by or furnished or available for the regular use of the named insured or any relative of the named insured.

### Exclusions

The insurance under Section II is subject to all of the exclusions applicable to Section I, except that the word "person" in exclusion (c) is replaced by the word "pedestrian".

### Definitions

The definitions under Section I apply to Section II and under Section II:

"highway vehicle" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-treads or (3) a vehicle while located for use as a residence or premises;

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000183

ısured person" means

(a) the **named insured** or any **relative** of the **named insured**, if the **named insured** or **relative** sustains **bodily injury**

  (1) while occupying, using, entering into or alighting from a **highway vehicle**; or

  (2) while a **pedestrian**, caused by a **highway vehicle**;

(b) any other person who sustains **bodily injury** while occupying a **highway vehicle** (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such **highway vehicle** is being operated by the **named insured** or a **relative** of the **named insured** or any other person using such **highway vehicle** with the permission of the **named insured**;

(c) any other person who sustains **bodily injury** while occupying an **insured automobile** if such **insured automobile** is being operated by the **named insured** or a **relative** of the **named insured** or any other person using such **insured automobile** with the permission of the **named insured**.

**Conditions**

Conditions 1, 2 and 4 of Section I apply to Section II, substituting the term "**insured person**" for "**eligible injured person**" wherever it appears therein. The following additional condition applies under Section II:

**Other Insurance or Benefits.** This insurance does not apply to loss or expense with respect to which an **insured person** is entitled to benefits under any workmen's compensation law or Medicare provided under federal law or under Section 4 of the New Jersey Automobile Reparation Reform Act.

This insurance does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefor under any other automobile no-fault law or under any other automobile medical payments insurance.

### SECTION III

In consideration of the insurance afforded under **Sections I** and **II** of this endorsement, and the adjustment of applicable rates:

(a) any amount payable for economic loss under uninsured motorists coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury** to an **eligible injured person**;

(b) any automobile medical payments coverage afforded under the policy is deleted with respect to an automobile which is an **insured automobile**.

### SECTION IV

#### Premium Recomputation

The premium for the policy is based on rates which have been reduced in accordance with **Section 18** of the **New Jersey Automobile Reparation Reform Act** to reflect the limitations on the right to recover damages imposed by Section 8 of said Act. If a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, Section 8 of the Act invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy on the basis of revised rates which are subject to approval by the Commissioner of Insurance.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

(c) to property contained in or struck by a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, but this exclusion does not apply to property of the named insured or his relatives while contained in or struck by a highway vehicle owned by a designated insured or his relatives;

(d) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law;

(e) to the first $100 of the amount of property damage to the property of each insured as the result of any one accident;

(f) so as to inure directly or indirectly to the benefit of any insurer of property;

(g) to property damage arising out of the ownership, maintenance or use of a hit-and-run vehicle;

## II.  PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability.

## III.  LIMITS OF LIABILITY

Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) highway vehicles to which this insurance applies,

(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

(b) The limit of property damage liability stated in the schedule is the total limit of the company's liability for all damages because of property damage to all property of one or more insureds as the result of any one accident.

(c) Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is an insured shall be reduced by

(1) all sums paid on account of such bodily injury or property damage by or on behalf of

(i) the owner or operator of the uninsured highway vehicle and

(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage,

including all sums paid under the bodily injury or property damage liability coverage of the policy, and

(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

(d) Any payment made under this insurance to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the bodily injury or property damage liability coverage of the policy.

(e) The company shall not be obligated to pay under this insurance that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under the medical payments or medical expense coverage of the policy or which represents loss paid or payable to the insured under any automobile physical damage insurance of the policy.

## IV.  POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

## V.  ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"bodily injury" means bodily injury, sickness or disease, including death, sustained by an insured under (a) or (b) of the Persons Insured provision;

"designated insured" means an individual named in the schedule under Designated Insured and also includes his spouse, if a resident of the same household;

"highway vehicle" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"hit-and-run vehicle" means (i) a highway vehicle which causes an accident resulting in bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident, or (ii) a highway vehicle which without physical contact with the insured or with a vehicle which the insured is occupying at the time of the accident causes bodily injury to an insured arising out of an accident in New Jersey, provided:

(a) there cannot be ascertained the identity of either the operator or owner of such highway vehicle; and

(b) the insured or someone on his behalf shall have

The company located these documents in its business records and does not certify that these documents constitute a complete and accurate copy of the policy.

reported; the accident within 48 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

(c) at the company's request, the insured or his legal representative makes available for inspection the vehicle which the insured was occupying at the time of the accident; and

(d) with respect to subdivision (ii) the facts of such accident can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such accident;

"insured highway vehicle" means a highway vehicle:

(a) described in the schedule as an insured highway vehicle to which the bodily injury and property damage liability coverage of the policy applies;

(b) while temporarily used as a substitute for an insured highway vehicle as described in subparagraph (a) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) while being operated by the named or designated insured or by the spouse of either if a resident of the same household;

but the term "insured highway vehicle" shall not include:

(i) a vehicle while used as a public or livery conveyance, unless such use is specifically declared and described in the policy;

(ii) a vehicle while being used without the permission of the owner;

(iii) under subparagraphs (b) and (c) above, a vehicle owned by the named insured, any designated insured or any resident of the same household as the named or designated insured; or

(iv) under subparagraphs (b) and (c) above, a vehicle furnished for the regular use of the named insured or any resident of the same household;

"named insured" means the individual named in item 1 of the declarations and also includes his spouse, if a resident of the same household;

"occupying" means in or upon or entering into or alighting from;

"property damage" means injury to or destruction of (i) an insured highway vehicle owned by the named insured or his spouse, if a resident of the same household, (ii) any property owned by an insured under (a) or (b) of the Persons Insured provision while contained in such insured highway vehicle and (iii) any property owned by an insured under (a) of the Persons Insured provision while contained in any insured highway vehicle;

"●" includes the District of Columbia, a territory or possession of the United States, and a province of Canada;

"uninsured highway vehicle" means:

(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or

(b) a hit-and-run vehicle, but only with respect to bodily injury caused thereby;

but the term "uninsured highway vehicle" shall not include:

(i) an insured highway vehicle,

(ii) a highway vehicle which is owned or operated by a self-insurer within the meaning of any vehicle financial responsibility law, motor carrier law or any similar law,

(iii) a highway vehicle which is owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing.

## VI. ADDITIONAL CONDITIONS

### A. Policy Provisions.

None of the Insuring Agreements, Exclusions, Conditions or other provisions of the policy shall apply to the insurance afforded by this endorsement except the Conditions "Notice" (or "Insured's Duties in the Event of Occurrence, Claim or Suit"), "Changes", "Assignment", "Cancellation" and "Declarations".

### B. Premium.

If during the policy period the number of insured highway vehicles owned by the named insured or spouse or the number of dealer's license plates issued to the named insured changes, the named insured shall notify the company during the policy period of any change and the premium shall be adjusted in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

### C. Proof of Claim.

As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or the person or persons

The company located these documents in its ompany does not certify that the documents constitute a complete and accurate copy of the policy.

CA 2X 14 (Ed. 01 78)     Copyright, Insurance Services Office, 1977     Page 3 of 4

HART000186

entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records.

The insured or other person making claim for damage to property shall file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement setting forth the interest of the insured and of all others in the property affected, any encumbrances thereon, the actual cash value thereof at time of loss, the amount, place, time and cause of such loss, and the description and amounts of all other insurance covering such property. Upon the company's request, the insured shall exhibit the damaged property to the company.

**D.   Assistance and Cooperation of the Insured.**

After notice of claim under this insurance, the company may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the bodily injury or property damage; and in any action against the company, the company may require the insured to join such person or organization as a party defendant.

**E.   Notice of Legal Action.**

If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury or property damage against any person or organization legally responsible for the use of a highway vehicle involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.

**F.   Other Insurance.**

With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

With respect to property damage, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance of any kind applicable to such property damage, and this insurance shall apply only in the amount by which the limit of liability for this coverage exceeds the amount recoverable under such other insurance.

**G.   Arbitration.**

If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such per-

son and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

**H.   Trust Agreement.**

In the event of payment to any person under this insurance:

(a)   the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or property damage because of which such payment is made;

(b)   such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this insurance;

(c)   such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d)   if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(e)   such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision.

**I.   Payment of Loss by the Company.**

Any amount due hereunder is payable

(a)   to the insured, or

(b)   if the insured be a minor to his parent or guardian, or

(c)   if the insured be deceased to his surviving spouse, otherwise

(d)   to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents;

provided, the company may at its option pay any amount due hereunder in accordance with division (d) hereof;

**J.   Action Against Company.**

No action shall lie against the company unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of the policy applicable to this coverage.

**K.**   This endorsement replaces any other provisions of the policy, including any endorsement forming a part thereof, affording similar insurance with respect to any damages arising out of the ownership, maintenance or use of an uninsured vehicle or a hit-and-run vehicle.

This authenticated PDF version of these documents its arising out of the ownership, maintenance or use of an uninsured vehicle or a hit-and-run vehicle. does not certify and these documents constitute a complete and accurate copy of the policy.



CA 2X 17
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### UNINSURED MOTORISTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

   b. For which the sum of all liability bonds or policies at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the limit of this insurance, or

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is **occupying**.

   However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

**B. WE WILL PAY**

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

**C. WE WILL NOT COVER — EXCLUSIONS**

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle owned by **you** or any **family member** which is not a covered **auto**.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.

**E. OUR LIMIT OF LIABILITY**

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

**F. CHANGES IN CONDITIONS**

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

**CA 2X 17 (Ed. 01 78)**

Copyright, Insurance Services Office, 1977

Page 1 of 2

company's business records. The company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000188

a. Promptly notify the police if a hit-and-run driver is involved, and

b. Promptly send us copies of the legal papers if a suit is brought.

3. OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for **us** and pay **us** back the amount **we** have paid.

4. The following Condition is added:

**ARBITRATION**

a. If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 2X 17** (Ed. 01 78)          Copyright, Insurance Services Office, 1977          Page 2 of 2

HART000189



CA 99 03
(Ed. 01 80)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AUTO MEDICAL PAYMENTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for AUTO MEDICAL PAYMENTS INSURANCE:

1. **"Family member"** means a person related to you by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

**B. WE WILL PAY**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an **insured** who sustains **bodily injury** caused by **accident. We** will pay only those expenses incurred within three years from the date of the **accident.**

**C. WE WILL NOT COVER — EXCLUSIONS**

This insurance does not apply to:

1. **Bodily injury** sustained by an insured while **occupying** a vehicle located for use as a premises.

2. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by **you** or furnished or available for **your** regular use.

3. **Bodily injury** sustained by any **family member** while **occupying** or struck by any vehicle (other than **a covered auto**) owned by or furnished or available for the regular use of any **family member.**

4. **Bodily injury** to **your** employee arising out of and in the course of employment by **you.** However, **we will** cover **bodily injury** to **your** domestic employees if not entitled to workers' compensation benefits.

5. **Bodily injury** to an **insured** while working in a business of selling, servicing, repairing or parking autos unless that business is **yours.**

6. **Bodily injury** caused by declared or undeclared war or insurrection or any of their consequences.

7. **Bodily injury** to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member** while **occupying** or, while a pedestrian, when struck by any **auto.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

**E. OUR LIMIT OF LIABILITY**

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the **accident,** the most **we** will pay for **bodily injury** for each **insured** injured in any one **accident** is the limit of AUTO MEDICAL PAYMENTS shown in the declarations.

**F. CHANGES IN CONDITIONS**

The CONDITIONS of the policy are changed for AUTO MEDICAL PAYMENTS INSURANCE as follows:

1. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

2. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible auto medical payments insurance.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000190

CA 99 21 01 78

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

It is agreed that:

A.  The policy does not apply:

1.  Under any Liability Coverage, to **bodily injury** or **property damage**

    a.  with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    b.  resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material,** if

    a.  the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

    b.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

    c.  the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c applies only to **property damage** to such **nuclear facility** and property thereat.

B.  As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties:

**"nuclear material"** means **source material, special nuclear material** or **byproduct material;**

**"source material"**, **"special nuclear material"**, and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

"**waste**" means any waste material (a) containing **byproduct material** and (b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph 1 or 2 thereof;

"**nuclear facility**" means

1.  any **nuclear reactor,**

2.  any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel,** or (c) handling, processing or packaging **waste**,

3.  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

4.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**property damage**" includes all forms of radioactive contamination of property.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000191

## ERRORS AND OMISSIONS INSURANCE—EMPLOYEE BENEFIT PROGRAMS

Named Insured and Address

This endorsement forms a part of Policy No.
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................................................    Effective hour is the same as stated in the Declarations of the policy.

### SCHEDULE

| Limits of Liability | | Estimated Advance Premium |
|---|---|---|
| $ | each claim | $ |
| $ | aggregate | $ |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

### INSURING AGREEMENTS

I. **COVERAGE.** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** As respects such insurance as is afforded by the terms of this endorsement, the company shall:
(a) defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request; and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III. **DEFINITIONS.**
(a) **"Insured"** — The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
(b) **"Employee Benefit Programs"** — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
(c) **"Administration"** — The unqualified word "Administration", wherever used, shall mean:
(1) giving counsel to employees with respect to Employee Benefit Programs;
(2) interpreting Employee Benefit Programs;
(3) handling of records in connection with Employee Benefit Programs;
(4) effecting enrollment of employees under Employee Benefit Programs;
provided all such acts are authorized by the Named Insured.

IV. **ENDORSEMENT PERIOD, TERRITORY.** This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

### EXCLUSIONS

This endorsement does not apply:
(a) to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b) to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
(c) to any claim for failure of performance of contract by an insurer;
(d) to any claim based upon:
(1) failure of stock to perform as represented by an insured.
(2) advice given by an insured to an employee to participate or not to participate in stock subscription plans.

### CONDITIONS

1. **Policy Conditions.** All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2. **Limits of Liability**
(a) Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
(b) $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
(c) The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. The company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the Insured.
(d) The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3. **Premium.** The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| .................... First | 5,000 | $.................... |
| .................... Next | 5,000 | $.................... |
| .................... Over | 10,000 | $.................... |
| | Total $. | |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
INSURANCE GROUP
HARTFORD, CONNECTICUT

Form L-2853-1   Printed in U. S. A.   4-'66

Countersigned by ....................................................
                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

## Comprehensive General Liability Insurance Coverage Part *(Continued)*

### I. COVERAGE A — BODILY INJURY LIABILITY

### COVERAGE B — PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

**Coverage A** – *bodily injury* or

**Coverage B** – *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a)  to liability assumed by the *insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b)  to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

    (1)  any *automobile* or aircraft owned or operated by or rented or loaned to any *insured,* or

    (2)  any other *automobile* or aircraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to the parking of an *automobile* on premises owned by, rented to or controlled by the *named insured* or the ways immediately adjoining, if such *automobile* is not owned by or rented or loaned to any *insured;*

(c)  to *bodily injury* or *property damage* arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d)  to *bodily injury* or *property damage* arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured;*

(e)  to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

    (1)  any watercraft owned or operated by or rented or loaned to any *insured,* or

    (2)  any other watercraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the *named insured;*

(f)  to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(g)  to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to

    (1)  liability assumed by the *insured* under an *incidental contract,* or

    (2)  expenses for first aid under the Supplementary Payments provision;

(h)  to *bodily injury* or *property damage* for which the *insured* or his indemnitee may be held liable

    (1)  as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

    (2)  if not so engaged, as an owner or lessor of premises used for such purposes,

    if such liability is imposed

    (i)  by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

    (ii)  by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the *insured* or his indemnitee as an owner or lessor described in (2) above;

(i)  to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j)  to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract;*

(k)  to *property damage* to

    (1)  property owned or occupied by or rented to the *insured,*

    (2)  property used by the *insured,* or

    (3)  property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to *property damage* (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the *named insured;*

(l)  to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(m)  to loss of use of tangible property which has not been physically injured or destroyed resulting from

    (1)  a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

    (2)  the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(n)  to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(o)  to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p)  to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q)  to *property damage* included within:

    (1)  the *explosion hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "x";

The company located these documents in its business records and that these documents constitute a complete and accurate copy of the policy.

## Comprehensive General Liability Insurance Coverage Part *(Continued)*    THE HARTFORD

(2) the *collapse hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "c".

(3) the *underground property damage hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "u".

## II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured;* and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of *mobile equipment* registered under any motor vehicle registration law,

(i) an employee of the *named insured* while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the *named insured* any such equipment registered in the name of the *named insured* and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an *insured* under this paragraph (e) with respect to:

(1) *bodily injury* to any fellow employee of such person injured in the course of his employment, or

(2) *property damage* to property owned by, rented to, in charge of or occupied by the *named insured* or the employer of any person described in subparagraph (ii).

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured.*

## III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or suits brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage A —** The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of (1) all *bodily injury* included within the *completed operations hazard* and (2) all *bodily injury* included within the *products hazard* shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B —** The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate":

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured*, including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *property damage* included within the *products hazard* and all *property damage* included within the *completed operations hazard.*

Such aggregate limit shall apply separately to the *property damage* described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the *named insured.*

**Coverages A and B —** For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

## IV. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory.*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

# COVERAGE PART
(Continued)

## I. COVERAGE E — PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains *bodily injury* caused by accident all reasonable *medical expense* incurred within one year from the date of the accident on account of such *bodily injury*, provided such *bodily injury* arises out of (a) a condition in the *insured premises* or (b) operations with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy.

### Exclusions

This insurance does not apply:

(a) to *bodily injury*

(1) arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

(ii) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to the parking of an *automobile* on the *insured premises*, if such *automobile* is not owned by or rented or loaned to any *insured;*

(2) arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

(3) arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any watercraft owned or operated by or rented or loaned to any *insured*, or

(ii) any other watercraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to watercraft while ashore on the *insured premises;* or

(4) arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured;*

(b) to *bodily injury*

(1) included within the *completed operations hazard* or the *products hazard;*

(2) arising out of operations performed for the *named insured* by independent contractors other than (i) maintenance and repair of the *insured premises* or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the *named insured* is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the *named insured* is such an owner or lessor;

(4) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) to *bodily injury*

(1) to the *named insured*, any partner therein, any tenant or other person regularly residing on the *insured premises* or any employee of any of the foregoing if the *bodily injury* arises out of and in the course of his employment therewith;

(2) to any other tenant if the *bodily injury* occurs on that part of the *insured premises* rented from the *named insured* or to any employee of such a tenant if the *bodily injury* occurs on the tenant's part of the *insured premises* and arises out of and in the course of his employment for the tenant;

(3) to any person while engaged in maintenance and repair of the *insured premises* or alteration, demolition or new construction at such premises;

(4) to any person if any benefits for such *bodily injury* are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sports activities in the policy with respect to Premises Medical Payments Coverage;

(d) to any *medical expense* for services by the *named insured*, any employee thereof or any person or organization under contract to the *named insured* to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all *medical expense* for *bodily injury* to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all *medical expense* for *bodily injury* to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the schedule as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*insured premises*" means all premises owned by or rented to the *named insured* with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy, and includes the ways immediately adjoining on land;

"*medical expense*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services, and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000195

## CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the *bodily injury* or *property damage;*

(c) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to *bodily injury* or *property damage* for which the indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the *insured* may be held liable in an action on a contract by a third party beneficiary for *bodily injury* or *property damage* arising out of a project for a public authority; but this exclusion does not apply to action by the public authority or any other person or organization engaged in the project;

(g) to *property damage* to

(1) property owned or occupied by or rented to the *insured,*

(2) property used by the *insured,* or

(3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

(h) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

(2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(j) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(k) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(m) As respects any agreement relating to construction operations, to *bodily injury* or *property damage* arising out of

(1) construction, maintenance or repair of watercraft or loading or unloading thereof, or

(2) operations within fifty feet of any railroad property affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(n) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(o) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

When stated in the schedule as applicable, the following exclusions also apply to *contractual liability* assumed by the *insured.*

This insurance does not apply:

(p) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *products hazard;*

(q) to *property damage* included within

(1) the *explosion hazard,*

(2) the *collapse hazard,* or

(3) the *underground property damage hazard.*

## II.  PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured.*

## III.  LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage,* or (3) claims made or *suits* brought on account of *bodily injury* or *property damage,* the company's liability is limited as follows:

**Coverage YB** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

**Coverage ZB** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the *named insured.*

**Coverages YB and ZB** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

HART000196

# CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

## IV. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

*"contractual liability"* means liability expressly assumed under a written contract or agreement; provided, however, that *contractual liability* shall not be construed as including liability under a warranty of the fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

*"suit"* includes an arbitration proceeding to which the *insured* is required to submit or to which the *insured* has submitted with the company's consent.

## V. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

## VI. ADDITIONAL CONDITIONS

### Arbitration

The company shall be entitled to exercise all of the *insured's* rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

### Premium

When used as a premium basis:

1. the word *"cost"* means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which *"cost"* is the basis of premium, regardless of whether any liability is assumed under such contracts by the *insured*. It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the *insured*, or others including all fees, allowances, bonuses or commissions made, paid or due. It shall not include the cost of any operations to which exclusion (m) applies.

2. the word *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



Host Liability Insurance



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No.................................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE
### MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
### OWNERS', LANDLORDS', AND TENANTS' LIABILITY INSURANCE

---

It is agreed that exclusion (h) does not apply to liability imposed upon the insured as the result of the giving or serving of alcoholic beverages at functions incidental to the named insured's business, provided the named insured is not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages, and provided further that there has been no intentional violation of any statute, regulation, or ordinance committed by or at the direction of the insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................................................
*Authorized Agent*

Form L-4191-0   Printed in U.S.A.   (N.S.)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000198

# EXHIBIT 4

COMPANY COPY

# REINSURANCE

| Filing | Annual Audit | Monthly | Participating |
|--------|--------------|---------|---------------|
| Prem. Finance | Semi-Annual | Bureau | Retro |
| Large Risk | Quarterly | Loss Control | Reinsurance |

**INSURER →** Co. Code

| | POLICY NO. | 10 | C | MLO74OW |

Previous Policy No.
10 C MLO74OW

Address (No., Street, Town, County, State, Zip Code)

Individual ☐   Partnership ☐   Corporation ☒

Joint Venture (Other) ......................

**CENTRICO INC**
**100 FAIRWAY COURT**
**NORTHVALE NJ  07647**

Policy Period ........ From   10-25-81   To   10-25-82

12:01 A.M., standard time at the address of the *named insured* as stated herein.

Audit Period: Annual, unless otherwise stated.   ☐ Semi-Annual
☐ Quarterly
☐ Monthly

Producer and Address    Producer's Code

FRED S ... D CO INC OF NY    25-2170

3. The advance premium for this policy is as stated below. Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUMMARY OF ADVANCE PREMIUMS

| COVERAGE PARTS | | ADVANCE PREMIUM |
|----------------|---|-----------------|
| Comprehensive General Liability Insurance | $ | 121,800 |
| Premises Medical Payments Insurance | $ | INCLUDED |
| Contractual Liability Insurance | $ | INCLUDED |
| Completed Operations and Products Liability Insurance | $ | |
| Owners' and Contractors' Protective Liability Insurance | $ | |
| Storekeepers' Insurance | $ | |
| Personal Injury Liability Insurance | $ | |
| Comprehensive — Plus General Liability Insurance | $ | |
| ERRORS AND OMISSIONS INSURANCE | $ | INCLUDED |
| | $ | |
| | $ | |
| Business Auto | $ | 27,000 |
| Truckers | $ | |
| Garage | $ | |

| Form Numbers of Coverage Parts and endorsements not listed on Coverage Parts forming part of Policy at issue: | TOTAL ADVANCE PREMIUM | |
|---|---|---|
| G 2240 2B   C 2014-0   C 2013-0   C 2016-0 | | $ 148,800 |

If Policy Period more than one year: Gross Premium $ ____   Net Premium $ ____

Premium is payable: On effective date of Policy $ ____   1st Anniversary $ ____   2nd Anniversary $ ____

4. Business of the *named insured* is ——————→   MFG INDUSTRIAL SEPARATORS

The company located these documents in its business records. At this time, the company does not have reason to believe these documents constitute a complete and accurate copy of the policy.

HART000199
COMPANY COPY

**Premium Installment**

🦌 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No.....10..C..ML0740W issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said Policy unless another effective date is stated herein.

Effective date.................................................. 12:01 A. M., standard time at the address of the named insured as stated herein.

121,800 GL
27,000 AUTO

It is hereby understood and agreed that the.......ORIGINAL.................................................Premium of $.................
(Insert "original" or "additional" or "return")

will BE PAYABLE IN          FOUR (4)          installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

### SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 10-25-81 | 30450 | 5018 | 1735 | | 37203 |
| 2 | 12-25-81 | 30450 | 5017 | 1732 | | 37199 |
| 3 | 2-25-82 | 30450 | 5017 | 1732 | | 37199 |
| 4 | 4-25-82 | 30450 | 5017 | 1732 | | 37199 |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| TOTALS | | 121,800 | 20,069 | 6931 | | 148,800 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-57-0  Printed in U. S. A.

HART000200

Amendment — Limits of Liability
(Single Limit)



**THE HARTFORD**

10 C MLO740W

Named Insured and Address

This endorsement forms a part of Policy No............................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...........................................................Effective hour is the
same as stated in the Declarations of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | |
|---|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE | — (Coverage Part "CO/PR") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |
| OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE | — (Coverage Part "OCP") |

---

## SCHEDULE

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| | "CGL"  "K" | 1,000<br>$        ,000 each occurrence |
| Bodily Injury Liability and Property Damage Liability | "CGL"  "K" | $1,000 ,000 aggregate — Division 1 |
| | | $        ,000 aggregate — Division 2 |
| Bodily Injury Liability and Property Damage Liability | | $        ,000 each occurrence |

**Division 1** — Applicable to damages because of **bodily injury** and **property damage** as specified in paragraph (b) in the "Limits of Liability" provision of this endorsement.

**Division 2** — Applicable to damages because of all **bodily injury** and **property damage** as stated in paragraph (c) in the "Limits of Liability" provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof is amended to read as follows:

## LIMITS OF LIABILITY

Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage**, (3) claims made or suits brought on account of **bodily injury** or **property damage** or (4) **automobiles** or **mobile equipment** to which this policy applies, the company's liability is limited as follows:

### Bodily Injury Liability and Property Damage Liability Coverage

(a)  The limit of liability stated in the Schedule of this endorsement as applicable to "each **occurrence**" is the total limit of the company's liability under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of **bodily injury**, including damages for care and loss of services, and all **property** damage as the result of any one **occurrence**; provided that, with respect to any one **occurrence** for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-4152-0  Printed in U.S.A. (NS)

HART000201

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date

Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

PREMISES MEDICAL PAYMENTS INSURANCE &

ERRORS AND OMISSIONS INSURANCE – EMPLOYEE BENEFIT PROGRAMS

PREMIUM COMPUTATION

IT IS AGREED THAT THE PREMIUM FOR COMPREHENSIVE GENERAL

LIABILITY INSURANCE SHALL BE COMPUTED AS FOLLOWS:

| CODE | TOTAL SALES | RATES PER $1,000 SALES | | ADVANCE PREMIUMS | |
|------|-------------|------|------|------|------|
| | | B.I. | P.D. | B.I. | P.D. |
| 20050 | 30,000,000 | 2.517 | 1.543 | 75,510 | 46.290 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B   Printed in U.S.A.

Countersigned by.................................................
                                              Authorized Agent

HART000202

**Business Auto Coverage Part**



**THE HARTFORD**

issued-to form a part of Policy No. _____10 C MI0740W_____ to be effective _____ at the hour stated in the policy. The Stock Insurance Company providing this insurance is shown on the Declarations Page of such policy as the "Insurer."

This Coverage Part is not binding unless countersigned by a duly authorized agent of **ours**; but if it takes effect as of the effective date of the policy of which this Coverage Part forms a part then countersignature on the Declarations Page of that policy by a duly authorized agent of **ours** is valid countersignature of this Coverage Part.

All of the provisions, conditions and other terms of this BUSINESS AUTO COVERAGE PART shall apply only as specified herein and none of the provisions, conditions and other terms of the policy of which this BUSINESS AUTO COVERAGE PART forms a part shall apply to insurance hereunder unless otherwise stated herein. Hereafter, any use of the word "policy" in this BUSINESS AUTO COVERAGE PART (or any endorsement forming a part of, changing or applicable to this BUSINESS AUTO COVERAGE PART) shall be deemed to read "BUSINESS AUTO COVERAGE PART."

## DECLARATIONS — BUSINESS AUTO COVERAGE PART

### ITEM ONE — NAMED INSURED AND ADDRESS

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE NJ   07647

This BUSINESS AUTO COVERAGE PART is completed by:

(a) this Declarations Form C-2013,
           Form C-2014,
           Form C-2015,
           Form C-2016,

(b) its provisions and conditions printed in Form CA00010180

(c) any Endorsements issued to form a part of it.

Form Numbers of Endorsement forming part of this BUSINESS AUTO COVERAGE PART on the above effective date:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by _____
                                          Authorized Agent

Includes copyrighted material of Insurance Services Office, with its permission. Copyright Insurance Services Office, 1977, 1979

(Continued on Form C-2014)

Form C-2014

## DECLARATIONS —
## BUSINESS AUTO POLICY (Continued)     THE HARTFORD     Policy No. 10 C ML0740W
ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols from ITEM THREE next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from ITEM THREE shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS (Absence of a limit entry means that the limit entry shown, if any, in item four applies instead) | ESTIMATED PREMIUM |
|---|---|---|---|
| AA = LIABILITY INSURANCE | 1 | $ 750 ,000 each accident    as per premium | $ 20069 |
| AB = LIABILITY INSURANCE | | $ ,000 Bodily Injury each person   computation endorsement $ ,000 Bodily Injury each accident $ ,000 Property Damage each accident | $ |
| AC = PERSONAL INJURY PROTECTION (or equivalent No-Fault coverage) | 5 | Separately stated in each Personal Injury Protection Endorsement minus $ NO deductible | $ INCL |
| AD = ADDED PERSONAL INJURY PROTECTION (or equivalent added No-Fault coverage) | | Separately stated in each Added Personal Injury Protection Endorsement | $ |
| AE = PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in the Property Protection Insurance Endorsement minus $ deductible for each accident | $ |
| AF = AUTO MEDICAL PAYMENTS INSURANCE | 3 | $ for Bodily Injury for each Insured   as per sched | $ INCL |
| AG = UNINSURED MOTORISTS INSURANCE | | $ ,000 each accident | $ |
| AH = UNINSURED MOTORISTS INSURANCE | 6 | Separately stated in the Split Uninsured Motorists Limits Endorsement | $ INCL |
| PHYSICAL DAMAGE INSURANCE | | | |
| AJ = COMPREHENSIVE COVERAGE | 2 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered auto for all loss except fire or lightning | $ 6931 |
| AK = SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus $25 Deductible for each covered auto for loss covered by mischief or vandalism | $ |
| AL = FIRE COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AM = FIRE AND THEFT COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AO = FIRE, THEFT AND WINDSTORM COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AP = LIMITED SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AR = COLLISION COVERAGE | 2 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered auto | $ INCL |
| AT = TOWING AND LABOR (Not available in California) | | $25 for each disablement of a private passenger auto | $ |
| | | Endorsement Premium (Not included in above Coverage premiums) | $ |
| | | ESTIMATED TOTAL PREMIUM | $ 27,000 |

The estimated total premium for this policy is based on the exposures you told us you would have when this policy began. We will compute your final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and you will be billed for the balance, if any. If the estimated total premium exceeds the final premium due you will get a refund. To determine your final premium due, we may examine, and audit your records at any time during the period of coverage and up to three years after. If this policy is issued for more than one year the premium will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, Inc. 1977, 1978

At this time, the company documents constitute a complete and accurate copy of the policy.

Form C-2014-0   Printed in U.S.A.   (NS)

HART000204   Form C-2015)

PM

**Form C-2016**
**DECLARATIONS—**
**BUSINESS AUTO POLICY (Continued)**



**THE HARTFORD**

Policy No. 1O C M1O74OW

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type. City or Town and State where the covered **auto** will be principally garaged | | | | Vehicle Identification No. (VIN) | | | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation L = Local, I' = Intermediate, LO = Long Distance Use. S = Service, R = Retail, C = Commercial, Other (Describe) | | | |
| 1 | Garaged: | | AS PER PREMIUM COMPUTATION ENDORSEMENT | | | | | |
| | | | | | Radius of Operation: | | | |
| | | | | | Use: | | | |
| 2 | Garaged: | | | | | | | |
| | | | | | Radius of Operation: | | | |
| | | | | | Use: | | | |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Limit each Accident Cov. AG | Physical Damage (Non-Collision) Coverage * | | Collision Cov. AR | | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Deductible | Dollar Limit | Deductible | Dollar Limit | |
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov. AG ☐ AH ☐ | Premium | Rate | Premium | Rate | Cov. AT |
| 1 | | | | | Coverage | | | | |
| | $ | $ | $ | $ | $ | $ | $ | $ | |
| | $ | $ | $ AS | $ PER | $ PREMIUM | COMPUTATION | ENDORSEMENT | $ | |
| 2 | | | | | Coverage | | | | |
| | $ | $ | $ | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | $ | $ | $ | |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered **Auto.**

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage **loss** is payable to **you** and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

## ITEM FIVE — SCHEDULE OF HIRED AUTOS (Coverages and Premiums)

**LIABILITY INSURANCE — RATING BASIS IS COST OF HIRE.** Cost of hire means the total amount you incur for the hire of **autos** you don't own (not including **autos** **you** borrow or rent from **your** employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| HEADQUARTERS STATE | CLASSIFICATION CODE | ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | ESTIMATED PREMIUM |
|---|---|---|---|---|
| NEW JERSEY | 6619 | $ IF ANY | $ | $ AS PER |
| T-10 | | $ | $ | $ |

PREMIUM COMPUTATION
ENDORSEMENT

## ITEM SIX — SCHEDULE FOR NON-OWNERSHIP LIABILITY

**LIABILITY INSURANCE** (Includes **autos** owned by **your** employees or members of their households but only while used in **your** business or **your** personal affairs)

| — RATING BASIS IS NUMBER OF EMPLOYEES | | | |
|---|---|---|---|
| ESTIMATED NUMBER OF EMPLOYEES | CLASSIFICATION CODE | HEADQUARTERS STATE | ESTIMATED PREMIUM |
| 300 | 6603 | NJ T-010 | $ AS PER PREMIUM COMPUTATION ENDORSEMENT |

The company located these documents in its business records and believes that the company does not have any reason to doubt that this is a complete and accurate copy of the policy.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979

HART000205

PM



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### UNINSURED MOTORISTS INSURANCE
#### (NEW JERSEY)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No.  10 C M10740W |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

In consideration of the payment of premium and subject to all of the provisions of this endorsement and to the applicable provisions of the policy, the company agrees with the named insured as follows:

### Schedule

**Designated Insured:**

Limits of Liability:  Bodily Injury    $15,000 each person
$30,000 each accident

Property Damage  $ 5,000 each accident

Advance Premiums $  INCL

Description of Insured Highway Vehicles:

Any highway vehicle registered or principally garaged in New Jersey which is:

(check appropriate box)

[x]  An owned automobile under Part I of the policy

[ ]  A private passenger automobile owned by the named insured

[ ]  Owned by the named insured

[ ]  Designated in the declarations of the policy and any highway vehicle of the same type ownership of which is acquired during the policy period by the named insured as a replacement therefor

[ ]  Any mobile equipment owned by the named insured

[ ]

### I.  COVERAGE UNINSURED MOTORISTS

(Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally

entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

#### Exclusions

This insurance does not apply:

(a)  to bodily injury or property damage with respect to which the insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b)  to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or his relative while occupying or if struck by a highway vehicle owned by a designated insured or his relative;

Copyright, Insurance Services Office, 1977

The document is a business record and is not a true and complete or accurate copy of the policy.

**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C M10740W

This endorsement forms a part of the policy as numbered above,
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject to the following additional exclusions:

The insurance does not apply:

1.  to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;

2.  to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

## SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| 3400 THIRD AVE. FOSTER CITY, CA. | SAN MATEO BAY BUILDING ASSOCIATES | INCLUDED | |
| 1270 MARKET ST. BENSENVILLE, IL. AND ANY OTHER PREMISES UPON WHICH THE NAMED INSURED IS REQUIRED IN A WRIT-TEN AGREEMENT TO PROVIDE INSURANCE ON BEHALF OF THE LESSOR & OF WHICH THE COMPANY IS NOTIFIED WITHIN THIR-TY (30) DAYS OF THE EXECUTION OF SAID WRITTEN AGREEMENT. | JOHN G. TWIST CO. | | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ..............................................................

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-5025-0   Printed in U.S.A.   (ISO: GL 20 11 07 66)

HART000207

**BROAD FORM PROPERTY**
**DAMAGE ENDORSEMENT**
(Including Completed Operations)

**THE HARTFORD**

10 C ML0740W

Named Insured and Address

This endorsement forms a part of Policy No................................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .......................................................Effective hour is the
same as stated in the Declarations of the Policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

**Classification:**

It is agreed that the insurance for **property damage** liability applies, subject to the following additional provisions:

A.   The exclusions relating to **property damage** to (1) property owned, occupied or used by or rented to the **insured** or in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control and (2) work performed by or on behalf of the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (y) and (z):

(y)   to **property damage**

(1)   to property owned or occupied by or rented to the **insured**, or, except with respect to the use of **elevators**, to property held by the **insured** for sale or entrusted to the **insured** for storage or safekeeping,

(2)   except with respect to liability under a written sidetrack agreement or the use of **elevators** to

(a)   property while on premises owned by or rented to the **insured** for the purpose of having operations performed on such property by or on behalf of the **insured**,

(b)   tools or equipment while being used by the **insured** in performing his operations,

(c)   property in the custody of the **insured** which is to be installed, erected or used in construction by the **insured**,

(d)   that particular part of any property, not on premises owned by or rented to the **insured**,

(i)   upon which operations are being performed by or on behalf of the **insured** at the time of the **property damage** arising out of such operations, or

(ii)   out of which any **property damage** arises, or

(iii)   the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the **insured**;

(z)   with respect to the **completed operations hazard** and with respect to any classification stated above as "including completed operations", to **property damage** to work performed by the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

B.   The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **insured**, such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by.................................................

Authorized Agent

HART000208

Form L-3252-2   Printed in U.S.A.   (NS)

**Supplementary Coverage Endorsement
Personal Injury and Additional Insured
(Employees)**

**THE HARTFORD**

10 C MLO74OW

Named Insured and Address

This endorsement forms a part of Policy No.....................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................. 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE

Insured's Participation   NIL   %

**EXCLUSION (C) IS DELETED**

It is agreed that:

I.   The insurance afforded under the Coverage for Bodily Injury Liability is extended to apply to damages because of *personal injury*, subject to the following additional provisions:

1.   This extended insurance does not apply:

(a)  to liability for *personal injury* assumed by the *insured* under any contract or agreement;

(b)  to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

(c)  to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured*;

(d)  to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

(e)  to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

(f)  to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

2.   When used in reference to this insurance:

"*personal injury*" means injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory*;

"*personal injury offense*" means (a) false arrest, detention or imprisonment, or malicious prosecution; (b) libel, slander, defamation, disparagement or violation of an individual's right of privacy; or (c) wrongful entry or eviction or other invasion of the right of private occupancy.

3.   The "Limits of Liability" provision is amended by adding the following thereto:

The total liability of the company for all damages because of all *personal injury* to which this insurance applies shall not exceed the amount stated in the Schedule as the limit of *bodily injury* liability and as applicable to "each occurrence".

With respect to any claim because of *personal injury*, the company shall not be liable for a greater proportion of any loss than the difference between the participation percentage, if any, stated above and one hundred percent, and the balance of the loss shall be borne by the *insured*: provided the company may pay the *insured's* portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the *named insured* shall promptly reimburse the company therefor.

II.  The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

(1)  to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

(2)  to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company: provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located that if this endorsement takes effect ... e. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3991-0   Printed in U.S.A.   (NS)

Countersigned by...........................................

HART000209

Authorized Agent

# Comprehensive General Liability Insurance
# Coverage Part

10 C ML0740W

**THE HARTFORD**

This Coverage Part forms a part of Policy No. .................................................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective ..................................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to....................................................................................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability | |
|---|---|---|---|
| A — Bodily Injury Liability | $ INCLUDED | $ AS PER | ,000 each occurrence |
| | | $ | ,000 aggregate |
| B — Property Damage Liability | $ INCLUDED | $ A 4152-0,000 each occurrence | |
| | | $ | ,000 aggregate |

| Rating Classifications<br>Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | B.I. | P.D. |
| (a) Premises — Operations | | (a) Area<br>(b) Frontage<br>(c) Remuneration<br>(d) Receipts | (a) Per 100 Sq. Ft. of Area<br>(b) Per Linear Foot<br>(c) Per $100 of Remun.<br>(d) Per $100 of Receipts | | | |
| (b) Escalators | | (e) Landings | (e) Per Landing | | | |
| (c) Independent Contractors | | (f) Cost | (f) Per $100 of Cost | | | |
| (d) Completed Operations | | (g) Receipts | (g) Per $1,000 of Receipts | | | |
| (e) Products | | (h) Sales | (h) Per $1,000 of Sales | | | |

A)   AS PER PREMIUM COMPUTATION ENDORSEMENT

C) "        "        "        "

D) "        "        "        "

E) "        "        "        "

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS $ | INCLUDED $ |
|---|---|---|
| G 2240-2B (LIST) | | |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $ ............   1st Anniversary $ ............   2nd Anniversary $ ............

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company provided that this Coverage Part, if in effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by....................................................................

The company located these documents in its accurate copy of the policy

HART000...   Authorized Agent



**THE HARTFORD**

## PREMISES MEDICAL PAYMENTS INSURANCE
## COVERAGE PART

This Coverage Part forms a part of Policy No. **10 C ML0740W** ............................ issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

---

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective ........................................... (at the hour stated in the policy) and forms a part of the above designated policy issued to

---

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability | |
|---|---|---|---|
| E — Premises Medical Payments | $ INCLUDED | $ 1,000 | each person |
| | | $ 10,000 | each accident |

| Description of Hazards | Advance Premiums |
|---|---|
| **(a) Premises and Operations** | |
| AS PER PREMIUM COMPUTATION ENDORSEMENT | |
| **(b) Escalators** | |
| **(c) Sports Activities** | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUM | |
|---|---|---|
| G 2240-3B (LIST) | $ | INCLUDED |

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $ ............    1st Anniversary $ ............    2nd Anniversary $ ............

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless counter-signed by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, a counter-signature of this Coverage Part shall not be required; and the counter-signature by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by ..................................................

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form L-3505-0**   Printed in U.S.A.   (ISO: GL 00 13 01 73)                **MP-1**

HART000211

# Contractual Liability Insurance
## Coverage Part (Blanket Coverage)

**THE HARTFORD**

### 1O C M1O74OW

This Coverage Part forms a part of Policy No. .......................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, an d takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective.............................................(at the hour stated in the policy) and forms a part of the above designated policy issued to

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability | |
|---|---|---|---|
| YB — Contractual Bodily Injury Liability | $ INCLUDED | $ AS PER | ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ INCLUDED | $ AS PER / $ A 4152-0 | ,000 each occurrence / ,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B. I. | P. D. | B. I. | P. D. |
| ALL WRITTEN AGREEMENTS | | (a) Cost (b) Sales AS PER PREMIUM COMPUTATION ENDORSEMENT | (a) Per $100 of Cost (b) Per $1,000 of Sales | | | |

Form Numbers of Endorsements forming part of this Coverage Part at issue:

G 2240-3B      (LIST)

| | TOTAL ADVANCE PREMIUMS $ | INCLUDED $ |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $       1st Anniversary $       2nd Anniversary $

The following exclusions also apply:
☐ Exclusion (p) — Products and Completed Operations    ☐ Exclusion (q)—x, c & u

---

**I.    COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

**COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

Coverage YB. *bodily injury* or

Coverage ZB. *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

(ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

---

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof. This Coverage Part shall not be binding unless counter-signed by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, counter-signature on the declaration page of said policy by a duly authorized agent of the company shall constitute valid counter-signature of this Coverage Part.

Countersigned by.......................................................
                                              *Authorized Agent*

The company located these documents in its files and certifies that these documents constitute a complete and accurate copy of the policy.

Form L-3525-0   Printed in U.S.A.   (NS)                **KB-1**

HART000212

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date | Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

ASSAULT & BATTERY

IT IS AGREED THAT THE DEFINITION OF OCCURRENCE IS AMENDED BY ADDING THERETO THE FOLLOWING:

"BODILY INJURY OR PROPERTY DAMAGE CAUSED FOR

THE PURPOSE OF PROTECTING PERSONS OR PROPERTY

SHALL BE DEEMED NEITHER EXPECTED NOR INTENDED

FROM THE STANDPOINT OF THE INSURED."

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B    Printed in U.S.A.

Countersigned by.................................................................

Authorized Agent

HART000243



**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

INCIDENTAL MALPRACTICE

IT IS AGREED THAT:

1. THE DEFINITION OF "BODILY INJURY" IS AMENDED TO INCLUDE INJURY ARISING OUT OF THE RENDERING OF OR FAILURE TO RENDER PROFESSIONAL SERVICES BY ANY PHYSICIAN, DENTIST OR NURSE WHILE EMPLOYED BY THE NAMED INSURED TO PROVIDE SUCH SERVICES.

2. EXCLUSION (J) DOES NOT APPLY TO INJURY TO THE EMOTIONS OR REPUTATIONS OF A PERSON ARISING OUT OF THE RENDERING OF SUCH SERVICES.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by.............................................................

*Authorized Agent*

Form G-2240-3 B   Printed in U.S.A.

HART000214

PM



**THE HARTFORD**

Named Insured and Address

Policy Number
10°C ML0740W

This endorsement forms a part of the policy as numbered above, Issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date          Effective hour is the same as stated
                        in the Declarations of the policy.

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

PREMISES MEDICAL PAYMENTS INSURANCE

**KNOWLEDGE AND NOTICE OF OCCURRENCE.**

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY AN AGENT, SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT CONSTITUTE KNOWLEDGE TO THE INSURED UNLESS AN EXECUTIVE OFFICER OF THE, NAMED INSURED CORPORATION OR OTHER PERSONS EMPLOYED BY IT IN A MANAGERIAL CAPACITY SHALL HAVE RECEIVED SUCH NOTICE.

IT IS AGREED THAT IF THE INSURED REPORTS AN OCCURRENCE TO ITS WORKMEN'S COMPENSATION CARRIER WHICH DEVELOPS INTO A LIABILITY CLAIM FAILURE TO REPORT SUCH OCCURRENCE TO THE COMPANY AT THE TIME OF OCCURRENCE SHALL NOT BE DEEMED IN VIOLATION OF CONDITION 4 " INSURED'S" DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company: provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

does not certify that these documents constitute a complete and accurate copy of the policy

Form G-2240-3 B  Printed in U.S.A.                    Countersigned by.................HART000215.............

PM

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company, designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date

Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

PREMISES MEDICAL PAYMENTS INSURANCE

NOTICE OF CANCELLATION

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THE
POLICY BY THE COMPANY FOR ANY REASON OTHER THAN NON-
PAYMENT OF PREMIUM, THIRTY (30) DAYS PRIOR WRITTEN NO-
TICE THEREOF WILL BE FURNISHED TO THE NAMED INSURED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form G-2240-3 B    Printed in U.S.A.

Countersigned by.................................................

HART0002146    Agent



**THE HARTFORD**

Named Insured and Address

| Policy Number |
| --- |
| 1O C ML0740W |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
| --- | --- |

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

PREMISES MEDICAL PAYMENTS INSURANCE

<u>UNINTENTIONAL ERRORS OR OMISSIONS</u>

IT IS AGREED THAT FAILURE OF THE INSURED TO DISCLOSE ALL

HAZARDS EXISTING AS OF THE INCEPTION DATE OF THE POLICY

SHALL NOT PREJUDICE THE INSURED WITH RESPECT TO THE COVE-

RAGE AFFORDED BY THIS POLICY, PROVIDED SUCH FAILURE OR

ANY OMISSION IS NOT INTENTIONAL.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

by a duly authorized agent of the company shall constitute business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B    Printed in U.S.A.

Countersigned by.................................................

*Authorized Agent*

# ERRORS AND OMISSIONS INSURANCE—EMPLOYEE BENEFIT PROGRAMS

Named Insured and Address

This endorsement forms a part of Policy No. **10 C M10740W**
of THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date...................................   Effective hour is the same as stated in the Declarations of the policy.

## SCHEDULE

| Limits of Liability | | Estimated Advance Premium |
|---|---|---|
| $ 25,000 | each claim | |
| $ 75,000 | aggregate | $ INCLUDED |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

## INSURING AGREEMENTS

**I. COVERAGE.** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

**II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** As respects such insurance as is afforded by the terms of this endorsement, the company shall:
(a) defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

**III. DEFINITIONS.**
(a) "Insured" — The unqualified word "Insured," wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
(b) "Employee Benefit Programs" — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
(c) "Administration" — The unqualified word "Administration," wherever used, shall mean:
(1) giving counsel to employees with respect to Employee Benefit Programs;
(2) interpreting Employee Benefit Programs;
(3) handling of records in connection with Employee Benefit Programs;
(4) effecting enrollment of employees under Employee Benefit Programs;
provided all such acts are authorized by the Named Insured.

**IV. ENDORSEMENT PERIOD, TERRITORY.** This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

## EXCLUSIONS

This endorsement does not apply:
(a) to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b) to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
(c) to any claim for failure of performance of contract by an insurer;
(d) to any claim based upon:
(1) failure of stock to perform as represented by an insured;
(2) advice given by an insured to an employee to participate or not to participate in stock subscription plans.

## CONDITIONS

**1. Policy Conditions.** All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

**2. Limits of Liability**
(a) Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
(b) $1,000, shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
(c) The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. If the company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the company.
(d) The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

**3. Premium.** The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | | Estimated Premium |
|---|---|---|---|
| 300 | ............First  5,000 | | $............... |
| | ............Next   5,000 | | $............... |
| | ............Over  10,000 | | $............... |
| | | Total $ ............... | |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its files and produces them as they were kept. The company does not certify that these documents constitute a complete and accurate copy of the policy.

THE HARTFORD
INSURANCE GROUP

Countersigned by ...........................

HART000218

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
| --- | --- |

Endt. No.

LIST OF ENDORSEMENTS AND COVERAGE PARTS FORMING PART OF POLICY AT ISSUE:

| | |
| --- | --- |
| CA 9921 01-78 (N/A IN NY) | L 2853-1 |
| CA 2230 (NJ) 1-78 | L 3025-0 |
| CA 2X14 (N.J.) 1-78 | L 3252-2 |
| CA 0237 1-78 | L 3243-0 |
| L 4128-0 | L 3503-1 |
| C 2013-0 | L 3505-0 |
| C 2014-0 | L 3523-0 |
| C 2016-0 | L 3991-0 |
| G 1760-8 | L 4152-0 |
| CA 0224 1-78 | L 4191-0 |

G 2240-3B Assault & Battery

G 2240 3B INCIDENTAL MALPRACTICE

G 2240- 3B KNOWLEDGE & NOTICE OF OCCURRENCE

G 2240-3B NOTICE OF CANCELLATION

G 2240-3B UNINTENTIONAL ERRORS

AL 57-0

G 2240-3B PREMIUM COMPUTATION

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B  Printed in U.S.A.

Countersigned by......................................................
Authorized Agent

HART000219

11-19-81  PM
FRED S JAMES AND CO INC OF NY 252170

**THE HARTFORD**

Named Insured and Address

Policy Number

10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE NJ  07647

| Effective Date | Effective hour is the same as stated |
|---|---|
| 10-25-81 | in the Declarations of the policy. |

Endt. No.

SEE SCHEDULE ATTACHED

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

does not certify that these documents constitute
a complete and accurate copy of the policy.

Form G-2240-3 B  Printed in U.S.A.

Countersigned by.................. HART000220

**PM**

**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 C ML0740W**

This endorsement forms a part of the policy as numbered above,
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

---

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject to the following additional exclusions:

The insurance does not apply:

1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums — Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| 3400 THIRD AVE. FOSTER CITY, CA. | SAN MATEO BAY BUILDING ASSOCIATES | INCLUDED | |
| 1270 MARKET ST. BENSENVILLE, IL. AND ANY OTHER PREMISES UPON WHICH THE NAMED INSURED IS REQUIRED IN A WRIT-TEN AGREEMENT TO PROVIDE INSURANCE ON BEHALF OF THE LESSOR & OF WHICH THE COMPANY IS NOTIFIED WITHIN THIR-TY (30) DAYS OF THE EXECUTION OF SAID WRITTEN AGREEMENT. | JOHN G. TWIST CO. | | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ........................................................................................
*Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

**Form L-3025-0**   Printed in U.S.A.   (ISO: GL 20 11 07 66)

HART000221

# CASUALTY INSURANCE POLICY

**THE HARTFORD**

GENERAL POLICY PROVISIONS    Form 8117

The member company of **THE HARTFORD INSURANCE GROUP**
designated on the Declarations page as the Insurer (a stock insurance
company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a
part hereof and subject to all of the terms of this policy, agrees with the *named insured* as follows:

## COVERAGE

Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all
the terms of the policy having reference thereto.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of
liability:

(a) all expenses incurred by the company, all costs taxed against
the *insured* in any suit defended by the company and all interest
on the entire amount of any judgment therein which accrues
after entry of the judgment and before the company has paid
or tendered or deposited in court that part of the judgment
which does not exceed the limit of the company's liability
thereon;

(b) premiums on appeal bonds required in any such suit, premiums
on bonds to release attachments in any such suit for an amount
not in excess of the applicable limit of liability of this policy,

and the cost of bail bonds required of the *insured* because of
accident or traffic law violation arising out of the use of any
vehicle to which this policy applies, not to exceed \$250 per bail
bond, but the company shall have no obligation to apply for or
furnish any such bonds;

(c) expenses incurred by the *insured* for first aid to others at the
time of an accident, for *bodily injury* to which this policy applies;

(d) reasonable expenses incurred by the *insured* at the company's
request in assisting the company in the investigation or defense
of any claim or suit, including actual loss of earnings not to
exceed \$25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part
hereof):

*"automobile"* means a land motor vehicle, trailer or semi-trailer
designed for travel on public roads (including any machinery or
apparatus attached thereto), but does not include *mobile equipment;*

*"bodily injury"* means bodily injury, sickness or disease sustained
by any person which occurs during the policy period, including death
at any time resulting therefrom;

*"collapse hazard"* includes "structural property damage" as
defined herein and *property damage* to any other property at any
time resulting therefrom. "Structural property damage" means the
collapse of or structural injury to any building or structure due to
(1) grading of land, excavating, borrowing, filling, back-filling,
tunnelling, pile driving, cofferdam work or caisson work or (2)
moving, shoring, underpinning, raising or demolition of any building
or structure or removal or rebuilding of any structural support
thereof. The *collapse hazard* does not include *property damage* (1)
arising out of operations performed by the *named insured* by in-
dependent contractors, or (2) included within the *completed operations
hazard* or the *underground property damage hazard*, or (3) for which
liability is assumed by the *insured* under an *incidental contract;*

*"completed operations hazard"* includes *bodily injury* and
*property damage* arising out of operations or reliance upon a repre-
sentation or warranty made at any time with respect thereto, but
only if the *bodily injury* or *property damage* occurs after such opera-
tions have been completed or abandoned and occurs away from
premises owned by or rented to the *named insured*. "Operations"
include materials, parts or equipment furnished in connection there-
with. Operations shall be deemed completed at the earliest of the
following times:

(1) when all operations to be performed by or on behalf of the
*named insured* under the contract have been completed,

(2) when all operations to be performed by or on behalf of the
*named insured* at the site of the operations have been completed,
or

(3) when that portion of the work out of which the injury or damage
arises has been put to its intended use by any person or organiza-
tion other than another contractor or subcontractor engaged in
performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance
work, or correction, repair or replacement because of any defect or
deficiency, but which are otherwise complete, shall be deemed
completed.

The Hartford records this Attorney General company by
business records, Attorney General company by
document records Attorney General company by
a complete and accurate copy of the policy.

The *completed operations hazard* does not include *bodily injury* or *property damage* arising out of

(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

**"elevator"** means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an *automobile* servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

**"explosion hazard"** includes *property damage* arising out of blasting or explosion. The *explosion hazard* does not include *property damage* (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the *named insured* by independent contractors, or (3) included within the *completed operations hazard* or the *underground property damage hazard*, or (4) for which liability is assumed by the *insured* under an *incidental contract;*

**"incidental contract"** means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) *elevator* maintenance agreement;

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

**"mobile equipment"** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the *named insured*, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

**"named insured's products"** means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured;*

**"policy territory"** means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the *bodily injury* or *property damage* does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of *bodily injury* or *property damage* arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

**"products hazard"** includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others;

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period;

**"underground property damage hazard"** includes underground *property damage* as defined herein and *property damage* to any other property at any time resulting therefrom. "Underground property damage" means *property damage* to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The *underground property damage hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard,* or (3) for which liability is assumed by the *insured* under an *incidental contract.*

## DESCRIPTION OF TERMS USED AS PREMIUM BASES

When used as a premium basis for:

(a) Comprehensive General Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance, **"admissions"** means the total number of persons, other than employees of the *named insured*, admitted to the event covered by the insurance or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(b) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance; Owners' and Contractors' Protective Liability Insurance, **"cost"** means the total cost to the *named insured* with respect to operations performed for the *named insured* during the policy period by independent contractors of all work let or sub-let in connection with each specific project; including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(c) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance or Completed Operations and Products Liability Insurance, **"receipts"** means the gross amount of money charged by the *named insured* for such operations during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

(d) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance which includes coverage for structural alterations, new construction and demolition operations, **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the *named insured*, other than chauffeurs (except operators of *mobile equipment*) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

The business does not constitute a complete and accurate copy of the policy.

HART000223

Case 2:20-cv-10974-BRM-SDA Document 63-33 Filed 11/18/22 Page 337 of 612   PageID: 5757

(e) Comprehensive General Liability Insurance and Completed Operations and Products Liability Insurance, *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division;

(f) Contractual Liability Insurance, *"cost"* means the total cost to any indemnitee, with respect to any contract which is insured, of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or the subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(g) Garage Insurance, *"remuneration"* means (a) the entire remuneration earned during the policy period by each Class A employee and each Class C employee of the *named insured*, subject to an average weekly maximum of $100, and (b) the remuneration of each Class B person at a fixed amount of $2,000 per annum with respect to Dealer Risks (Hazard 1) or $5,200 per annum with respect to Non-Dealer Risks (Hazard 2)

*"Class A"* means all clerical office employees

*"Class B"* means all proprietors and officers active in the business, and inactive proprietors or officers (other than an inactive proprietor or officer who is a spouse of an active proprietor or officer) who customarily drive an *automobile*

... managers and Products Liability Insurance, *"sales"* means ... managers, service managers and chauffeurs

*"Class C"* means all other employees;

(h) Comprehensive Automobile Liability Insurance,

(1) *"cost of hire"* means the amount incurred for (a) the hire of *automobiles*, including the entire remuneration of each employee of the *named insured* engaged in the operation of such *automobiles* subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of *"cost of hire"* shall be 5% of the applicable *hired automobile* rates, provided the owner of such *hired automobile* has purchased *automobile* Bodily Injury Liability and Property Damage Liability insurance covering the interest of the *named insured* on a direct primary basis as respects such *automobile* and submits evidence of such insurance to the *named insured;*

(2) *"Class 1 persons"* means the following persons, provided their usual duties in the business of the *named insured* include the use of *non-owned automobiles:* (a) all employees, including officers, of the *named insured* compensated for the use of such *automobiles* by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the *named insured;*

(3) *"Class 2 employees"* means all employees, including officers, of the *named insured*, not included in Class 1 persons.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMERS COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to *bodily injury* or *property damage*

(1) with respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the *insured* is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

C. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material*, if

(1) the *nuclear material* (a) is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured* or (b) has been discharged or dispersed therefrom;

(2) the *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

(3) the *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear*

*facility*, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

II. As used in this exclusion:

*"hazardous properties"* include radioactive, toxic or explosive properties;

*"nuclear material"* means *source material*, *special nuclear material* or *byproduct material;*

*"source material"*, *"special nuclear material"*, and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"waste"* means any waste material (1) containing *byproduct material* and (2) resulting from the operation by any person or organization of any *nuclear facility* included within the definition of *nuclear facility* under paragraph (a) or (b) thereof;

*"nuclear facility"* means

(a) any *nuclear reactor,*

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing *spent fuel*, or (3) handling, processing or packaging *waste,*

(c) any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste,*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"property damage"* includes all forms of radioactive contamination of property.

The ... business ... does ... a complete and accurate copy of the policy.

Form 8117

3

HART000224

Case 2:20-cv-09741-BRM-SDA   Document 63-33   Filed 11/18/22   Page 338 of 612 PageID: 37600

## CONDITIONS

**1. Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured*, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the *named insured*.

The *named insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

**2. Inspection and Audit** The company shall be permitted but not obligated to inspect the *named insured's* property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *named insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the *named insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for *bodily injury* liability or for *property damage* liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**4. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

**5. Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the *insured* to determine the *insured's* liability, nor shall the company be impleaded by the *insured* or his legal representative. Bankruptcy or insolvency of the *insured* or of the *insured's* estate shall not relieve the company of any of its obligations hereunder.

**6. Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights.

**8. Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

**9. Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the *named insured* shall die, such insurance as is afforded by this policy shall apply (1) to the *named insured's* legal representative, as the *named insured*, but only while acting within the scope of his duties as such, and (2) with respect to the property of the *named insured*, to the person having proper temporary custody thereof, as *insured*, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

**11. Cancellation** This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing.

If the *named insured* cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12. Declarations** By acceptance of this policy, the *named insured* agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its President and a Secretary, but the same shall not be binding unless countersigned on the declarations page by a duly authorized agent of the company.

Michael S. Wilder, *Secretary*

Donald R. Frahm, *President*

This document is being produced for the United States District Court, District of New Jersey, Trenton Vicinage, from Hartford's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of its records.

HART000225



CA 02 24
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN POLICY — CANCELLATION

A. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

1. If we cancel the policy we will mail notice to any lienholder shown in the policy.

2. If we cancel for any reason other than nonpayment of premium we will mail you and any lienholder shown in the policy at least 30 days notice.

B. The following Condition is added:

**NON-RENEWAL**

1. If we decide not to renew or continue this policy we will mail you and any lienholder shown in this policy notice at least 30 days before the end of the policy period.

2. If we fail to mail proper notice of non-renewal and you have failed to pay any required premium when due this policy will terminate at the end of the current policy period.

3. Any notice of non-renewal will be mailed to your last known address. However, we may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000226



CA 22 30
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
## (NEW JERSEY)

This endorsement provides coverage as required under the New Jersey Automobile Reoaration Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in **bold face**, other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions"**.

The Company agrees with the **named insured**, subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I

### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay personal injury protection benefits consisting of

(a)  **medical expense benefits,**

(b)  **income continuation benefits,**

(c)  **essential services benefits,**

(d)  **survivor benefits,** and

(e)  **funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person,** caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

### Exclusions

The insurance under this endorsement does not apply:

(a)  to **bodily injury** to a person whose conduct contributed to the injury in any of the following ways:

    (1)  while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

    (2)  while acting with specific intent to cause injury or damage to himself or others;

(b)  to **bodily injury** to the named insured or any relative of the named insured sustained while occupying, using or entering into or alighting from a **private passenger automobile** which is not an **insured automobile** under this policy, if he is required to maintain automobile liability insurance coverage with respect to the automobile under the New Jersey Automobile Reparation Reform Act;

(c)  to **bodily injury** to any person, other than the **named insured** or a **relative** of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey;

(d)  to **bodily injury** arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

(e)  to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(f)  to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

### Definitions

When used in reference to this insurance:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"eligible injured person"** means

(a)  the **named insured** or any **relative** of the **named insured**, if the **named insured** or **relative** sustains **bodily injury**

    (1)  while occupying, using, entering into or alighting from a **private passenger automobile**, or

    (2)  while a **pedestrian**, caused by a **private passenger automobile** or as a result of being struck by an object propelled by or from such an automobile; or

(b)  any other person who sustains **bodily injury**

    (1)  while, with the permission of the **named insured**, occupying, using, entering into or alighting from the **insured automobile**, or

    (2)  while a **pedestrian**, caused by the **insured automobile** or as a result of being struck by an object propelled by or from the **insured automobile**;

**"essential services benefits"** means an amount not exceeding a limit of $12.00 per day and a total limit of $4,380 payable to an **eligible injured person** as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his lifetime and which he would ordinarily have performed not for **income** but for the care and maintenance of himself and his **relatives**;

**"funeral expense benefits"** means an amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred;

**"income"** means salary, wages, tips, commissions, fees and other earnings derived from work or employment;

**"income continuation benefits"** means an amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an **income producer** during his lifetime, as a result of **bodily injury disability;**

The company has located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000227

"income producer" means a person who, at the time of the accident, was in an occupational status, earning or producing income;

"insured automobile" means an automobile with respect to which the named insured is required to maintain automobile liability insurance coverage under the New Jersey Automobile Reparation Reform Act, to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged;

"medical expense benefits" means all reasonable expenses incurred for medical, surgical and dental treatment, professional nursing, hospital and rehabilitation services, x-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses incurred for treatment prescribed by persons licensed to practice medicine, surgery, psychology or chiropractic, or for any non-medical remedial treatment rendered in accordance with a recognized religious method of healing;

"named insured" means the person or organization named in the insured in the declarations. If the insured automobile is owned by a farm family co-partnership or corporation, the term "named insured" also includes the head of the household of each family designated in the policy as having a working interest in the farm;

"pedestrian" means any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks and includes any person who is entering into or alighting from such a vehicle;

"private passenger automobile" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) a private passenger or station wagon type automobile,

(2) a pick-up or panel truck or delivery sedan, or

(3) a utility automobile designed for personal use as a camper or motor home or for family recreational purposes; but

a private passenger automobile does not include a motorcycle an automobile used as a public or livery conveyance for passengers, a pick-up or panel truck, delivery sedan or utility automobile customarily used for business, occupational or professional purposes other than farming or ranching or a utility automobile customarily used for the transportation of passengers other than members of the user's family or their guests;

"relative" means a person related to the named insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the named insured;

"survivor benefits" means the amount or amounts payable in the event of the death of an eligible injured person as determined in subdivision (1) or (2) hereof, as appropriate:

(1) if the eligible injured person was an income producer at the time of the accident, an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of income resulting from his injury prior to his death;

(2) if the eligible injured person ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount not to exceed the difference between $4,380 and all basic essential services benefits paid with respect to his injury prior to death.

## Limit of Liability

Any amount payable by the Company as personal injury protection benefits with respect to bodily injury shall be reduced by all amounts paid, payable or required to be provided under any workmen's compensation or employees temporary disability law, or under Medicare provided under federal law.

The applicable limit on income continuation benefits applies separately to each full regular and customary work week of an eligible injured person. If his disability from work or employment consists of or includes only a part of such a week, the Company shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the part week bears to the number of days in his full work week.

## Policy Period; Territory

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions or Canada.

## Conditions

1.  **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the eligible injured person, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each eligible injured person to the Company or any of its authorized agents as soon as practicable. If any eligible injured person, his legal representative or survivors shall institute legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such eligible injured person, his legal representative or his survivors.

2.  **Medical Reports; Proof of Claim.** As soon as practicable the eligible injured person or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The eligible injured person shall submit to physical examination by physicians when and as often as the Company may reasonably require, and a copy of the medical report will be forwarded to such eligible injured person if requested.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute true and accurate copies of the policy.

HART000228

3. **Multiple Policies Applicable to One Accident: Non-duplication of Benefits; Priority of Complying Policies.** Regardless of the number of automobiles insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act, or the number of insurers or policies affording such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to bodily injury to any one person as the result of any one accident shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

This insurance applies on a primary basis to bodily injury to the named insured and his relative and on a secondary basis to all other eligible injured persons. Similarly, the basic personal injury protection coverage provided by other complying policies applies on a primary basis to bodily injury to those persons who are named insureds under such policies and their relatives. If an eligible injured person to whom this insurance applies on a secondary basis has other basic personal injury protection coverage under another complying policy applicable to his bodily injury on a primary basis, all claims for basic personal injury protection benefits shall first be made against the insurer issuing the other complying policy. No basic personal injury protection benefits shall be due and payable under this insurance unless the other insurer fails to pay such benefits by reason of insolvency and the Company has been given written notice by the claimant of such failure. "Complying Policy" means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.

4. **Reimbursement and Trust Agreement.** Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement

(a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter;

(b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

5. **Payment of Personal Injury Protection Benefits.** Medical expense benefits and essential services benefits may be paid at the option of the Company to the eligible injured person or the person or organization furnishing the products or services for which such benefits are due. In the event of the death of an eligible injured person any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the eligible injured person's estate.

Benefits payable under subdivision (1) of the definition of survivor benefits are payable to the eligible injured person's surviving spouse, or if there is no surviving spouse, to his surviving children, or if there are no surviving spouse or surviving children, to the eligible injured person's estate.

Benefits payable under subdivision (2) of the definition of survivor benefits are payable to the person who has incurred the expense of providing essential services.

Funeral expense benefits are payable to the eligible injured person's estate.

## SECTION II

### EXTENDED MEDICAL EXPENSE BENEFITS COVERAGE

The Company will pay medical expense benefits not to exceed the total aggregate amount stated in the schedule and funeral expense benefits with respect to bodily injury sustained by an insured person, caused by an accident occurring during the policy period within the United States of America, its territories or possessions or Canada and arising out of the ownership, maintenance or use, including loading and unloading, of an insured automobile or of a highway vehicle not owned by or furnished or available for the regular use of the named insured or any relative of the named insured.

### Exclusions

The insurance under Section II is subject to all of the exclusions applicable to Section I, except that the word "person" in exclusion (c) is replaced by the word "pedestrian".

### Definitions

The definitions under Section I apply to Section II and under Section II:

"highway vehicle" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-treads or (3) a vehicle while located for use as a residence or premises;

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000229

ısured person" means

(a) the **named insured** or any relative of the **named insured**, if the named insured or relative sustains bodily injury

 (1)  while occupying, using, entering into or alighting from a **highway vehicle**; or

 (2)  while a **pedestrian**, caused by a **highway vehicle**;

(b) any other person who sustains **bodily injury** while occupying a **highway vehicle** (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such **highway vehicle** is being operated by the **named insured** or a relative of the **named insured** or any other person using such **highway vehicle** with the permission of the named insured;

(c) any other person who sustains **bodily injury** while occupying an **insured automobile** if such **insured automobile** is being operated by the **named insured** or a relative of the **named insured** or any other person using such **insured automobile** with the permission of the named insured.

**Conditions**

Conditions 1, 2 and 4 of Section I apply to Section II, substituting the term "insured person" for "eligible injured person" wherever it appears therein. The following additional condition applies under Section II:

**Other Insurance or Benefits.** This insurance does not apply o loss or expense with respect to which an **insured person** is entitled to benefits under any workmen's compensation law or Medicare provided under federal law or under Section 4 of the New Jersey Automobile Reparation Reform Act.

This insurance does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefor under any other automobile no-fault law or under any other automobile medical payments insurance.

## SECTION III

In consideration of the insurance afforded under **Sections I and II** of this endorsement, and the adjustment of applicable rates:

(a) any amount payable for economic loss under uninsured motorists coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury to an eligible injured person**;

(b) any automobile medical payments coverage afforded under the policy is deleted with respect to an automobile which is an **insured automobile**.

## SECTION IV

### Premium Recomputation

The premium for the policy is based on rates which have been reduced in accordance with **Section 18** of the **New Jersey Automobile Reparation Reform Act** to reflect the limitations on the right to recover damages imposed by Section 8 of said Act. If a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, Section 8 of the Act invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy on the basis of revised rates which are subject to approval by the Commissioner of Insurance.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000230

CA 99 21 01 78

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

It is agreed that:

A. The policy does not apply:

1. Under any Liability Coverage, to **bodily injury** or **property damage**

    a. with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    b. resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material,** if

    a. the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

    b. the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

    c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c applies only to **property damage** to such **nuclear facility** and property thereat.

B. As used in this endorsement:

    **"hazardous properties"** include radioactive, toxic or explosive properties:

    **"nuclear material"** means **source material, special nuclear material** or byproduct material;

    **"source material"**, **"special nuclear material"**, and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

    **"waste"** means any waste material (a) containing **byproduct material** and (b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph 1 or 2 thereof;

    "**nuclear facility**" means

    1. any **nuclear reactor,**

    2. any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel,** or (c) handling, processing or packaging **waste**,

    3. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    4. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,**

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    **"property damage"** includes all forms of radioactive contamination of property.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 99 21 01 78**                Copyright, Insurance Services Office,  1977

## ERRORS AND OMISSIONS INSURANCE—EMPLOYEE BENEFIT PROGRAMS

This endorsement forms a part of Policy No. ___
Issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address

Effective date.................................................    Effective hour is the same as stated in the Declarations of the policy.

### SCHEDULE

| Limits of Liability | | Estimated Advance Premium |
|---|---|---|
| $    each claim | | |
| $    aggregate | | $ |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

**INSURING AGREEMENTS**

I. **COVERAGE.** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** As respects such insurance as is afforded by the terms of this endorsement, the company shall:
   (a) defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
   (b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
   (c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
   and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III. **DEFINITIONS.**
   (a) "Insured"— The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employe, provided such employe is authorized to act in the administration of the Insured's Employee Benefit Programs.
   (b) "Employee Benefit Programs"— The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
   (c) "Administration"— The unqualified word "Administration", wherever used, shall mean:
      (1) giving counsel to employees with respect to Employee Benefit Programs;
      (2) interpreting Employee Benefit Programs;
      (3) handling of records in connection with Employee Benefit Programs;
      (4) effecting enrollment of employees under Employee Benefit Programs;
      provided all such acts are authorized by the Named Insured.

IV. **ENDORSEMENT PERIOD, TERRITORY.** This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

**EXCLUSIONS**

This endorsement does not apply:
   (a) to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
   (b) to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
   (c) to any claim for failure of performance of contract by an insurer;
   (d) to any claim based upon:
      (1) failure of stock to perform as represented by an insured.
      (2) advice given by an insured to an employee to participate or not to participate in stock subscription plans.

**CONDITIONS**

1. **Policy Conditions.** All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2. **Limits of Liability**
   (a) Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
   (b) $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
   (c) The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. The company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by such Insured.
   (d) The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3. **Premium.** The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| | First  5,000 | $ |
| | Next  5,000 | $ |
| | Over  10,000 | $ |
| | Total $ | |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**
**INSURANCE GROUP**
HARTFORD, CONNECTICUT

Form L-2953-1  Printed in U. S. A.  6-'66

Countersigned by ............................................

.........................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

## Comprehensive General Liability Insurance Coverage Part (Continued)

**I. COVERAGE A — BODILY INJURY LIABILITY**

**COVERAGE B — PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

**Coverage A** – *bodily injury* or

**Coverage B** – *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract*; but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

  (1) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

  (2) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured*;

but this exclusion does not apply to the parking of an *automobile* on premises owned by, rented to or controlled by the *named insured* or the ways immediately adjoining, if such *automobile* is not owned by or rented or loaned to any *insured*;

(c) to *bodily injury* or *property damage* arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to *bodily injury* or *property damage* arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured*;

(e) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

  (1) any watercraft owned or operated by or rented or loaned to any *insured*, or

  (2) any other watercraft operated by any person in the course of his employment by any *insured*;

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the *named insured*;

(f) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to

  (1) liability assumed by the *insured* under an *incidental contract*, or

  (2) expenses for first aid under the Supplementary Payments provision;

(h) to *bodily injury* or *property damage* for which the *insured* or his indemnitee may be held liable

  (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

  (2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

  (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

  (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contibutes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the *insured* or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract*;

(k) to *property damage* to

  (1) property owned or occupied by or rented to the *insured*,

  (2) property used by the *insured*, or

  (3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to *property damage* (other than to *elevators*) arising out of the use of an *elevator* at premises owned by, rented to or controlled by the *named insured*;

(l) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

  (1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

  (2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured*;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured*;

(n) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(o) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q) to *property damage* included within:

  (1) the *explosion hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "x";

The company located these documents in its business records, and that these documents constitute a complete and accurate copy of the policy.

## Comprehensive General Liability Insurance Coverage Part *(Continued)*                    **THE HARTFORD**

(2) the *collapse hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "c".

(3) the *underground property damage hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "u".

## II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured;* and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of *mobile equipment* registered under any motor vehicle registration law,

(i) an employee of the *named insured* while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the *named insured* any such equipment registered in the name of the *named insured* and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an *insured* under this paragraph (e) with respect to:

(1) *bodily injury* to any fellow employee of such person injured in the course of his employment, or

(2) *property damage* to property owned by, rented to, in charge of or occupied by the *named insured* or the employer of any person described in subparagraph (ii).

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or suits brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage A** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of (1) all *bodily injury* included within the *completed operations hazard* and (2) all *bodily injury* included within the *products hazard* shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate":

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured*, including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *property damage* included within the *products hazard* and all *property damage* included within the *completed operations hazard*.

Such aggregate limit shall apply separately to the *property damage* described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the *named insured*.

**Coverages A and B** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

## IV. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3503-1   Printed in U.S.A.   (ISO: GL 00 02 01 73)          **CGL-3**                    HART000234

**COVERAGE PART**
(continued)

## I. COVERAGE E — PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains *bodily injury* caused by accident all reasonable *medical expense* incurred within one year from the date of the accident on account of such *bodily injury*, provided such *bodily injury* arises out of (a) a condition in the *insured premises* or (b) operations with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy.

### Exclusions

This insurance does not apply:

**(a)** to *bodily injury*

    **(1)** arising out of the ownership, maintenance, operation, use, loading or unloading of

        **(i)** any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

        **(ii)** any other *automobile* or aircraft operated by any person in the course of his employment by any *insured*;

    but this exclusion does not apply to the parking of an *automobile* on the *insured premises*, if such *automobile* is not owned by or rented or loaned to any *insured*;

    **(2)** arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

    **(3)** arising out of the ownership, maintenance, operation, use, loading or unloading of

        **(i)** any watercraft owned or operated by or rented or loaned to any *insured*, or

        **(ii)** any other watercraft operated by any person in the course of his employment by any *insured*;

    but this exclusion does not apply to watercraft while ashore on the *insured premises*; or

    **(4)** arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured*;

**(b)** to *bodily injury*

    **(1)** included within the *completed operations hazard* or the *products hazard*;

    **(2)** arising out of operations performed for the *named insured* by independent contractors other than (i) maintenance and repair of the *insured premises* or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

    **(3)** resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the *named insured* is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the *named insured* is such an owner or lessor;

    **(4)** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

**(c)** to *bodily injury*

    **(1)** to the *named insured*, any partner therein, any tenant or other person regularly residing on the *insured premises* or any employee of any of the foregoing if the *bodily injury* arises out of and in the course of his employment therewith;

    **(2)** to any other tenant if the *bodily injury* occurs on that part of the *insured premises* rented from the *named insured* or to any employee of such a tenant if the *bodily injury* occurs on the tenant's part of the *insured premises* and arises out of and in the course of his employment for the tenant;

    **(3)** to any person while engaged in maintenance and repair of the *insured premises* or alteration, demolition or new construction at such premises;

    **(4)** to any person if any benefits for such *bodily injury* are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law; or under any similar law;

    **(5)** to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sports activities in the policy with respect to Premises Medical Payments Coverage;

**(d)** to any *medical expense* for services by the *named insured*, any employee thereof or any person or organization under contract to the *named insured* to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all *medical expense* for *bodily injury* to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all *medical expense* for *bodily injury* to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the schedule as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*insured premises*" means all premises owned by or rented to the *named insured* with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy, and includes the ways immediately adjoining on land;

"*medical expense*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services, and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

## CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the *bodily injury* or *property damage;*

(c) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to *bodily injury* or *property damage* for which the indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the *insured* may be held liable in an action on a contract by a third party beneficiary for *bodily injury* or *property damage* arising out of a project for a public authority; but this exclusion does not apply to action by the public authority or any other person or organization engaged in the project;

(g) to *property damage* to

(1) property owned or occupied by or rented to the *insured,*

(2) property used by the *insured,* or

(3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

(h) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

(2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(j) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(k) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(m) As respects any agreement relating to construction operations, to *bodily injury* or *property damage* arising out of

(1) construction, maintenance or repair of watercraft or loading or unloading thereof, or

(2) operations within fifty feet of any railroad property affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(n) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(o) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

When stated in the schedule as applicable, the following exclusions also apply to *contractual liability* assumed by the *insured.*

This insurance does not apply:

(p) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *products hazard;*

(q) to *property damage* included within

(1) the *explosion hazard,*

(2) the *collapse hazard,* or

(3) the *underground property damage hazard.*

## II.   PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured.*

## III.   LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage,* or (3) claims made or *suits* brought on account of *bodily injury* or *property damage,* the company's liability is limited as follows:

**Coverage YB** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

**Coverage ZB** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the *named insured.*

**Coverages YB and ZB** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

# CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

## IV.  ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*contractual liability*" means liability expressly assumed under a written contract or agreement; provided, however, that *contractual liability* shall not be construed as including liability under a warranty of the fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

"*suit*" includes an arbitration proceeding to which the *insured* is required to submit or to which the *insured* has submitted with the company's consent.

## V.  POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

## VI.  ADDITIONAL CONDITIONS

**Arbitration**

The company shall be entitled to exercise all of the *insured*'s rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

**Premium**

When used as a premium basis:

1.  the word "*cost*" means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which "*cost*" is the basis of premium, regardless of whether any liability is assumed under such contracts by the *insured*.  It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the *insured*, or others including all fees, allowances, bonuses or commissions made, paid or due.  It shall not include the cost of any operations to which exclusion (m) applies.

2.  the word "*sales*" means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**General Liability**
**Amendatory Endorsement — Additional Definition**

 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No........................................
Issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ................................................Effective hour is the same
as stated in the Declarations of the Policy.

It is agreed that the following definition is added:

*"loading or unloading"*, with respect to an *automobile*, means the handling of property after it is moved from the place where it is accepted for
movement into or onto an *automobile* or while it is in or on an *automobile* or while it is being moved from an *automobile* to the place where it is
finally delivered, but "loading or unloading" does not include the movement of property by means of a mechanical device (other than a hand truck) not
attached to the *automobile*.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.........................................................................................
*Authorized Agent*

**Form L-4128-0** Printed in U.S.A. (ISO: GL 00 19 07 78)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000238



**Host Liability Insurance**



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. ...........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ..............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**
**OWNERS', LANDLORDS', AND TENANTS' LIABILITY INSURANCE**

It is agreed that exclusion (h) does not apply to liability imposed upon the insured as the result of the giving or serving of alcoholic beverages at functions incidental to the named insured's business, provided the named insured is not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages, and provided further that there has been no intentional violation of any statute, regulation, or ordinance committed by or at the direction of the insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ...........................................................................
*Authorized Agent*

Form L-4191-0   Printed in U.S.A.   (N.S.)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000239

# EXHIBIT 5

DAILY REPORT for use with CASUALTY INSURANCE POLICY Form 8117 and DECLARATIONS Page Form AL-102-0

PREMIUM AUDIT COPY

THE HARTFORD INSURANCE GROUP

☐ Hartford Fire Insurance Co.

Redacted

CO. REIG Ren.

| | Annual Audit | Monthly | Participating |
|---|---|---|---|
| Prem. Finance | Semi-Annual | Bureau | Retro |
| Large Risk | Quarterly | Loss Control | Redacted |

INSURER → Co. Code 5

Previous Policy No. 10 C ML0740W

POLICY NO. 10 C ML0740W

AAR

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647

20 YR. RET.

**C Items**

1. Named Insured and Mail Address (No., Street, Town, County, State, Zip Code)
The Named Insured is: ☐ Individual ☐ Partnership ☒ Corporation
☐ Joint Venture (Other).....................

10 25 82 TO 10 25 83

2. Policy Period ──────── From

12:01 A.M., standard time at the address of the *named insured* as stated herein.

| Producer's Name and Address | Producer's Code |
|---|---|
| FRED S JAMES AND CO INC OF N Y | 252170 |

Audit Period: Annual. unless otherwise stated. ☐ Semi-Annual
☐ Quarterly
☐ Monthly

REFER UND.

3. The advance premium for this policy is as stated below. Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

### SUMMARY OF ADVANCE PREMIUMS

| COVERAGE PARTS | ADVANCE PREMIUM |
|---|---|
| Comprehensive General Liability Insurance | $ 121,680. |
| Premises Medical Payments Insurance | $ INCLUDED |
| Contractual Liability Insurance | $ INCLUDED |
| Completed Operations and Products Liability Insurance | $ |
| Owners' and Contractors' Protective Liability Insurance | $ |
| Storekeepers' Insurance | $ |
| Personal Injury Liability Insurance | $ |
| Comprehensive — Plus General Liability Insurance | $ |
| **ERRORS AND OMISSIONS INSURANCE- EMPLOYEE BENEFITS PROGRAM** | $ INCLUDED |
| | $ |
| Business Auto | $ 22,302. |
| Truckers | $ |
| Garage | $ |

RECEIVED

MAY 28 1986

KOC #531

| Form Numbers of Coverage Parts and endorsements not listed on Coverage Parts forming part of Policy et issue: | TOTAL ADVANCE PREMIUM |
|---|---|
| G 2240 3 B   C 2014-0 C 2013-0 C 2016-0 | $ 143,982. |

If Policy Period more than one year: Gross Premium $ _____ Discount $ _____ Net Premium $ _____
Premium is payable: On effective date of Policy $ _____ 1st Anniversary $ _____ 2nd Anniversary $ _____

4. Business of the *named insured* is ──────── MFG. INDUSTRIAL SEPARATORS

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-102-0 PA Printed in U.S.A.

PREMIUM AUDIT COPY

HAR1000240

**THE HARTFORD**

Named Insured and Address

Policy Number

**10 C ML0740W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date | Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

**LIST OF ENDORSEMENTS AND COVERAGE PARTS FORMING PART OF POLICY AT ISSUE:**

CA 9921 01/78 (N/A IN N Y )

CA 2230 01/78

CA 2X14 01/78

CA 0237 01/78

L 4128-0

G 1760-8

CA 0224 01/78

C 3023-0

L 4100-0

L 4155-0

L 3025-0

L 3252-2

L 3243-0

L 3503-1

L 3505-0

L 3523-0

L 3355-1

L 4152-0

L 4191-0

G 2240 3B ASSAULT AND BATTERY

G 2240 3B INCIDENTAL MALPRACTICE

G 2240 3B KNOWLEDGE & NOTICE OF OCCURRENCE

G 2240 3B NOTICE OF CANCELLATION

G 2240 3B UNINTENTIONAL ERRORS

AL 57-0

L 4329-0

G 2240 3B PREMIUM COMPUTATION

L 4330-0

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by.................................................................

Form G-2240-3 B   Printed in U.S.A.                                    *Authorized Agent*

HART000241



CA 2X 14
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### UNINSURED MOTORISTS INSURANCE
### (NEW JERSEY)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. **10 C ML0740W** |
|---|---|
| Named Insured | Countersigned by |
| | (Authorized Representative) |

In consideration of the payment of premium and subject to all of the provisions of this endorsement and to the applicable provisions of the policy, the company agrees with the named insured as follows:

### Schedule

Designated Insured:_____

Limits of Liability:  Bodily Injury      $15,000 each person
                                          $30,000 each accident
          Property Damage   $ 5,000 each accident

Advance Premiums $   **INCL**

Description of Insured Highway Vehicles:

   Any highway vehicle registered or principally garaged in New Jersey which is:

   (check appropriate box)

- [x] An owned automobile under Part I of the policy
- [ ] A private passenger automobile owned by the named insured
- [ ] Owned by the named insured
- [ ] Designated in the declarations of the policy and any highway vehicle of the same type ownership of which is acquired during the policy period by the named insured as a replacement therefor
- [ ] Any mobile equipment owned by the named insured
- [ ]

### I.   COVERAGE UNINSURED MOTORISTS

(Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally

entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

### Exclusions

This insurance does not apply:

(a)  to bodily injury or property damage with respect to which the insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b)  to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives;

Insurance Services Office does not certify that these documents constitute a complete or accurate copy of the policy

HART000242

**Errors And Omissions Insurance —**
**Employee Benefit Programs**

 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. C **MLO740W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ............................................................... Effective hour is the same as stated in the Declarations of the policy.

## SCHEDULE

| | Limits of Liability | Estimated Advance Premium |
|---|---|---|
| $ **25,000** | each claim | $ |
| $ **75,000** | aggregate | **INCL** |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations
and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

### INSURING AGREEMENTS

I. COVERAGE. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made
against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally
liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. As respects such insurance as is afforded by the terms of this endorsement, the
company shall:
(a) defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account
thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the
written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all
premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed
against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company
has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(c) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the
applicable limit of liability of this endorsement.

III. DEFINITIONS.
(a) "**Insured**" — The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer,
director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit
Programs.
(b) "**Employee Benefit Programs**" — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health
Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and
Disability Benefits.
(c) "**Administration**" — The unqualified word "Administration", wherever used, shall mean:
(1) giving counsel to employees with respect to Employee Benefit Programs;
(2) interpreting Employee Benefit Programs;
(3) handling of records in connection with Employee Benefit Programs;
(4) effecting enrollment of employees under Employee Benefit Programs;
provided all such acts are authorized by the Named Insured.

IV. ENDORSEMENT PERIOD, TERRITORY. This endorsement applies only to claims under the local jurisdiction of a court of law within the United
States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting
on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during
the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen
any circumstances which might result in a claim or suit.

### EXCLUSIONS

This endorsement does not apply:
(a) to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b) to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of
use thereof;
(c) to any claim for failure of performance of contract by an insurer;
(d) to any claim based upon:
(1) failure of stock to perform as represented by an insured,
(2) advice given by an insured to an employee to participate or not to participate in stock subscription plans.

### CONDITIONS

1. Policy Conditions. All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall
apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".
2. Limits of Liability
(a) Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the
limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule
herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all
damages.
(b) $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between
such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the
coverage provided under Insuring Agreement II.
(c) The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate,
negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. If the company undertakes to negotiate
or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be
deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the com-
pany.
(d) The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.
3. Premium. The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to
adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| **300** | ................... First 5,000 | $............. |
| | ................... Next 5,000 | $............. |
| | ................... Over 10,000 | $............. |
| | | Total $...................... |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the
policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall
be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the
Insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by.................................................................
                                    Authorized Agent

Form L-4154-0

HART000243

**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

**THE HARTFORD**

Named Insured and Address

| Policy Number | |
|---|---|
| **10 C ML0740M** | |
| This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein. | |
| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject to the following additional exclusions:

The insurance does not apply:

1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

## SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| **3400 THIRD AVE FOSTER CITY CA** | **SAN MATEO BAY BUILDING ASSOCIATES** | **INCL** | |
| **1270 MARKET ST BENSENVILLE IL AND ANY OTHER PREMISES UPON WHICH THE NAMED INSURED IS REQUIRED IN A WRITTEN AGREEMENT TO PROVIDE INSURANCE ON BEHALF OF THE LESSOR AND OF WHICH THE COMPANY IS NOTIFIED WITHIN THIRTY (30) DAYS OF THE EXECUTION OF SAID WRITTEN AGREEMENT.** | **JOHN G TWIST CO** | | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ...........................................................

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3025-0   Printed in U.S.A.   (ISO: GL 20 11 07 66)

HART000244

**BROAD FORM PROPERTY DAMAGE ENDORSEMENT**
(Including Completed Operations)

**THE HARTFORD**

Named Insured and Address

**10 C ML07400**

This endorsement forms a part of Policy No.................................
Issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ........................................... Effective hour is the
same as stated in the Declarations of the Policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

**Classification:**

It is agreed that the insurance for **property damage** liability applies, subject to the following additional provisions:

A. The exclusions relating to **property damage** to (1) property owned, occupied or used by or rented to the **Insured** or in the care, custody or control of the **Insured** or as to which the **Insured** is for any purpose exercising physical control and (2) work performed by or on behalf of the **named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (y) and (z):

   (y) to **property damage**

     (1) to property owned or occupied by or rented to the **insured,** or, except with respect to the use of **elevators,** to property held by the **insured** for sale or entrusted to the **insured** for storage or safekeeping,

     (2) except with respect to liability under a written sidetrack agreement or the use of **elevators** to

       (a) property while on premises owned by or rented to the **Insured** for the purpose of having operations performed on such property by or on behalf of the **Insured,**

       (b) tools or equipment while being used by the **Insured** in performing his operations,

       (c) property in the custody of the **Insured** which is to be installed, erected or used in construction by the **Insured,**

       (d) that particular part of any property, not on premises owned by or rented to the **Insured,**

         (i) upon which operations are being performed by or on behalf of the **Insured** at the time of the **property damage** arising out of such operations, or

         (ii) out of which any **property damage** arises, or

         (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the **insured;**

   (z) with respect to the **completed operations hazard** and with respect to any classification stated above as "including completed operations", to **property damage** to work performed by the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

B. The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **insured,** such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by................................................
                                    *Authorized Agent*

Form L-3252-2  Printed In U.S.A.  (NS)

**PREMIUM AUDIT COPY**

| Und. Approved | Confidential Report | Und. Notes |
|---|---|---|
| Quality Control | | |

This Coverage Part forms a part of Policy No. **10 C 01070##** ......................................................Issued by THE HARTFORD INSURANCE GROUP
Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

(For use only if this Coverage Part is effective after the effective date of the Policy)
This Coverage Part is effective.............................................(at the hour stated in the policy) and forms a part of the above designated
policy issued to......................................................................................................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees
with the named Insured as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges.
The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy having
reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| A — Bodily Injury Liability | $ **INCLUDED** | $ **AS PER** ,000 each occurrence |
| | | $ **ENDT** ,000 aggregate |
| B — Property Damage Liability | $ **INCLUDED** | $**L4152-0** ,000 each occurrence |
| | | $ ,000 aggregate |

| Rating Classifications Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates B.I. | Rates P.D. | Advance Premiums B.I. | Advance Premiums P.D. |
|---|---|---|---|---|---|---|
| (a) Premises — Operations | | (a) Area (b) Frontage (c) Remuneration (d) Receipts | (a) Per 100 Sq. Ft. of Area (b) Per Linear Foot (c) Per $100 of Remun. (d) Per $100 of Receipts | | | |
| (b) Escalators | | (e) Landings | (e) Per Landing | | | |
| (c) Independent Contractors | | (f) Cost | (f) Per $100 of Cost | | | |
| (d) Completed Operations | | (g) Receipts | (g) Per $1,000 of Receipts | | | |
| (e) Products | | (h) Sales | (h) Per $1,000 of Sales | | | |

A) AS PER PREMIUM COMPUTATION ENDT

C) ●● ●● ●● ●● ●●

D) ●● ●● ●● ●● ●●

E) ●● ●● ●● ●● ●●

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | | TOTAL ADVANCE PREMIUMS | $ **INCL** | $ **INCL** |
|---|---|---|---|---|
| G 2249 3B (LIST) | | | | |

If the Policy Period is more than one year, the Premium is Payable:

The company microfilmed these documents in its business records. At this time the company
is unable to produce an accurate copy of the policy.

| On effective date of Policy $ | 1st Anniversary $ | 2nd Anniversary $ |
|---|---|---|

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by................................................................
                                                                    Authorized Agent

Form L-3503-1  PA  Printed in U.S.A.  (ISO: GL 00 02 01 73)     CGL-1     PREMIUM AUDIT COPY

HART0002472

ATTACH FORMS ALONG THIS MARGIN BELOW THIS MARK →

# PREMISES MEDICAL PAYMENTS INSURANCE — COVERAGE PART

Case 2:20-cv-09741-BRM-SDA    Document 55-35    Filed 11/18/22    Page 361 of 612
PageID: 5781

| | Und. Approved | | Amendment Report |
|---|---|---|---|
| | Quality Control | | |

This Coverage-Part forms a part of Policy No. **10 C ML9750W** issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective......................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to....................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability | |
|---|---|---|---|
| E — Premises Medical Payments | $ **INCL** | $ **1,000** | each person |
| | | $ **10,000** | each accident |

| Description of Hazards | Advance Premiums |
|---|---|
| (a) Premises and Operations | |
| **AS PER PREMIUM COMPUTATION ENDT** | |
| (b) Escalators | |
| (c) Sports Activities | |

Form Numbers of Endorsements forming part of this Coverage Part at issue:

**C-7240 98 (LIST)**

| | TOTAL ADVANCE PREMIUM | $ **INCL** |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $          1st Anniversary $          2nd Anniversary $

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

The company located these documents in its
... these documents constitute
a complete and accurate copy of the policy.

Countersigned by.....................................

*Authorized Agent*

Form L-3505-0  PA   Printed in U.S.A.  (ISO: GL 00 15 01 73)          MP-1

HART000247

Ind. Approved | Confidential Report | Und. Notes

Quality Control

This Coverage Part forms a part of Policy No. ................ **10 C 812400** ................ issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective................................(at the hour stated in the policy) and forms a part of the above designated policy issued to................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| YB — Contractual Bodily Injury Liability | $ **INCL** | $ **AS PER** ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ **INCL** | $ **ENDT** ,000 each occurrence |
| | | $ **1A152-0**000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B. I. | P. D. | B. I. | P. D. |
| **ALL WRITTEN AGREEMENTS** | | (a) Cost (b) Sales | (a) Per $100 of Cost (b) Per $1,000 of Sales | | | |
| | | **AS PER PREMIUM COMPUTATION ENDORSEMENT** | | | | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS | | |
|---|---|---|---|
| **G 2240 3B (LIST)** | $ **INCL** | $ **INCL** |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $    **1st Anniversary $**    **2nd Anniversary $**

The following exclusions also apply:

☐ Exclusion (p) — Products and Completed Operations    ☐ Exclusion (q)—x, c & u

**I. COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

**COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

**Coverage YB.** *bodily injury* or

**Coverage ZB.** *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

(ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.
This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by................................

...ints in its does not certify that these documents constitute a complete and accurate copy of the policy.

*Authorised Agent*

**Form L-3523-0 PA Printed in U.S.A. (NS)**    **KB-1**

HART000248

## SUPPLEMENTARY COVERAGE ENDORSEMENT
## PERSONAL INJURY AND ADDITIONAL INSURED (Employees)

Named Insured and Address

**10 C ML0740V**

This endorsement forms a part of Policy No.
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.............................................................12:01 A. M., standard time at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

---

It is agreed that:

1. The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply

   a. to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

   b. to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured*, or if the *named insured* is a partnership or joint venture, any partner or member thereof.

### EXCLUSION C IS DELETED

It is further agreed that:

1. Such insurance as is afforded under Coverage A with respect to *bodily injury*, is extended to apply to *personal injury* as defined herein, subject to the following additional provisions:

   1. This insurance does not apply

      a. to liability for *personal injury* assumed by the *insured* under any contract or agreement;

      b. to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

      XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
      XXXXXXXXXXXX

      d. to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

      e. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

      f. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

   2. When used in reference to this insurance

      a. "personal injury" means:

         1. injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory*.

      b. "personal injury offense" means:

         1. false arrest, detention or imprisonment, or malicious prosecution,
         2. libel, slander, defamation, disparagement or violation of an individual's right of privacy, or
         3. wrongful entry or eviction or other invasion of the right of private occupancy.

   3. The Limits of Liability section is amended in the following respect:

      The total liability of the company for all damages because of all *personal injury* to which this policy applies, shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by............................................................

**THE HARTFORD**

Authorized Agent

Form L-3355-1   Printed in U. S. A.   (NS)

# Amendment — Limits of Liability
## (Single Limit)



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No...................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date...................................................Effective hour is the
same as stated in the Declarations of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | |
|---|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE | — (Coverage Part "CO/PR") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |
| OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE | — (Coverage Part "OCP") |

## SCHEDULE

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| Bodily Injury Liability and Property Damage Liability | "CGL" "K" | $ 1,000 each occurrence |
| | "CGL" "K" | $ 1,000 aggregate — Division 1 |
| | | $ 1,000 aggregate — Division 2 |
| Bodily Injury Liability and Property Damage Liability | | $ ,000 each occurrence |

**Division 1** — Applicable to damages because of **bodily injury** and **property damage** as specified in paragraph (b) in the "Limits of Liability" provision of this endorsement.

**Division 2** — Applicable to damages because of all **bodily injury** and **property damage** as stated in paragraph (c) in the "Limits of Liability" provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof is amended to read as follows:

## LIMITS OF LIABILITY

Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage**, (3) claims made or suits brought on account of **bodily injury** or **property damage** or (4) **automobiles** or **mobile equipment** to which this policy applies, the company's liability is limited as follows:

## Bodily Injury Liability and Property Damage Liability Coverage

(a) The limit of liability stated in the Schedule of this endorsement as applicable to "each **occurrence**" is the total limit of the company's liability under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of **bodily injury**, including damages for care and loss of services, and all **property damage** as the result of any one **occurrence**; provided that, with respect to any one **occurrence** for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

I HEREBY CERTIFY THAT THESE DOCUMENTS CONSTITUTE
A COMPLETE AND ACCURATE COPY OF THE POLICY.

Form L-4152-0 PA Printed in U.S.A. (NS)    Page 1    **Premium Audit Copy**

**THE HARTFORD**

Named Insured and Address

| Policy Number |
| --- |
| 10 C ML0749V |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
| --- | --- |

| Endt. No. | |

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

ASSAULT AND BATTERY

IT IS AGREED THAT THE DEFINITION OF OCCURRENCE IS AMENDED BY

ADDING THERETO THE FOLLOWING:

"BODILY INJURY OR PROPERTY DAMAGE CAUSED FOR

THE PURPOSE OF PROTECTING PERSONS OR PROPERTY

SHALL BE DEEMED NEITHER EXPECTED NOR INTENDED

FROM THE STANDPOINT OF THE INSURED."

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by...............................................................

*Authorized Agent*

HART000251

THE HARTFORD

Named Insured and Address

| Policy Number | |
|---|---|
| 10 C ML0740W | |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### INCIDENTAL MALPRACTICE

IT IS AGREED THAT:

1. THE DEFINITION OF "BODILY INJURY" IS AMENDED TO INCLUDE INJURY ARISING OUT OF THE RENDERING OF OR FAILURE TO RENDER PROFESSIONAL SERVICES BY ANY PHYSICIAN, DENTIST OR NURSE WHILE EMPLOYED BY THE NAMED INSURED TO PROVIDE SUCH SERVICES.

2. EXCLUSION (J) DOES NOT APPLY TO INJURY TO THE EMOTIONS OR REPUTATIONS OF A PERSON ARISING OUT OF THE RENDERING OF SUCH SERVICES.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B   Printed in U.S.A.

Countersigned by..............................................................

*Authorized Agent*

HART000252

**THE HARTFORD**

Named Insured and Address

| Policy Number |
|---|
| **10 C ML0740W** |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

| Endt. No. |
|---|

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**CONTRACTUAL LIABILITY INSURANCE**

**PREMISES MEDICAL PAYMENTS INSURANCE**

**KNOWLEDGE AND NOTICE OF OCCURRENCE**

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY AN AGENT, SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT CONSTITUTE KNOWLEDGE TO THE INSURED UNLESS AN EXECUTIVE OFFICER OF THE NAMED INSURED CORPORATION OR OTHER PERSONS EMPLOYED BY IT IN A MANAGERIAL CAPACITY SHALL HAVE RECEIVED SUCH NOTICE.

IT IS AGREED THAT IF THE INSURED REPORTS AN OCCURRENCE TO ITS WORKMEN'S COMPENSATION CARRIER WHICH DEVELOPS INTO A LIABILITY CLAIM FAILURE TO REPORT SUCH OCCURRENCE TO THE COMPANY AT THE TIME OF OCCURRANCE SHALL NOT BE DEEMED IN VIOLATION OF CONDITION 4 "INSURED'S " DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B   Printed in U.S.A.

Countersigned by.................................................................

*Authorized Agent*

HART000253

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 C MLO746M**

This endorsement forms a part of the policy as numbered
above, issued by THE HARTFORD INSURANCE GROUP
company designated therein, and takes effect as of the
effective date of said policy unless another effective date
is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

## CONTRACTUAL LIABILITY INSURANCE

## PREMISES MEDICAL PAYMENTS INSURANCE

### NOTICE OF CANCELLATION

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THE POLICY
BY THE COMPANY FOR ANY REASON OTHER THAN NON-PAYMENT OF PREMIUM,
THIRTY (30) DAYS PRIOR WRITTEN NOTICE THEREOF WILL BE FURNISHED
TO THE NAMED INSURED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or
declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if
this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof,
countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute
valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form G-2240-3 B    Printed in U.S.A.

Countersigned by.................................................................
*Authorized Agent*

HART000254

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 C ML0740W**

This endorsement forms a part of the policy as numbered
above, issued by THE HARTFORD INSURANCE GROUP
company designated therein, and takes effect as of the
effective date of said policy unless another effective date
is stated herein.

Effective Date          Effective hour is the same as stated
                        in the Declarations of the policy.

Endt. No.

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**CONTRACTUAL LIABILITY INSURANCE**

**PREMISES MEDICAL PAYMENTS INSURANCE**


**UNINTENTIONAL ERRORS OR OMISSIONS**

**IT IS AGREED THAT FAILURE OF THE INSURED TO DISCLOSE ALL**

**HAZARDS EXISTING AS OF THE INCEPTION DATE OF THE POLICY**

**SHALL NOT PREJUDICE THE INSURED WITH RESPECT TO THE COVERAGE**

**AFFORDED BY THIS POLICY, PROVIDED SUCH FAILURE OR ANY OMISSION**

**IS NOT INTENTIONAL.**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or
declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if
this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof,
countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute
valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form G-2240-3 B  Printed in U.S.A.                    Countersigned by.................................................................
                                                                                    *Authorized Agent*

HART000255

**Premium Installment**    🦌 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C ML0740V**
issued by THE HARTFORD INSURANCE GROUP company
designated therein, and takes effect as of the effective date of
said Policy unless another effective date is stated herein.

Effective date .......................................... 12:01 A. M., standard time at the address of the
named insured as stated herein.

**121,680. GL**

It is hereby understood and agreed that the **ORIGINAL** ..........................Premium of $ **22,302. AUTO**
(Insert "original" or "additional" or "return")

will **BE PAYABLE IN**      **FOUR (4)** ..........................installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

## SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 10/25/82 | 30,420. | 4,218. | 1,362. | | 36,000 |
| 2 | 12/25/82 | 30,420. | 4,215. | 1,359. | | 35,994. |
| 3 | 2/25/83 | 30,420. | 4,215. | 1,359. | | 35,994. |
| 4 | 4/25/83 | 30,420. | 4,215. | 1,359. | | 35,994. |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| TOTALS | | 121,680. | 16,863. | 5,439. | | 143,982. |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the
policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this
endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on
the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this
endorsement.

Countersigned by ..........................................................................
                                                    Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

**Form AL-57-0**   Printed in U. S. A.

HART000256

THE HARTFORD

Named Insured and Address

Policy Number

**10 C ML0740W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date ___   Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

PREMISES MEDICAL PAYMENTS INSURANCE AND

ERRORS AND OMISSIONS INSURANCE- EMPLOYEE BENEFIT PROGRAMS

PREMIUM COMPUTATION

IT IS AGREED THAT THE PREMIUM FOR COMPREHENSIVE GENERAL

LIABILITY INSURANCE SHALL BE COMPUTED AS FOLLOWS:

| CODE | TOTAL SALES | RATES PER $1,000 SALES | | ADVANCE PREMIUMS | |
|------|-------------|------|------|--------|--------|
| | | BI | PD | BI | PD |
| 20050 | 39,000,000 | 1.934 | 1.186 | 75,426. | 46,254. |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by.................................................

Form G-2240-3 B   Printed in U.S.A.

*Authorized Agent*

HART000257

**THE HARTFORD**

Named Insured and Address

| Policy Number |
|---|
| 1 0  C  NL07401 |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

**SEE    SCHEDULE    ATTACHED**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B   Printed in U.S.A.

Countersigned by......................................................

*Authorized Agent*

HART000258

## Business Auto Coverage Part

THE HARTFORD

Issued to form a part of Policy No. **10 C MLO740M** to be effective _____ at the hour stated in the policy. The Stock Insurance Company providing this insurance is shown on the Declarations Page of such policy as the "Insurer."

This Coverage Part is not binding unless countersigned by a duly authorized agent of ours; but if it takes effect as of the effective date of the policy of which this Coverage Part forms a part then countersignature on the Declarations Page of that policy by a duly authorized agent of ours is valid countersignature of this Coverage Part.

All of the provisions, conditions and other terms of this BUSINESS AUTO COVERAGE PART shall apply only as specified herein and none of the provisions, conditions and other terms of the policy of which this BUSINESS AUTO COVERAGE PART forms a part shall apply to insurance hereunder unless otherwise stated herein. Hereafter, any use of the word "policy" in this BUSINESS AUTO COVERAGE PART (or any endorsement forming a part of, changing or applicable to this BUSINESS AUTO COVERAGE PART) shall be deemed to read "BUSINESS AUTO COVERAGE PART.

## DECLARATIONS — BUSINESS AUTO COVERAGE PART

### ITEM ONE — NAMED INSURED AND ADDRESS

**CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647**

This BUSINESS AUTO COVERAGE PART is completed by:

(a) this Declarations Form C-2013,
      Form C-2014,
      Form C-2015,
      Form C-2016,

(b) its provisions and conditions printed in Form CA00010180

(c) any Endorsements issued to form a part of it.

Form Numbers of Endorsement forming part of this BUSINESS AUTO COVERAGE PART on the above effective date:

### SEE G 2240 3B

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the

Countersigned by _____ Authorized Agent

Includes copyrighted material of Insurance Services Office, with its permission. Copyright Insurance Services Office, 1977, 1979.

HART000250 Form C-2014)

Form C-2016
DECLARATIONS
BUSINESS AUTO POLICY (Continued)



**THE HARTFORD**

Policy No. 10 C ML0740M

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type / City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | | Original Cost New (Chassis & Body including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GWV or GCW or Vehicle Seating Capacity | Radius of Operation L = Local, I = Intermediate, LD = Long Distance / Use S = Service, R = Retail, C = Commercial; Other (Describe) | | |
| 1 | Garaged: | | | | AS PER PREMIUM COMPUTATION ENDORSEMENT | | |
| | | | | | Radius of Operation: | | |
| | | | | | Use: | | |
| 2 | Garaged: | | | | | | |
| | | | | | Radius of Operation: | | |
| | | | | | Use: | | |

Premiums and Limits — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Limit each Accident Cov. AG | Physical Damage (Non-Collision) Coverage * | | Collision Cov. AR | | Towing and Labor Premium Cov. AT |
|---|---|---|---|---|---|---|---|---|---|
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov. AS ☐ AN ☐ | Deductible | Dollar Limit | Deductible | Dollar Limit | |
| | | | | | Premium | Rate | Premium | Rate | |
| 1 | $ | $ | $ | $ | Coverage $ | $ | $ | $ | |
| | $ | $ | $ | AS PER PREMIUM COMPUTATION ENDORSEMENT | | | | | $ |
| 2 | $ | $ | $ | $ | Coverage $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

Loss Payees (Identified by Covered Auto No.) — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

## ITEM FIVE — SCHEDULE OF HIRED AUTOS (Coverages and Premiums)

LIABILITY INSURANCE — RATING BASIS IS COST OF HIRE. Cost of hire means the total amount you incur for the hire of autos you don't own (not including autos you borrow or rent from your employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| HEADQUARTERS STATE | CLASSIFICATION CODE | ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | ESTIMATED PREMIUM |
|---|---|---|---|---|
| NJ | 6619 | $ IF ANY / $ | $ / $ | $ AS PER PREMIUM / $ COMPUTATION ENDT |

## ITEM SIX — SCHEDULE FOR NON-OWNERSHIP LIABILITY

LIABILITY INSURANCE (includes autos owned by your employees or members of their households but only while used in your business or your personal affairs)

— RATING BASIS IS NUMBER OF EMPLOYEES

| ESTIMATED NUMBER OF EMPLOYEES | CLASSIFICATION CODE | HEADQUARTERS STATE | ESTIMATED PREMIUM |
|---|---|---|---|
| 100 | 6613 | | $ AS PER PREMIUM COMPUTATION |

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1978

The company located these documents in its business records. At this time, the company is not certifying that these documents constitute a complete and accurate copy of the policy.

Form C-2016-0   PA   Printed in U.S.A. (NS)

**PREMIUM AUDIT COPY**

HART000260

**MJG**

## Resident Agent Countersignature Endorsement

| Co. Code | | Co. Code | |
|---|---|---|---|
| 1 | Hartford Fire Insurance Company | 6 | New York Underwriters Insurance Company |
| 5 | Hartford Accident and Indemnity Company | 7 | Twin City Fire Insurance Company |
| 3 | Hartford Casualty Insurance Company | 8 | |

**THE HARTFORD**

This Endorsement forms a part of.
☒ Policy No. ☐ *Bond No. ............ **10 C ML0740V**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address

**CENTRICO INC**
**100 FAIRWAY COURT**
**NORTHVALE N J 07647**

| Effective date | Effective hour is the same as stated |
|---|---|
| **10 25 82** | in the Declarations of the Policy. |

*Note: If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| **N J** | **FRED S JAMES AND CO INC OF N Y 252170** |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| 5 | ~~XXXXXXXX~~ Bodily Injury **LIAB.** | $ **30,420.** | 5 | General Liability | $ **121,680.** |
| 5 | Medical Payments | $ **INCL** | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| | Comprehensive | $ | | Glass | $ |
| | Collision | $ | | Bond | $ |
| 5 | Other (specify) **PIP** | $ **INCL** | | Other (specify) | $ |
| 5 | **UM** | **INCL** | | | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

Form G-1760-8 Printed in U.S.A.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000261

# CASUALTY INSURANCE POLICY

**GENERAL POLICY PROVISIONS**    **Form 8117**

**THE HARTFORD**

The member company of **THE HARTFORD INSURANCE GROUP** designated on the Declarations page as the Insurer (a stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the *named insured* as follows:

## COVERAGE

Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the *insured* in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy,

and the cost of bail bonds required of the *insured* because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the *insured* for first aid to others at the time of an accident, for *bodily injury* to which this policy applies;

(d) reasonable expenses incurred by the *insured* at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

**"automobile"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include *mobile equipment;*

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

**"collapse hazard"** includes "structural property damage" as defined herein and *property damage* to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The *collapse hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard* or the *underground property damage hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract;*

**"completed operations hazard"** includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured*. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The *completed operations hazard* does not include *bodily injury* or *property damage* arising out of

(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

*"elevator"* means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an *automobile* servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

*"explosion hazard"* includes *property damage* arising out of blasting or explosion. The *explosion hazard* does not include *property damage* (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the *named insured* by independent contractors, or (3) included within the *completed operations hazard* or the *underground property damage hazard*, or (4) for which liability is assumed by the *insured* under an *incidental contract*;

*"incidental contract"* means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) *elevator* maintenance agreement;

*"insured"* means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

*"mobile equipment"* means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the

*named insured*, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

*"named insured"* means the person or organization named in Item 1. of the declarations of this policy;

*"named insured's products"* means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

*"occurrence"* means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*;

*"policy territory"* means:
(1) the United States of America, its territories or possessions, or Canada, or
(2) international waters or air space, provided the *bodily injury* or *property damage* does not occur in the course of travel or transportation to or from any other country, state or nation, or
(3) anywhere in the world with respect to damages because of *bodily injury* or *property damage* arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

*"products hazard"* includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others;

*"property damage"* means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period;

*"underground property damage hazard"* includes underground property damage as defined herein and *properly damage* to any other property at any time resulting therefrom. "Underground property damage" means *property damage* to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The *underground property damage hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract*.

## DESCRIPTION OF TERMS USED AS PREMIUM BASES

When used as a premium basis for:

(a) Comprehensive General Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance, *"admissions"* means the total number of persons, other than employees of the *named insured*, admitted to the event covered by the insurance or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(b) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance; Owners' and Contractors' Protective Liability Insurance, *"cost"* means the total cost to the *named insured* with respect to operations performed for the *named insured* during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(c) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance or Completed Operations and Products Liability Insurance, *"receipts"* means the gross amount of money charged by the *named insured* for such operations during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

(d) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance which includes coverage for structural alterations, new construction and demolition operations, *"remuneration"* means the entire remuneration earned during the policy period by proprietors and by all employees of the *named insured*, other than chauffeurs (except operators of *mobile equipment*) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

The Internal does business and does not constitute a complete and accurate copy of the policy.

2

(e) Comprehensive General Liability Insurance or Completed Operations and Products Liability Insurance, *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division;

(f) Contractual Liability Insurance, *"cost"* means the total cost to any indemnitee, with respect to any contract which is insured, of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or the subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(g) Garage Insurance, *"remuneration"* means (a) the entire remuneration earned during the policy period by each Class A employee and each Class C employee or of the *named insured*, subject to an average weekly maximum of $100, and (b) the remuneration of each Class B person at a fixed amount of $2,000 per annum with respect to Dealer Risks (Hazard 1) or $5,200 per annum with respect to Non-Dealer Risks (Hazard 2)

*"Class A"* means all clerical office employees

*"Class B"* means all proprietors and officers active in the business, and inactive proprietors or officers (other than an inactive proprietor or officer who is a spouse of an active proprietor or officer) who customarily drive an *automobile*

managers, drivers, service managers and chauffeurs

*"Class C"* means all other employees;

(h) Comprehensive Automobile Liability Insurance,

(1) *"cost of hire"* means the amount incurred for (a) the hire of *automobiles*, including the entire remuneration of each employee of the *named insured* engaged in the operation of such *automobiles* subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of *"cost of hire"* shall be 5% of the applicable *hired automobile* rates, provided the owner of such *hired automobile* has purchased *automobile* Bodily Injury Liability and Property Damage Liability insurance covering the interest of the *named insured* on a direct primary basis as respects such *automobile* and submits evidence of such insurance to the *named insured;*

(2) *"Class 1 persons"* means the following persons, provided their usual duties in the business of the *named insured* include the use of *non-owned automobiles:* (a) all employees, including officers, of the *named insured* compensated for the use of such *automobiles* by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the *named insured;*

(3) *"Class 2 employees"* means all employees, including officers, of the *named insured*, not included in Class 1 persons.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMERS COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to *bodily injury* or *property damage*

(1) with respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the *insured* is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

C. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material*, if

(1) the *nuclear material* (a) is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured* or (b) has been discharged or dispersed therefrom;

(2) the *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

(3) the *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear*

*facility*, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

II. As used in this exclusion:

*"hazardous properties"* include radioactive, toxic or explosive properties;

*"nuclear material"* means *source material, special nuclear material* or *byproduct material;*

*"source material"*, *"special nuclear material"*, and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"waste"* means any waste material (1) containing *byproduct material* and (2) resulting from the operation by any person or organization of any *nuclear facility* included within the definition of *nuclear facility* under paragraph (a) or (b) thereof;

*"nuclear facility"* means

(a) any *nuclear reactor*,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing *spent fuel*, or (3) handling, processing or packaging *waste*,

(c) any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste*,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"property damage"* includes all forms of radioactive contamination of property.

Form 8117

3

The content of this archive is not verified. It may contain typos. In general a business document like this does not constitute a legal document. This archive does not guarantee that these documents constitute a complete and accurate copy of the policy.

HART000264

Case 2:20-cv-09741-BRM-SDA   Document 63-33   Filed 11/18/22   Page 379 of 612 PageID: 5776

## CONDITIONS

**1. Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured*, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the *named insured*.

The *named insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

**2. Inspection and Audit** The company shall be permitted but not obligated to inspect the *named insured's* property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *named insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the *named insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for *bodily injury* liability or for *property damage* liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**4. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

**5. Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the *insured* to determine the *insured's* liability, nor shall the company be impleaded by the *insured* or his legal representative. Bankruptcy or insolvency of the *insured* or of the *insured's* estate shall not relieve the company of any of its obligations hereunder.

**6. Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer bas paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights.

**8. Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

**9. Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the *named insured* shall die, such insurance as is afforded by this policy shall apply (1) to the *named insured's* legal representative, as the *named insured*, but only while acting within the scope of his duties as such, and (2) with respect to the property of the *named insured*, to the person having proper temporary custody thereof, as *insured*, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

**11. Cancellation** This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing.

If the *named insured* cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12. Declarations** By acceptance of this policy, the *named insured* agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its President and a Secretary, but the same shall not be binding unless countersigned on the declarations page by a duly authorized agent of the company.

Michael S. Wilder, *Secretary*

Donald R. Frahm, *President*

This document is a scanned copy of the original policy that is contained in the company's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the original.

Form B117 Printed in U. S. A. (ISO: AG-00-01 Rd 1-73)      4

HART000265

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Changes in Policy
Temporary Substitute Autos;
Autos Owned by Partners;
Who is Insured**



**THE HARTFORD**

**A.** **"PART II — WHICH AUTOS ARE COVERED AUTOS" is changed by adding the following:**

    **D. TEMPORARY SUBSTITUTE AUTOS**

        Any **auto you** do not own while used as a temporary substitute for an **auto you** do own is a covered **auto** for the same LIABILITY INSURANCE and UNINSURED MOTORISTS INSURANCE as is provided by the policy for the **auto you** do own, but only if that owned **auto** is out of normal use because of its breakdown, repair, servicing, **loss** or destruction.

    **E. AUTOS OWNED BY PARTNERS**

        If **you** are a partnership, no **auto** owned by any of **your** partners or members of their households is a covered **auto** for the LIABILITY INSURANCE unless the policy is endorsed to cover that **auto** as a covered **auto** and the proper premium is charged.

**B.** **If your policy is a Garage Policy the following additional changes are made:**

    **(1) "WHO IS AN INSURED" of "PART IV — LIABILITY INSURANCE" is changed as follows:**

        The following is added after section b. of part 2, **"For Garage Operations Other Than Covered Autos":**

        c.  Any partner of **yours** is an **insured** but only to the extent of his or her liability as **your** partner.

    **(2) "WHO IS AN INSURED" of "PART V — GARAGEKEEPERS INSURANCE" is changed by adding the following after section 2:**

        3.  Any partner of **yours** is an **insured** but only to the extent of his or her liability as **your** partner.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form C-3023-0**  Printed in U.S.A.  (NS)

HART000266



CA 02 24
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN POLICY — CANCELLATION

A. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

1. If **we** cancel the policy **we** will mail notice to any lienholder shown in the policy.

2. If **we** cancel for any reason other than nonpayment of premium **we** will mail **you** and any lienholder shown in the policy at least 30 days notice.

B. The following Condition is added:

**NON-RENEWAL**

1. If **we** decide not to renew or continue this policy **we** will mail **you** and any lienholder shown in this policy notice at least 30 days before the end of the policy period.

2. If **we** fail to mail proper notice of non-renewal and **you** have failed to pay any required premium when due this policy will terminate at the end of the current policy period.

3. Any notice of non-renewal will be mailed to **your** last known address. However, **we** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 02 24 (Ed. 01 78)        Copyright, Insurance Services Office, 1977

HART000267



CA 22 30
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
## (NEW JERSEY)

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in **bold face**, other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions"**.

The Company agrees with the **named insured**, subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I

### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay personal injury protection benefits consisting of

(a) **medical expense benefits,**

(b) **income continuation benefits,**

(c) **essential services benefits,**

(d) **survivor benefits,** and

(e) **funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person**, caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

### Exclusions

The insurance under this endorsement does not apply:

(a) to **bodily injury** to a person whose conduct contributed to the injury in any of the following ways:

   (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

   (2) while acting with specific intent to cause injury or damage to himself or others;

(b) to **bodily injury** to the **named insured** or any **relative** of the **named insured** sustained while occupying, using or entering into or alighting from a **private passenger automobile** which is not an **insured automobile** under this policy, if he is required to maintain automobile liability insurance coverage with respect to the automobile under the New Jersey Automobile Reparation Reform Act;

(c) to **bodily injury** to any person, other than the **named insured** or a **relative** of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey;

(d) to **bodily injury** arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

(e) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(f) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

### Definitions

When used in reference to this insurance:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"eligible injured person"** means

(a) the **named insured** or any **relative** of the **named insured**, if the **named insured** or **relative** sustains **bodily injury**

   (1) while occupying, using, entering into or alighting from a **private passenger automobile**, or

   (2) while a **pedestrian**, caused by a **private passenger automobile** or as a result of being struck by an object propelled by or from such an automobile; or

(b) any other person who sustains **bodily injury**

   (1) while, with the permission of the **named insured**, occupying, using, entering into or alighting from the **insured automobile**, or

   (2) while a **pedestrian**, caused by the **insured automobile** or as a result of being struck by an object propelled by or from the **insured automobile**;

**"essential services benefits"** means an amount not exceeding a limit of $12.00 per day and a total limit of $4,380 payable to an **eligible injured person** as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his lifetime and which he would ordinarily have performed not for **income** but for the care and maintenance of himself and his **relatives**;

**"funeral expense benefits"** means an amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred;

**"income"** means salary, wages, tips, commissions, fees and other earnings derived from work or employment;

**"income continuation benefits"** means an amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an **income producer** during his lifetime, as a result of **bodily injury disability**;

The company has located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, 1977

HART000268

"income producer" means a person who, at the time of the accident, was in an occupational status, earning or producing income;

"insured automobile" means an automobile with respect to which the named insured is required to maintain automobile liability insurance coverage under the New Jersey Automobile Reparation Reform Act, to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged;

"medical expense benefits" means all reasonable expenses incurred for medical, surgical and dental treatment, professional nursing, hospital and rehabilitation services, x-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses incurred for treatment prescribed by persons licensed to practice medicine, surgery, psychology or chiropractic, or for any non-medical remedial treatment rendered in accordance with a recognized religious method of healing;

"named insured" means the person or organization named in the insured in the declarations. If the insured automobile is owned by a farm family co-partnership or corporation, the term "named insured" also includes the head of the household of each family designated in the policy as having a working interest in the farm;

"pedestrian" means any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks and includes any person who is entering into or alighting from such a vehicle;

"private passenger automobile" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1)  a private passenger or station wagon type automobile,

(2)  a pick-up or panel truck or delivery sedan, or

(3)  a utility automobile designed for personal use as a camper or motor home or for family recreational purposes: but

a private passenger automobile does not include a motorcycle an automobile used as a public or livery conveyance for passengers, a pick-up or panel truck, delivery sedan or utility automobile customarily used for business, occupational or professional purposes other than farming or ranching or a utility automobile customarily used for the transportation of passengers other than members of the user's family or their guests;

"relative" means a person related to the named insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the named insured;

"survivor benefits" means the amount or amounts payable in the event of the death of an eligible injured person as determined in subdivision (1) or (2) hereof, as appropriate:

(1)  if the eligible injured person was an income producer at the time of the accident, an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of income resulting from his injury prior to his death;

(2)  if the eligible injured person ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount not to exceed the difference between $4,380 and all basic essential services benefits paid with respect to his injury prior to death.

## Limit of Liability

Any amount payable by the Company as personal injury protection benefits with respect to bodily injury shall be reduced by all amounts paid, payable or required to be provided under any workmen's compensation or employees temporary disability law, or under Medicare provided under federal law.

The applicable limit on income continuation benefits applies separately to each full regular and customary work week of an eligible injured person. If his disability from work or employment consists of or includes only a part of such a week, the Company shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the part week bears to the number of days in his full work week.

## Policy Period; Territory

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions or Canada.

## Conditions

1.  **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the eligible injured person, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each eligible injured person to the Company or any of its authorized agents as soon as practicable. If any eligible injured person, his legal representative or survivors shall institute legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such eligible injured person, his legal representative or his survivors.

2.  **Medical Reports; Proof of Claim.** As soon as practicable the eligible injured person or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The eligible injured person shall submit to physical examination by physicians when and as often as the Company may reasonably require, and a copy of the medical report will be forwarded to such eligible injured person if requested.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute true and accurate copy of the policy.

   Copyright, Insurance Services Office, 1977   Page 2 of 4

HART000269

3. **Multiple Policies Applicable to One Accident: Non-duplication of Benefits; Priority of Complying Policies.** Regardless of the number of automobiles insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act, or the number of insurers or policies affording such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to bodily injury to any one person as the result of any one accident shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

This insurance applies on a primary basis to bodily injury to the named insured and his relative and on a secondary basis to all other eligible injured persons. Similarly, the basic personal injury protection coverage provided by other complying policies applies on a primary basis to bodily injury to those persons who are named insureds under such policies and their relatives. If an eligible injured person to whom this insurance applies on a secondary basis has other basic personal injury protection coverage under another complying policy applicable to his bodily injury on a primary basis, all claims for basic personal injury protection benefits shall first be made against the insurer issuing the other complying policy. No basic personal injury protection benefits shall be due and payable under this insurance unless the other insurer fails to pay such benefits by reason of insolvency and the Company has been given written notice by the claimant of such failure. "Complying Policy" means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.

4. **Reimbursement and Trust Agreement.** Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement

   (a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter;

   (b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;

   (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

   (d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

5. **Payment of Personal Injury Protection Benefits.** Medical expense benefits and essential services benefits may be paid at the option of the Company to the eligible injured person or the person or organization furnishing the products or services for which such benefits are due. In the event of the death of an eligible injured person any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the eligible injured person's estate.

Benefits payable under subdivision (1) of the definition of survivor benefits are payable to the eligible injured person's surviving spouse, or if there is no surviving spouse, to his surviving children, or if there are no surviving spouse or surviving children, to the eligible injured person's estate.

Benefits payable under subdivision (2) of the definition of survivor benefits are payable to the person who has incurred the expense of providing essential services.

Funeral expense benefits are payable to the eligible injured person's estate.

## SECTION II

## EXTENDED MEDICAL EXPENSE BENEFITS COVERAGE

The Company will pay medical expense benefits not to exceed the total aggregate amount stated in the schedule and funeral expense benefits with respect to bodily injury sustained by an insured person, caused by an accident occurring during the policy period within the United States of America, its territories or possessions or Canada and arising out of the ownership, maintenance or use, including loading and unloading, of an insured automobile or of a highway vehicle not owned by or furnished or available for the regular use of the named insured or any relative of the named insured.

### Exclusions

The insurance under Section II is subject to all of the exclusions applicable to Section I, except that the word "person" in exclusion (c) is replaced by the word "pedestrian".

### Definitions

The definitions under Section I apply to Section II and under Section II:

"highway vehicle" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-treads or (3) a vehicle while located for use as a residence or premises;

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000270

sured person" means

(a) the **named insured** or any relative of the named insured, if the named insured or relative sustains bodily injury

  (1) while occupying, using, entering into or alighting from a **highway vehicle**; or

  (2) while a **pedestrian**, caused by a **highway vehicle**;

(b) any other person who sustains **bodily injury** while occupying a **highway vehicle** (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such **highway vehicle** is being operated by the **named insured** or a relative of the **named insured** or any other person using such **highway vehicle** with the permission of the **named insured**;

(c) any other person who sustains **bodily injury** while occupying an **insured automobile** if such **insured automobile** is being operated by the **named insured** or a relative of the **named insured** or any other person using such **insured automobile** with the permission of the **named insured**.

**Conditions**

Conditions 1, 2 and 4 of Section I apply to Section II, substituting the term "insured person" for "eligible injured person" wherever it appears therein. The following additional condition applies under Section II:

**Other Insurance or Benefits.** This insurance does not apply to loss or expense with respect to which an **insured person** is entitled to benefits under any workmen's compensation law or Medicare provided under federal law or under Section 4 of the New Jersey Automobile Reparation Reform Act.

This insurance does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefor under any other automobile no-fault law or under any other automobile medical payments insurance.

### SECTION III

In consideration of the insurance afforded under **Sections I** and **II** of this endorsement, and the adjustment of applicable rates:

(a) any amount payable for economic loss under uninsured motorists coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury** to an **eligible injured person**;

(b) any automobile medical payments coverage afforded under the policy is deleted with respect to an automobile which is an **insured automobile**.

### SECTION IV

#### Premium Recomputation

The premium for the policy is based on rates which have been reduced in accordance with **Section 18** of the **New Jersey Automobile Reparation Reform Act** to reflect the limitations on the right to recover damages imposed by **Section 8** of said Act. If a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, **Section 8** of the Act invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy on the basis of revised rates which are subject to approval by the Commissioner of Insurance.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

(c) to property contained in or struck by a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, but this exclusion does not apply to property of the named insured or his relatives while contained in or struck by a highway vehicle owned by a designated insured or his relatives;

(d) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law;

(e) to the first $100 of the amount of property damage to the property of each insured as the result of any one accident;

(f) so as to inure directly or indirectly to the benefit of any insurer of property;

(g) to property damage arising out of the ownership, maintenance or use of a hit-and-run vehicle;

## II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) highway vehicles to which this insurance applies,

(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

(b) The limit of property damage liability stated in the schedule is the total limit of the company's liability for all damages because of property damage to all property of one or more insureds as the result of any one accident.

(c) Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is an insured shall be reduced by

(1) all sums paid on account of such bodily injury or property damage by or on behalf of

(i) the owner or operator of the uninsured highway vehicle and

(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage,

including all sums paid under the bodily injury or property damage liability coverage of the policy, and

(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

(d) Any payment made under this insurance to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the bodily injury or property damage liability coverage of the policy.

(e) The company shall not be obligated to pay under this insurance that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under the medical payments or medical expense coverage of the policy or which represents loss paid or payable to the insured under any automobile physical damage insurance of the policy.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"bodily injury" means bodily injury, sickness or disease, including death, sustained by an insured under (a) or (b) of the Persons Insured provision;

"designated insured" means an individual named in the schedule under Designated Insured and also includes his spouse, if a resident of the same household;

"highway vehicle" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"hit-and-run vehicle" means (i) a highway vehicle which causes an accident resulting in bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident, or (ii) a highway vehicle which without physical contact with the insured or with a vehicle which the insured is occupying at the time of the accident causes bodily injury to an insured arising out of an accident in New Jersey, provided:

(a) there cannot be ascertained the identity of either the operator or owner of such highway vehicle; and

(b) the insured or someone on his behalf shall have

The company located these documents in its business records and does not certify that these documents constitute a complete and accurate copy of the policy.

reported the accident within 48 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

(c) at the company's request, the insured or his legal representative makes available for inspection the vehicle which the insured was occupying at the time of the accident; and

(d) with respect to subdivision (ii) the facts of such accident can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such accident;

"insured highway vehicle" means a highway vehicle:

(a) described in the schedule as an insured highway vehicle to which the bodily injury and property damage liability coverage of the policy applies;

(b) while temporarily used as a substitute for an insured highway vehicle as described in subparagraph (a) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) while being operated by the named or designated insured or by the spouse of either if a resident of the same household;

but the term "insured highway vehicle" shall not include:

(i) a vehicle while used as a public or livery conveyance, unless such use is specifically declared and described in the policy;

(ii) a vehicle while being used without the permission of the owner;

(iii) under subparagraphs (b) and (c) above, a vehicle owned by the named insured, any designated insured or any resident of the same household as the named or designated insured; or

(iv) under subparagraphs (b) and (c) above, a vehicle furnished for the regular use of the named insured or any resident of the same household;

"named insured" means the individual named in item 1 of the declarations and also includes his spouse, if a resident of the same household;

"occupying" means in or upon or entering into or alighting from;

"property damage" means injury to or destruction of (i) an insured highway vehicle owned by the named insured or his spouse, if a resident of the same household, (ii) any property owned by an insured under (a) or (b) of the Persons Insured provision while contained in such insured highway vehicle and (iii) any property owned by an insured under (a) of the Persons Insured provision while contained in any insured highway vehicle;

"State" includes the District of Columbia, a territory or possession of the United States, and a province of Canada;

"uninsured highway vehicle" means:

(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or

(b) a hit-and-run vehicle, but only with respect to bodily injury caused thereby;

but the term "uninsured highway vehicle" shall not include:

(i) an insured highway vehicle,

(ii) a highway vehicle which is owned or operated by a self-insurer within the meaning of any vehicle financial responsibility law, motor carrier law or any similar law,

(iii) a highway vehicle which is owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing.

## VI.  ADDITIONAL CONDITIONS

### A.  Policy Provisions.

None of the Insuring Agreements, Exclusions, Conditions or other provisions of the policy shall apply to the insurance afforded by this endorsement except the Conditions "Notice" (or "Insured's Duties in the Event of Occurrence, Claim or Suit"), "Changes", "Assignment", "Cancellation" and "Declarations".

### B.  Premium.

If during the policy period the number of insured highway vehicles owned by the named insured or spouse or the number of dealer's license plates issued to the named insured changes, the named insured shall notify the company during the policy period of any change and the premium shall be adjusted in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

### C.  Proof of Claim.

As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require and he, or in the event of his incapacity his legal representative or in the event of his death his legal representative or the person or persons

The company located these documents in its company files and does not certify that these documents constitute a complete and accurate copy of the policy.

CA 2X 14 (Ed. 01 78)          Copyright, Insurance Services Office, 1977                    Page 3 of 4

HART000273

entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records.

The insured or other person making claim for damage to property shall file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement setting forth the interest of the insured and of all others in the property affected, any encumbrances thereon, the actual cash value thereof at time of loss, the amount, place, time and cause of such loss, and the description and amounts of all other insurance covering such property. Upon the company's request, the insured shall exhibit the damaged property to the company.

**D.   Assistance and Cooperation of the Insured.**

After notice of claim under this insurance, the company may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the bodily injury or property damage; and in any action against the company, the company may require the insured to join such person or organization as a party defendant.

**E.   Notice of Legal Action.**

If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury or property damage against any person or organization legally responsible for the use of a highway vehicle involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.

**F.   Other Insurance.**

With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

With respect to property damage, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance of any kind applicable to such property damage, and this insurance shall apply only in the amount by which the limit of liability for this coverage exceeds the amount recoverable under such other insurance.

**G.   Arbitration.**

If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such per-

son and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

**H.   Trust Agreement.**

In the event of payment to any person under this insurance:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or property damage because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this insurance;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision.

**I.   Payment of Loss by the Company.**

Any amount due hereunder is payable

(a) to the insured, or

(b) if the insured be a minor to his parent or guardian, or

(c) if the insured be deceased to his surviving spouse, otherwise

(d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents;

provided, the company may at its option pay any amount due hereunder in accordance with division (d) hereof;

**J.   Action Against Company.**

No action shall lie against the company unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of the policy applicable to this coverage.

**K.**   This endorsement replaces any other provisions of the policy, including any endorsement forming a part thereof, affording similar insurance with respect to any damages arising out of the ownership, maintenance or use of an uninsured vehicle or a hit-and-run vehicle.

The Hartford produced this document and does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 2X 14** (Ed. 01 78)            Copyright, Insurance Services Office, 1977              Page 4 of 4

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

It is agreed that:

A.  The policy does not apply:

1.  Under any Liability Coverage, to **bodily injury** or **property damage**

    a.  with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    b.  resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

    a.  the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

    b.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

    c.  the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c applies only to **property damage** to such **nuclear facility** and property thereat.

B.  As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties:

"**nuclear material**" means **source material, special nuclear material** or **byproduct material;**

"**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

"**waste**" means any waste material (a) containing **byproduct material** and (b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph 1 or 2 thereof;

"**nuclear facility**" means

1.  any **nuclear reactor,**

2.  any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel,** or (c) handling, processing or packaging **waste**,

3.  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

4.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**property damage**" includes all forms of radioactive contamination of property.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office,  1977

## Comprehensive General Liability Insurance Coverage Part *(Continued)*

### I. COVERAGE A — BODILY INJURY LIABILITY

#### COVERAGE B — PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

**Coverage A** – *bodily injury* or

**Coverage B** – *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of
  (1) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured,* or
  (2) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured;*
  but this exclusion does not apply to the parking of an *automobile* on premises owned by, rented to or controlled by the *named insured* or the ways immediately adjoining, if such *automobile* is not owned by or rented or loaned to any *insured;*

(c) to *bodily injury* or *property damage* arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to *bodily injury* or *property damage* arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured;*

(e) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of
  (1) any watercraft owned or operated by or rented or loaned to any *insured,* or
  (2) any other watercraft operated by any person in the course of his employment by any *insured;*
  but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the *named insured;*

(f) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to
  (1) liability assumed by the *insured* under an *incidental contract,* or
  (2) expenses for first aid under the Supplementary Payments provision;

(h) to *bodily injury* or *property damage* for which the *insured* or his indemnitee may be held liable
  (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or
  (2) if not so engaged, as an owner or lessor of premises used for such purposes,
  if such liability is imposed
  (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or
  (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
  but part (ii) of this exclusion does not apply with respect to liability of the *insured* or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract;*

(k) to *property damage* to
  (1) property owned or occupied by or rented to the *insured,*
  (2) property used by the *insured,* or
  (3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;
  but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to *property damage* (other than to *elevators*) arising out of the use of an *elevator* at premises owned by, rented to or controlled by the *named insured;*

(l) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
  (1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or
  (2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*
  but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(n) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(o) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q) to *property damage* included within:
  (1) the *explosion hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "x";

The company located these documents in its business files and certify that these documents constitute a complete and accurate copy of the policy.

## Comprehensive General Liability Insurance Coverage Part *(Continued)*    THE HARTFORD

(2) the *collapse hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "c".

(3) the *underground property damage hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "u".

## II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured*; and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of *mobile equipment* registered under any motor vehicle registration law,

(i) an employee of the *named insured* while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the *named insured* any such equipment registered in the name of the *named insured* and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an *insured* under this paragraph (e) with respect to:

(1) *bodily injury* to any fellow employee of such person injured in the course of his employment, or

(2) *property damage* to property owned by, rented to, in charge of or occupied by the *named insured* or the employer of any person described in subparagraph (ii).

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or suits brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage A** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of (1) all *bodily injury* included within the *completed operations hazard* and (2) all *bodily injury* included within the *products hazard* shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate":

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured*, including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *property damage* included within the *products hazard* and all *property damage* included within the *completed operations hazard*.

Such aggregate limit shall apply separately to the *property damage* described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the *named insured*.

**Coverages A and B** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

## IV. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3503-1   Printed in U.S.A.   (ISO: GL 00 02 01 73)          CGL-3          HART000277

## I. COVERAGE E — PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains *bodily injury* caused by accident all reasonable *medical expense* incurred within one year from the date of the accident on account of such *bodily injury*, provided such *bodily injury* arises out of (a) a condition in the *insured premises* or (b) operations with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy.

### Exclusions

This insurance does not apply:

**(a)** to *bodily injury*

**(1)** arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

(ii) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured*;

but this exclusion does not apply to the parking of an *automobile* on the *insured premises*, if such *automobile* is not owned by or rented or loaned to any *insured*;

**(2)** arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

**(3)** arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any watercraft owned or operated by or rented or loaned to any *insured*, or

(ii) any other watercraft operated by any person in the course of his employment by any *insured*;

but this exclusion does not apply to watercraft while ashore on the *insured premises*; or

**(4)** arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured*;

**(b)** to *bodily injury*

**(1)** included within the *completed operations hazard* or the *products hazard*;

**(2)** arising out of operations performed for the *named insured* by independent contractors other than (i) maintenance and repair of the *insured premises* or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

**(3)** resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the *named insured* is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the *named insured* is such an owner or lessor;

**(4)** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

**(c)** to *bodily injury*

**(1)** to the *named Insured*, any partner therein, any tenant or other person regularly residing on the *insured premises* or any employee of any of the foregoing if the *bodily injury* arises out of and in the course of his employment therewith;

**(2)** to any other tenant if the *bodily injury* occurs on that part of the *insured premises* rented from the *named insured* or to any employee of such a tenant if the *bodily injury* occurs on the tenant's part of the *insured premises* and arises out of and in the course of his employment for the tenant;

**(3)** to any person while engaged in maintenance and repair of the *insured premises* or alteration, demolition or new construction at such premises;

**(4)** to any person if any benefits for such *bodily injury* are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

**(5)** to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sports activities in the policy with respect to Premises Medical Payments Coverage;

**(d)** to any *medical expense* for services by the *named insured*, any employee thereof or any person or organization under contract to the *named insured* to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all *medical expense* for *bodily injury* to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all *medical expense* for *bodily injury* to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the schedule as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*insured premises*" means all premises owned by or rented to the *named insured* with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy, and includes the ways immediately adjoining on land;

"*medical expense*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services, and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

## CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the *bodily injury* or *property damage*;

(c) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to *bodily injury* or *property damage* for which the indemnitee may be held liable

   (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

   (2) if not so engaged, as an owner or lessor of premises used for such purposes,

   if such liability is imposed

   (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

   (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

   but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the *insured* may be held liable in an action on a contract by a third party beneficiary for *bodily injury* or *property damage* arising out of a project for a public authority; but this exclusion does not apply to action by the public authority or any other person or organization engaged in the project;

(g) to *property damage* to

   (1) property owned or occupied by or rented to the *insured*,

   (2) property used by the *insured*, or

   (3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

(h) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

   (1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

   (2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured*;

   but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured*;

(j) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(k) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(m) As respects any agreement relating to construction operations, to *bodily injury* or *property damage* arising out of

   (1) construction, maintenance or repair of watercraft or loading or unloading thereof, or

   (2) operations within fifty feet of any railroad property affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(n) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(o) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

When stated in the schedule as applicable, the following exclusions also apply to *contractual liability* assumed by the *insured*.

This exclusion does not apply:

(p) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *products hazard*;

(q) to *property damage* included within

   (1) the *explosion hazard*,

   (2) the *collapse hazard*, or

   (3) the *underground property damage hazard*.

## II.   PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

## III.   LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or *suits* brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage YB** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

**Coverage ZB** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the *named insured*.

Coverages YB and ZB — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

HART000279

# CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

## IV. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

*"contractual liability"* means liability expressly assumed under a written contract or agreement; provided, however, that *contractual liability* shall not be construed as including liability under a warranty of the fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

*"suit"* includes an arbitration proceeding to which the *insured* is required to submit or to which the *insured* has submitted with the company's consent.

## V. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

## VI. ADDITIONAL CONDITIONS

**Arbitration**

The company shall be entitled to exercise all of the *insured's* rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

**Premium**

When used as a premium basis:

1. the word *"cost"* means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which *"cost"* is the basis of premium, regardless of whether any liability is assumed under such contracts by the *insured*. It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the *insured*, or others including all fees, allowances, bonuses or commissions made, paid or due. It shall not include the cost of any operations to which exclusion (m) applies.

2. the word *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Amendment of Termination Provisions
for General Liability Insurance
New Jersey

 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No..........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

It is agreed that:

A.   The second sentence in the first paragraph of the "Cancellation" Condition is replaced by the following:

If the *named insured* fails to discharge when due any of his obligations in connection with the payment of premium or any installment of such premium, whether payable directly to the company or its agent, or indirectly under any premium finance plan or extension of credit, this policy may be cancelled by the company by mailing to the *named insured*, at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. With respect to cancellation for a reason other than non-payment of premium, this policy may be cancelled by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than thirty days thereafter such cancellation shall be effective.

B.   The following Condition is added:

Renewal

If the company elects not to renew this policy, it shall mail to the *named insured*, at the address shown in this policy, written notice of nonrenewal at least thirty days prior to the expiration date of this policy; provided that, notwithstanding the failure of the company to comply with the foregoing provisions of this paragraph, this policy shall terminate automatically on such expiration date, if the *named insured* has failed to discharge when due any of his obligations in connection with the payment of premium or any installment of such premium, whether payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit.

The mailing of notice as aforesaid shall be sufficient proof of notice. Delivery of such written notice shall be equivalent to mailing.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by................................................................................
                                                                          *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-4100-0   Printed in U.S.A.   (G-535-1   GL-02030776)

HART000281

## General Liability
## Amendatory Endorsement — Additional Definition



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No.......................................
Issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................Effective hour is the same
as stated in the Declarations of the Policy.

It is agreed that the following definition is added:

*"loading or unloading"*, with respect to an *automobile*, means the handling of property after it is moved from the place where it is accepted for movement into or onto an *automobile* or while it is in or on an *automobile* or while it is being moved from an *automobile* to the place where it is finally delivered, but "loading or unloading" does not include the movement of property by means of a mechanical device (other than a hand truck) not attached to the *automobile*.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..........................................................................................
*Authorized Agent*

**Form L-4128-0**   Printed in U.S.A.   (ISO: GL 00 19 07 78)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.



**Host Liability Insurance**



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No.........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**
**OWNERS', LANDLORDS', AND TENANTS' LIABILITY INSURANCE**

It is agreed that exclusion (h) does not apply to liability imposed upon the insured as the result of the giving or serving of alcoholic beverages at
functions incidental to the named insured's business, provided the named insured is not engaged in the business of manufacturing, distributing, selling
or serving of alcoholic beverages, and provided further that there has been no intentional violation of any statute, regulation, or ordinance committed
by or at the direction of the insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by...........................................................................
*Authorized Agent*

Form L-4191-0   Printed in U.S.A.   (N.S.)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000283

**Non-Owned Snowmobiles Endorsement**     **THE HARTFORD**

Named Insured and Address

| Policy Number |
|---|

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

PREMISES MEDICAL PAYMENTS INSURANCE

It is agreed that sub-paragraph (ii) under part (2) of exclusion (a) is replaced by the following:

(ii)  the operation or use of any snowmobile or trailer designated for use therewith

(a)  owned or operated by or rented or loaned to any insured, or

(b)  operated by any person in the course of his employment by any insured:

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................................................
                                                *Authorized Agent*

**Form L-4329-0**  Printed in U.S.A.  (ISO: GL 00 27 03 81)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

## Non-Owned Snowmobiles Endorsement



**THE HARTFORD**

Policy Number

Named Insured and Address

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date

Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

Comprehensive General Liability Insurance
Manufacturers and Contractors Liability Insurance
Owners, Landlords and Tenants Liability Insurance

It is agreed that Part 2 of Exclusion (c) is replaced by the following:

(2)   The operation or use of any snowmobile or trailer designed for use therewith

(i)    owned or operated by or rented or loaned to any **insured**, or

(ii)   operated by any person in the course of his employment by any **insured**;

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the Policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by _____

Form L-4330-0   Printed in U.S.A. (ISO: GL 00 26 0381)

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000285

# EXHIBIT 6

COMPANY COPY

REPLACEMENT — CASUALTY INSURANCE POLICY Form AI-63-0 DECLARATIONS Form AI-102-0

Form PC-222-0

|  | Annual Audit | Monthly | Participating |
|---|---|---|---|
| | Prem. Finance | Semi-Annual | Bureau | Retro |
| | Large Risk | Quarterly | Loss Control | Redacted |

INSURER →    Co. Code **5**

Previous Policy No.
**10 C ML0740W**

(No., Street, Town, County, State, Zip Code)
Individual ☐  Partnership ☒  Corporation
Joint Venture (Other) .....................
Period ........................ From

Producer's Name & Address    Producer's Code
JAMES INC OF N Y    252170 ✓

POLICY NO.    **10 C ML0740W**

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647

*Proe '92 Revised*

**10 25 83**  To  **10 25 84**

12:01 A.M., standard time at the address of the *named insured* as stated herein.

Audit Period: Annual. unless otherwise stated. ☐ Semi-Annual
☐ Quarterly
☐ Monthly

**3.** The advance premium for this policy is as stated below. Insurance is afforded by the Coverage Parts forming a part hereof, subject to ———— limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

### SUMMARY OF ADVANCE PREMIUMS

| COVERAGE PARTS | ADVANCE PREMIUM |
|---|---|
| **Comprehensive General Liability Insurance** | $ 97,966.00 |
| **Premises Medical Payments Insurance** | $ INCLUDED |
| **Contractual Liability Insurance** | $ INCLUDED |
| **Completed Operations and Products Liability Insurance** | $ |
| **Owners' and Contractors' Protective Liability Insurance** | $ |
| **Storekeepers' Insurance** | $ |
| **Personal Injury Liability Insurance** | $ |
| **Comprehensive — Plus General Liability Insurance** | $ |
| ERRORS AND OMISSIONS INSURANCE- EMPLOYEE BENEFITS PROGRAM | $ INCLUDED |
| | $ |
| | $ |
| **Business Auto** | $ 22,935.00 |
| **Truckers** | $ |
| **Garage** | $ |

| Form Numbers of Coverage Parts and endorsements not listed on Coverage Parts forming part of Policy at issue: C 2014-0  C 2013-0  C 2016-0  L 3505-0  L 3503-1  L 3523-0 | TOTAL ADVANCE PREMIUM | $ 120,901.00 |
|---|---|---|

If Policy Period more than one year: Gross Premium $        Discount $        Net Premium $
Premium is payable: On effective date of Policy $        1st Anniversary $        2nd Anniversary $

**4.** Business of the *named insured* is ———————→  MFG INDUSTRIAL SEPARATORS

ORIG 10-25-82

The company only located these documents in its ———— time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AI-102-0 CDB Printed in U.S.A.

HART000286    COMPANY COPY

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 C ML0740W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date | Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

**COMPREHENSIVE GENERAL LIABILITY**

### LIST OF ENDORSEMENTS FORMING PART OF POLICY AT ISSUE:

L 4100-0

L 4155-0

L 3025-0

L 3252-2

L 3243-0

L 3355-1

L 4152-0

L 4191-0

G 2240 3 B    ASSAULT AND BATTERY

G 2240 3 B    INCIDENTAL MALPRACTICE

G 2240 3 B    KNOWLEDGE AND NOTICE OF OCCURRENCE

G 2240 3 B    NOTICE OF CANCELLATION

G 2240 3 B    UNINTENTIONAL ERRORS OR OMISSIONS

AL 57-0

G 2240 3 B    PREMIUM COMPUTATION

L 4330-0

L 3991-0

G 1760-8    L 4128-0

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Reproduced from Hartford's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B    Printed in U S A

Countersigned by.....................................................
Authorized Agent

HART0002817

11/14/ ES

Fred S.James and Co Inc of N.Y.
252170

exp. date 10/25/84

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

Centrico Inc
100 Fairway Court
Northvale N J 07647

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Redacted

| Effective Date 10-25-83 | Effective hour is the same as stated in the Declarations of the policy. |

Endt. No.

## Uninsured Motorist Limits

State                  Limits

Illinois               30,000

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B  Printed in U S A

Countersigned by........................ HART000288

**Errors And Omissions Insurance —**
**Employee Benefit Programs**                    **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C MLO740N**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ................................................................... Effective hour is the same as stated in the Declarations of the policy.

## SCHEDULE

| | Limits of Liability | Estimated Advance Premium |
|---|---|---|
| $ **25,000** | each claim | |
| $ **75,000** | aggregate | $ **INCL** |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

## INSURING AGREEMENTS

I.    COVERAGE. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II.   DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. As respects such insurance as is afforded by the terms of this endorsement, the company shall:
  (a)  defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
  (b)  pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
  (c)  reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
  and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III.  DEFINITIONS.
  (a)  "Insured" — The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
  (b)  "Employee Benefit Programs" — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
  (c)  "Administration" — The unqualified word "Administration", wherever used, shall mean:
    (1)  giving counsel to employees with respect to Employee Benefit Programs;
    (2)  interpreting Employee Benefit Programs;
    (3)  handling of records in connection with Employee Benefit Programs;
    (4)  effecting enrollment of employees under Employee Benefit Programs;
    provided all such acts are authorized by the Named Insured.

IV.   ENDORSEMENT PERIOD, TERRITORY. This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

## EXCLUSIONS

This endorsement does not apply:
  (a)  to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
  (b)  to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
  (c)  to any claim for failure of performance of contract by an insurer;
  (d)  to any claim based upon:
    (1)  failure of stock to perform as represented by an insured,
    (2)  advice given by an insured to an employee to participate or not to participate in stock subscription plans.

## CONDITIONS

1.    **Policy Conditions.** All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2.    **Limits of Liability**
  (a)  Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
  (b)  $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
  (c)  The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. If the company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the company.
  (d)  The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3.    **Premium.** The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit.

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| | ..................... First 5,000 | $.............. |
| **300** | ..................... Next 5,000 | $.............. |
| | ..................... Over 10,000 | $.............. |
| | | Total $...................... |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by ...........................................................
                                        Authorized Agent

**Form L-4155-0**   Printed in U.S.A.

**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 C ML0740W**

This endorsement forms a part of the policy as numbered above,
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the, effective date of said policy
unless another effective date is stated herein.

Effective Date | Effective hour is the same as stated
in the Declarations of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with
respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and
subject to the following additional exclusions:

The insurance does not apply:

1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;

2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated
   below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| 3400 THIRD AVE FOSTER CITY CA | SAN MATEO BAY BUILDING ASSOCIATES | INCL | |
| 1270 MARKET ST BENSENVILLE IL AND | JOHN G TWIST CO | | |

ANY OTHER PREMISES UPON WHICH THE
NAMED INSURED IS REQUIRED IN A WRITTEN
AGREEMENT TO PROVIDE INSURANCE ON BEHALF
OF THE LESSOR AND OF WHICH THE COMPANY
IS NOTIFIED WITHIN THIRTY (30) DAYS OF
THE EXECUTION OF SAID WRITTEN AGREEMENT.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said
policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by .................................................
Authorized Agent

The company located these documents as
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form L-5025-0   Printed in U.S.A.   (ISO: GL 20 11 07 66)

HART000290

**BROAD FORM PROPERTY**
**DAMAGE ENDORSEMENT**
(Including Completed Operations)



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. C. XLO74OW
Issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ............................................................Effective hour is the
same as stated in the Declarations of the Policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

---

**Classification:**

99981

It is agreed that the insurance for **property damage** liability applies, subject to the following additional provisions:

A.  The exclusions relating to **property damage** to (1) property owned, occupied or used by or rented to the **Insured** or in the care, custody or control of the **Insured** or as to which the **Insured** is for any purpose exercising physical control and (2) work performed by or on behalf of the **named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (y) and (z):

(y)  to **property damage**

(1)  to property owned or occupied or rented to the **Insured**, or, except with respect to the use of **elevators**, to property held by the **Insured** for sale or entrusted to the **Insured** for storage or safekeeping,

(2)  except with respect to liability under a written sidetrack agreement or the use of **elevators** to

(a)  property while on premises owned by or rented to the **Insured** for the purpose of having operations performed on such property by or on behalf of the **Insured**,

(b)  tools or equipment while being used by the **Insured** in performing his operations,

(c)  property in the custody of the **Insured** which is to be installed, erected or used in construction by the **Insured**,

(d)  that particular part of any property, not on premises owned by or rented to the **Insured**,

(i)  upon which operations are being performed by or on behalf of the **Insured** at the time of the **property damage** arising out of such operations, or

(ii)  out of which any **property damage** arises, or

(iii)  the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the **insured**;

(z)  with respect to the **completed operations hazard** and with respect to any classification stated above as "including completed operations", to **property damage** to work performed by the **named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

B.  The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **Insured**, such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by.................................................................
                                                                Authorized Agent

Form L-3252-2  Printed in U.S.A.  NS

HART000291

SUPPLEMENTARY COVERAGE ENDORSEMENT

## PERSONAL INJURY AND ADDITIONAL INSURED (Employees)

**Named Insured and Address**

This endorsement forms a part of Policy No. ........ **10 C ML0740M**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date ................................................................12:01 A. M., standard time at the address of the *named insured* **as stated herein.**

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

It is agreed that:                                          **APPLICABLE TO: N J**

1. The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply

   **a.** to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

   **b.** to *properly damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured*, or if the *named insured* is a partnership or joint venture, any partner or member thereof.

EXCLUSION C IS DELETED.

It is further agreed that:

1. Such insurance as is afforded under Coverage A with respect to *bodily injury*, is extended to apply to *personal injury* as defined herein, subject to the following additional provisions:

   1. This insurance does not apply

      **a.** to liability for *personal injury* assumed by the *insured* under any contract or agreement;

      **b.** to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

      ~~to personal injury sustained by any person as the result of an offense directly or indirectly related to the employment of such person XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

      **d.** to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

      **e.** to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

      **f.** to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

   2. When used in reference to this insurance

      **a.** "personal injury" means:

         1. injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory*.

      **b.** "personal injury offense" means:

         1. false arrest, detention or imprisonment, or malicious prosecution,
         2. libel, slander, defamation, disparagement or violation of an individual's right of privacy, or
         3. wrongful entry or eviction or other invasion of the right of private occupancy.

   3. The Limits of Liability section is amended in the following respect:

      The total liability of the company for all damages because of all *personal injury* to which this policy applies, shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its records, but does not certify that these documents constitute a complete and accurate copy of the policy.

THE HARTFORD

Countersigned by ...................................................... **HART000292**

**Amendment — Limits of Liability
(Single Limit)**



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. C M10740W
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...................................................Effective hour is the
same as stated in the Declarations of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | |
|---|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE | — (Coverage Part "CO/PR") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |
| OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE | — (Coverage Part "OCP") |

---

**SCHEDULE**

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol
herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| Bodily Injury Liability and Property Damage Liability | "CGL" "K" | $1,000,000 each occurrence |
| | "CGL" "K" | $1,000,000 aggregate — Division 1 |
| | | $ ,000 aggregate — Division 2 |
| Bodily Injury Liability and Property Damage Liability | | $ ,000 each occurrence |

**Division 1** — Applicable to damages because of **bodily injury** and **property damage** as specified in paragraph (b) in the "Limits of Liability"
provision of this endorsement.

**Division 2** — Applicable to damages because of all **bodily injury** and **property damage** as stated in paragraph (c) in the "Limits of Liability"
provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof
is amended to read as follows:

**LIMITS OF LIABILITY**

Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage,** (3) claims
made or suits brought on account of **bodily injury** or **property damage** or (4) **automobiles** or **mobile equipment** to which this policy applies, the
company's liability is limited as follows:

**Bodily Injury Liability and Property Damage Liability Coverage**

(a)  The limit of liability stated in the Schedule of this endorsement as applicable to "each **occurrence"** is the total limit of the company's liability
under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of **bodily injury,**
including damages for care and loss of services, and all **property** damage as the result of any one **occurrence;** provided that, with respect to
any one **occurrence** for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for
the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to
provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's
liability.

does not certify that these documents constitute
a complete and accurate copy of the policy.

**THE HARTFORD**

Named Insured and Address

| Policy Number |
|---|
| 10 C ML0740W |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

| Endt. No. |
|---|

COMPREHENSIVE GENERAL LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE

ASSAULT AND BATTERY

IT IS AGREED THAT THE DEFINITION OF OCCURRENCE IS AMENDED BY ADDING

THERETO THE FOLLOWING:

"BODILY INJURY OR PROPERTY DAMAGE CAUSED FOR

THE PURPOSE OF PROTECTING PERSONS OR PROPERTY

SHALL BE DEEMED NEITHER EXPECTED NOR INTENDED

FROM THE STANDPOINT OF THE INSURED".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

THE HARTFORD... does not certify that these documents constitute a complete and accurate copy of the policy. These documents constitute business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B · Printed in U S A

Countersigned by...........................................................
Authorized Agent

HAR1000294

**THE HARTFORD**

Named Insured and Address

Policy Number

**10 C 110740h**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

## INCIDENTAL MALPRACTICE

**IT IS AGREED THAT:**

1. THE DEFINITION OF "BODILY INJURY" IS AMENDED TO INCLUDE INJURY ARISING OUT OF THE RENDERING OF OR FAILURE TO RENDER PROFESSIONAL SERVICES BY ANY PHYSICIAN, DENTIST OR NURSE WHILE EMPLOYED BY THE NAMED INSURED TO PROVIDE SUCH SERVICES.

2. EXCLUSION (J) DOES NOT APPLY TO INJURY TO THE EMOTIONS OR REPUTATION OF A PERSON ARISING OUT OF THE RENDERING OF SUCH SERVICES.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B · Printed in U S A

Countersigned by..................................

HART000285 Authorized Agent

**THE HARTFORD**

Named Insured and Address

Policy Number

10 C HL07404

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |

Endt. No.

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
**CONTRACTUAL LIABILITY INSURANCE**
**PREMISES MEDICAL PAYMENTS INSURANCE**

## KNOWLEDGE AND NOTICE OF OCCURRENCE

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY AN AGENT, SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT CONSTITUTE KNOWLEDGE TO THE INSURED UNLESS AN EXECUTIVE OFFICER OF THE NAMED INSURED CORPORATION OR OTHER PERSONS EMPLOYED BY IT IN A MANAGERIAL CAPACITY SHALL HAVE RECEIVED SUCH NOTICE.

IT IS AGREED THAT IF THE INSURED REPORTS AN OCCURRENCE TO ITS WORKERS' COMPENSATION CARRIER WHICH DEVELOPS INTO A LIABILITY CLAIM FAILURE TO REPORT SUCH OCCURRENCE TO THE COMPANY AT THE TIME OF OCCURRENCE SHALL NOT BE DEEMED IN VIOLATION OF CONDITION 4 "INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part hereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

apart from the original business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by.................. HART000296

Authorized Agent

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 C ML0740W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date | Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE

NOTICE OF CANCELLATION

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THE POLICY

BY THE COMPANY FOR ANY REASON OTHER THAN NON-PAYMENT OF PREMIUM,

THIRTY (30) DAYS PRIOR WRITTEN NOTICE THEREOF WILL BE FURNISHED

TO THE NAMED INSURED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by...................................................

*Authorized Agent*

Form G-2240-3 B   Printed in U S A

HART000297

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 C ML0740W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE

NOTICE OF CANCELLATION

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THE POLICY

BY THE COMPANY FOR ANY REASON OTHER THAN NON-PAYMENT OF PREMIUM,

THIRTY (30) DAYS PRIOR WRITTEN NOTICE THEREOF WILL BE FURNISHED

TO THE NAMED INSURED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by..................................................

Authorized Agent

Form G-2240-3 B   Printed in U.S.A

HART000298

**THE HARTFORD**

Named Insured and Address

Policy Number

**10 C M107404**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date

Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### CONTRACTUAL LIABILITY INSURANCE
### PREMISES MEDICAL PAYMENTS INSURANCE

#### UNINTENTIONAL ERRORS OR OMISSIONS

IT IS AGREED THAT FAILURE OF THE INSURED TO DISCLOSE ALL HAZARDS EXISTING AS OF THE INCEPTION DATE OF THE POLICY SHALL NOT PREJUDICE THE INSURED WITH RESPECT TO THE COVERAGE AFFORDED BY THIS POLICY, PROVIDED SUCH FAILURE OR ANY OMISSIONS IS NOT INTENTIONAL.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its files, but, at this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B  Printed in U.S.A.

Countersigned by.............................. HART000299

Authorized Agent

**Premium Installment**

**THE HARTFORD**

Named Insured and Address

**10 C M10740W**

This endorsement forms a part of Policy No.................................
issued by THE HARTFORD INSURANCE GROUP company
designated therein, and takes effect as of the effective date of
said Policy unless another effective date is stated herein.

Effective date.................................................... 12:01 A. M., standard time at the address of the
named insured as stated herein.

G.L. $97,966.00
AUTO. 22,935.00

It is hereby understood and agreed that the........................**ORIGINAL**.......................Premium of $...............................
(Insert "original" or "additional" or "return")

will **BE PAYABLE IN**        **FOUR (4)**        installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

### SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 10 25 83 | 24,493.00 | 3,966.00 | 1,770.00 | | 30,229.00 |
| 2 | 12 25 83 | 24,491.00 | 3,963.00 | 1,770.00 | | 30,224.00 |
| 3 | 2 25 84 | 24,491.00 | 3,963.00 | 1,770.00 | | 30,224.00 |
| 4 | 4 25 84 | 24,491.00 | 3,963.00 | 1,770.00 | | 30,224.00 |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| TOTALS | | 97,966.00 | 15,855.00 | 7,080.00 | | 120,901.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ................................................
Authorized Agent

The company located these documents in its records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



**THE HARTFORD**

Named Insured and Address

| Policy Number |
|---|
| **10 C ML0740W** |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**CONTRACTUAL LIABILITY INSURANCE**

**PREMISES MEDICAL PAYMENTS INSURANCE AND**

**ERRORS AND OMISSIONS INSURANCE-EMPLOYEE BENEFIT PROGRAMS**

**PREMIUM COMPUTATION**

**IT IS AGREED THAT THE PREMIUM FOR COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**SHALL BE COMPUTED AS FOLLOWS:**

| CODE | TOTAL SALES | RATES PER $1,000 OF SALES | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BI | PD | BI | PD |
| 20050 | 35,000,000 | 1.8289 | .9701 | 64,012.00 | 33,954.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

This document is a reproduction. The original constitute business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B  Printed in U.S.A

Countersigned by.................................................

HART 000301 Agent

**THE HARTFORD**

Named Insured and Address

Policy Number

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|
| Endt. No. | |

### PREMIUM COMPUTATION

IT IS AGREED THAT THE PREMIUM FOR   AUTO LIABILITY INSURANCE

PERSONAL INJURY PROTECTION, AUTO MEDICAL PAYMENTS INSURANCE

UNINSURED MOTORISTS INSURANCE

SHALL BE COMPUTED AS FOLLOWS:

| * TOTAL NUMBER OF AUTOS | RATES PER AUTO | ADVANCE PREMIUMS |
|---|---|---|
| 51 | 310.88 | 15,855.00 |

* TOTAL NUMBER OF AUTOS IS THE AVERAGE OF THE TOTAL NUMBER OF ALL AUTOS

OWNED OR LEASED BY ALL NAMED INSUREDS ON THE INCEPTION DATE OF THE POLICY

AND ON THE EXPIRATION DATE OF THE POLICY.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company recovered these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B   Printed in U.S A

Countersigned by..........................
Authorized Agent

HART000302

**THE HARTFORD**

Named Insured and Address

| Policy Number |
|---|
| 10 C N107404 |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## PREMIUM COMPUTATION

IT IS AGREED THAT THE PREMIUMS FOR AUTO PHYSICAL DAMAGE INSURANCE

SHALL BE COMPUTED AS FOLLOWS:

| * TOTAL NUMBER OF AUTOS | | RATES PER AUTO | ADVANCE PREMIUMS |
|---|---|---|---|
| COMP | 49 | 46.59 | 2,283.00 |
| COLL | 49 | 97.90 | 4,797.00 |

* TOTAL NUMBER OF AUTOS IS THE AVERAGE OF THE TOTAL NUMBER OF ALL AUTOS

OWNED OR LEASED BY ALL NAMED INSUREDS ON THE INCEPTION DATE OF THE POLICY

AND ON THE EXPIRATION DATE OF THE POLICY.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company: provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B   Printed in U S A

Countersigned by............................................

HARTFORD Agent

**Supplementary Coverage Endorsement**
**Personal Injury and Additional Insured**
**(Employees)**



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................:....... 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE

**APPLICABLE TO IL., CA., & FLA.**    Insured's Participation ___**NONE**___ %

It is agreed that:    **EXCLUSION "C" DELETED"**

I.  The insurance afforded under the Coverage for Bodily Injury Liability is extended to apply to damages because of *personal injury*, subject to the following additional provisions:

1.  This extended insurance does not apply:

    (a)  to liability for *personal injury* assumed by the *insured* under any contract or agreement;

    (b)  to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

    (c)  to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured*;   **VOID**

    (d)  to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

    (e)  to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

    (f)  to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

2.  When used in reference to this insurance:

    "*personal injury*" means injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory;*

    "*personal injury offense*" means (a) false arrest, detention or imprisonment, or malicious prosecution; (b) libel, slander, defamation, disparagement or violation of an individual's right of privacy; or (c) wrongful entry or eviction or other invasion of the right of private occupancy.

3.  The "Limits of Liability" provision is amended by adding the following thereto:

    The total liability of the company for all damages because of all *personal injury* to which this insurance applies shall not exceed the amount stated in the Schedule as the limit of *bodily injury* liability and as applicable to "*each occurrence*".

    With respect to any claim because of *personal injury*, the company shall not be liable for a greater proportion of any loss than the difference between the participation percentage, if any, stated above and one hundred percent, and the balance of the loss shall be borne by the *insured*; provided the company may pay the *insured's* portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the *named insured* shall promptly reimburse the company therefor.

II.  The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

    (1)  to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

    (2)  to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
files but does not certify that these documents constitute
a complete and accurate copy of the policy.

Form L-3991-0  Printed in U.S.A.  (NS)    Countersigned by.............................  **HART000304**
                                                                        *Authorized Agent*

**Resident Agent Countersignature Endorsement**

Co. Code ☐[1] Hartford Fire Insurance Company
Co. Code ☒[5] Hartford Accident and Indemnity Company
Co. Code ☐[3] Hartford Casualty Insurance Company

Co. Code ☐[6] New York Underwriters Insurance Company
Co. Code ☐[7] Twin City Fire Insurance Company



**THE HARTFORD**

This Endorsement forms a part of
☒ Policy No. ☐ *Bond No. ........................ **10 C M10740W**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647

| Effective date | Effective hour is the same as stated in the Declarations of the Policy. |
|---|---|
| 10 25 83 | |

**\*Note:** *If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".*

| State for which this endorsement is issued | Producing Agent or Broker |
|---|---|
| N J | FRED S JAMES AND CO INC OF N Y 252170 |

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| 5 | ~~BODILYINJRX~~ LIABILITY | $ 2,176.00 | 5 | General Liability | $ 90,273.00 |
| 5 | Medical Payments | $ INCL | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| | Comprehensive | $ | | Glass | $ |
| | Collision | $ | | Bond | $ |
| 5 | Other (specify) PIP | $ INCL | | Other (specify) | $ |
| 5 | UM | $ INCL | | | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

**Form G-1760-8**   Printed in U.S.A.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000305

## Business Auto Coverage Part



**THE HARTFORD**

issued to form a part of Policy No. **10 C ML0740W** _____ to be effective _____ at the hour stated in the policy. The Stock Insurance Company providing this insurance is shown on the Declarations Page of such policy as the "Insurer."

This Coverage Part is not binding unless countersigned by a duly authorized agent of **ours**, but if it takes effect as of the effective date of the policy of which this Coverage Part forms a part then countersignature on the Declarations Page of that policy by a duly authorized agent of **ours** is valid countersignature of this Coverage Part.

All of the provisions, conditions and other terms of this BUSINESS AUTO COVERAGE PART shall apply only as specified herein and none of the provisions, conditions and other terms of the policy of which this BUSINESS AUTO COVERAGE PART forms a part shall apply to insurance hereunder unless otherwise stated herein. Hereafter, any use of the word "policy" in this BUSINESS AUTO COVERAGE PART (or any endorsement forming a part of, changing or applicable to this BUSINESS AUTO COVERAGE PART) shall be deemed to read "BUSINESS AUTO COVERAGE PART."

# DECLARATIONS — BUSINESS AUTO COVERAGE PART

## ITEM ONE — NAMED INSURED AND ADDRESS

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647

This BUSINESS AUTO COVERAGE PART is completed by:

(a) this Declarations Form C-2013,

                Form C-2014,

                Form C-2015,

                Form C-2016,

(b) its provisions and conditions printed in Form CA00010180

(c) any Endorsements issued to form a part of it.

Form Numbers of Endorsement forming part of this BUSINESS AUTO COVERAGE PART on the above effective date:

SEE C 2240 3 B

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by _____

Authorized Agent

Includes copyrighted material of Insurance Services Office, with its permission. Copyright Insurance Services Office, 1977, 1978

HART000306

Form C-2013-0    Printed in U S A  (NS)

**Form C-2014**

# DECLARATIONS —
## BUSINESS AUTO POLICY (Continued)
### ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

**THE HARTFORD**

Policy No. **10 C ML0740W**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those **autos** shown as **covered autos**. Autos are shown as covered **autos** for a particular coverage by the entry of one or more of the symbols from **ITEM THREE** next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from ITEM THREE shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS (Absence of a limit entry means that the limit entry shown, if any, in Item four applies instead) | ESTIMATED PREMIUM |
|---|---|---|---|
| AA = LIABILITY INSURANCE | 1 | $ 750 ,000 each accident  AS PER PREMIUM COMPUTATION ENDT | $ 15,855.00 |
| AB = LIABILITY INSURANCE | | $ ,000 Bodily Injury each person  $ ,000 Bodily Injury each accident  $ ,000 Property Damage each accident | $ |
| AC = PERSONAL INJURY PROTECTION (or equivalent No-Fault coverage) | 5 | Separately stated in each Personal Injury Protection Endorsement minus $ NO deductible | $ INCL |
| AD = ADDED PERSONAL INJURY PROTECTION (or equivalent added No-Fault coverage) | | Separately stated in each Added Personal Injury Protection Endorsement | $ |
| AE = PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in the Property Protection Insurance Endorsement minus $ deductible for each accident | $ |
| AF = AUTO MEDICAL PAYMENTS INSURANCE | 3 | $ 5000 AS PER SCHEDULE for Bodily Injury for each Insured | $ INCL |
| AG = UNINSURED MOTORISTS INSURANCE | 6 | $ ,000 each accident | $ |
| AH = UNINSURED MOTORISTS INSURANCE | 6 | Separately stated in the Split Uninsured Motorists Limits Endorsement | $ INCL |
| PHYSICAL DAMAGE INSURANCE | | | |
| AJ = COMPREHENSIVE COVERAGE | 2 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered auto for all loss except fire or lightning | $ 2,283.00 |
| AK = SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus $25 Deductible for each covered auto for loss covered by mischief or vandalism | $ |
| AL = FIRE COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AM = FIRE AND THEFT COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AO = FIRE, THEFT AND WINDSTORM COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AP = LIMITED SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AR = COLLISION COVERAGE | 2 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered auto | $ 4,797.00 |
| AT = TOWING AND LABOR (Not available in California) | | $25 for each disablement of a private passenger auto | $ |
| | | Endorsement Premium (Not included in above Coverage premiums) | $ |
| | | ESTIMATED TOTAL PREMIUM | $ 22,935.00 |

The estimated total premium for this policy is based on the exposures you told us you would have when this policy began. We will compute your final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and you will be billed for the balance, if any. If the estimated total premium exceeds the final premium due you will get a refund. To determine your final premium due, we may examine our records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year, the premium shall be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979.

At this time, the company documents constitute a complete and accurate copy of the policy.

**Form C-2014-0**    Printed in U.S.A.    (NS)

Form C-2016
**DECLARATIONS—**
**BUSINESS AUTO POLICY (Continued)**



**THE HARTFORD**

Policy No. 10 C M10740W

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type<br>City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | | | | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation L = Local, I = Intermediate, LD = Long Distance<br>Use S = Service, R = Retail, C = Commercial, Other (Describe) | | | | |
| **1** | Garaged: AS PER PREMIUM COMPUTATION ENDORSEMENT | | | | Radius of Operation: | | | | |
| | | | | | Use: | | | | |
| **2** | Garaged: | | | | Radius of Operation: | | | | |
| | | | | | Use: | | | | |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov.<br>AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Motorists Limit each Accident Cov. AG | Physical Damage (Non-Collision)<br>Coverage * | | Collision Cov. AR | | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov.<br>AG ☐ AH ☐ | Deductible / Premium | Dollar Limit / Rate | Deductible / Premium | Dollar Limit / Rate | Cov. AT |
| **1** | $ AS PER PREMIUM COMPUTATION ENDORSEMENT | $ | $ | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| **2** | $ | $ | $ | $ | Coverage<br>$ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

## ITEM FIVE — SCHEDULE OF HIRED AUTOS (Coverages and Premiums)

**LIABILITY INSURANCE** — RATING BASIS IS COST OF HIRE. Cost of hire means the total amount you incur for the hire of autos you don't own (not including autos you borrow or rent from your employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| HEADQUARTERS STATE | CLASSIFICATION CODE | ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | ESTIMATED PREMIUM |
|---|---|---|---|---|
| N J | 6619 | $ IF ANY<br>$ | $<br>$ | $ AS PER PREMIUM<br>$ COMPUTATION ENDORSEMENT |

## ITEM SIX — SCHEDULE FOR NON-OWNERSHIP LIABILITY

**LIABILITY INSURANCE** (Includes autos owned by your employees or members of their households but only while used in your business or your personal affairs)

**— RATING BASIS IS NUMBER OF EMPLOYEES**

| ESTIMATED NUMBER OF EMPLOYEES | CLASSIFICATION CODE | HEADQUARTERS STATE | ESTIMATED PREMIUM |
|---|---|---|---|
| 300 | 6603 | N J | AS PER PREMIUM COMPUTATION<br>$ ENDORSEMENT |

The company located these documents in its business records and at this time the company does not certify that these documents constitute a complete and accurate copy of the policy.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979.

Form C-2016-0 CDR Printed in U.S.A. (NS)    **COMPANY COPY**    HART000308

**THE HARTFORD**

Named Insured and Address

Policy Number

**10 C ML0740W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## LIST OF AUTOMOBILE ENDORSEMENTS FORMING PART OF POLICY AT ISSUE:

G 1760-8

C 3023-0

A 4543-0

C 3006-0

**NEW JERSEY**

CA 2X14 01 78

CA 9921 01 78

CA 9903 01 80

CA 2230 07 82

CA 0224 01 78

**KENTUCKY**

CA 2216 01 81

CA 0125 12 80

**ILLINOIS**

CA 0120 03 80

CA 2130 05 82

CA 2X17 01 78

**FLORIDA**

CA 0128 10 82

CA 2210 10 82

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents as business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by...................................................

Form G-2240-3 B   Printed in U.S.A

Authorized Agent

## Countersignature Memo

| Insured | Address |
|---|---|
| CENTRICO INC | 100 FAIRWAY COURT NORTHVALE N J 07647 |

| Company Office | Policy No. | Expiration | Date |
|---|---|---|---|
| N Y | 10 C ML0740W | 10 25 84 | 11 7 83 |

Please show Countersigning Agent preferred, if any, in block below.

**Name and Address of Producer**

┌ FRED S JAMES AND CO INC OF N Y ┐
  55 WATER ST
  NEW YORK N Y
                                          ┘

**Name and Address of Countersigning Agent**

┌ FRED S JAMES AND CO ┐

  ONE FINANCIAL PLAZA SUITE 2410

  FORT LAUDERDALE FLA 33594

└                     ┘

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | | | | |
|---|---|---|---|---|---|
| | Number | Name of Licensee | | | |
| FL. | 01512853 73 01 | T J MAHONEY | | | |

| | Producer's Rate of Commission | | Effective Date | |
|---|---|---|---|---|
| | | | 10 25 83 | |
| G.L. | 17.5% | | 1,033.00 | |
| AUTO | 15.0% | % Premium | 1,367.00 | |

| If not licensed, is same desired? | If "Yes", which States: |
|---|---|
| ☐ Yes   ☐ No | |

| | Company | HARTFORD ACCIDENT AND INDEMNITY COMPANY |
|---|---|---|

**THE HARTFORD**

Form G-2669-3  Printed in U.S.A.

**COMPANY OFFICE OF PRODUCER**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000310

## Resident Agent Countersignature Endorsement

§ § Code
☐ 1 Hartford Fire Insurance Company
☐ 5 Hartford Accident and Indemnity Company
☐ 3 Hartford Casualty Insurance Company

§ § Code
☐ 6 New York Underwriters Insurance Company
☐ 7 Twin City Fire Insurance Company



THE HARTFORD

Named Insured and Address

This Endorsement forms a part of
☒ Policy No.  ☐ *Bond No. ............ **10 C NL0740M** ......................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647

Effective date **10 25 83**

Effective hour is the same as stated
in the Declarations of the Policy.

*Note:  If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".

State for which this endorsement is issued | Producing Agent or Broker
**FLORIDA** | **FRED S JAMES AND CO INC OF N Y 252170**

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| 5 | Bodily Injury  LIABILITY | $ 933.00 | 5 | General Liability | $ 1,033.00 |
| 5 | Medical Payments | $ INCL | | Workmen's Compensation | $ |
| | Property Damage | $ | | Burglary | $ |
| 5 | Comprehensive | $ 140.00 | | Glass | $ |
| 5 | Collision | $ 294.00 | | Bond | $ |
| 5 | Other (specify)  PIP | $ INCL | | Other (specify) | $ |
| 5 | UM | $ INCL | | | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

Agency Location | Countersigned by (Resident Agent)

Form G-1760-8  Printed in U.S.A.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

# Countersignature Memo

CHICAGO R O

| Insured | Address |
|---|---|
| **CENTRICO INC** | **100 FAIRWAY COURT NORTHVALE N J 07647** |

| Company Office | Policy No. | Expiration | Date |
|---|---|---|---|
| **N Y** | **10 C ML0740W** | **10 25 84** | **11 7 83** |

Name and Address of Producer

Please show Countersigning Agent preferred, if any, in block below.

⌐ FRED S JAMES AND CO INC OF N Y ¬
55 WATER ST
NEW YORK N Y
⌐ ¬ ⌐ ¬

**Name and Address of Countersigning. Agent**

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The countersigning fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | | | | Producer's Rate of Commission | Effective Date 10 25 83 |
|---|---|---|---|---|---|---|
| | Number | Name of Licensee | | | | |
| **ILLINOIS** | **135304-320** | **FRED S JAMES** | **G.L.** | | **17.5%** | **$402.00** |
| | | | **AUTO** | | **15.0** % Premium | **$10,928.00** |

| If not licensed, is same desired? | If "Yes", which States: |
|---|---|
| ☐ Yes   ☐ No | |

Company

**HARTFORD ACCIDENT AND INDEMNITY COMPANY**

**THE HARTFORD**

Form G-2669-3  Printed in U.S.A.          **COMPANY OFFICE OF PRODUCER**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

# Resident Agent Countersignature Endorsement

Co. Code ☑ Hartford Fire Insurance Company
Co. Code ☑ Hartford Accident and Indemnity Company
Co. Code ☑ Hartford Casualty Insurance Company

Co. Code ☑ New York Underwriters Insurance Company
Co. Code ☑ Twin City Fire Insurance Company

**THE HARTFORD**

This Endorsement forms a part of
☑ Policy No. ☐ Bond No. ........... 10 C MC7140W ..........................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address
CENTRICO INC
100 FAIRWAY COURT
NORTHVALE N J 07647

| Effective date | Effective hour is the same as stated |
|---|---|
| **10 25 83** | in the Declarations of the Policy. |

*Note: If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".

State for which this endorsement is issued, Producing Agent or Broker
**ILLINOIS**

The Insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| 5 | ~~BODILYINJURY~~ LIABILITY | $ 7,461.00 | 5 | General Liability | $ 402.00 |
| | Medical Payments | $ INCL | | Workmen's Compensation | $ |
| | ~~PROPERTYDAMAGE~~ | $ | | Burglary | $ |
| 5 | Comprehensive | $ 1,117.00 | | Glass | $ |
| 5 | Collision | $ 2,350.00 | | Bond | $ |
| 5 | Other (specify) UM | $ INCL | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

| Agency Location | Countersigned by (Resident Agent) |
|---|---|
| | |

Form G-1760-8 Printed in U.S.A.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000313

# Countersignature Memo

CINCINNATI R O

| Insured | Address |
|---|---|
| CENTRICO INC | 100 FAIRWAY COURT NORTHVALE N J 07647 |

| Company Office | Policy No. | Expiration | Date |
|---|---|---|---|
| N Y | 10 C M10740W | 10 25 84 | 11 7 83 |

**Name and Address of Producer**

Please show Countersigning Agent preferred, if any, in block below.

FRED S JAMES AND CO INC OF N Y
55 WATER ST
NEW YORK N Y

**Name and Address of Countersigning Agent**

**PRODUCER —**
The risk in caption involves inter-state coverage, which can be effected only by compliance with the respective state's laws. We are glad to be of assistance as intermediary in arranging such countersignature, but cannot be a part to any negotiation with the Countersigning Agent for the payment of the commission or fees. The counter-signing fee should be remitted directly to the Countersigning Agent.

Please enter the premium, less commission, in your Account Current. If you accept an Office Account, you will be billed accordingly.

| States of Insured's Operations | Non-Resident License, if any | |
|---|---|---|
| | Number | Name of Licensee |
| KENTUCKY | 13-5203896 | P A MC DOUGALD |

| Producer's Rate of Commission | Effective Date |
|---|---|
| AUTO 15.0 % Premium | 10 25 83 457.00 |

| If not licensed, is same desired? | If "Yes", which States: |
|---|---|
| ☐ Yes   ☐ No | |

| | Company  HARTFORD ACCIDENT AND INDEMNITY COMPANY |
|---|---|

**THE HARTFORD**

Form G-2689-3  Printed in U.S.A.

COMPANY OFFICE OF PRODUCER

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000314

**Resident Agent Countersignature Endorsement**

THE HARTFORD

| Co. Code | | Co. Code | |
|---|---|---|---|
| ☐ 1 | Hartford Fire Insurance Company | ☐ 6 | New York Underwriters Insurance Company |
| ☒ 5 | Hartford Accident and Indemnity Company | ☐ 7 | Twin City Fire Insurance Company |
| ☐ 3 | Hartford Casualty Insurance Company | | |

This Endorsement forms a part of
☒ Policy No. ☐ Bond No. **10 C ML0740W**
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Named Insured and Address
**CENTRICO INC**
**100 FAIRWAY COURT**
**NORTHVALE N J 07647**

Effective date **10 25 83**

Effective hour is the same as stated in the Declarations of the Policy.

*Note: If this endorsement is issued to form a part of a bond, the word "Policy" as used herein means "Bond".

State for which this endorsement is issued **KENTUCKY**

Producing Agent or Broker **FRED S JAMES AND CO INC OF N Y 252170**

The insurer with respect to each coverage shall be as designated by Co. Code Number

| Co. Code | Coverages (Automobile) | Premium For State | Co. Code | Coverages (other than Auto) | Premium For State |
|---|---|---|---|---|---|
| 5 | Bodily Injury LIAB. | $ 311.00 | | General Liability | $ |
| 5 | Medical Payments | $ INCL. | | Workmen's Compensation | $ |
| | ~~Property Damage~~ | $ | | Burglary | $ |
| 5 | Comprehensive | $ 47.00 | | Glass | $ |
| 5 | Collision | $ 99.00 | | Bond | $ |
| | Other (specify) | $ | | Other (specify) | $ |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

The countersignature hereto, by a duly authorized agent of the company, is to be considered the valid countersignature to the above policy, in so far as concerns that portion of the Risk located in the State named above.

Agency Location

Countersigned by (Resident Agent)

Form G-1760-8   Printed in U.S.A.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



CA 2X 14
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE
### (NEW JERSEY)

This endorsement changes the policy effective on the inception date of the policy or as of the date indicated below.

| Endorsement effective | Policy No. **10 C MLO740W** |
|---|---|
| Named Insured | Countersigned by |
| | (Authorized Representative) |

In consideration of the payment of premium and subject to all of the provisions of this endorsement and to the applicable provisions of the policy, the company agrees with the named insured as follows:

### Schedule

Designated Insured:_____

Limits of Liability:  Bodily Injury   $15,000 each person
                                      $30,000 each accident
                Property Damage   $ 5,000 each accident

Advance Premiums $ **INCL**

Description of Insured Highway Vehicles:

Any highway vehicle registered or principally garaged in New Jersey which is:

(check appropriate box)

☒ An owned automobile under Part I of the policy

☐ A private passenger automobile owned by the named insured

☐ Owned by the named insured

☐ Designated in the declarations of the policy and any highway vehicle of the same type ownership of which is acquired during the policy period by the named insured as a replacement therefor

☐ Any mobile equipment owned by the named insured

☐

## I. COVERAGE UNINSURED MOTORISTS

(Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally

entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

### Exclusions

This insurance does not apply:

(a) to bodily injury or property damage with respect to which the insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, or through being struck by such or designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives;

the company business records are not certified that these documents constitute a complete and accurate copy of the policy.

HART000316


© 1982

CA 22 30
(Ed. 07 82)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT (NEW JERSEY)

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in **bold** face other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled "**Definitions**".

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. 10 C KLO74OW |
|---|---|
| Named Insured | Countersigned by |
|  | (Authorized Representative) |

The Company agrees with the **named insured**, subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SCHEDULE

The total aggregate amount of extended **medical expense benefits** payable under Section II is $ —

## SECTION I

### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay personal injury protection benefits consisting of:

(a) **medical expense benefits,**

(b) **income continuation benefits,**

(c) **essential services benefits,**

(d) **survivor benefits,** and

(e) **funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person** caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

### Exclusions

The insurance under this endorsement does not apply:

(a) to **bodily injury** to a person whose conduct contributed to the injury in any of the following ways:

  (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

  (2) while acting with specific intent to cause injury or damage to himself or others;

(b) to **bodily injury** to the **named insured** or any relative of the **named insured** sustained while occupying, using or entering into or alighting from a **private passenger automobile** which is not an **insured automobile** under this policy, if he is required to maintain automobile liability insurance coverage with respect to the automobile under the

New Jersey Automobile Reparation Reform Act, and has not done so;

(c) to **bodily injury** to any person who is not occupying an **insured automobile**, other than the **named insured** or a relative of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey.

(d) to **bodily injury** arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

(e) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(f) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

### Definitions

When used in reference to this insurance:

"**bodily injury**" means bodily injury, sickness or disease, including death at any time resulting therefrom;

"**eligible injured person**" means

(a) the **named insured** or any **relative** of the **named insured**, if the **named insured** or relative sustains **bodily injury**

  (1) as a result of any accident involving a **private passenger automobile**, or as a pedestrian, as a result of being struck by an object propelled by or from a **private passenger automobile**; or

  (2) while a pedestrian, as a result of being struck by an object propelled by or from a **private passenger automobile**; or

The Company location documents in its business records not certify that this is a complete and accurate copy of the policy.

CA 22 30 (Ed. 07 82)

Page 1 of 4

HART000317



© 1982

CA 22 10
(Ed. 10 82)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PERSONAL INJURY PROTECTION ENDORSEMENT
### (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. 10 C ML 0740M |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

The Company agrees with the **named insured**, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

The insurance for PERSONAL INJURY PROTECTION is subject to a deductible of $_____
applicable to ☐ the following **named insured** only:

_____

☐ each **named insured** and each dependent **relative**.

☐ **Work loss** for **named insured** does not apply

☐ **Work loss** for **named insured** and dependent **relative** does not apply

☐ Coverage reduced by Medicare Benefits for **named insured** and dependent **relative**

☐ Coverage reduced by military benefits for **named insured** and dependent **relative**

### SECTION I

### PERSONAL INJURY PROTECTION

The Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law to or for the benefit of the injured person:

(a) 80% of **medical expenses**, and

(b) 60% of **work loss**, and

(c) **replacement services expenses**, and

(d) funeral, burial or cremation expenses,

incurred as a result of **bodily injury**, caused by an **accident** arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

(1) the **named insured** or any **relative** while **occupying** a **motor vehicle** or, while a **pedestrian** through being struck by a **motor vehicle**; or

(2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian**, through being struck by the **insured motor vehicle**.

### Exclusions

This insurance does not apply:

(a) to the **named insured** or any **relative** while **occupying** a **motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

(b) to any person while **operating** the **insured motor vehicle** without the express or implied consent of the **named insured**;

(c) to any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

(i) causing **bodily injury** to himself intentionally; or

(ii) while committing a felony;

(d) to the **named insured** or dependent **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

(e) to any **pedestrian**, other than the **named insured** or any **relative**, not a legal resident of the State of Florida;

(f) to any person, other than the **named insured**, if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law;

(g) to any person, other than the **named insured** or any **relative**, who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner**'s insurer;

(h) to any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

The company located these documents in its business records as files maintained in the ordinary course of business. The company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 22 10 (Ed. 10 82)

Page 1 of 4

HART000318

PREMISES MEDICAL PAYMENTS INSURANCE COVERAGE PART

COMPANY COPY

| Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|
| Quality Control | | |

## 10 C ML0740W

This Coverage Part forms a part of Policy No.................................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

---

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective...................................................................(at the hour stated in the policy) and forms a part of the above designated

policy issued to...............................................................................

---

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability | |
|---|---|---|---|
| E — Premises Medical Payments | $ INCL | $ 1,000 | each person |
| | | $ 10,000 | each accident |

| Description of Hazards | Advance Premiums |
|---|---|
| (a) Premises and Operations | |
| AS PER PREMIUM COMPUTATION ENDT | |
| (b) Escalators | |
| (c) Sports Activities | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUM | |
|---|---|---|
| G 2240 3 B ( LIST) | | $ INCL |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $.................... 1st Anniversary $.................... 2nd Anniversary $....................

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

The company located these documents in its files. At some point in time, the company does not certify that these documents constitute an accurate copy of the policy.

Countersigned by................................

HART000319

Authorized Agent

# Comprehensive General Liability Insurance Coverage Part

| | Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|---|
| | Quality Control. | | |

## 10 C ML0740W

This Coverage Part forms a part of Policy No. .........................................................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

> (For use only if this Coverage Part is effective after the effective date of the Policy)
> This Coverage Part is effective ...............................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to ......................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the **named insured** as follows:

## SCHEDULE

The Insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| A — Bodily Injury Liability | $ **INCLUDED** | $ **AS PER** ,000 each occurrence |
| | | $**ENDT** ,000 aggregate |
| B — Property Damage Liability | $ **INCLUDED** | $**L 4152-0** ,000 each occurrence |
| | | $ ,000 aggregate |

| Rating Classifications Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates B.I. | P.D. | Advance Premiums B.I. | P.D. |
|---|---|---|---|---|---|---|
| (a) Premises — Operations | | (a) Area (b) Frontage (c) Remuneration (d) Receipts | | (a) Per 100 Sq.Ft.of Area (b) Per Linear Foot (c) Per $100 of Remun. (d) Per $100 of Receipts | | |
| (b) Escalators | | (e) Landings | | (e) Per Landing | | |
| (c) Independent Contractors | | (f) Cost | | (f) Per $100 of Cost | | |
| (d) Completed Operations | | (g) Receipts | | (g) Per $1,000 of Receipts | | |
| (e) Products | | (h) Sales | | (h) Per $1,000 of Sales | | |
| A) AS PER PREMIUM COMPUTATION ENDT | | | | | | |
| C) AS PER PREMIUM COMPUTATION ENDT | | | | | | |
| D) AS PER PREMIUM COMPUTATION ENDT | | | | | | |
| E) AS PER PREMIUM COMPUTATION ENDT | | | | | | |

ATTACH FORMS ALONG THIS MARGIN BELOW THIS MARK +

| Form Numbers of Endorsements forming part of this Coverage Part at Issue: G 2240 3 B (LIST) | TOTAL ADVANCE PREMIUMS | $ **INCL** | $ **INCL** |
|---|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $ ............    1st Anniversary $ ............    2nd Anniversary $ ............

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

The property stated these documents in its business records as company execute a complete and accurate copy of the policy.

Countersigned by ......................................

Authorized Agent

Form L-3503-1   CDR   Printed in U.S.A.   (ISO: GL 00 02 01 73)    CGL-1

HART000320

CONTRACTUAL LIABILITY INSURANCE (BLANKET COVERAGE) — COVERAGE PART
Case 2:20-cv-09741-BRM-SDA    Document 63-33    Filed 11/18/22    Page 436 of 612
PageID: 5856

COMPANY
COPY

| | Und. Approved | Confidential Report | Und. Notes: |
|---|---|---|---|
| | Quality Control | | |

This Coverage Part forms a part of Policy No. .................. 10 C ML0740W ..................issued by THE HARTFORD INSURANCE GROUP
Company designated therein, an d takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective......................................................(at the hour stated in the policy) and forms a part of the above designated
policy issued to..................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein,
agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges.
The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having
reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| YB — Contractual Bodily Injury Liability | $ INCL | $ AS PER ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ INCL | $ ENDT ,000 each occurrence<br>$ L 4152-0,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B. I. | P. D. | B. I. | P. D. |
| | | (a) Cost<br>(b) Sales | (a) Per $100 of Cost<br>(b) Per $1,000 of Sales | | | |
| ALL WRITTEN AGREEMENTS | | AS PER PREMIUM COMPUTATION ENDORSEMENT | | | | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS $ | | |
|---|---|---|---|
| G-2240 3 B (LIST) | | INCL | INCL |

If the Policy Period is more than one year, the Premium is Payable:
On effective date of Policy $          1st Anniversary $          2nd Anniversary $

The following exclusions also apply:
☐ Exclusion (p) — Products and Completed Operations      ☐ Exclusion (q)—x, c & u

## I.   COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY

### COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

Coverage YB. *bodily injury* or

Coverage ZB. *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

(ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.
This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

*Countersigned by*...........................................................

*Authorized Agent*

The Company does not certify that these documents in its
does not certify that these documents constitute
a complete and accurate copy of the policy.

# CASUALTY INSURANCE POLICY

**THE HARTFORD**

The member company of **THE HARTFORD INSURANCE GROUP** designated on the Declarations page as the Insurer (a stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the *named insured* as follows:

## COVERAGE

Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the *insured* in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy,

and the cost of bail bonds required of the *insured* because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the *insured* for first aid to others at the time of an accident, for *bodily injury* to which this policy applies;

(d) reasonable expenses incurred by the *insured* at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

**"automobile"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include *mobile equipment*;

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

**"collapse hazard"** includes "structural property damage" as defined herein and *property damage* to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The *collapse hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard* or the *underground property damage hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract*;

**"completed operations hazard"** includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured*. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The *completed operations hazard* does not include *bodily injury* or *property damage* arising out of

(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

**"elevator"** means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an *automobile* servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

**"explosion hazard"** includes *property damage* arising out of blasting or explosion. The *explosion hazard* does not include *property damage* (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the *named insured* by independent contractors, or (3) included within the *completed operations hazard* or the *underground property damage hazard*, or (4) for which liability is assumed by the *insured* under an *incidental contract*;

**"incidental contract"** means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) *elevator* maintenance agreement;

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

**"mobile equipment"** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the

*named insured*, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

**"named insured's products"** means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*;

**"policy territory"** means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the *bodily injury* or *property damage* does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of *bodily injury* or *property damage* arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

**"products hazard"** includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others;

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period;

**"underground property damage hazard"** includes underground property damage as defined herein and *properly damage* to any other property at any time resulting therefrom. "Underground property damage" means *property damage* to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The *underground property damage hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract*.

## DESCRIPTION OF TERMS USED AS PREMIUM BASES

When used as a premium basis for:

(a) Comprehensive General Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance, **"admissions"** means the total number of persons, other than employees of the *named insured*, admitted to the event covered by the insurance or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(b) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance; Owners' and Contractors' Protective Liability Insurance, **"cost"** means the total cost to the *named insured* with respect to operations performed for the *named insured* during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(c) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance or Completed Operations and Products Liability Insurance, **"receipts"** means the gross amount of money charged by the *named insured* for such operations by the *named insured* or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

(d) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance which includes coverage for structural alterations, new construction and demolition operations, **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the *named insured*, other than chauffeurs (except operators of *mobile equipment*) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

The Institute businesses does not constitute a complete and accurate copy of the policy.

Form 8117

2

(e) Comprehensive General Liability Insurance or Completed Operations and Products Liability Insurance, *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division;

(f) Contractual Liability Insurance, *"cost"* means the total cost to any indemnitee, with respect to any contract which is insured, of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or the subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(g) Garage Insurance, *"remuneration"* means (a) the entire remuneration earned during the policy period by each Class A employee and each Class C employee or the *named insured*, subject to an average weekly maximum of $100, and (b) the remuneration of each Class B person at a fixed amount of $2,000 per annum with respect to Dealer Risks (Hazard 1) or $5,200 per annum with respect to Non-Dealer Risks (Hazard 2)

*"Class A"* means all clerical office employees

*"Class B"* means all proprietors and officers active in the business, and inactive proprietors or officers (other than an inactive proprietor or officer who is a spouse of an active proprietor or officer) who customarily drive an *automobile*

*"Class C"* means all other employees;

(h) Comprehensive Automobile Liability Insurance,

(1) *"cost of hire"* means the amount incurred for (a) the hire of *automobiles*, including the entire remuneration of each employee of the *named insured* engaged in the operation of such *automobiles* subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of *"cost of hire"* shall be 5% of the applicable *hired automobile* rates, provided the owner of such *hired automobile* has purchased *automobile* Bodily Injury Liability and Property Damage Liability insurance covering the interest of the *named insured* on a direct primary basis as respects such *automobile* and submits evidence of such insurance to the *named insured;*

(2) *"Class 1 persons"* means the following persons, provided their usual duties in the business of the *named insured* include the use of *non-owned automobiles:* (a) all employees, including officers, of the *named insured* compensated for the use of such *automobiles* by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the *named insured;*

(3) *"Class 2 employees"* means all employees, including officers, of the *named insured*, not included in Class 1 persons.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMERS COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to *bodily injury* or *property damage*

(1) with respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the *insured* is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of nuclear *material* and arising out of the operation of a *nuclear facility* by any person or organization.

C. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of nuclear *material*, if

(1) the *nuclear material* (a) is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured* or (b) has been discharged or dispersed therefrom;

(2) the *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

(3) the *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear*

*facility,* but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

II. As used in this exclusion:

*"hazardous properties"* include radioactive, toxic or explosive properties;

*"nuclear material"* means *source material, special nuclear material* or *byproduct material;*

*"source material", "special nuclear material",* and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"waste"* means any waste material (1) containing *byproduct material* and (2) resulting from the operation by any person or organization of any *nuclear facility* included within the definition of *nuclear facility* under paragraph (a) or (b) thereof;

*"nuclear facility"* means

(a) any *nuclear reactor,*

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing *spent fuel,* or (3) handling, processing or packaging *waste,*

(c) any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste,*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"property damage"* includes all forms of radioactive contamination of property.

Form 8117

3

HART000324

Case 2:20-cv-09741-BRM-SDA Document 63-33 Filed 11/18/22 Page 440 of 612

**1. Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured*, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the *named insured*.

The *named insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

**2. Inspection and Audit** The company shall be permitted but not obligated to inspect the *named insured's* property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *named insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the *named insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for *bodily injury* liability or for *property damage* liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**4. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

**5. Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the *insured* to determine the *insured's* liability, nor shall the company be impleaded by the *insured* or his legal representative. Bankruptcy or insolvency of the *insured* or of the *insured's* estate shall not relieve the company of any of its obligations hereunder.

**6. Other Insurance** The insurance afforded by this policy is excess insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer bas paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights.

**8. Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

**9. Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the *named insured* shall die, such insurance as is afforded by this policy shall apply (1) to the *named insured's* legal representative, as the *named insured*, but only while acting within the scope of his duties as such, and (2) with respect to the property of the *named insured*, to the person having proper temporary custody thereof, as *insured*, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

**11. Cancellation** This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing.

If the *named insured* cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12. Declarations** By acceptance of this policy, the *named insured* agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its President and a Secretary, but the same shall not be binding unless countersigned on the declarations page by a duly authorized agent of the company.

Michael P. Wilder

Michael S. Wilder, *Secretary*

Donald R. Frahm, *President*

Downloaded from the electronic document in the business records. At this time, the company does not certify that these documents constitute a complete and accurate copy

HART000325

**Limits of Liability Amendatory Endorsement (Chapter 665-New York Laws of 1979)**



**THE HARTFORD**

With respect to such Bodily Injury Liability Coverage as is afforded by the policy, if the bodily injury results in death, the company will provide supplemental limits of liability of $50,000 for such bodily injury resulting in death sustained by each person as the result of any one occurrence and, subject to this limit for each person, $100,000 for such bodily injury resulting in death sustained by two or more persons as the result of each occurrence.

The limits of liability of this endorsement shall be reduced as follows:

1.  In the event of the death of one person, the $50,000 limit shall be reduced by any amounts paid to or on behalf of that person under the Bodily Injury Liability Coverage of this policy, and

2.  In the event of the death of two or more persons, and subject to the limitations in item 1 above, the $100,000 limit shall be reduced by any amounts paid to or on behalf of those persons under the Bodily Injury Liability Coverage of this policy.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.

*DeRoy C. Thomas, President*

**New York Automobile Accident Indemnification Amendatory Endorsement (Chapter 665-New York Laws of 1979)**

**THE HARTFORD**

With respect to such insurance as is afforded under the New York Automobile Accident Indemnification Endorsement for bodily injury, if the bodily injury results in death, the company will provide supplemental limits of liability of $50,000 for such bodily injury resulting in death sustained by one person as the result of any one accident and, subject to this limit for each person, $100,000 for such bodily injury resulting in death sustained by two or more persons as the result of any one accident.

The limits of liability of this endorsement shall be reduced as follows:

1.  In the event of the death of one person, the $50,000 limit shall be reduced by any amounts paid to or on behalf of that person under the New York Automobile Accident Indemnification Endorsement, and

2.  In the event of the death of two or more persons, and subject to the limitations in item 1 above, the $100,000 limit shall be reduced by any amounts paid to or on behalf of those persons under the New York Automobile Accident Indemnification Endorsement.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement forms a part of the policy, issued by THE HARTFORD INSURANCE GROUP company designated therein, which indicates this endorsement forms a part thereof, and takes effect as of the effective date of said policy.

**Form A-4543-0** Printed in U.S.A. (ISO: E148, E149)

*DeRoy C. Thomas, President*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Stated Amount — Physical Damage Insurance                              THE HARTFORD

HOW WE WILL PAY FOR LOSSES — THE MOST WE WILL PAY is changed to read:

1.  At **our** option **we** may:

    a.  Pay for, repair or replace damaged or stolen property; or

    b.  Return the stolen property at **our** expense. **We** will pay for any damage that results to the **auto** from the theft.

2.  The most **we** will pay for **loss** is the smallest of the following amounts:

    a.  The actual cash value of the damaged or stolen property at the time of **loss.**

    b.  The cost of repairing or replacing the damaged or stolen property with other of like kind or quality.

    c.  The stated amount, if any, shown

        (1)  in the "Schedule of Covered Autos You Own" as "Dollar Limit";

        (2)  in the form, "Physical Damage Insurance — Hired Autos" as a limit (if this form is made a part of this policy).

3.  For each covered **auto, our** obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any COMPREHENSIVE COVERAGE deductible shown in the Declarations does not apply to **loss** caused by fire or lightning.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3006-0    Printed in U.S.A. (NS)

HART000327

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Changes in Policy
Temporary Substitute Autos;
Autos Owned by Partners;
Who is Insured**

 **THE HARTFORD**

**A. "PART II — WHICH AUTOS ARE COVERED AUTOS" is changed by adding the following:**

**D. TEMPORARY SUBSTITUTE AUTOS**

Any **auto you** do not own while used as a temporary substitute for an **auto you** do own is a covered **auto** for the same LIABILITY INSURANCE and UNINSURED MOTORISTS INSURANCE as is provided by the policy for the **auto you** do own, but only if that owned **auto** is out of normal use because of its breakdown, repair, servicing, **loss** or destruction.

**E. AUTOS OWNED BY PARTNERS**

If **you** are a partnership, no **auto** owned by any of **your** partners or members of their households is a covered **auto** for the LIABILITY INSURANCE unless the policy is endorsed to cover that **auto** as a covered **auto** and the proper premium is charged.

**B. If your policy is a Garage Policy the following additional changes are made:**

**(1) "WHO IS AN INSURED" of "PART IV — LIABILITY INSURANCE" is changed as follows:**

The following is added after section b. of part 2, **"For Garage Operations Other Than Covered Autos":**

c. Any partner of **yours** is an **insured** but only to the extent of his or her liability as **your** partner.

**(2) "WHO IS AN INSURED" of "PART V — GARAGEKEEPERS INSURANCE" is changed by adding the following after section 2:**

3. Any partner of **yours** is an **insured** but only to the extent of his or her liability as **your** partner.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3023-0   Printed in U.S.A.   (NS)

HART000328



CA 01 20
(Ed. 03 80)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### CHANGES IN POLICY—ILLINOIS

For a covered **auto** licensed or principally garaged in, or **garage operations** conducted in, Illinois, the policy is changed as follows:

**A. CHANGES IN LIABILITY INSURANCE**

    1. OUR LIMIT OF LIABILITY applies except that **we** will apply the limit shown in the declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

        a. $15,000 for **bodily injury** to any one person caused by any one **accident,**

        b. $30,000 for **bodily injury** to two or more persons caused by any one **accident,** and

        c. $10,000 for **property damage** caused by any one **accident.**

    This provision will not change **our** total limit of liability.

**B. CHANGES IN CONDITIONS**

    1. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

    If **we** cancel, notice will be mailed to **your** last known address. **We** will not deliver any notice. If **we** cancel for any reason other than non-payment of premium **we** will mail **you:**

        a. At least 15 days notice when the policy is in effect less than 181 days.

        b. At least 30 days notice when the policy is in effect 181 days or more.

    2. The following Condition is added:

    NON-RENEWAL

        a. If **we** decide not to renew or continue this policy **we** will mail **you** at least 30 days notice before the end of the policy period. If **we** offer to renew or continue and **you** do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

        b. If **we** fail to mail proper notice and **you** obtain other insurance this policy will end on the effective date of that insurance.

        c. Any notice of non-renewal will be mailed to **you** at **your** last known address. Proof of mailing of any notice shall be sufficient proof of notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



© 1982

CA 01 28
(Ed. 10 82)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**THIS ENDORSEMENT IS APPLICABLE TO "B" ONLY.**

## CHANGES IN POLICY—FLORIDA

A. For a covered **auto** licensed or principally garaged in Florida, PHYSICAL DAMAGE INSURANCE is changed as follows:

    1. No deductible applies to **loss** to glass used in the windshield.

    2. All other PHYSICAL DAMAGE INSURANCE provisions will apply.

B. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

    If **we** cancel for any reason other than nonpayment of premium **we** will mail **you** at least 45 days notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 01 28 (Ed. 10 82)

HART000330



CA 02 24
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN POLICY — CANCELLATION

A. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

1. If **we** cancel the policy **we** will mail notice to any lienholder shown in the policy.

2. If **we** cancel for any reason other than nonpayment of premium **we** will mail **you** and any lienholder shown in the policy at least 30 days notice.

B. The following Condition is added:

**NON-RENEWAL**

1. If **we** decide not to renew or continue this policy

**we** will mail **you** and any lienholder shown in this policy notice at least 30 days before the end of the policy period.

2. If **we** fail to mail proper notice of non-renewal and **you** have failed to pay any required premium when due this policy will terminate at the end of the current policy period.

3. Any notice of non-renewal will be mailed to **your** last known address. However, **we** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

Copyright, Insurance Services Office, 1977

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000331

©1982

CA 21 30
(Ed. 05 82)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE
## (ILLINOIS)

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE (ILLINOIS):

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   c. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is occupying.

   However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

**B. WE WILL PAY**

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

**C. WE WILL NOT COVER—EXCLUSIONS**

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.

**E. OUR LIMIT OF LIABILITY**

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

   **We** will apply the limit shown in the declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $15,000 for **bodily injury** to any one person caused by any one **accident**, and

   b. $30,000 for **bodily injury** to two or more persons caused by any one **accident**.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000332



This provision will not change our total limit of liability.

2. Any amount payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an insured may be paid under the policy's LIABILITY INSURANCE.

## F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send us copies of the legal papers if a suit is brought.

3. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

4. The following Conditions are added:

   **REIMBURSEMENT**

   If we make any payment and the insured recovers from another party, the insured shall

hold the proceeds in trust for us and pay us back the amount we have paid.

## ARBITRATION

a. If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle or do not agree as to the amount of damages, then the disagreement will be settled in accordance with the rules of the American Arbitration Association. However, if the insured requests, we and the insured will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the insured's request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the insured's recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law. If this occurs, the insured will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the insured's recovery exceeds the statutory minimum.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to arbitration procedure and evidence will apply. If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 21 30** (Ed. 05 82)

HART000333


© 1982

CA 22 10
(Ed. 10 82)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
## (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

The Company agrees with the **named insured,** subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

The insurance for PERSONAL INJURY PROTECTION is subject to a deductible of $ _____ applicable to ☐ the following **named insured** only:

_____

☐ each **named insured** and each dependent **relative.**

☐ **Work loss** for **named insured** does not apply

☐ **Work loss** for **named insured** and dependent **relative** does not apply

☐ Coverage reduced by Medicare Benefits for **named insured** and dependent **relative**

☐ Coverage reduced by military benefits for **named insured** and dependent **relative**

### SECTION I
### PERSONAL INJURY PROTECTION

The Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law to or for the benefit of the injured person:

(a) 80% of **medical expenses,** and

(b) 60% of **work loss,** and

(c) **replacement services expenses,** and

(d) funeral, burial or cremation expenses,

incurred as a result of **bodily injury,** caused by an **accident** arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

(1) the **named insured** or any **relative** while **occupying a motor vehicle** or, while a **pedestrian** through being struck by a **motor vehicle;** or

(2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian,** through being struck by the **insured motor vehicle.**

## Exclusions

This insurance does not apply:

(a) to the **named insured** or any **relative** while **occupying** a **motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

(b) to any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured;**

(c) to any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

(i) causing **bodily injury** to himself intentionally; or

(ii) while committing a felony;

(d) to the **named insured** or dependent **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

(e) to any **pedestrian,** other than the **named insured** or any **relative,** not a legal resident of the State of Florida;

(f) to any person, other than the **named insured,** if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law;

(g) to any person, other than the **named insured** or any **relative,** who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's insurer;**

(h) to any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

the company... se documents in its business records. At this time, the company does not certify... a complete and... ...the policy.


© 1982

## Limit of Liability; Application of Deductible; Other Insurance

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **bodily injury** as the result of any one **accident** shall be $10,000; provided that payment for funeral, cremation or burial expenses included in the foregoing shall in no event exceed $1,750.

Any amount payable under this insurance shall be reduced by the amount of benefits an injured person has recovered or is entitled to recover for the same elements of loss under the workmen's compensation laws of any state or the federal government or the Medicaid program.

If benefits have been received under the Florida Motor Vehicle No-Fault Law from any insurer for the same items of loss and expense for which benefits are available under this policy, the Company shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from the Company its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

The amount of any deductible stated in the schedule of this endorsement shall be deducted from the total amount of all sums otherwise payable by the Company with respect to all loss and expense incurred by or on behalf of each person to whom the deductible applies and who sustains **bodily injury** as the result of any one **accident**, and if the total amount of such loss and expense exceeds such deductible, the total limit of benefits the Company is obligated to pay shall then be the difference between such deductible amount and the applicable limit of the Company's liability. Such deductible amount shall not be applied to funeral, cremation or burial expenses.

If an entry in the schedule or declaration so indicates any amount payable under this insurance to the **named insured** or dependent **relative** shall be reduced by any benefits payable (a) under the Federal Medicare Program, (b) by the Federal Government to active or retired military personnel and their dependent relatives. If such benefits are not available at the time of loss the Company shall have the right to recompute and charge the appropriate premium.

## Definitions

When used in reference to this Section:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"medical expense"** means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

**"named insured"** means the person or organization named in the declarations of the policy and if an individual, shall include the spouse if a resident of the same household;

**"motor vehicle"** means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle;

a **"motor vehicle"** does not include:

    (a) a mobile home; or

    (b) any motor vehicle which is used in mass transit or public school transportation and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit or public school transportation authority, or a political subdivision of the state.

**"occupying"** means in or upon or entering into or alighting from;

**"insured motor vehicle"** means a **motor vehicle:**

    (a) of which the **named insured** is the **owner,** and

    (b) with respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law and

    (c) for which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a motor vehicle;

**"relative"** means a person related to the **named insured** by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as the **named insured;**

**"pedestrian"** means a person while not an occupant of any self-propelled vehicle;

**"owner"** means a person or organization who holds the legal title to a **motor vehicle,** and also includes:

    (a) a debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement, and

    (b) a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 22 10 (Ed. 10 82)

HART000335

© 🅗 1982

(c) a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

**"work loss"** means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

**"replacement services expenses"** means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household.

**Policy Period; Territory**

The insurance under this Section applies only to accidents which occur during the policy period

(a) in State of Florida; and

(b) as respects the **named insured** or a **relative,** while **occupying** the **insured motor vehicle** outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c) as respects the **named insured,** while **occupying a motor vehicle** of which **a relative** is the **owner** and for which security is maintained under the Florida Motor Vehicle No-Fault Law outside the State of Florida but within the United States of America, its territories or possessions or Canada.

**Conditions**

**1. Notice.** In the event of an accident, written notice of the loss must be given to the Company or any of its authorized agents as soon as practicable.

If any injured person or his legal representative shall institute legal action to recover damages for **bodily injury** against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such injured person or his legal representative.

**2. Action Against the Company.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until 30 days after the required notice of accident and reasonable proof of claim has been filed with the Company.

**3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Witheld.** As soon as practicable the person making claim shall give to the company written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the company in determining the amount due and payable. Such person shall submit to mental or physical examinations at the company's expense when and as often as the company may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination the company will not be liable for subsequent personal injury protection benefits. Whenever a person making claim is charged with committing a felony the company shall withhold benefits until at the trial level the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**4. Reimbursement and Subrogation.** Unless prohibited by the Florida Motor Vehicle No-Fault Law and in the event of payment to or for the benefit of any injured person under this insurance:

(a) the Company shall be reimbursed to the extent of such payment, exclusive of reasonable attorneys' fees and other reasonable expenses, out of the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made and the Company shall have a lien on such proceeds to such extent;

(b) the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(c) the company providing personal injury protection benefits on a private passenger **motor vehicle,** as defined in the Florida Motor Vehicle No-Fault Law shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial **motor vehicle,** as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while **occupying,** or while a **pedestrian** through being struck by, such commercial **motor vehicle.**

**CA 22 10** (Ed. 10 82)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000336



**5. Special Provision for Rented or Leased Vehicles.** Notwithstanding any provision of this coverage to the contrary, if a person is injured while **occupying,** or through being struck by, a **motor vehicle** rented or leased under a rental or lease agreement which does not specify otherwise in bold type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

<div align="center">SECTION II</div>

## MODIFICATION OF POLICY COVERAGES

Any automobile medical payments insurance and any uninsured motorists insurance afforded by the policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits have been exhausted, any medical payments insurance afforded by the policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expenses benefits contained in Section I, but shall not be payable for the amount of the deductible selected.

<div align="center">SECTION III</div>

## PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the **named insured** pursuant to Section 12 (2) (e) of the Florida Motor Vehicle No-Fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the **named insured** shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 22 10** (Ed. 10 82)

HART000337



CA 22 16
(Ed. 01 81)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT (KENTUCKY)

The Company agrees with the **named insured** subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I
### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay, in accordance with Kentucky Revised Statutes Chapter 304, Sub Title 39, personal injury protection benefits for:

(a) **medical expense,**

(b) **work loss,**

(c) **replacement services loss,**

(d) **survivor's economic loss,**

(e) **survivor's replacement services loss,** and

(f) **funeral expense**

incurred with respect to **bodily injury** sustained by an **eligible injured person** and caused by an accident arising out of the operation, maintenance or use of a **motor vehicle** as a vehicle.

**Exclusions**

This coverage does not apply:

(a) to **bodily injury** sustained by the **named insured** or any **relative** while **occupying** any **motor vehicle** owned by the **named insured** which is not an **insured motor vehicle;**

(b) to **bodily injury** sustained by any **relative** while **occupying** any **motor vehicle** owned by such **relative** with respect to which the security required by the Kentucky Revised Statutes Chapter 304, Sub Title 39, is not in effect;

(c) to **bodily injury** sustained by the **named insured** or any **relative,** who has not rejected his tort limitation pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, while **occupying** or while a **pedestrian** through being struck by, any **motor vehicle,** other than the insured **motor vehicle,** with respect to which the security required under the Kentucky Revised Statutes Chapter 304, Sub Title 39, is in effect unless the provider of such security fails to make payment for loss within 30 days of reasonable proof of the fact and the amount of loss sustained;

(d) to **bodily injury** sustained by any person if such injury arises from his conduct within the course of a business of repairing, servicing or otherwise maintaining **motor vehicles** unless such conduct occurs off the business premises;

(e) to **bodily injury** sustained by any person arising from conduct in the course of loading or unloading any **motor vehicle** unless such conduct occurs while **occupying** such **motor vehicle;**

(f) to **bodily injury** sustained by any person other than the **named insured** or any **relative** which arises from the operation, maintenance or use of a **motor vehicle** without a good faith belief that he is legally entitled to do so;

(g) to any benefits any person would otherwise be entitled to receive hereunder for **bodily injury** intentionally caused by such person or arising out of his intentionally attempting to cause **bodily injury,** and, if any person dies as a result of intentionally causing or attempting to cause **bodily injury** to himself, his survivors are not entitled to any **survivor's economic loss** or **survivor's replacement services loss** benefits;

(h) to **bodily injury** sustained by any **pedestrian,** other than the **named insured** or any **relative,** outside the Commonwealth of Kentucky;

(i) to **bodily injury** sustained by any person, other than the **named insured** or any **relative** while **occupying** a **motor vehicle** which is regularly used in the course of the business of transporting persons or property and which is one of five or more **motor vehicles** under common ownership, or a **motor vehicle** owned by a government other than the Commonwealth of Kentucky, its political subdivisions, municipal corporations, or public agencies, if the accident occurs outside the Commonwealth of Kentucky.

(j) to **bodily injury** sustained by any person arising out of the use of any **motor vehicle** while located at a residence or premises;

(k) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(l) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

(m) to **bodily injury** sustained by any person while **occupying** a motorcycle.

**Definitions**

When used in reference to this coverage:

"**bodily injury**" means bodily harm, sickness, disease, or death;

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000338



© 1980

**"eligible injured person"** means

(a) the **named insured** or any **relative** who sustains **bodily injury** while **occupying** or while a **pedestrian** through being struck by any **motor vehicle**, provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an **eligible injured person,** unless personal injury protection coverage has subsequently been purchased for such person under this policy, or

(b) any other person who sustains **bodily injury** while **occupying** or while a **pedestrian** through being struck by the **insured motor vehicle**, provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an **eligible injured person,**

however, any rejection of tort limitations applicable solely to motorcycles shall not affect the status of any person as an **eligible injured person** with respect to any **motor vehicle** other than a motorcycle;

**"funeral expense"** means reasonable charges incurred for expenses in any way related to funeral, cremation or burial;

**"insured motor vehicle"** means a **motor vehicle** with respect to which:

(a) the **bodily injury** liability insurance of the policy applies and for which a specific premium is charged, and

(b) the **named insured** is required to maintain security under the provisions of Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"medical expense"** means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, and other remedial treatment and care, any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing, and any healing arts professions of a type licensed by the Commonwealth of Kentucky, provided that medical expense shall not include that portion of a charge for a room in a hospital, clinic, convalescent or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge for semi-private accommodations, unless intensive care is medically required;

**"motor vehicle"** means a vehicle as defined in Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"named insured"** means the person or organization named in the declarations;

**"occupying"** means in or upon, entering into or alighting from;

**"pedestrian"** means a person who is not **occupying** a **motor vehicle** at the time the injury occurs;

**"relative"** means the spouse and any person related to the **named insured** by blood, marriage, or adoption including a minor in the custody of the **named insured,** spouse or such related person who is a resident of the same household as the **named insured,** whether or not temporarily residing elsewhere, but does not include any such person who is a **named insured** under any other policy providing the security under Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"replacement services loss"** means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the **eligible injured person** would have performed, not for income, but for the benefit of himself or his family if he had not been injured;

**"survivor"** means a person indentified in Kentucky Revised Statutes Section 411.130 as one entitled to receive benefits by reason of the death of another person;

**"survivor's economic loss"** means loss after the **eligible injured person's** death of contributions of things of economic value to his **survivors,** not including services they would have received from the **eligible injured person** had he not suffered the fatal injury, less expenses of the **survivors** avoided by reason of the **eligible injured person's** death;

**"survivor's replacement services loss"** means expenses reasonably incurred by **survivors** after the **eligible injured person's** death in obtaining ordinary and necessary services in lieu of those the **eligible injured person** would have performed for their benefit had he not suffered the fatal injury, less expenses of the **survivors** avoided by reason of the **eligible injured person's** death and not subtracted in calculating **survivor's economic loss;**

**"work loss"** means loss of income from work the **eligible injured person** would probably have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him.

## Policy Period; Territory

This coverage applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

## Limits of Liability

Regardless of the number of persons insured, policies or approved plans of self-insurance applicable, claims made or **insured motor vehicles** to which this coverage applies, the Company's liability for personal injury protection benefits with respect to **bodily injury** sustained by any one **eligible injured person** in any one motor vehicle accident shall not exceed $10,000 in the aggregate, and subject to such aggregate limit.

**CA 22 16** (Ed. 01 81)

represents that these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000339

© 1980

1. the maximum amount payable for **work loss, replacement services loss, survivor's economic loss,** and **survivor's replacement services loss** shall not exceed $200 per week in the aggregate prorated for any lesser period, provided that if the **eligible injured person's** earnings or work are seasonal or irregular, the weekly limit shall be equitably adjusted or apportioned on an annual basis;
2. the maximum amount payable for **funeral expense** shall not exceed $1,000.

Any amount payable by the Company under the terms of this coverage shall be reduced by any applicable deductible set forth in the declarations, but only with respect to **bodily injury** sustained by the **named insured** or any **relative,** provided that, if two or more such persons sustain **bodily injury** in the same **motor vehicle** accident, such deductible applicable to all of them shall not exceed such deductible amount and such amount shall be allocated equally among them. Provided further that, a **named insured** or **relative** is entitled to receive under this coverage the difference between this deductible and a greater deductible applicable under another policy applying to personal injury protection coverage pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39.

In calculating loss or expense for which personal injury protection benefits are payable under this coverage, a reduction shall be made in the amount of:

1. all benefits or advantages a person receives or is entitled to receive from social security (excluding benefits under Medicare Part B or Medicaid) and workmen's compensation, unless these benefits or advantages have not been received before personal injury protection benefits are overdue or the claim is paid.
2. any income tax saving resulting from benefits or advantages received for loss of income under this coverage or from like benefits or advantages received under social security or workmen's compensation which are not considered taxable income, provided that the maximum reduction may not exceed 15% of the loss of income and shall be in lesser amount if the claimant furnishes to the Company reasonable proof of a lower value of the income tax advantage.

## Conditions

**A. Action Against Company.** No action shall lie against the Company unless as a condition precedent thereto, there shall have been full compliance with all the terms of this coverage.

**B. Notice.** In the event of an accident, written notice containing particulars sufficient to identify the **eligible injured person,** and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each **eligible injured person** to the Company or any of its authorized agents as soon as practicable.

**C. Medical Reports; Proof of Claim.** As soon as practicable, the **eligible injured person** or someone on his behalf shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the **bodily injury,** treatment and rehabilitation received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The **eligible injured person** shall submit to physical and mental examination by physicians selected by the Company when and as often as the Company may reasonably require.

**D. Subrogation.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of any payment under this coverage, the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

**E. Reimbursement and Trust Agreement.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of the payment to any person under this coverage:

1. the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made, and the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such **bodily injury,** his agent, his insurer or a court having jurisdiction in the matter;
2. such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such **bodily injury;**
3. such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; and
4. such person shall execute and deliver to the Company instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**F.   Non-Duplication of Benefits; Priority of Payments; Other Insurance.** No eligible injured person shall recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved self-insurance plans. In the event an **eligible injured person** has other similar insurance, including approved self-insurance plans, available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this coverage and such other insurance.

## SECTION II

In consideration of the coverage afforded under Section I and the adjustment of applicable rates:

(a)   any amount payable under the uninsured motorists coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury** sustained by an **eligible injured person;**

(b)   any automobile medical payments or expense coverages afforded under this policy shall be excess insurance over any personal injury protection benefits paid or payable but for the application of a deductible under this or any other automobile insurance policy because of **bodily injury** sustained by an **eligible injured person.**

## SECTION III

**Constitutionality Clause.**

The premium for and the coverages of the policy have been established in reliance upon the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39. In the event a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, the provisions of such statutes invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy and the provisions of this endorsement shall be voidable or subject to amendment at the option of the Company.

**Notice to Policyholders.**

Acceptance of the coverage described in Kentucky Revised Statutes Chapter 304, Sub Title 39, places some limitations on your right to bring suit for **bodily injury,** KRS 304.39-060 reads in part:

"(1) Any person who registers, operates, maintains or uses a **motor vehicle** on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such **motor vehicle** and use of the public roadways, be deemed to have accepted the provisions of this Act, and in particular those provisions which are contained in this section.

(2) (a)   Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a **motor vehicle** is 'abolished' for damages because of **bodily injury,** sickness or disease to the extent the basic reparation benefits provided in this Act are payable therefor, or that would be payable but for any deductible authorized by this Act, under any insurance policy or other method of security complying with the requirements of this Act, except to the extent non-economic detriment qualifies under subsection (2)(b) hereof.

(b)   In any action of tort brought against the owner, registrant, operator or occupant of a **motor vehicle** with respect to which security has been provided as required in this Act, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience **because** of **bodily injury,** sickness or disease arising out of the ownership, maintenance, operation or use of such **motor vehicle** only in the event that the benefits which are payable for such injury as 'medical expense' or which would be payable but for any exclusion or deductible authorized by this Act exceed $1,000.00 or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least $1,000.

(c)   Tort liability is not so limited for injury to a person who is not an owner, operator, maintainer or user of a **motor vehicle** within subsection (1) of this section.

(3) Any person may refuse to consent to the limitations of his tort rights and liabilities as contained

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 22 16 (Ed. 01 81)

Page 4 of 5



in this section. Such rejection must be in writing in a form to be prescribed by the Department of Insurance and must have been executed and filed with the Department at a time prior to any **motor vehicle** accident for which such rejection is to apply . . .".

These are some of the exceptions to the limitations on your right to sue and are not intended to comprise a complete enumeration of all circumstances under which suit may be brought for **bodily injury.**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 22 16** (Ed. 01 81)

HART000342



CA 22 30
(Ed. 07 82)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT (NEW JERSEY)

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in **bold face** other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions"**.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

The Company agrees with the **named insured,** subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SCHEDULE

The total aggregate amount of extended **medical expense benefits** payable under Section II is $

### SECTION I

#### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay personal injury protection benefits consisting of:

(a) **medical expense benefits,**

(b) **income continuation benefits,**

(c) **essential services benefits,**

(d) **survivor benefits,** and

(e) **funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person** caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

#### Exclusions

The insurance under this endorsement does not apply:

(a) to **bodily injury** to a person whose conduct contributed to the injury in any of the following ways:

  (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

  (2) while acting with specific intent to cause injury or damage to himself or others;

(b) to **bodily injury** to the **named insured** or any relative of the **named insured** sustained while occupying, using or entering into or alighting from a **private passenger automobile** which is not an **insured automobile** under this policy, if he is required to maintain automobile liability insurance coverage with respect to the automobile under the

New Jersey Automobile Reparation Reform Act, and has not done so;

(c) to **bodily injury** to any person who is not occupying an **insured automobile,** other than the **named insured** or a relative of the **named insured** or a resident of New Jersey, if the **accident** occurs c   'e of New Jersey.

(d) to **bodily injury** arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

(e) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(f) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

#### Definitions

When used in reference to this insurance:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"eligible injured person"** means

(a) the **named insured** or any relative of the **named insured,** if the **named insured** or relative sustains **bodily injury**

  (1) as a result of any accident involving a **private passenger automobile,** or

  (2) while a **pedestrian,** as a result of being ... k by an object propelled by or from a **private passenger automobile;** or

company legal department company records. At this time the company does not certify that these documents constitute a complete and accurate copy of the policy.



(b) any other person who sustains **bodily injury**

    (1) while, with the permission of the **named insured**, occupying, using, entering into or alighting from the **insured automobile**, or

    (2) while a **pedestrian**, caused by the **insured automobile** or as a result of being struck by an object propelled by or from the **insured automobile**;

**"essential services benefits"** means an amount not exceeding a limit of $12.00 per day and a total limit of $4,380 payable to an **eligible injured person** as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his lifetime and which he would ordinarily have performed not for income but for the care and maintenance of himself and his relatives;

**"funeral expense benefits"** means an amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred;

**"income"** means salary, wages, tips, commissions, fees and other earnings derived from work or employment;

**"income continuation benefits"** means an amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an **income producer** during his lifetime, as a result of **bodily injury** disability;

**"income producer"** means a person who, at the time of the accident was in an occupational status, earning or producing income;

**"insured automobile"** means an automobile with respect to which the **named insured** is required to maintain automobile liability insurance coverage under the New Jersey Automobile Reparation Reform Act, to which the **bodily injury liability** insurance of the policy applies and for which a specific premium is charged;

**"medical expense benefits"** means all reasonable expenses incurred for medical, surgical and dental treatment, professional nursing, hospital and rehabilitation services, x-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses incurred for treatment prescribed by persons licensed to practice medicine, surgery, psychology or chiropractic, or for any non-medical remedial treatment rendered in accordance with a recognized religious method of healing; however, it does not include expenses in excess of those for a semi-private room, unless more intensive care is medically required;

**"named insured"** means the person or organization named in Item one of the declarations and, if an individual, includes his or her spouse. If the **insured automobile** is owned by a farm family co-partnership or corporation, the term **"named insured"** also includes the head of the household of each family designated in the policy as having a working interest in the farm;

**"pedestrian"** means any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks and includes any person who is entering into or alighting from such a vehicle;

**"private passenger automobile"** means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

    (1) a private passenger or station wagon type automobile,

    (2) a pick-up or panel truck or delivery sedan, or

    (3) a utility automobile designed for personal use as a camper or motor home or for family recreational purposes; but

a **private passenger automobile** does not include a motorcycle, an automobile used as a public or livery conveyance for passengers, a pick-up or panel truck, delivery sedan or utility automobile customarily used for business, occupational or professional purposes other than farming or ranching or a utility automobile customarily used for the transportation of passengers other than members of the user's family or their guests;

**"relative"** means a person related to the **named insured** by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the **named insured**;

**"survivor benefits"** means the amount or amounts payable in the event of the death of an **eligible injured person** as determined in subdivision (1) or (2) hereof, as appropriate:

    (1) if the **eligible injured person** was an **income producer** at the time of the accident, an amount equal to the difference between $5,200 and all basic **income continuation benefits** paid for any loss of income resulting from his injury prior to his death;

    (2) if the **eligible injured person** ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount equal to the difference between $4,380 and all basic **essential services benefits** paid with respect to his injury prior to death.

**Limit of Liability**

Any amount payable by the Company as personal injury protection benefits with respect to **bodily injury** shall be reduced by:

    (1) all amounts paid, payable or required to be provided under any workmen's compensation or employees temporary disability law, or under Medicare provided under federal law; or

    (2) benefits actually collected that are provided under federal law to active and retired military personnel.

The applicable limit on income continuation benefits applies separately to each full regular and customary

The company located these documents in its files. The company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 22 30 (Ed. 07 82)

Page 2 of 4

HARY000344

(c) to property contained in or struck by a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, but this exclusion does not apply to property of the named insured or his relatives while contained in or struck by a highway vehicle owned by a designated insured or his relatives;

(d) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law;

(e) to the first $100 of the amount of property damage to the property of each insured as the result of any one accident;

(f) so as to inure directly or indirectly to the benefit of any insurer of property;

(g) to property damage arising out of the ownership, maintenance or use of a hit-and-run vehicle;

## II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) highway vehicles to which this insurance applies,

(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

(b) The limit of property damage liability stated in the schedule is the total limit of the company's liability for all damages because of property damage to all property of one or more insureds as the result of any one accident.

(c) Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is an insured shall be reduced by

(1) all sums paid on account of such bodily injury or property damage by or on behalf of

(i) the owner or operator of the uninsured highway vehicle and

(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage,

including all sums paid under the bodily injury or property damage liability coverage of the policy, and

(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

(d) Any payment made under this insurance to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the bodily injury or property damage liability coverage of the policy.

(e) The company shall not be obligated to pay under this insurance that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under the medical payments or medical expense coverage of the policy or which represents loss paid or payable to the insured under any automobile physical damage insurance of the policy.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"bodily injury" means bodily injury, sickness or disease, including death, sustained by an insured under (a) or (b) of the Persons Insured provision;

"designated insured" means an individual named in the schedule under Designated Insured and also includes his spouse, if a resident of the same household;

"highway vehicle" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"hit-and-run vehicle" means (i) a highway vehicle which causes an accident resulting in bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident, or (ii) a highway vehicle which without physical contact with the insured or with a vehicle which the insured is occupying at the time of the accident causes bodily injury to an insured arising out of an accident in New Jersey, provided:

(a) there cannot be ascertained the identity of either the operator or owner of such highway vehicle; and

(b) the insured or someone on his behalf shall have

The company located these documents in its business records and does not certify that these documents constitute a complete and accurate copy of the policy.

reported; the accident within 48 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

(c) at the company's request, the insured or his legal representative makes available for inspection the vehicle which the insured was occupying at the time of the accident; and

(d) with respect to subdivision (ii) the facts of such accident can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such accident;

"insured highway vehicle" means a highway vehicle:

(a) described in the schedule as an insured highway vehicle to which the bodily injury and property damage liability coverage of the policy applies;

(b) while temporarily used as a substitute for an insured highway vehicle as described in subparagraph (a) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) while being operated by the named or designated insured or by the spouse of either if a resident of the same household;

but the term "insured highway vehicle" shall not include:

(i) a vehicle while used as a public or livery conveyance, unless such use is specifically declared and described in the policy;

(ii) a vehicle while being used without the permission of the owner;

(iii) under subparagraphs (b) and (c) above, a vehicle owned by the named insured, any designated insured or any resident of the same household as the named or designated insured; or

(iv) under subparagraphs (b) and (c) above, a vehicle furnished for the regular use of the named insured or any resident of the same household;

"named insured" means the individual named in item 1 of the declarations and also includes his spouse, if a resident of the same household;

"occupying" means in or upon or entering into or alighting from;

"property damage" means injury to or destruction of (i) an insured highway vehicle owned by the named insured or his spouse, if a resident of the same household, (ii) any property owned by an insured under (a) or (b) of the Persons Insured provision while contained in such insured highway vehicle and (iii) any property owned by an insured under (a) of the Persons Insured provision while contained in any insured highway vehicle;

"●●●" includes the District of Columbia, a territory or possession of the United States, and a province of Canada;

"uninsured highway vehicle" means:

(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or

(b) a hit-and-run vehicle, but only with respect to bodily injury caused thereby;

but the term "uninsured highway vehicle" shall not include:

(i) an insured highway vehicle,

(ii) a highway vehicle which is owned or operated by a self-insurer within the meaning of any vehicle financial responsibility law, motor carrier law or any similar law,

(iii) a highway vehicle which is owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing.

## VI. ADDITIONAL CONDITIONS

### A. Policy Provisions.

None of the Insuring Agreements, Exclusions, Conditions or other provisions of the policy shall apply to the insurance afforded by this endorsement except the Conditions "Notice" (or "Insured's Duties in the Event of Occurrence, Claim or Suit"), "Changes", "Assignment", "Cancellation" and "Declarations".

### B. Premium.

If during the policy period the number of insured highway vehicles owned by the named insured or spouse or the number of dealer's license plates issued to the named insured changes, the named insured shall notify the company during the policy period of any change and the premium shall be adjusted in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

### C. Proof of Claim.

As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or the person or persons

The company located these documents in its company does not certify that the documents constitute a complete and accurate copy of the policy.

CA 2X 14 (Ed. 01 78)

entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records.

The insured or other person making claim for damage to property shall file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement setting forth the interest of the insured and of all others in the property affected, any encumbrances thereon, the actual cash value thereof at time of loss, the amount, place, time and cause of such loss, and the description and amounts of all other insurance covering such property. Upon the company's request, the insured shall exhibit the damaged property to the company.

**D. Assistance and Cooperation of the Insured.**

After notice of claim under this insurance, the company may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the bodily injury or property damage; and in any action against the company, the company may require the insured to join such person or organization as a party defendant.

**E. Notice of Legal Action.**

If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury or property damage against any person or organization legally responsible for the use of a highway vehicle involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.

**F. Other Insurance.**

With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

With respect to property damage, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance of any kind applicable to such property damage, and this insurance shall apply only in the amount by which the limit of liability for this coverage exceeds the amount recoverable under such other insurance.

**G. Arbitration.**

If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such per-

son and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

**H. Trust Agreement.**

In the event of payment to any person under this insurance:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or property damage because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this insurance;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision.

**I. Payment of Loss by the Company.**

Any amount due hereunder is payable

(a) to the insured, or

(b) if the insured be a minor to his parent or guardian, or

(c) if the insured be deceased to his surviving spouse, otherwise

(d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents;

provided, the company may at its option pay any amount due hereunder in accordance with division (d) hereof;

**J. Action Against Company.**

No action shall lie against the company unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of the policy applicable to this coverage.

**K.** This endorsement replaces any other provisions of the policy, including any endorsement forming a part thereof, affording similar insurance with respect to any damages arising out of the ownership, maintenance or use of an uninsured vehicle or a hit-and-run vehicle.

This Authenticated Electronically Filed documents its arising out of the ownership, maintenance or use of an uninsured vehicle or a hit-and-run vehicle.documents constitute a complete and accurate copy of the policy.



CA 2X 17
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### UNINSURED MOTORISTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

   b. For which the sum of all liability bonds or policies at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the limit of this insurance, or

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is **occupying**.

   However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

**B. WE WILL PAY**

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

**C. WE WILL NOT COVER — EXCLUSIONS**

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle owned by **you** or any **family member** which is not a covered **auto**.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.

**E. OUR LIMIT OF LIABILITY**

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

**F. CHANGES IN CONDITIONS**

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

Copyright, Insurance Services Office, 1977

company business records. The company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000348

a.  Promptly notify the police if a hit-and-run driver is involved, and

b.  Promptly send us copies of the legal papers if a suit is brought.

3.  OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for **us** and pay **us** back the amount **we** have paid.

4.  The following Condition is added:

**ARBITRATION**

a.  If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b.  Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 2X 17** (Ed. 01 78)          Copyright, Insurance Services Office, 1977          Page 2 of 2

HART000349



CA 99 03
(Ed. 01 80)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AUTO MEDICAL PAYMENTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for AUTO MEDICAL PAYMENTS INSURANCE:

1. **"Family member"** means a person related to you by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

**B. WE WILL PAY**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an **insured** who sustains **bodily injury** caused by **accident. We** will pay only those expenses incurred within three years from the date of the **accident.**

**C. WE WILL NOT COVER — EXCLUSIONS**

This insurance does not apply to:

1. **Bodily injury** sustained by an insured while **occupying** a vehicle located for use as a premises.

2. **Bodily injury** sustained by **you** or any family member while **occupying** or struck by any vehicle (other than a covered **auto**) owned by **you** or furnished or available for **your** regular use.

3. **Bodily injury** sustained by any **family member** while **occupying** or struck by any vehicle (other than **a covered auto**) owned by or furnished or available for the regular use of any **family member.**

4. **Bodily injury** to **your** employee arising out of and in the course of employment by **you.** However, we will cover **bodily injury** to **your** domestic employees if not entitled to workers' compensation benefits.

5. **Bodily injury** to an **insured** while working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours.**

6. **Bodily injury** caused by declared or undeclared war or insurrection or any of their consequences.

7. **Bodily injury** to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member** while **occupying** or, while a pedestrian, when struck by any **auto.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

**E. OUR LIMIT OF LIABILITY**

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the **accident,** the most **we** will pay for **bodily injury** for each **insured** injured in any one **accident** is the limit of AUTO MEDICAL PAYMENTS shown in the declarations.

**F. CHANGES IN CONDITIONS**

The CONDITIONS of the policy are changed for AUTO MEDICAL PAYMENTS INSURANCE as follows:

1. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

2. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible auto medical payments insurance.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 99 03** (Ed. 01 80)            Copyright, Insurance Services Office, 1977, 1979

CA 99 21 01 78

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

It is agreed that:

A. The policy does not apply:

1. Under any Liability Coverage, to **bodily injury** or **property damage**

    a. with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    b. resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

    a. the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

    b. the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

    c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c applies only to **property damage** to such **nuclear facility** and property thereat.

B. As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties:

"**nuclear material**" means **source material, special nuclear material** or **byproduct material;**

"**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

"**waste**" means any waste material (a) containing **byproduct material** and (b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph 1 or 2 thereof;

"**nuclear facility**" means

1. any **nuclear reactor,**

2. any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel,** or (c) handling, processing or packaging **waste,**

3. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

4. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**property damage**" includes all forms of radioactive contamination of property.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 99 21 01 78          Copyright, Insurance Services Office,  1977

HART000351

## ADDITIONAL INSURED
### (Vendors—Limited Form)

Named Insured and Address

This endorsement forms a part of Policy No........................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date ...............................................................12:01 A. M., standard time at the address of the named insured as
stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include any person or organization (herein referred to as "Vendor"), as an Insured, but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following additional provisions:

1. The insurance with respect to the Vendor does not apply to:

   (a) any express warranty, or any distribution or sale for a purpose, unauthorized by the Named Insured

   (b) bodily injury or property damage arising out of

      (i) any act of the Vendor which changes the condition of the products,

      (ii) any failure to maintain the product in merchantable condition,

      (iii) any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products, or

      (iv) products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingre-dient of any other thing or substance by or for the Vendor;

   (c) bodily injury or property damage occurring within the Vendor's premises.

2. This insurance does not apply to any person or organization, as Insured, from whom the Named Insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.



**THE HARTFORD**

Countersigned by..............................................
                                 Authorized Agent

Form L-5243-0   Printed in U.S.A.   10-'68   (ISO: GL 20 16 07 66)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

## SUPPLEMENTARY COVERAGE ENDORSEMENT
### PERSONAL INJURY AND ADDITIONAL INSURED (Employees)

Named Insured and Address

This endorsement forms a part of Policy No........................................
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.......................................................12:01 A. M., standard time at the address of the *named insured*
as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

---

It is agreed that:

1. The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply

   a. to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

   b. to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured*, or if the *named insured* is a partnership or joint venture, any partner or member thereof.

It is further agreed that:

1. Such insurance as is afforded under Coverage A with respect to *bodily injury*, is extended to apply to *personal injury* as defined herein, subject to the following additional provisions:

   1. This insurance does not apply

      a. to liability for *personal injury* assumed by the *insured* under any contract or agreement;

      b. to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured;*

      c. to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured;*

      d. to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

      e. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

      f. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured.*

   2. When used in reference to this insurance

      a. "personal injury" means:

         1. injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory.*

      b. "personal injury offense" means:

         1. false arrest, detention or imprisonment, or malicious prosecution,
         2. libel, slander, defamation, disparagement or violation of an individual's right of privacy, or
         3. wrongful entry or eviction or other invasion of the right of private occupancy.

   3. The Limits of Liability section is amended in the following respect:

      The total liability of the company for all damages because of all *personal injury* to which this policy applies, shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

...ted these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



**THE HARTFORD**

Countersigned by.........................................................

*Authorized Agent*

Form L-3355-1 Printed in U. S. A. (NS)

HART000353

## Comprehensive General Liability Insurance Coverage Part (Continued)

### I. COVERAGE A — BODILY INJURY LIABILITY

#### COVERAGE B — PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

**Coverage A** – *bodily injury* or

**Coverage B** – *property damage*

to which this insurance applies. caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b) to *bodily injury* or *property damage* arising out of the ownership, maintenance. operation, use, loading or unloading of

  (1) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured,* or

  (2) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured;*

  but this exclusion does not apply to the parking of an *automobile* on premises owned by, rented to or controlled by the *named insured* or the ways immediately adjoining, if such *automobile* is not owned by or rented or loaned to any *insured;*

(c) to *bodily injury* or *property damage* arising out of (1) the ownership, maintenance. operation, use. loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to *bodily injury* or *property damage* arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured;*

(e) to *bodily injury* or *property damage* arising out of the ownership, maintenance. operation, use, loading or unloading of

  (1) any watercraft owned or operated by or rented or loaned to any *insured,* or

  (2) any other watercraft operated by any person in the course of his employment by any *insured;*

  but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the *named insured;*

(f) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to *bodily injury* or *property damage* due to war, whether or not declared. civil war, insurrection. rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to

  (1) liability assumed by the *insured* under an *incidental contract* or

  (2) expenses for first aid under the Supplementary Payments provision;

(h) to *bodily injury* or *property damage* for which the *insured* or his indemnitee may be held liable

  (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

  (2) if not so engaged, as an owner or lessor of premises used for such purposes,

  if such liability is imposed

  (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

  (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contibutes to the intoxication of any person;

  but part (ii) of this exclusion does not apply with respect to liability of the *insured* or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract;*

(k) to *property damage* to

  (1) property owned or occupied by or rented to the *insured,*

  (2) property used by the *insured,* or

  (3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

  but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to *property damage* (other than to *elevators*) arising out of the use of an *elevator* at premises owned by, rented to or controlled by the *named insured;*

(l) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

  (1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

  (2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

  but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(n) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(o) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q) to *property damage* included within:

  (1) the *explosion hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "x";

The company located these documents in its business records and that these documents constitute a complete and accurate copy of the policy.

HART000354



# Comprehensive General Liability Insurance Coverage Part *(Continued)*    **THE HARTFORD**

(2) the *collapse hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "c".

(3) the *underground property damage hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "u".

## II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured;* and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of *mobile equipment* registered under any motor vehicle registration law,

(i) an employee of the *named insured* while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the *named insured* any such equipment registered in the name of the *named insured* and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an *insured* under this paragraph (e) with respect to:

(1) *bodily injury* to any fellow employee of such person injured in the course of his employment, or

(2) *property damage* to property owned by, rented to, in charge of or occupied by the *named insured* or the employer of any person described in subparagraph (ii).

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured.*

## III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage,* or (3) claims made or suits brought on account of *bodily injury* or *property damage,* the company's liability is limited as follows:

**Coverage A** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of (1) all *bodily injury* included within the *completed operations hazard* and (2) all *bodily injury* included within the *products hazard* shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate":

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured,* including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *property damage* included within the *products hazard* and all *property damage* included within the *completed operations hazard.*

Such aggregate limit shall apply separately to the *property damage* described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the *named insured.*

**Coverages A and B** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

## IV. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory.*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**COVERAGE PART**
(continued)

## I. COVERAGE E — PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains *bodily injury* caused by accident and all reasonable *medical expense* incurred within one year from the date of the accident on account of such *bodily injury*, provided such *bodily injury* arises out of (a) a condition in the *insured premises* or (b) operations with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy.

### Exclusions

This insurance does not apply:

**(a)** to *bodily injury*

   **(1)** arising out of the ownership, maintenance, operation, use, loading or unloading of

      **(i)** any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

      **(ii)** any other *automobile* or aircraft operated by any person in the course of his employment by any *insured*;

     but this exclusion does not apply to the parking of an *automobile* on the *insured premises*, if such *automobile* is not owned by or rented or loaned to any *insured*;

   **(2)** arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

   **(3)** arising out of the ownership, maintenance, operation, use, loading or unloading of

      **(i)** any watercraft owned or operated by or rented or loaned to any *insured*, or

      **(ii)** any other watercraft operated by any person in the course of his employment by any *insured*;

     but this exclusion does not apply to watercraft while ashore on the *insured premises*; or

   **(4)** arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured*;

**(b)** to *bodily injury*

   **(1)** included within the *completed operations hazard* or the *products hazard*;

   **(2)** arising out of operations performed for the *named insured* by independent contractors other than (i) maintenance and repair of the *insured premises* or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

   **(3)** resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the *named insured* is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the *named insured* is such an owner or lessor;

   **(4)** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

**(c)** to *bodily injury*

   **(1)** to the *named insured*, any partner therein, any tenant or other person regularly residing on the *insured premises* or any employee of any of the foregoing if the *bodily injury* arises out of and in the course of his employment therewith;

   **(2)** to any other tenant if the *bodily injury* occurs on that part of the *insured premises* rented from the *named insured* or to any employee of such a tenant if the *bodily injury* occurs on the tenant's part of the *insured premises* and arises out of and in the course of his employment for the tenant;

   **(3)** to any person while engaged in maintenance and repair of the *insured premises* or alteration, demolition or new construction at such premises;

   **(4)** to any person if any benefits for such *bodily injury* are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

   **(5)** to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sports activities in the policy with respect to Premises Medical Payments Coverage;

**(d)** to any *medical expense* for services by the *named insured*, any employee thereof or any person or organization under contract to the *named insured* to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all *medical expense* for *bodily injury* to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all *medical expense* for *bodily injury* to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the schedule as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*insured premises*" means all premises owned by or rented to the *named insured* with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy, and includes the ways immediately adjoining on land;

"*medical expense*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services, and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000356

# CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

### (Blanket Coverage)
(Continued)

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the *bodily injury* or *property damage;*

(c) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to *bodily injury* or *property damage* for which the indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the *insured* may be held liable in an action on a contract by a third party beneficiary for *bodily injury* or *property damage* arising out of a project for a public authority; but this exclusion does not apply to action by the public authority or any other person or organization engaged in the project;

(g) to *property damage* to

(1) property owned or occupied by or rented to the *insured*,

(2) property used by the *insured*, or

(3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

(h) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

(2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(j) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(k) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(m) As respects any agreement relating to construction operations, to *bodily injury* or *property damage* arising out of

(1) construction, maintenance or repair of watercraft or loading or unloading thereof, or

(2) operations within fifty feet of any railroad property affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(n) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(o) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

When stated in the schedule as applicable, the following exclusions also apply to *contractual liability* assumed by the *insured*.

This exclusion does not apply:

(p) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *products hazard;*

(q) to *property damage* included within

(1) the *explosion hazard*,

(2) the *collapse hazard*, or

(3) the *underground property damage hazard.*

## II.  PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

## III.  LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or *suits* brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage YB** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

**Coverage ZB** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the *named insured*.

Coverages YB and ZB — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

HART000357

# CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

## IV.  ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*contractual liability*" means liability expressly assumed under a written contract or agreement; provided, however, that *contractual liability* shall not be construed as including liability under a warranty of the fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

"*suit*" includes an arbitration proceeding to which the *insured* is required to submit or to which the *insured* has submitted with the company's consent.

## V.  POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

## VI.  ADDITIONAL CONDITIONS

**Arbitration**

The company shall be entitled to exercise all of the *insured's* rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

**Premium**

When used as a premium basis:

1. the word "*cost*" means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which "*cost*" is the basis of premium, regardless of whether any liability is assumed under such contracts by the *insured*. It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the *insured*, or others including all fees, allowances, bonuses or commissions made, paid or due. It shall not include the cost of any operations to which exclusion (m) applies.

2. the word "*sales*" means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Amendment of Termination Provisions
for General Liability Insurance
New Jersey

 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No...........................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

It is agreed that:

A.   The second sentence in the first paragraph of the "Cancellation" Condition is replaced by the following:

If the *named insured* fails to discharge when due any of his obligations in connection with the payment of premium or any installment of such
premium, whether payable directly to the company or its agent, or indirectly under any premium finance plan or extension of credit, this policy
may be cancelled by the company by mailing to the *named insured,* at the address shown in this policy, written notice stating when not less than
ten days thereafter such cancellation shall be effective. With respect to cancellation for a reason other than non-payment of premium, this policy
may be cancelled by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than thirty days
thereafter such cancellation shall be effective.

B.   The following Condition is added:

Renewal

If the company elects not to renew this policy, it shall mail to the *named insured,* at the address shown in this policy, written notice of
nonrenewal at least thirty days prior to the expiration date of this policy; provided that, notwithstanding the failure of the company to comply with
the foregoing provisions of this paragraph, this policy shall terminate automatically on such expiration date, if the *named insured* has failed to
discharge when due any of his obligations in connection with the payment of premium or any installment of such premium, whether payable
directly to the company or its agent or indirectly under any premium finance plan or extension of credit.

The mailing of notice as aforesaid shall be sufficient proof of notice. *Delivery of such written notice shall be equivalent to mailing.*

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.....................................................................................

*Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form L-4100-0   Printed in U.S.A.   (G-535-1  GL-02030776)

HART000359

**General Liability**
**Amendatory Endorsement — Additional Definition**

 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No......................................
Issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...............................................Effective hour is the same
as stated in the Declarations of the Policy.

It is agreed that the following definition is added:

*"loading or unloading"*, with respect to an *automobile*, means the handling of property after it is moved from the place where it is accepted for
movement into or onto an *automobile* or while it is in or on an *automobile* or while it is being moved from an *automobile* to the place where it is
finally delivered, but "loading or unloading" does not include the movement of property by means of a mechanical device (other than a hand truck) not
attached to the *automobile*.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.........................................................................................
                                                                                    *Authorized Agent*

**Form L-4128-0**  Printed in U.S.A.  (ISO: GL 00 19 07 78)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000360



Host Liability Insurance



**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No............................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...............................................12:01 A. M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE
### MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
### OWNERS', LANDLORDS', AND TENANTS' LIABILITY INSURANCE

It is agreed that exclusion (h) does not apply to liability imposed upon the insured as the result of the giving or serving of alcoholic beverages at functions incidental to the named insured's business, provided the named insured is not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages, and provided further that there has been no intentional violation of any statute, regulation, or ordinance committed by or at the direction of the insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.....................................................................................
*Authorized Agent*

Form L-4191-0   Printed in U.S.A.   (N.S.)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000361

## Non-Owned Snowmobiles Endorsement



**THE HARTFORD**

| Policy Number | Named Insured and Address |
|---|---|

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

Comprehensive General Liability Insurance
Manufacturers and Contractors Liability Insurance
Owners, Landlords and Tenants Liability Insurance

---

It is agreed that Part 2 of Exclusion (c) is replaced by the following:

(2)   The operation or use of any snowmobile or trailer designed for use therewith

(i)   owned or operated by or rented or loaned to any **insured**, or

(ii)   operated by any person in the course of his employment by any **insured**;

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the Policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by _____

Form L-4330-0   Printed in U.S.A. (ISO: GL 00 26 0381)

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000362

# EXHIBIT 7

thereof, completes the below numbered Casualty Insurance Policy.

□ 1 Hartford Fire Insurance Company    □ 3 Hartford Casualty Insurance Company
□ 5 Hartford Accident and Indemnity Company    □ 7 Twin City Fire Insurance Company
Hartford Plaza, Hartford, Connecticut 06115

**INSURER →** Co. Code **5**

Previous Policy No.
10 C ML074OW

☐ Partnership ☒ Corporation
................ re (Other) .....................................
→ From

**POLICY NO.** 10 C ML074OW

CENTRICO INC.
100 FAIRWAY COURT
NORTHVALE, N.J. 07647

10-25-84    To    10-25-85

12:01 A.M., standard time at the address of the *named insured* as stated herein.

Audit Period: Annual, unless otherwise stated.

☐ Semi-Annual
☐ Quarterly
☐ Monthly

Producer's Code
252170

...licy is as stated below. Insurance is afforded by the Coverage Parts forming a part hereof, subject to
...ted therein and subject to all the terms of the policy having reference thereto.

### SUMMARY OF ADVANCE PREMIUMS

| COVERAGE | ADVANCE PREMIUM |
|---|---|
| Comprehensive General Liability Insurance | $ 112,700.00 |
| Premises Medical Payments Insurance | $ INCLUDED |
| Contractual Liability Insurance | $ INCLUDED |
| Completed Operations and Products Liability Insurance | $ |
| Owners' and Contractors' Protective Liability Insurance | $ |
| Storekeepers' Insurance | $ |
| Personal Injury Liability Insurance | $ |
| Comprehensive — Plus General Liability Insurance | $ |
| ERRORS AND OMISSIONS INSURANCE- EMPLOYEE BENEFITS PROGRAM | $ INCLUDED |
|  | $ |
|  | $ |
| Business Auto | $ 26,745.00 |
| Truckers | $ |
| Garage | $ |

| Form Numbers of Coverage Parts and endorsements not listed on Coverage Parts forming part of Policy at issue: C 2014-0  C 2013-0  C 2016-0  AL 57-0    L 3505-0  L 3503-1  L 3523-0 | TOTAL ADVANCE PREMIUM | $ 139,445.00 |
|---|---|---|

| If Policy Period more than one year: Gross Premium $ | Discount $ | Net Premium $ |
|---|---|---|
| Premium is payable: On effective date of Policy $ | 1st Anniversary $ | 2nd Anniversary $ |

4.  Business of the *named insured* is ——————————    MFG. INDUSTRIAL SEPARATORS

ORIGINAL 10-25-82

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by ..................................
Authorized Agent

Form AL-102-0    Printed in U.S.A.

HART000363

**DECLARATIONS —**
**BUSINESS AUTO POLICY (Continued)**    THE HARTFORD    Policy No. 10 C ML0740W
ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those **autos** shown as covered **autos**. **Autos** are shown as covered **autos** for a particular coverage by the entry of one or more of the symbols from **ITEM THREE** next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from ITEM THREE shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS (Absence of a limit entry means that the limit entry shown, if any, in item four applies instead) | ESTIMATED PREMIUM |
|---|---|---|---|
| AA = LIABILITY INSURANCE | 1 | AS PER PREMIUM<br>$ 750 ,000 each **accident** COMPUTATION ENDT. | $ 18,569.00 |
| AB = LIABILITY INSURANCE | | $ ,000 **Bodily Injury** each person<br>$ ,000 **Bodily Injury** each **accident**<br>$ ,000 **Property Damage** each **accident** | $ |
| AC = PERSONAL INJURY PROTECTION (or equivalent No-Fault coverage) | 5 | Separately stated in each Personal Injury Protection Endorsement minus<br>$ NO deductible | $ INCL. |
| AD = ADDED PERSONAL INJURY PROTECTION (or equivalent added No-Fault coverage) | | Separately stated in each Added Personal Injury Protection Endorsement | $ |
| AE = PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in the Property Protection Insurance Endorsement minus<br>$ deductible for each **accident** | $ |
| AF = AUTO MEDICAL PAYMENTS INSURANCE | 3 | AS PER SCHEDULE<br>$ for **Bodily Injury** for each **Insured** | $ INCL. |
| AG = UNINSURED MOTORISTS INSURANCE | | $ ,000 each **accident** | $ |
| AH = UNINSURED MOTORISTS INSURANCE | 6 | Separately stated in the Split Uninsured Motorists Limits Endorsement | $ INCL. |
| PHYSICAL DAMAGE INSURANCE | | | |
| AJ = COMPREHENSIVE COVERAGE | 2 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered **auto** for all **loss** except fire or lightning | $ 2,543.00 |
| AK = SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus $25 Deductible for each covered **auto** for **loss** covered by mischief or vandalism | $ |
| AL = FIRE COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AM = FIRE AND THEFT COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AO = FIRE, THEFT AND WINDSTORM COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AP = LIMITED SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AR = COLLISION COVERAGE | 2 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered **auto** | $ 5,633.00 |
| AT = TOWING AND LABOR (Not available in California) | | $25 for each disablement of a private passenger **auto** | $ |
| | | Endorsement Premium (Not included in above Coverage premiums) | $ |
| | | ESTIMATED TOTAL PREMIUM | $ 26,745.00 |

The estimated total premium for this policy is based on the exposures **you** told **us you** would have when this policy began.
**We** will compute **your** final premium due when **we** determine **your** actual exposures. The estimated total premium will be credited against the final premium due and **you** will be billed for the balance, if any. If the estimated total premium exceeds the final premium due **you** will get a refund. To determine **your** final premium due **we** may examine **your** records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year, the premium shall be computed annually based on **our** rates or premiums in effect at the beginning of each year of the policy.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979.

... ed these documents in its
... the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form C-2014-0   Printed in U.S.A.   (NS)                                    (Continued on Form C-2015)

HART000364

Form C-2016
**DECLARATIONS—**
**BUSINESS AUTO POLICY (Continued)**



**THE HARTFORD**

Policy No. ___10 C M10740W___

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type<br>City or Town and State where the covered **auto** will be principally garaged | | | Vehicle Identification No. (VIN) | | Original Cost New (Chassis & Body Including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation L = Local, I = Intermediate, LD = Long Distance<br>Use S = Service, R = Retail, C = Commercial, Other (Describe) | |
| 1 | Garaged: | AS PER PREMIUM COMPUTATION ENDORSEMENT | | | | |
| | | | | | Radius of Operation: | |
| | | | | | Use: | |
| 2 | Garaged: | | | | | |
| | | | | | Radius of Operation: | |
| | | | | | Use: | |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov.<br>AA ☐ AB ☐ | Added PIP Premium Cov. AD | Auto Med Pay Limit for each Insured Cov. AF | Uninsured Limit each Accident Cov. AG | Physical Damage (Non-Collision)<br>Coverage * | | Collision Cov. AR | | Towing and Labor Premium |
|---|---|---|---|---|---|---|---|---|---|
| | PIP Premium Cov. AC | PPI Premium Cov. AE | Auto Med Pay Premium Cov. AF | Uninsured Motorists Premium Cov.<br>AG ☐ AH ☐ | Deductible | Dollar Limit | Deductible | Dollar Limit | |
| | | | | | Premium | Rate | Premium | Rate | Cov. AT |
| 1 | AS PER | $ | $ | $ | Coverage | | | | |
| | $ | $ | $ | $ | $ | $ | $ | $ | |
| | PREMIUM | | | | | | | | |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| 2 | COMPUTATION | | | | Coverage | | | | |
| | $ | $ | $ | $ | $ | $ | $ | $ | |
| | ENDORSEMENT | | | | | | | | |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered **Auto.**

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage **loss** is payable to **you** and the loss payee named below as interest may appear at the time of **loss.**

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

## ITEM FIVE — SCHEDULE OF HIRED AUTOS (Coverages and Premiums)

**LIABILITY INSURANCE — RATING BASIS IS COST OF HIRE. Cost of hire** means the total amount **you** incur for the hire of **autos** you don't own (not including **autos** **you** borrow or rent from **your** employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| HEADQUARTERS STATE | CLASSIFICATION CODE | ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | ESTIMATED PREMIUM |
|---|---|---|---|---|
| N J | 6619 | $       IF ANY | $ | $ AS PER PREMIUM |
| | | $ | $ | $ COMPUTATION ENDT. |

## ITEM SIX — SCHEDULE FOR NON-OWNERSHIP LIABILITY

**LIABILITY INSURANCE** (includes **autos** owned by **your** employees or members of their households but only while used in **your** business or **your** personal affairs)

**— RATING BASIS IS NUMBER OF EMPLOYEES**

| ESTIMATED NUMBER OF EMPLOYEES | CLASSIFICATION CODE | HEADQUARTERS STATE | ESTIMATED PREMIUM |
|---|---|---|---|
| 300 | 6603 | N J | AS PER PREMIUM |
| | | | $ COMPUTATION ENDT. |

The company located these documents in its business records. Accordingly, the company documents constitute a complete and accurate copy of the policy.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979.

Form C-2016-0    Printed in U.S.A. (NS)

**Premium Installment**          **THE HARTFORD**

Named Insured and Address

10 C ML0740W

This endorsement forms a part of Policy No. ............................
issued by THE HARTFORD INSURANCE GROUP company
designated therein, and takes effect as of the effective date of
said Policy unless another effective date is stated herein.

Effective date .................................................... 12:01 A. M., standard time at the address of the
named insured as stated herein

G.L.    $112,700.00
AUTO.    26,745.00

It is hereby understood and agreed that the .............. ORIGINAL ............... Premium of $ ...............
(Insert "original" or "additional" or "return")

will BE PAYABLE IN          FOUR (4) ............................ installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

## SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 10-25-84 | 28,175.00 | 4,643.00 | 2,044.00 | | 34,862.00 |
| 2 | 12-25-84 | 28,175.00 | 4,642.00 | 2,044.00 | | 34,861.00 |
| 3 | 2-25-85 | 28,175.00 | 4,642.00 | 2,044.00 | | 34,861.00 |
| 4 | 4-25-85 | 28,175.00 | 4,642.00 | 2,044.00 | | 34,861.00 |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| TOTALS | | 112,700.00 | 18,569.00 | 8,176.00 | | 139,445.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ....................................................................
                                                        *Authorized Agent*

Although I located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-57-0  Printed in U. S. A.

HART000366

**THE HARTFORD**

Named Insured and Address

Policy Number

10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

COMPREHENSIVE GENERAL LIABILITY

LIST OF ENDORSEMENTS FORMING PART OF POLICY AT ISSUE:

G 2240 3 B    PREMIUM COMPUTATION

L 4155-0

L 3025-0

L 3252-2

L 3355-1

L 4152-0

G 2240 3 B    ASSAULT AND BATTERY

G 2240 3 B    INCIDENTAL MALPRACTICE

G 2240 3 B    KNOWLEDGE AND NOTICE OF OCCURRENCE

G 2240 3 B    NOTICE OF CANCELLATION

G 2240 3 B    UNINTENTIONAL ERRORS OR OMISSIONS

L 4330-0

L 4128-0

L 3991-0

G 1760-8

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by

Form G-2240-3 B   Printed in U.S.A                                    *Authorized Agent*

HART000367

PREMISES MEDICAL PAYMENTS INSURANCE
COVERAGE PART

**THE HARTFORD**

10 C ML0740W

This Coverage Part forms a part of Policy No.. .... ....... .. ............. ......... ... issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

| *(For use only if this Coverage Part is effective after the effective date of the Policy)* |
|---|
| This Coverage Part is effective ..... ........... .. .............   . . .. ... ... .(at the hour stated in the policy) and forms a part of the above designated policy issued to    .......  ....... ... .......... . .. ...... . .. .... |

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges.  The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability |
|---|---|---|
| E — Premises Medical Payments | $ INCLUDED | $ 1,000 each person |
| | | $ 10,000 each accident |

| Description of Hazards | Advance Premiums |
|---|---|
| (a) Premises and Operations<br>AS PER PREMIUM COMPUTATION ENDORSEMENT | |
| (b) Escalators | |
| (c) Sports Activities | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue:<br>G 2240 3 B (LIST) | TOTAL ADVANCE PREMIUM | $ INCLUDED |
|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:

| On effective date of Policy $ | 1st Anniversary $ | 2nd Anniversary $ |
|---|---|---|

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company;  provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by ........................

*Authorized Agent*

Form L-3505-0   Printed in U.S.A.  (ISO: GL 00 13 01 73)   MP-1

The company located these documents in its does not certify that these documents constitute a complete and accurate copy of the policy.

HART000368

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
| --- | --- |

Endt. No.
.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

PREMISES MEDICAL PAYMENTS INSURANCE AND

ERRORS AND OMISSIONS INSURANCE- EMPLOYEE BENEFIT PROGRAMS

PREMIUM COMPUTATION

IT IS AGREED THAT THE PREMIUM FOR COMPREHENSIVE GENERAL LIABILITY INSURANCE

SHALL BE COMPUTED AS FOLLOWS:

| CODE | TOTAL SALES | RATES PER $1,000 OF SALES B.I. | P.D. | ADVANCE PREMIUMS B.I. | P.D. |
| --- | --- | --- | --- | --- | --- |
| 20050 | 35,000,000 | 2.0997 | 1.1205 | 73,490.00 | 39,218.00 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form G-2240-3 B**   Printed in U.S.A

Countersigned by ....................................
Authorized Agent

HART000369

**Errors And Omissions Insurance —
Employee Benefit Programs**

**THE HARTFORD**

Named Insured and Address

**1O C ML074OW**

This endorsement forms a part of Policy No....................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................... Effective hour is the same as stated in the Declarations of the policy.

## SCHEDULE

| Limits of Liability | | Estimated Advance Premium |
|---|---|---|
| $  25,000 | each claim | |
| $  75,000 | aggregate | $   INCLUDED |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

### INSURING AGREEMENTS

I.   COVERAGE. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II.  DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. As respects such insurance as is afforded by the terms of this endorsement, the company shall:
  (a)  defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and,.with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
  (b)  pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
  (c)  reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III. DEFINITIONS.
  (a)  **"Insured"** — The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
  (b)  **"Employee Benefit Programs"** — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
  (c)  **"Administration"** — The unqualified word "Administration", wherever used, shall mean:
    (1)  giving counsel to employees with respect to Employee Benefit Programs;
    (2)  interpreting Employee Benefit Programs;
    (3)  handling of records in connection with Employee Benefit Programs;
    (4)  effecting enrollment of employees under Employee Benefit Programs;
    provided all such acts are authorized by the Named Insured.

IV.  ENDORSEMENT PERIOD, TERRITORY. This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

### EXCLUSIONS

This endorsement does not apply:
  (a)  to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
  (b)  to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
  (c)  to any claim for failure of performance of contract by an insurer;
  (d)  to any claim based upon:
    (1)  failure of stock to perform as represented by an insured.
    (2)  advice given by an insured to an employee to participate or not to participate in stock subscription plans.

### CONDITIONS

1.  **Policy Conditions.** All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2.  **Limits of Liability**
  (a)  Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
  (b)  $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
  (c)  The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. If the company undertakes to negotiate or settle any claim or suit, the Insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the company.
  (d)  The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3.  **Premium.** The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| 300 | ...................First 5,000 | $.............. |
|  | ...................Next 5,000 | $.............. |
|  | ...................Over 10,000 | $.............. |
|  |  | Total $...................... |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ..........................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-4155-0   Printed in U.S.A.

HART000370

**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject to the following additional exclusions:

The insurance does not apply:
1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

## SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Premiums Property Damage Liability |
|---|---|---|---|
| 3400 THIRD AVE FOSTER CITY, CA. | SAN MATEO BAY BUILDING ASSOCIATES | INCL | INCL |
| 1270 MARKET ST. BENSENVILLE, IL. AND | JOHN G. TWIST CO. | | |

ANY OTHER PREMISES UPON WHICH THE
NAMED INSURED IS REQUIRED IN A WRITTEN
AGREEMENT TO PROVIDE INSURANCE ON BEHALF
OF THE LESSOR AND OF WHICH THE COMPANY
IS NOTIFIED WITHIN THIRTY (30) DAYS OF
THE EXECUTION OF SAID WRITTEN AGREEMENT

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ........................................................................................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3025-0   Printed in U.S.A.  (ISO: GL 20 11 07 66)

HART000371

**BROAD FORM PROPERTY**
**DAMAGE ENDORSEMENT**
(Including Completed Operations)

**THE HARTFORD**

10 C MlO74OW

This endorsement forms a part of Policy No. ...............................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Named Insured and Address

Effective date ...........................................................Effective hour is the
same as stated in the Declarations of the Policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

---

**Classification:**

99981

It is agreed that the insurance for **property damage** liability applies, subject to the following additional provisions:

A.  The exclusions relating to **property damage** to (1) property owned, occupied or used by or rented to the **insured** or in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control and (2) work performed by or on behalf of the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (y) and (z):

    (y)   to **property damage**

        (1)  to property owned or occupied by or rented to the **insured**, or, except with respect to the use of **elevators**, to property held by the **insured** for sale or entrusted to the **insured** for storage or safekeeping,

        (2)  except with respect to liability under a written sidetrack agreement or the use of **elevators** to

            (a)  property while on premises owned by or rented to the **insured** for the purpose of having operations performed on such property by or on behalf of the **insured,**

            (b)  tools or equipment while being used by the **insured** in performing his operations,

            (c)  property in the custody of the **insured** which is to be installed, erected or used in construction by the **insured,**

            (d)  that particular part of any property, not on premises owned by or rented to the **insured,**

                (i)    upon which operations are being performed by or on behalf of the **insured** at the time of the **property damage** arising out of such operations, or

                (ii)   out of which any **property damage** arises, or

                (iii)  the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the **insured;**

    (z)   with respect to the **completed operations hazard** and with respect to any classification stated above as "including completed operations", to **property damage** to work performed by the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

B.  The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **insured**, such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by.................................................................

**Form L-3252-2** Printed in U.S.A. (NS)

*Authorized Agent*

HART000372

## SUPPLEMENTARY COVERAGE ENDORSEMENT
### PERSONAL INJURY AND ADDITIONAL INSURED (Employees)

**10 C M10740W**

Named Insured and Address

This endorsement forms a part of Policy No.
issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective date.................................................................12:01 A. M., standard time at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

It is agreed that:
### APPLICABLE TO NEW JERSEY

1. The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply

   a. to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

   b. to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured*, or if the *named insured* is a partnership or joint venture, any partner or member thereof.

### EXCLUSION C IS DELETED

It is further agreed that:

1. Such insurance as is afforded under Coverage A with respect to *bodily injury*, is extended to apply to *personal injury* as defined herein, subject to the following additional provisions:

   1. This insurance does not apply

      a. to liability for *personal injury* assumed by the *insured* under any contract or agreement;

      b. to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

      ~~XX XX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXX~~;

      d. to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

      e. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

      f. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

   2. When used in reference to this insurance

      a. "personal injury" means:

         1. injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory*.

      b. "personal injury offense" means:

         1. false arrest, detention or imprisonment, or malicious prosecution,
         2. libel, slander, defamation, disparagement or violation of an individual's right of privacy, or
         3. wrongful entry or eviction or other invasion of the right of private occupancy.

   3. The Limits of Liability section is amended in the following respect:

      The total liability of the company for all damages because of all *personal injury* to which this policy applies, shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement



**THE HARTFORD**

Form L-3355-1   Printed in U. S. A.   (NS)

Countersigned by.................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000373

**Amendment — Limits of Liability
(Single Limit)**

**THE HARTFORD**

Named Insured and Address

10 C ML0740W

This endorsement forms a part of Policy No.............................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ..........................................................Effective hour is the
same as stated in the Declarations of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE | — (Coverage Part "CO/PR") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |
| OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE | — (Coverage Part "OCP") |

## SCHEDULE

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| | "CGL"  "K" | $ 1,000,000 each occurrence |
| Bodily Injury Liability and Property Damage Liability | "CGL"  "K" | $ 1,000,000 aggregate — Division 1 |
| | | $      ,000 aggregate — Division 2 |
| Bodily Injury Liability and Property Damage Liability | | $      ,000 each occurrence |

**Division 1** — Applicable to damages because of **bodily injury** and **property damage** as specified in paragraph (b) in the "Limits of Liability" provision of this endorsement.

**Division 2** — Applicable to damages because of all **bodily injury** and **property damage** as stated in paragraph (c) in the "Limits of Liability" provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof is amended to read as follows:

## LIMITS OF LIABILITY

Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage**, (3) claims made or suits brought on account of **bodily injury** or **property damage** or (4) **automobiles** or **mobile equipment** to which this policy applies, the company's liability is limited as follows:

### Bodily Injury Liability and Property Damage Liability Coverage

(a)  The limit of liability stated in the Schedule of this endorsement as applicable to "each **occurrence**" is the total limit of the company's liability under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of **bodily injury**, including damages for care and loss of services, and all **property damage** as the result of any one **occurrence**; provided that, with respect to any one **occurrence** for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000374

(b)  The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 1**" is, subject to provision (a) hereof respecting "each **occurrence**", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all **bodily injury** and **property damage** which is included in any of the numbered subparagraphs below and, in subparagraph (3), with respect either to the **bodily injury** or **property damage**, or to the **bodily injury** and **property damage** (within one or both the hazards identified therein) for which insurance is actually afforded under at least one such Coverage Part:

(1)  all **property damage** arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including **property damage** for which liability is assumed under any **incidental contract** relating to such premises or operations, but excluding **property damage** included in subparagraph (2) below;

(2)  all **property damage** arising out of and occurring in the course of operations performed for the **named insured** by independent contractors and general supervision thereof by the **named insured**, including any such **property damage** for which liability is assumed under any **incidental contract** relating to such operations, but this subparagraph (2) does not include **property damage** arising out of maintenance or repairs at premises owned by or rented to the **named insured** or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3)  all **bodily injury** and **property damage** included within the **completed operations hazard** and all **bodily injury** and **property damage** included within the **products hazard;**

(4)  all **property damage** for which liability is assumed under any contract, other than an **incidental contract,** to which the Contractual Liability Insurance, if afforded, applies.

Such "aggregate — **Division 1**" limit shall apply separately:

(i)  to the **property damage** included in subparagraphs (1) and (2) and separately with respect to each project away from premises owned by or rented to the **named insured;**

(ii)  to the sum of the damages for all **bodily injury** and **property damage** included in subparagraph (3) and for which insurance, if any, is afforded as stated in paragraph (b) above;

(iii)  to the **property damage** included in subparagraph (4) and separately with respect to each project away from premises owned by or rented to the **named insured.**

(c)  The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 2**" is, subject to provision (a) hereof respecting "each **occurrence**", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all **bodily injury** and **property damage.**

(d)  For the purpose of determining the limit of the company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence.**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by...........................................................................
*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-4152-0 (NS)                    Page 2

HART000375

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

ASSAULT AND BATTERY

IT IS AGREED THAT THE DEFINITION OF OCCURRENCE IS AMENDED BY

ADDING THERETO THE FOLLOWING:

" BODILY INJURY OR PROPERTY CAUSED FOR

THE PURPOSE OF PROTECTING PERSONS OR PROPERTY

SHALL BE DEEMED NEITHER EXPECTED NOR INTENDED

FROM THE STANDPOINT OF THE INSURED".

Nothing herein contained shall be held to vary, waive. alter. or extend any of the terms. conditions. agreements or declarations of the policy. other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and. at issue of said policy. forms a part thereof. countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute an accurate copy of the policy.

Form G-2240-3 B   Printed in U S A

Countersigned by..........................................
                                    *Authorized Agent*

HART000376

**THE HARTFORD**

Named Insured and Address

Policy Number

10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### INCIDENTAL MALPRACTICE

IT IS AGREED THAT:

1. THE DEFINITION OF "BODILY INJURY" IS AMENDED TO INCLUDE INJURY ARISING OUT OF THE RENDERING OF OR FAILURE TO RENDER PROFESSIONAL SERVICES BY ANY PHYSICIAN, DENTIST OR NURSE WHILE EMPLOYED BY THE NAMED INSURED TO PROVIDE SUCH SERVICES.

2. EXCLUSION (J) DOES NOT APPLY TO INJURY TO THE EMOTIONS OR REPUTATION OF A PERSON ARISING OUT OF THE RENDERING OF SUCH SERVICES.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute an accurate copy of the policy.

**Form G-2240-3 B**   Printed in U.S.A.

Countersigned by

*Authorized Agent*

HART000377

**THE HARTFORD**

Named Insured and Address

| Policy Number |
|---|
| 10 C ML0740W |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE

KNOWLEDGE AND NOTICE OF OCCURRENCE

IT IS AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY AN AGENT, SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT CONSTITUTE KNOWLEDGE TO THE INSURED UNLESS AN EXECUTIVE OFFICER OF THE NAMED INSURED CORPORATION OR OTHER PERSONS EMPLOYED BY IT IN A MANAGERIAL CAPACITY SHALL HAVE RECEIVED SUCH NOTICE.

IT IS AGREED THAT IF THE INSURED REPORTS AN OCCURRENCE TO ITS WORKERS' COMPENSATION CARRIER WHICH DEVELOPS INTO A LIABILITY CLAIM FAILURE TO REPORT SUCH OCCURRENCE TO THE COMPANY AT THE TIME OF OCCURRENCE SHALL NOT BE DEEMED IN VIOLATION OF CONDITION 4 "INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a full, complete and accurate copy of the policy.....

Countersigned by ...........................................
Authorized Agent

Form G-2240-3 B    Printed in U S A

HART000378

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE

NOTICE OF CANCELLATION

IT IS AGREED THAT IN THE EVENT OF CANCELLATION OF THE POLICY

BY THE COMPANY FOR ANY REASON OTHER THAN NON-PAYMENT OF PREMIUM,

THIRTY (30) DAYS PRIOR WRITTEN NOTICE THEREOF WILL BE FURNISHED

TO THE NAMED INSURED.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B    Printed in U S A

Countersigned by

*Authorized Agent*

HART000379

**THE HARTFORD**

Named Insured and Address

| Policy Number |
|---|
| 1O C M1O74OW |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

COMPREHENSIVE GENERAL LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE

## UNINTENTIONAL ERROR OR OMISSIONS

IT IS AGREED THAT FAILURE OF THE INSURED TO DISCLOSE ALL HAZARDS EXISTING AS OF THE INCEPTION DATE OF THE POLICY SHALL NOT PREJUDICE THE INSURED WITH RESPECT TO THE COVERAGE AFFORDED BY THIS POLICY PROVIDED SUCH FAILURE OR ANY OMISSION IS NOT INTENTIONAL.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 8   Printed in U.S.A.

Countersigned by _____
                              Authorized Agent

HART000380

**Supplementary Coverage Endorsement
Personal Injury and Additional Insured
(Employees)**



**THE HARTFORD**

Named Insured and Address

10 C ML0740W

This endorsement forms a part of Policy No. .......................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................. 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE

---

**APPLICABLE TO ILLINOIS,CALIFORNIA AND FLORIDA        NONE**
Insured's Participation _____ %

It is agreed that:                                    **EXCLUSION "C" DELETED"**

I.   The insurance afforded under the Coverage for Bodily Injury Liability is extended to apply to damages because of *personal injury*, subject to the following additional provisions:

1.   This extended insurance does not apply:

(a)  to liability for *personal injury* assumed by the *insured* under any contract or agreement;

(b)  to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured;*

(c)  to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured;*

(d)  to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

(e)  to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

(f)  to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured.*

2.   When used in reference to this insurance:

"*personal injury*" means injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory;*

"*personal injury offense*" means (a) false arrest, detention or imprisonment, or malicious prosecution; (b) libel, slander, defamation, disparagement or violation of an individual's right of privacy; or (c) wrongful entry or eviction or other invasion of the right of private occupancy.

3.   The "Limits of Liability" provision is amended by adding the following thereto:

The total liability of the company for all damages because of all *personal injury* to which this insurance applies shall not exceed the amount stated in the Schedule as the limit of *bodily injury* liability and as applicable to "each *occurrence*".

With respect to any claim because of *personal injury*, the company shall not be liable for a greater proportion of any loss than the difference between the participation percentage, if any, stated above and one hundred percent, and the balance of the loss shall be borne by the *insured:* provided the company may pay the *insured's* portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the *named insured* shall promptly reimburse the company therefor.

II.  The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

(1)  to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

(2)  to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured,* or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by..................................................................

*Authorized Agent*

Form L-3991 0   Printed in U.S.A.  (NS)

# Comprehensive General Liability Insurance
# Coverage Part

**THE HARTFORD**

This Coverage Part forms a part of Policy No. ....10 C ML0740W...........................................issued by THE HARTFORD INSURANCE GROUP
Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*
This Coverage Part is effective ............................................................(at the hour stated in the policy) and forms a part of the above designated
policy issued to.................................................................................................................................................................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees
with the *named insured* as follows:

**SCHEDULE**

The Insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges.
The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having
reference thereto.

| Coverages | Advance Premiums | Limits of Liability | |
|---|---|---|---|
| A — Bodily Injury Liability | $  INCLUDED | $ AS PER | ,000 each occurrence |
| | | $ ENDT | ,000 aggregate |
| B — Property Damage Liability | $  INCLUDED | $L 4152-0 | ,000 each occurrence |
| | | $ | ,000 aggregate |

| Rating Classifications<br>Entries herein, except as specifically provided else-<br>where in this policy, do not modify any of the other<br>provisions of this policy. | Code Nc. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | B.I. | P.D. |
| (a) Premises — Operations | | (a) Area<br>(b) Frontage<br>(c) Remuneration<br>(d) Receipts | (a) Per 100 Sq.Ft. of Area<br>(b) Per Linear Foot<br>(c) Per $100 of Remun.<br>(d) Per $100 of Receipts | | | |
| (b) Escalators | | (e) Landings | (e) Per Landing | | | |
| (c) Independent Contractors | | (f) Cost | (f) Per $100 of Cost | | | |
| (d) Completed Operations | | (g) Receipts | (g) Per $1,000 of Receipts | | | |
| (e) Products | | (h) Sales | (h) Per $1,000 of Sales | | | |

A) AS PER PREMIUM COMPUTATION ENDT.

C) AS PER PREMIUM COMPUTATION ENDT.

D) AS PER PREMIUM COMPUTATION ENDT.

E) AS PER PREMIUM COMPUTATION ENDT.

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS | | |
|---|---|---|---|
| G 2240 3 B ( LIST) | | $  INCL. | $ INCL. |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $          1st Anniversary $          2nd Anniversary $

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes
effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy
by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by.................................................................................

Authorized Agent

Form L-3503-1   Printed in U.S.A.  (ISO: GL 00 02 01 73)          CGL-1

The company certifies that these documents constitute a complete and accurate copy of the policy.

HART000382

## Contractual Liability Insurance Coverage Part (Blanket Coverage)

 **THE HARTFORD**

This Coverage Part forms a part of Policy No. **10 C M10740W** issued by THE HARTFORD INSURANCE GROUP Company designated therein, an d takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective ................................................ (at the hour stated in the policy) and forms a part of the above designated policy issued to..

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

### SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| YB — Contractual Bodily Injury Liability | $ INCLUDED | $ AS PER ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ INCLUDED | $ ENDT ,000 each occurrence |
| | | $ L 4152-0 ,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B. I. | P. D. | B. I. | P. D. |
| | | (a) Cost | (a) Per $100 of Cost | | | |
| | | (b) Sales | (b) Per $1,000 of Sales | | | |
| ALL WRITTEN AGREEMENTS | AS | PER | PREMIUM | COMPUTATION ENDORSEMENT | | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUMS | | |
|---|---|---|---|
| G 2240 3 B (LIST) | | $ INCL. | $ INCL. |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $     1st Anniversary $     2nd Anniversary $

The following exclusions also **apply**:

☐ Exclusion (p) --- Products and Completed Operations    ☐ Exclusion (q)—x, c & u

**I. COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

**COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

    **Coverage YB.** *bodily injury* or

    **Coverage ZB.** *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

    (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

    (ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid counter-signature of this Coverage Part.

Countersigned by................................................

                                         *Authorized Agent*

Form L-3523-0   Printed in U.S.A.   (NS)      **KB-1**

at this time, the company does not certify that these documents constitute a complete and accurate copy of the policy

HART000383

 **THE HARTFORD**

Named Insured and Address

Policy Number
**10 C ML0740W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date | Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

### LIST OF AUTOMOBILE ENDORSEMENTS FORMING PART OF POLICY AT ISSUE:

<u>COUNTRYWIDE</u>

G 2240 3 B

A 4307-0

C 3006-0

C 3023-0

CA 9921 01-78 D/N/A IN N.Y.

CA 9903 01-80

G 1760-8

<u>NEW JERSEY</u>

CA 2114 01-84

CA 2230 01-84

CA 0224 01-78

<u>KENTUCKY</u>

CA 2101 01-78

CA 2216 08-83

CA 2X17 01-78

<u>ILLINOIS</u>

CA 0120 03-80

CA 2130 05-82

<u>FLORIDA</u>

CA 0128 10-82

CA 2210 08-83

CA 2147 10-82

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by ...................................
                                    *Authorized Agent*

Form G-2240-3 B   Printed in U S A

HART000384

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C M10740W

This endorsement forms a part of the policy as numbered
above, issued by THE HARTFORD INSURANCE GROUP
company designated therein, and takes effect as of the
effective date of said policy unless another effective date
is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
| --- | --- |

Endt. No.

## PREMIUM COMPUTATION

IT IS AGREED THAT THE PREMIUM FOR AUTO LIABILITY INSURANCE

PERSONAL INJURY PROTECTION, AUTO MEDICAL PAYMENTS INSURANCE

UNINSURED MOTORISTS INSURANCE SHALL BE COMPUTED AS FOLLOWS:

| * TOTAL NUMBER OF AUTOS | RATES PER AUTO | ADVANCE PREMIUM |
| --- | --- | --- |
| 50 | 371.38 | $18,569.00 |

* TOTAL NUMBER OF AUTOS IS THE AVERAGE OF THE TOTAL NUMBER OF ALL AUTOS

OWNED OR LEASED BY ALL NAMED INSUREDS ON THE INCEPTION DATE OF THE POLICY

AND ON THE EXPIRATION DATE OF THE POLICY.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or
declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if
this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof,
countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute
valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form G-2240-3 B   Printed in U S A

Countersigned by

*Authorized Agent*

HART000385

**THE HARTFORD**

Named Insured and Address

| Policy Number |
| --- |
| 10 C ML0740W |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
| --- | --- |

| Endt. No. | |
| --- | --- |

### PREMIUM COMPUTATION

IT IS AGREED THAT THE PREMIUMS FOR AUTO PHYSICAL DAMAGE INSURANCE SHALL BE COMPUTED

AS FOLLOWS:

SUBJECT TO 100 DEDUCTIBLE COMPREHENSIVE, 500. DEDUCTIBLE COLLISION

| TOTAL COST NEW OF ALL AUTOS | RATES PER $100 OF COST NEW | ADVANCE PREMIUMS |
| --- | --- | --- |
| 401,200 | COMP .6338 | 2,543.00 |
| | COLL. 1.4040 | 5,633.00 |

*TOTAL COST NEW IS THE AVERAGE OF THE TOTAL COST NEW OF ALL AUTOS OWNED OR LEASED

BY ALL NAMED INSUREDS ON THE INCEPTION DATE OF THE POLICY AND ON THE EXPIRATION DATE

OF THE POLICY.

Nothing herein contained shall be held to vary, waive. alter. or extend any of the terms. conditions. agreements or declarations of the policy. other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and. at issue of said policy. forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form G-2240-3 B**  Printed in U S A

Countersigned by ................................................
                                         *Authorized Agent*

HART000386

**THE HARTFORD**

Named Insured and Address

Policy Number
10 C ML0740W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## UNINSURED MOTORISTS LIMITS

| STATES | LIMITS |
|---|---|
| FLORIDA | 750,000 |
| ILLINOIS | 30,000 |
| KENTUCKY | 20,000 |
| NEW JERSEY | 35,000 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a accurate copy of the policy.

Countersigned by ....................................................
Authorized Agent

Form G-2240-3 B   Printed in U S A

HART000387

CA 22 30
(Ed. 01 84)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT (NEW JERSEY)

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law."

All terms printed in bold face other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions."**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| Named Insured | Countersigned by |

<div align="right">(Authorized Representative)</div>

The Company agrees with the **named insured**, subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SCHEDULE

The total aggregate amount of extended **medical expense benefits** payable under Section II is $

In consideration of a reduction in premium, the following options apply as indicated below or in the Declarations:

---

**MEDICAL EXPENSE BENEFITS** DEDUCTIBLE

The indicated deductible for **medical expense benefits** applies separately to the **named insured** and each **relative.**

**Medical Expense Benefits** deductible

☐ $ 500

☐ 1,000

☐ 2,500

---

DELETION OF BENEFITS OTHER THAN MEDICAL EXPENSES*

☐ All Personal Injury Protection benefits other than **medical expense benefits** are deleted with respect to the **named insured** and each **relative.** Refer to Condition 6.

---

REIMBURSEMENT SETOFF*

☐ The setoff option to reimburse the Company for **medical expense benefits** applies to the **named insured** and each **relative.** Refer to Condition 7.

---

\*    These options apply only to accidents which occur on or after July 1, 1984.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000388

# SECTION I

## PERSONAL INJURY PROTECTION COVERAGE

The Company will pay personal injury protection benefits consisting of:

(a) **medical expense benefits,**

(b) **income continuation benefits,**

(c) **essential services benefits,**

(d) **death benefits,** and

(e) **funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person** caused by an accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

## Exclusions

The insurance under this endorsement does not apply to **bodily injury:**

(a) to a person whose conduct contributed to the injury in any of the following ways:

(1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

(2) while acting with specific intent to cause injury or damage to himself or others;

(b) to any person who, at the time of the accident, was the owner or registrant of a **private passenger automobile** registered or principally garaged in New Jersey that was being operated without personal injury protection coverage;

(c) to any person who is not occupying an **insured automobile,** other than the **named insured** or a **relative** of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey;

(d) arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

(e) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(f) resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

(g) to any person, other than the **named insured** or **relative,** if such person is entitled to New Jersey personal injury protection coverage as a named insured or relative under the terms of any other policy with respect to such coverage;

(h) to any **relative,** if such person is entitled to New Jersey personal injury protection coverage as a named insured under the terms of another policy;

(i) to any person operating or occupying a **private passenger automobile** without the permission of the owner or the named insured under the policy insuring that automobile.

## Definitions

When used in reference to this insurance:

"**bodily injury**" means bodily injury, sickness or disease, including death at any time resulting therefrom;

"**death benefits**" means the amount or amounts payable in the event of an **eligible injured person** as determined in subdivision (1) or (2) hereof, as appropriate:

(1) if the **eligible insured person** was an **income producer** at the time of the accident, an amount equal to the difference between $5,200 and all basic **income continuation benefits** paid for any loss of **income** resulting from his injury prior to his death;

(2) if the **eligible injured person** ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount equal to the difference between $4,380 and all basic **essential services benefits** paid with respect to his injury prior to death.

"**eligible injured person**" means

(a) the **named insured** or any **relative** of the **named insured,** if the **named insured** or **relative** sustains **bodily injury**

(1) as a result of any accident while occupying, entering into, alighting from or using a **private passenger automobile,** or

(2) while a **pedestrian,** as a result of being struck by a **private passenger automobile** or by an object propelled by or from a **private passenger automobile;**

(b) any other person who sustains **bodily injury**

(1) while, with the permission of the **named insured,** occupying, using, entering into or alighting from the **insured automobile,** or

(2) while a **pedestrian,** caused by the **insured automobile** or as a result of being struck by an object propelled by or from the **insured automobile;**

The company located these documents in its business records. At this time, the company cannot certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, Inc., 1983

CA 22 30 (Ed. 01 84)

HART000389



© 1983

**CA 22 10**
(Ed. 08 83)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
### (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

The Company agrees with the **named insured,** subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

The insurance for PERSONAL INJURY PROTECTION is subject to a deductible of $_____
applicable to ☐ the following **named insured** only:

☐ each **named insured** and each dependent **relative.**

☐ **Work loss** for **named insured** does not apply
☐ **Work loss** for **named insured** and dependent **relative** does not apply
☐ Coverage reduced by military benefits for **named insured** and dependent **relative**

### SECTION I

**PERSONAL INJURY PROTECTION**

The Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law to or for the benefit of the injured person:

  (a) 80% of **medical expenses,** and

  (b) 60% of **work loss,** and

  (c) **replacement services expenses,** and

  (d) funeral, burial or cremation expenses.

incurred as a result of **bodily injury,** caused by an **accident** arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

  (1) the **named insured** or any **relative** while **occupying** a **motor vehicle** or, while a **pedestrian** through being struck by a **motor vehicle;** or

  (2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian,** through being struck by the **insured motor vehicle.**

**Exclusions**

This insurance does not apply:

  (a) to the **named insured** or any **relative** while **occupying** a **motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

  (b) to any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured;**

  (c) to any person. if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

    (i) causing **bodily injury** to himself intentionally; or
    (ii) while committing a felony;

  (d) to the **named insured** or dependent **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

  (e) to any **pedestrian,** other than the **named insured** or any **relative,** not a legal resident of the State of Florida;

  (f) to any person. other than the **named insured,** if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law;

  (g) to any person. other than the **named insured** or any **relative,** who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

  (h) to any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises

The company located responsive documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy

HART000390


© 1983

## Limit of Liability; Application of Deductible; Other Insurance

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **bodily injury** as the result of any one **accident** shall be $10,000; provided that payment for funeral, cremation or burial expenses included in the foregoing shall in no event exceed $1,750.

Any amount payable under this insurance shall be reduced by the amount of benefits an injured person has recovered or is entitled to recover for the same elements of loss under the workmen's compensation laws of any state or the federal government or the Medicaid program.

If benefits have been received under the Florida Motor Vehicle No-Fault Law from any insurer for the same items of loss and expense for which benefits are available under this policy, the Company shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from the Company its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

The amount of any deductible stated in the schedule of this endorsement shall be deducted from the total amount of all sums otherwise payable by the Company with respect to all loss and expense incurred by or on behalf of each person to whom the deductible applies and who sustains **bodily injury** as the result of any one **accident**, and if the total amount of such loss and expense exceeds such deductible, the total limit of benefits the Company is obligated to pay shall then be the difference between such deductible amount and the applicable limit of the Company's liability. Such deductible amount shall not be applied to funeral, cremation or burial expenses.

If an entry in the schedule or declaration so indicates any amount payable under this insurance to the **named insured** or dependent **relative** shall be reduced by any benefits payable by the Federal Government to active or retired military personnel and their dependent relatives. If such benefits are not available at the time of loss the Company shall have the right to recompute and charge the appropriate premium.

## Definitions

When used in reference to this Section:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"medical expense"** means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

**"named insured"** means the person or organization named in the declarations of the policy and if an individual, shall include the spouse if a resident of the same household;

**"motor vehicle"** means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle;

a **"motor vehicle"** does not include:

    (a) a mobile home; or

    (b) any motor vehicle which is used in mass transit or public school transportation and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit or public school transportation authority, or a political subdivision of the state.

**"occupying"** means in or upon or entering into or alighting from;

**"insured motor vehicle"** means a **motor vehicle:**

    (a) of which the **named insured** is the **owner,** and

    (b) with respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law and

    (c) for which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a motor vehicle;

**"relative"** means a person related to the **named insured** by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as the **named insured;**

**"pedestrian"** means a person while not an occupant of any self-propelled vehicle;

**"owner"** means a person or organization who holds the legal title to a **motor vehicle,** and also includes:

    (a) a debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement, and

    (b) a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

CA 22 10 (Ed. 08 83)

Page 2 of 4

The documents provided in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of such policy.

252170

EXP 10-25-85

THE HARTFORD

| Policy Number |
|---|
| 10 C HL0740W |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated |
|---|---|
| 10-25-84 | in the Declarations of the policy. |

| Endt. No. |
|---|
| 1 |

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
MONTVALE, NJ 07647

IT IS AGREED THAT THE MED. PAY. LIMIT ON C-2014-0

IS TO READ - $5,000. DELETE "AS PER SCHEDULE".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form G-2240-3 B   Printed in U.S.A.

Countersigned by.................................................
Authorized Agent

HART000392

# CASUALTY INSURANCE POLICY

GENERAL POLICY PROVISIONS    Form 8117

**THE HARTFORD**

The member company of **THE HARTFORD INSURANCE GROUP** designated on the Declarations page as the Insurer (a stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the *named insured* as follows:

## COVERAGE

Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the *insured* in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy,

and the cost of bail bonds required of the *insured* because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the *insured* for first aid to others at the time of an accident, for *bodily injury* to which this policy applies;

(d) reasonable expenses incurred by the *insured* at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

*"automobile"* means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include *mobile equipment;*

*"bodily injury"* means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

*"collapse hazard"* includes "structural property damage" as defined herein and *property damage* to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The *collapse hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard* or the *underground property damage hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract;*

*"completed operations hazard"* includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured.* "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The business records Accurate and complete copy by document. Attach the accurate and accurate and accurate copy of the policy.

The *completed operations hazard* does not include *bodily injury* or *property damage* arising out of

(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

**"elevator"** means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an *automobile* servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

**"explosion hazard"** includes *property damage* arising out of blasting or explosion. The *explosion hazard* does not include *property damage* (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the *named insured* by independent contractors, or (3) included within the *completed operations hazard* or the *underground property damage hazard*, or (4) for which liability is assumed by the *insured* under an *incidental contract;*

**"incidental contract"** means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) *elevator* maintenance agreement;

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

**"mobile equipment"** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the

*named insured*, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

**"named insured's products"** means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured;*

**"policy territory"** means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the *bodily injury* or *property damage* does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of *bodily injury* or *property damage* arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

**"products hazard"** includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others;

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period;

**"underground property damage hazard"** includes underground property damage as defined herein and *properly damage* to any other property at any time resulting therefrom. "Underground property damage" means *property damage* to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The *underground property damage hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract.*

## DESCRIPTION OF TERMS USED AS PREMIUM BASES

When used as a premium basis for:

(a) Comprehensive General Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance, **"admissions"** means the total number of persons, other than employees of the *named insured*, admitted to the event covered by the insurance or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(b) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance; Owners' and Contractors' Protective Liability Insurance, **"cost"** means the total cost to the *named insured* with respect to operations performed for the *named insured* during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(c) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance or Completed Operations and Products Liability Insurance, **"receipts"** means the gross amount of money charged by the *named insured* for such operations during the policy period by the *named insured* or by others during the policy period as are rated on a receipts basis other than receipts from television, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

(d) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance which includes coverage for structural alterations, new construction and demolition operations, **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the *named insured*, other than chauffeurs (except operators of *mobile equipment*) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

2

The Corporation Trust Company does not do business in New Jersey and does not constitute a complete and accurate copy of the policy.

HART000394

(e) Comprehensive General Liability Insurance or Completed Operations and Products Liability Insurance, *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division;

(f) Contractual Liability Insurance, *"cost"* means the total cost to any indemnitee, with respect to any contract which is insured, of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or the subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(g) Garage Insurance, *"remuneration"* means (a) the entire remuneration earned during the policy period by each Class A employee and each Class C employee or the *named insured,* subject to an average weekly maximum of $100, and (b) the remuneration of each Class B person at a fixed amount of $2,000 per annum with respect to Dealer Risks (Hazard 1) or $5,200 per annum with respect to Non-Dealer Risks (Hazard 2)

*"Class A"* means all clerical office employees

*"Class B"* means all proprietors and officers active in the business, and inactive proprietors or officers (other than an inactive proprietor or officer who is a spouse of an active proprietor or officer) who customarily drive an *automobile*

managers and salesmen, general managers, service managers and chauffeurs

*"Class C"* means all other employees;

(h) Comprehensive Automobile Liability Insurance,

(1) *"cost of hire"* means the amount incurred for (a) the hire of *automobiles,* including the entire remuneration of each employee of the *named insured* engaged in the operation of such *automobiles* subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of *"cost of hire"* shall be 5% of the applicable *hired automobile* rates, provided the owner of such *hired automobile* has purchased *automobile* Bodily Injury Liability and Property Damage Liability insurance covering the interest of the *named insured* on a direct primary basis as respects such *automobile* and submits evidence of such insurance to the *named insured;*

(2) *"Class 1 persons"* means the following persons, provided their usual duties in the business of the *named insured* include the use of *non-owned automobiles:* (a) all employees, including officers, of the *named insured* compensated for the use of such *automobiles* by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the *named insured;*

(3) *"Class 2 employees"* means all employees, including officers, of the *named insured,* not included in Class 1 persons.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMERS COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to *bodily injury* or *property damage*

(1) with respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the *insured* is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States Government, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

C. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material,* if

(1) the *nuclear material* (a) is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured* or (b) has been discharged or dispersed therefrom;

(2) the *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

(3) the *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear*

*facility,* but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

II. As used in this exclusion:

*"hazardous properties"* include radioactive, toxic or explosive properties;

*"nuclear material"* means *source material, special nuclear material* or *byproduct material;*

*"source material", "special nuclear material",* and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"waste"* means any waste material (1) containing *byproduct material* and (2) resulting from the operation by any person or organization of any *nuclear facility* included within the definition of *nuclear facility* under paragraph (a) or (b) thereof;

*"nuclear facility"* means

(a) any *nuclear reactor,*

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing *spent fuel,* or (3) handling, processing or packaging *waste,*

(c) any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste,*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"property damage"* includes all forms of radioactive contamination of property.

The contents of these documents constitute business documents of The Hartford Insurance company and does constitute a complete and accurate copy of the policy.

HART000395

Case 2:20-cv-09741-BRM-SDA   Document 63-33   Filed 11/18/22   Page 512 of 612 PageID: 5942

1. **Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured,* shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the *named insured.*

The *named insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

2. **Inspection and Audit** The company shall be permitted but not obligated to inspect the *named insured's* property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *named insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the *named insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. **Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for *bodily injury* liability or for *property damage* liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

4. **Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an *occurrence,* written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the *insured,* the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

5. **Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured,* the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the *insured* to determine the *insured's* liability, nor shall the company be impleaded by the *insured* or his legal representative. Bankruptcy or insolvency of the *insured* or of the *insured's* estate shall not relieve the company of any of its obligations hereunder.

6. **Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer bas paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. **Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights.

8. **Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

9. **Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the *named insured* shall die, such insurance as is afforded by this policy shall apply (1) to the *named insured's* legal representative, as the *named insured,* but only while acting within the scope of his duties as such, and (2) with respect to the property of the *named insured,* to the person having proper temporary custody thereof, as *insured,* but only until the appointment and qualification of the legal representative.

10. **Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

11. **Cancellation** This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing.

If the *named insured* cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

12. **Declarations** By acceptance of this policy, the *named insured* agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its President and a Secretary, but the same shall not be binding unless countersigned on the declarations page by a duly authorized agent of the company.

Michael S. Wilder, *Secretary*

Donald R. Frahm, *President*

business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of their business records.

HART000396

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Temporary Substitute Autos; Autos Owned by Partners; Partners, Executive Officers as Insured**



**THE HARTFORD**

A. **"PART II — WHICH AUTOS ARE COVERED AUTOS" is changed by adding the following:**

    D. **TEMPORARY SUBSTITUTE AUTOS.**

    Any **auto you** do not own while used as a temporary substitute for an **auto you** do own is a covered **auto** for the same LIABILITY INSURANCE and UNINSURED MOTORISTS INSURANCE as is provided by the policy for the **auto you** do own, but only if that owned **auto** is out of normal use because of its breakdown, repair, servicing, loss or destruction.

    E. **AUTOS OWNED BY PARTNERS.**

    If **you** are a partnership, no **auto** owned by any of **your** partners or members of their households is a covered **auto** for LIABILITY INSURANCE unless the policy is endorsed to cover that **auto** as a covered **auto** and the proper premium is charged.

B. **"WHO IS INSURED" of "PART IV — LIABILITY INSURANCE" is changed by adding the following between paragraphs 1 and 2:**

    1A. Any partner or executive officer of **yours** is an **Insured** for any covered **auto** except that none of them is an **Insured**:

        a. For a covered **auto** that **you** do not own, lease, hire or borrow or which is a temporary substitute **auto** (as described in PART II, D of "WHICH AUTOS ARE COVERED AUTOS"), unless the **auto** is being used in **your** business or **your** personal affairs.

        b. For an **auto** owned by him or her or by a member of his or her household.

**Form A-4307-0** Printed in U.S.A. (NS)

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Stated Amount — Physical Damage Insurance**                    **THE HARTFORD**

HOW WE WILL PAY FOR LOSSES — THE MOST WE WILL PAY is changed to read:

1.  At **our** option **we** may:

    a.  Pay for, repair or replace damaged or stolen property; or

    b.  Return the stolen property at **our** expense. **We** will pay for any damage that results to the **auto** from the theft.

2.  The most **we** will pay for **loss** is the smallest of the following amounts:

    a.  The actual cash value of the damaged or stolen property at the time of **loss.**

    b.  The cost of repairing or replacing the damaged or stolen property with other of like kind or quality.

    c.  The stated amount, if any, shown

        (1)  in the "Schedule of Covered Autos You Own" as "Dollar Limit";

        (2)  in the form, "Physical Damage Insurance — Hired Autos" as a limit (if this form is made a part of this policy).

3.  For each covered **auto, our** obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any COMPREHENSIVE COVERAGE deductible shown in the Declarations does not apply to **loss** caused by fire or lightning.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3006-0   Printed in U.S.A. (NS)

HART000398

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Changes in Policy
Temporary Substitute Autos;
Autos Owned by Partners;
Who is Insured**



**THE HARTFORD**

**A.** **"PART II — WHICH AUTOS ARE COVERED AUTOS" is changed by adding the following:**

**D. TEMPORARY SUBSTITUTE AUTOS**

Any **auto you** do not own while used as a temporary substitute for an **auto you** do own is a covered **auto** for the same LIABILITY INSURANCE and UNINSURED MOTORISTS INSURANCE as is provided by the policy for the **auto you** do own, but only if that owned **auto** is out of normal use because of its breakdown, repair, servicing, **loss** or destruction.

**E. AUTOS OWNED BY PARTNERS**

If **you** are a partnership, no **auto** owned by any of **your** partners or members of their households is a covered **auto** for the LIABILITY INSURANCE unless the policy is endorsed to cover that **auto** as a covered **auto** and the proper premium is charged.

**B.** **If your policy is a Garage Policy the following additional changes are made:**

**(1)** **"WHO IS AN INSURED" of "PART IV — LIABILITY INSURANCE" is changed as follows:**

The following is added after section b. of part 2, **"For Garage Operations Other Than Covered Autos":**

c. Any partner of **yours** is an **insured** but only to the extent of his or her liability as **your** partner.

**(2)** **"WHO IS AN INSURED" of "PART V — GARAGEKEEPERS INSURANCE" is changed by adding the following after section 2:**

3. Any partner of **yours** is an **insured** but only to the extent of his or her liability as **your** partner.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3023-0   Printed in U.S.A.   (NS)

HART000399



<div align="right">CA 01 20<br/>(Ed. 03 80)</div>

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## CHANGES IN POLICY—ILLINOIS

For a covered **auto** licensed or principally garaged in, or **garage operations** conducted in, Illinois, the policy is changed as follows:

**A. CHANGES IN LIABILITY INSURANCE**

1. OUR LIMIT OF LIABILITY applies except that **we** will apply the limit shown in the declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

    a. $15,000 for **bodily injury** to any one person caused by any one **accident,**

    b. $30,000 for **bodily injury** to two or more persons caused by any one **accident,** and

    c. $10,000 for **property damage** caused by any one **accident.**

    This provision will not change **our** total limit of liability.

**B. CHANGES IN CONDITIONS**

1. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

    If **we** cancel, notice will be mailed to **your** last known address. **We** will not deliver any notice. If **we** cancel for any reason other than non-payment of premium **we** will mail **you:**

    a. At least 15 days notice when the policy is in effect less than 181 days.

    b. At least 30 days notice when the policy is in effect 181 days or more.

2. The following Condition is added:

    NON-RENEWAL

    a. If **we** decide not to renew or continue this policy **we** will mail **you** at least 30 days notice before the end of the policy period. If **we** offer to renew or continue and **you** do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

    b. If **we** fail to mail proper notice and **you** obtain other insurance this policy will end on the effective date of that insurance.

    c. Any notice of non-renewal will be mailed to **you** at **your** last known address. Proof of mailing of any notice shall be sufficient proof of notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



CA 01 28
(Ed. 10 82)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT IS APPLICABLE TO "B" ONLY.

## CHANGES IN POLICY—FLORIDA

A. For a covered **auto** licensed or principally garaged in Florida, PHYSICAL DAMAGE INSURANCE is changed as follows:

   1. No deductible applies to **loss** to glass used in the windshield.

   2. All other PHYSICAL DAMAGE INSURANCE provisions will apply.

B. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

   If **we** cancel for any reason other than nonpayment of premium **we** will mail **you** at least 45 days notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 01 28 (Ed. 10 82)

HART000401

CA 21 01
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**CHANGES IN UNINSURED MOTORISTS INSURANCE**

This endorsement is applicable in the states of AR., KY., & LA.

The Insured shall not be required to arbitrate disputed claims.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office. 1977

HART000402

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED AND UNDERINSURED MOTORISTS INSURANCE
## (NEW JERSEY)

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED AND UNDERINSURED MOTORISTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Property damage,"** as used in this endorsement, means damage to a covered **auto** or to any property of an **insured** while contained in a covered **auto.**

4. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy applies at the time of an **accident,** or

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   c. Which, with respect to damages for **bodily injury** only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits, or causes an **accident** resulting in **bodily injury** without hitting:

      **(1.) you** or any **family member;**

      **(2.)** a vehicle which **you** or any **family member** are **occupying;** or

      **(3.) your** covered **auto.**

5. **"Underinsured motor vehicle"** means a land motor vehicle or trailer for which a liability bond or policy applies at the time of an **accident** but its limit for liability is less than the limit of this insurance.

However, an **"uninsured motor vehicle"** or **"underinsured motor vehicle"** does not include any vehicle:

1. Owned by or furnished or available for the regular use of **you** or any **family member.**

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not upon public roads.

6. While located for use as a residence or premises.

**B. WE WILL PAY**

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured** or **underinsured motor vehicle.** The damages must result from **bodily injury** sustained by the **insured,** or **property damage** caused by an **accident.** The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured** or **underinsured motor vehicle.**

2. If this insurance provides a limit in excess of the amounts required by the New Jersey Financial Responsibility Law, **we** will pay only after all liability bonds or policies have been exhausted by judgements or payments.

**C. WE WILL NOT COVER—EXCLUSIONS**

This insurance does not apply to:

1. With respect to an **uninsured motor vehicle,** any claim settled without **our** consent.

2. Non-economic loss for **bodily injury** caused by an **accident** involving an **uninsured motor vehicle,** unless the injured person has sustained an injury or incurred the medical expenses described under the tort option that applies in accordance with the New Jersey no-fault law.

3. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

4. The direct or indirect benefit of any insurer of property.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. **Property damage** for which the **insured** has been or is entitled to be compensated by other property or physical damage insurance.

7. The first $250 of the amount of **property damage** to the property of each **insured** as the result of any one **accident.**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000403

8. **Property damage** caused by a hit-and-run vehicle.

## D. WHO IS INSURED

1. **You** or any **family member.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured.**

## E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident,** the limit of liability shown in the Declarations for Uninsured Motorists Insurance is the most **we** will pay for all damages resulting from any one **accident** with an **uninsured motor vehicle** or an **underinsured motor vehicle.**

2. Any amount payable under this insurance shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount payable under this insurance for economic loss shall be reduced by any personal injury protection benefits paid or payable, or which would be paid or payable except for the application of a deductible.

4. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

## F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED and UNDERINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured and/or underinsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send **us** copies of the legal papers if a suit is brought.

3. OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

   If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for us and pay **us** back the amount **we** have paid.

4. The following Condition is added:

   **ARBITRATION**

   a. If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

Copyright, Insurance Services Office, Inc., 1983   CA 21 14 (Ed. 01 84)

The company located these documents in its records. The company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000404

CA 21.30
(Ed. 05 82)

© 1982

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE
## (ILLINOIS)

### A. WORDS AND PHRASES WITH SPECIAL MEANING

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE (ILLINOIS):

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   c. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is occupying.

   However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

### B. WE WILL PAY

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

### C. WE WILL NOT COVER—EXCLUSIONS

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

### D. WHO IS INSURED

1. **You** or any **family member**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.

### E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident,** the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

   **We** will apply the limit shown in the declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $15,000 for **bodily injury** to any one person caused by any one **accident,** and

   b. $30,000 for **bodily injury** to two or more persons caused by any one **accident.**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000405



This provision will not change our total limit of liability.

2. Any amount payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an insured may be paid under the policy's LIABILITY INSURANCE.

## F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send us copies of the legal papers if a suit is brought.

3. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

4. The following Conditions are added:

   ### REIMBURSEMENT

   If we make any payment and the insured recovers from another party, the insured shall hold the proceeds in trust for us and pay us back the amount we have paid.

## ARBITRATION

a. If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle or do not agree as to the amount of damages, then the disagreement will be settled in accordance with the rules of the American Arbitration Association. However, if the insured requests, we and the insured will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the insured's request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the insured's recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law. If this occurs, the insured will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the insured's recovery exceeds the statutory minimum.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to arbitration procedure and evidence will apply. If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 21 30  (Ed. 05 82)

HART000406



CA 21 47
(Ed. 10 82)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| Named Insured | Countersigned by |
| | (Authorized Representative) |

In paragraph b. of the definition of **"uninsured motor vehicle"**, coverage applies only to a vehicle described in subparagraph (1) or (2) as indicated by an "x" below:

☐ If an "x" is entered in this box only subparagraph (1) in paragraph A.3.b. applies.

☐ If an "x" is entered in this box only subparagraph (2) in paragraph A.3.b. applies.

## A. WORDS AND PHRASES WITH SPECIAL MEANING

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE (FLORIDA):

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy applies at the time of an **accident**, or

   b. Which is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle:

      (1) For which the sum of all liability bonds or policies at the time of **an accident** provides a limit that is less than the limit of this insurance, or

      (2) For which the sum of all liability bonds or policies at the time of an **accident** provides a limit that is less than the amount an **insured** is legally entitled

to recover as damages caused by the **accident**, or

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is **occupying**.

However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

   d. Owned by or furnished or available for the regular use of **you** or any **family member**.

## B. WE WILL PAY

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

## C. WE WILL NOT COVER — EXCLUSIONS

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000407



3. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle owned by **you** or any **family member** which is not a covered **auto.**

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

## D. WHO IS INSURED

1. **You** or any **Family member.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured.**

## E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident,** the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any coverage afforded under this endorsement shall apply over and above:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid or payable under any no-fault coverage or automobile medical payments coverage.

3. Except for a vehicle described in paragraph b.(1) of the definition of **"uninsured motor vehicle",** any coverage afforded under this endorsement shall apply over and above all sums paid by or for anyone who is legally responsible, including all sums paid or payable under the policy's LIABILITY INSURANCE. For a vehicle described in paragraph b.(1) of the definition of **"uninsured motor vehicle",** our limit of liability shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid or payable under the policy's LIABILITY INSURANCE.

4. In no event will an **insured** be entitled to receive duplicate payment for the same elements of loss.

5. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

## F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE (FLORIDA) as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send **us** copies of the legal papers if a suit is brought.

3. OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

   If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for **us** and pay **us** back the amount **we** have paid.

4. The following Condition is added:

   ARBITRATION

   a. If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 21 47 (Ed. 10 82)

HART000408



CA 22 10
(Ed. 08 83)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
### (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

The Company agrees with the **named insured,** subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

The insurance for PERSONAL INJURY PROTECTION is subject to a deductible of $_____
applicable to ☐ the following **named insured** only:

_____

☐ each **named insured** and each dependent **relative.**

☐ **Work loss** for **named insured** does not apply

☐ **Work loss** for **named insured** and dependent **relative** does not apply

☐ Coverage reduced by military benefits for **named insured** and dependent **relative**

### SECTION I
### PERSONAL INJURY PROTECTION

The Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law to or for the benefit of the injured person:

    (a) 80% of **medical expenses,** and

    (b) 60% of **work loss,** and

    (c) **replacement services expenses,** and

    (d) funeral, burial or cremation expenses,

incurred as a result of **bodily injury,** caused by an **accident** arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

    (1) the **named insured** or any **relative** while **occupying** a **motor vehicle** or, while a **pedestrian** through being struck by a **motor vehicle;** or

    (2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian,** through being struck by the **insured motor vehicle.**

### Exclusions

This insurance does not apply:

    (a) to the **named insured** or any **relative** while **occupying** a **motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

    (b) to any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured;**

    (c) to any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

        (i) causing **bodily injury** to himself intentionally; or

        (ii) while committing a felony;

    (d) to the **named insured** or dependent **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

    (e) to any **pedestrian,** other than the **named insured** or any **relative,** not a legal resident of the State of Florida;

    (f) to any person, other than the **named insured,** if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law;

    (g) to any person, other than the **named insured** or any **relative,** who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

    (h) to any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises;

The company makes no representation that these are all the business records. At this time, this company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 22 10** (Ed. 08 83)

HART000409



© 1983

## Limit of Liability; Application of Deductible; Other Insurance

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **bodily injury** as the result of any one **accident** shall be $10,000; provided that payment for funeral, cremation or burial expenses included in the foregoing shall in no event exceed $1,750.

Any amount payable under this insurance shall be reduced by the amount of benefits an injured person has recovered or is entitled to recover for the same elements of loss under the workmen's compensation laws of any state or the federal government or the Medicaid program.

If benefits have been received under the Florida Motor Vehicle No-Fault Law from any insurer for the same items of loss and expense for which benefits are available under this policy, the Company shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from the Company its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

The amount of any deductible stated in the schedule of this endorsement shall be deducted from the total amount of all sums otherwise payable by the Company with respect to all loss and expense incurred by or on behalf of each person to whom the deductible applies and who sustains **bodily injury** as the result of any one **accident**, and if the total amount of such loss and expense exceeds such deductible, the total limit of benefits the Company is obligated to pay shall then be the difference between such deductible amount and the applicable limit of the Company's liability. Such deductible amount shall not be applied to funeral, cremation or burial expenses.

If an entry in the schedule or declaration so indicates any amount payable under this insurance to the **named insured** or dependent **relative** shall be reduced by any benefits payable by the Federal Government to active or retired military personnel and their dependent relatives. If such benefits are not available at the time of loss the Company shall have the right to recompute and charge the appropriate premium.

## Definitions

When used in reference to this Section:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"medical expense"** means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

**"named insured"** means the person or organization named in the declarations of the policy and if an individual, shall include the spouse if a resident of the same household;

**"motor vehicle"** means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle;

a **"motor vehicle"** does not include:

   (a) a mobile home; or

   (b) any motor vehicle which is used in mass transit or public school transportation and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit or public school transportation authority, or a political subdivision of the state.

**"occupying"** means in or upon or entering into or alighting from;

**"insured motor vehicle"** means a **motor vehicle:**

   (a) of which the **named insured** is the **owner,** and

   (b) with respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law and

   (c) for which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a motor vehicle;

**"relative"** means a person related to the **named insured** by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as the **named insured;**

**"pedestrian"** means a person while not an occupant of any self-propelled vehicle;

**"owner"** means a person or organization who holds the legal title to a **motor vehicle,** and also includes:

   (a) a debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement, and

   (b) a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

The company represents these documents in its entirety and in good faith, and the company does not warrant that these documents constitute a complete and accurate copy of the policy.

CA 22 10 (Ed. 08 83)

HART000410


© 1983

(c) a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

**"work loss"** means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

**"replacement services expenses"** means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household.

**Policy Period; Territory**

The insurance under this Section applies only to accidents which occur during the policy period

(a) in State of Florida; and

(b) as respects the **named insured** or **a relative,** while **occupying** the **insured motor vehicle** outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c) as respects the **named insured,** while **occupying a motor vehicle** of which **a relative** is the **owner** and for which security is maintained under the Florida Motor Vehicle No-Fault Law outside the State of Florida but within the United States of America, its territories or possessions or Canada.

**Conditions**

**1. Notice.** In the event of an accident, written notice of the loss must be given to the Company or any of its authorized agents as soon as practicable.

If any injured person or his legal representative shall institute legal action to recover damages for **bodily injury** against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such injured person or his legal representative.

**2. Action Against the Company.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance; nor until 30 days after the required notice of accident and reasonable proof of claim has been filed with the Company.

**3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld.** As soon as practicable the person making claim shall give to the

company written proof of claim, under oath if required; which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the company in determining the amount due and payable. Such person shall submit to mental or physical examinations at the company's expense when and as often as the company may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination the company will not be liable for subsequent personal injury protection benefits. Whenever a person making claim is charged with committing a felony the company shall withhold benefits until at the trial level the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**4. Reimbursement and Subrogation.** Unless prohibited by the Florida Motor Vehicle No-Fault Law and in the event of payment to or for the benefit of any injured person under this insurance:

(a) the Company shall be reimbursed to the extent of such payment, exclusive of reasonable attorneys' fees and other reasonable expenses, out of the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made and the Company shall have a lien on such proceeds to such extent;

(b) the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(c) the company providing personal injury protection benefits on a private passenger **motor vehicle**, as defined in the Florida Motor Vehicle No-Fault Law shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial **motor vehicle**, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while **occupying,** or while a **pedestrian** through being struck by, such commercial **motor vehicle**.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 22 10 (Ed. 08 83)

HART000411



© 1983

**5. Special Provision for Rented or Leased Vehicles.**
Notwithstanding any provision of this coverage to the contrary, if a person is injured while **occupying**, or through being struck by, a **motor vehicle** rented or leased under a rental or lease agreement which does not specify otherwise in bold type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

## SECTION II

### MODIFICATION OF POLICY COVERAGES

Any automobile medical payments insurance and any uninsured motorists insurance afforded by the policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits have been exhausted, any medical payments insurance afforded by the policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expenses benefits contained in Section I, but shall not be payable for the amount of the deductible selected.

## SECTION III

### PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the **named insured** pursuant to Section 12 (2) (e) of the Florida Motor Vehicle No-Fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the **named insured** shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000412



© 1983

CA 22 16
(Ed. 08 83)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT (KENTUCKY)

The Company agrees with the **named insured** subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I

### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay, in accordance with Kentucky Revised Statutes Chapter 304, Sub Title 39, personal injury protection benefits for:

(a) **medical expense,**

(b) **work loss,**

(c) **replacement services loss,**

(d) **survivor's economic loss,**

(e) **survivor's replacement services loss,** and

(f) **funeral expense**

incurred with respect to **bodily injury** sustained by an **eligible injured person** and caused by an accident arising out of the operation, maintenance or use of a **motor vehicle** as a vehicle.

**Exclusions**

This coverage does not apply:

(a) to **bodily injury** sustained by the **named insured** or any **relative** while **occupying** any **motor vehicle** owned by the **named insured** which is not an **insured motor vehicle;**

(b) to **bodily injury** sustained by any **relative** while **occupying** any **motor vehicle** owned by such **relative** with respect to which the security required by the Kentucky Revised Statutes Chapter 304, Sub Title 39, is not in effect;

(c) to **bodily injury** sustained by the **named insured** or any **relative,** who has not rejected his tort limitation pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, while **occupying** or while a **pedestrian** through being struck by, any **motor vehicle,** other than the **insured motor vehicle,** with respect to which the security required under the Kentucky Revised Statutes Chapter 304, Sub Title 39, is in effect unless the provider of such security fails to make payment for loss within 30 days of reasonable proof of the fact and the amount of loss sustained;

(d) to **bodily injury** sustained by any person if such injury arises from his conduct within the course of a business of repairing, servicing or otherwise maintaining **motor vehicles** unless such conduct occurs off the business premises;

(e) to **bodily injury** sustained by any person arising from conduct in the course of loading or unloading any **motor vehicle** unless such conduct occurs while **occupying** such **motor vehicle;**

(f) to **bodily injury** sustained by any person other than the **named insured** or any **relative** which arises from the operation, maintenance or use of a **motor vehicle** without a good faith belief that he is legally entitled to do so;

(g) to any benefits any person would otherwise be entitled to receive hereunder for **bodily injury** intentionally caused by such person or arising out of his intentionally attempting to cause **bodily injury,** and, if any person dies as a result of intentionally causing or attempting to cause **bodily injury** to himself, his survivors are not entitled to any **survivor's economic loss** or **survivor's replacement services loss** benefits;

(h) to **bodily injury** sustained by any **pedestrian,** other than the **named insured** or any **relative,** outside the Commonwealth of Kentucky;

(i) to **bodily injury** sustained by any person, other than the **named insured** or any **relative** while **occupying** a **motor vehicle** which is regularly used in the course of the business of transporting persons or property and which is one of five or more **motor vehicles** under common ownership, or a **motor vehicle** owned by a government other than the Commonwealth of Kentucky, its political subdivisions, municipal corporations, or public agencies, if the accident occurs outside the Commonwealth of Kentucky.

(j) to **bodily injury** sustained by any person arising out of the use of any **motor vehicle** while located at a residence or premises;

(k) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(l) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

(m) to **bodily injury** sustained by any person while **occupying** a motorcycle.

**Definitions**

When used in reference to this coverage:

"**bodily injury**" means bodily harm, sickness, disease, or death;

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000413

© 1983

**"eligible injured person"** means

(a) the **named insured** or any **relative** who sustains **bodily injury** while **occupying** or while a **pedestrian** through being struck by any **motor vehicle,** provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an **eligible injured person,** unless personal injury protection coverage has subsequently been purchased for such person under this policy, or

(b) any other person who sustains **bodily injury** while **occupying** or while a **pedestrian** through being struck by the **insured motor vehicle,** provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an **eligible injured person,**

however, any rejection of tort limitations applicable solely to motorcycles shall not affect the status of any person as an **eligible injured person** with respect to any **motor vehicle** other than a motorcycle;

**"funeral expense"** means reasonable charges incurred for expenses in any way related to funeral, cremation or burial;

**"insured motor vehicle"** means a **motor vehicle** with respect to which:

(a) the **bodily injury** liability insurance of the policy applies and for which a specific premium is charged, and

(b) the **named insured** is required to maintain security under the provisions of Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"medical expense"** means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, and other remedial treatment and care; any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing, and any healing arts professions of a type licensed by the Commonwealth of Kentucky, provided that medical expense shall not include that portion of a charge for a room in a hospital, clinic, convalescent or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge for semi-private accommodations, unless intensive care is medically required;

**"motor vehicle"** means a vehicle as defined in Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"named insured"** means the person or organization named in the declarations;

**"occupying"** means in or upon, entering into or alighting from;

**"pedestrian"** means a person who is not **occupying** a **motor vehicle** at the time the injury occurs;

**"relative"** means the spouse and any person related to the **named insured** by blood, marriage, or adoption including a minor in the custody of the **named insured,** spouse or such related person who is a resident of the same household as the **named insured,** whether or not temporarily residing elsewhere, but does not include any such person who is a **named insured** under any other policy providing the security under Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"replacement services loss"** means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the **eligible injured person** would have performed, not for income, but for the benefit of himself or his family if he had not been injured;

**"survivor"** means a person indentified in Kentucky Revised Statutes Section 411.130 as one entitled to receive benefits by reason of the death of another person;

**"survivor's economic loss"** means loss after the **eligible injured person's** death of contributions of things of economic value to his **survivors,** not including services they would have received from the **eligible injured person** had he not suffered the fatal injury, less expenses of the **survivors** avoided by reason of the **eligible injured person's** death;

**"survivor's replacement services loss"** means expenses reasonably incurred by **survivors** after the **eligible injured person's** death in obtaining ordinary and necessary services in lieu of those the **eligible injured person** would have performed for their benefit had he not suffered the fatal injury, less expenses of the **survivors** avoided by reason of the **eligible injured person's** death and not subtracted in calculating **survivor's economic loss;**

**"work loss"** means loss of income from work the **eligible injured person** would probably have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him.

**Policy Period; Territory**

This coverage applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

**Limits of Liability**

Regardless of the number of persons insured, policies or approved plans of self-insurance applicable, claims made or **insured motor vehicles** to which this coverage applies, the Company's liability for personal injury protection benefits with respect to **bodily injury** sustained by any one **eligible injured person** in any one **motor vehicle** accident shall not exceed $10,000 in the aggregate, and subject to such aggregate limit:

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.


© 1983

1. the maximum amount payable for **work loss, replacement services loss, survivor's economic loss,** and **survivor's replacement services loss** shall not exceed $200 per week in the aggregate prorated for any lesser period, provided that if the **eligible injured person's** earnings or work are seasonal or irregular, the weekly limit shall be equitably adjusted or apportioned on an annual basis;

2. the maximum amount payable for **funeral expense** shall not exceed $1,000.

Any amount payable by the Company under the terms of this coverage shall be reduced by any applicable deductible set forth in the declarations, but only with respect to **bodily injury** sustained by the **named insured** or any **relative,** provided that, if two or more such persons sustain **bodily injury** in the same **motor vehicle** accident, such deductible applicable to all of them shall not exceed such deductible amount and such amount shall be allocated equally among them. Provided further that, a **named insured** or **relative** is entitled to receive under this coverage the difference between this deductible and a greater deductible applicable under another policy applying to personal injury protection coverage pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39.

In calculating loss or expense for which personal injury protection benefits are payable under this coverage, a reduction shall be made in the amount of:

1. all benefits or advantages a person receives or is entitled to receive from social security (excluding benefits under Medicare and Medicaid) and workmen's compensation, unless these benefits or advantages have not been received before personal injury protection benefits are overdue or the claim is paid.

2. any income tax saving resulting from benefits or advantages received for loss of income under this coverage or from like benefits or advantages received under social security or workmen's compensation which are not considered taxable income, provided that the maximum reduction may not exceed 15% of the loss of income and shall be in lesser amount if the claimant furnishes to the Company reasonable proof of a lower value of the income tax advantage.

## Conditions

**A. Action Against Company.** No action shall lie against the Company unless as a condition precedent thereto, there shall have been full compliance with all the terms of this coverage.

**B. Notice.** In the event of an accident, written notice containing particulars sufficient to identify the **eligible injured person,** and also reasonably obtain-

able information respecting the time, place and circumstances of the accident shall be given by or on behalf of each **eligible injured person** to the Company or any of its authorized agents as soon as practicable.

**C. Medical Reports; Proof of Claim.** As soon as practicable, the **eligible injured person** or someone on his behalf shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the **bodily injury,** treatment and rehabilitation received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The **eligible injured person** shall submit to physical and mental examination by physicians selected by the Company when and as often as the Company may reasonably require.

**D. Subrogation.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of any payment under this coverage, the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

**E. Reimbursement and Trust Agreement.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of the payment to any person under this coverage:

1. the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made, and the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such **bodily injury,** his agent, his insurer or a court having jurisdiction in the matter;

2. such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such **bodily injury;**

3. such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; and

4. such person shall execute and deliver to the Company instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

The company reserves the business records and does not certify that these documents constitute a complete and accurate copy of the policy.

HART000415



© 1983

**F.** **Non-Duplication of Benefits; Priority of Payments; Other Insurance.** No **eligible injured person** shall recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved self-insurance plans. In the event an **eligible injured person** has other similar insurance, including approved self-insurance plans, available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this coverage and such other insurance.

## SECTION II

In consideration of the coverage afforded under Section I and the adjustment of applicable rates:

(a) any amount payable under the uninsured motorists coverage shall be reduced by the amount of any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury** sustained by an **eligible injured person;**

(b) any automobile medical payments or expense coverages afforded under this policy shall be excess insurance over any personal injury protection benefits paid or payable but for the application of a deductible under this or any other automobile insurance policy because of **bodily injury** sustained by an **eligible injured person.**

## SECTION III

### Constitutionality Clause.

The premium for and the coverages of the policy have been established in reliance upon the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39. In the event a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, the provisions of such statutes invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy and the provisions of this endorsement shall be voidable or subject to amendment at the option of the Company.

### Notice to Policyholders.

Acceptance of the coverage described in Kentucky Revised Statutes Chapter 304, Sub Title 39, places some limitations on your right to bring suit for **bodily injury,** KRS 304.39-060 reads in part:

"(1) Any person who registers, operates, maintains or uses a **motor vehicle** on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such **motor vehicle** and use of the public roadways, be deemed to have accepted the provisions of this Act, and in particular those provisions which are contained in this section.

(2)(a) Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a **motor vehicle** is 'abolished' for damages because of **bodily injury,** sickness or disease to the extent the basic reparation benefits provided in this Act are payable therefor, or that would be payable but for any deductible authorized by this Act, under any insurance policy or other method of security complying with the requirements of this Act, except to the extent non-economic detriment qualifies under subsection (2)(b) hereof.

(b) In any action of tort brought against the owner, registrant, operator or occupant of a **motor vehicle** with respect to which security has been provided as required in this Act, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of **bodily injury,** sickness or disease arising out of the ownership, maintenance, operation or use of such **motor vehicle** only in the event that the benefits which are payable for such injury as 'medical expense' or which would be payable but for any exclusion or deductible authorized by this Act exceed $1,000.00 or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least $1,000.

(c) Tort liability is not so limited for injury to a person who is not an owner, operator, maintainer or user of a **motor vehicle** within subsection (1) of this section.

(3) Any person may refuse to consent to the limitations of his tort rights and liabilities as contained

...ments in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.


© 1983

in this section. Such rejection must be in writing in a form to be prescribed by the Department of Insurance and must have been executed and filed with the Department at a time prior to any **motor vehicle** accident for which such rejection is to apply . . .".

These are some of the exceptions to the limitations on your right to sue and are not intended to comprise a complete enumeration of all circumstances under which suit may be brought for **bodily injury.**

The company located these documents in its business records. At this time, the company does not certify that these documents constitu a complete and accurate copy of the policy.

**CA 22 16** (Ed. 08 83)

Page 5 of 5

CA 2X 17
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### UNINSURED MOTORISTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

   b. For which the sum of all liability bonds or policies at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the limit of this insurance, or

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is **occupying**.

However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

**B. WE WILL PAY**

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

**C. WE WILL NOT COVER — EXCLUSIONS**

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle owned by **you** or any **family member** which is not a covered **auto**.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.

**E. OUR LIMIT OF LIABILITY**

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

**F. CHANGES IN CONDITIONS**

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

CA 2X 17 (Ed. 01 78)    Copyright, Insurance Services Office, 1977    Page 1 of 2

company's business records. The company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000418

a.  Promptly notify the police if a hit-and-run driver is involved, and

b.  Promptly send us copies of the legal papers if a suit is brought.

3.  OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for **us** and pay **us** back the amount **we** have paid.

4.  The following Condition is added:

**ARBITRATION**

a.  If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b.  Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 2X 17** (Ed. 01 78)    Copyright, Insurance Services Office, 1977    Page 2 of 2

HART000419



CA 99 03
(Ed. 01 80)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AUTO MEDICAL PAYMENTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for AUTO MEDICAL PAYMENTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

**B. WE WILL PAY**

**We** will pay reasonable expenses incurred for necessary medical and funeral services to or for an **insured** who sustains **bodily injury** caused by **accident**. **We** will pay only those expenses incurred within three years from the date of the **accident**.

**C. WE WILL NOT COVER — EXCLUSIONS**

This insurance does not apply to:

1. **Bodily injury** sustained by an **insured** while occupying a vehicle located for use as a premises.

2. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by **you** or furnished or available for **your** regular use.

3. **Bodily injury** sustained by any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by or furnished or available for the regular use of any **family member**.

4. **Bodily injury** to **your** employee arising out of and in the course of employment by **you**. However, **we** will cover **bodily injury** to **your** domestic employees if not entitled to workers' compensation benefits.

5. **Bodily injury** to an **insured** while working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours**.

6. **Bodily injury** caused by declared or undeclared war or insurrection or any of their consequences.

7. **Bodily injury** to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member** while **occupying** or, while a pedestrian, when struck by any **auto**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

**E. OUR LIMIT OF LIABILITY**

Regardless of the number of covered **autos, insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for **bodily injury** for each **insured** injured in any one **accident** is the limit of AUTO MEDICAL PAYMENTS shown in the declarations.

**F. CHANGES IN CONDITIONS**

The CONDITIONS of the policy are changed for AUTO MEDICAL PAYMENTS INSURANCE as follows:

1. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

2. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible auto medical payments insurance.

Copyright, Insurance Services Office, 1977, 1979

The company located these documents in its business records. At this time, the company cannot certify that these documents constitute a complete and accurate copy of the policy.

HART000420

CA 99 21 01 78

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
#### (Broad Form)

It is agreed that:

A.  The policy does not apply:

1.  Under any Liability Coverage, to **bodily injury** or **property damage**

    a.  with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    b.  resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material,** if

    a.  the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

    b.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

    c.  the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c applies only to **property damage** to such **nuclear facility** and property thereat.

B.  As used in this endorsement:

    **"hazardous properties"** include radioactive, toxic or explosive properties;

    **"nuclear material"** means **source material, special nuclear material** or **byproduct material;**

    **"source material"**, **"special nuclear material"**, and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

    **"waste"** means any waste material (a) containing **byproduct material** and (b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph 1 or 2 thereof;

    "**nuclear facility**" means

    1.  any **nuclear reactor,**

    2.  any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel,** or (c) handling, processing or packaging **waste**,

    3.  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    4.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,**

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    **"property damage"** includes all forms of radioactive contamination of property.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000421

## Comprehensive General Liability Insurance Coverage Part (Continued)

### I. COVERAGE A — BODILY INJURY LIABILITY

#### COVERAGE B — PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

**Coverage A** – *bodily injury* or

**Coverage B** – *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(b) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

   (1) any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

   (2) any other *automobile* or aircraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to the parking of an *automobile* on premises owned by, rented to or controlled by the *named insured* or the ways immediately adjoining, if such *automobile* is not owned by or rented or loaned to any *insured;*

(c) to *bodily injury* or *property damage* arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to *bodily injury* or *property damage* arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured;*

(e) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of

   (1) any watercraft owned or operated by or rented or loaned to any *insured*, or

   (2) any other watercraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the *named insured;*

(f) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to

   (1) liability assumed by the *insured* under an *incidental contract,* or

   (2) expenses for first aid under the Supplementary Payments provision;

(h) to *bodily injury* or *property damage* for which the *insured* or his indemnitee may be held liable

   (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

   (2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

   (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

   (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contibutes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the *insured* or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract;*

(k) to *property damage* to

   (1) property owned or occupied by or rented to the *insured*,

   (2) property used by the *insured*, or

   (3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to *property damage* (other than to *elevators*) arising out of the use of an *elevator* at premises owned by, rented to or controlled by the *named insured;*

(l) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

   (1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

   (2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(n) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(o) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q) to *property damage* included within:

   (1) the *explosion hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "x";

The company located these documents in its business records, that these documents constitute a complete and accurate copy of the policy.

## Comprehensive General Liability Insurance Coverage Part (Continued)    THE HARTFORD

(2) the *collapse hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "c".

(3) the *underground property damage hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "u".

## II. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured;* and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of *mobile equipment* registered under any motor vehicle registration law,

(i) an employee of the *named insured* while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the *named insured* any such equipment registered in the name of the *named insured* and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an *insured* under this paragraph (e) with respect to:

(1) *bodily injury* to any fellow employee of such person injured in the course of his employment, or

(2) *property damage* to property owned by, rented to, in charge of or occupied by the *named insured* or the employer of any person described in subparagraph (ii).

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured.*

## III. LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or suits brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

**Coverage A** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of (1) all *bodily injury* included within the *completed operations hazard* and (2) all *bodily injury* included within the *products hazard* shall not exceed the limit of *bodily injury* liability stated in the schedule as "aggregate".

**Coverage B** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate":

(1) all *property damage* arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including *property damage* for which liability is assumed under any *incidental contract* relating to such premises or operations, but excluding *property damage* included in subparagraph (2) below;

(2) all *property damage* arising out of and occurring in the course of operations performed for the *named insured* by independent contractors and general supervision thereof by the *named insured*, including any such *property damage* for which liability is assumed under any *incidental contract* relating to such operations, but this subparagraph (2) does not include *property damage* arising out of maintenance or repairs at premises owned by or rented to the *named insured* or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all *property damage* included within the *products hazard* and all *property damage* included within the *completed operations hazard.*

Such aggregate limit shall apply separately to the *property damage* described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the *named insured.*

**Coverages A and B** — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

## IV. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory.*

The company located these documents in its business records at this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

# COVERAGE PART
(continued)

## I. COVERAGE E — PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains *bodily injury* caused by accident and all reasonable *medical expense* incurred within one year from the date of the accident on account of such *bodily injury*, provided such *bodily injury* arises out of (a) a condition in the *insured premises* or (b) operations with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy.

### Exclusions

This insurance does not apply:

**(a)** to *bodily injury*

**(1)** arising out of the ownership, maintenance, operation, use, loading or unloading of

**(i)** any *automobile* or aircraft owned or operated by or rented or loaned to any *insured*, or

**(ii)** any other *automobile* or aircraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to the parking of an *automobile* on the *insured premises*, if such *automobile* is not owned by or rented or loaned to any *insured;*

**(2)** arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

**(3)** arising out of the ownership, maintenance, operation, use, loading or unloading of

**(i)** any watercraft owned or operated by or rented or loaned to any *insured*, or

**(ii)** any other watercraft operated by any person in the course of his employment by any *insured;*

but this exclusion does not apply to watercraft while ashore on the *insured premises;* or

**(4)** arising out of and in the course of the transportation of *mobile equipment* by an *automobile* owned or operated by or rented or loaned to any *insured;*

**(b)** to *bodily injury*

**(1)** included within the *completed operations hazard* or the *products hazard;*

**(2)** arising out of operations performed for the *named insured* by independent contractors other than (i) maintenance and repair of the *insured premises* or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

**(3)** resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the *named insured* is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the *named insured* is such an owner or lessor;

**(4)** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

**(c)** to *bodily injury*

**(1)** to the *named insured*, any partner therein, any tenant or other person regularly residing in the *insured premises* or any employee of any of the foregoing if the *bodily injury* arises out of and in the course of his employment therewith;

**(2)** to any other tenant if the *bodily injury* occurs on that part of the *insured premises* rented from the *named insured* or to any employee of such a tenant if the *bodily injury* occurs on the tenant's part of the *insured premises* and arises out of and in the course of his employment for the tenant;

**(3)** to any person while engaged in maintenance and repair of the *insured premises* or alteration, demolition or new construction at such premises;

**(4)** to any person if any benefits for such *bodily injury* are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

**(5)** to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sports activities in the policy with respect to Premises Medical Payments Coverage;

**(d)** to any *medical expense* for services by the *named insured*, any employee thereof or any person or organization under contract to the *named insured* to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all *medical expense* for *bodily injury* to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all *medical expense* for *bodily injury* to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the schedule as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*insured premises*" means all premises owned by or rented to the *named insured* with respect to which the *named insured* is afforded coverage for *bodily injury* liability under this policy, and includes the ways immediately adjoining on land;

"*medical expense*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services, and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

## CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

### (Blanket Coverage)
#### (Continued)

(i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, or

(ii) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the *bodily injury* or *property damage;*

(c) to *bodily injury* or *property damage* due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to *bodily injury* or *property damage* for which the indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage,or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the *insured* or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the *insured* may be held liable in an action on a contract by a third party beneficiary for *bodily injury* or *property damage* arising out of a project for a public authority; but this exclusion does not apply to action by the public authority or any other person or organization engaged in the project;

(g) to *property damage* to

(1) property owned or occupied by or rented to the *insured,*

(2) property used by the *insured,* or

(3) property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control;

(h) to *property damage* to premises alienated by the *named insured* arising out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

(2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured;*

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the *named insured's products* or work performed by or on behalf of the *named insured* after such products or work have been put to use by any person or organization other than an *insured;*

(j) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(k) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the *named insured's products* or work completed by or for the *named insured* or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(m) As respects any agreement relating to construction operations, to *bodily injury* or *property damage* arising out of

(1) construction, maintenance or repair of watercraft or loading or unloading thereof, or

(2) operations within fifty feet of any railroad property affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(n) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of any *mobile equipment* while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(o) to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

When stated in the schedule as applicable, the following exclusions also apply to *contractual liability* assumed by the *insured.*

This insurance does not apply:

(p) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *products hazard;*

(q) to *property damage* included within

(1) the *explosion hazard,*

(2) the *collapse hazard,* or

(3) the *underground property damage hazard.*

## II.  PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured.*

## III.  LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage,* or (3) claims made or *suits* brought on account of *bodily injury* or *property damage,* the company's liability is limited as follows:

**Coverage YB** — The total liability of the company for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each *occurrence*".

**Coverage ZB** — The total liability of the company for all damages because of all *property damage* sustained by one or more persons or organizations as the result of any one *occurrence* shall not exceed the limit of *property damage* liability stated in the schedule as applicable to "each *occurrence*".

Subject to the above provision respecting "each *occurrence*", the total liability of the company for all damages because of all *property damage* to which this coverage applies shall not exceed the limit of *property damage* liability stated in the schedule as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the *named insured.*

Coverages YB and ZB — For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

HART000425

# CONTRACTUAL LIABILITY INSURANCE
## COVERAGE PART

**(Blanket Coverage)**
*(Continued)*

## IV. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"*contractual liability*" means liability expressly assumed under a written contract or agreement; provided, however, that *contractual liability* shall not be construed as including liability under a warranty of the fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

"*suit*" includes an arbitration proceeding to which the *insured* is required to submit or to which the *insured* has submitted with the company's consent.

## V. POLICY TERRITORY

This insurance applies only to *bodily injury* or *property damage* which occurs within the *policy territory*.

## VI. ADDITIONAL CONDITIONS

### Arbitration

The company shall be entitled to exercise all of the *insured's* rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

### Premium

When used as a premium basis:

1. the word "*cost*" means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which "*cost*" is the basis of premium, regardless of whether any liability is assumed under such contracts by the *insured*. It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the *insured*, or others including all fees, allowances, bonuses or commissions made, paid or due. It shall not include the cost of any operations to which exclusion (m) applies.

2. the word "*sales*" means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3523-0   (HS)   Printed in U.S.A.   (NS)

HART000426

**General Liability**
**Amendatory Endorsement — Additional Definition**

 **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No.......................................
Issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ..................................................Effective hour is the same
as stated in the Declarations of the Policy.

It is agreed that the following definition is added:

*"loading or unloading",* with respect to an *automobile,* means the handling of property after it is moved from the place where it is accepted for
movement into or onto an *automobile* or while it is in or on an *automobile* or while it is being moved from an *automobile* to the place where it is
finally delivered, but "loading or unloading" does not include the movement of property by means of a mechanical device (other than a hand truck) not
attached to the *automobile.*

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other
than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect
as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a
duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by........................................................................................
*Authorized Agent*

**Form L-4128-0** Printed in U.S.A.  (ISO: GL 00 19 07 78)

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000427

## Non-Owned Snowmobiles Endorsement



**THE HARTFORD**

Policy Number

Named Insured and Address

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date

Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

Comprehensive General Liability Insurance
Manufacturers and Contractors Liability Insurance
Owners, Landlords and Tenants Liability Insurance

It is agreed that Part 2 of Exclusion (c) is replaced by the following:

(2)    The operation or use of any snowmobile or trailer designed for use therewith

(i)    owned or operated by or rented or loaned to any **insured**, or

(ii)    operated by any person in the course of his employment by any **insured**;

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the Policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by _____

Form L-4330-0    Printed in U.S.A. (ISO: GL 00 26 0381)                          Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000428

# EXHIBIT 8

| | | | Annual | | Monthly | Participating |
|---|---|---|---|---|---|---|
| | | **Filing** | | | | |
| | | Prem. Finance | Semi-Ann. | Bureau | Retro | Redacted |
| | | **Large Risk** | Quarterly | Loss Control | | |

**INSURER →**  Co. Code **S**

Previous Policy No.
**10 C ML0740W**

as (No., Street, Town, County, State, Zip Code)

Individual ☐ Partnership ☑ Corporation
Joint Venture (Other) .....................................
→ From

**POLICY NO.** **10 CLR ML0743W**

Centrico Inc.
100 Fairway Court
Northvale, N.J.  07647

**10-25-85**    To **10-25-86**

Form PC-222-0

AQ916083

RETURN TO PSDC CARD

CLRML074

nd Address    Producer's Code
rred S. James and Co.
Inc. of N.Y.    252170

12:01 A.M., standard time at the address of the *named insured* as stated herein.

Audit Period: Annual, unless otherwise stated.    ☐ Semi-Annual
☐ Quarterly
☐ Monthly

3.  The advance premium for this policy is as stated below. Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

### SUMMARY OF ADVANCE PREMIUMS

Redacted

| COVERAGE PARTS | ADVANCE PREMIUM |
|---|---|
| Comprehensive General Liability Insurance | $ 445,742. |
| Premises Medical Payments Insurance | $ Included |
| Contractual Liability Insurance | $ Included |
| Completed Operations and Products Liability Insurance | $ |
| Owners' and Contractors' Protective Liability Insurance | $ |
| Storekeepers' Insurance | $ |
| Personal Injury Liability Insurance | $ |
| Comprehensive — Plus General Liability Insurance | $ |
| Errors and Omissions Insurance- Employee Benefits Program | $ Included |
| | $ |
| | $ |
| Business Auto | $ 63,978.72 |
| Truckers | $ |
| Garage | $ |

| Form Numbers of Coverage Parts and endorsements not listed on Coverage Parts forming part of Policy at Issue: AL 57-0  C 2013-0 L 3505-0 L 3503-1 L 3523-0 | TOTAL ADVANCE PREMIUM | $ 509,720.72 |
|---|---|---|

| If Policy Period more than one year: Gross Premium $ | Discount $ | Net Premium $ |
|---|---|---|
| Premium is payable: On effective date of Policy $ | 1st Anniversary $ | 2nd Anniversary $ |

4.  Business of the *named insured* is ——————————→ **Mfg. Industrial Separators**

The company has saved these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

COMPANY COPY

102-0  CDR  Printed in U.S.A.

HART000429

**Premium Installment**    **THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 CLR ML0743W**
issued by THE HARTFORD INSURANCE GROUP company
designated therein, and takes effect as of the effective date of
said Policy unless another effective date is stated herein.

Effective date.................................................. 12:01 A. M., standard time at the address of the
named insured as stated herein.

G.L.    445,742.

It is hereby understood and agreed that the.......... **Original** ..........  Auto    **63,978.12**
(Insert "original" or "additional" or "return")    Premium of $ ..........................

will **be payable in** ............. **12 twelve** ............. installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

## SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | Ky. Surchg. | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 10-25-85 | 37,147. | 3,785. | 1,554. | 9.72 | 42,495.72 |
| 2 | 11-25-85 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 3 | 12-25-85 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 4 | 1-25-86 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 5 | 2-25-86 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 6 | 3-25-86 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 7 | 4-25-86 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 8 | 5-25-86 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 9 | 6-25-86 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 10 | 7-25-86 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 11 | 8-25-86 | 37,145. | 3,784. | 1,546. | | 42,475. |
| 12 | 9-25-36 | 37,145. | 3,784. | 1,546. | | 42,475. |
| TOTALS | | 445,742. | 45,409. | 18,560. | | 509,720.72 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form AL-57-0  Printed in U. S. A.

HART000430

**Business Auto Coverage Part**

**THE HARTFORD**

issued to form a part of Policy No. **19 CLR ML0743W** _____ to be effective _____ at the hour stated in the policy. The Stock Insurance Company providing this insurance is shown on the Declarations Page of such policy as the "Insurer."

This Coverage Part is not binding unless countersigned by a duly authorized agent of ours; but if it takes effect as of the effective date of the policy of which this Coverage Part forms a part then countersignature on the Declarations Page of that policy by a duly authorized agent of ours is valid countersignature of this Coverage Part.

All of the provisions, conditions and other terms of this BUSINESS AUTO COVERAGE PART shall apply only as specified herein and none of the provisions, conditions and other terms of the policy of which this BUSINESS AUTO COVERAGE PART forms a part shall apply to insurance hereunder unless otherwise stated herein. Hereafter, any use of the word "policy" in this BUSINESS AUTO COVERAGE PART (or any endorsement forming a part of, changing or applicable to this BUSINESS AUTO COVERAGE PART) shall be deemed to read "BUSINESS AUTO COVERAGE PART."

# DECLARATIONS — BUSINESS AUTO COVERAGE PART

## ITEM ONE — NAMED INSURED AND ADDRESS

This BUSINESS AUTO COVERAGE PART is completed by:

(a) this Declarations Form C-2013.
          Form C-2014.
          Form C-2015.
          Form C-2016.

(b) its provisions and conditions printed in Form CA00010180

(c) any Endorsements issued to form a part of it.

Form Numbers of Endorsement forming part of this BUSINESS AUTO COVERAGE PART on the above effective date:

**See G 2240 3B**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by ..............................................

Authorized Agent

Includes copyrighted material of Insurance Services Office, with its permission. Copyright Insurance Services Office, 1977, 1979.

Form C-2014

DECLARATIONS —
BUSINESS AUTO POLICY (Continued)
ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

THE HARTFORD          Policy No. **10 CLR 12.07437**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols from ITEM THREE next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from ITEM THREE shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS (Absence of a limit entry means that the limit entry shown, if any, in item four applies instead) | ESTIMATED PREMIUM |
|---|---|---|---|
| AA = LIABILITY INSURANCE | 1 | $1,000,000 each accident    **As per Premium Computation Endt.** | $ 45,409. |
| AB = LIABILITY INSURANCE | | $ ,000 Bodily Injury each person<br>$ ,000 Bodily Injury each accident<br>$ ,000 Property Damage each accident | $ |
| AC = PERSONAL INJURY PROTECTION (or equivalent No-Fault coverage) | 5 | Separately stated in each Personal Injury Protection Endorsement minus $No deductible | $ Incl. |
| AD = ADDED PERSONAL INJURY PROTECTION (or equivalent added No-Fault coverage) | | Separately stated in each Added Personal Injury Protection Endorsement | $ |
| AE = PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in the Property Protection Insurance Endorsement minus $ deductible for each accident | $ |
| AF = AUTO MEDICAL PAYMENTS INSURANCE | 3 | $5,000 for Bodily Injury for each Insured | $ Incl. |
| AG = UNINSURED MOTORISTS INSURANCE | | $ ,000 each accident | $ |
| AH = UNINSURED MOTORISTS INSURANCE | 6 | Separately stated in the Split Uninsured Motorists Limits Endorsement | $ Incl. |
| PHYSICAL DAMAGE INSURANCE | | | |
| AJ = COMPREHENSIVE COVERAGE | 12 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered auto for all loss except fire or lightning | $ 5,419. |
| AK = SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus $25 Deductible for each covered auto for loss covered by mischief or vandalism | $ |
| AL = FIRE COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AM = FIRE AND THEFT COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AO = FIRE, THEFT AND WINDSTORM COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AP = LIMITED SPECIFIED PERILS COVERAGE | | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest | $ |
| AR = COLLISION COVERAGE | 12 | Actual Cash Value, Cost of Repair, or the Stated Amount shown in item four as "Dollar Limit", whichever is smallest, minus any Deductible shown in item four for each covered auto | $ 13,141. |
| AT = TOWING AND LABOR (Not available in California) | | $25 for each disablement of a private passenger auto | $ |
| | | Endorsement Premium (Not included in above Coverage premiums) | $ |
| | | ESTIMATED TOTAL PREMIUM | $ 63,969. |

Ky. Surchg.          9.72
63,978.72

The estimated total premium for this policy is based on the exposures you told us you would have when this policy began.
We will compute your final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and you will be billed for the balance, if any. If the estimated total premium exceeds the final premium due you will get a refund. To determine your final premium due we may examine your records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year, the premium shall be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-2014-0   Printed in U.S.A.   (NS)          (Continued on Form C-2015)

HART000432

Form C-2016
**DECLARATIONS—**
**BUSINESS AUTO POLICY (Continued)**

**THE HARTFORD**

Policy No. 10 CLR ML0743W

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type / City or Town and State where the covered auto will be principally garaged | | | | Vehicle Identification No. (VIN) | Original Cost New (Chassis & Body including Special Equipment) or Rating Symbol |
|---|---|---|---|---|---|---|
| | Territory Code | Tax Code | Classification Code | Size — GVW or GCW or Vehicle Seating Capacity | Radius of Operation L = Local, I = Intermediate, LD = Long Distance / Use S = Service, R = Retail, C = Commercial, Other (Describe) | |
| **1** | Garaged: As per Premium Computation Endorsement | | | | Radius of Operation: | |
| | | | | | Use: | |
| **2** | Garaged: | | | | Radius of Operation: | |
| | | | | | Use: | |

**Premiums and Limits** — Absence, if any, of a limit entry below means that the limit entry shown in the corresponding ITEM TWO of the Declarations Limit Column applies instead.

| Covered Auto No. | Liability Premium Cov. AA ☐ AB ☐ / PIP Premium Cov. AC | Added PIP Premium Cov. AD / PPI Premium Cov. AE | Auto Med Pay Limit for each Insured Cov. AF / Auto Med Pay Premium Cov. AF | Uninsured Motorists Limit each Accident Cov. AG / Uninsured Motorists Premium Cov. AG ☐ AH ☐ | Physical Damage (Non-Collision) Coverage * | | Collision Cov. AR | | Towing and Labor Premium Cov. AT |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Deductible / Premium | Dollar Limit / Rate | Deductible / Premium | Dollar Limit / Rate | |
| **1** | As Per $    $ | $    $ | $    $ | $    $ | Coverage $    $ | $    $ | $    $ | $    $ | $ |
| **2** | Premium $    $ Computation $    Endorsement $ | $    $ | $    $ | $    $ | Coverage $    $ | $    $ | $    $ | $    $ | $ |

*Indicate applicable PHYSICAL DAMAGE (Non-Collision) Coverage for each Covered Auto.

**Loss Payees (Identified by Covered Auto No.)** — Except for Towing, all physical damage loss is payable to you and the loss payee named below as interest may appear at the time of loss.

| Covered Auto No(s) | Loss Payee Name and Address | Covered Auto No(s) | Loss Payee Name and Address |
|---|---|---|---|
| | | | |

## ITEM FIVE — SCHEDULE OF HIRED AUTOS (Coverages and Premiums)

**LIABILITY INSURANCE — RATING BASIS IS COST OF HIRE. Cost of hire** means the total amount you incur for the hire of autos you don't own (not including autos you borrow or rent from your employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| HEADQUARTERS STATE | CLASSIFICATION CODE | ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | ESTIMATED PREMIUM |
|---|---|---|---|---|
| NJ | 6619 | $ If Any | $ | $ As per Premium |
| | | $ | $ | $ Computation Endt. |

## ITEM SIX — SCHEDULE FOR NON-OWNERSHIP LIABILITY

**LIABILITY INSURANCE** (Includes autos owned by your employees or members of their households but only while used in your business or your personal affairs)

**— RATING BASIS IS NUMBER OF EMPLOYEES**

| ESTIMATED NUMBER OF EMPLOYEES | CLASSIFICATION CODE | HEADQUARTERS STATE | ESTIMATED PREMIUM |
|---|---|---|---|
| 300 | 6603 | NJ | $ As per Premium Computation Endt. |

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979.

The company located these documents in its business records. However, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-2016-0 CDR  Printed in U.S.A. (NS)

**COMPANY COPY**

HART000433

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## List of Automobile Endorsements Forming part of Policy at issue:

**Countrywide**

G 2240 3B

C 3006-0

C 3023-0

CA 9921 01-78 D/N/A in N.Y.

CA 9903 01-80

**New Jersey**

CA 2114 01 84

CA 2230 08 84

CA 0224 01 78

**Kentucky**

CA 2101 01 78

CA 2216 10 84

CA 2X17 01 73

**Illinois**

CA 0120 03 80

CA 2130 05 82

**Florida**

CA 0128 10 82

CA 2210 08 83

CA 2147 05 85

**California**

CA 0143 10 84

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B   Printed in U.S.A

Countersigned by ....................................................
                              *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000434

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |

Endt. No.

## Premium Computation

It is agreed that the Premiums for Auto Physical Damage Insurance shall be Computed as follows:

Subject to 500 Deductible Comprehensive, 500. Deductible Collision

| Total Cost New of all Autos | Rates per $100. of Cost | Advance Premiums |
|---|---|---|
| 771,736. | New Comp. .7022 | 5,419. |
| | Coll. 1.7028 | 13,141. |

*Total Cost new is the average of the total cost new of all autos owned or leased by all Named Insureds on the inception date of the policy and on the expiration date of the policy.

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B   Printed in U S A

Countersigned by .......................................
                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

THE HARTFORD

Named Insured and Address

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## Premium Computation

It is agreed that the premium for Auto Liability Insurance

Personal Injury Protection, Auto Medical Payments Insurance

Uninsured Motorists Insurance shall be computed as follows:

| *Total Number of Autos | Rates per Auto | Advance Premium |
|---|---|---|
| 60 | 756.81 | 45,409. |

*Total number of autos is the average of the total number of all autos owned or leased by all Named Insureds on the inception date of the Policy and on the expiration date of the policy.

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B    Printed in U S A

Countersigned by ............................................
                                    *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of this policy.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT (NEW JERSEY)

This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law".

All terms printed in bold face other than section headings or titles, are defined terms. For a complete understanding of provisions containing these terms refer to the section entitled **"Definitions."**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

The Company agrees with the **named insured**, subject to all of the provisions in this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SCHEDULE

The total aggregate amount of extended **medical expense benefits** payable under Section II is $

In consideration of a reduction in premium, the following options apply as indicated below or in the Declarations:

---

**MEDICAL EXPENSE BENEFITS** DEDUCTIBLE

The indicated deductible for **medical expense benefits** applies for all **named insureds** and **relatives** on a per accident basis.

**Medical Expense Benefits** deductible

☐  $  500

☐     1,000

☐     2,500

---

DELETION OF BENEFITS OTHER THAN MEDICAL EXPENSES

☐   All Personal Injury Protection benefits other than **medical expense benefits** are deleted with respect to the **named insured** and each **relative.** Refer to Condition 6.

---

REIMBURSEMENT SETOFF

☐   The setoff option to reimburse the Company for **medical expense benefits** applies to the **named insured** and each **relative.** Refer to Condition 7.

---

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000437

## PERSONAL INJURY PROTECTION COVERAGE

The Company will pay personal injury protection benefits consisting of:

**(a) medical expense benefits,**

**(b) income continuation benefits,**

**(c) essential services benefits,**

**(d) death benefits,** and

**(e) funeral expense benefits**

with respect to **bodily injury** sustained by an **eligible injured person** caused by an accident and arising out of the ownership, maintenance or use, including loading or unloading, of a **private passenger automobile** as an automobile.

### Exclusions

The insurance under this endorsement does not apply to **bodily injury:**

**(a)** to a person whose conduct contributed to the injury in any of the following ways:

    **(1)** while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer, or

    **(2)** while acting with specific intent to cause injury or damage to himself or others;

**(b)** to any person who, at the time of the accident, was the owner or registrant of a **private passenger automobile** registered or principally garaged in New Jersey that was being operated without personal injury protection coverage.

**(c)** to any person who is not occupying an **insured automobile,** other than the **named insured** or a **relative** of the **named insured** or a resident of New Jersey, if the accident occurs outside of New Jersey;

**(d)** arising out of the ownership, maintenance, or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

**(e)** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

**(f)** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

**(g)** to any person, other than the **named insured** or **relative,** if such person is entitled to New Jersey personal injury protection coverage as a named insured or relative under the terms of any other policy with respect to such coverage;

**(h)** to any **relative,** if such person is entitled to New Jersey personal injury protection coverage as a named insured under the terms of another policy;

**(i)** to any person operating or occupying a **private passenger automobile** without the permission of the owner or the named insured under the policy insuring that automobile.

### Definitions

When used in reference to this insurance:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"death benefits"** means the amount or amounts payable in the event of the death of an **eligible injured person** as determined in subdivision (1) or (2) hereof, as appropriate:

    **(1)** if the **eligible insured person** was an **income producer** at the time of the accident, an amount equal to the difference between $5,200 and all basic **income continuation benefits** paid for any loss of **income** resulting from his injury prior to his death;

    **(2)** if the **eligible injured person** ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount equal to the difference between $4,380 and all basic **essential services benefits** paid with respect to his injury prior to death.

**"eligible injured person"** means

**(a)** the **named insured** or any **relative** of the **named insured,** if the **named insured** or **relative** sustains **bodily injury**

    **(1)** as a result of any accident while occupying, entering into, alighting from or using a **private passenger automobile,** or

    **(2)** while a **pedestrian,** as a result of being struck by a **private passenger automobile** or by an object propelled by or from a **private passenger automobile;**

**(b)** any other person who sustains **bodily injury**

    **(1)** while, with the permission of the **named insured,** occupying, using, entering into or alighting from the **insured automobile,** or

    **(2)** while a **pedestrian,** caused by the **insured automobile** or as a result of being struck by an object propelled by or from the **insured automobile;**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, Inc., 1984          CA 22 30 (Ed. 08 84)

HART000438

# PREMISES MEDICAL PAYMENTS INSURANCE — COVERAGE PART

**10 CLR ML0743H**

This Coverage Part forms a part of Policy No. ....................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

| (For use only if this Coverage Part is effective after the effective date of the Policy) |
| --- |
| This Coverage Part is effective.................................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to........ |

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is with respect to the following coverage as indicated by specific premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverage | Advance Premium | Limits of Liability |  |
| --- | --- | --- | --- |
| E — Premises Medical Payments | $ **Included** | $ **1,000.** | each person |
|  |  | $ **10,000.** | each accident |

| Description of Hazards | Advance Premiums |
| --- | --- |
| **(a) Premises and Operations**<br><br>As per Premium Computation Endorsement | |
| **(b) Escalators** | |
| **(c) Sports Activities** | |

| Form Numbers of Endorsements forming part of this Coverage Part at issue: | TOTAL ADVANCE PREMIUM | $ Included |
| --- | --- | --- |
| G 2240 3B (List) | | |

| If the Policy Period is more than one year, the Premium is Payable: | | |
| --- | --- | --- |
| On effective date of Policy $ | 1st Anniversary $ | 2nd Anniversary $ |

The conditions and provisions printed on page MP-2 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by.......................................................................
                                                                  *Authorized Agent*

**Form L-3505-0  CDR**  Printed in U.S.A.  (ISO: GL 00 13 01 73)    MP-1

USL Approved    Technical Report    Quality Control

this time, the company does not certify that these documents constitute a complete and accurate copy of the policy

THE HARTFORD

Named Insured and Address

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered
above, issued by THE HARTFORD INSURANCE GROUP
company designated therein, and takes effect as of the
effective date of said policy unless another effective date
is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

## Comprehensive General Liability

### List of Endorsements Forming Part of Policy at Issue:

G 2240 3B    **Premium Computation**

L 4155-0

L 3025-0

L 3252-2

L 3355-1

L 4152-0

G 2240 3B    **Assault and Battery**

G 2240 3B    **Incidental Malpractice**

G 2240 3B    **Knowledge and Notice of Occurrence**

G 2240 3B    **Notice of Cancellation**

G 2240 3B    **Unintentional Errors or Omissions**

L 4330-0

L 4128-0

L 3991-0

G 1760-9

L 4910-0

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B    Printed in U S A

Countersigned by ................................................
Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

HART000440

THE HARTFORD

Named Insured and Address

| Policy Number |
|---|
| **10 CLR ML0743W** |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

**Comprehensive General Liability Insurance**

**Contractual Liability Insurance**

**Premises Medical Payments Insurance and**

**Errors and Omissions Insurance— Employee Benefit Programs**

**Premium Computation**

**It is agreed that the Premium for Comprehensive General Liability**

**Insurance shall be computed as follows:**

| Code | Total Sales | Rates per $1,000. of Sales B.I. | P.D. | Advance Premiums B.I. | P.D. |
|---|---|---|---|---|---|
| 20050 | 35,000,000 | 10.9027 | 1.8328 | 381,594. | 64,148. |

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B    Printed in U S A

Countersigned by ................................................
                                    *Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of this policy

HART000441

**Errors And Omissions Insurance —**
**Employee Benefit Programs**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 CLR ML0743W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .................................................................. Effective hour is the same as stated in the Declarations of the policy.

## SCHEDULE

| Limits of Liability | | Estimated Advance Premium |
|---|---|---|
| $ **25,000.** | each claim | $ **Included** |
| $ **75,000.** | aggregate | |

The company agrees with the Named Insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and in the schedule herein and subject to the limits of liability, exclusions, conditions and other terms of this endorsement:

## INSURING AGREEMENTS

I.  COVERAGE. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of the Insured's Employee Benefit Programs as defined herein.

II.  DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. As respects such insurance as is afforded by the terms of this endorsement, the company shall:
(a)  defend in his name and behalf any suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and negotiation and, with the written consent of the Insured, such settlement of any claim or suit as the company deems expedient;
(b)  pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this endorsement, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(c)  reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;
and the amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.

III.  DEFINITIONS.
(a)  "**Insured**" — The unqualified word "Insured", wherever used, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.
(b)  "**Employee Benefit Programs**" — The term "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workmen's Compensation, Unemployment Insurance, Social Security and Disability Benefits.
(c)  "**Administration**" — The unqualified word "Administration", wherever used, shall mean:
(1)  giving counsel to employees with respect to Employee Benefit Programs;
(2)  interpreting Employee Benefit Programs;
(3)  handling of records in connection with Employee Benefit Programs;
(4)  effecting enrollment of employees under Employee Benefit Programs;
provided all such acts are authorized by the Named Insured.

IV.  ENDORSEMENT PERIOD. TERRITORY. This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

## EXCLUSIONS

This endorsement does not apply:
(a)  to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b)  to bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
(c)  to any claim for failure of performance of contract by an insurer;
(d)  to any claim based upon:
(1)  failure of stock to perform as represented by an insured;
(2)  advice given by an insured to an employee to participate or not to participate in stock subscription plans.

## CONDITIONS

1.  **Policy Conditions.** All the Conditions of the policy which would apply to the bodily injury or property damage liability coverages thereof shall apply to the insurance under this endorsement except those respecting "Premium", "Definitions" and "Limits of Liability".

2.  **Limits of Liability**
(a)  Subject to the provisions of the following paragraphs, the limit of liability stated in the schedule herein as applicable to "each claim" is the limit of the company's liability for all damages on account of each claim or suit covered hereunder; the limit of liability stated in the schedule herein as "aggregate", is, subject to the above provision respecting "each claim", the total limit of the company's liability hereunder for all damages.
(b)  $1,000. shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under Insuring Agreement II.
(c)  The terms of this endorsement and the policy, including those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount. If the company undertakes to negotiate or settle any claim or suit, the insured agrees to join the company in such negotiation or settlement to the extent of the amount to be deducted as herein provided, or to reimburse the company for such deductible amount, if and when such claim is paid by the company.
(d)  The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

3.  **Premium.** The premium developed by this endorsement shall be determined in accordance with the following schedule of rates and is subject to adjustment at audit:

| Estimated Number of Employees | Rate (Each Employee) | Estimated Premium |
|---|---|---|
| **193** | .................. First 5,000 | $.............. |
| | .................. Next 5,000 | $.............. |
| | .................. Over 10,000 | $.............. |
| | | Total $ ........... |

If the policy period of the policy to which this endorsement is attached is more than one year, upon termination of each annual period of the policy the Insured, on request, will furnish the company a statement of personnel changes during the policy period and the earned premium shall be computed in accordance with the above rates. If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the company; if less, the company shall return to the Insured the unearned portion paid by such Insured.

Nothing contained herein shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ...........................................
................................... Authorized Agent

The company located these documents in its business records. At issue the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-4155-0   Printed in U.S.A.

**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 CLR ML07437**

This endorsement forms a part of the policy as numbered above,
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
STOREKEEPERS' LIABILITY INSURANCE

---

It is agreed that the "Persons Insured" provision is amended to include as an *insured* the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the *named insured*, and subject to the following additional exclusions:

The insurance does not apply:

1. to any *occurrence* which takes place after the *named insured* ceases to be a tenant in said premises;

2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums Bodily Injury Liability | Property Damage Liability |
|---|---|---|---|
| 3400 Third Ave. Foster City, CA. | San Mateo Bay Building Associates | Incl. | Incl. |
| 1270 Market St. Bensenville, Il. and | John G. Twist Co. | | |
| any other premises upon which the named insured is required in a written agreement to provide insurance on behalf of the lessor and of which the company is notified within thirty (30) days of the execution of said written agreement | | | |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by ..............................................................

*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-3025-0  Printed in U.S.A.  (ISO: GL 20 11 07 66)

HART000443

**BROAD FORM PROPERTY
DAMAGE ENDORSEMENT**
(Including Completed Operations)

**THE HARTFORD**

**10 CLR ML0743W**

Named Insured and Address

This endorsement forms a part of Policy No. ...............................................
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ...........................................................Effective hour is the
same as stated in the Declarations of the Policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

---

**Classification:   99981**

It is agreed that the insurance for *property damage* liability applies, subject to the following additional provisions:

A.   The exclusions relating to *property damage* to (1) property owned, occupied or used by or rented to the *insured* or in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control and (2) work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (y) and (z):

   (y)   to *property damage*

     (1)   to property owned or occupied by or rented to the *insured*, or, except wtih respect to the use of *elevators*, to property held by the *insured* for sale or entrusted to the *insured* for storage or safekeeping,

     (2)   except with respect to liability under a written sidetrack agreement or the use of *elevators* to

       (a)   property while on premises owned by or rented to the *insured* for the purpose of having operations performed on such property by or on behalf of the *insured*,

       (b)   tools or equipment while being used by the *insured* in performing his operations,

       (c)   property in the custody of the *insured* which is to be installed, erected or used in construction by the *insured*,

       (d)   that particular part of any property, not on premises owned by or rented to the *insured*,

         (i)   upon which operations are being performed by or on behalf of the *insured* at the time of the *property damage* arising out of such operations, or

         (ii)   out of which any *property damage* arises, or

         (iii)   the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the *insured*;

   (z)   with respect to the *completed operations hazard* and with respect to any classification stated above as "including completed operations", to *property damage* to work performed by the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

B.   The insurance afforded by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the *insured*, such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition is amended accordingly.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Countersigned by.................................................
*Authorized Agent*

**Form L-3252-2**   Printed in U.S.A.   (NS)

Named Insured and Address

This endorsement forms a part of Policy No. **10 CLR ML0743W**
issued by THE HARTFORD INSURANCE GROUP company desig-
nated therein, and takes effect as of the effective date of said policy
unless another effective date is stated herein.

Effective date.................................................12:01 A. M., standard time at the address of the *named insured*
as stated herein.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

---

It is agreed that:

**Applicable to New Jersey**

1. The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply

   a. to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

   b. to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured*, or if the *named insured* is a partnership or joint venture, any partner or member thereof.

**Exclusion C is deleted**

It is further agreed that:

1. Such insurance as is afforded under Coverage A with respect to *bodily injury*, is extended to apply to *personal injury* as defined herein, subject to the following additional provisions:

   1. This insurance does not apply

      a. to liability for *personal injury* assumed by the *insured* under any contract or agreement;

      b. to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

      c. ██████████████████████████████████████████████████████████████████████████

      d. to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

      e. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

      f. to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

   2. When used in reference to this insurance

      a. "personal injury" means:

         1. injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory*.

      b. "personal injury offense" means:

         1. false arrest, detention or imprisonment, or malicious prosecution,
         2. libel, slander, defamation, disparagement or violation of an individual's right of privacy, or
         3. wrongful entry or eviction or other invasion of the right of private occupancy.

   3. The Limits of Liability section is amended in the following respect:

      The total liability of the company for all damages because of all *personal injury* to which this policy applies, shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless counter-signed by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, counter-signature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid counter-signature of this endorsement.



**THE HARTFORD**

Form L-3355-1   Printed in U. S. A.  (NS)

Countersigned by .............................................................
                                                    *Authorized Agent*

The company located these documents in its
business records. At this time, the company
does not certify that these documents are
a complete and accurate copy of the policy.

**Amendment — Limits of Liability
(Single Limit)**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10  CLR  ML0743W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date .............................................................Effective hour is the
same as stated in the Declarations of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

| | |
|---|---|
| COMPREHENSIVE GENERAL LIABILITY INSURANCE | — (Coverage Part "CGL") |
| COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE | — (Coverage Part "CO/PR") |
| MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE | — (Coverage Part "MC") |
| OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE | — (Coverage Part "OLT") |
| CONTRACTUAL LIABILITY INSURANCE | — (Coverage Part "K") |
| OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE | — (Coverage Part "OCP") |

**SCHEDULE**

The limit of the company's liability against the following coverages, as afforded under the provisions of each Coverage Part designated by symbol herein, shall be as stated herein, subject to all the terms of this endorsement and the policy having reference thereto.

| Coverages | Coverage Parts | Limits of Liability |
|---|---|---|
| Bodily Injury Liability and Property Damage Liability | "CGL" "K" | $1,000,000 each occurrence |
| | "CGL" "K" | $1,000,000 aggregate — Division 1 |
| | | $ ,000 aggregate — Division 2 |
| Bodily Injury Liability and Property Damage Liability | | $ ,000 each occurrence |

**Division 1** — Applicable to damages because of **bodily injury** and **property damage** as specified in paragraph (b) in the "Limits of Liability" provision of this endorsement.

**Division 2** — Applicable to damages because of all **bodily injury** and **property damage** as stated in paragraph (c) in the "Limits of Liability" provision of this endorsement.

It is agreed that, with respect to each of the Coverage Parts designated in the Schedule of this endorsement, the "Limits of Liability" provision thereof is amended to read as follows:

**LIMITS OF LIABILITY**

Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage,** (3) claims made or suits brought on account of **bodily injury** or **property damage** or (4) **automobiles** or **mobile equipment** to which this policy applies, the company's liability is limited as follows:

**Bodily Injury Liability and Property Damage Liability Coverage**

(a)   The limit of liability stated in the Schedule of this endorsement as applicable to "each **occurrence**" is the total limit of the company's liability under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of **bodily injury,** including damages for care and loss of services, and all **property damage** as the result of any one **occurrence;** provided that, with respect to any one **occurrence** for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

application of such limit shall not increase the total limit of the company's business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000446

(b)  The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 1**", subject to provision (a) hereof respecting "each **occurrence**", the total liability of the company under any **Coverage Part** designated in the Schedule with respect to such stated limit of liability for all damages because of all **bodily injury** and **property damage** which is included in any of the numbered subparagraphs below and, in subparagraph (3), with respect either to the **bodily injury** or **property damage**, or to the **bodily injury** and **property damage** (within one or both the hazards identified therein) for which insurance is actually afforded under at least one such Coverage Part:

(1)  all **property damage** arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including **property damage** for which liability is assumed under any **incidental contract** relating to such premises or operations, but excluding **property damage** included in subparagraph (2) below;

(2)  all **property damage** arising out of and occurring in the course of operations performed for the **named insured** by independent contractors and general supervision thereof by the **named insured**, including any such **property damage** for which liability is assumed under any **incidental contract** relating to such operations, but this subparagraph (2) does not include **property damage** arising out of maintenance or repairs at premises owned by or rented to the **named insured** or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3)  all **bodily injury** and **property damage** included within the **completed operations hazard** and all **bodily injury** and **property damage** included within the **products hazard;**

(4)  all **property damage** for which liability is assumed under any contract, other than an **incidental contract,** to which the Contractual Liability Insurance, if afforded, applies.

Such "aggregate — **Division 1**" limit shall apply separately:

(i)  to the **property damage** included in subparagraphs (1) and (2) and separately with respect to each project away from premises owned by or rented to the **named insured;**

(ii)  to the sum of the damages for all **bodily injury** and **property damage** included in subparagraph (3) and for which insurance, if any, is afforded as stated in paragraph (b) above;

(iii)  to the **property damage** included in subparagraph (4) and separately with respect to each project away from premises owned by or rented to the **named insured.**

(c)  The limit of liability, if any, stated in the Schedule of this endorsement as "aggregate — **Division 2**" is, subject to provision (a) hereof respecting "each **occurrence**", the total liability of the company under all Coverage Parts designated in the Schedule with respect to such stated limit of liability for all damages because of all **bodily injury** and **property damage.**

(d)  For the purpose of determining the limit of the company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence.**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by..........................................................................................
*Authorized Agent*

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form L-4152-0 (NS)                                            Page 2

HART000447

**THE HARTFORD**

Named Insured and Address.

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date | Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

**Comprehensive General Liability Insurance**

**Contractual Liability Insurance**

**Assault and Battery**

**It is agreed that the definition of Occurrence is amended by**

**adding thereto the following:**

**"Bodily Injury or Property caused for**

**the purpose of protecting persons or property**

**shall be deemed neither expected nor intended**

**from the standpoint of the Insured."**

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by.............................................................

Authorized Agent

Form G-2240-3 B   Printed in U S A

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy

HART000448

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |

Endt. No.

### Comprehensive General Liability Insurance

### Incidental Malpractice

It is Agreed that:

1. The definition of "Bodily Injury" is amended to include injury arising out of the rendering of or failure to render professional services by any physician, dentist or nurse while employed by the Named Insured to provide such services.

2. Exclusion (J) does not apply to injury to the emotions or reputation of a person arising out of the rendering of such services.

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B   Printed in U S A

Countersigned by ........................................................
                                                    Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy

**THE HARTFORD**

Named Insured and Address

| Policy Number |
| --- |
| **10 CLR ML0743W** |

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
| --- | --- |

Endt. No.

### Comprehensive General Liability Insurance
### Contractual Liability Insurance
### Premises Medical Payments Insurance

#### Knowledge and Notice of Occurrence

It is agreed that knowledge of an occurrence by an agent, servant or employee of the insured, shall not constitute knowledge to the insured unless an executive officer of the Named Insured corporation or other persons employed by it in a managerial capacity shall have received such notice.

It is agreed that if the insured reports an occurrence to its workers' compensation carrier which develops into a liability claim failure to report such occurrence to the company at the time of occurrence shall not be deemed in violation of Condition 4 "Insured's Duties in the Event of Occurrence, Claim or Suit".

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B    Printed in U S A

Countersigned by: .......................................................
                                          Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000450

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

Effective Date | Effective hour is the same as stated in the Declarations of the policy.

Endt. No.

**Comprehensive General Liability Insurance
Contractual Liability Insurance
Premises Medical Payments Insurance**

**Notice of Cancellation**

It is agreed that in the event of cancellation of the policy

by the company for any reason other than non-payment of premium,

thirty (30) days prior written notice thereof will be furnished

to the Named Insured.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B   Printed in U S A

Countersigned by

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of this policy.

**THE HARTFORD**

Named Insured and Address

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
|---|---|

Endt. No.

**Comprehensive General Liability Insurance**
**Contractual Liability Insurance**
**Premises Medical Payments Insurance**

**Unintentional Errors or Omissions**

It is agreed that failure of the insured to disclose all hazards existing as of the inception date of the policy shall not prejudice the insured with respect to the coverage afforded by this policy, provided such failure or any omissions is not intentional.

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement

Form G-2240-3 B    Printed in U.S.A

Countersigned by .................................................
Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000452

**Supplementary Coverage Endorsement**
**Personal Injury and Additional Insured**
**(Employees)**

**THE HARTFORD**

Named Insured and Address

This endorsement forms a part of Policy No. **10 CLR ML0743W**
issued by THE HARTFORD INSURANCE GROUP company designated
therein, and takes effect as of the effective date of said policy unless
another effective date is stated herein.

Effective date ................................................... 12:01 A.M., standard time
at the address of the *named insured* as stated herein.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE

**Applicable to Illinois, California and Florida**

Insured's Participation _____ **None** %

It is agreed that:                              **Exclusion "C" Deleted**

I.   The insurance afforded under the Coverage for Bodily Injury Liability is extended to apply to damages because of *personal injury*, subject to the following additional provisions:

1.   This extended insurance does not apply:

   (a)  to liability for *personal injury* assumed by the *insured* under any contract or agreement;

   (b)  to *personal injury* arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any *insured*;

   (c)  to *personal injury* sustained by any person as the result of an offense directly or indirectly related to the employment of such person by the *named insured*;

   (d)  to *personal injury* arising out of libel, slander, defamation, disparagement or violation of an individual's right of privacy, if the first publication or utterance of the same or similar material giving rise to the offense was made prior to the effective date of this insurance;

   (e)  to *personal injury* arising out of any publication or utterance of defamatory or disparaging material concerning any person, organization or business enterprise, or his or its products or services, made by or at the direction of any *insured* with knowledge of the falsity thereof;

   (f)  to *personal injury* arising out of any publication or utterance of defamatory or disparaging material or material violating an individual's right of privacy made in the course or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the *named insured*.

2.   When used in reference to this insurance:

   "*personal injury*" means injury sustained by any person or organization and arising out of a *personal injury offense* committed during the policy period within the *policy territory*;

   "*personal injury offense*" means (a) false arrest, detention or imprisonment, or malicious prosecution; (b) libel, slander, defamation, disparagement or violation of an individual's right of privacy; or (c) wrongful entry or eviction or other invasion of the right of private occupancy.

3.   The "Limits of Liability" provision is amended by adding the following thereto:

   The total liability of the company for all damages because of all *personal injury* to which this insurance applies shall not exceed the amount stated in the Schedule as the limit of *bodily injury* liability and as applicable to "each occurrence".

   With respect to any claim because of *personal injury*, the company shall not be liable for a greater proportion of any loss than the difference between the participation percentage, if any, stated above and one hundred percent, and the balance of the loss shall be borne by the *insured*; provided the company may pay the *insured's* portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the *named insured* shall promptly reimburse the company therefor.

II.  The "Persons Insured" provision is amended to include as an *insured* any employee of the *named insured* while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

   (1)  to *bodily injury* or *personal injury* to (a) another employee of the *named insured* arising out of or in the course of his employment or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof;

   (2)  to *property damage* to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the *named insured*, or (b) the *named insured* or, if the *named insured* is a partnership or joint venture, any partner or member thereof.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by ...........................................
                                              *Authorized Agent*

Form L-3591-0  Printed in U.S.A.  (NS)

HART000453

# Comprehensive General Liability Insurance Coverage Part

2nd Approved Quality Control.

Confidential Report

Und/Notes:

This Coverage Part forms a part of Policy No. .......**10 CLR ML0743W**....................................issued by THE HARTFORD INSURANCE GROUP Company designated therein, and takes effect as of the effective date of said policy unless otherwise stated herein.

*(For use only if this Coverage Part is effective after the effective date of the Policy)*

This Coverage Part is effective..........................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to ...........................................

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

**The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.**

| Coverages | Advance Premiums | Limits of Liability |
|---|---|---|
| A — Bodily Injury Liability | $  Included | $  As Per  ,000 each occurrence |
|  |  | $  Endt.  ,000 aggregate |
| B — Property Damage Liability | $  Included | $ L 4152-0 ,000 each occurrence |
|  |  | $  ,000 aggregate |

| Rating Classifications. Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Premium Bases | Rates B.I. | Rates P.D. | Advance Premiums B.I. | Advance Premiums P.D. |
|---|---|---|---|---|---|---|
| (a) Premises — Operations |  | (a) Area (b) Frontage (c) Remuneration (d) Receipts | (a) Per 100 Sq. Ft. of Area (b) Per Linear Foot (c) Per $100 of Remun. (d) Per $100 of Receipts |  |  |  |
| (b) Escalators |  | (e) Landings | (e) Per Landing |  |  |  |
| (c) Independent Contractors |  | (f) Cost | (f) Per $100 of Cost |  |  |  |
| (d) Completed Operations |  | (g) Receipts | (g) Per $1,000 of Receipts |  |  |  |
| (e) Products |  | (h) Sales | (h) Per $1,000 of Sales |  |  |  |

A)  As per Premium Computation Endt.

C)  As per Premium Computation Endt.

D)  As per Premium Computation Endt.

E)  As per Premium Computation Endt.

Form Numbers of Endorsements forming part of this Coverage Part at issue:

G 2240 3B (List)

| | TOTAL ADVANCE PREMIUMS | $ Incl. | $ Incl. |
|---|---|---|---|

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $ ........   1st Anniversary $ ........   2nd Anniversary $ ........

The conditions and provisions printed on pages CGL-2 and CGL-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by .......................................

Authorized Agent

Form L-3503-1  CDR  Printed in U.S.A.  (ISO: GL 00 02 01 73)     CGL-1

COMPANY COPY

HART000454

ATTACH FORMS ALONG THIS MARGIN BELOW THIS MARK +

COPY

Case 2:20-cv-09741-BRM-SDA   Document 63-33   Ind. Appeal 1/1 Confidential Page 572 of 612
PageID: 5992   Quality Control   Report

## 10 CLR ML0743W

This Coverage Part forms a part of Policy No. .......................................................................issued by THE HARTFORD INSURANCE GROUP
Company designated therein, an d takes effect as of the effective date of said policy unless otherwise stated herein.

| *(For use only if this Coverage Part is effective after the effective date of the Policy)* |
| --- |
| This Coverage Part is effective................................................................(at the hour stated in the policy) and forms a part of the above designated policy issued to.... . |

The Company, in consideration of the payment of the premium and subject to all of the provisions of the policy not expressly modified herein, agrees with the *named insured* as follows:

## SCHEDULE

The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Advance Premiums | Limits of Liability |
| --- | --- | --- |
| YB — Contractual Bodily Injury Liability | $ Included | $ As per ,000 each occurrence |
| ZB — Contractual Property Damage Liability | $ Included | $ Endt. ,000 each occurrence |
| | | $L 4152-0 ,000 aggregate |

| Designation of Contracts | Code No. | Premium Bases | Rates | | Advance Premiums | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | B. I. | P. D. | B. I. | P. D. |
| | | (a) Cost (b) Sales | (a) Per $100 of Cost (b) Per $1,000 of Sales | | | |
| All Written Agreements | As | Per | Premium | | Computation | Endorsement |

Form Numbers of Endorsements forming part of this Coverage Part at issue:

| G 2240 3B (List) | TOTAL ADVANCE PREMIUMS | $ Incl. | $ Incl. |
| --- | --- | --- | --- |

If the Policy Period is more than one year, the Premium is Payable:

On effective date of Policy $          1st Anniversary $          2nd Anniversary $

The following exclusions also apply:

☐ Exclusion (p) — Products and Completed Operations   ☐ Exclusion (q)—x, c & u

**I.   COVERAGE YB—CONTRACTUAL BODILY INJURY LIABILITY**

**COVERAGE ZB—CONTRACTUAL PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the *insured* all sums which the *insured*, by reason of *contractual liability* assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

**Coverage YB.** *bodily injury* or

**Coverage ZB.** *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any *suit* against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or *suit* as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

(1) any arbitration proceeding wherein the company is not entitled to exercise the *insured's* rights in the choice of arbitrators and in the conduct of such proceedings, or

(2) any *suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the *insured* under any *incidental contract*;

(b) (1) if the *insured* is an architect, engineer or surveyor, to *bodily injury* or *property damage* arising out of professional services performed by such *insured*, including

   (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

   (ii) supervisory, inspection or engineering services;

(2) if the indemnitee of the *insured* is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

The conditions and provisions printed on pages KB-2 and KB-3 of this form are hereby referred to and made a part hereof.

This Coverage Part shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this Coverage Part takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this Coverage Part.

Countersigned by ...............................................................
KB-1
*Authorized Agent*

Form L-3525-0   CDR   Printed in U. S. A.   (NS)

these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the

HART000455

THE HARTFORD

Named Insured and Address

Policy Number
**10 CLR ML0743W**

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated herein.

| Effective Date | Effective hour is the same as stated in the Declarations of the policy. |
| --- | --- |

Endt. No.

## Uninsured Motorists Limits

| States | Limits |
| --- | --- |
| Florida | 1,000,000 |
| Illinois | 1,000,000 |
| Kentucky | 20,000 |
| New Jersey | 35,000 |

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Form G-2240-3 B   Printed in U.S.A

Countersigned by

Authorized Agent

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000456

FRED S JAMES & CO   252170

**THE HARTFORD**

Named Insured and Address

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, N J   07647

Policy Number

10 CLR ML0743W

This endorsement forms a part of the policy as numbered above, issued by THE HARTFORD INSURANCE GROUP company designated therein, and takes effect as of the effective date of said policy unless another effective date is stated here in

Effect

Effective hour is the same as stated
in the Declarations of the policy.

E

IT IS AGREED THAT COMPREHENSIVE GENERAL LIABILITY LIMITS OF LIABILITY ARE AMENDED
TO READ 2,000,000 CSL
            REVISED PREMIUM COMPUTATION

COMPREHENSIVE GENERAL LIABILITY INSURANCE
CONTRACTUAL MEDICLL PAYMENTS INSURANCE
ERRORS & OMISSIONS INSURANCE & EMPLOYEE BENEFITS PROGRAMS —

| CODE | TOTAL SALES | RATES PER 1000 OF SALES | | | ADVANCE PREMIUMS | | |
|------|-------------|------|------|---|----------|-------|------|
|      |             | BI   | PD   |   |          | B.I.  | P.D. |
| 20050 | 35,000,000 |      |      |   |          |       |      |
|       |            | NEW 14.6763 | 1.4502 | | NEW ANNL | 513,671. | 50,757. |
|       |            |      |      |   | NEW P R  | 339,023. | 33,499. |
|       |            |      |      |   | OLD ANNL | 381,594. | 64,148. |
|       |            |      |      |   | OLD P R  | 251,852. | 42,337. |
|       |            |      |      |   | P.R.DIFF | 87,171 AP | 8,838. RP |

TOTAL A P $78,333.

Nothing herein contained shall be held to vary, waive. alter. or extend. any of the terms. conditions, agreements or declarations of the policy. other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this endorsement takes effect as of the effective date of the policy and. at issue of said policy, forms a part thereof, countersignature on the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

EXP. 10/25/86

as jb 8 12 86

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Countersigned by................................................................

Form G-2240-3 B  Printed in U.S.A

*Authorized Agent*

HART000457

ENDT # 1a

**Premium Installment**          🦌 **THE HARTFORD**

Named Insured and Address

10 CLR ML0743W

This endorsement forms a part of Policy No..............................
issued by THE HARTFORD INSURANCE GROUP company
designated therein, and takes effect as of the effective date of
said Policy unless another effective date is stated herein.

CENTRICO INC
100 FAIRWAY COURT
NORTHVALE, NJ 07647

Effective date ................ 2/26/86 .................... 12:01 A. M., standard time at the address of the
named insured as stated herein.

G L

It is hereby understood and agreed that the ......... ADDITIONAL .................................... Premium of $ .... 78,333. ..............
(Insert "original" or "additional" or "return")

will ..... BE PAYABLE IN ............ ......... THE REMAINING ...................... installments as outlined in "Schedule of Payments."
(Insert "be payable in" or "reduce the")

### SCHEDULE OF PAYMENTS

| NO. | DUE DATE OF PAYMENT | BODILY INJURY & PROPERTY DAMAGE LIABILITY EXCEPT AUTO | BODILY INJURY & PROPERTY DAMAGE LIABILITY AUTO | AUTO PHYSICAL DAMAGE | | TOTAL |
|---|---|---|---|---|---|---|
| 1 | 2/26/86 | CASH 8984 AP | – | – | | 8,984. CASH A P |
| 2 | 3/25/86 | 47,052 | 3784 | 1546 | | 52,382. |
| 3 | 4/25/86 | 47,052 | 3784 | 1546 | | 52,382. |
| 4 | 5/25/86 | 47,052 | 3784 | 1546 | | 52,382. |
| 5 | 6/25/86 | 47,052 | 3784 | 1546 | | 52,382. |
| 6 | 7/25/86 | 47,052 | 3784 | 1546 | | 52,382. |
| 7 | 8/25/86 | 47,052 | 3784 | 1546 | | 52,382. |
| 8 | 9/25/86 | 47,052 | 3784 | 1546 | | 52,382. |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| TOTALS | | 338,348 | 26,488 | 10,822 | | 375,648. |

as jb 8 12 86                                                                    EXP.10/25/8(

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the
policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company; provided that if this
endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on
the declarations page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this
endorsement.

Countersigned by ..................................................
                                                    Authorized Agent

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Form AL-57-0  Printed in U.S.A.

HART000458

# CASUALTY INSURANCE POLICY

**THE HARTFORD**

GENERAL POLICY PROVISIONS    Form 8117

The member company of **THE HARTFORD INSURANCE GROUP** designated on the Declarations page as the Insurer (a stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the *named insured* as follows:

## COVERAGE

Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the *insured* in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy,

and the cost of bail bonds required of the *insured* because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the *insured* for first aid to others at the time of an accident, for *bodily injury* to which this policy applies;

(d) reasonable expenses incurred by the *insured* at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

**"automobile"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include *mobile equipment;*

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

**"collapse hazard"** includes "structural property damage" as defined herein and *property damage* to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The *collapse hazard* does not include *property damage* (1) arising out of operations performed by the *named insured* by independent contractors, or (2) included within the *completed operations hazard* or the *underground property damage hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract;*

**"completed operations hazard"** includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured*. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The Hartford records this. Actual size of the company document. This is not, in fact, an entire and complete and accurate copy of the policy.

(a) operations in connection with the transportation of property, unless the *bodily injury* or *property damage* arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

**"elevator"** means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an *automobile* servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

**"explosion hazard"** includes *property damage* arising out of blasting or explosion. The *explosion hazard* does not include *property damage* (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the *named insured* by independent contractors, or (3) included within the *completed operations hazard* or the *underground property damage hazard*, or (4) for which liability is assumed by the *insured* under an *incidental contract*;

**"incidental contract"** means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) *elevator* maintenance agreement;

**"insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

**"mobile equipment"** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the

tained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

**"named insured"** means the person or organization named in Item 1. of the declarations of this policy;

**"named insured's products"** means goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"named insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured;*

**"policy territory"** means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the *bodily injury* or *property damage* does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of *bodily injury* or *property damage* arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

**"products hazard"** includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others;

**"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period;

**"underground property damage hazard"** includes underground property damage as defined herein and *properly damage* to any other property at any time resulting therefrom. "Underground property damage" means *property damage* to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The *underground property damage hazard* does not include *property damage* (1) arising out of operations performed for the *named insured* by independent contractors, or (2) included within the *completed operations hazard*, or (3) for which liability is assumed by the *insured* under an *incidental contract*.

## DESCRIPTION OF TERMS USED AS PREMIUM BASES

When used as a premium basis for:

(a) Comprehensive General Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance, **"admissions"** means the total number of persons, other than employees of the *named insured*, admitted to the event covered by the insurance or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(b) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance; Owners' and Contractors' Protective Liability Insurance, **"cost"** means the total cost to the *named insured* with respect to operations performed for the *named insured* during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(c) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance; Owners', Landlords' and Tenants' Liability Insurance or Completed Operations and Products Liability Insurance, **"receipts"** means the gross amount of money charged by the *named insured* for such operations during the policy period by the *named insured* or by others during the policy period as are rated on a receipts basis other than receipts from television, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;

(d) Comprehensive General Liability Insurance; Manufacturers' and Contractors' Liability Insurance or Owners', Landlords' and Tenants' Liability Insurance which includes coverage for structural alterations, new construction and demolition operations, **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the *named insured*, other than chauffeurs (except operators of *mobile equipment*) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

The busi... does... a complete and accurate copy of the policy.

The ... Institute ...

HART000460

(e) Comprehensive General Liability Insurance or Completed Operations and Products Liability Insurance, *"sales"* means the gross amount of money charged by the *named insured* or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the *named insured* and such others collect as a separate item and remit directly to a governmental division;

(f) Contractual Liability Insurance, *"cost"* means the total cost to any indemnitee, with respect to any contract which is insured, of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or the subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;

(g) Garage Insurance, *"remuneration"* means (a) the entire remuneration earned during the policy period by each Class A employee and each Class C employee of the *named insured*, subject to an average weekly maximum of $100, and (b) the remuneration of each Class B person at a fixed amount of $2,000 per annum with respect to Dealer Risks (Hazard 1) or $5,200 per annum with respect to Non-Dealer Risks (Hazard 2)

*"Class A"* means all clerical office employees

*"Class B"* means all proprietors and officers active in the business, and inactive proprietors or officers (other than an inactive proprietor or officer who is a spouse of an active proprietor or officer) who customarily drive an *automobile*

man-agers and Products Liability Insurance, *"sales"* means the officers, service managers and chauffeurs

*"Class C"* means all other employees;

(h) Comprehensive Automobile Liability Insurance,

(1) *"cost of hire"* means the amount incurred for (a) the hire of *automobiles*, including the entire remuneration of each employee of the *named insured* engaged in the operation of such *automobiles* subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of *"cost of hire"* shall be 5% of the applicable *hired automobile* rates, provided the owner of such *hired automobile* has purchased *automobile* Bodily Injury Liability and Property Damage Liability insurance covering the interest of the *named insured* on a direct primary basis as respects such *automobile* and submits evidence of such insurance to the *named insured;*

(2) *"Class 1 persons"* means the following persons, provided their usual duties in the business of the *named insured* include the use of *non-owned automobiles*: (a) all employees, including officers, of the *named insured* compensated for the use of such *automobiles* by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the *named insured;*

(3) *"Class 2 employees"* means all employees, including officers, of the *named insured*, not included in Class 1 persons.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This exclusion modifies the provisions of the policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARM-ERS COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to *bodily injury* or *property damage*

(1) with respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the *insured* is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

C. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material*, if

(1) the *nuclear material* (a) is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured* or (b) has been discharged or dispersed therefrom;

(2) the *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

(3) the *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear*

*facility*, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

II. As used in this exclusion:

*"hazardous properties"* include radioactive, toxic or explosive properties;

*"nuclear material"* means *source material, special nuclear material* or *byproduct material;*

*"source material", "special nuclear material"*, and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"waste"* means any waste material (1) containing *byproduct material* and (2) resulting from the operation by any person or organization of any *nuclear facility* included within the definition of *nuclear facility* under paragraph (a) or (b) thereof;

*"nuclear facility"* means

(a) any *nuclear reactor,*

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing *spent fuel*, or (3) handling, processing or packaging *waste,*

(c) any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste,*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"property damage"* includes all forms of radioactive contamination of property.

Form 8117                                   3

**1. Premium** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured*, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the *named insured*.

The *named insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

**2. Inspection and Audit** The company shall be permitted but not obligated to inspect the *named insured's* property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *named insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The company may examine and audit the *named insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Financial Responsibility Laws** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for *bodily injury* liability or for *property damage* liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**4. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

**5. Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the *insured* to determine the *insured's* liability, nor shall the company be impleaded by the *insured* or his legal representative. Bankruptcy or insolvency of the *insured* or of the *insured's* estate shall not relieve the company of any of its obligations hereunder.

**6. Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer bas paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights.

**8. Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

**9. Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the *named insured* shall die, such insurance as is afforded by this policy shall apply (1) to the *named insured's* legal representative, as the *named insured*, but only while acting within the scope of his duties as such, and (2) with respect to the property of the *named insured*, to the person having proper temporary custody thereof, as *insured*, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy** If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

**11. Cancellation** This policy may be cancelled by the *named insured* by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the *named insured* at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the company shall be equivalent to mailing.

If the *named insured* cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12. Declarations** By acceptance of this policy, the *named insured* agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its President and a Secretary, but the same shall not be binding unless countersigned on the declarations page by a duly authorized agent of the company.

Michael S. Wilder, *Secretary*

Donald R. Frahm, *President*

HART000462

reproduced from the aggregated electronic form in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of

**FORM C-2015
DECLARATIONS —
BUSINESS AUTO POLICY (Continued)**

 **THE HARTFORD**

## ITEM THREE — DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

**SYMBOL**                                    **DESCRIPTION**

1      =    **ANY AUTO**

2      =    **OWNED AUTOS ONLY**  Only those **autos you** own (and for liability coverage any **trailers you** don't own
            while attached to power units **you** own)  This includes those **autos** whose ownership **you** acquire after the
            policy begins

3      =    **OWNED PRIVATE PASSENGER AUTOS ONLY**  Only the private passenger **autos you** own  This includes
            those private passenger autos whose ownership **you** acquire after the policy begins

4      =    **OWNED AUTOS OTHER THAN PRIVATE PASSENGER AUTOS ONLY**  Only those **autos you** own which are
            not of the private passenger type (and for liability coverage any **trailers you** don't own while attached to
            power units **you** own)  This includes those **autos,** not of the private passenger type, whose ownership
            **you** acquire after the policy begins

5      =    **OWNED AUTOS SUBJECT TO NO-FAULT**  Only those **autos you** own for which **you** are required to have
            No-Fault Benefits in the state where they are licensed or principally garaged  This includes those **autos**
            whose ownership **you** acquire after the policy begins provided **you** are required to have No-Fault Benefits
            in the state where they are licensed or principally garaged

6      =    **OWNED AUTOS SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW**  Only those **autos you**
            own for which, because of the law in the state where they are licensed or principally garaged **you** are
            required to have and cannot reject uninsured motorists insurance  This includes those **autos** whose own-
            ership **you** acquire after the policy begins provided they are subject to the same state uninsured motorists
            requirement

7      =    **SPECIFICALLY DESCRIBED AUTOS**  Only those **autos** described in **ITEM FOUR** for which a premium
            charge is shown (and for liability coverage any **trailers you** don't own while attached to any power unit
            described in **ITEM FOUR).**

8      =    **HIRED AUTOS ONLY**  Only those **autos you** lease, hire, rent or borrow  This does not include any **auto
            you** lease, hire, rent or borrow from any of **your** employees or members of their households

9      =    **NONOWNED AUTOS ONLY**  Only those **autos you** do not own, lease, hire or borrow which are used in
            connection with **your** business  This includes **autos** owned by your employees or members of their
            households but only while used in **your** business or **your** personal affairs

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

Includes copyrighted material of Insurance Services office with its permission  Copyright, Insurance Services Office  1977,1979

(Continued on Form C 2016)

HART000463

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Stated Amount — Physical Damage Insurance

**THE HARTFORD**

HOW WE WILL PAY FOR LOSSES — THE MOST WE WILL PAY is changed to read:

1.  At **our** option **we** may:

    a.  Pay for, repair or replace damaged or stolen property; or

    b.  Return the stolen property at **our** expense. **We** will pay for any damage that results to the **auto** from the theft.

2.  The most **we** will pay for **loss** is the smallest of the following amounts:

    a.  The actual cash value of the damaged or stolen property at the time of **loss.**

    b.  The cost of repairing or replacing the damaged or stolen property with other of like kind or quality.

    c.  The stated amount, if any, shown

        (1)  in the "Schedule of Covered Autos You Own" as "Dollar Limit";

        (2)  in the form, "Physical Damage Insurance — Hired Autos" as a limit (if this form is made a part of this policy).

3.  For each covered **auto, our** obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any COMPREHENSIVE COVERAGE deductible shown in the Declarations does not apply to **loss** caused by fire or lightning.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**Form C-3006-0**  Printed in U.S.A. (NS)

HART000464

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Changes in Policy**
**Temporary Substitute Autos;**
**Autos Owned by Partners;**
**Who is Insured**

 **THE HARTFORD**

A. **"PART II — WHICH AUTOS ARE COVERED AUTOS"** is changed by adding the following:

   D. **TEMPORARY SUBSTITUTE AUTOS**

   Any **auto you** do not own while used as a temporary substitute for an **auto you** do own is a covered **auto** for the same LIABILITY INSURANCE and UNINSURED MOTORISTS INSURANCE as is provided by the policy for the **auto you** do own, but only if that owned **auto** is out of normal use because of its breakdown, repair, servicing, **loss** or destruction.

   E. **AUTOS OWNED BY PARTNERS**

   If **you** are a partnership, no **auto** owned by any of **your** partners or members of their households is a covered **auto** for the LIABILITY INSURANCE unless the policy is endorsed to cover that **auto** as a covered **auto** and the proper premium is charged.

B. **If your policy is a Garage Policy the following additional changes are made:**

   (1) **"WHO IS AN INSURED"** of **"PART IV — LIABILITY INSURANCE"** is changed as follows:

   The following is added after section b. of part 2, **"For Garage Operations Other Than Covered Autos"**:

   c. Any partner of **yours** is an **insured** but only to the extent of his or her liability as **your** partner.

   (2) **"WHO IS AN INSURED"** of **"PART V — GARAGEKEEPERS INSURANCE"** is changed by adding the following after section 2:

   3. Any partner of **yours** is an **insured** but only to the extent of his or her liability as **your** partner.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Form C-3023-0  Printed in U.S.A.  (NS)

CA 00 01
(Ed. 01 80)

# BUSINESS AUTO POLICY

In return for the payment of the premium and subject to all the terms of this policy, **we** agree with **you** as follows:

## PART I - WORDS AND PHRASES WITH SPECIAL MEANING - READ THEM CAREFULLY

The following words and phrases have special meaning throughout this policy and appear in **boldface type** when used:

**A.** **"You"** and **"your"** means the person or organization shown as the named insured in ITEM ONE of the declarations.

**B.** **"We," "us"** and **"our"** mean the Company providing the insurance.

**C.** **"Accident"** includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage** the **insured** neither expected nor intended.

**D.** **"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include **mobile equipment.**

**E.** **"Bodily injury"** means bodily injury, sickness or disease including death resulting from any of these.

**F.** **"Insured"** means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to **our** limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.

**G.** **"Loss"** means direct and accidental damage or loss.

**H.** **"Mobile equipment"** means any of the following type of land vehicles:

**1.** Specialized equipment such as: Bulldozers; Power shovels; Rollers, graders or scrapers; Farm machinery; Cranes; Street sweepers or other cleaners; Diggers; Forklifts; Pumps; Generators; Air Compressors; Drills; Other similar equipment.

**2.** Vehicles designed for use principally off public roads.

**3.** Vehicles maintained solely to provide mobility for such specialized equipment when permanently attached.

**4.** Vehicles not required to be licensed.

**5.** Autos maintained for use solely on **your** premises or that part of roads or other accesses that adjoin **your** premises.

**I.** **"Property damage"** means damage to or loss of use of tangible property.

**J.** **"Trailer"** includes semitrailer.

## PART II - WHICH AUTOS ARE COVERED AUTOS

**a.** ITEM TWO of the declarations shows the **autos** that are covered **autos** for each of **your** coverages. The following numerical symbols explained in ITEM THREE of the declarations describe which **autos** are covered **autos**. The symbols entered next to a coverage on the Declarations designate the only **autos** that are covered **autos**.

**B.** **OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS**

**1.** If symbols "1", "2", "3", "4", "5" or "6" are entered next to a coverage in ITEM TWO, then **you** already have coverage for **autos** of the type described until the policy period.

**2.** But, if symbol "7" is entered next to a coverage in ITEM TWO, an **auto you** acquire will be a covered **auto** for that coverage only if:

**a.** **We** already insure all **autos** that **you** own for that coverage or it replaces an **auto you** previously owned that had that coverage; and

**b.** **You** tell **us** within 30 days after you acquire it that **you** want **us** to insure it for that coverage.

**C.** **CERTAIN TRAILERS AND MOBILE EQUIPMENT.**
If the policy provides liability insurance, the following types of vehicles are covered **autos** for liability insurance:

**1.** **Trailers** with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** **Mobile equipment** while being carried or towed by a covered **auto.**

## PART III - WHERE AND WHEN THIS POLICY COVERS

**We** cover **accidents** or **losses** which occur during the policy period:

**A.** In the United States of America, its territories or possessions, Puerto Rico or Canada; or

**B.** While the covered auto is being transported between any of these places.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 00 01  (Ed. 01 80)

Copyright, Insurance Services Office, Inc., 1977, 1979

HART000466

## PART IV - LIABILITY INSURANCE

**A. WE WILL PAY.**

1. **We** will pay for sums the **insured** must legally must pay as damaged because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

2. **We** have the right and duty to defend any suit asking for these damages. However, **we** have no duty to defend suits for **bodily injury** or **property damage** not covered by this policy. **We** may investigate and settle any claim or suit as **we** consider appropriate. Our payment of the LIABILITY INSURANCE limit ends our duty to defend or settle.

**B. WE WILL ALSO PAY.**

In addition to **our** limit of liability, we will pay for the **Insured:**

1. Up to $250 for cost of bail bonds (including bonds for related traffic law violations) required because of an **accident, we** cover. **We** do not have to furnish these bonds.

2. Premium on appeal bonds in any suit **we** defend.

3. Premiums on bonds to release attachments in a suit **we** defend but only for bonds up to our limit of liability.

4. All costs taxed to the **insured** in a suit **we** defend.

5. All interest accruing after the entry of the judgment in a suit **we** defend. **Our** duty to pay interest ends when we pay or tender **our** limit of liability.

6. Up to $50 a day for loss of earnings (but not other income) because of attendance at hearings or trials at **our** request.

7. Other reasonable expenses incurred at **our** request.

**C. WE WILL NOT COVER - EXCLUSIONS.**

This insurance does not apply to:

1. Liability assumed under any contract or agreement.

2. Any obligation for which the **insured** or his or her insurer may be held liable under any workers' compensation or disability benefits law or under any similar law.

3. Any obligation of the **insured** to indemnify another for damages resulting from **bodily injury** to the **insured's** employee.

4. **Bodily injury** to any fellow employee of the **insured** arising out of and in the course of his or her employment.

5. **Bodily injury** to any employee of the **insured** arising out of and in the course of his or her employment by the **insured.** However, this exclusion does not apply to **bodily injury** to domestic employees not entitled to workers' compensation benefits.

6. **Property damage** to property owned or transported by the insured or in the **insured's** care, custody or control.

7. **Bodily injury** or **property damage** resulting from the handling of property:

   a. Before it is moved from the place where it is accepted by the **insured** for movement into or onto the covered **auto,** or

   b. After it is moved from the covered **auto** to the place where it is finally delivered by the **insured.**

8. **Bodily injury** or **property damage** resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered **auto.**

9. **Bodily injury** or **property damage** caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental.

**D. WHO IS AN INSURED**

1. **You** are an **insured** for any covered **auto.**

2. Anyone else is an **insured** while using with **your** permission a covered **auto** you own, hire or borrow except:

   a. The owner of a covered **auto you** hire or borrow from one of **your** employees or member of his or her household.

   b. Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours.**

   c. Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto.**

3. Anyone liable for the conduct of an **insured** described above is an **insured** but only to the extent of that liability. However, the owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 00 01**  (Ed. 01 80)

Copyright, Insurance Services Office, Inc., 1977, 1979

HART000467

**E. OUR LIMIT OF LIABILITY.**

**1.** Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident,** the most **we** will pay for all damages resulting from any one **accident** is the LIABILITY INSURANCE limit shown in the declarations.

**2.** All **bodily injury** and **property damage** resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one **accident.**

**F. OUT OF STATE EXTENSIONS OF COVERAGE.**

**1.** while a covered **auto** is away from the state where it is licensed **we** will:

**a.** Increase this policy's liability limits to meet those specified by a compulsory or financial responsibility law in the jurisdiction where the covered **auto** is being used.

**b.** Provide the minimum amounts and types of other coverages, such as "No-Fault", required of out of state vehicles by the jurisdiction where the covered **auto** is being used.

**2.** We will not pay anyone more than once for the same elements of loss because of these extensions.

## PART V - PHYSICAL DAMAGE INSURANCE

**A. WE WILL PAY.**

**1.** **We** will pay for **loss** to a covered **auto** or its equipment under:

**a. Comprehensive Coverage.** From any cause except the covered **auto's** collision with another object its overturn.

**b. Specified Causes of Loss Coverage.** Caused by:

**(1)** Fire or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism;

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered **auto.**

**c. Collision Coverage.** Caused by the covered **auto's** collision with another object or its overturn.

**2. Towing.**

We will pay up to $25 for towing and labor costs incurred each time a covered **auto** of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**B. WE WILL ALSO PAY.**

**We** will also pay up to $10 per day to a maximum of $300 for transportation expense incurred by **you** because of the total theft of a covered **auto** of the private passenger type. **We** will pay only for those covered **autos** for which **you** carry either Comprehensive or Specified Perils Coverage. **We** will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered **auto** is returned to use or **we** pay for its **loss.**

**C. WE WILL NOT COVER - EXCLUSIONS.**

This insurance does not apply to:

**1.** Wear and tear, freezing, mechanical or electrical breakdown unless caused by other **loss** covered by this policy.

**2.** Blowouts, punctures or other road damage to tires unless caused by other **loss** covered by this policy.

**3.** **Loss** caused by declared or undeclared war insurrection or any of their consequences.

**4.** **Loss** caused by the explosion of a nuclear weapon or its consequences.

**5.** **Loss** caused by radioactive contamination

**6.** **Loss** to tape decks or other sound reproducing equipment not permanently installed in a covered auto.

**7.** **Loss** to tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

**8.** **Loss** to any sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the **auto** manufacturer for the installation of a radio.

**D. HOW WE WILL PAY FOR LOSSES - THE MOST WE WILL PAY.**

**1.** At **our** option **we** may:

**a.** Pay for, repair or replace damaged or stolen property; or

**b.** Return the stolen property, at our expense. **We** will pay for any damage that results to the **auto** from the theft.

**2.** The most we will pay for loss is the smaller of the following amounts:

**a.** The actual cash value of the damaged or stolen property at the time of **loss.**

**CA 00 01** (Ed. 01 80)

Copyright, Insurance Services Office, Inc., 1977, 1979

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000468

**b.** The cost or repairing or replacing the damaged or stolen property with other of like kind or quality.

**3.** For each covered **auto**, **our** obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the declarations. Any Comprehensive Coverage deductible shown in the declarations does not apply to **loss** caused by fire or lightning.

**E. GLASS BREAKAGE - HITTING A BIRD OR ANIMAL - FALLING OBJECTS OR MISSILES.**

**We** will pay for glass breakage, **loss** caused by hitting a bird or animal or by falling objects or missiles under Comprehensive Coverage if **you** carry Comprehensive Coverage for the damaged covered **auto**. However, you have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

---

## PART VI - CONDITIONS

The insurance provided by this policy is subject to the following conditions:

**A. YOUR DUTIES AFTER ACCIDENT OR LOSS.**

**1.** **You** must promptly notify **us** or **our** agent of any **accident** or **loss**. **You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the named and address of any injured persons and witnesses.

**2.** Additionally, **you** and any other involved **insureds** must:

  **a.** Cooperate with **us** in the investigation, settlement or defense of the claim or suit. No **insured** shall, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expense.

  **b.** Immediately send **us** copies of any notices or legal paper received in connection with the **accident** or **loss.**

  **c.** Submit to **our** expense and as often as **we** require to physical examinations by physicians we select.

  **d.** Authorize **us** to obtain medical records and other pertinent information.

**3.** Additionally, to recover for **loss** to a covered **auto** or its equipment **you** must do the following:

  **a.** Permit **us** to inspect and appraise the damaged property before its repair or disposition.

  **b.** Do what is reasonably necessary after **loss** at **our** expense to protect the covered **auto** from further **loss.**

  **c.** Submit a proof of **loss** when required by **us.**

  **d.** Promptly notify the police if the covered **auto** or any of its equipment is stolen.

**B. OTHER INSURANCE**

**1.** For any covered **auto you** own this policy provides primary insurance. For any covered **auto you** don't own, the insurance provided by this policy is excess over any other collectible insurance. However, while a covered **auto** which is a **trailer** is connected to another vehicle the liability coverage this policy provides for the **trailer:**

  **a.** Is excess while it is connected to a motor vehicle **you** don't own.

  **b.** Is primary while it is connected to a covered **auto you** own.

**2.** When two or more policies cover on the same basis, either excess or primary, **we** will pay only **our** share. **Our** share is the proportion that the limit of **our** policy bears to the total of the limits of all the policies covering on the same basis.

**C. OUR RIGHT TO RECOVER FROM OTHERS.**

If **we** make any payment, **we** are entitled to recover what **we** paid from other parties. Any person to or for whom **we** make payment must transfer to **us** his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

**D. CANCELLING THIS POLICY DURING THE POLICY PERIOD.**

**1.** **You** may cancel the policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

**2.** **We** may cancel the policy by mailing **you** at least 10 days notice at **your** last address known by **us**. **We** may deliver any notice instead of mailing it. Proof of mailing of any notice will be sufficient proof of notice.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, Inc., 1977, 1979

HART000469

4. If this policy is cancelled, **you** may be entitled to a premium refund. If so, **we** will send **you** the refund. However, making or offering to make the refund is not a condition of cancellation. If **you** cancel, the refund, if any, will be computed in accordance with the customary short rate procedure. If **we** cancel, the refund, if any, will be computed pro rata.

## E. LEGAL ACTION AGAINST US.

No legal action brought against **us** until there has been full compliance with all the terms of this policy. In addition, under LIABILITY INSURANCE, no legal action may be brought against **us** until **we** agree in writing that the **insured** has an obligation to pay or until the amount of that obligation has been finally determined by judgment after trial. No person or organization has any right under this policy to bring **us** into any action to determine the liability of the **insured**.

## F. INSPECTION.

At **our** option **we** may inspect **your** property and operations at any time. These inspections are for **our** benefit only. By **our** right to inspect or by **our** making any inspection **we** make no representation, that **your** property or operations are safe, no harmful to health or comply with any law, rule or regulation.

## G, CHANGES.

This policy contains all the agreements between **you** and **us.** Its terms may not be changed or waived except by endorsement issued by **us.** If a change requires a premium adjustment, **we** will adjust the premium as of the effective date of change. If **we** revise this policy form to provide more coverage without additional premium charge **your** policy will automatically provide the additional coverage as of the day the revision is effective in **your** state.

## H. TRANSFER OF YOUR INTEREST IN THIS POLICY.

**Your** rights and duties under this policy may not be assigned without **our** written consent.

## I. NO BENEFIT TO BAILEE - PHYSICAL DAMAGE INSURANCE ONLY.

**We** will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

## J. BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve **us** of any obligations under this policy.

## K. APPRAISAL FOR PHYSICAL DAMAGE LOSSES

1, If **you** and **we** fail to agree as to the amount of **loss** either may demand an appraisal of the **loss.** In such event, **you** and **we** shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall state separately the actual cash value and amount of **loss,** and failing to agree, shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. **You** and **we** shall each pay the chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

2. **We** shall not be held to have waived any of **our** rights by any act relating to appraisal.

## L. TWO OR MORE POLICIES ISSUED BY US

If this policy and any other policy issued to **you** by **us** or any company affiliated with **us** apply to the same **accident,** the aggregate maximum limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy. This condition does not apply to any policy issued by **us** or an affiliated company specifically to apply as excess insurance over this policy.

**CA 00 01** (Ed. 01 80)

Copyright, Insurance Services Office, Inc., 1977, 1979

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000470



CA 01 20
(Ed. 03 80)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## CHANGES IN POLICY—ILLINOIS

For a covered **auto** licensed or principally garaged in, or **garage operations** conducted in, Illinois, the policy is changed as follows:

**A. CHANGES IN LIABILITY INSURANCE**

    1. OUR LIMIT OF LIABILITY applies except that **we** will apply the limit shown in the declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

        a. $15,000 for **bodily injury** to any one person caused by any one **accident,**

        b. $30,000 for **bodily injury** to two or more persons caused by any one **accident,** and

        c. $10,000 for **property damage** caused by any one **accident.**

    This provision will not change **our** total limit of liability.

**B. CHANGES IN CONDITIONS**

    1. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

    If **we** cancel, notice will be mailed to **your** last known address. **We** will not deliver any notice. If **we** cancel for any reason other than non-payment of premium **we** will mail **you:**

        a. At least 15 days notice when the policy is in effect less than 181 days.

        b. At least 30 days notice when the policy is in effect 181 days or more.

    2. The following Condition is added:

    NON-RENEWAL

        a. If **we** decide not to renew or continue this policy **we** will mail **you** at least 30 days notice before the end of the policy period. If **we** offer to renew or continue and **you** do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

        b. If **we** fail to mail proper notice and **you** obtain other insurance this policy will end on the effective date of that insurance.

        c. Any notice of non-renewal will be mailed to **you** at **your** last known address. Proof of mailing of any notice shall be sufficient proof of notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.



CA 01 28
(Ed. 10 82)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT IS APPLICABLE TO "B" ONLY.

## CHANGES IN POLICY—FLORIDA

A. For a covered **auto** licensed or principally garaged in Florida, PHYSICAL DAMAGE INSURANCE is changed as follows:

1. No deductible applies to **loss** to glass used in the windshield.

2. All other PHYSICAL DAMAGE INSURANCE provisions will apply.

B. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

If **we** cancel for any reason other than nonpayment of premium **we** will mail **you** at least 45 days notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 01 28 (Ed. 10 82)

HART000472



CA 02 24
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN POLICY — CANCELLATION

A. CANCELLING THIS POLICY DURING THE POLICY PERIOD applies except as follows:

   1. If we cancel the policy we will mail notice to any lienholder shown in the policy.

   2. If we cancel for any reason other than nonpayment of premium we will mail you and any lienholder shown in the policy at least 30 days notice.

B. The following Condition is added:

   **NON-RENEWAL**

   1. If we decide not to renew or continue this policy we will mail you and any lienholder shown in this policy notice at least 30 days before the end of the policy period.

   2. If we fail to mail proper notice of non-renewal and you have failed to pay any required premium when due this policy will terminate at the end of the current policy period.

   3. Any notice of non-renewal will be mailed to your last known address. However, we may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 02 24 (Ed. 01 78)        Copyright, Insurance Services Office, 1977

HART000473

CA 21 01
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CHANGES IN UNINSURED MOTORISTS INSURANCE

This endorsement is applicable in the states of AR., KY., & LA.

The insured shall not be required to arbitrate disputed claims.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, 1977

HART000474

CA 21 14
(Ed. 01 84)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED AND UNDERINSURED MOTORISTS INSURANCE
## (NEW JERSEY)

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED AND UNDERINSURED MOTORISTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Property damage,"** as used in this endorsement, means damage to a covered **auto** or to any property of an **insured** while contained in a covered **auto.**

4. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy applies at the time of an **accident,** or

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   c. Which, with respect to damages for **bodily injury** only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits, or causes an **accident** resulting in **bodily injury** without hitting:

      **(1.) you** or any **family member;**

      **(2.)** a vehicle which **you** or any **family member** are **occupying;** or

      **(3.) your** covered **auto.**

5. **"Underinsured motor vehicle"** means a land motor vehicle or trailer for which a liability bond or policy applies at the time of an **accident** but its limit for liability is less than the limit of this insurance.

However, an **"uninsured motor vehicle"** or **"underinsured motor vehicle"** does not include any vehicle:

1. Owned by or furnished or available for the regular use of **you** or any **family member.**

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not upon public roads.

6. While located for use as a residence or premises.

**B. WE WILL PAY**

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured** or **underinsured motor vehicle.** The damages must result from **bodily injury** sustained by the **insured,** or **property damage** caused by an **accident.** The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured** or **underinsured motor vehicle.**

2. If this insurance provides a limit in excess of the amounts required by the New Jersey Financial Responsibility Law, **we** will pay only after all liability bonds or policies have been exhausted by judgements or payments.

**C. WE WILL NOT COVER—EXCLUSIONS**
This insurance does not apply to:

1. With respect to an **uninsured motor vehicle,** any claim settled without **our** consent.

2. Non-economic loss for **bodily injury** caused by an **accident** involving an **uninsured motor vehicle,** unless the injured person has sustained an injury or incurred the medical expenses described under the tort option that applies in accordance with the New Jersey no-fault law.

3. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

4. The direct or indirect benefit of any insurer of property.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. **Property damage** for which the **insured** has been or is entitled to be compensated by other property or physical damage insurance.

7. The first $250 of the amount of **property damage** to the property of each **insured** as the result of any one **accident.**

---

**CA 21 14** (Ed. 01 84)　　　　Copyright, Insurance Services Office, Inc., 1983　　　　**Page 1 of 2**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000475

8. **Property damage** caused by a hit-and-run vehicle.

## D. WHO IS INSURED

1. **You** or any **family member.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured.**

## E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident,** the limit of liability shown in the Declarations for Uninsured Motorists Insurance is the most **we** will pay for all damages resulting from any one **accident** with an **uninsured motor vehicle** or an **underinsured motor vehicle.**

2. Any amount payable under this insurance shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount payable under this insurance for economic loss shall be reduced by any personal injury protection benefits paid or payable, or which would be paid or payable except for the application of a deductible.

4. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

## F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED and UNDERINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured and/or underinsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send **us** copies of the legal papers if a suit is brought.

3. OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

   If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for us and pay **us** back the amount **we** have paid.

4. The following Condition is added:

   **ARBITRATION**

   a. If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

Copyright, Insurance Services Office, Inc., 1983   CA 21 14 (Ed. 01 84)

The company located these documents in its records. The company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000476

© 1982

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE
## (ILLINOIS)

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE (ILLINOIS):

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

    a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

    b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

    c. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is occupying.

    However, **"uninsured motor vehicle"** does not include any vehicle:

    a. Owned or operated by a self-insurer under any applicable motor vehicle law.

    b. Owned by a governmental unit or agency.

    c. Designed for use mainly off public roads while not on public roads.

**B. WE WILL PAY**

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

**C. WE WILL NOT COVER—EXCLUSIONS**

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.

**E. OUR LIMIT OF LIABILITY**

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

    **We** will apply the limit shown in the declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

    a. $15,000 for **bodily injury** to any one person caused by any one **accident**, and

    b. $30,000 for **bodily injury** to two or more persons caused by any one **accident**.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000477



This provision will not change our total limit of liability.

2. Any amount payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

## F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send us copies of the legal papers if a suit is brought.

3. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

4. The following Conditions are added:

   **REIMBURSEMENT**

   If we make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

## ARBITRATION

a. If we and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, then the disagreement will be settled in accordance with the rules of the American Arbitration Association. However, if the **insured** requests, we and the **insured** will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the **insured's** request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the **insured's** recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law. If this occurs, the **insured** will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the **insured's** recovery exceeds the statutory minimum.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 21 30**  (Ed. 05 82)

HART000478

CA 21 47
(Ed. 05 85)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE (FLORIDA)

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE (FLORIDA):

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy applies at the time of an **accident,** or

   b. Which is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle for which the sum of all liability bonds or policies at the time of an **accident** provides a limit that is less than the amount an **insured** is legally entitled to recover as damages caused by the **accident,** or

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured,** a covered **auto** or a vehicle an **insured** is **occupying.**

   However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

   d. Owned by or furnished or available for the regular use of **you** or any **family member.**

**B. WE WILL PAY**

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle.** The damages must result from **bodily injury** sustained by the **insured** caused by an **accident.** The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle.**

2. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us.**

**C. WE WILL NOT COVER—EXCLUSIONS**

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit or any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured.**

**E. OUR LIMIT OF LIABILITY**

1. Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident,** the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any coverage afforded under this endorsement shall apply over and above:

   a. All sums paid by or for anyone who is legally responsible, including all sums paid or payable under the policy's LIABILITY INSURANCE, and

   b. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   c. All sums paid or payable under any no-fault coverage or automobile medical payments coverage.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000479

3. In no event will an **Insured** entitled to receive duplicate payment for the same elements of loss.

4. Any amount paid under this insurance will reduce any amount an **Insured** may be paid for the same elements of loss under the policy's LIABILITY INSURANCE.

## F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED. MOTORISTS INSURANCE (FLORIDA) as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send **us** copies of the legal papers if a suit is brought.

3. OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for **us** and pay **us** back the amount we have paid.

4. The following Condition is added:

ARBITRATION

a. If **we** and an **Insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to the arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 21 47 (Ed. 05 85)    Copyright, Insurance Services Office, Inc., 1985    Page 2 of 2



CA 22 10
(Ed. 08 83)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT
### (FLORIDA)

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

The Company agrees with the **named insured,** subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

The insurance for PERSONAL INJURY PROTECTION is subject to a deductible of $ _____ applicable to ☐ the following **named insured** only:

_____

☐ each **named insured** and each dependent **relative.**

☐ **Work loss** for **named insured** does not apply

☐ **Work loss** for **named insured** and dependent **relative** does not apply

☐ Coverage reduced by military benefits for **named insured** and dependent **relative**

### SECTION I
### PERSONAL INJURY PROTECTION

The Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law to or for the benefit of the injured person:

    (a) 80% of **medical expenses,** and

    (b) 60% of **work loss,** and

    (c) **replacement services expenses,** and

    (d) funeral, burial or cremation expenses,

incurred as a result of **bodily injury,** caused by an **accident** arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

    (1) the **named insured** or any **relative** while **occupying** a **motor vehicle** or, while a pedestrian through being struck by a **motor vehicle;** or

    (2) any other person while **occupying** the **insured motor vehicle** or, while a **pedestrian,** through being struck by the **insured motor vehicle.**

**Exclusions**

This insurance does not apply:

    (a) to the **named insured** or any **relative** while **occupying** a **motor vehicle** of which the **named insured** is the **owner** and which is not an **insured motor vehicle** under this insurance;

    (b) to any person while operating the **insured motor vehicle** without the express or implied consent of the **named insured;**

    (c) to any person, if such person's conduct contributed to his **bodily injury** under any of the following circumstances:

        (i) causing **bodily injury** to himself intentionally; or

        (ii) while committing a felony;

    (d) to the **named insured** or dependent **relative** for **work loss** if an entry in the schedule or declarations indicates such coverage does not apply;

    (e) to any **pedestrian,** other than the **named insured** or any **relative,** not a legal resident of the State of Florida;

    (f) to any person, other than the **named insured,** if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law;

    (g) to any person, other than the **named insured** or any **relative,** who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

    (h) to any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises;

The company produces these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000481



© 1983

## Limit of Liability; Application of Deductible; Other Insurance

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **bodily injury** as the result of any one **accident** shall be $10,000; provided that payment for funeral, cremation or burial expenses included in the foregoing shall in no event exceed $1,750.

Any amount payable under this insurance shall be reduced by the amount of benefits an injured person has recovered or is entitled to recover for the same elements of loss under the workmen's compensation laws of any state or the federal government or the Medicaid program.

If benefits have been received under the Florida Motor Vehicle No-Fault Law from any insurer for the same items of loss and expense for which benefits are available under this policy, the Company shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from the Company its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

The amount of any deductible stated in the schedule of this endorsement shall be deducted from the total amount of all sums otherwise payable by the Company with respect to all loss and expense incurred by or on behalf of each person to whom the deductible applies and who sustains **bodily injury** as the result of any one **accident**, and if the total amount of such loss and expense exceeds such deductible, the total limit of benefits the Company is obligated to pay shall then be the difference between such deductible amount and the applicable limit of the Company's liability. Such deductible amount shall not be applied to funeral, cremation or burial expenses.

If an entry in the schedule or declaration so indicates any amount payable under this insurance to the **named insured** or dependent **relative** shall be reduced by any benefits payable by the Federal Government to active or retired military personnel and their dependent relatives. If such benefits are not available at the time of loss the Company shall have the right to recompute and charge the appropriate premium.

## Definitions

When used in reference to this Section:

**"bodily injury"** means bodily injury, sickness or disease, including death at any time resulting therefrom;

**"medical expense"** means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

**"named insured"** means the person or organization named in the declarations of the policy and if an individual, shall include the spouse if a resident of the same household;

**"motor vehicle"** means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle;

a **"motor vehicle"** does not include:

    (a) a mobile home; or

    (b) any motor vehicle which is used in mass transit or public school transportation and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit or public school transportation authority, or a political subdivision of the state.

**"occupying"** means in or upon or entering into or alighting from;

**"insured motor vehicle"** means a **motor vehicle:**

    (a) of which the **named insured** is the **owner,** and

    (b) with respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law and

    (c) for which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a motor vehicle;

**"relative"** means a person related to the **named insured** by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as the **named insured;**

**"pedestrian"** means a person while not an occupant of any self-propelled vehicle;

**"owner"** means a person or organization who holds the legal title to a **motor vehicle,** and also includes:

    (a) a debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement, and

    (b) a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

The German Insurance House documents in its possession or custody of this Insurance Company does not in any way or means or form its constitute a complete and accurate copy of the policy.

CA 22 10 (Ed. 08 83)

HART000482



© 1983

(c) a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

"**work loss**" means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

"**replacement services expenses**" means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household.

**Policy Period; Territory**

The insurance under this Section applies only to accidents which occur during the policy period ·

(a) in State of Florida; and

(b) as respects the **named insured** or **a relative,** while **occupying** the **insured motor vehicle** outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c) as respects the **named insured,** while **occupying a motor vehicle** of which **a relative** is the **owner** and for which security is maintained under the Florida Motor Vehicle No-Fault Law outside the State of Florida but within the United States of America, its territories or possessions or Canada.

**Conditions**

**1. Notice.** In the event of an accident, written notice of the loss must be given to the Company or any of its authorized agents as soon as practicable.

If any injured person or his legal representative shall institute legal action to recover damages for **bodily injury** against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such injured person or his legal representative.

**2. Action Against the Company.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance; nor until 30 days after the required notice of accident and reasonable proof of claim has been filed with the Company.

**3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld.** As soon as practicable, the person making claim shall give to the

company written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the company in determining the amount due and payable. Such person shall submit to mental or physical examinations at the company's expense when and as often as the company may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination the company will not be liable for subsequent personal injury protection benefits. Whenever a person making claim is charged with committing a felony the company shall withhold benefits until at the trial level the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**4. Reimbursement and Subrogation.** Unless prohibited by the Florida Motor Vehicle No-Fault Law and in the event of payment to or for the benefit of any injured person under this insurance:

(a) the Company shall be reimbursed to the extent of such payment, exclusive of reasonable attorneys' fees and other reasonable expenses, out of the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made and the Company shall have a lien on such proceeds to such extent;

(b) the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(c) the company providing personal injury protection benefits on a private passenger **motor vehicle,** as defined in the Florida Motor Vehicle No-Fault Law shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial **motor vehicle,** as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while **occupying,** or while a **pedestrian** through being struck by, such commercial **motor vehicle.**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

CA 22 10 (Ed. 08 83)

HART000483



**5. Special Provision for Rented or Leased Vehicles.** Notwithstanding any provision of this coverage to the contrary, if a person is injured while **occupying,** or through being struck by, a **motor vehicle** rented or leased under a rental or lease agreement which does not specify otherwise in bold type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

<div align="center">

**SECTION II**
</div>

## MODIFICATION OF POLICY COVERAGES

Any automobile medical payments insurance and any uninsured motorists insurance afforded by the policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits have been exhausted, any medical payments insurance afforded by the policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expenses benefits contained in Section I, but shall not be payable for the amount of the deductible selected.

<div align="center">

**SECTION III**
</div>

## PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the **named insured** pursuant to Section 12 (2) (e) of the Florida Motor Vehicle No-Fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the **named insured** shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000484

CA 22 16
(Ed. 10 84)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION ENDORSEMENT (KENTUCKY)

The Company agrees with the **named insured** subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

### SECTION I

### PERSONAL INJURY PROTECTION COVERAGE

The Company will pay, in accordance with Kentucky Revised Statutes Chapter 304, Sub Title 39, personal injury protection benefits for:

(a) **medical expense,**

(b) **work loss,**

(c) **replacement services loss,**

(d) **survivor's economic loss,**

(e) **survivor's replacement services loss,** and

(f) **funeral expense**

incurred with respect to **bodily injury** sustained by an **eligible injured person** and caused by an accident arising out of the operation, maintenance or use of a **motor vehicle** as a vehicle.

**Exclusions**

This coverage does not apply:

(a) to **bodily injury** sustained by the **named insured** or any **relative** while **occupying** any **motor vehicle** owned by the **named insured** which is not an **insured motor vehicle;**

(b) to **bodily injury** sustained by any **relative** while **occupying** any **motor vehicle** owned by such **relative** with respect to which the security required by the Kentucky Revised Statutes Chapter 304, Sub Title 39, is not in effect;

(c) to **bodily injury** sustained by the **named insured** or any **relative**, who has not rejected his tort limitation pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, while **occupying** or while a **pedestrian** through being struck by, any **motor vehicle**, other than the **insured motor vehicle**, with respect to which the security required under the Kentucky Revised Statutes Chapter 304, Sub Title 39, is in effect unless the provider of such security fails to make payment for loss within 30 days of reasonable proof of the fact and the amount of loss sustained;

(d) to **bodily injury** sustained by any person if such injury arises from his conduct within the course of a business of repairing, servicing or otherwise maintaining **motor vehicles** unless such conduct occurs off the business premises;

(e) to **bodily injury** sustained by any person arising from conduct in the course of loading or unloading any **motor vehicle** unless such conduct occurs while **occupying** such **motor vehicle;**

(f) to **bodily injury** sustained by any person other than the **named insured** or any **relative** which arises from the operation, maintenance or use of a **motor vehicle** without a good faith belief that he is legally entitled to do so;

(g) to any benefits any person would otherwise be entitled to receive hereunder for **bodily injury** intentionally caused by such person or arising out of his intentionally attempting to cause **bodily injury**, and, if any person dies as a result of intentionally causing or attempting to cause **bodily injury** to himself, his survivors are not entitled to any **survivor's economic loss** or **survivor's replacement services loss** benefits;

(h) to **bodily injury** sustained by any **pedestrian**, other than the **named insured** or any **relative**, outside the Commonwealth of Kentucky;

(i) to **bodily injury** sustained by any person, other than the **named insured** or any **relative** while **occupying** a **motor vehicle** which is regularly used in the course of the business of transporting persons or property and which is one of five or more **motor vehicles** under common ownership, or a **motor vehicle** owned by a government other than the Commonwealth of Kentucky, its political subdivisions, municipal corporations, or public agencies, if the accident occurs outside the Commonwealth of Kentucky.

(j) to **bodily injury** sustained by any person arising out of the use of any **motor vehicle** while located at a residence or premises;

(k) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(l) to **bodily injury** resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

(m) to **bodily injury** sustained by any person while **occupying** a motorcycle.

**Definitions**

When used in reference to this coverage:
"**bodily injury**" means bodily harm, sickness, disease, or death;

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000485

**"eligible injured person"** mea

(a) the **named insured** or any **relative** who sustains **bodily injury** while **occupying** or while a **pedestrian** through being struck by any **motor vehicle,** provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an **eligible injured person,** unless personal injury protection coverage has subsequently been purchased for such person under this policy, or

(b) any other person who sustains **bodily injury** while **occupying** or while a **pedestrian** through being struck by the **insured motor vehicle,** provided that, if such person has rejected the limitation upon his tort rights pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39, he shall not be an **eligible injured person,**

however, any rejection of tort limitations applicable solely to motorcycles shall not affect the status of any person as an **eligible injured person** with respect to any **motor vehicle** other than a motorcycle;

**"funeral expense"** means reasonable charges incurred for expenses in any way related to funeral, cremation or burial;

**"insured motor vehicle"** means a **motor vehicle** with respect to which:

(a) the **bodily injury** liability insurance of the policy applies and for which a specific premium is charged, and

(b) the **named insured** is required to maintain security under the provisions of Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"medical expense"** means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, and other remedial treatment and care, any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing, and any healing arts professions of a type licensed by the Commonwealth of Kentucky, provided that medical expense shall not include that portion of a charge for a room in a hospital, clinic, convalescent or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge for semi-private accommodations, unless intensive care is medically required;

**"motor vehicle"** means a vehicle as defined in Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"named insured"** means the person or organization named in the declarations;

**"occupying"** means in or upon, entering into or alighting from;

**"pedestrian"** means a person who is not **occupying** a **motor vehicle** at the time the injury occurs;

**"relative"** means the spouse and any person related to the **named insured** by blood, marriage, or adoption including a minor in the custody of the **named insured,** spouse or such related person who is a resident of the same household as the **named insured,** whether or not temporarily residing elsewhere, but does not include any such person who is a **named insured** under any other policy providing the security under Kentucky Revised Statutes Chapter 304, Sub Title 39;

**"replacement services loss"** means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the **eligible injured person** would have performed, not for income, but for the benefit of himself or his family if he had not been injured;

**"survivor"** means a person identified in Kentucky Revised Statutes Section 411.130 as one entitled to receive benefits by reason of the death of another person;

**"survivor's economic loss"** means loss after the **eligible injured person's** death of contributions of things of economic value to his **survivors,** not including services they would have received from the **eligible injured person** had he not suffered the fatal injury, less expenses of the **survivors** avoided by reason of the **eligible injured person's** death;

**"survivor's replacement services loss"** means expenses reasonably incurred by **survivors** after the **eligible injured person's** death in obtaining ordinary and necessary services in lieu of those the **eligible injured person** would have performed for their benefit had he not suffered the fatal injury, less expenses of the **survivors** avoided by reason of the **eligible injured person's** death and not subtracted in calculating **survivor's economic loss;**

**"work loss"** means loss of income from work the **eligible injured person** would probably have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him.

### Policy Period; Territory

This coverage applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

### Limits of Liability

Regardless of the number of persons insured, policies or approved plans of self-insurance applicable, claims made or **insured motor vehicles** to which this coverage applies, the Company's liability for personal injury protection benefits with respect to **bodily injury** sustained by any one **eligible injured person** in any one **motor vehicle** accident shall not exceed $10,000 in the aggregate, and subject to such aggregate limit:

The company located these documents in its business records. At this time, the company does not know whether these documents constitute a complete and accurate copy of the policy.

HART000486

1. the maximum amount payable for **work loss, replacement services loss, survivor's economic loss,** and **survivor's replacement services loss** shall not exceed $200 per week in the aggregate prorated for any lesser period, provided that if the **eligible injured person's** earnings or work are seasonal or irregular, the weekly limit shall be equitably adjusted or apportioned on an annual basis;

2. the maximum amount payable for **funeral expense** shall not exceed $1,000.

Any amount payable by the Company under the terms of this coverage shall be reduced by any applicable deductible set forth in the declarations, but only with respect to **bodily injury** sustained by the **named insured** or any **relative,** provided that, if two or more such persons sustain **bodily injury** in the same **motor vehicle** accident, such deductible applicable to all of them shall not exceed such deductible amount and such amount shall be allocated equally among them. Provided further that, a **named insured** or **relative** is entitled to receive under this coverage the difference between this deductible and a greater deductible applicable under another policy applying to personal injury protection coverage pursuant to Kentucky Revised Statutes Chapter 304, Sub Title 39.

In calculating loss or expense for which personal injury protection benefits are payable under this coverage, a reduction shall be made in the amount of:

1. all benefits or advantages a person receives or is entitled to receive from social security (excluding benefits under Medicare and Medicaid) and workmen's compensation, unless these benefits or advantages have not been received before personal injury protection benefits are overdue or the claim is paid.

2. any income tax saving resulting from benefits or advantages received for loss of income under this coverage or from like benefits or advantages received under social security or workmen's compensation which are not considered taxable income, provided that the maximum reduction may not exceed 15% of the loss of income and shall be in lesser amount if the claimant furnishes to the Company reasonable proof of a lower value of the income tax advantage.

**Conditions**

A. **Action Against Company.** No action shall lie against the Company unless as a condition precedent thereto, there shall have been full compliance with all the terms of this coverage.

B. **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the **eligible injured person,** and also reasonably obtainable informaton respecting the time, place and circumstances of the accident shall be given by or on behalf of each **eligible injured person** to the Company or any of its authorized agents as soon as practicable.

C. **Medical Reports; Proof of Claim.** As soon as practicable, the **eligible injured person** or someone on his behalf shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the **bodily injury,** treatment and rehabilitation received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The **eligible injured person** shall submit to physical and mental examination by physicians selected by the Company when and as often as the Company may reasonably require.

D. **Subrogation.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of any payment under this coverage, the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

E. **Reimbursement and Trust Agreement.** Subject to the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39, in the event of the payment to any person under this coverage:

1. the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the **bodily injury** because of which such payment is made, and the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such **bodily injury,** his agent, his insurer or a court having jurisdiction in the matter;

2. such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such **bodily injury;**

3. such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; and

4. such person shall execute and deliver to the Company instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute an accurate copy of the policy.

**F. Non-Duplication of Benefits; Other Insurance. Priority of Payments; Other Insurance.** No **eligible injured person** shall not recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved self-insurance plans. In the event an eligible injured person has other similar insurance, including approved self-insurance plans, available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this coverage and such other insurance.

### SECTION II

In consideration of the coverage afforded under Section I and the adjustment of applicable rates:

(a) any amount payable under the uninsured motorists coverage shall be excess insurance over any personal injury protection benefits paid or payable under this or any other automobile insurance policy because of **bodily injury** sustained by an **eligible injured person;**

(b) any automobile medical payments or expense coverages afforded under this policy shall be excess insurance over any personal injury protection benefits paid or payable but for the application of a deductible under this or any other automobile insurance policy because of **bodily injury** sustained by an **eligible injured person.**

The **eligible injured person** shall not recover duplicate benefits for the same elements of loss.

### SECTION III
**Constitutionality Clause.**

The premium for and the coverages of the policy have been established in reliance upon the provisions of the Kentucky Revised Statutes Chapter 304, Sub Title 39. In the event a court of competent jurisdiction declares, or enters a judgment the effect of which is to render, the provisions of such statutes invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy and the provisions of this endorsement shall be voidable or subject to amendment at the option of the Company.

**Notice to Policyholders.**

Acceptance of the coverage described in Kentucky Revised Statutes Chapter 304, Sub Title 39, places some limitations on your right to bring suit for **bodily injury,** KRS 304.39-060 reads in part:

"(1) Any person who registers, operates, maintains or uses a **motor vehicle** on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such **motor vehicle** and use of the public roadways, be deemed to have accepted the provisions of this Act, and in particular those pro-

visions which are contained in this section.

(2)(a) Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a **motor vehicle** is 'abolished' for damages because of **bodily injury,** sickness or disease to the extent the basic reparation benefits provided in this Act are payable therefor, or that would be payable but for any deductible authorized by this Act, under any insurance policy or other method of security complying with the requirements of this Act, except to the extent non-economic detriment qualifies under subsection (2)(b) hereof.

(b) In any action of tort brought against the owner, registrant, operator or occupant of a **motor vehicle** with respect to which security has been provided as required in this Act, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of **bodily injury,** sickness or disease arising out of the ownership, maintenance, operation or use of such **motor vehicle** only in the event that the benefits which are payable for such injury as 'medical expense' or which would be payable but for any exclusion or deductible authorized by this Act exceed $1,000.00 or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least $1,000.

(c) Tort liability is not so limited for injury to a person who is not an owner, operator, maintainer or user of a **motor vehicle** within subsection (1) of this section.

(3) Any person may refuse to consent to the limitations of his tort rights and liabilities as contained in this section. Such rejection must be in writing in a form to be prescribed by the Department of Insurance and must have been executed and filed with the Department at a time prior to any **motor vehicle** accident for which such rejection is to apply...".

These are some of the exceptions to the limitations on your right to sue and are not intended to comprise a complete enumeration of all circumstances under which suit may be brought for **bodily injury.**

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000488

Any amount payable by the Company as medical expense benefits for the named Insured or any relative shall be reduced by the amount of the deductible indicated in the Schedule or in the Declarations. The deductible applies on a per accident basis regardless of the number of named Insureds and relatives injured in the accident.

The applicable limit on Income continuation benefits applies separately to each full regular and customary work week of an eligible Injured person. If his disability from work or employment consists of or includes only a part of such a week, the Company shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the partial week bears to the number of days in his full work week.

## Policy Period; Territory

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions or Canada.

## Conditions.

1. **Notice.** In the event of an accident, written notice containing particulars sufficient to identify the eligible Injured person; and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each eligible Injured person to the Company or any of its authorized agents as soon as practicable. If any eligible Injured person, his legal repesentative or survivors shall institute legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such eligible Injured person, his legal representative or his survivors.

2. **Medical Reports; Proof of Claim.** As soon as practicable the eligible Injured person or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The eligible Injured person shall submit to physical examination by physicians when and as often as the Company may reasonably require, and a copy of the medical report will be forwarded to such eligible injured person if requested.

3. **Multiple Policies Applicable to One Accident: Non-duplication of Benefits; Priority of Complying Policies.** Regardless of the number of automobiles insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act, or the number of insurers or policies affording such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregrate maximum amount payable under this and all applicable policies with respect to bodily Injury to any one person as the result of any one accident shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

   If an eligible injured person under this insurance is also an eligible injured person under other complying policies, the Company-paying benefits to such person shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid. The pro rata share is the proportion that the Company's liability bears to the total of all applicable limits. "Complying Policy" means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparations Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.

4. **Reimbursement and Trust Agreement.** Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement

   (a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily Injury because of which such payment is made; and the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such bodily Injury, his agent, his insurer or a court having jurisdiction in the matter;

   (b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily Injury;

The company located these documents in its business records. At this time, the company does not certify that these documents constitute accurate copies of the policy.

Copyright, Insurance Services Office, Inc. 1984   CA 22 30 (Ed. 08 84)

HART000489

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

5. **Payment of Personal Injury Protection Benefits.** Medical expense benefits and essential services benefits may be paid at the option of the Company to the eligible injured person or the person or organization furnishing the products or services for which such benefits are due. These benefits shall not be assignable except to providers of service benefits. In the event of the death of an eligible injured person any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the eligible injured person's estate.

Benefits payable under subdivision (1) of the definition of death benefits are payable to the eligible injured person's surviving spouse, or if there is no surviving spouse, to his surviving children, or if there are no surviving spouse or surviving children, to the eligible injured person's estate.

Benefits payable under subdivision (2) of the definition of death benefits are payable to the person who has incurred the expense of providing essential services.

Funeral expense benefits are payable to the eligible injured person's estate.

6. **Deletion Of Benefits Other Than Medical Expenses.** When the Schedule or Declarations indicate that the Deletion Of Benefits Other Than Medical Expenses option applies, the Company will pay basic personal injury protection benefits consisting only of medical expense benefits for the named insured and relative.

7. **Reimbursement Setoff.** When the Schedule or Declarations indicate that the Reimbursement Setoff option applies, and the named insured or any relative recovers for non-economic loss from a tortfeasor, the Company is entitled to reimbursement for amounts it paid as Personal Injury Protection medical expense benefits. The Company's reimbursement shall not exceed 20% of the named insured's or relative's recovery for non-economic loss and the Company shall be entitled to place a lien on the award, settlement or judgment. Any amounts recovered from uninsured motorists coverage or underinsured motorists coverage shall be included in the 20% maximum.

The rights of the Company and the eligible injured person with respect to this condition are subject to the relevant provisions of the New Jersey Automobile Reparation Reform Act.

8. **Workers' Compensation Reimbursement.** If the eligible injured person fails to apply for workers' compensation benefits or employees' temporary disability benefits for which that person is eligible, the Company may immediately apply to the provider of these benefits for reimbursement of any personal injury protection benefits that it has paid.

## SECTION II
## EXTENDED MEDICAL EXPENSE
## BENEFITS COVERAGE

The Company will pay medical expense benefits not to exceed the total aggregate amount stated in the schedule and funeral expense benefits with respect to bodily injury sustained by an insured person caused by an accident occurring during the policy period within the United States of America, its territories or possessions or Canada and arising out of the ownership, maintenance or use, including loading and unloading, of an insured automobile or of a highway vehicle not owned by or furnished or available for the regular use of the named insured or any relative of the named insured.

### Exclusions

The insurance under Section II is subject to all of the exclusions applicable to Section I except exclusion (c), and the following exclusion is added:

(J) to bodily injury to any person, other than the named insured or a relative of the named insured or a resident of New Jersey, if the accident occurs outside of New Jersey.

### Definitions

The definitions under Section I apply to Section II and under Section II:

"highway vehicle" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-treads or (3) a vehicle while located for use as a residence or premises;

"insured person" means

(a) the named insured or any relative of the named insured, if the named insured or relative sustains bodily injury

(1) while occupying, using, entering into or alighting from a highway vehicle, or

(2) while a pedestrian, caused by a highway vehicle.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000490

**(b)** any other person who sustains **bodily injury** while occupying a **highway vehicle** (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such **highway vehicle** is being operated by the **named insured** or a **relative** of the named **insured** or any other person using such **highway vehicle** with the permission of the **named insured**;

**(c)** any other person who sustains **bodily injury** while occupying an **insured automobile** if such **insured automobile** is being operated by the **named insured** or a **relative** of the named **insured** or any other person using such **insured automobile** with the permission of the named **insured**.

**Conditions**

Conditions 1, 2 and 4 of Section I apply to Section II, substituting the term "**insured person**" for "**eligible injured person**" wherever it appears therein. The following additional condition applies under Section II:

Other Insurance or Benefits. This insurance does not apply to loss or expense with respect to which an **insured person** is entitled to benefits under any worker's compensation law or under Section 4 of the New Jersey Automobile Reparation Reform Act, or would be entitled to benefits under Section 4 of the Act except for the application of a deductible.

This insurance does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefor under any other automobile no-fault law or under any other automobile medical payments insurance;

**SECTION III**

**PEDESTRIAN PERSONAL INJURY PROTECTION COVERAGE**

THIS SECTION PROVIDES PERSONAL INJURY PROTECTION COVERAGE ONLY FOR **PEDESTRIANS**. WITH RESPECT TO AN **INSURED MOTOR VEHICLE** AS DESCRIBED IN THIS SECTION, PEDESTRIAN PERSONAL INJURY PROTECTION COVERAGE IS THE ONLY PERSONAL INJURY PROTECTION COVERAGE FOR THAT VEHICLE.

**A.** The Company will pay Pedestrian Personal Injury Protection benefits consisting of **medical expense benefits, income continuation benefits, essential services benefits, death benefits** and **funeral expense benefits** to an **eligible injured person** as defined in this section. For Pedestrian Personal Injury Protection Coverage, Section I is amended as follows:

**1.** Exclusions (b) and (c) do not apply.

**2.** The definition of "**eligible injured person**" is replaced by the following:

"**eligible injured person**" means a person who sustains bodily injury while a pedestrian, caused by the **insured motor vehicle** or as a result of being struck by an object propelled by or from the **insured motor vehicle**.

**3.** The following definition is added:

"**insured motor vehicle**" means a self-propelled motor vehicle designed for use principally on public roads, which is not a **private passenger automobile** and to which the liability insurance of this policy applies.

**B.** Sections II and V do not apply to Pedestrian Personal Injury Protection Coverage.

**C.** Pedestrian Personal Injury Protection Coverage applies only to accidents which occur in the State of New Jersey.

**SECTION IV**

In consideration of the insurance afforded under Sections I and II of this endorsement, and the adjustment of applicable rates because of **bodily injury** to an **eligible injured person**, any automobile medical payments coverage afforded under the policy is deleted with respect to an automobile which is an **insured automobile**.

**SECTION V**

**Premium Recomputation**

The premium for the policy is based on rates which have been reduced in accordance with Section 18 of the New Jersey Automobile Reparation Reform Act to reflect the limitations on the right to recover damages imposed by Section 8 of said Act. If a court of competent jurisdiction declares, or enters a judgment the effect of which is to render Section 8 of the Act invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy on the basis of revised rates which are subject to approval by the Commissioner of Insurance.

The company located these documents in its business records. At this time, the company identified that these documents constitute a complete and accurate copy of the policy.

Copyright, Insurance Services Office, Inc., 1984    CA 22 30 (Ed. 08 84)

HART000491



CA 2X 17
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE

### A. WORDS AND PHRASES WITH SPECIAL MEANING

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

    a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

    b. For which the sum of all liability bonds or policies at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the limit of this insurance, or

    c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

    d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is **occupying**.

However, **"uninsured motor vehicle"** does not include any vehicle:

    a. Owned or operated by a self-insurer under any applicable motor vehicle law.

    b. Owned by a governmental unit or agency.

    c. Designed for use mainly off public roads while not on public roads.

### B. WE WILL PAY

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

### C. WE WILL NOT COVER — EXCLUSIONS

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle owned by **you** or any **family member** which is not a covered **auto**.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

### D. WHO IS INSURED

1. **You** or any **family member**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.

### E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under this insurance shall be reduced by:

    a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

    b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

### F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

company's business records. Neither the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000492

a.  Promptly notify the police if a hit-and-run driver is involved, and

b.  Promptly send us copies of the legal papers if a suit is brought.

3.  OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for **us** and pay **us** back the amount **we** have paid.

4.  The following Condition is added:

**ARBITRATION**

a.  If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b.  Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

HART000493



CA 99 03
(Ed. 01 80)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AUTO MEDICAL PAYMENTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for AUTO MEDICAL PAYMENTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

**B. WE WILL PAY**

**We** will pay reasonable expenses incurred for necessary medical and funeral services to or for an **insured** who sustains **bodily injury** caused by **accident**. **We** will pay only those expenses incurred within three years from the date of the **accident**.

**C. WE WILL NOT COVER — EXCLUSIONS**

This insurance does not apply to:

1. **Bodily injury** sustained by an **insured** while occupying a vehicle located for use as a premises.

2. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by **you** or furnished or available for **your** regular use.

3. **Bodily injury** sustained by any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by or furnished or available for the regular use of any **family member**.

4. **Bodily injury** to **your** employee arising out of and in the course of employment by **you**. However, **we** will cover **bodily injury** to **your** domestic employees if not entitled to workers' compensation benefits.

5. **Bodily injury** to an **insured** while working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours**.

6. **Bodily injury** caused by declared or undeclared war or insurrection or any of their consequences.

7. **Bodily injury** to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member** while **occupying** or, while a pedestrian, when struck by any **auto**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

**E. OUR LIMIT OF LIABILITY**

Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for **bodily injury** for each **insured** injured in any one **accident** is the limit of AUTO MEDICAL PAYMENTS shown in the declarations.

**F. CHANGES IN CONDITIONS**

The CONDITIONS of the policy are changed for AUTO MEDICAL PAYMENTS INSURANCE as follows:

1. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

2. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible auto medical payments insurance.

Copyright, Insurance Services Office, 1977, 1979

The company located these documents in its business records. At this time, the company cannot certify that these documents constitute a complete and accurate copy of the policy.

HART000494

CA 99 21 01 78

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**
**(Broad Form)**

It is agreed that:

A.  The policy does not apply:

1.  Under any Liability Coverage, to **bodily injury** or **property damage**

    a.  with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    b.  resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material,** if

    a.  the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

    b.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

    c.  the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c applies only to **property damage** to such **nuclear facility** and property thereat.

B.  As used in this endorsement:

    **"hazardous properties"** include radioactive, toxic or explosive properties:

    **"nuclear material"** means **source material, special nuclear material** or byproduct material;

    **"source material"**, **"special nuclear material"**, and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

    **"waste"** means any waste material (a) containing **byproduct material** and (b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph 1 or 2 thereof;

    "**nuclear facility**" means

    1.  any **nuclear reactor,**

    2.  any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel,** or (c) handling, processing or packaging **waste**,

    3.  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    4.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,**

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    **"property damage"** includes all forms of radioactive contamination of property.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

**CA 99 21 01 78**             Copyright, Insurance Services Office,  1977

HART000495