**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., <br><br> Plaintiff, <br><br> v. <br><br> FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD FIRE INSURANCE COMPANY, WELLFLEET NEW YORK INSURANCE COMPANY (successor to ATLANTA INTERNATIONAL INSURANCE COMPANY), and CONTINENTAL INSURANCE COMPANY, <br><br> Defendants. | Case No. 2:20-cv-09741 (BRM) (ESK) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

   Before the Court is Plaintiff GEA Mechanical Equipment US, Inc.'s ("GEA Mechanical") Motion for Summary Judgment (ECF No. 57) pursuant to Federal Rule of Civil Procedure 56. Defendants Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, First State Insurance Company (collectively "Hartford"), the Continental Insurance Company ("Continental") and Wellfleet New York Insurance Company, as successor to Atlanta International Insurance Company's ("AIIC") (together, with Hartford and Continental, "Defendants") jointly-filed an Opposition and Cross-Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 58). GEA Mechanical filed a Response to Defendants' submission on October 21, 2022. (ECF No. 59.) Defendants filed a Reply in further support of their Motion on October 21, 2022. (ECF No. 60.) Having reviewed the submissions filed in connection with the

Motion[1] and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, GEA Mechanical's Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

I. **BACKGROUND**

This is an action for insurance coverage, wherein GEA Mechanical seeks indemnification from Defendants for liability GEA Mechanical incurred in connection with an underlying lawsuit, *Thornton v. Alfa Laval, Inc., et al.*, No. 17-6018, 2019 WL 6437261 (Fla. Cir. Ct. June 24, 2019) (the "Thornton Action"). Defendants, or their predecessors, issued certain primary or excess general liability policies (the "Policies") to GEA Mechanical's predecessor, Centrico, Inc. ("Centrico"),[2] covering various periods from May 15, 1979 to December 31, 1995, which are relevant to this action. (ECF No. 57-2, ¶ 1.) The parties have stipulated to key terms of the Policies.[3] (*See* ECF No. 57, Exs. 27–29.)

Generally, Defendant Hartford's Primary Policies required notice of any "occurrence"[4] to be provided "as soon as practicable." (*Id.* ¶ 31.) They further required notice of a claim or suit to

---

[1] The Court also considered the parties' submissions (ECF Nos. 71, 72) on the purported supplemental authority, *31-01 Broadway Assocs., LLC v. Travelers Cas. & Sur. Co*., 2023 WL 2518779 (App. Div. Mar. 15, 2023).

[2] The parties do not dispute that GEA Mechanical is a successor to Centrico, and therefore entitled to the same rights and obligations under the Policies as Centrico. (ECF No. 57-2 ¶ 4; ECF No. 58-3 ¶ 4.)

[3] The parties have also entered into a stipulation regarding the method for allocating indemnity costs incurred and paid by GEA Mechanical in connection with the settlement of the Thornton Action. (*Id.* ¶ 21; ECF No. 57-2, App'x 1.)

[4] There is no dispute regarding whether the circumstances of the underlying action qualified as an "occurrence" under the provisions of the relevant policies.

be provided "immediately." (*Id.*) The insured was also mandated to cooperate with the carrier, including participating in settlements, obtaining evidence, and going to trial. (*Id.*) The Excess Policies of First State, Continental and AIIC required notice of an "occurrence" or of a claim or legal proceeding "as soon as practicable" when the carrier was "reasonably likely" to be involved in said proceedings. (*Id.*) In this case, Defendants have each disclaimed coverage on the grounds that GEA Mechanical's notice of the underlying action was unreasonably late.

In March 2017, Charles and Constance Thornton filed the Thornton Action, alleging bodily harm as a result of an alleged exposure to asbestos-containing brakes and clutches contained in centrifuges or separators used to separate plasma from blood, which were sold by Centrico to Charles Thornton's employer. (*Id.* ¶¶ 7, 10.) The earliest date Charles Thornton could have been exposed to GEA Mechanical's products was May 15, 1979. (*Id.* ¶ 11.)

