**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEA MECHANICAL EQUIPMENT US, INC., <br><br> Plaintiff, <br><br> v. <br><br> FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD FIRE INSURANCE COMPANY, <br><br> Defendants. | Case No. 2:20-cv-09741 (BRM) (SDA) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff GEA Mechanical Equipment US, Inc.'s ("GEA Mechanical") Motion for Summary Judgment ("GEA Mechanical Motion") pursuant to Federal Rule of Civil Procedure 56. (ECF No. 57.) Defendants Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, and First State Insurance Company (collectively, "Hartford")[1] filed a joint Opposition and Cross-Motion for Summary Judgment (the "Hartford Cross-Motion") pursuant to Federal Rule of Civil Procedure 56. (ECF No. 58).[2] GEA Mechanical filed a responsive brief to Defendants' submission on October 21, 2022. (ECF No. 59.) Hartford filed a reply in further support of their Motion on October 21, 2022. (ECF No. 60.)

---

[1] Two entities—the Continental Insurance Company ("Continental") and Wellfleet New York Insurance Company, as successor to Atlanta International Insurance Company's ("AIIC")—were previously co-defendants in this action but were subsequently dismissed on remand (*see* ECF No. 83) following an appeal by GEA Mechanical to the Third Circuit, *see infra* Section I.

[2] When they were participating in this case as co-defendants prior to being dismissed on remand, Continental and AIIC joined in this opposition and cross-motion for summary judgment.

GEA Mechanical later filed a supplemental brief in further support of its Motion and in opposition to Hartford's Cross-Motion (ECF No. 88), and Hartford filed its supplemental brief in further support of its Cross-Motion (ECF No. 87). Having reviewed and considered the submissions filed in connection with the Motions[3] and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, GEA Mechanical's Motion for Summary Judgment (ECF No. 57) is **DENIED** and Hartford's Cross-Motion for Summary Judgment (ECF No. 58) is **GRANTED**.

**I.    BACKGROUND**

The factual background and procedural history of this matter are known to the parties and were previously recounted by the Court in its prior opinions: (1) denying Defendants' appeal of Magistrate Judge Edward S. Kiel's ("Judge Kiel") October 8, 2020, Order denying Defendants' request to compel production of certain information and documents protected by attorney-client privilege and/or work-product doctrine and affirming Judge Kiel's Order (ECF No. 32); and (2) denying GEA Mechanical's Motion for Summary Judgment and granting Defendants' Motion for Summary Judgment (ECF Nos. 73, 77)[4]. Accordingly, the Court will recount only the background associated with the Motions at this juncture.

GEA Mechanical seeks indemnification from Hartford for liability GEA Mechanical incurred in connection with an underlying lawsuit, *Thornton v. Alfa Laval, Inc., et al.*, No. 17-6018, 2019 WL 6437261 (Fla. Cir. Ct. June 24, 2019) (the "Thornton Action"). Hartford issued certain primary and excess general liability policies (the "Policies") to GEA Mechanical's

---

[3] The Court also considered the parties' submissions (ECF Nos. 71, 72) on the purported supplemental authority, *31-01 Broadway Assocs., LLC v. Travelers Cas. & Sur. Co.*, Dkt. No. A-1850-20, 2023 WL 2518779 (N.J. App. Div. Mar. 15, 2023).

[4] The Court's Opinion was posted under two ECF document numbers. It was originally posted in a sealed, unredacted form (ECF No. 73) and later uploaded unsealed and redacted (ECF No. 77).

predecessor, Centrico, Inc. ("Centrico"),[5] covering various periods from May 15, 1979, to December 31, 1995, which are relevant to this action. (ECF No. 57-2 ¶ 1.) Hartford's Primary Policies require written notice of any "occurrence"[6] to be provided "as soon as practicable" and that "the Insured shall cooperate with the Company" with respect to "making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization[.]" (*Id.* ¶ 31(a).) The Primary Policies include a $1 million limit of liability. (ECF No. 57-39, Ex. 31 (Deposition of Bernd G. Heinze[7]), at 35:22, 219:21–22.) Additionally, Hartford's Excess Policies require written notice be made "as soon as practicable" "upon the happening of an occurrence *reasonably likely* to involve the Company[,]" with the added requirement that "such notice shall contain particulars sufficient to identify the Insured and the fullest information obtainable at the time." (ECF No. 57-2 ¶ 31(b) (emphasis added).)