On or about December 4, 2018, during a court-ordered mediation, the Thorntons made a ▬▬▬ settlement demand and GEA Mechanical countered with a ▬▬▬ offer. (*Id.* ¶ 13; ECF No. 58-3 ¶¶ 12–13.) The Thorntons terminated the mediation. (*Id.*) On or about June 3, 2019, GEA Mechanical made another offer of ▬▬▬, which the Thorntons did not accept. (ECF No. 57-2 ¶ 15; ECF No. 58-3 ¶ 15.) On or about June 14, 2019, GEA Mechanical made another offer of ▬▬▬, which the Thorntons also did not accept. (*Id.* ¶ 16.) The Thornton Action went to trial in June 2019. (ECF No. 57-2 ¶ 17.) On June 17, 2019, the jury returned a verdict against GEA Mechanical in the amount of $70.1 million in compensatory damages. (*Id.* ¶ 17.) A final judgment was entered against GEA Mechanical for that amount on June 19, 2019. (*Id.*) While post-trial motions in the Thornton Action were pending, on September 24, 2019, the Thorntons and GEA Mechanical entered into a settlement agreement, wherein GEA Mechanical agreed to

3

pay ▌▌▌▌▌▌▌ in exchange for a release of all claims associated with the Thornton Action. (*Id.* ¶¶ 18–19.)

On August 5 and 6, 2019, contemporaneous with the filing of this coverage action, GEA Mechanical notified Hartford and AIIC of the Thornton Action. (*Id.* ¶ 22; ECF No. 58-3 ¶ 22.) After entry of the judgment, but prior to the settlement, GEA Mechanical provided Hartford and AIIC with information about the proceedings, and invited their participation in post-trial motions, appeals, and settlements, in which neither participated nor objected. (*Id.* ¶¶ 23-24.) However, during the same period, Hartford and Resolute Management Inc. ("Resolute"), on behalf of AIIC, denied coverage under their Policies, citing, in part, that GEA Mechanical breached the notice and cooperation provisions under their Policies. (*Id.* ¶ 25; ECF No. 58-3 ¶ 25.) GEA Mechanical did not provide notice of settlement of the Thornton Action to Continental[5] until January 7, 2020, after the settlement occurred. (ECF No. 57-2 ¶ 26.) Continental similarly denied coverage based on the late notice. (*Id.*)

As discussed, GEA Mechanical initiated this coverage action in the Superior Court of New Jersey, Law Division, on August 6, 2019 (ECF No. 1), and it was removed to this Court on July 31, 2020. GEA Mechanical filed a motion for summary judgment, seeking indemnification from Defendants for liability incurred in connection with the Thornton Action (ECF No. 57), and Defendants cross-moved for summary judgment, arguing that indemnification is barred as a matter of law by the late-notice doctrine. The Court addresses both motions below.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[5] Resolute is also the claims-handling agent for Continental. (*Id.* ¶ 27.)

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's

5

claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

6

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

**III.   DECISION**

    **A.  GEA Mechanical's *Prima Facie* Case**

GEA Mechanical argues there is no genuine issue of material fact regarding its *prima facie* case and requests this Court grant summary judgment in its favor. (ECF No. 57-1 at 10-11.) Specifically, GEA Mechanical states there is no dispute among the parties regarding: (1) the existence and key terms of the relevant Policies; (2) the Thornton Action involving damages resulting from bodily injury occurring during the relevant Policy periods; (3) GEA Mechanical's settlement of the Thornton Action in the amount of ▮▮▮▮▮▮▮▮; or (4) the appropriate allocation of the ▮▮▮▮▮▮▮▮ among Defendants. (*Id.*) Accordingly, GEA Mechanical claims it has met its

7

burden for summary judgment, and there is no genuine issue of material fact with respect to its *prima facie* case for coverage. (*Id.*) Defendants do not dispute same. The Court agrees that there is no genuine issue of material fact regarding the points set forth above. Instead, the central focus of the parties' motions, and the issue determinative to the outcome of this decision, is whether Defendants' late-notice defense is meritorious as a matter of law.

### B. Defendants' Late-Notice Defense

GEA Mechanical argues Defendants have failed to meet the high burden on insurers seeking to avoid coverage obligations based on a late-notice defense because they fail to establish GEA Mechanical: (1) gave untimely notice with respect to Defendants' Policies; and (2) failed to identify any concrete evidence of appreciable prejudice. (ECF No. 57-1 at 11–37.) Specifically, GEA Mechanical maintains Defendants AIIC, Continental and First State cannot demonstrate notice was untimely because they failed to present evidence the Thornton Action was "reasonably likely" to reach the layer of their Excess Policies. (*Id.* at 34–36.) Further, GEA Mechanical argues Defendants have failed to submit evidence that Defendants would have defeated the claims in the Thornton Action, or would have otherwise handled the litigation, trial or settlement differently had notice been provided. (*Id.* at 11–33.)