In March 2017, Charles and Constance Thornton filed the Thornton Action, alleging bodily harm because of an alleged exposure to asbestos-containing brakes and clutches contained in centrifuges or separators used to separate plasma from blood, which were sold by Centrico to Charles Thornton's employer. (*Id.* ¶¶ 7, 10.)

Ahead of trial, GEA Mechanical alleges it made numerous attempts to settle the Thornton Action, which Hartford disputes, suggesting ███████████████████████████

███████████████████████████████

---

[5] The parties do not dispute that GEA Mechanical is a successor to Centrico, and therefore entitled to the same rights and obligations under the Policies as Centrico. (ECF No. 57-2 ¶ 4; ECF No. 58-3 ¶ 4.)

[6] There is no dispute that the circumstances of the underlying action qualified as an "occurrence" under the provisions of the relevant policies.

[7] Bernd G. Heinze is President of the Heinze Group, an organization specializing in claim litigation audits and risk management surveys. (ECF No. 57-39, Ex. 31, at 6:2, 6:6–10.) Heinze was retained by Hartford as an expert witness in this matter. (*Id.* at 8:25–9:5, 9:7–9.)

███████████████ (*Id.* ¶ 12; ECF No. 58-3 ¶ 12.) Between 2018 and 2019, during a court-ordered mediation, the parties exchanged settlement demands and offers, with the Thorntons making an initial ███████ settlement demand and GEA Mechanical immediately countering with a ███████ offer on or about December 4, 2018, and eventually with GEA Mechanical making its final offer of ███████ on or about June 14, 2019—all of which the Thorntons refused. (*Id.* ¶ 13; ECF No. 58-3 ¶¶ 12–13, 16.) GEA Mechanical alleges it "broached the topic of resuming settlement discussions during the discovery phase[,]" which Hartford disputes and instead points to evidence that on one occasion, on May 21, 2019, attorneys for GEA Mechanical and the Thorntons "broached generally the subject of engaging in further settlement discussions, but neither side then made any demands or offers." (*Id.* ¶ 14; ECF No. 58-3 ¶ 14 (quoting ECF No. 57-5, Ex. 2 ("GEA Mechanical's Interrog. Resp."), at 8).) The Thornton Action went to trial in June 2019. (ECF No. 57-2 ¶ 17.) On June 17, 2019, the jury returned a verdict against GEA Mechanical in the amount of $70.1 million in compensatory damages. (*Id.* ¶ 17.) A final judgment for that amount was entered against GEA Mechanical on June 19, 2019. (*Id.*) On September 24, 2019, while post-trial motions in the Thornton Action were pending, the Thorntons and GEA Mechanical entered into a settlement agreement wherein GEA Mechanical agreed to pay ███████ in exchange for a release of all claims associated with the Thornton Action. (*Id.* ¶¶ 18–19.)

On August 5 and 6, 2019, contemporaneous with the filing of this coverage action, GEA Mechanical notified Hartford and AIIC of the Thornton Action. (*Id.* ¶ 22; ECF No. 58-3 ¶ 22.) After entry of judgment but before the post-trial settlement, GEA Mechanical provided Hartford and AIIC with information about the proceedings and invited their participation in post-trial motions, appeals, and settlements, in which neither participated nor objected. (*Id.* ¶¶ 23–24.)

However, during the same period, Hartford and Resolute Management Inc. ("Resolute"), on behalf of AIIC, denied coverage under their Policies, citing, in part, that GEA Mechanical breached the notice and cooperation provisions under their Policies. (*Id.* ¶ 25; ECF No. 58-3 ¶ 25.) GEA Mechanical did not provide notice of settlement of the Thornton Action to Continental [8] until January 7, 2020, after the settlement occurred. (ECF No. 57-2 ¶ 26.) Continental similarly denied coverage based on the late notice. (*Id.*)

GEA Mechanical initiated this coverage action in the Superior Court of New Jersey, Law Division, on August 6, 2019 (ECF No. 1), and it was removed to this Court on July 31, 2020. During the discovery process, GEA Mechanical alleges "[Hartford's] witnesses were unable to provide proof of any specific actions they claim they would have taken that would have resulted in a better outcome in the Thornton Action had notice been provided earlier." (ECF No. 57-2 ¶ 41.) Hartford disputes this and points to examples of specific actions provided, including "utilizing . . . databases ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (ECF No. 58-3 ¶ 41.)