Defendants submit GEA Mechanical's claims are barred by GEA Mechanical's failure to provide notice to Defendants of the Thornton Action until after entry of the verdict and final judgment, and request denial of GEA Mechanical's summary judgment motion, and instead, judgment as a matter of law in Defendants' favor. (ECF No. 58-1 at 19–60.) Defendants argue GEA Mechanical's late notice of the occurrence and litigation constitutes "bad faith" and consequently negates the "appreciable prejudice" requirement of the standard. (*Id.* at 22–35.)

8

However, even if a showing of appreciable prejudice is required, Defendants contend they have successfully established that prong of the standard, as a matter of law. (*Id.* at 36–41.)

In opposition to Defendants' motion and in further support of its summary judgment motion, GEA Mechanical argues New Jersey law requires a factual showing of appreciable prejudice, which Defendants have failed to establish, and does not account for any presumptions or exceptions. (ECF No. 59-1 at 3-30.) GEA Mechanical also posits Defendants failed to establish the first element of the late-notice defense, claiming its notice to Defendants was timely. (*Id.* at 30–33.)

In further support of their motion, Defendants contend GEA Mechanical's claims are barred by its failure to provide notice until after a jury verdict and final judgment. (ECF No. 60 at 3–20.) Because GEA Mechanical failed to provide timely notice of the litigation to Defendants, and because Defendants were appreciably prejudiced by GEA Mechanical's failure to provide timely notice, as a matter of law, GEA Mechanical's Motion for Summary Judgment is denied, and Defendants' Motion for Summary Judgment is granted.

1. <u>Timely Notice</u>

Generally, an insurance carrier may not forfeit its coverage obligations unless there is: (1) proof of a breach of the notice provision; and (2) a likelihood of appreciable prejudice.[6] *Cooper v. Gov't Emps. Ins. Co.*, 237 A.2d 870, 874 (N.J. 1968); *Morales v. Nat'l Grange Mut. Ins. Co.*, 423 A.2d 325, 327 (N.J. Super. Ct. Law Div. Oct. 15, 1980). Notice provisions are intended to provide insurance carriers with "adequate opportunity to investigate claims," *Morales*, 423 A.2d at 329, including the opportunity to "form an intelligent estimate of its rights and liabilities, to afford it an

---

[6] The same standards apply to an alleged breach of a cooperation clause. *Hager*, 942 A.2d at 164; *Haardt v. Farmer's Mut. Fire Ins. Co. of Salem Cnty.*, 796 F. Supp. 804, 809 (D.N.J. 1992); *Prudential Prop. & Cas. Ins. Co. of N.J. v. Nardone*, 752 A.2d 859 (N.J. Sup. Ct. Law Div. 2000).

9

opportunity for investigation, and to prevent fraud and imposition upon it," *Trico Mortgage Co. v. Penn Title Ins. Co.*, 657 A.2d 890, 894 (N.J. Super. Ct. App. Div. 1995).

There are two sets of policies at issue here, with different notice requirements. First, the Hartford Primary Policies require GEA Mechanical to provide notice of an occurrence "as soon as practicable." (ECF No. 57-2 at ¶ 31a.) In the event a claim or suit is filed against the insured, the Primary Policies require notice be provided to Hartford "immediately." (*Id.*) Next, as to the Excess Policies of First State, Continental, and AIIC, each of these Excess Policies requires notice of an occurrence, defined under the Policies, that is "reasonably likely" to involve the company, "as soon as practicable." (*Id.* at ¶ 31b-d.) "[L]ike notice" is required for any claims or legal proceedings commenced on account of such occurrence. (*Id.*).