GEA Mechanical filed its Motion for Summary Judgment (ECF No. 57), seeking indemnification from Defendants for liability incurred in connection with the Thornton Action (ECF No. 57), and Hartford filed their Opposition to the GEA Mechanical Motion and cross-moved for summary judgment based, in part, on a late-notice defense (ECF No. 58). On October 21, 2022, GEA Mechanical filed a responsive brief to Hartford's submission. (ECF No. 59.) On May 11, 2023, this Court issued a sealed Opinion and Order denying GEA Mechanical's Motion and granting Hartford's Cross-Motion, and closed the case. (ECF Nos. 73, 74, 77.) On June 9, 2023, GEA Mechanical filed an appeal of the Order to the Third Circuit (ECF No. 75), which

---

[8] Resolute is also the claims-handling agent for Continental. (*Id.* ¶ 27.)

issued an opinion on August 9, 2024, vacating this Court's Order and remanding the action for further proceedings, *see GEA Mech. Equip. US, Inc. v. First State Ins. Co.*, No. 23-2062, 2024 WL 3738639 (3d Cir. Aug. 9, 2024).

On September 27, 2024, Magistrate Judge Stacey D. Adams ("Judge Adams") signed the parties' amended scheduling order in which the parties agreed to submit supplemental briefing on October 30, 2024, and appear for a settlement conference on January 6, 2025. On October 30, 2024, GEA Mechanical filed its supplemental brief in further support of its Motion and in opposition to Hartford's Cross-Motion (ECF Nos. 88, 90)[9], and Hartford filed its supplemental brief in further support of its Cross-Motion (ECF Nos. 87, 91)[10]. After rescheduling the settlement conference due to the last-minute unavailability of a client (ECF No. 95), the parties held a settlement conference before Judge Adams on February 19, 2025 (ECF No. 96).

### A. The Third Circuit Opinion

In an unpublished opinion, the Third Circuit found this Court erred in its application of the two-prong test for appreciable prejudice under New Jersey law as articulated in *Morales v. Nat'l Grange Mut. Ins. Co.*, 423 A.2d 325, 329–30 (N.J. Super. Ct. Law Div. 1980). As a general matter, an insurer seeking to disclaim coverage under New Jersey law based on late notice—as Hartford seeks here—must prove both breach of a notice provision and a likelihood of appreciable prejudice, with the latter in turn "requir[ing] both (1) the irretrievable loss of substantial rights, and (2) a likelihood of success in the underlying defense." *GEA Mech. Equip.*, 2024 WL 3738639 at *2 (citing *Morales*, 423 A.2d at 239–30). The Third Circuit determined this

---

[9] GEA Mechanical's Supplemental Brief was posted under two docket numbers. It was originally posted in a sealed, unredacted form (ECF No. 88) and later uploaded unsealed and redacted (ECF No. 90).

[10] Hartford's Supplemental Brief, like GEA Mechanical's, was also originally posted in a sealed, unredacted form (ECF No. 87) and later uploaded unsealed and redacted (ECF No. 91).

Court "may have conflated the two prongs of *Morales*" in finding appreciable prejudice based on GEA's post-verdict notice to its insurers without "assess[ing] whether the insurers would have been successful 'in defending against the [Thorntons'] claim.'" *Id.* (quoting *Morales*, 423 A.2d at 330.) According to the Circuit Court, this Court committed reversible error in finding appreciable prejudice based solely on an assessment of the first *Morales* prong. *Id.* at *2, *4.

Additionally, the Third Circuit invited the Court to consider addressing the following four issues: (1) whether, drawing all inferences in GEA Mechanical's favor and with the burden of persuasion squarely on Hartford, the late-notice analysis requires breach and, if so, whether a breach occurred in this case, *id.* at *2 n.6; (2) whether witnesses for trial are still available or "the circumstances surrounding the accident can be reconstructed" as this determination may affect the irretrievable loss assessment for an appreciable prejudice finding, *id.* at *3 n.9; (3) whether Hartford would have achieved a settlement prior to trial with respect to the likelihood of success prong for appreciable prejudice, viewed in the light most favorable to GEA Mechanical, *id.* at *3 n.11; and (4) whether Hartford could have achieved a better result at trial, *id.* at *3 n.12.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a

7

grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of

9

material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting S*iegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