The phrase "as soon as practicable" has been interpreted by New Jersey courts to mean "within a reasonable time," which "depends on the facts and circumstances of the particular case, and is ordinarily a factual issue for resolution by the jury unless the facts are undisputed and different instances cannot reasonably be drawn therefrom." *Sagendorf v. Selective Ins. Co. of Am.*, 679 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1996) (citations omitted). A mere "lapse of time 'is not determinative.'" *Id.* at 95. In fact, "in one case[,] a delay in notification of three weeks from the accident could be deemed unreasonable under the circumstances, but in another case[,] a six-year delay in notification could create a fact question about prejudice to the carrier." *Id.* (citing *Miller v. Zurich Gen. Acc. And Liability Ins. Co.*, 115 A.2d 597, 601 (N.J. Super. Ct. App. Div. 1955); *Hatco Corp. v. W.R. Grace & Co.*, 801 F. Supp. 1334, 1371-73 (D.N.J. 1992)). The "reasonable time" standard "is only amenable to resolution by the court on summary judgment where 'the facts are undisputed and different inferences cannot reasonably be drawn therefrom.'"

10

*CSR Ltd. v. Cigna Corp.*, 2006 WL 436113, *18 (D.N.J. 2006) (quoting *Sagendorf*, 679 A.2d at 94).

It is undisputed that GEA Mechanical failed to provide notice to Defendants of the occurrence and litigation until August of 2019 and January of 2020, after trial was complete and the jury returned over a $70 million verdict. (*Id.* at ¶¶ 22, 26.) The Thornton Action had been filed in March of 2017 and proceeded to trial in June of 2019. (*Id.* at ¶¶ 7, 17.) It is clear that GEA Mechanical's failure to provide notice to its primary insurance carriers of the occurrence in this case for two-and-a-half years falls far short of the "as soon as practicable" requirement in the Primary Policies. It is even clearer that GEA Mechanical's notice to Hartford two months *after* the trial had concluded fails to constitute "immediate" notice of the legal proceedings. GEA Mechanical has failed to provide, and the Court has not found, any case law where a court has deemed notice provided after a jury verdict "reasonable." Accordingly, the Court finds GEA Mechanical breached the notice provisions set forth in the Primary Policies.

GEA Mechanical argues the analysis of whether notice was timely requires the Court to consider whether it acted reasonably and in good faith. (ECF No. 59-1 at 32-33.) The Court disagrees. The language GEA Mechanical relies upon in *Cooper* is inapplicable here. In *Cooper*, the issue concerned whether the insured-plaintiffs gave the carrier notice "as soon as practicable" where the plaintiffs were in an accident in 1962, but failed to notify the carrier of the *occurrence* until receiving notice of the resulting lawsuit two years later. 237 A.2d at 871. The Court refused to deny the plaintiffs policy protection because they acted "reasonably and in good faith" in failing to report the occurrence, which they believed to be trivial, until the resulting lawsuit was commenced. *Id.* Here, GEA Mechanical failed to give notice of the actual lawsuit for over two years, as opposed to the initial occurrence, which may or may not have resulted in a claim. The

11

lawsuit undoubtedly implicated the Primary Policies and required an immediate notification. There is no "good faith" excuse for failing to comply with those Primary Policy conditions.

This Court next considers whether GEA Mechanical violated the terms of the Excess Policies as a matter of law. GEA Mechanical was required to notify the excess carriers of both an occurrence and resulting litigation "as soon as practicable," but only those "reasonably likely" to implicate the relevant policies. Whether GEA Mechanical's notice to the excess carriers was timely depends on what point in the litigation it became "reasonably likely" that the Excess Policies would be implicated. GEA Mechanical argues notice to the excess carriers was only required upon GEA Mechanical's "likely" liability reaching more than $7.3 million.[7] (ECF No. 57-1 at 34-36.) Because the Thornton Action plaintiffs' pre-trial settlement demands never exceeded ▓▓▓▓, GEA Mechanical contends the litigation was not "reasonably likely" to implicate the excess policies prior to the entry of the $70 million verdict. (*Id.*) Conversely, Defendants argue a living mesothelioma asbestos claim, with a lone-target defendant and a plaintiff-friendly district, with a settlement demand of ▓▓▓▓ in excess of the Primary Policies' $1 million limits, unquestionably meets the "reasonably likely" standard. (ECF No. 60 at 4-5.)