### III.  DECISION

This Court, in its opinion denying GEA Mechanical's Motion and granting Hartford's Cross-Motion, presented a thorough and largely undisturbed analysis of the parties' positions, finding: (1) GEA Mechanical's *prima facie* case was not in genuine dispute and the "central focus of the parties' motions . . . is whether Defendants' late-notice defense is meritorious as a matter of law" (ECF No. 73 at 8); (2) GEA Mechanical breached the notice provisions in the Policies because it only provided notice after the jury verdict and thereby "denied [primary insurers] a meaningful opportunity to participate" or "provide a competent defense on behalf of the excess insurers" (*id.* at 13); and (3) Hartford suffered "irretrievable loss" as they "were irreversibly deprived of any meaningful participation in this case" and thereby satisfied the first *Morales* prong (*id.* at 16 (citing *Morales*, 423 A.2d at 330).)

Given the Third Circuit opinion focused almost exclusively on correcting a misapplication of the appreciable prejudice test under *Morales* (namely, instructing that consideration of the second prong is required), the Court will primarily focus on the same here and also assess the parties' arguments regarding late notice under the Excess Policies. *See GEA Mech. Equip.*, 2024 WL 3738639 at *2–4.

### A. Second Prong under *Morales*: Likelihood of Success

GEA Mechanical argues Hartford must make the very precise and narrow showing that "had it received earlier notice, it would have achieved a pre-trial settlement," given Hartford does not contend it could have achieved a better result at trial. (ECF No. 88 at 5–6.) It claims Hartford fails to make this showing for the following three reasons: (1) Hartford provides no evidence demonstrating what "specific proactive steps" it would have taken that "would have changed the pre-trial settlement negotiations" (*id.* at 6–7); (2) Hartford cannot show it would have achieved a better settlement because "settlement[s are] bilateral" and Hartford cannot show "that the Thorntons would have accepted" (*id.* at 8–10); and (3) Hartford's suggestions better outcomes were possible are speculative, and "speculation cannot establish appreciable prejudice" (*id.* at 10–11).

Hartford contends a showing of appreciable prejudice is not required here because GEA Mechanical did not act in good faith when it failed "to locate its policies and cooperate with Hartford" in a timely manner regarding the Thornton Action. (ECF No. 87 at 8.) Hartford claims "compliance with the cooperation clause of an insurance policy is a condition precedent to coverage," and therefore that breach of a cooperation clause is enough to deny coverage without a finding of appreciable prejudice. (*Id.* at 6.) Even if appreciable prejudice is required, Hartford argues it "has sufficiently demonstrated that it was appreciably prejudiced by both GEA

11

Mechanical's egregiously late notice and failure to cooperate." (*Id.* at 8.) Hartford contends it provided evidence, including sworn testimony from its corporate representative (concerning, for example, using databases ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ showing it could have achieved a better result defending the Thornton Action, and notes the Third Circuit's emphasis on "could" rather than "would" demonstrates it is not "obligated to prove with certainty what would have occurred if it had received timely notice or cooperation from its insured." (*Id.* at 10.) Hartford summarizes its argument as follows:

> Hartford has presented evidence of what it could have, and as a matter of course, would have done to achieve a better result. It has presented evidence that the plaintiffs were open to settlement below their initial ▇▇▇▇▇▇ demand – well below the $70.1 million verdict later rendered at trial. The record-setting nature of that verdict alone demonstrates the likelihood that Hartford could have achieved a better result. *See Morales*, 423 A.2d at 329–30. Combined with the other evidence in the record, it is indisputable that Hartford not only could have achieved a better result, but would have done so, had GEA [Mechanical] not deprived it of all opportunity to participate in the Thornton Action.

(*Id.* at 13.)

In resolving whether "appreciable prejudice" exists, the insurer must prove: (1) "substantial rights have been irretrievably lost" by virtue of the insured's failure to notify the carrier in a timely fashion *and* (2) the insurer would have had a "likelihood of success . . . defending against the accident victim's claim" had there been no breach. *Hager v. Gonsalves*, 942 A.2d 160, 163 (N.J. Super. Ct. App. Div. 2008) (quoting *Sagendorf*, 679 A.2d at 715); *KnightBrook*, 275 A.3d at 480. The Third Circuit "ha[s] long held that the 'right to associate in the defense of [a] claim is too amorphous and cannot . . . constitute [appreciable] prejudice' without a simultaneous showing that 'earlier notice would probably have led to a more advantageous [substantive] result.'" *GEA Mech. Equip.*, 2024 WL 3738639 at *2 (quoting *Trs. of*

12

*the Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 880, 898–99 (3d Cir. 1987)). Moreover, an insurer need not show with certainty what would have occurred had events transpired differently, but instead may point to evidence "that [it] *could* have settled the underlying case for a small sum or smaller sum than that for which the insured ultimately settled the claim" to satisfy its burden. *Id.* at *3 (internal citation omitted) (emphasis added).