While there is no clear standard set forth in the case law as to when an excess policy is "reasonably likely" to "involve" the carrier, the undisputed facts of this case clearly support Defendants' position that the Excess Policies were "reasonably likely" to be implicated by the Thornton Action well before GEA Mechanical provided notice of the occurrence and litigation. The Thornton Action was filed in March of 2017. (ECF No. 57-2 at ¶ 7.) GEA Mechanical engaged

---

[7] This number represents the amount required, based upon a post-Thornton Action allocation amongst the parties, to trigger the lowest attachment point of any Excess Policy.

in settlement discussions with the Thorntons on several occasions prior to trial, including on December 4, 2018, when the Thorntons made a ▮▮▮▮▮ settlement demand, and on June 14, 2019, when GEA Mechanical ultimately countered with a ▮▮▮▮▮ offer. (*Id.* at ¶¶ 3-6.) The Thornton Action went to trial in June 2019, and on June 19, 2019, a final judgment was entered against GEA Mechanical in the amount of $70.1 million. (*Id.* at ¶ 17.) In August 2019, GEA Mechanical notified Hartford and AIIC of the litigation. (*Id.* at ¶ 22.) Both denied coverage. (*Id.* at ¶ 25.) In September 2019, GEA Mechanical settled with the Thorntons for ▮▮▮▮▮ in exchange for the release of all claims. (*Id.* at ¶¶ 18-19.) In January 2020, GEA Mechanical provided notice to Continental. (*Id.* at ¶ 26.) Continental also denied coverage. (*Id.*)

Given the Thornton plaintiffs' ▮▮▮▮▮ demand, coupled with Defendants' last-ditch ▮▮▮▮▮ counteroffer, in the face of the Primary Policies' $1 million limit, and considering other relevant and undisputed facts of this case including the nature of injury, the failed pre-trial settlement negotiations, and an upcoming trial, it is clear to this Court that GEA Mechanical breached its notice obligations to its excess carriers, and denied them a meaningful opportunity to participate. To hold otherwise would ignore the language of the Policies and change the provision from "reasonably likely" to involve the carriers to a near certainty. Such an interpretation would be contrary to the clear language of the documents.

Further, the Court finds it notable that GEA Mechanical similarly failed to timely provide notice of the occurrence and lawsuit to its primary insurance carriers, who were thereby unable to provide a competent defense on behalf of the excess insurers. To relieve the primary insurers of their obligation to cover the costs of GEA Mechanical's late notice, but to hold the excess insurers to a different standard, who were similarly deprived of the primaries' ability to mitigate potential

damages, is inequitable. Accordingly, under the specific facts and circumstances of this case, this Court finds, as a matter of law, GEA Mechanical breached its notice obligations to Defendants.

2. Appreciable Prejudice

As for the second prong, the burden of proof for demonstrating prejudice is on the insurer, and the prejudice must be "actual," rather than speculative. *Morales*, 423 A.2d at 329. It would be "unfair" for an insured to lose insurance coverage "where there is no likelihood the insurer was prejudiced by the policy breach." *KnightBrook Ins. Co. v. Tandazo-Calopina*, 275 A.3d 474, 480 (N.J. Super. Ct. App. Div. 2022). In resolving whether "appreciable prejudice" exists, the insurer must prove: (1) "substantial rights have been irretrievably lost" by virtue of the insured's failure to notify the carrier in a timely fashion and (2) the insurer would have had a "the likelihood of success . . . defending against the accident victim's claim" had there been no breach. *Hager v. Gonsalves*, 942 A.2d 160, 163 (N.J. Super. Ct. App. Div. 2008) (quoting *Sagendorf*, 679 A.2d at 715); *KnightBrook*, 275 A.3d at 480. An insurer need only establish one of the two variables to disclaim an obligation to provide coverage. *Hager*, 942 A.2d at 169.

Under the first variable, an insurer must demonstrate "irretrievable loss of substantial rights related to coverage determinations by an insurer." *KnightBrook*, 275 A.3d at 480–81. For example, in *Hager*, the insurance carrier was appreciably prejudiced under the first variable by the insured's failure to cooperate when the breach resulted in the insurance company's inability to investigate, fact-find, and ultimately determine whether the relevant policy provided coverage to the driver of the car, whose identity was disputed. 942 A.2d at 162. Under the second variable, an insurer must show it would likely have succeeded in the defense of the personal injury claim had the insurance contract not been breached. *KnightBrook*, 275 A.3d at 482. Where a carrier can show that it was deprived of the opportunity to defend against a claim and there was some likelihood the carrier

14

would have prevailed had it been noticed properly, the carrier should not be responsible for the judgment against the insured. *Morales*, 423 A.2d at 330.