As recounted in this Court's prior opinion (*see* ECF No. 73 at 14), the burden of proof for demonstrating prejudice is on the insurer, and the prejudice must be "actual," rather than speculative. *Morales*, 423 A.2d at 329. It would be "unfair" for an insured to lose insurance coverage "where there is no likelihood the insurer was prejudiced by the policy breach." *KnightBrook Ins. Co. v. Tandazo-Calopina*, 275 A.3d 474, 480 (N.J. Super. Ct. App. Div. 2022).

Here, again, this Court has previously found the irretrievable loss prong under *Morales* has been satisfied, and the Third Circuit's opinion did not disturb that finding. *See supra* Section II.A. Acknowledging the Third Circuit's guidance in this respect and viewed in the light most favorable to GEA Mechanical, this Court finds Hartford has carried its burden of showing "a likelihood of success in the underlying defense." *GEA Mech. Equip.*, 2024 WL 3738639 at *2 (citing *Morales*, 423 A.2d at 239–30). While the Third Circuit pointed out GEA Mechanical's position that a higher initial counteroffer to the Thornton's settlement demand of ▮ "would not have changed the outcome," *id.* at *3 n.11, this Court finds Hartford's argument that they could have used their collective databases ▮ at the pre-trial settlement negotiations phase and in defending the Thornton Action convincing. (ECF No. 87 at 10 (citing ECF No. 58-3 ¶ 41).) Had they been used in guiding settlement negotiations or defense at trial, such databases ▮ would surely and inevitably increase the likelihood of success in

13

achieving a more favorable result, including in securing a settlement agreement before trial. Hartford is tasked with providing evidence of what it *could* have done in defending the Thornton Action, and that evidence must demonstrate "*some* likelihood that [the insurance carrier] would have prevailed at trial had it been noticed properly," and the Court finds it has carried its burden. *Morales*, 423 A.2d at 356.

Additionally, although the Third Circuit noted this Court did not consider the possibility the insurers could have achieved a better trial result or a finding of no liability, the parties themselves do not discuss this issue and the Court respectfully declines to address it. *See GEA Mech. Equip.*, 2024 WL 3738639 at *3 n.12.

Accordingly, Hartford satisfies both the irretrievable loss and likelihood of success elements of the appreciable prejudice test under *Morales*.[11]

### B. Late Notice under Hartford's Excess Policies

GEA Mechanical argues the Excess Policies are not implicated until and unless the Thornton Action is "reasonably likely" to implicate the Policies. GEA Mechanical claims not

---

[11] In its Opinion, the Third Circuit suggested the Court consider several additional issues which are enumerated in the background section of this Opinion. *See supra* Section I.A; *GEA Mech. Equip.*, 2024 WL 3738639 at *3 nn.9, 11–12. Two of these topics, concerning whether Hartford would have achieved a settlement prior to trial and whether Hartford could have achieved a better trial result, are built into the analysis of the second prong under *Morales*, *see supra* Section III.A, and another concerning late notice under the Excess Policies is addressed more fully in the section that follows as considerable attention was paid to the subject in both parties' supplemental briefs, *see infra* Section III.B.

With regard to the question of whether witnesses may still be available or accident circumstances can be reconstructed, *see GEA Mech. Equip.*, 2024 WL 3738639 at *3 n.9, because the relevant period for the accident in the underlying Thornton Action was from May 15, 1979, to December 31, 1995, it is quite possible that many actual or potential trial witnesses are now unavailable because of death, incapacity, memory loss, or other related reason, and it is even less likely that accident circumstances can be reconstructed for similar reasons. Moreover, even assuming *arguendo* such things could be revived and reconstructed, it would not change the Court's conclusion, contained in its prior opinion, that substantial rights have been irretrievably lost due to GEA Mechanical's failure to give timely notice. (*See* ECF No. 73 at 14–17.)