"[Not] every notice provision in an insurance setting can be discarded in favor of an 'appreciable prejudice' requirement." *Gazis v. Miller*, 892 A.2d 1277, 1282 (N.J. 2006). There is a significant difference between cases where notice was simply delayed and cases where notice was "delayed until *after* a case was tried or settled." *D'Andrea Constr. Co. v. Old Republic Gen. Ins. Co.*, BER-L-0023-13 (N.J. Super. Ct. Law Div. 2019), *aff'd*, No. 18-5126, 2020 WL 6479048 (N.J. Super. Ct. App. Div. 2020). Where an excess insurance carrier did not receive notice of a claim until seven years after the underlying accident and four years after a settlement, the New Jersey court found the "substantial delay in providing notice . . . [was] without excuse or explanation" and "it [could] not be seriously contended that there was no prejudice" to the insurer. *Id.*; *see also Am. Centennial Ins. Co. v. Warner-Lambert Co.*, 681 A.2d 1241, 1246, n.2 (N.J. Super. Ct. Law Div. 1995) (finding appreciable prejudice where the insurance carrier "irretrievably lost" its opportunity to defend the case and participate in settlement discussions when the carrier was not advised of the litigation until after a judgment was entered); *Martin v. Fireman's Fund Ins. Co.*, 2011 WL 1584333, *2 (N.J. Super. Ct. App. Div. 2011) (finding appreciable prejudice where the insured failed to notify his insurance of the accident until four years after the occurrence and until after the court entered a default judgment in the underlying action because the carrier "lost its opportunity to intervene"). This Court is not aware of any New Jersey decision refusing to find appreciable prejudice where notice was provided after the entry of a verdict, judgment or settlement.[8] *See D'Andrea*, BER-L-0023-13 ("[N]one of the prior New Jersey cases involved

---

[8] GEA Mechanical cites to instances where the Court declined to find appreciable prejudice when notice was provided after *default* judgments, which are decidedly different than final judgments, and further still, from the facts and circumstances of this case.

15

notice delayed until after a case was tried or settled."). However, courts in other jurisdictions have found that failure to notify a carrier of a claim or lawsuit until after an adverse judgment effectively abrogates all of the carrier's contractual rights, constituting prejudice. *See Prince George's Cnty v. Local Gov. Ins. Trust*, 879 A.2d 81, 100 (MD 2005).

There is no reasonable dispute GEA Mechanical's failure to provide notice and to cooperate with its insurers until after settlement negotiations, trial, and a jury verdict of $70.1 million appreciably prejudiced its insurers. Defendants were deprived completely of any opportunity to participate in the defense of the Thornton Action until after a verdict and judgment was entered. Where "notice has been given after the entry of judgment, it cannot reasonably be argued that the carrier has not been prejudiced." *Morales*, 423 A.2d at 329–30. The carrier has "lost the opportunity to make a prompt investigation of the accident, to depose parties and others, to appear at trial and cross-examine witnesses, and to present evidence in its insureds behalf." *Id.* While in some cases, there remains a question of whether those rights were "irretrievably lost," under these circumstances, reasonable minds cannot disagree that Defendants were irreversibly deprived of any meaningful participation in this case. *See id.* at 330. As in *D'Andrea*, to the extent the *Gazis* Court held New Jersey law does not require every notice provision be discarded in favor of an appreciable prejudice requirement, "then the notice requirement in this case should not." *D'Andrea*, *supra*. Defendants have clearly established they were appreciably prejudiced by GEA Mechanical's failure to provide timely notice of the Thornton Action to Defendants, as a matter of

law.[9] Accordingly, GEA Mechanical's sole cause of action for breach of insurance contract cannot be sustained.

## IV. CONCLUSION

For the reasons set forth above, GEA Mechanical's Motion for Summary Judgment (ECF No. 57) is **DENIED** and Defendants' Motion for Summary Judgment (ECF No. 58) is **GRANTED**. This matter can be marked **CLOSED**.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  May 11, 2023

---

[9] Because the Court finds Defendants have successfully established an entitlement to the late-notice defense, and therefore, judgment as a matter of law in their favor, GEA Mechanical's remaining arguments regarding the merits of Defendants' other affirmative defenses, counterclaims and expert opinions will not affect the Court's ultimate decision, and therefore need not be addressed in this Opinion.