14

only that Hartford do not provide any evidence backing up their position that notice was late under the terms of the Policies, but that the evidence suggests the opposite. (ECF No. 88 at 12 (citing ECF No. 73 at 12 n.7).) GEA Mechanical contends the Court was mistaken when it imputed its assessment that the excess insurance carriers were deprived of the protection of the primary carriers' involvement in the Thornton Action to a determination of *when notice was due* rather than a finding of appreciable prejudice. (*Id.* at 13.) Based on these arguments, GEA Mechanical contends the Court should find the record does not show that liability for the Thornton Action was reasonably likely to implicate the Excess Policies, or, alternatively, deny Hartford summary judgment on this issue. (*Id.* at 14.) Hartford, in turn, argues the Court "should again hold that GEA Mechanical's post-verdict notice to First State was late" because of the ample evidence, including the initial ▇▇▇ demand, the failed pre-trial settlement negotiations, and the pending trial, the Excess Policies "were 'reasonably likely' to be implicated." (ECF No. 87 at 13–15.)

An insurance carrier may not forfeit its coverage obligations without: (1) evidence of breach of a notice provision, and (2) a likelihood of appreciable prejudice. (ECF No. 73 at 9 (citing *Cooper v. Gov't Emps. Ins. Co.*, 237 A.2d 870, 874 (N.J. 1968); *Morales*, 423 A.2d at 327).) Failure to comply with the terms of a notice provision may constitute a breach of the overall policy. *See, e.g.*, *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129 A.3d 1069, 1081 (N.J. 2016). Notice provisions provide carriers an "adequate opportunity to investigate claims," *Morales*, 423 A.2d at 329, including the chance to "form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it," *Trico Mortg. Co. v. Penn Title Ins. Co.*, 657 A.2d 890, 894 (N.J. Super. Ct. App. Div. 1995).

15

In the prior opinion, this Court found GEA Mechanical breached the notice provisions of both Hartford's Primary and Excess Policies, and the Third Circuit's opinion on appeal did not upend that finding. (*See* ECF No. 73 at 9–14); *see generally GEA Mech. Equip.*, 2024 WL 3738639. Nevertheless, because the Third Circuit suggested this Court consider revisiting its findings in this regard with the benefit of the correct appreciable prejudice standard, the Court will examine whether the late-notice defense requires a breach and, importantly, whether such a breach occurred here. *See GEA Mech. Equip.*, 2024 WL 3738639 at *2 n.6.

It is undisputed that GEA Mechanical provided notice to Hartford in August 2019, only after pre-trial settlement negotiations collapsed and the trial ended in a record-setting $70.1 million verdict. In particular, it is undisputed that on or about December 4, 2018, the Thorntons made an initial settlement demand of ▮▮▮▮ which exceeded the $1 million limit of the Primary Policies. Moreover, *Cooper* explicitly requires a showing of breach of a notice provision as one half of the late-notice defense, with the other half being appreciable prejudice. *See Cooper*, 237 A.2d at 874. Given GEA Mechanical does not dispute the Thornton's opening settlement demand was ▮▮ of the Primary Policies' limit of liability, and drawing all inferences in GEA Mechanical's favor, the Court finds this event should have been the moment requiring notice under the Excess Policies because it can easily be construed to constitute "an occurrence *reasonably likely to involve*" Hartford. (ECF No. 57-2 ¶ 31(b) (emphasis added).) The Court is persuaded by Hartford's central argument that the confluence of the undisputed facts clearly shows GEA Mechanical's notice in August 2019 was late under the ordinary and plain meaning of the Excess Policies requiring written notice of an event "*reasonably likely to involve*" Hartford "as soon as practicable." The Court construes GEA Mechanical's failure to

16

comply with the Excess Policies as a breach of those policies. *See Templo Fuente*, 129 A.3d at 1081.

Accordingly, the Court finds GEA Mechanical breached the notice provisions set forth in the Excess Policies. The Court therefore will not consider GEA Mechanical's arguments concerning the remaining affirmative defenses raised by Hartford, and GEA Mechanical's motion to strike fourteen of Hartford's sixteen defenses is **DENIED** as moot.

### IV. CONCLUSION

For the reasons set forth above, and for good cause having been shown, GEA Mechanical's Motion for Summary Judgment (ECF No. 57) is **DENIED** and Hartford's Cross-Motion (ECF No. 58) is **GRANTED**. An appropriate order follows.

Dated: June 30, 2025

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE